L. LIN WOOD, P.C.
L. Lin Wood (*admitted pro hac vice*)
lwood@linwoodlaw.com
Nicole J. Wade *admitted* (*pro hac vice*)
nwade@linwoodlaw.com
Jonathan D. Grunberg (*admitted pro hac vice*)
jgrunberg@linwoodlaw.com
G. Taylor Wilson (*admitted pro hac vice*)
twilson@linwoodlaw.com
1180 West Peachtree Street
Suite 2040
Atlanta, Georgia 30309
404-891-1402
404-506-9111 (fax)

CHATHAM LAW GROUP
Robert Christopher Chatham
chris@chathamfirm.com
CA State Bar No. 240972
2046 Hillhurst Ave.,  #130
Los Angeles, CA 90027
213-277-1800

Attorneys for Plaintiff
VERNON UNSWORTH

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH, | Case No. 2:18-cv-08048-SVW (JC) |
| Plaintiff, | **PLAINTIFF VERNON UNSWORTH'S MEMORANDUM IN OPPOSITION TO DEFENDANT ELON MUSK'S MOTION TO DISMISS THE COMPLAINT** |
| v. | |
| ELON MUSK, | |
| Defendant. | Date of Hearing: April 1, 2019 |
| | Time of Hearing: 1:30 p.m. |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................1

II.  FACTUAL BACKGROUND.............................................................................4

III. ARGUMENT .....................................................................................................6

  A.  Legal Standard on 12(b)(6). ...........................................................................6

  B.  There is No Wholesale Protection for Opinion: The *Milkovich* Majority Versus the *Milkovich* Dissent...............................................................................7

  C.  Musk's Accusations Are Provably False—*Milkovich* Prong One..................8

    i.   Musk's Disclosed Bases for His Accusations Are False, Rendering His Accusations Unprotected. ......................................................................................9

    ii.  Musk Claimed Undisclosed Knowledge as the Basis For His Accusations, Rendering His False Accusations Unprotected. .................................................10

    iii. Musk Invents Rules of Law and Relies on Inapposite Case Law. ...........12

  D.  A Reasonable Reader Could Believe Musk Was Literally Accusing Musk of Sex Crimes—*Milkovich* Prong Two. ...................................................................14

    i.   Musk's Twitter Accusations State Actual Facts. ........................................15

      1.   The Broad Context Reinforced that Musk's Tweets Were Literally Maintaining His Criminal Accusations..........................................................16

      2.   Musk's Arguments About General Context Are Unavailing. ...............17

      3.   The Specific Context Reinforced Rather than Negated that Musk Was Literally Maintaining His Twitter Accusations.............................................19

      4.   Musk's Arguments About Specific Context Are Unavailing................21

    ii.  Musk's BuzzFeed E-mails State Actual Facts.........................................22

IV.  CONCLUSION ...............................................................................................25

i

# TABLE OF AUTHORITIES

## CASES

*AvePoint, Inc. v. Power Tools, Inc.*, 981 F. Supp. 2d 496 (W.D. Va. 2013) ................................................................................... 21

*Barnes-Hind, Inc. v. Superior Court* ,181 Cal. App. 3d 377 (1986) ..................... 9

*Bently Reserve LP v. Papaliolios*, 218 Cal. App. 4th 418 (2013) ............. 17, 20, 22

*Cahill v. Edalat*, 2017 WL 2608857 (C.D. Cal. Feb. 15, 2017) ........................... 20

*Chaker v. Mateo*, 209 Cal. App. 4th 1138 (2012) ........................................... 18, 22

*Clifford v. Trump*, 339 F. Supp. 3d 915 (C.D. Cal. 2018) ............................... 18, 22

*Cohen v. Google, Inc.* 887 N.Y.S.2d 424 (Sup. Ct. 2009) ................................... 21

*Competitive Enterprise Institute v. Mann*, 150 A.3d 1213 (D.C. 2016) .............. 10

*Dickinson v. Cosby*, 17 Cal. App. 5th 655 (2017) .......................................... 18, 25

*Dreamstone Entertainment Ltd. v. Maysalward Inc.*, 2014 WL 4181026 (C.D. Cal. Aug. 18, 2014) .................................................. 14

*Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188 (9th Cir. 1989) ..................... 22

*Gardner v. Martino*, 563 F.3d 981 (9th Cir. 2009) ............................................. 15

*Gordon & Holmes v. Love*, 2016 WL 374950, (Cal. Ct. App. Feb. 1, 2016) ............................................................................................... 21

*Grenier v. Taylor*, 234 Cal. App. 4th 471 (2015) ............................................... 23

*Gross v. New York Times Co.*, 82 N.Y.2d 146 (1993) ......................................... 12

*Hadley v. Doe*, 2014 IL App (2d) 130489 .......................................... 9, 11, 20, 21

*Harrell v. George*, 2012 WL 3647941 (E.D. Cal. Aug. 22, 2012) ...................... 22

*Hooshmand v. Griffin*, 2017 WL 1376370 (Cal. Ct. App. Apr. 17, 2017) ............................................................................................. 11, 21

*James Woods v. John Doe*, BC589746 (Feb. 8, 2016 Cal. Super. Ct.) ................ 20

*Jankovic v. Internationl Crisis Group*, 593 F.3d 22 (D.C. Cir. 2010) ................... 9

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) .......................................... 16, 19

*Longbehn v. Schoenrock*, 727 N.W.2d 153 (Minn. Ct. App. 2007) ...................... 9

*Maxon v. Ottawa Pub. Co.*, 929 N.E.2d 666 (3d Dist. 2010) .............................. 20

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ................................... passim

*Moldea v. New York Times Co.*, 15 F. 3d 1137 (D.C. Cir. 1994) ................. 10, 11

ii

*Nicosia v. De Rooy*, 72 F. Supp. 2d 1093 (N.D. Cal. 1999).................................. 19

*Overhill Farms, Inc. v. Lopes*, 190 Cal. App. 4th 1248 (2010)...................... 10, 11

*Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995) ..........................9, 10, 12, 13

*PG Inn, Inc. v. Gatward*, 2014 WL 108412 (Cal. Ct. App. Jan. 13, 2014)............................................................................................................ 20

*Sanders v. Walsh*, 219 Cal. App. 4th 855 (2013) ........................................... 17, 23

*Standing Committee on Discipline of U.S. Dist. Ct for C.D. Cal. v. Yagman*, 55 F.3d 1430 (9th Cir. 1995)......................................................passim

*Summit Bank v. Rogers*, 206 Cal. App. 4th 669 (2012) .................................. 17, 18

*Torain v. Liu* (*Torain I*), 2007 WL 2331073 (S.D.N.Y. Aug. 16, 2007) ........ 12, 18

*Torain v. Liu* (*Torain II*), 279 Fed. App'x 46 (2d Cir. 2008)........................ 12, 19

*Unelko Corp. v. Rooney*, 912 F.2d 1049 (9th Cir. 1990) ................................ 14, 16

*Varian Medical Systems, Inc. v. Delfino*, 6 Cal. Rptr. 3d 325 (2003).........3, 14, 17

*Walsh v. Latham*, 2014 WL 618995 (Cal. Ct. App. Feb. 18, 2014)...................... 23

**RULES**

Rule 12(b)(6)........................................................................................................... 7

## I.   **INTRODUCTION**

Between June 24, 2018, and July 10, 2018, Plaintiff Vernon Unsworth ("Unsworth") was one of many individuals directly involved in the heroic, and ultimately successful, efforts to save the lives of twelve boys and their soccer coach from the Tham Luang Nang Non cave in Thailand. Between July 15, 2018, and August 30, 2018, Defendant Elon Musk ("Musk") engaged in a prolonged campaign to assassinate Unsworth's character with discrete accusations of criminal conduct. Specifically, and among other false accusations, Musk falsely accused Unsworth of being a pedophile and child rapist who took a 12-year-old child bride.

Musk now asks this Court to dismiss Unsworth's defamation claim on the basis that his accusations of criminal, deviant sexual misconduct are protected opinion, while simultaneously admitting that he acted maliciously by making up the accusations out of whole cloth. Putting aside that Musk's accusations were not even preceded by "I think" or "in my opinion," in arguing a motion controlled by the majority opinion in the Supreme Court of the United States' case of *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), Musk cites directly to *Milkovich* only twice. Each time, Musk openly cites to *Milkovich*'s **dissent** (Doc. 30 at 13, 15), because the majority opinion forecloses his request for relief. Faced with untenable reliance on the *Milkovich* dissent, Musk's brief is brimming with string citations that misrepresent controlling law by, among other things, breaking up quotations with colloquy of counsel that mischaracterize the law. Musk also resorts to asking the Court to apply legal standards that do not exist, precisely because controlling law is fatal to his Motion.

For instance, Musk tells the Court on page six that a "statement is one of objective fact *only* if the reasonable reader would believe that the speaker possesses underlying information to support it," based on a disingenuous at best interpretation of the statement in *Standing Committee on Discipline of U.S. Dist. Ct for C.D. Cal. v. Yagman*, 55 F.3d 1430 (9th Cir. 1995) that "a statement 'is not actionable' *unless*

1

the speaker is 'claiming to be in possession of objectively verifiable facts,'" (emphasis added). *Yagman* makes no holding as described by Musk, and instead faithfully applies *Milkovich*.

*Yagman* holds that a defamatory opinion without a disclosed factual basis "gives rise to the inference that there are undisclosed facts that justify the forming of the opinion"; *i.e.,* unexplained opinions themselves imply the existence of undisclosed facts. 55 F.3d at 1439 ("The statement, 'I think Jones is an alcoholic,' for example, is an expression of opinion based on implied facts"). Consistent with *Milkovich*, *Yagman* points out that a would-be defamer can avoid this conundrum "where the publication sets forth the facts underlying its statement of opinion *and those facts are true*[.]" *Id.* at 1440 (emphasis added) (internal citations omitted); *see also Milkovich*, 497 U.S. at 18-19 ("If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. *Even if* the speaker states the facts upon which he bases his opinion, *if those facts are either incorrect or incomplete, or if his assessment of them is erroneous,* the statement may still imply a false assertion of fact.") (emphasis added). It is not the law that opinions communicating that a crime occurred are *protected* "unless" they imply the existence of undisclosed facts; to the contrary, statements asserted to be opinion are *unprotected* "unless" the writer discloses the underlying basis for a defamatory opinion, and "even if" the basis is disclosed, opinions remain *unprotected* if that basis is false or incomplete. Here, under *Milkovich* and *Yagman*, Musk checks all the boxes for his accusations to be actionable: he made a criminal accusation, while claiming (impliedly and expressly) undisclosed knowledge, and the bases he did disclose are uniformly false.

While Musk may be recognized as an inventor, he is not permitted to invent an erroneous rule of law in a vain attempt to support his Motion. *Milkovich* and its progeny ask two questions: (1) does a statement, in the form of opinion or otherwise, "imply an assertion of objective fact" and (2) can the statement "reasonably be

interpreted as stating actual facts" about an individual. *Milkovich*, 491 U.S. at 18, 20. As to the first, direct accusations of criminal misconduct are unanimously recognized as implying an assertion of objective fact; they are events that either occurred or did not, and the truth or falsity of such accusations are routinely determined in criminal and civil courts. As to the second, courts are instructed to engage in a contextual analysis to determine whether the context "would negate the impression that the writer was seriously maintaining" his accusation or was merely engaged in "imaginative expression or rhetorical hyperbole." *Id.* at 21. The law does not ask "did readers believe the accusation to be true" or well supported, as Musk represents.  (Doc. 30 at 21-23). The law considers context with the inquiry as to whether a reasonable reader would believe Musk is seriously maintaining his accusation, not whether a seriously maintained accusation is believed or not. *Cf. Varian Med. Sys., Inc. v. Delfino*, 6 Cal. Rptr. 3d 325, 337-38 (2003) ("It is not necessary that anyone believe them to be true, since the fact that such words are in circulation at all . . . must be to some extent injurious to his reputation.").

Nothing about the context of Musk's false criminal accusations allow the Court to conclude as a matter of law that no reasonable reader could believe Musk literally meant what he said. Musk made particularized accusations of criminal misconduct and repeated his accusations on no less than four occasions over a six-week period, removing any doubt as to whether he was engaged in satire or hyperbole. Musk has repeatedly touted his firsthand experience at the rescue and knowledge of the players on the ground, and then thrust his alleged knowledge of Unsworth into the public eye. The immediate context surrounding his false accusations includes statements addressing the very serious matter of attempts to save the lives of Thai boys trapped in the cave. Moreover, the broader context of Musk's accusations was similarly no laughing matter. The cave rescue seized the world's attention precisely because it was a life or death situation—not a laughing matter. Thirteen people's lives were in peril in the cave, and many more put their

3

lives on the line to save them. A Thai Navy Seal died for his selfless efforts.

Musk is a world-renowned billionaire businessman and he put the full weight of his powerful influence behind his false accusations. While Musk seems to advance the absurd position that his Twitter account is a post-factual realm in which all tweets must be treated as opinion, his company disagrees. Tesla filed an 8-K with the SEC stating that Musk's Twitter account is a medium to communicate facts.[1]

Musk asks this Court to openly sanction one-sided Twitter warfare, where no one is safe because nobody can be held accountable and all reputations are at grave risk. Lest the floodgates open, the Court must deny Musk's motion to dismiss.

## II.    FACTUAL BACKGROUND[2]

Between June 24 and July 10, 2018, Unsworth was instrumental in saving twelve boys and their soccer coach from the Tham Luang Nang Non cave in Thailand (the "Cave") in a rescue involving the efforts of more than 10,000 people (the "Rescue"). (Compl. ¶¶ 2, 7, 66). Musk and his team of engineers built a metallic tube or mini-submarine (the "Tube"), purportedly intended to transport those who were trapped out of the Cave. (*Id.* ¶ 62).

On July 13, Unsworth responded to a reporter's question regarding the Tube, stating, among other things, that Musk's Tube was a "PR stunt," that the Tube "had absolutely no chance of working," and that Musk "had no conception of what the cave passage was like," adding that Musk "can stick his submarine where it hurts." (*Id.* ¶¶ 71-72). Two days later, Musk began a six-week campaign to falsely assassinate Unsworth's character. (*Id.* ¶¶ 73-97).

On July 15, Musk posted four tweets to his ~22.5 million followers concerning the Rescue. The first tweet falsely stated that Unsworth was a "British expat guy

---

[1]    Tesla Form 8-K (Nov. 5, 2013), available at https://www.sec.gov/Archives/edgar/data/1318605/000119312513427630/d622890d8k.htm. A court may take judicial notice of the contents of an SEC filing. *In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d 1192, 1201 n.6 (D. Ariz. 2009).

[2]  A comprehensive timeline of events is attached to the Complaint as Exhibit A.

who lives in Thailand (sus[picious])" while providing Musk's firsthand account of the Rescue ("First Tweet"). (*Id.* ¶¶ 22, 73; Ex. B). The second tweet continued Musk's alleged firsthand account of the Rescue ("Second Tweet"). (*Id.* ¶ 75; Ex. 3). The third tweet, *inter alia*, falsely described Unsworth as "pedo-guy" ("Third Tweet"), again referencing the Rescue and stating that Musk "will make [a video] of the mini-sub/pod going all the way to Cave 5" ("Third Tweet"). (*Id.* ¶ 76; Ex. D). The fourth tweet doubled-down on the accusation of pedophilia, stating "Bet ya a signed dollar it's true" ("Fourth Tweet"). (*Id.* ¶ 79; Ex. E).

On July 18, Musk published his fifth tweet ("Fifth Tweet") and sixth tweet ("Sixth Tweet"), feigning an apology to Unsworth, without retracting as false his pedophile accusation. (*Id.* ¶¶ 80-81; Exs. G, F).

On August 28, Musk published his seventh tweet ("Seventh Tweet") about Unsworth tripling-down on his accusation of pedophilia: "You don't think it's strange he hasn't sued me? He was offered free legal services. . . ."[3] (*Id.* ¶ 83; Ex. I). In response to the Seventh Tweet, Unsworth's attorney directed Musk via Twitter to review his mail before tweeting, which contained an August 6, 2018, demand letter on behalf of Unsworth. (*Id.* ¶ 87).

On August 30, in response to a BuzzFeed request for comment—not in response to the tweet by Unsworth's attorney—Musk sent the reporter an e-mail stating:

> I suggest that you call people you know in Thailand, find out what's actually going on and stop defending child rapists . . . . He's an old, single white guy from England who's been traveling or living in Thailand for 30 or 40 years, mostly Pattaya Beach, until moving to Chiang Rai for a child bride who was about 12 years old at the time. … [Pattaya Beach] isn't where you'd go for caves, but its where you'd go for something else. Chiang Rai is renowned for child sex-trafficking. . . . [T]he actual cave dive team refused to hang out with him.  I wonder why."

---

[3] The First through Seventh Tweets are collectively referred to as the "Tweets."

5

(*Id.* ¶ 88; Ex. K). On August 30, Musk sent a second e-mail to BuzzFeed again professing his firsthand knowledge of the Rescue." (*Id.* ¶ 92; Ex. K).[4]

Contrary to *each and every basis* disclosed by Musk in support of his accusation of pedophilia in his Tweets and of child rape in his BuzzFeed E-mails: Unsworth is not a British expat nor does he live in Thailand, as he resides in England (*id.* ¶ 98); Unsworth had initiated legal action against Musk (*id.* ¶ 82); Unsworth is not single (*id.* ¶ 11); Unsworth first traveled to Thailand in 2011 (*id.* ¶ 11); Unsworth has never been to Pattaya Beach (*id.* ¶¶ 90-91); Unsworth has never married a child bride in Chiang Rai or elsewhere (*id.* ¶¶ 90, 123-24); Unsworth was never banned from the Rescue (*id.* ¶ 93); and Unsworth was "pivotal" to the Rescue and "seemed like an excellent guy" to other rescuers (*Id.* ¶¶ 89, 94).

## III.   ARGUMENT

Musk consistently juggles the *Milkovich* analysis without advising this Court whether he is addressing the first *Milkovich* prong—provably false—or the second *Milkovich* prong—stating actual facts. This brief clarifies the analysis by addressing them independently and showing that *Milkovich* does not protect Musk's heinous accusations.

### A.   Legal Standard on 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain enough factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*[5]

---

[4] Musk's e-mails to BuzzFeed are collectively referred to as the "BuzzFeed E-mails."

[5] Musk flouted the Federal Rules when he submitted a declaration from his attorney attaching materials outside the pleadings in support of his Motion.  At its discretion, this Court may exclude these extraneous materials or treat the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d).

### B. <u>There is No Wholesale Protection for Opinion: The *Milkovich* Majority Versus the *Milkovich* Dissent.</u>

First Amendment analysis is rife with opportunities for skilled media defense counsel to cherry-pick out-of-context statements of law, and the Court should be wary of the unquoted portions of string cites in Musk's Motion.[6] As set forth in Section I above, Musk's first argument (III.A) is based entirely on an invented standard: "Unsworth *must* prove that the reasonable reader would believe Musk *possessed private facts* implicating Unsworth as a pedophile." (Doc. 30 at 8 (emphasis added)). Musk did not unearth a single case that articulates this standard, so he characterizes rather than quotes this invented rule of law. As a result, Musk erroneously frames the issue before this Court as a single question: "Did Musk's statements signal that he was in possession of *additional* undisclosed facts about Unsworth showing that Unsworth was sexually attracted to children or had engaged in sex acts with children?" (Doc. 30 at 9 (emphasis added)). In so doing, Musk is urging the *Milkovich* dissent, not the majority. *Milkovich*, 497 U.S. at 28 (Brennan, J., dissenting) (contending an opinion should be protected when the author "makes it clear at which point he runs out of facts and is simply guessing").

The controlling majority opinion in *Milkovich* categorically rejected the notion that the First Amendment provides "a wholesale exemption [from liability] for anything that might be labeled 'opinion.'" *Id.* at 18. And it refused to adopt the minority's position that the First Amendment protects "conjecture" that "alerts the audience that the statement is one of belief, not fact." *Id.* at 28 n.5 (Brennan, J., dissenting). Indeed, *Milkovich* held an opinion is actionable if (1) it implies a connotation that "is sufficiently factual to be susceptible of being proved true or false," and (2) it can "reasonably [be] interpreted as stating actual facts" about the

---

[6] *See, e.g.,* page 6 citing *Yagman* in string cite as "*explaining that a statement* **'is not actionable'** *unless the speaker is* **'claiming to be in possession of objectively verifiable facts'**" (emphasis added).

plaintiff. *Id.* at 21. Explaining the difference between an opinion bereft of a disclosed basis—which itself implies the existence of undisclosed facts—and a mixed opinion, which is one that discloses the basis for the opinion, the Supreme Court explained:

> If a speaker says, 'In my opinion John Jones is a liar,' *he implies a knowledge of facts* which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, *if those facts are either incorrect or incomplete, or if his assessment of them is erroneous*, the statement may still imply a false assertion of fact.

*Id*. at 18-19 (internal citations omitted) (emphasis added).

The *Milkovich* standard is clear: an opinion stating that an objectively verifiable event occurred necessarily implies the existence of undisclosed facts to support the opinion, unless the opinion's basis is disclosed. Even then, if the disclosed basis is false or incomplete, the opinion remains actionable. *Milkovich* leaves no room for Musk's clever but incorrect assertion that his so-called "opinions" are only actionable if a writer suggests he possesses undisclosed information, firsthand or otherwise.

### C. Musk's Accusations Are Provably False—*Milkovich* Prong One.

In *Milkovich*, the Court refused to protect a sports columnist's op-ed because, *inter alia*, "the connotation that petitioner committed perjury is sufficiently factual to be susceptible of being proved true or false." *Id.* at 21. The fundamental question is whether a defendant makes an accusation about a verifiable event that either happened or did not—i.e., it can be proven true or false. Thus, "[i]n my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin," *id.* at 20, is a protected opinion because whether someone is considered ignorant is a subjective determination that is in the eye of the beholder.

But a statement that a person committed a crime—such as perjury, pedophilia, or child rape—speaks of objectively verifiable events. Unsworth either engaged in pedophilia, child rape and child matrimony, or he did not. There is no gray area—

these accusations have but one clear meaning—and there can be no serious dispute that these accusations satisfy *Milkovich*'s first requirement of implying a provably false fact. An accusation of a crime is necessarily susceptible of being proven true or false via objective proof. Indeed, "[p]erhaps the clearest example of libel per se is an accusation of crime." *Barnes-Hind, Inc. v. Superior Court* ,181 Cal. App. 3d 377, 385 (1986); *see also Yagman*, 55 F.3d 1430, 1440 (holding that statements that "could reasonably be understood as imputing specific criminal or other wrongful acts" are not entitled to constitutional protection merely because they are phrased in the form of an opinion); *Jankovic v. Int'l Crisis Group*, 593 F.3d 22, 28 (D.C. Cir. 2010) (holding that if criminal acts "are verifiable enough to be the bases for prolonged detention, they are surely . . . verifiable enough for defamation liability"); *Hadley v. Doe*, 2014 IL App (2d) 130489 at ¶ 3 (relying in part on California precedent and holding that anonymous commenter to Internet article communicated factual statement of pedophilia by writing, "Hadley is a Sandusky waiting to be exposed. Check out the view he has of Empire from his front door"); *Longbehn v. Schoenrock*, 727 N.W.2d 153, 159, 163 (Minn. Ct. App. 2007) (reversing jury verdict and holding that "in almost every circumstance a reasonable listener would believe that calling a person a pedophile imputes serious sexual misconduct or criminal activity to that person").

### i.   Musk's Disclosed Bases for His Accusations Are False, Rendering His Accusations Unprotected.

Musk cites *Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995), for the proposition that "if 'the author presents the factual basis for his statement, it can only be read as his personal conclusion about the information presented, *not as a statement of fact*." (Doc. 30 at 15) (emphasis in original). This is a misrepresentation by omission. *Partington* states that an otherwise actionable opinion might be protected when the opinion's basis is disclosed, but for Musk's partial statement of the law to be accurate, the disclosed factual basis must be true and complete.

9

*Partington*, 56 F.3d at 1154 ("When, as here, an author . . . *fairly describes* the general events involved . . . his statements should generally be protected by the First Amendment") (emphasis added); *see also Overhill Farms, Inc. v. Lopes*, 190 Cal. App. 4th 1248, 1263 (2010) (citing *Partington* and finding no protected opinion for "statements [that] do not fully and accurately disclose the facts"); *Competitive Enterprise Inst. v. Mann*, 150 A.3d 1213, 1246 (D.C. 2016) ("[T]o claim this form of protection from liability, the facts on which the purported opinion is based must be accurate and complete") (citing *Milkovich*, 497 U.S at 18-19); *Moldea v. New York Times Co.*, 15 F. 3d 1137, 1144 (D.C. Cir. 1994) ("Just as a speaker is not immunized from liability simply by prefacing otherwise defamatory statements with the words 'In my opinion…,' defamatory assessments based on incorrect 'facts' stated by the speaker are also actionable").

Here, Musk's disclosed bases for his defamatory Tweets and BuzzFeed E-mails are uniformly false. Musk claims the disclosed bases for his Tweets are that Unsworth is a "British expat . . . who lives in Thailand," (Doc. 30 at 15), but Unsworth is not a British expat. He resides in England, not Thailand. (*Id.* ¶ 98). The detailed bases disclosed by Musk in his BuzzFeed E-mails for his accusation that Unsworth is a child rapist are also entirely false.  (*Id.* ¶ 18). Musk asserted Unsworth is "single," but he is not. (*Id.* ¶ 11).  Musk asserted that Unsworth has been traveling or living in Thailand for 30 or 40 years, but Unsworth first traveled there in 2011. (*Id.*). Musk asserted that Unsworth spent most his time in Pattaya Beach, but Unsworth has never been there.  (*Id.* ¶ 90). Finally, Musk asserted that Musk took a 12-year-old child bride; that, too, is categorically false. (*Id.* ¶¶ 90, 123-24).

## ii. **Musk Claimed Undisclosed Knowledge as the Basis For His Accusations, Rendering His False Accusations Unprotected.**

Even if the disclosed bases for Musk's accusations had been true—which they are not—"when a writer gives a statement of opinion that is based upon true facts that are revealed to readers or which are already known to readers, such opinions

generally are not actionable *so long as the opinion does not otherwise imply unstated defamatory facts*." *Moldea,* 15 F. 3d at 1144 (emphasis added). In other words, contrary to Musk's repeated assertion that a statement of opinion is actionable only if the reasonable reader would believe the speaker possesses undisclosed facts, the law provides the exact opposite.  Indeed, as *Moldea* explained, even if a partial and truthful basis is disclosed, if additional undisclosed facts are also implied, the opinion is actionable because it renders the disclosed factual basis incomplete. *Id.*; *see also Hadley*, 2014 IL App (2d) 130489, at ¶ 49 (finding that stating plaintiff was a "Sandusky *waiting to be exposed*" "implies the existence of undisclosed facts"). Musk implied undisclosed facts both tacitly and expressly.

With respect to his Tweets, Musk accomplished this feat on two separate occasions, stating "bet ya a signed dollar it's true" and "don't you think it's strange he hasn't sued me yet?" (Compl. Exs. E, I). With respect to his BuzzFeed E-mails, Musk told BuzzFeed "I suggest you call people you know in Thailand, find out what's actually going on and stop defending child rapists," (Compl. at ¶ 88), clearly signaling that if BuzzFeed did its work as Musk did, they would find out what is "actually going on," namely, that Unsworth is raping children. *Cf. Hooshmand v. Griffin*, 2017 WL 1376370, *8 (Cal. Ct. App. Apr. 17, 2017) (holding that defendant's assertions "may reasonably be understood as statements of fact which are probably true or false" when she reaffirmed their truth, including by stating "*why haven't I been sued for defamation*?") (emphasis added).

The rationale for affording First Amendment protection to opinions based upon fully and accurately disclosed facts is that "readers are [then] free to accept or reject the author's opinion based on their own independent evaluation of the facts." *Overhill Farms*, 190 Cal. App. 4th at 1263. But when there is no disclosure, or that disclosure is false or incomplete, the reader is unable to make his own independent assessment. Accordingly, first, if a writer states his defamatory opinion without any disclosed basis, he implies a knowledge of undisclosed facts and thus the reader

11

cannot assess the validity of the opinion and it is actionable.  Second, if a writer outlines the factual bases for an opinion but those facts are false, the reader cannot assign appropriate weight to the opinion. And third, even if a partial disclosure is made, if a writer otherwise implies or states that the disclosed basis is incomplete, the reader is left incapable of assessing the reasonableness of the opinion.

Even if Musk's accusations could be deemed opinions, they are not protected because Musk's false and incomplete disclosures deprived his readers of the ability to accept or reject the accusations based on their own independent evaluations.

### iii.    Musk Invents Rules of Law and Relies on Inapposite Case Law.

Given the false and incomplete bases for Musk's Tweets and BuzzFeed E-mails, his reliance on *Yagman, Partington,* and *Torain v. Liu* (*Torain I*), 2007 WL 2331073 (S.D.N.Y. Aug. 16, 2007) is misplaced. In fact, these cases are consistent with *Milkovich* and merely provide examples of its correct application.

Musk latched onto *Torain I* because it held that calling the plaintiff a "racist pedophile" was protected opinion. *Id.* at *3.[7] But, unlike Musk, the defendant in *Torain* based his accusation on the plaintiff's well-publicized, indisputably true, and reprehensible radio broadcast declaring "that he wanted to sexually abuse … [defendant's] four-year-old child." *Id.*; *Torain v. Liu* (*Torain II*), 279 Fed. App'x 46, 47 (2d Cir. 2008). In contrast, Musk based his false accusations of pedophilia on false and undisclosed facts.

And while Musk's mistaken reliance on *Partington* was addressed above—unlike *Partington*, Musk's accusations are not based upon true facts—it bears noting that Musk also cites *Partington* for the proposition that "inherently subjective" assessments are protected opinion. (Doc. 30 at 23). The defendant's accusation in

---

[7] Unlike California, New York "has embraced a test [under the state's Constitution] for determining what constitutes a nonactionable statement of opinion that is more flexible *and is decidedly more protective [than Milkovich]*." *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152 (1993) (emphasis added). Even still, this decision supports Unsworth.

*Partington* bear no resemblance to the clear accusations of criminal misconduct made by Musk. There, the alleged defamation consisted of the defendant's "assessments of a lawyer's trial performance," which was "inherently subjective and therefore not susceptible of being proved true or false." 56 F.3d at 1157.

As for *Yagman*—regardless of Musk's preposterous claim that *Yagman* requires that the reader believe the writer to possess "undisclosed first-hand information" (Doc. 30 at 17)[8]—the Ninth Circuit again faithfully applied *Milkovich*. As an initial matter, *Yagman* holds that statements that "could reasonably be understood as imputing specific criminal or other wrongful acts" are not entitled to constitutional protection. 55 F.3d 1430, 1440. Further, *Yagman* made the following holdings applying *Milkovich*: (1) an opinion that a judge was an anti-Semite was protected because it was based on true disclosed facts; (2) a statement that a judge was dishonest should when viewed in context be construed as an accusation of intellectual dishonesty, which is not provably false; and (3) the statement that a judge was "drunk on the bench" could be actionable, as it implied that the judge had taken the bench while intoxicated, which is provably false. *Id.* at 1438-41.[9] The *Yagman* panel would surely agree that even if Musk's accusations were opinions, they would not be protected because they imply that Unsworth committed acts of pedophilia— which is provably false unlike an accusation of intellectual dishonesty—and they were based on false and incomplete facts.[10]

---

[8] Such a requirement would effectively end the law of libel. If the media was required to profess firsthand knowledge, it would never be liable, as it is routinely, for republishing false accusations of its sources.

[9] Musk also cites *Yagman* arguing that if a reader would not think a statement was backed by objective fact, then the statement is nothing other than "an interpretation, a theory, conjecture, or surmise." As stated above, this proposition is not the law: it is *Milkovich*'s dissent. *Yagman* cites to a Seventh Circuit opinion that erroneously cited to *Milkovich*'s majority for the dissent's proposition. *See Yagman*, 55 F.3d at 1441 (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir.1993)); *Milkovich v. Lorain Journal Co.*, 497 U.S. at 28, n.6, 34-36 (Brennan, J. dissenting).

[10] Musk also relies on *Dreamstone Entertainment Ltd. v. Maysalward Inc.*, 2014 WL

13

### D. **A Reasonable Reader Could Believe Musk Was Literally Accusing Musk of Sex Crimes—*Milkovich* Prong Two.**

The second *Milkovich* prong follows "the *Bresler–Letter Carriers–Falwell* line of cases," which protects "rhetorical hyperbole," "lusty and imaginative expression," "satire," "parody," and "loose, figurative language," that prevents a statement from being "reasonably . . . interpreted as stating actual facts about an individual," even if its literal interpretation can be proven true or false. *Milkovich*, 497 U.S. at 16-17, 20. As *Milkovich* explains, in *Bresler*, an article characterizing "[a] developer's negotiating position as 'blackmail'" did not imply the actual fact that the developer committed the crime of blackmail, because "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the developer's] negotiating position extremely unreasonable." *Id.* at 17. In the most basic terms, the question is whether a reasonable reader would understand that the defendant's words are being communicated literally rather than figuratively, not whether the accusation would be doubted or would be deemed conjecture. *See Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053-54 (9th Cir. 1990) (analyzing whether the defendant used figurative or hyperbolic language that "would negate the impression that he was *seriously maintaining*" his accusation) (citing *Milkovich*, 497 U.S. at 21) (emphasis added); *Varian Med. Sys.,* 6 Cal. Rptr. 3d at 337-38 ("[T]he mere fact that the audience might not have believed defendants' postings does not change their defamatory character. . . . It is not necessary that anyone believe them to be true, since the fact that such words are in circulation at all . . . must be to some extent injurious to his reputation.").

---

4181026 (C.D. Cal. Aug. 18, 2014) (Doc. 30 at 23), which acknowledged that "an accusation of theft could eventually be proven true or false at trial," but ultimately protected the counter-defendant's opinion, as it included an assessment of the counter-plaintiff's "subjective state of mind, which is less susceptible to being proven true or false." *Id.* at 8. Unlike *Dreamstone*, Musk makes straightforward criminal accusations, devoid of an assessment of Unsworth's subjective state of mind.

14

While Musk's Tweets and BuzzFeed E-mails are easily dealt with together as to whether they are provably false—they are each accusations of criminal misconduct based on false and incomplete facts—they must be analyzed separately under *Milkovich's* "actual facts" analysis because they were made in very different contexts. In determining whether no reasonable reader could interpret Musk's accusations as being literally—rather than figuratively—maintained, California courts engage in a contextual analysis, though they have at times articulated the factors slightly differently.  For instance, the Ninth Circuit instructs courts to employ the following "totality of the circumstances" test to determine whether a reasonable reader could believe an accusation states actual fact about the plaintiff:

> (1) the broad context; (2) the specific context and content of the statement; and (3) whether the statement is sufficiently factual to be susceptible of being proved true or false.

*Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009). Nothing about Musk's Tweets and BuzzFeed E-mails conveys the impression that he was engaged in "exaggeration and non-literal commentary." *Id.*

### i.   **Musk's Twitter Accusations State Actual Facts.**

Musk engaged in a six-week campaign to defame Unsworth with the same accusations, reaffirming his accusation on Twitter, alone, no less than three times. The general and specific context of Musk's Twitter accusations reinforced that he was literally accusing Unsworth of sex crimes against children. His false accusations were in the context of discussing a real life or death Rescue, and the specific defamatory statements were made in reference to that life or death situation, about which Musk touted firsthand knowledge. Throughout the Tweets, Musk does not display an incredulous or humorous tone. Musk does not dispute and indeed asserts in his motion that he was seriously maintaining the Tweets' statements regarding his alleged firsthand knowledge of the Cave Rescue, yet simultaneously asserts that contextual clues signaled to a reasonable reader that Musk was engaging in non-

literal "hyperbole" or "imaginative expression" when accusing one of the Rescue's heroes of being a pedophile.

### 1. The Broad Context Reinforced that Musk's Tweets Were Literally Maintaining His Criminal Accusations.

In assessing the broad context of an accusation, courts are instructed to consider "the general tenor of the entire work, the subject of the statements, the setting, and the format of the work." *Knievel v. ESPN*, 393 F.3d 1068, 1075 (9th Cir. 2005). The subjects of Musk's Tweets were not laughing or political matters. (*See* Compl. Exs. B-G, I). His accusations leveled serious accusations of criminal misconduct against the backdrop of a life or death situation. Thirteen people were trapped inside the Cave for more than two weeks. (*Id.* at ¶¶ 23-25). A Thai Navy Seal lost his life. (*Id.* at ¶ 50). Many others risked their lives to save the children. (*Id.* at ¶ 66). In this broad context, no reasonable reader would expect hyperbolic jokes about one of the heroes—Unsworth—engaging in pedophilia.

And, as to the general tenor, each of Musk's Twitter accusations were surrounded by matters of which Musk is clearly very serious, as demonstrated by his submission of a litany of materials outside the record purporting to establish that he was genuinely attempting to help save the kids and that his Tube would have worked. (Docs. 30, pp. 1-2, nn. 1-5; 30-1; 30-2). Yet, Musk asks this Court to rule as a matter of law that a reasonable reader would have known that Musk was serious about everything in his Tweets except his accusations of serious criminal misconduct against Unsworth. *Cf. Unelko*, 912 F.2d at 1054 (holding that statement on CBS's "60 Minutes" stated actual facts despite the "humorous and satirical nature of Rooney's segment . . . [because] the statement 'it didn't work' was presented as fact"); *Milkovich*, 497 U.S. at 21 (finding that general tenor of sports column did not "negate the impression that the writer was seriously maintaining that petitioner committed the crime of perjury").

16

## 2.  Musk's Arguments About General Context Are Unavailing.

Musk focuses primarily on one aspect of the general context: the setting. Contrary to Musk's argument, however, tweets are not presumptively protected opinion. As discussed in the cases throughout this brief, courts routinely refuse to apply First Amendment protections to posts on unmoderated Internet forums—from Twitter, to Facebook, to Yelp, to message boards, to comment sections. "While courts have recognized that online posters often play fast and loose with facts, this should not be taken to mean online commentators are immune from defamation liability." *Sanders v. Walsh*, 219 Cal. App. 4th 855, 864 (2013) (internal quotation marks and citation omitted). The court must vigorously reject Musk's contention that Twitter posts enjoy absolute immunity from defamation (or other legal) actions, as it would, for example, immunize Tesla and Musk from any claims based on false facts posted by Musk even though Musk Twitter account is registered with the SEC.

As the California Court of Appeals presciently warned:

> The Internet may be the "new marketplace of ideas," but it can never achieve its potential as such unless it is subject to the civilizing influence of the law like all other social discourse. Some curb on abusive speech is necessary for meaningful discussion. We would be doing a great disservice to the Internet audience if we were to conclude that all speech on Internet bulletin boards was so suspect that it could not be defamatory as a matter of law. In effect, such a conclusion could extinguish any potential the forum might have for the meaningful exchange of ideas.

*Varian Med. Sys.*, 6 Cal. Rptr. 3d at 337; *see also Bently Reserve LP v. Papaliolios*, 218 Cal. App. 4th 418, 422 (2013) ("Internet commentary does not ipso facto get a free pass under defamation law.").

Musk's litany of cases is largely inapposite, and some undermine his argument. Musk's central case is *Summit Bank v. Rogers*, 206 Cal. App. 4th 669 (2012), but he omits the key fact that the post in *Summit* was made on a Craigslist page aptly named "Rants and Raves." *Id.* at 696. The vague accusations in *Summit*— some of which "were basically true"—also bear little resemblance to the clear

criminal accusations here. *Id.* at 698. *Chaker v. Mateo*, 209 Cal. App. 4th 1138 (2012), ultimately cuts against his proposed presumption: the court found that calling someone "criminal" in an Internet post could "fall outside the scope of nonactionable opinion or epithet," but did not in that case because the plaintiff was indeed a criminal. *Id.* at 1150.  And *Clifford v. Trump*, 339 F. Supp. 3d 915 (C.D. Cal. 2018), protected President Trump's tweet referring to a sketch instigated by the plaintiff as a "total con job," because—unlike Musk's Tweets and repeated accusations—Trump's tweet was made in a *political context* and it was a "one-off rhetorical comment, not a sustained attack on the veracity of Plaintiff's claims." *Id.* at 926-28.

Nor were Musk's Twitter accusations made within the broader context of a "back and forth argument or in response to personal and legal attacks." (Doc. 30 at 12). And even if they were, this factor does not lead to the protection of criminal accusations based on false and incomplete disclosed facts. *See, e.g.*, *Dickinson v. Cosby*, 17 Cal. App. 5th 655, 691(2017) (holding no opinion protection for accusations made during acrimonious dispute).  Unsworth never engaged Musk in a back-and-forth, let alone did he launch personal or public legal attacks before Musk made the Twitter Accusations. A CNN interviewer asked Unsworth about the Tube, and he responded with colorful but well-founded criticisms—none of which were the kind of personal attacks leveled by Musk. (*Compare* Compl. ¶ 71 *with* Compl. Exs. B-G, I). Musk then launched the Twitter Accusations before he learned of any response from Unsworth or his attorneys. (Compl. Exs. B-G, I; Compl. ¶ 88 (Musk contending he learned of demand letter after his Tweets)).

Musk primarily relies on *Torain I* to argue for the importance of the nonexistent back-and-forth, but he omits the conclusion of the paragraph he quotes: "Defendant did not accuse plaintiff of committing any act or engaging in any specific conduct based on a false assertion of fact." 2007 WL 2331073, at *2. The focus in *Torain I* was not whether a dispute negates the communication of actual facts; rather, the back and forth is relevant because listeners understood that the pedophilia

accusation was based on the undisputed and well-publicized fact that the plaintiff declared "he wanted to sexually abuse . . . [defendant's] four-year-old child." *Torain II*, 279 Fed. App'x at 47; *Torain I*, 2007 WL 2331073, at *2-3. It strains credulity that Musk was basing his accusations of pedophilia on Unsworth's statement that Musk "can stick his submarine where it hurts," and in fact, he was not.

As for *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093 (N.D. Cal. 1999)—it also undercuts Musk's argument. Notwithstanding the parties' legal dispute, a perjury accusation was actionable because it was a "plain assertion of fact" with an undisclosed basis. *Id.* at 1104-05. The only protected criminal accusations were based on true, disclosed facts or were not meant literally. *Id.* at 1102-04.

Finally, it is again telling that Musk *turns to the dissent in Milkovich* to support his specious argument that a back-and-forth is pertinent. (Doc. 30 at 13 (quoting *Milkovich*, 497 U.S. at 33 n.8 (Brennan, J., dissenting))). The controlling majority opinion in *Milkovich* did not validate the notion that when legal threats have been made "reasonable readers know that the speaker is representing just 'one side in a controversy,' so 'they are properly warned to expect that the opinions expressed may rest on passion rather than factual foundation.'" *Milkovich*, 497 U.S. at 33 n.8.

### 3. The Specific Context Reinforced Rather than Negated that Musk Was Literally Maintaining His Twitter Accusations.

In assessing the specific context, courts consider the "content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation." *Knievel*, 393 F.3d at 1075. Here, Musk used clear language accusing Unsworth of a crime, touted his own credibility and firsthand knowledge, and reaffirmed the accusations. Unlike the type of fact pattern where no actual facts are found, Musk did not use any hyperbolic language that would support the impression he was speaking figuratively.

Musk does not dispute that "pedo guy" literally refers to pedophilia. An accusation of pedophilia is not a typical over-the-top insult a reasonable reader

would anticipate hearing. And courts find similarly colloquial accusations actionable. *See Cahill v. Edalat*, 2017 WL 2608857, at *4 (C.D. Cal. Feb. 15, 2017) (denying motion to dismiss when tweet accused plaintiff of stealing a computer and manufacturing illegal drugs, despite tweet containing ungrammatical language); *James Woods v. John Doe*, BC589746, at *1 (Feb. 8, 2016 Cal. Super. Ct.) (denying anti-SLAPP motion for the anonymous tweet, "cocaine addict James Woods still sniffing and spouting")[11]; *Maxon v. Ottawa Pub. Co.*, 929 N.E.2d 666, 677-78 (3d Dist. 2010) (anonymous internet posting on website that petitioners were "bribed" was defamatory *per se*).[12]

Moreover, Musk strived to establish credibility in his Tweets by touting his purported firsthand knowledge of the Cave and the Rescue. (*See* Compl. Exs. B-D (describing who was at Rescue site, being escorted into Cave, conditions in the Cave, and how Rescue was accomplished). In *PG Inn, Inc. v. Gatward*, 2014 WL 108412 (Cal. Ct. App. Jan. 13, 2014), the court rejected the argument that reviews on Yelp and TripAdvisor were protected rants when the defendant "implied knowledge of facts as an environmental expert with first-hand knowledge of conditions at the [plaintiff's] Inn." *Id.* at *2, 5; *see also Bently*, 218 Cal. App. 4th at 428–29 (finding Yelp reviews were unprotected, including when defendant touted his first-hand knowledge); *Hadley*, 2014 IL App (2d) 130489 at ¶ 47 (finding no protected opinion because, *inter alia*, internet commenter claimed to know where plaintiff lived).

To the extent this Court gives any credence to Musk's argument that "pedo guy" is presumptively protected opinion because his 20+ million Twitter followers would expect non-literal hyperbole, (*see* Doc. 30 at 12), Musk erased any doubt as to whether he was seriously maintaining his accusations of criminal misconduct when he tripled down on them, tweeting: "bey ya a signed dollar it's true" and "[y]ou

---

[11] A copy of the court's unpublished order in *Woods* is attached hereto as Exhibit 1.
[12] These clear accusations also remove any doubt that when Musk dubbed Unsworth a "sus" "pedo-guy," he was literally accusing him of pedophilia.

don't think it's strange he hasn't sued me?" (Compl. Exs. E, I).  *See Hooshmand v. Griffin*, 2017 WL 1376370, at *8 (finding statement actionable where defendant "essentially proclaimed on more than one occasions that what she said was true," including through her Yelp post stating, "If what I've posted is false, why haven't I been sued for defamation?").

### 4. Musk's Arguments About Specific Context Are Unavailing.

Musk asserts that colloquialisms are protected opinion, but that does not hold true for clear accusations of criminal conduct. Colloquial accusations are often actionable, such as the accusation of perjury in *Milkovich*. 497 U.S. at 5 ("'Anyone who attended the meet, whether he be from Maple Heights, Mentor, or impartial observer, *knows in his heart* that Milkovich and Scott lied . . . .'") (emphasis added). In a case about a single foul-mouthed, euphemistic tweet, *Gordon & Holmes v. Love*, 2016 WL 374950, (Cal. Ct. App. Feb. 1, 2016), a jury found the following statement was false (and thus communicated an actual fact about the plaintiff): "I was *fucking devastated* when Rhonda J. Holmes, Esquire, of San Diego was *bought off* @FairNewsSpears perhaps you can get a quote." *Id.* at *3 (emphasis added).

Musk's "pedo guy" accusation is a far less colloquial term than "Sandusky," which was found to state the actual fact that the plaintiff was a pedophile. *Hadley*, 2014 IL App (2d) 130489 at ¶ 27; *see also AvePoint, Inc. v. Power Tools, Inc.*, 981 F. Supp. 2d 496, 507-08 (W.D. Va. 2013) (finding no protected opinion when the defendant used the phrases "#Red Dragon" and the "#Red #SharePoint Dragon," to disparage plaintiff as a Chinese company, and tweeted "*U* know things are bad when the *Evil Avenue's* customers are *dumping* out of 3 year deals . . .") (emphasis added). Even under New York's overprotective law, an Internet blogger's colloquial statements that plaintiff was a "skank," "skanky," "ho" and "whoring" were not protected.  *Cohen v. Google, Inc.* 887 N.Y.S.2d 424, 428-29 (Sup. Ct. 2009).

Musk erroneously argues that "[i]nsults receive bright-line protection under the First Amendment." (Doc. 30 at 17). Musk himself backs off his pronouncement,

1   conceding that only "'imaginative' and 'non-literal' insults are "deem[ed] opinion."
2   (*Id.* at 18). Indeed, this bright-line rule would destroy the law of defamation:
3   defamatory statements are by definition insulting. None of the string of cases Musk
4   cites support bright line protections for insults. *See, e.g.*, *Harrell v. George*, 2012
5   WL 3647941 (E.D. Cal. Aug. 22, 2012) (no discussion of protecting insults);
6   *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1190-91, 1193-94 (9th Cir. 1989)
7   (protecting pre-*Milkovich*, obviously nonliteral, fantastical insults about plaintiff and
8   her family's sex lives); *Clifford*, 339 F. Supp. 3d at 926-27 (finding hyperbole where
9   accusation made only once in political context and where tweet's specific context
10  "displays an incredulous tone"). The full list of cases Musk cites for his specious
11  bright line rule bear little mention, other than *Chaker*, which negates Musk's
12  argument because it noted that labeling a person a criminal would not be protected
13  opinion. 209 Cal. App. 4th at 1150. Even reviews on Yelp—which are opinions—
14  may be filled with insults and remain actionable. *Bently*, 218 Cal. App. 4th at 433.

15          **ii.    Musk's BuzzFeed E-mails State Actual Facts.**

16          Musk cannot escape liability for the BuzzFeed E-mails by arguing he did not
17  state actual facts about Unsworth, given that Musk made plain and particularized
18  statements that Unsworth is a "child rapist" who married a 12-year-old "child bride,"
19  and Musk simultaneously provided a litany of false facts purportedly demonstrating
20  his firsthand knowledge of Unsworth's life. (Compl. ¶ 88). Moreover, very few of
21  Musk's counterarguments apply in this context, where Musk was making
22  accusations via e-mail to an inquiry from the news media.

23          The broad context of Musk's BuzzFeed E-mails mirrors the context of the
24  Tweets, except for one aspect that is a lynchpin of Musk's argument that accusations
25  on Twitter are presumptively opinion. Musk's BuzzFeed Emails to a member of the
26  media cannot be characterized as an Internet post. (*Id.* ¶¶ 88, 92; Compl. Ex. K).

27          As for specific context, accusations of illegal conduct communicated using
28  plain, non-figurative language contribute to a reasonable reader's understanding that

actual facts are being communicated. This is all the truer when a defendant makes particularized accusations. Much like Musk, in *Grenier v. Taylor*, 234 Cal. App. 4th 471 (2015), the defendants stated actual facts when they levied general and specific criminal accusations on an internet forum, including assertions of "theft, drug dealing, drug smuggling," and that plaintiff was "a self-confessed felony child abuser" who "molested his own son." *Id.* at 486; *see also Walsh v. Latham*, 2014 WL 618995, at *4 (Cal. Ct. App. Feb. 18, 2014) (finding no protected opinion for calling plaintiff "'perv' or 'pervert,' a 'SICKO,' 'not normal,' and a 'stalker,'" including because the Facebook posts also described "concrete behavior"); *Sanders*, 219 Cal. App. 4th at 864 (holding that posts on Internet complaint and review sites were not protected opinion when, *inter alia*, the defendant "recited alleged historical facts detailing perjury and fraud" and pointed to other specific details).

Further, Musk cannot argue that child rapist and child bride are just euphemistic figures of speech that are not taken literally. This was not, for example, an off-color accusation that a poker player on a run "raped" his opponents at the table. These accusations are subject to only one interpretation: that Unsworth is a pedophile. Indeed, there was absolutely no hyperbolic or figurative language employed by Musk regarding the alleged criminal conduct.

As in *PG Inn, Inc.*, *Bently*, and *Hadley,* Musk touted his purported credibility and firsthand knowledge to accuse Unsworth of criminal sexual misconduct, suggesting that Musk had conducted an extensive investigation into Unsworth's life that revealed he is a child rapist. (Compl. ¶ 88 ("I suggest that you call people you know in Thailand, find out what's actually going on . . . .")). Those false facts included, for instance, that Musk was personally told "[Unsworth] was banned from the site," that "most of the actual dive team refused to hangout with him," and that Unsworth had "been traveling or living in Thailand for 30 or 40 years, mostly Pattaya Beach, until moving to Chiang Rai for a child bride who was about 12 years old at

the time." (*Id.* ¶¶ 88, 92). Musk even sent BuzzFeed a letter he received from the Thai Prime Minister to demonstrate his on-the-ground involvement in the Rescue. (Compl. Ex. K at 7). After flaunting his knowledge of (false) facts and his connections to the highest echelon of Thai government, Musk, an internationally renowned engineer and businessman, cannot seriously argue that a reasonable reader of the BuzzFeed email would think him an ignorant ranter hurling mere insults.

With little left to hang his hat on, Musk argues that by designating his First Email as "off the record," his Emails "were expressly not meant to be relied on as fact." (Doc. 30 at 20). It is unclear where Musk derived this novel interpretation of "off the record," and, in any case, his First Email was not off the record, because the reporter never agreed to it. (Compl. Ex. K at 2).

Musk also contends that his accusations were "uniformly treated . . . as opinion" by those who read and commented upon them: i.e., the BuzzFeed reporter and a few anonymous BuzzFeed commenters. (Doc. 30 at 21). Even if the interpretations of a handful of people could somehow bind this Court—despite Musk's accusations being published to tens of millions of people—Musk ignores that at least one of these people understood that he was, in fact, accusing Unsworth of being a pedophile. And Musk cannot point to statements by this small group of people that they thought Musk was just kidding or engaging in hyperbole.

In the August 28 BuzzFeed Article, the reporter characterized Musk's "pedo" tweet as having "leveled against . . . Unsworth" "the pedophile claim." (Compl. Ex. J. at 2). The article then reads Musk's August 28 Tweet—in which Musk questions why he has not been sued—as "Musk suggest[ing] the pedophilia accusation wasn't baseless at all." (*Id.*)  The September 4th BuzzFeed Article continues in the same vein, taking Musk's accusations of crimes literally:

- "In A New Email, Elon Musk Accused A Cave Rescuer Of Being A "Child Rapist" . . . . (Compl. Ex. K at 1).

- "In an email . . ., . . . Musk accused a Thai cave rescuer of moving to Thailand

24

to take a child bride." (*Id.*)

- "Musk last month apologized for accusing Vernon Unsworth of pedophilia . . . ." (*Id.* at 2).

- "Musk repeated his original attacks on Unsworth — and made new and specific claims, lambasting the rescuer as a 'child rapist' who had moved to the Southeast Asian country to take a child bride." (*Id.*)

- "Musk . . . has now accused [Unsworth] of taking a child bride." (*Id.* at 4).

Interestingly, Musk appears to agree with anonymous commenters who characterized his accusations as "mind-bendingly stupid" and "idiotic comments." (Doc. 30 at 31 (citing Compl. Ex. J at 5)).  Musk, however, does not cite a case that grants special first amendment protection to statements that are stupid or idiotic.

Finally, it strains credulity that Musk's BuzzFeed Emails were somehow a response to Unsworth's counsel notifying Musk of his demand letter. Not that this, the demand letter itself, the purported back-and-forth, or some perceived personal slight could transform Musk's literal assertions of child rape and child matrimony into protected opinions. *See, e.g.*, *Dickinson*, 17 Cal. App. 5th at 691 (holding no opinion protection for demand letter and press release accusing defendant of lying about rape accusation). But, for the record, Musk landed in BuzzFeed's crosshairs because of his Seventh Tweet on August 28, 2018, stating "You don't think it's strange he hasn't sued me?"—which renewed Musk's accusations of pedophilia. (Compl. Exs. I-J). This tweet and the subsequent articles did not primarily focus on Unsworth's counsel notifying Musk of a demand letter. Musk cannot blame Unsworth for his own poor decision to falsely assassinate Unsworth's character.

## IV.   **CONCLUSION**

Musk's Motion to Dismiss should be denied as Musk cannot dispel the provably false, factual implications of his statements that Unsworth is a "pedo-guy," a "child rapist[]," and a husband to a 12 year old "child bride."

1

Dated: February 22, 2019                    **L. LIN WOOD, P.C.**

2

3                                           By: */s/L. Lin Wood*
                                            L. Lin Wood

4

5                                           **CHATHAM LAW GROUP**

6                                           By: */s/ Robert Christopher Chatham*
                                            Robert Christopher Chatham

7

8                                           Attorneys for Plaintiff
                                            VERNON UNSWORTH

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28