UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | May 10, 2019 |
|---|---|---|---|

| Title | *Vernon Unsworth v. Elon Musk* |
|---|---|

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:** IN CHAMBERS ORDER DENYING DEFENDANT'S MOTION TO DISMISS [30]

## I.     Introduction and Background

Plaintiff Vernon Unsworth filed the instant defamation action on September 17, 2018. Dkt. 1. On December 26, 2018, Defendant Elon Musk filed a motion to dismiss the case. Dkt. 30. On April 26, 2019, the Court issued a text-only entry indicating that Defendant's motion was denied and that a detailed in chambers order would subsequently issue. Dkt. 34.

## II.    Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" without more. *Id.* (internal quotation marks omitted). "Allegations in the complaint, together with reasonable inferences therefrom, are assumed to be true for purposes of the motion." *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007).

|   | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | May 10, 2019 |
|---|---|---|---|

| Title | *Vernon Unsworth v. Elon Musk* |
|---|---|

### III. Factual Allegations

#### A. Plaintiff and Defendant

Plaintiff's factual allegations, assumed at this stage to be true, are as follows. Plaintiff is a highly respected caver. Dkt. 1 ¶ 7. He has been involved in numerous cave rescues in the United Kingdom. *Id.* ¶ 10. He first visited Thailand in 2011 and has since periodically returned as his significant other resides there. *Id.* ¶ 11. Defendant is the founder or a co-founder of several companies, including Tesla, Inc., SpaceX, Neuralink, and PayPal. *Id.* ¶¶ 15-18. Since June 2009, he has maintained a Twitter account and, during the relevant events, over 22 million people followed his account. *Id.* ¶¶ 21-22.

#### B. The Cave Rescue

Plaintiff was one of many individuals involved in the successful efforts to extract twelve boys and their soccer coach from the Tham Luang Nang Non cave system, located in northern Thailand, in June and July 2018. *Id.* ¶ 2. He possessed firsthand knowledge of the cave system from previous surveys he had conducted of the passageway. *Id.* ¶ 27.

While rescue efforts were ongoing, Defendant offered to build a mini-submarine, which he claimed could transport the victims out of the cave system. *Id.* ¶ 62. Defendant and his team built the mini-submarine and he personally delivered it to the cave system on either July 9, 2018 or July 10, 2018. *Id.* ¶ 64. By the time the mini-submarine was delivered, eight of the twelve boys had been rescued. *Id.* ¶ 65.

#### C. Plaintiff's CNN Interview

On July 13, 2018, Plaintiff participated in an interview with a cable news channel, CNN, to discuss the rescue operation. *Id.* ¶ 70. Asked what he thought of the mini-submarine, Plaintiff stated that it was a "PR stunt," that it "had absolutely no chance of working," and that Defendant "had no conception of what the cave passage was like," adding that Defendant could "stick his submarine where it hurts." *Id.* ¶ 71.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | May 10, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

### D.  Defendant's Tweets

On July 15, 2018, after Plaintiff's CNN interview, Defendant posted the following message on Twitter:

> Never saw this British expat guy who lives in Thailand (sus) at any point when we were in the caves. Only people in sight were the Thai navy/army guys, who were great. Thai navy seals escorted us in – total opposite of wanting us to leave.

*Id.* ¶ 73. "Sus" is commonly understood as an abbreviated form of "suspicious." *Id.* ¶ 74.

Defendant followed up with another tweet that same day:

> Water level was actually very low & still (not flowing) – you could literally have swum to Cave 5 with no gear, which is obv how the kids got in. If not true, then I challenge this dude to show final rescue video. Huge credit to pump & generator team. Unsung heroes here.

*Id.* ¶ 75.

Defendant posted for a third time that day:

> You know what, don't bother showing the video. We will make one of the mini-sub/pod goingss all the way to Cave 5 no problemo. Sorry pedo guy, you really did ask for it.

*Id.* ¶ 76. "Pedo" is a well-recognized shorthand phrase for the term "pedophile," and "pedophile" is a term used to describe an adult who derives sexual gratification from sexual fantasies or acts involving a child. *Id.* ¶¶ 77-78.

In a fourth tweet on July 15, 2018, referring to his third tweet, Defendant stated: "Bet ya a signed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | May 10, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

dollar it's true." *Id.* ¶ 79.

On July 18, 2018, following public comments by shareholders of one of his companies expressing displeasure with Defendant's tweets, Defendant deleted the July 15 accusatory tweets and published two tweets that purported to be an apology. *Id.* ¶ 80. Defendant stated: "[M]y words were spoken in anger after [Plaintiff] said several untruths," but "[n]onetheless, [Plaintiff's] actions against me do not justify my actions against him, and for that I apologize to [Plaintiff] and to the companies I represent as leader." *Id.* The "apology" did not disavow or retract his accusations of pedophilia against Plaintiff. *Id.* ¶ 81.

On August 6, 2018, Plaintiff, through counsel, transmitted a letter to Defendant at the email address identified by Defendant, advising Defendant that his accusation of pedophilia against Plaintiff was false and requesting that Defendant correct the public record. *Id.* ¶ 82.

On August 28, 2018, Defendant responded by posting another tweet about Plaintiff. *Id.* ¶ 83. He wrote: "You don't think it's strange [Plaintiff] hasn't sued me? He was offered free legal services." *Id.* This post conveyed to the average reader that Plaintiff's failure to sue Defendant was evidence that Plaintiff is, in fact, a pedophile. *Id.* ¶ 84.

      E.      **Defendant's Emails to BuzzFeed**

Defendant's August 28, 2018 tweet set off a chain reaction on Twitter and in the media. *Id.* ¶ 85. That day, BuzzFeed News (among others) published an article regarding Defendant's continued accusations of pedophilia against Plaintiff. *Id.* ¶ 86. On August 29, 2018, one of Plaintiff's attorneys responded on Twitter to Defendant's August 28 tweet by stating that Defendant "should check his mail before tweeting" and attaching a copy of Plaintiff's August 6 demand letter. *Id.* ¶ 87.

On August 30, 2018, Defendant sent an email directly to the reporter who had authored BuzzFeed News' article:

> I suggest that you call people you know in Thailand, find out what's actually going on and stop defending child rapists, you fucking asshole. He's an old,

                                                                                                                     :

Initials of Preparer

                       PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | May 10, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

> single white guy from England who's been traveling or living in Thailand for 30 to 40 years, mostly Pattaya Beach, until moving to Chiang Rai for a child bride who was about 12 years old at the time. There's only one reason people go to Pattaya Beach. It isn't where you'd go for caves, but it is where you'd go for something else. Chiang Rai is renowned for child sex-trafficking.
>
> He may claim to know how to cave dive, but he wasn't on the cave dive rescue team and most of the actual dive team refused to hang out with him. I wonder why . . .
>
> As for this alleged threat of a lawsuit, which magically appeared when I raised the issue (nothing was sent or raised beforehand), I fucking hope he sues me.

*Id.* ¶ 88.

Defendant sent a follow-up email to the BuzzFeed News reporter on August 30, refuting Plaintiff's claim that Defendant was asked to leave by the Thai government and stating that he never saw Plaintiff at any point (and that Defendant was told that Plaintiff was "banned from the site"). *Id.* ¶ 92.

Defendant's accusations that Plaintiff is a child rapist, married a 12-year old child, engaged in sex trafficking, and was excluded by the dive team because of his alleged misconduct with children are false. *Id.* ¶ 89. In addition, Defendant's accusations that Plaintiff had visited Pattaya Beach, lived in Thailand for 30 to 40 years, and lived in Chiang Rai with a 12-year old bride are false. *Id.* ¶¶ 90-91.

## IV.  Discussion

### A.  Fact Versus Nonactionable Opinion

Defendant contends that his motion "boils down to a single question: Accepting [Plaintiff's]

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | May 10, 2019 |
|---|---|---|---|

| Title | *Vernon Unsworth v. Elon Musk* |
|---|---|

well-pleaded allegations as true, would a reasonable reader believe that [Defendant's] statements were supported by objective facts or were instead 'nonactionable opinion'?" Dkt. 30 at 5. Defendant argues that his statements constitute nonactionable opinion.

In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19, 24 (1990), the Supreme Court distinguished between "pure" opinions—which do not imply facts capable of being proven true or false and are thus protected by the First Amendment—and statements that may imply a false assertion of fact, which are actionable even if couched as a statement of "opinion."

"In *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990), [the Ninth Circuit] held that the threshold question after *Milkovich* in a defamation claim is 'whether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact.'[1] If the answer is no, the claim is foreclosed by the First Amendment." *Gardner*, 563 F.3d at 987 (citing *Unelko*, 912 F.2d at 1053). The Ninth Circuit employs a "three-part test to resolve this question: (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates the impression, and (3) whether the statement in question is susceptible of being proved true or false." *Id.* The Ninth Circuit has also referred to this test as a "totality of the circumstances" inquiry that depends on: "(1) the broad context; (2) the specific context and the content of the statement; and (3) whether the statement is sufficiently factual to be susceptible of being proved true or false." *Id.* (citing *Knievel v. ESPN*, 393 F.3d 1068, 1075 (9th Cir. 2005)).

"Whether an allegedly defamatory statement is one of opinion or fact is a question of law." *Gardner*, 563 F.3d at 986. Thus, it is the Court's role to determine whether, as a matter of law, a reasonable factfinder could conclude that Defendant's allegedly defamatory statements implied assertions of objective fact. "If the [C]ourt concludes the statement could reasonably be construed as either fact or opinion, the issue should be resolved by a jury." *Campanelli v. Regents of Univ. of Cal.*, 44

---

[1] More specifically, the question is whether a "reasonable listener could consider [the alleged defamer's] comments to imply an assertion of objective facts rather than an interpretation of the facts equally available to [the alleged defamer] and to the listener." *Gardner v. Martino*, 563 F.3d 981, 988 (9th Cir. 2009). In other words, the content of the assertion must imply that the speaker knows a fact that the listener does not.

                                                                               : 
                                                                    _____
                                                                    Initials of Preparer
                                                                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | May 10, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

Cal. App. 4th 572, 578 (1996).

    **B.**    **Analysis**

The Court follows the Ninth Circuit's guidance in applying the three-part test.

    *1.*    *General Tenor of the Entire Work*

Defendant makes two arguments regarding the general context. First, he argues that statements on unmoderated internet forums are presumptively opinion because "[i]nternet speech is unique." Dkt. 30 at 10-11. Defendant cites several cases—from New York, Delaware, and California state courts—to illustrate the proposition that internet speech is light on facts and heavy on opinion, and that reasonable readers thus discount internet speech. Defendant selectively quotes a California case, *Summit Bank v. Rogers*, which, according to Defendant, "explain[s] that the reader 'should be predisposed to view [statements made on an unmoderated internet forum] with a certain amount of skepticism, and with an understanding that they will likely present one-sided viewpoints rather than assertions of provable facts." *Id.* at 11 (quoting *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 696 (2012)). However, context is important; the statements in *Summit Bank* "appeared in a section of the Craigslist Web site entitled 'Rants and Raves,'" and it was those specific statements—not internet speech, generally—that the court held were "predisposed" to be opinion. *Summit Bank*, 206 Cal. App. 4th at 696.[2] A more nuanced view

---

[2] Context is important in another case cited by Defendant, *Global Telemedia International v. Doe 1*, 132 F. Supp. 2d 1261 (C.D. Cal. 2001). Defendant quotes the case as stating that, "[u]nlike many traditional media, there are no controls on [internet] postings." Dkt. 30 at 11. In fact, the "postings" that the case was discussing were messages on the "Raging Bull Message Boards," which organized "chat-rooms [that were] open and free to anyone" and where the "vast majority of the users [were] . . . effectively anonymous." *Glob. Telemedia*, 132 F. Supp. 2d at 1264. In addition, that court did not discuss any special presumption; rather, it applied the standard "totality of the circumstances" test. *Id.* at 1267. Ultimately, the court found that the statements made in the chatrooms were opinion, in large part because the messages "lack[ed] the formality and polish typically found in documents in which a reader would expect to find facts." *Id.* (holding that statements such as "dill weed I bet you get your frustrations worked out at he YMCA stupid flippin puss I got info comin at you that will make you puke about this stock" were nonactionable opinion).

                                                                                                                                                                                                            :

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | May 10, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

of internet speech is that, "generally, 'online speech stands on the same footing as other speech,'" although "blogs[3] are a subspecies of online speech which inherently suggest that statements made there are not likely provable assertions of fact." *Obsidian Fin. Grp., LLC v. Cox*, 812 F. Supp. 2d 1220, 1223 (D. Or. 2011) (quoting *In re Anonymous Online Speakers*, 661 Fed. Appx. 1168, 1173 (9th Cir. 2011)). In sum, the fact that Defendant's statements were made on the internet does not entail that the statements were opinion.

Defendant also contends that speech on Twitter, in particular, is subject to a "heavy presumption" of opinion. Dkt. 30 at 11-12. Defendant notes that Twitter permits "unfiltered opinion," allowing users to directly communicate without a moderator. *Id.* Thus, argues Defendant, "Twitter participants . . . expect to read opinions, not facts." *Id.* at 12. Of course, Twitter is replete with opinions—but it also is an important source for facts. *See, e.g.*, Tom Rosensteil et al., *Twitter and the News: How People Use the Social Network to Learn About the World*, American Press Institute (Sept. 1, 2015), https://www.americanpressinstitute.org/publications/reports/survey-research/how-people-use-twitter-news (finding that "[n]early 9 in 10 Twitter users in the study (86%) say they use Twitter for news"). Because Twitter contains both opinion and news,[4] it does not follow that statements on Twitter are presumptively opinion.

Second, Defendant argues that his statements were in the middle of a back-and-forth with Plaintiff, which weighs in favor of nonactionable opinion. Defendant points to a case, *Torain v. Liu*, in which the defendant called the plaintiff a "racist pedophile" after the plaintiff, a radio disc-jockey, had made statements concerning the young daughter of a disk-jockey on a rival station. No. 06 Civ. 5851(GBD), 2007 WL 2331073, at *1 (S.D.N.Y. Aug. 16, 2007). The court held that the defendant's statements were "clearly statements of opinion made in direct response to what he considered to be [the] plaintiff's outrageous and offensive on-air comments." *Id.* at *2. The court emphasized that the plaintiff's comments were made during a "war of words" that "was the subject of *extensive madia [sic]*

---

[3]  An online blog is a "frequently updated website consisting of personal observations, excepts from other sources, or, more generally, an online journal or diary." *Obsidian Fin. Grp., LLC v. Cox*, 812 F. Supp. 2d 1220, 1223 n.1 (D. Or. 2011) (citation and internal quotation marks omitted).

[4]  Defendant's own Twitter feed is illustrative of this point.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | May 10, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

*coverage and commentary.*" *Id.* at *3. The court held that the "'extensive media coverage' surrounding [the] plaintiff's comments [made] it impossible that an informed listener would think that [the] defendant was accusing [the] plaintiff of being a pedophile based on some undisclosed information known only to him." *Id.* It is not clear to this Court why "extensive media coverage," on its own, would necessarily weigh in favor of nonactionable opinion.[5]

Furthermore, it is true that a "heated and volatile setting" may make "seemingly 'factual' statements take on an appearance more closely resembling opinion than objective fact." *Steam Press Holdings, Inc. v. Hawaii Teamsters*, 302 F.3d 998, 1006 (9th Cir. 2002). However, this setting was not especially heated or volatile because the interactions were essentially in one direction. Indeed, after Plaintiff's CNN interview, the only other statement attributable to Plaintiff was his lawyer's admonition that Defendant should check his mail before tweeting. Thus, the instant context is significantly less noteworthy in this respect than that in *Steam Press,* which involved a "hostile" multi-year labor dispute where negotiations ended in an "impasse," workers engaged in a strike, and the labor union was ultimately decertified. *Id.*

Plaintiff, by contrast, notes that Defendant's tweets were made in the context of Defendant's retelling of the events of the cave rescue, which was ostensibly factual.

Taken as a whole, the broad context of Defendant's tweets does not cast doubt on the possibility that a reasonable factfinder could conclude that Defendant's allegedly defamatory statements implied assertions of objective fact. Defendant's statements were made on Twitter, but there is no strong (if any) presumption of nonactionable opinion based on that forum. Plaintiff and Defendant engaged in only a minimal back-and-forth—in that Defendant responded to Plaintiff's CNN comments—and this dispute was not especially heated or volatile.

In addition, the general context of Defendant's BuzzFeed emails further suggests that a reasonable factfinder could conclude that Defendant's allegedly defamatory statements implied

---

[5] *Torain* is also distinguishable on its facts. The defendant in that case made highly outlandish and inflammatory statements (e.g., that the plaintiff should have been "terminated from the face of the earth" and that the plaintiff was a "lunatic") that are unlike the statements made by Defendant in the instant case. *Id.* at *1.

: 

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | May 10, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

assertions of objective fact. There is nothing about the context in which Defendant made the statements—in emails to a specific reporter—that would create doubt as to whether Defendant's statements implied assertions of objective fact. Indeed, Defendant made his statements to a member of the news media, whose job is to uncover and collect facts.

      2.     *Specific Language Used*

The inquiry under this factor is whether the specific language used is "sufficiently factual to imply a false factual assertion." *Gardner*, 563 F.3d at 989. Courts consider whether a defendant used the "sort of loose, figurative, or hyperbolic language which would negate the impression that [he] was seriously maintaining that" the assertion was true. *Id.* at 990 (citations and internal quotation marks omitted). The more "outrageous and . . . outlandish" a statement, the more likely it is opinion. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1194 (9th Cir. 1989). Thus, for example, "vigorous epithets" and "lusty and imaginative expressions of . . . contempt" are protected speech, because a reasonable trier of fact could not conclude that such statements imply a provably false factual assertion. *Harrell v. George*, No. CIV S-11-0253 MCE DAD PS, 2012 WL 3647941, at *7 (E.D. Cal. Aug. 22, 2012) (citation omitted).

Defendant argues that his statements used the same sort of imaginative and non-literal insults that courts deem opinion. He contends that the "reasonable reader would understand that [Defendant's] over-the-top assertions—for example, that [Plaintiff] was a 'pedo guy' and had 'a 12-year old child bride'—were not assertions of fact. Dkt. 30 at 18. However, this assertion is belied by Defendant's subsequent conduct. Defendant did not call Plaintiff a "pedo guy" and leave it there; rather, he made follow-up statements indicating that he believed his statements to be true, such as tweets in which he offered to bet a signed dollar that his "pedo guy" allegation was true and mused that he thought it strange that Plaintiff had not sued him, implying that an innocent party would sue.

Defendant also suggests that his statements were colloquial and thus were not reasonably interpreted as statements of fact. The more statements lack the formality and polish typically found in documents in which a reader would expect to find facts, the more likely the statements are nonactionable opinion. Furthermore, at least one court has held that "short-hand phrases and language [are] not

                                                                                           :

Initials of Preparer    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | May 10, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

generally found in fact-based documents."[6] *Glob. Telemedia*, 132 F. Supp. 2d at 1267.

It is certainly true, on the one hand, that Defendant's statements used colloquialisms (e.g., "no problemo") and shorthand (e.g., "sus," "pedo guy," and "obv"), sometimes consisted of fragment sentences, and included at least one typographical mistake. However, on the other hand, Defendant's tweets used generally proper grammar with punctuation and had very few misspellings. And, as discussed above, Twitter's 280-character limit accounts for abbreviations without necessarily generating an inference of opinion. Thus, contrary to Defendant's contention, this factor does not weigh in favor of a conclusion that Defendant's statements were nonactionable opinion; the specific context suggests that a reasonable factfinder could conclude that Defendant's allegedly defamatory statements implied assertions of objective fact.

Taking Defendant's BuzzFeed emails into account further justifies this conclusion. Although Defendant used curse words, he wrote in clear, plain, and non-figurative language. He purported to convey actual facts and even suggested that the BuzzFeed reporter call people in Thailand to confirm his narrative. These emails—and even Defendant's tweets—are a far cry from the over-the-top language used in cases like *Global Telemedia.* Rather, this case is more analogous to *Yagman*.[7] *See Knievel*, 393 F.3d at 1075-76 (quoting *Standing Comm. on Discipline of U.S.D.C. for the C.D. Cal. v. Yagman,* 55 F.3d 1430, 1441 (9th Cir. 1995)).

### 3. Susceptibility of Being Proved True or False

For an allegation to be defamatory, it must be susceptible to being "proved true or false by reference to a core of objective evidence." *Yagman,* 55 F.3d at 1441 (citation and internal quotation marks omitted). In other words, the allegation must, in context, "imply facts capable of objective

---

[6] This conclusion is highly questionable in the context of Twitter, where words uttered in even obviously factual statements are often abbreviated in order to comport with the platform's 280-character limit.

[7] Although the issue in *Yagman* was whether certain statements were sanctionable, the case has been applied to the issue presented by the instant motion, namely whether certain language "can reasonably be interpreted as a factual allegation" in the context of a defamation case. *Knievel*, 393 F.3d at 1075.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | May 10, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

verification." *Id.* If the allegation is a statement of opinion, it is actionable only if it "implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Id.* at 1438 (quoting Restatement (Second) of Torts § 566 (1977)). If such defamatory facts are later disclosed, the statement of opinion "can be punished only if the stated facts are themselves false and demeaning." *Id.* at 1439 ("A statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning.").

     Defendant contends that Defendant expressed uncertainty, showing that his statements did not have a concrete factual foundation. Although an actual expression of uncertainty could certainly transform otherwise factual allegations into statements of opinion, Defendant's examples of Defendant's purported uncertainty do not do so. First, Defendant notes that he did not meet Plaintiff when they were in Thailand, and that "[f]rom then on, [they] were separated by 8,000 miles and an ocean." Dkt. 30 at 20. A physical distance between them—as well as the apparent fact that they never met in person—does not undermine the factual nature of Defendant's assertions. Second, Defendant argues that his language—referring to Plaintiff as an "expat guy" and a "dude"—suggests that Defendant was unfamiliar with Plaintiff and thus, presumably, could not have known anything about him. This argument is also without merit. Third, Defendant contends that his offer to "bet" a "signed dollar" that his allegations against Plaintiff were true demonstrates that he did not know that they were true. Although that may be one inference—people sometimes make bets when they do not know an outcome—another, equally available inference is that Defendant knew his allegations to be true and thus was willing to bet on their veracity. Fourth, Defendant states that he disavowed his tweets and apologized to Plaintiff. Defendant did make an apology for his tweets, but he never disavowed their specific allegations. Lastly, Defendant argues that his emails to the BuzzFeed reporter expressly were not meant to be relied on as fact, as he designated the statements "off-the-record." However, the BuzzFeed reporter never agreed to this condition, Dkt. 1, Ex. K[8] at 2, and, in any event, there is no particular reason that an off-the-record communication would necessarily state an opinion; that is, an off-the-record communication, like any other communication, can convey either opinion or fact.

     Defendant additionally contends that the allegations are nonactionable opinion because readers did not interpret them as factual assertions. Defendant points to a Twitter user's comment in response to

---

[8]    This factual allegation is taken from an exhibit that was filed by Plaintiff along with the Complaint.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | May 10, 2019 |
|---|---|---|---|

| Title | *Vernon Unsworth v. Elon Musk* |
|---|---|

Defendant's "pedo guy" post, the title of BuzzFeed News' article, and user comments on the BuzzFeed article. Dkt. 30 at 22. This exercise—providing a small sample of cherry-picked responses—misses the mark. The test, as discussed above, is not how readers *did* interpret Defendant's remarks, or even how they *would* interpret them. Rather, it is whether a reasonable factfinder *could* conclude that a contested statement implies an assertion of objective fact. Demonstrating that some readers did not, even if true, would not be dispositive.

Defendant's tweets were susceptible of being proved true or false because Plaintiff either is a pedophile or he is not and, if he were, evidence could prove it. Defendant's BuzzFeed emails are an even clearer case, because in the emails Defendant alleged highly detailed facts that, due to their specific nature, could be readily verified. Examples include the allegations that he has traveled or lived in Thailand for 30 to 40 years and that he moved to Chiang Rai for a child bride who was about 12 years old at the time.

        *4.*    *Summary*

In sum, considering the totality of the circumstances—including the general context of Defendant's statements, the specific context of the statements, and the statements' susceptibility of being proved true or false—a reasonable factfinder could easily conclude that Defendant's statements, as pleaded in the Complaint, implied assertions of objective fact.[9]

**V.   Conclusion**

For the reasons discussed above, the Court DENIES Defendant's motion. Dkt. 30. The Court sets a jury trial on October 22, 2019 at 9 a.m. and a pre-trial conference on October 7, 2019 at 3 p.m.

IT IS SO ORDERED.

---

[9] The Court has not concluded that a reasonable factfinder would *necessarily* construe the statements as fact. Because the Court has concluded that the statements could be construed as *either* fact or opinion, the issue should be resolved by a jury. *See Campanelli*, 44 Cal. App. 4th at 578. Furthermore, this order does not comment on any other aspect of Plaintiff's defamation case, the substance of which is not presently before the Court.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |