L. LIN WOOD, P.C.
L. Lin Wood (admitted *pro hac vice*)
lwood@linwoodlaw.com
Nicole J. Wade (admitted *pro hac vice*)
nwade@linwoodlaw.com
Jonathan D. Grunberg (admitted *pro hac vice*)
jgrunberg@linwoodlaw.com
G. Taylor Wilson (admitted *pro hac vice*)
twilson@linwoodlaw.com
1180 West Peachtree Street, Ste. 2040
Atlanta, Georgia 30309
404-891-1402; 404-506-9111 (fax)

WEISBART SPRINGER HAYES, LLP
Matt C. Wood (admitted *pro hac vice*)
mwood@wshllp.com
212 Lavaca Street, Ste. 200
Austin, TX 78701
512-652-5780
512-682-2074 (fax)

CHATHAM LAW GROUP
Robert Christopher Chatham
chris@chathamfirm.com
CA State Bar No. 240972
3109 W. Temple St.
Los Angeles, CA 90026
213-277-1800

*Attorneys for Plaintiff Vernon Unsworth*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH,<br><br>        Plaintiff,<br><br>v.<br><br>ELON MUSK,<br><br>        Defendant. | Case No. 2:18-cv-08048-SVW (JC)<br><br>Judge Hon. Stephen V. Wilson<br><br>**PLAINTIFF VERNON UNSWORTH'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: October 28, 2019<br>Time: 1:30 pm<br>Place:  Courtroom 10A<br>Complaint Filed:  Sept. 17, 2018<br>Trial Date:  Dec. 3, 2019 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  FACTUAL BACKGROUND ..............................................................................5

    A.   Musk Called Unsworth a Pedophile on July 15, 2018. ...............................5

    B.   The Convicted Felon Investigator Was Told to Use Aggressive Tactics. ...7

    C.   No One Told Musk that Unsworth Married or Raped Children. .................9

    D.   Republication of the BuzzFeed Emails Was Reasonably Foreseeable. ......10

III. ARGUMENT ......................................................................................................12

    A.   Unsworth Is a Private Figure. ....................................................................13

        1.   No Public Controversy at the Time of the Defamation ....................14

        2.   Unsworth Did Not Attempt to Influence Any Controversy .............15

        3.   Defamation Not Germane to Participation in Controversy .............15

    B.   All of Musk's Accusations Were Published with Actual Malice. .............17

        1.   The July 15 Tweets ............................................................................19

        2.   The August 28 Tweet ........................................................................20

        3.   The August 30 Emails ......................................................................21

    C.   Republication of the August 30 Emails Was Reasonably Foreseeable......23

IV. CONCLUSION ...................................................................................................25

i

1

## **<u>TABLE OF AUTHORITIES</u>**

2

<u>**Page**</u>

3

### **CASES**

4

5

*Antonovich v. Superior Court*, 234 Cal. App. 3d 1041 (1991)..................19, 20, 23

6

*Brown v. Kelly Broad. Co.*, 48 Cal. 3d 711 (1989) ................................13

7

8

*Cohen v. Cowles Media,* 501 U.S. 663 (1991) ....................................24

9

*Copp v. Paxton*, 45 Cal. App. 4th 829 (1996) ....................................14

10

11

*D.A.R.E Am. v. Rolling Stone Mag.*, 101 F. Supp. 2d 1270 (C.D. Cal.

12

    2000), *aff'd*, 270 F.3d 793 (9th Cir. 2001) ........................................17

13

*Dawe v. Corrections USA*, 2010 WL 682321 (E.D. Cal. Feb. 24, 2010).............13

14

15

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)...........................14, 15

16

*Good Gov't Group of Seal Beach, Inc. v. Superior Court*, 22 Cal. 3d

17

    672 (1978) ........................................................................18

18

19

*Grenier v. Taylor*, 234 Cal. App. 4th 471 (2015)......................12, 14, 16

20

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989)...................23

21

22

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979).....................................15

23

*Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576 (D.C. Cir. 2016)........................15, 16

24

25

*Khawar v. Globe Int'l, Inc.*, 19 Cal. 4th 254 (1998) ..............................13

26

*Makaeff v. Trump Univ., LLC*, 715 F.3d 254 (9th Cir. 2013)...................13, 14, 15

27

28

*Masson v. New Yorker Mag., Inc.*, 501 U.S. 496 (1991).......................21

*Mitchell v. Superior Court*, 37 Cal. 3d 268 (1984) ................................24

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)..........................17

*Prendeville v. Singer*, 155 Fed. Appx. 303 (9th Cir. 2005)...................13

*Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244 (1984) .................17, 21

*Shively v. Bozanich*, 31 Cal. 4th 1230 (2003)........................................23

*St. Amant v. Thompson*, 390 U.S. 727 (1968) ...................................18, 19

*Stoneking v. Briggs*, 254 Cal. App. 2d 563 (1967)................................24

*Time, Inc. v. Firestone*, 424 U.S. 448 (1976) ......................................15

*Waldbaum v. Fairchild Pubs., Inc.*, 627 F.2d 1287 (D.C. Cir.), *cert. denied*, 449 U.S. 898 (1980)...........................................................14

*Westmoreland v. CBS Inc.,* 596 F. Supp. 1170 (S.D.N.Y 1984) .........................21

*Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157 (1979)...............................15

*Z.F. v. Ripon Unified Sch. Dist.*, 482 F. App'x 239 (9th Cir. 2012) ....................14

## I.     INTRODUCTION

After spending over two weeks daily working to save the lives of 12 children and their soccer coach lost deep inside a dangerous Thai cave, Vernon Unsworth will now spend the rest of his life with the asterisk of pedophilia attached to his name as the direct result of a public relations campaign of false, heinous accusations by Elon Musk, a thin-skinned billionaire who is obsessed with his public image and who has a history of vindictively and intentionally ignoring truth to maintain that PR-created image. Musk started his public campaign to falsely destroy Unsworth on Twitter by describing him as "pedo guy," conveying that Unsworth is a pedophile. Musk then shifted gears to the mainstream media by falsely stating that Unsworth is a "child rapist" with a 12-year-old child bride. Hiding behind the litigation privilege, Musk now seeks to wrap up his campaign of false accusations against Unsworth by filing a motion that is replete with untruths and misrepresentations of the evidence so numerous that his dishonest legal tactics alone justify a denial of his motion. The only reason for Musk's campaign of false accusations is that Musk felt insulted by one CNN International interview by Unsworth in which he stated that Musk's child "submarine" would not work and was a PR stunt – criticisms that previously had been publicly leveled against Musk by members of the media and commentators. Like the bully that he is, Musk chose to lash out publicly at the criticism only by falsely attacking Unsworth, a relatively unknown individual, and publicly challenging him to sue for libel. Unsworth accepted Musk's challenge in order to redress the false attacks on his reputation and in doing so, has developed a factual record that demands that his case against Musk be resolved by a jury.

The evidence unquestionably establishes that Musk's heinous accusations against Unsworth are false, but Musk remains unwilling to admit it. In fact, Unsworth met his significant other, Tik, in a coffee shop in London in 2011, when she was 32 years old. Thereafter, he made his first visit to Thailand to visit her and explore the cave system near her residence, where the children were subsequently

lost in June 2018. (Pl.'s Stmt. of Addt'l Material Facts Precluding Summ. J. ("SF") 13). While Musk admitted under oath in his deposition that his accusations against Unsworth were false, he continues to assert them by alleging that he was in part relying on an "investigation" by James Howard-Higgins ("Howard"), a man he did not vet for reliability and who he now describes as a "con man" "just taking us for a ride." (SF 17, 46; *see also* Pl.'s Resp. to Def.'s Stmt. of Uncont'd Facts ("DF") 60-61).[1] Musk's motion continues to trade personal responsibility and truth for a "hail Mary" legal shot at assassinating Unsworth's character with the unverified, exaggerated, and false statements of his felonious "investigator." In his Declaration, Musk disingenuously seeks to hide the truth of what he "learned" from his investigator with misrepresentations and omissions, but facts are stubborn things:

- Musk did not know "who in the world [Unsworth] was" on July 15 and only undertook a Google search of Unsworth and "Chiang Rai," where he claimed to learn that Chiang Rai had a reputation for child prostitution, before posting his accusatory "pedo guy" tweet (SF 14; *see also* DF 84-85);

- Musk was forced to admit in his deposition that he did not know whether the accusations in his August 30 email to a BuzzFeed reporter that Unsworth is a child rapist with a 12-year-old child bride were "true or false" when he published them to the reporter (SF 15);

- Howard never stated that Unsworth was a pedophile or that he had a 12-year-old bride, making it clear that "[a]t no time have [] I reported that [he] is a child rapist. . ." and responded to Musk's email accusations by stating, "I do not know how anyone could come to that conclusion. . . ." (SF 18, 21, 26, 30);

- Jared Birchall, Musk's family office manager tasked by Musk to dig up dirt on Unsworth, never communicated to Musk that Unsworth was a child rapist

---

[1] Unsworth recently learned that Musk undertook a second investigation of Unsworth prior to this litigation, but Musk has refused to provide information about that investigation, which was apparently conducted by Cooley, LLP.

or had a 12-year-old bride, and Birchall confirmed with Howard that "[y]ou have not reported this and I have not communicated it either" (SF 18, 21, 27);

- Musk knew that none of the information communicated by Howard had ever been verified and that his reports on Tik's age were conflicting (SF 33, 37);

- The only information communicated in writing by Howard about Tik's age was an inaccurate, unverified statement that Tik was thought to have been 18 or 19 years old when she met Unsworth (SF 38-39);

- In addition to the $52,000 fee, Musk and Birchall offered Howard a $10,000 bonus for "successful confirmation of nefarious behavior" by Unsworth – a bonus which was never paid because no such evidence exists (SF 49); and

- On August 28, Musk set in motion a scheme for Howard "to immediately move forward with 'leaking' this information to the UK press" to plant "an unflattering story" about Unsworth and young girls "without any disclosure that it was coming from Elon Musk or one of his investigators" (SF 55-57).

Musk's motion is based principally on the antithetical bases that, on the one hand, he was not calling Unsworth a pedophile, while on the other hand, he did not harbor serious doubts as to whether Unsworth was actually a pedophile. Prior to his motion, Musk had never publicly asserted that he used the phrase "pedo guy" as a South African childhood insult intended only to describe Unsworth's demeanor and appearance as a "creepy old man" – a claim that defies the generally understood meaning of the phrase and is contradicted by his own tweets and emails. (SF 85-95).

Musk and Birchall agreed to artificially attempt to create defenses of substantial truth and no actual malice by playing a "hide the ball" game of discussing Howard's findings only by telephone or in person – never in writing. (SF 35). Birchall claims that Howard was "more affirmative" in phone calls that he thereafter conveyed orally to Musk. However, it remains undisputed, as Musk quietly admits in his statement of facts: Musk <u>never</u> heard from any source, verbally or in writing, that Unsworth "married" Tik before she was 18 or 19 years old. Even though it

contradicts and contorts every written document that Howard provided, Musk and Birchall claim that, at best, they were told by phone that it was possible that Unsworth *met* his significant other when she was 12 years old, but never that he *married* or started a physical relationship with her at that age. On August 24, 27, and 30, Musk received separate written reports stating that Unsworth *met* Tik when she was at least 18 or 19 years old (and married her some years after that) – but less than 8 hours after getting the last such report, Musk nonetheless told the BuzzFeed reporter that Unsworth is a child rapist who married a 12-year-old child bride.

After he doubled and tripled down on Twitter on the accusation known to describe a pedophile (betting it was true and suggesting truth by Unsworth's failure to sue (SF 2-3, 7-8)), Musk then paid at least $52,000 and offered an incentive bonus of $10,000 to a convicted felon with whom he had no prior relationship to prove whether Unsworth was "another Jeffrey Epstein." (SF 95). He obtained confidential information on Unsworth's contacts with his UK legal counsel and orchestrated a malicious, false, and anonymous leak campaign in the UK and Australian press. When that failed, he took matters into his own hands by sending emails to an adversarial reporter, in response to a bona fide request for comment, which stated as a matter of fact false accusations that Unsworth was a child rapist with a 12-year-old child bride. Musk contends that the republication of his email accusations was not reasonably foreseeable despite the undisputed facts that he emailed them to a reporter with whom he had no historical relationship, calling the reporter a "fucking asshole" in the first sentence, has admitted that he wanted the information published whether true or false, and told the reporter that publication is "up to you." The most accurate description to this defense is set forth by adopting Musk's description of his conduct:

> I didn't expect Buzzfeed to publish an off the record email. My intent was to have them investigate and come to their own conclusions, not publish my email directly. ***Still, I'm a fucking idiot***."

(SF 65 (emphasis added)).

The truth is that the media was ridiculing Musk about the tube, calling it a PR stunt, likely because Musk frequently tweeted about it, posting photos and videos. Musk admitted that "I can see how this would look like a 'narcissistic PR stunt.'" (SF 101). When Unsworth, a private person who was pivotal to the cave rescue, joined the voices of others describing it as a PR stunt, Musk retaliated by trying to destroy him – making up out of whole cloth and publishing to the world false accusations that Unsworth is a pedophile and child rapist who married a 12-year-old.

With a straight face, Musk unabashedly seeks judgment because he claims legal protection for accusations of pedophilia against British men who spend time in Thailand. Musk's accusations are false, defamatory, and were published negligently and with actual malice. His motion for summary judgment must be denied.

## II.   FACTUAL BACKGROUND[2]

Musk's factual recitation of his explanation for his accusations, his alleged reliance on a con man's flawed and unsubstantiated information, and his efforts to publicize his accusations to the media is flawed to the point of being dishonest and not asserted in good faith. Musk knows the truth but will not admit it: Unsworth is not a pedophile (SF 13); he met his significant other in London in 2011 when she was 32 years old (*id.*); he had never been to Thailand before 2011 and he has never been to Pattaya (*id.*); and he is a real-life hero who richly deserved the M.B.E. conferred upon him by the Queen of England. (Def.'s Stmt. of Uncontr'd Facts 13).

### A. <u>Musk Called Unsworth a Pedophile on July 15, 2018</u>.

On July 15, 2018, Musk published a series of tweets regarding Unsworth,

---

[2] Musk falsely attacks Unsworth's role in the rescue, stating that "he did not assist in the rescue" other than traveling to the cave and having "contacted divers and advised the rescue team about where the missing boys might be found." (Mot. at 3). These superfluous attacks are unfounded.  Members of the rescue have declared Unsworth was "a lynchpin of the operation," "vital to its planning," and without his "presence at Tham Luang from the start of the rescue all thirteen of the trapped party would now be dead." (DF 5).

stating, *inter alia*, "Never saw this British expat guy who lives in Thailand (sus) at any point when we were in the caves. … You know what, don't bother showing the video. We will make one of the mini-sub/pod going all the way to cave 5 no problemo.  Sorry pedo guy, you really did ask for it." (SF 1, 85).

As of July 15, Musk knew "essentially nothing" about Unsworth and "didn't know who in the world he was." (SF 14). Musk's "research" consisted of "less than an hour" on Google where he claims he learned that Unsworth was a Brit living in Thailand, and that Chiang Rai is a "very dodgy part of the world," "the capital of sex trafficking," and a "hot spot for child prostitution." (SF 87). Musk also recalled that "Jared the Subway guy" "was engaged in pedophilia" in Thailand, and that "Gary Glitter" "went to Thailand from England to have sex with underage kids." (SF 88).

Nevertheless, Musk signed a sworn statement that, to him, "sus" when following "British expat guy living in Thailand" just meant "weird guy," and "pedo guy" meant "creepy old man" because, he says, it "was a common insult used in South Africa when I was growing up." (Musk Decl. ¶¶ 25-29).[3] He makes no effort in his declaration to explain his tweets or actions that followed his "pedo guy" tweet.

Immediately following his "pedo guy" tweet, Musk doubled down, tweeting: "Bet ya a signed dollar it's true" in response to another user's statement that he had accused Unsworth of being "a pedo." (SF 3, 86). In his motion to dismiss, Musk repeatedly asserted that he was "trading on Thailand's reputation" and that "the reasonable reader would make this connection." (SF 94). Even Musk's chief of staff responsible for his public relations, Sam Teller, testified he "understood pedo guy to be a reference to pedophilia," because it "was a shortened version of the word." (SF 90). Other than reading recent media coverage of Musk's filing of this motion, Teller testified that he was not familiar with any meaning other than pedophilia. (*Id.*).

Over the next few days, Musk received numerous media requests for comment

---

[3] Despite purportedly being such a "common insult," Musk acknowledged that he has never said those words publicly. (SF 89-90).

on his "pedophile" and "pedophilia" accusations as well as Google alerts with articles referring to Musk calling Unsworth a "pedophile." (SF 91). Musk's PR team compiled lengthy lists of articles characterizing the accusation as one of pedophilia. (*Id.*). Instead of Musk or his team clarifying that Musk meant "creepy old man," they agreed in writing: "We should definitely just ignore these inquiries." (*Id.*). On July 17, 2018, Musk tweeted his alleged "apology" without disavowing that pedo guy meant pedophile, and instead cited his followers and the public to a "well-written article" that states "the pedophile accusation wasn't quite random." (SF 6, 92).

Musk continued to make it clear that he was accusing Unsworth of pedophilia. On August 28, 2018, in response to a tweet that "your dedication to facts and truth would have been wonderful if applied to that time when you called someone a pedo," Musk tripled down by tweeting "You don't think it's strange he hasn't sued me yet?" (SF 8, 98). It defies common sense to contend that Musk thought that Unsworth intended to sue him for merely describing him as a "weird" "creepy old man."

**B.** **The Convicted Felon Investigator Was Told to Use Aggressive Tactics.**

Musk certainly was not on a South African playground when he hired and paid more than $50,000 to an unknown investigator who turned out to be a con man. Musk tried to explain the hiring: he wanted an investigation because "maybe he [Unsworth] is actually a pedophile" and "[w]hat if what we have here is another Jeffrey Epstein?" (SF 95). In fact, Musk hired him to dig up dirt on Unsworth. (SF 42).

The "investigator" initiated contact by sending two emails that immediately exposed his bias: "Dear Elon, you may wish to dig deep and look into Mr. Unsworth's past … No smoke without fire!" and "Like Elon I think that Mr. Unsworth has skeletons in his cupboard." (SF 41). On August 15, 2018, Musk hired Howard via his family office and put Birchall in charge, a self-admitted "inexperienced novice" who had never run an investigation. (SF 42-43). Birchall's due diligence was "rudimentary" and essentially nonexistent. Birchall admitted that it would have been a "different process if someone said go out and identify the best

investigator in the world." (SF 44). Birchall merely Googled Howard's name and the name of his company, Jupiter. (*Id.*). A Google search of "James Howard Jupiter" on August 15, 2018, would have revealed as the very first hit a November 3, 2016, article headlined "Businessman stole £426,000 from company's accounts…" (SF 45). Indeed, Howard is reportedly back in jail. (*Id.*).

In an attempt to distance Musk and himself from the investigation, Birchall set up a fake email with the alias "Jim Brickhouse" for his exchanges with Howard, and they referred to Musk only as "the principal." The scheme included Musk not communicating with Howard, and Musk and Birchall never communicating in writing about the "investigation." (SF 35, 47; Musk Decl. ¶¶ 33-34).

At the outset, the goal was dirt. Birchall emailed Howard on August 24: "Was his current wife the girl he finally settled on after a period of 'exploring' the world of underaged Thai girls? Can we get a firm confirmation that they met while she was a minor?" (SF 48). The next day, Birchall informed Howard that "for successful confirmation of nefarious behavior there is an additional $10k bonus." (SF 49). Howard was instructed to keep digging, "creatively" and "aggressively." (SF 33).

On August 27, Birchall, with Musk's input and express authorization, instructed Howard to undertake the campaign to falsely smear Unsworth:

> We would like you to immediately move forward with 'leaking' this information to the UK press. Obviously must be done very carefully. The line of thinking...is: [1] Thailand is the world capital of pedophilia [2] This man has frequented Thailand since the 80's . . . [3] While the guise of cave exploration is creative, there are amazing and extensive caving systems in many places throughout the world . . . [4] He eventually woman [sic] 30 years his minor – whom he met while she was a teenager [5] He had been going to Thailand for decades before marrying her. She wasn't the first girl he met – and definitely not the first teenager he interacted with.  Share the facts and as you said, that should be enough for a story.

8

(SF 55-57). Howard did share them, under the anonymous email address "bangkokjohn." (SF 56). The plan was to "have people question the motive for being in Thailand," including "pedophilia," and to "balance … a clear imbalance in the media" created by the mass of negative publicity about Musk. (SF 57).

Finally, Birchall requested information on Unsworth's UK counsel. And when he began receiving the information allegedly through one of his lawyer's partners, Birchall did not try to "put the brakes on" Howard's conduct. (SF 60-63).

### C. No One Told Musk that Unsworth Married or Raped Children.

In perhaps Musk's most egregious misrepresentation to the Court, he tells the Court only that Howard "stated to Birchall in a phone call that there was evidence that Mr. Unsworth met *and began a relationship* with his alleged Thai wife when she was eleven or twelve years old." (Mot. 8). Musk's only nod to the truth is an oblique footnote on page 8 of his brief, but Musk was in truth repeatedly, consistently, and without variation told in writing prior to August 28 and August 30, 2018, that Unsworth met his wife, Tik, when she was 18 or 19 years old and married her when she was at least 23. There is no documented evidence via email or otherwise that they *met* – much less that they *married* – when she was 12 years old.

*First*, on August 24, Howard reported via e-mail that Unsworth and Tik "have been married for 7 years …" (SF 22). *Second*, on August 27, Birchall showed he and Musk were subjectively aware they were not married when she was a child, asking "When did he marry his wife in Thailand? **2011**?" (SF 23) (emphasis added). *Third*, on August 27, Howard responded and confirmed as *verified fact* that Unsworth "met his wife in 2008 in her role as Vice President of the local commune" and stated that "His wife we believe is 30 *which would have put her at 18/19 when they first met*." (SF 24) (emphasis added). *Fourth*, on August 30, at 11:04 am, Howard sent another written report, again stating "Unsworth met his wife in 2008 … His wife we believe is 30 (we will confirm in the next 48hrs) *which would have put her at 18/19 when they first met*." (SF 25). *Fifth*, on September 1, Howard confirmed in writing Tik's

birthday in "November 1988" and stated that they "met each other in England 11 years ago" when Tik was "19 years old." (SF 39).

Musk cannot refute the evidence that (a) Howard **never** told Birchall that Unsworth was a child rapist who married a 12-year-old, and (b) no one **ever** reported to Musk that Unsworth was a child rapist or had a child bride. (SF 18-21). Birchall was unequivocal: he was *never* told that Tik was younger than 18 when she married Unsworth. (*Id.*). At most, he received "conflicting information" with "serious discrepancies" as to **when they met**, but he never saw any evidence that Unsworth even *met* Tik when she was 12 years old, much less raped or married her. (SF 26-27, 29, 30-37). Birchall agreed with Howard in writing on September 4: "There is no confusion where this is concerned. You have not reported this [that Unsworth is a child rapist] and I have not communicated it either." (SF 26-27). Birchall's best effort to defend Musk – apparently after getting advice from counsel – was that they were told orally "they were 'married' (*or formed a relationship*) in her late teens (you said 18), but that she was quoted in a newspaper saying they **met** 7 years prior … she would have actually been a child/young teenager **when they first met**." (SF 28-31) (emphasis added). Howard flatly rejected this: "There is a big difference between 19 and 29 I agree, and an even bigger leap to being a child rapist. *I do not know how anyone could come to that conclusion as neither of us have ever mentioned children or rape in our conversations*…." (SF 30) (emphasis added).

Musk admitted that when he emailed information to BuzzFeed on August 30, he was "not sure that it was accurate," and he did not know if the information he received from Howard "was true or not or had been verified." (SF 15). By that point, Birchall and Musk had begun to doubt "whether [they] were getting the truth from Mr. Howard." (SF 34).

**D. <u>Republication of the BuzzFeed Emails Was Reasonably Foreseeable</u>.**

On August 28, 2018, at 9:41 am, Musk tweeted at a reporter on Twitter: "don't you think it's strange he hasn't sued me." (SF 69). Seven minutes later, and

throughout August 28-29, Musk and Birchall began instructing Howard to falsely smear Unsworth in the UK and Australian press as a pedophile, and Birchall specifically confirmed that Musk "wanted it to be published." (SF 70-71).

On August 29, BuzzFeed reporter Ryan Mac emailed Musk for comment on "the Twitter conversation yesterday." (SF 9-12, 72). Mac had written a scathing article about Musk on June 21, 2018. (SF 66-67). Musk does "not particularly" have a great deal of respect for BuzzFeed, which had published at least four articles on the cave rescue, two of them by Mac. (SF 67-68). Musk had no pre-existing relationship with Mac. (SF 78). Musk, who is himself newsworthy and has a pre-existing distrust of the media due to years of perceived unwarranted attacks, unilaterally designated and ordered without prior agreement his explosive email to Mac to be "off the record": "Off the record[.] I suggest that you call people you know in Thailand, find out what's really going on and stop defending child rapists, you fucking asshole. He's an old, single white guy from England who's been traveling to or living in Thailand for 30 to 40 years, mostly Pattaya Beach, until moving to Chiang Rai for a child bride who was about 12 years old at the time…" (SF 12, 73, 79-80).

Five days later, Mac responded, advising Musk that his e-mail was not off the record, and rather than fight to keep it confidential, Musk stated: "If you want to publish off the record comments and destroy your journalistic credibility, *that's up to you*." (SF 74 (emphasis added)). David Arnold, another Tesla PR officer, acknowledged that Musk was taking a chance that his email would be published without prior agreement and that Musk increased that risk by repeatedly insulting Mac. (SF 81-84). Mac published later that day on September 4. (SF 74).

Musk was clear in his deposition that he "expect[ed] that [Mac] would report" the accusations in his email even "if he did not find any evidence to support it." (SF 76). Musk agreed that in that case, he would have expected Mac to report "[t]hat he had looked into it and could not find any substantiation." (*Id.*). *That is exactly what*

*happened*, and Musk's entire course of conduct in leaking information to the press, responding to a request for comment from an adversarial reporter who had already covered the story, making explosive accusations, unilaterally designating them off the record before telling the reporter that whether to publish was "up to you," and testifying that he wanted it published irrespective of truth or falsity, demonstrates that it was not only foreseeable to Musk that his accusations against Unsworth would be republished, but that he authorized and intended that they would be republished.

Indeed, on September 4, 2018, Musk offered this assessment of his foreseeability defense in correspondence with his on-retainer outside PR agent:

> I didn't expect Buzzfeed to publish an off the record email. My intent was to have them investigate and come to their own conclusions, not publish my email directly. ***Still, I'm a fucking idiot.***
>
> . . .
>
> I . . . responded in what I felt was off the record. In the past, Buzzfeed has respected emails prefaced with "off the record," but this time they did not. ***It was still one of the dumbest things I've ever done***. . . .

(SF 65 (emphasis added)).

## III.   ARGUMENT

Musk's motion does not challenge the falsity of the defamatory statements contained in his emails or tweets. Despite Musk's misleading and inaccurate statements of purported fact in his brief, it is undisputed that Unsworth never married a child bride and is not a pedophile or child rapist.  (SF 13). Musk also does not challenge that his accusations were capable of a defamatory meaning – it is indisputably defamatory *per se* to call someone a pedophile and a child rapist. *See, e.g., Grenier v. Taylor*, 234 Cal. App. 4th 471, 486-87 (2015) ("[The] statements are not mere insults … Rather, they accuse [plaintiff] of criminal conduct that includes vile and depraved activities, i.e., child molestation."). Additionally, Musk does not challenge that there is ample evidence of negligence in the event this Court holds

that Unsworth is a private figure – Musk contests only the sufficiency of the evidence of actual malice and foreseeability of the republication of his BuzzFeed emails.[4]

Musk's bases for seeking summary judgment therefore are limited to claims that: (1) Unsworth is a limited public figure and therefore required to establish actual malice in order to recover compensatory damages; (2) Musk did not publish with actual malice because he was relying on portions of information learned from his paid investigator; and (3) it was not reasonably foreseeable that BuzzFeed would publish his emails to Mac.  Each of these arguments fails.

### A. Unsworth Is a Private Figure.

While Unsworth has demonstrated that a genuine issue of material fact exists as to actual malice, *see infra* at Section B, Unsworth should be classified as a private figure plaintiff, not a "limited purpose" public figure, as Musk argues.  Musk "'bear[s] the burden of proving the plaintiff's public figure status.'" *Dawe v. Corrections USA*, 2010 WL 682321, at *10 (E.D. Cal. Feb. 24, 2010) (citation omitted). "A fairly high threshold of public activity is necessary to elevate a person to public status." *Brown v. Kelly Broad. Co.*, 48 Cal. 3d 711, 745 (1989).[5]

A "limited public figure" is a person "who has 'achieved fame or notoriety based on their role in a particular public issue.'" *Prendeville v. Singer*, 155 Fed. Appx. 303, 305 (9th Cir. 2005) (citation omitted).  The Ninth Circuit has recognized a conjunctive three-part standard for a limited public figure:  (1) whether "a public controversy existed when the statements were made"; (2) "whether the alleged defamation is related to the plaintiff's participation in the controversy"; and (3) "whether the plaintiff voluntarily injected [him]self into the controversy for the purpose of influencing the controversy's ultimate resolution." *Makaeff*, 715 F.3d at

---

[4] *See, e.g., Khawar v. Globe Int'l, Inc.*, 19 Cal. 4th 254, 279 (1998) ("[E]vidence that is sufficient to support a finding of actual malice is usually, and perhaps invariably, sufficient [to show] negligence.").

[5] This standard is "a pure constitutional question," *see Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 270 (9th Cir. 2013), but state court decisions are considered.

13

266.  Musk cannot satisfy any one of these prongs, much less all three of them.

A private person "is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." *Z.F. v. Ripon Unified Sch. Dist.*, 482 F. App'x 239, 240-41 (9th Cir. 2012) (citation omitted). A defendant "must show more than mere newsworthiness to justify application of the demanding burden" of proving actual malice. *Id.* at 241. The standard is "whether a reasonable person would have concluded that this individual would play or was seeking to play a major role in determining the outcome of the controversy and whether the alleged defamation related to that controversy." *Waldbaum v. Fairchild Pubs., Inc.*, 627 F.2d 1287, 1298 (D.C. Cir. 1980).

Even when one thrusts himself into a public controversy, he becomes a public figure only "for a limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). A person's credentials may be relevant "[w]here the issue turns on expert or specialized knowledge. . ." but the defamatory statements must be "germane" to the public controversy. *Copp v. Paxton*, 45 Cal. App. 4th 829, 846 (1996).

### 1.  No Public Controversy at the Time of the Defamation

Musk suggests two possible public controversies – "how to rescue" the boys and "the viability of Mr. Musk's submarine." (Mot. 12-13).[6] Neither of these qualifies because (1) a "public controversy" is limited to "a real dispute, the outcome of which affects the general public or some segment of it"; and (2) the public controversy must have "existed when the statements were made." *See Makaeff*, 715 F.3d at 266-67 (citation omitted).  There was no "public controversy" over the rescue of the boys – the articles Musk submitted show only that the rescue was international news as everyone involved worked on the best strategy for saving the boys.  (Mot. Exs. 3-6, 20).  There certainly could be no "public controversy" over "how to rescue" the boys as of July 15, *after* the boys were rescued.  (DF 5).  In any case, the

---

[6] Musk does not assert a public controversy over pedophilia. *See, e.g., Grenier*, 234 Cal. App. 4th at 484-85 ("The subject of morality is too general and amorphous….").

technique by which the boys had been rescued does not affect "the general public or some segment of it." Although the viability of the tube was a dispute among some, Musk does not explain how that issue would affect the general public. And, again, all of the statements at issue were made after the cave rescue was completed.  (*Id.*).

### 2.  Unsworth Did Not Attempt to Influence Any Controversy

Even assuming there was a public controversy, to be treated as a limited public figure, Unsworth "must have 'thrust [himself] to the forefront' of that controversy 'in order to influence the resolution of the issues involved.'" *Makaeff*, 715 F.3d at 267 (citing *Gertz*, 418 U.S. at 345). But "responding to press inquiries . . . does not necessarily mean that [one] is attempting to play a significant role in resolving a controversy." *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 588 (D.C. Cir. 2016) (citation omitted). A plaintiff does not become a limited public figure by providing the media a "short simple statement of his view of the story," but rather by using "his position in the controversy as a fulcrum to create public discussion." *Id.* (citations omitted); *see also Time, Inc. v. Firestone*, 424 U.S. 448, 455 n.3 (1976) (plaintiff who "held a few press conferences" was not limited public figure).

To the extent there was any controversy over the viability of the tube or the cave rescue, Unsworth did not "engage[] the attention of the public in an attempt to influence the resolution of the issues involved." *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 168 (1979); *see also Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) (no limited public figure where plaintiff "did not thrust himself or his view into public controversy to influence others"). Nor did Unsworth assume any "special prominence in the resolution" of any dispute. *See Wolston*, 443 U.S. at 168. Unsworth's <u>only</u> identified public statement about the tube was a few sentences in response to a question by the CNN reporter.  (DF 32, 34).

### 3.  Defamation Not Germane to Participation in Controversy

Musk's attempt to tie his accusation that Unsworth is a "pedophile" and a "child rapist" to a purported "public controversy" is nonsensical.  He cannot explain

how his accusations could be germane to the tube's viability and argues only that they were germane to a dispute over the rescue because they "related to Mr. Unsworth's motives for participating in the rescue and seeking continued media attention and proximity to the rescued children." (Mot. 16). But the germaneness requirement "ensures that publishers cannot use an individual's prominence in one area of public life to justify publishing negligent falsehoods about an unrelated aspect of the plaintiff's life." *Jankovic*, 922 F. 3d at 589. *See generally Grenier*, 234 Cal. App. 4th at 485 (although a pastor "thrust himself" into the public eye "as an expert on the Bible and its teachings," he was not a public figure for accusations involving "private conduct . . . such as child abuse and theft" because he "did not thrust himself into a public controversy or dispute regarding child abuse, child molestation"). Musk's accusations about Unsworth's sexual predilections were not germane to any controversy concerning the tube or Unsworth's motives.

Musk's claim that his accusations related to Unsworth's "motives" is contradicted by Musk's own testimony. Under Musk's theory, the defamatory accusations could be germane only if Musk was in fact accusing Unsworth of being a pedophile when he tweeted that he was "sus" and a "pedo guy," which is what Musk contends in *this* portion of the brief. (*See* Mot. 15).[7] This contention, however, directly contradicts other portions of Musk's brief and his own declaration in which he contends that "[t]he insult, as Mr. Musk understood and used it, is not meant to accuse a person of pedophilia but rather insults a person's appearance. . . ." (Mot. 58; *see also* Musk Dec. ¶¶ 28-29). How could accusations that Unsworth was a pedophile bear on "the legitimacy of efforts made to assist in the rescue and the motivations for such assistance," (*see* Mot. 16), when Musk testified under oath that he did not know who Unsworth was, did not know he was involved in the cave rescue, and was merely insulting his appearance? Particularly when the tweets were

---

[7] Musk stoops so low as to try to cleverly tie his accusation of pedophilia to the cave rescue by suggesting that Unsworth may have wanted to molest the underage boys.

1   made *after* the alleged controversy – how to save the boys – was resolved?

2       Musk cannot have it both ways – either he was accusing Unsworth of being a

3   pedophile, or he was not.  Either way, that accusation was not germane to any "public

4   controversy" and certainly not to any public controversy into which Unsworth

5   voluntarily "thrust himself" in an attempt "to influence" the resolution.

6       **B.  All of Musk's Accusations Were Published with Actual Malice.**

7       Even if Unsworth is treated as a limited public figure, Musk's motion for

8   summary judgment must be denied because a jury could find clear and convincing

9   evidence that Musk published all of the accusations negligently and with actual

10  malice. Actual malice is defined as publishing "with knowledge that it was false or

11  with reckless disregard of whether it was false or not." *New York Times v. Sullivan*,

12  376 U.S. 254, 280 (1964).  This Court has explained that "reckless disregard" "(1)

13  encompasses a defendant's 'high degree of awareness of . . . probable falsity,' or

14  'serious doubts as to the truth' of the publication, or (2) applies if the defendant had

15  'obvious reasons to doubt the veracity' of its statements, but engaged in 'purposeful

16  avoidance of the truth.'" *D.A.R.E. Am. v. Rolling Stone Mag*, 101 F. Supp. 2d 1270,

17  1277–78 (C.D. Cal. 2000), *aff'd*, 270 F.3d 793 (9th Cir. 2001) (citations omitted).

18      Direct evidence of actual malice "is extremely difficult to obtain, so actual

19  malice may be proven by circumstantial evidence. . . ." *Id.* "[E]vidence of

20  negligence, of motive and of intent may be adduced for the purpose of establishing,

21  by cumulation and by appropriate inferences, the fact of a defendant's recklessness

22  or of his knowledge of falsity," and factors that may be considered include "[a]

23  failure to investigate," "anger and hostility toward the plaintiff," and "reliance on

24  sources known to be unreliable . . . or known to be biased against the plaintiff."

25  *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 257-58 (1984).

26  Additionally, although the actual malice standard is subjective:

27      **a defendant cannot "automatically insure a favorable verdict by**

28      **testifying that he published with a belief that the statements were true**.

The finder of fact must determine whether the publication was indeed made in **good faith**. Professions of good faith will be unlikely to prove persuasive . . . **where a story is fabricated by the defendant**, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor . . . when the . . . allegations are so inherently improbable that only a reckless man would have put them in circulation."

*Id.* (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) (emphasis added)).

Musk attempts to graft an additional requirement onto actual malice based on *Good Gov't Group of Seal Beach, Inc. v. Superior Court*, 22 Cal. 3d 672 (1978), but that case merely addresses the standard for establishing actual malice when the words used are ambiguous. The evidence here supports a finding that Musk "knew or acted in reckless disregard of whether his words would be interpreted by the average reader as defamatory statements of fact." *Id.* at 684.[8] Although Musk now claims (at times) that he was not subjectively calling Unsworth a "pedophile" when referring to him as "pedo guy," that is contradicted by every other piece of evidence in the record – including Musk's own tweet betting "it's true" and his failure to clarify that point in response to numerous requests for comment expressing an understanding that the accusation was that he was a pedophile. (SF 85-100). Musk's self-serving statement about a "creepy old man" – which he apparently never mentioned until his deposition – is simply not credible and certainly does not warrant summary judgment. (*See id.*). There can be no reasonable doubt that the context of his first "pedo guy" tweets and subsequent actions in public conveyed to the world that he meant to label him a pedophile as a matter of fact, as this Court already held.[9]

---

[8] *See also Good Gov't* at 685-86 (denying summary judgment where "a jury could conclude . . . defendants were aware that the words . . . could be interpreted as defamatory statements of fact instead of 'allegorical language'" when they continued distributing the article "as originally printed" even "after the retraction").

[9] In his motion to dismiss, Musk asserted that "the reasonable reader would make this connection" between Thailand and pedophilia. (SF 94). Musk did so, testifying that

Musk bears the burden as a movant to establish a prima facie case that he "had a subjective good faith belief in the truth of the defamatory statements." *Antonovich v. Superior Court*, 234 Cal. App. 3d 1041, 1050-51 (1991).  If he cannot make this prima facie showing, then "[f]rom the absence of such evidence the trier of fact could conclude that the statements were based on speculation or fabricated." *Id.* at 1051.

### 1.  The July 15 Tweets

When Musk tweeted on July 15, he admittedly knew "essentially nothing" about Unsworth – and yet accused this stranger of being a *pedophile*. (SF 14). This is the very heart of publishing with actual malice, where there is absolutely no factual basis to support an accusation that is nothing more than a lie made up out of whole cloth.  *See St. Amant*, 390 U.S. at 732 (publication not made "in good faith … where a story is fabricated by the defendant"). While Musk fails to assert a good faith belief as of July 15 that Unsworth was a pedophile, he contends he acted in good faith because "before publishing the tweets," he "***did*** research Mr. Unsworth" and discovered that he lived in an area of Thailand "that was known as the 'child sex trafficking capital of the world.'" (Mot. 25). Thus, Musk admits that in his July 15 tweets, he was calling Unsworth a pedophile and that he was doing so based solely on his (false) belief that Unsworth was an older white man living in the "child sex trafficking capital."  Musk had no other information about Unsworth.  (SF 14).

There is no possibility that a good faith belief that someone is a *pedophile* could arise solely from the (unverified) fact that the person spends time in an area of the world where there is a reported child sex trafficking problem. In this case, Musk admitted that he was angry over the negative coverage of the tube – indeed, his team had spent significant effort prior to July 15, even before the boys were rescued, to obtain positive press for the tube after a Thai governor said that it was "not practical" and "doesn't fit with our mission." (SF 6, 101-117). Unsworth's interview struck the

---

Thailand is a "dodgy" place with people up to "no good," like "Jared the Subway guy" and "Gary Glitter," who went there "to engage in pedophilia." (SF 88).

match to turn Musk's internal smoldering over this criticism into a public firestorm where he sought to shift the media discussion away from the useless tube and turn it towards Unsworth with a false accusation of pedophilia.  (SF 57).

Musk argues either that he did not intend to call Unsworth a pedophile, which is not credible, or that he based his statement on a Google search about Chiang Rai; but Musk does not even contend that he believed Unsworth was a pedophile when he first made the accusation. (SF 14).  Musk has failed to satisfy his burden to establish a prima facie case for summary judgment regarding the July 15 tweets. *See Antonovich*, 234 Cal. App. 3d at 1051 ("The record is in fact devoid of any factual basis to support a subjective belief, good faith or otherwise, on the part of [defendant] that the . . . defamatory statements were true at the time they were uttered. . . .").

### 2.  The August 28 Tweet

With respect to his August 28 tweet, Musk claims that "[h]is tweet and suspicions were supported by the information he received," from the investigator "that Mr. Unsworth had **married a teenager**, frequently visited Thailand since the 1980s, and **was known to prefer the company of young women**." (Mot. 21 (emphasis added)).[10]  Even if true, such a report would not support an accusation of pedophilia.  But the statement is not supported by the record and is instead another of the intentional deceptions that Musk peddles like a snake oil salesman.

Nobody <u>ever</u> told Musk that Unsworth had married a teenager or was known to prefer the company of young women – not before or after August 28. (SF 18-21).  On August 24, Howard reported that Unsworth and Tik "have been married for 7 years." (SF 22).  On August 27, Birchall himself demonstrated this understanding, asking "When did he marry his wife in Thailand? 2011?" (SF 23).  On August 27, Howard advised Birchall that he "kn[e]w as fact" that Unsworth met Tik in 2008

---

[10] Again, it is nonsensical for Musk to argue that the tweet "does not mean that he is a pedophile" while simultaneously claiming that his factual basis for making the tweet was a report that Unsworth, *inter alia*, prefers the company of young women.

1    while she was working as Vice President of the local commune and was "in the

2    process of verifying" that she was "18/19 when they first met."  (SF 24).

3       Moreover, by August 28, Musk was already "concern[ed]" whether Howard

4    was a legitimate investigator and whether the information he was providing was

5    accurate, because he knew that Howard had not verified any of the information in

6    his reports, and his reports were "inconsistent" and had a "serious discrepancy" as

7    to Tik's age.  (SF 33-34). It is undisputed that in **all** of Howard's written reports, he

8    stated his unconfirmed belief that Tik was 18 or 19 when she met Unsworth, and

9    never said she was younger.  (SF 18-20, 22-25, 32, 38-39).

10      Musk's August 28 accusation that Unsworth was a pedophile was not "made

11   in good faith" and is little more than "the product of [Musk's] imagination" or based

12   on "an unverified anonymous telephone call."  *See Reader's Digest Ass'n*, 37 Cal.

13   3d at 257.  It was either made up out of whole cloth like his July 15 tweet or so

14   willfully and maliciously embellished as to establish actual malice. *See, e.g.*, *Masson*

15   *v. New Yorker Mag., Inc.*, 501 U.S. 496 (1991) (actual malice where defendant alters

16   source quote "which alteration results in a material change in the meaning

17   conveyed"); *Westmoreland v. CBS Inc.,* 596 F. Supp. 1170, 1176 (S.D.N.Y 1984)

18   (malice may be established when defendant "knowingly or recklessly misstates the

19   evidence to seem more convincing or condemnatory than it is" or if "it distorts

20   statements of witnesses so that they seem to say more than in fact was said").

21                   **3.  The August 30 Emails**

22      Musk contends that the accusations in his August 30 emails to Mac were made

23   in good faith because they were "information that he understood had been uncovered

24   by a private investigator." (Mot. 17).  However, Musk admitted in his deposition that

25   when he sent the information in his emails to Mac, "***I was not sure that it was***

26   ***accurate*. . . .**"  (SF 15 (emphasis added)). As discussed *supra*, by August 28, and

27   certainly by August 30, Musk had begun to doubt the credibility of Howard, because

28   he  was  providing  inconsistent  information  and  had  not  verified  any  of  the

                                        21

information about Unsworth or Tik. (SF 33-34). Musk cannot possibly now contend in good faith that he believed his accusations were true when he testified under oath that he did not know if they were true or false.

The evidence is undisputed that neither the investigator nor Birchall ever said that Unsworth was a child rapist, and neither of them ever told Musk that. (SF 18, 21, 32). Neither the investigator nor Birchall ever said that Unsworth had a child bride who was 12 years old, and neither of them ever told Musk that. (SF 18, 21, 38). As Howard told Birchall after Musk's accusations were published by BuzzFeed, "***I do not know how anyone could come to that conclusion*** as neither of us have ever mentioned children or rape in our conversations. . . ." (SF 30) (emphasis added)). Every single written communication from Howard reflects his belief that Tik was 18 or 19 when she met Unsworth. (SF 22-27, 30). Musk has no source or evidence whatsoever to support his accusation that Unsworth was a "child rapist" or had "a child bride who was about 12 years old."

Moreover, the August 30 emails were not published by BuzzFeed until September 4, and Musk had an opportunity to try to stop their publication when Mac reached out to him on September 4 and declined his "off the record" request. Musk had received another written report from Howard on September 1 that concluded that Tik was 30 years old, that she and Vern met when she was 19 years old, that "[t]he reason [Unsworth] has chosen to live in Chiang Rai is because of the extensive local cave networks," and that "Chiang Rai has plenty of interesting caves. . . ." (SF 39). Instead of sharing any of this information with Mac and correcting his previous false accusations against Unsworth, Musk conveyed additional falsehoods, questioning what Unsworth was doing "in Pattaya Beach for the better part of a decade when there are no caves of note in the area." (SF 40).

Musk's statements to BuzzFeed were either maliciously made up or so antithetical to the information he possessed that he cannot have made them in good faith; even Howard's written reports of Unsworth's travel history were expressly

unverified, and the investigation was ongoing. (SF 33). "Although failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989) (citations omitted); *see also Antonovich*, 234 Cal. App. 3d at 1053 ("[T]he trier of fact was entitled to find that [defendant]'s 'inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of [the subject] charges,' which is a 'purposeful avoidance of the truth' and will support a finding of actual malice.") (quoting *Harte-Hanks*, 491 U.S. at 692).

## C. Republication of the August 30 Emails Was Reasonably Foreseeable.

There are two bases for Unsworth's defamation claim on the August 30 emails. First, Musk published the false and defamatory statements to Mac on August 30.[11]  Second, it was reasonably foreseeable that the accusations Musk conveyed to Mac would be republished by BuzzFeed, and Musk is therefore liable for the republication of his accusations against Unsworth by BuzzFeed on September 4.[12] The only issue is whether there is a question of fact for a jury as to whether the republication was intended, authorized, or reasonably foreseeable by Musk.

In California, "the repetition by a new party of another person's earlier defamatory remark also gives rise to a separate cause of action for defamation against the *original defamer*, when the repetition was reasonably foreseeable." *Shively v. Bozanich*, 31 Cal. 4th 1230, 1243 (2003). It is not necessary that the defamatory statements be republished verbatim, but if the defendant "furnishes defamatory

---

[11]Musk falsely contends that Unsworth sued only on republication of the accusations. (Mot. 20 n.8). Unsworth pled a claim based both on BuzzFeed's republication and on Musk's initial publication of the accusations. (Dkt. 1 ¶¶ 88-95, 113; DF 105).

[12]Musk's claim that BuzzFeed's "failure to verify" Musk's accusations about Unsworth "break[s] any causal chain" is deservedly buried in a footnote.  (Mot. at 21 n.10).  If the republication was foreseeable, then there is by definition a causal link, as explained by the case cited by Musk in his footnote.  (*Id.*).

material to a publisher with the expectation that the material (***either verbatim or in substance***) will be published, the source should be liable for the publication." *Mitchell v. Superior Court*, 37 Cal. 3d 268, 281 (1984) (emphasis added) ("The rule imposing liability for republication . . . turns on foreseeability, not exact reproduction."). A defendant who gives "a statement to a representative of a newspaper authorizing or intending its publication is responsible for any damages caused by the publication." *Id.* It is axiomatic that it is reasonably foreseeable that statements to a reporter will be republished: "[t]here could be no question that **[he] ought to have anticipated republication of statements made to inquiring reporters**. This was clearly the purpose for which the reporters sought information." *Stoneking v. Briggs*, 254 Cal. App. 2d 563, 577 (1967) (emphasis added).

Musk himself has admitted that he reasonably should have expected the accusations in his emails to Mac to be published.  In an email exchange with his outside public relations consultant, Musk wrote that although his intent was for BuzzFeed "not [to] publish my email directly," "**[s]till, I'm a fucking idiot**." (SF 65 (emphasis added)).  Moreover, Musk admitted that although "[i]n the past, Buzzfeed has respected emails with 'off the record,' [] this time they did not" and noted that "**[i]t was still one of the dumbest things I've ever done**. . . ." (*Id.* (emphasis added)).  Regardless of what his *expectations* were, it is clear from Musk's own emails that he recognized that BuzzFeed had the *right* to publish the information contained in his emails. It was up to BuzzFeed whether to "respect[]" emails prefaced with "off the record," which means that it was reasonably foreseeable that BuzzFeed would republish the emails. An agreement for information to be "off the record" is a contractual obligation that requires agreement by both parties.  *See, e.g.*, *Cohen v. Cowles Media,* 501 U.S. 663, 665, 671 (1991) (holding that journalists could be held liable "for breach of a promise" to "keep [a source's] identity anonymous"). There was no such agreement here. (SF 73).

Indeed, Musk had no reason to believe that BuzzFeed would honor his "off

the record" request.  Mac and BuzzFeed had already written multiple articles about Musk's tweets (SF 68); Mac had previously written a scathing rebuke of Musk (SF 66); Musk insulted Mac throughout his emails, including by calling Mac a "fucking asshole" in the first line of his email (SF 77); and Mac had reached out to Musk for comment in the first place. (SF 72).  As Arnold testified, Musk was taking a chance that the information would be published without a prior agreement regarding "off the record," and this risk was increased by Musk's insults to Mac.  (SF 81-84).

Although Musk may have superficially lamented BuzzFeed's publication of *his emails*, there is evidence that he intended for BuzzFeed to publish the *information contained* in those emails. As discussed *supra*, Musk undertook a scheme to have false information "leaked" to the UK press to generate negative publicity about Unsworth.  (SF 55).  And Musk agreed during his deposition that he expected the information to be published *regardless of whether it was verified or not*.  (SF 76).

Musk even had a second chance – whether or not it was foreseeable on August 30 that the emails would be republished by BuzzFeed, it certainly was foreseeable as of September 4, when Mac emailed Musk to tell him that. (DF 75). Instead of reiterating his alleged intent that the content or emails be off the record, Musk expressly stated to Mac: "If you want to publish off the record comments and destroy your journalistic credibility, **that's up to you**."  (SF 75 (emphasis added)).

It was "reasonably foreseeable" that BuzzFeed would publish the explosive accusations made by "Elon Musk" against Unsworth. The test is objective and measured by a reasonable person with no special treatment for the rich and powerful.

## IV.    CONCLUSION

For the reasons set forth herein, Plaintiff Vernon Unsworth requests that this Court deny Defendant Elon Musk's Motion for Summary Judgment in its entirety.

Dated:  October 7, 2019           **L. LIN WOOD, P.C.**
                                            By: */s/L. Lin Wood*
                                            L. Lin Wood
                                            *Attorneys for Plaintiff Vernon Unsworth*

1

2

## **CERTIFICATE OF SERVICE**

3        I am employed in the Fulton County, State of Georgia. I am over the age of

4   eighteen years and not a party to the within action; my business address is 1180 West

5   Peachtree Street, Suite 2040, Atlanta, GA 30309.

6        I hereby certify that a true and correct copy of the document titled

7   "PLAINTIFF VERNON UNSWORTH'S BRIEF IN OPPOSITION TO MOTION

8   FOR SUMMARY JUDGMENT" has been served via electronic mail transmission

9   on October 7, 2019, to all counsel of record who are deemed to have consented to

10  electronic service via the Court's CM/ECF system and who have otherwise agreed

11  to electronic service. The electronic mail transmission was made from

12  twilson@linwoodlaw.com, by transmitting PDF format copies of the document to

13  all counsel of record, at the e-mail address provided to the Court's CM/ECF system.

14  The transmission was reported as complete and without error.

15        Executed on October 7, 2019, at Atlanta, Georgia.

16

17                                      */s/ G. Taylor Wilson*

18

19

20

21

22

23

24

25

26

27

28