L. LIN WOOD, P.C.
L. Lin Wood (admitted *pro hac vice*)
lwood@linwoodlaw.com
Nicole J. Wade (admitted *pro hac vice*)
nwade@linwoodlaw.com
Jonathan D. Grunberg (admitted *pro hac vice*)
jgrunberg@linwoodlaw.com
G. Taylor Wilson (admitted *pro hac vice*)
twilson@linwoodlaw.com
1180 West Peachtree Street, Ste. 2040
Atlanta, Georgia 30309
404-891-1402
404-506-9111 (fax)

WEISBART SPRINGER HAYES, LLP          CHATHAM LAW GROUP
Matt C. Wood (admitted *pro hac vice*)    Robert Christopher Chatham
mwood@wshllp.com                      chris@chathamfirm.com
212 Lavaca Street, Ste. 200           CA State Bar No. 240972
Austin, TX 78701                      3109 W. Temple St.
512-652-5780                          Los Angeles, CA 90026
512-682-2074 (fax)                    213-277-1800

Attorneys for Plaintiff
VERNON UNSWORTH

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH,<br><br>    Plaintiff,<br><br>v.<br><br>ELON MUSK,<br><br>    Defendant. | Case No. 2:18-cv-08048-SVW (JC)<br><br>**DECLARATION OF G. TAYLOR WILSON IN SUPPORT OF PLAINTIFF VERNON UNSWORTH'S MOTION TO COMPEL** |

## DECLARATION OF G. TAYLOR WILSON

I, G. Taylor Wilson, declare as follows:

1.      I am an attorney at the law firm of L. Lin Wood, P.C., counsel of record in this action for Plaintiff Vernon Unsworth.  I am a member in good standing of the State Bar of Georgia and am admitted *pro hac vice* to practice before this Court.  I have personal knowledge of the facts set forth in this declaration and, if called to testify, I would testify thereto.

2.      Counsel for the parties have met and conferred extensively regarding each of the issues identified in the parties' Joint Stipulation on Plaintiff's Motion to Compel, both telephonically and via e-mail.  No resolution has been reached.

3.      The parties have met and conferred on the issues telephonically on September 13, 2019 (regarding, among other items, the birth certificate referenced herein), and September 17, 2019, and via e-mail repeatedly.  True and correct copies of the parties' meet and confer e-mail correspondence are attached hereto as Exhibits A and B, respectively.

4.      On September 16, 2019, Defendant Elon Musk ("Musk") filed his Motion for Summary Judgment ("MSJ") (Docs. 58-63).

5.      Musk's MSJ argues in part, that his accusations against Plaintiff Vernon Unsworth ("Unsworth") were not made with actual malice because of certain information he claims to have received during oral conversations with the manager of his family office, Jared Birchall ("Birchall"), regarding an investigation undertaken by James Howard ("Howard").

6.      Musk did not identify any individual that engaged in an investigation of Unsworth in his initial disclosures. Howard's investigation was first revealed by Musk in his July 18, 2019, Responses and Objections to Plaintiff Vernon Unsworth's First Set of Interrogatories. Musk's interrogatory responses did not, however, identify any individual other than Howard that conducted or participated in an investigation into Unsworth.  A true and correct copy of the pertinent interrogatory

and request for production responses from Musk are attached hereto as Exhibit C.

7.     Birchall was not identified by Musk as a person having relevant knowledge in Musk's initial disclosures or in his initial interrogatory responses. Unsworth first discovered his identity during a review of Musk's first production of documents.   After meet and confer efforts, Musk supplemented his interrogatory responses and initial disclosures to include Birchall.

8.     On September 10, 2019, Unsworth's counsel deposed Birchall.

9.     According to Birchall's deposition testimony, he directed the Howard investigation at Musk's request.   A true and correct copy of the excerpts from Birchall's deposition referenced herein is attached hereto as Exhibit D.

10.     During his deposition, Birchall also testified that he received the birth certificate of Unsworth's significant other – the falsely alleged twelve-year-old child bride – through another unidentified investigator, who worked with an unidentified lawyer.   More specifically, he testified that "I don't know the name of the person.   I mean, I could easily find that out … It was someone working with a lawyer. … I don't know if the lawyer was engaged to work on this matter. … I don't believe [I reached out and asked for someone to try and get that].   I believe it was offered up, but I could be wrong.   We may have been looking for verification …"  See Exhibit D.

11.     Despite Unsworth's meet and confer efforts, Musk has never revealed to Unsworth the identity of the individual who provided this birth certificate, when that individual was retained, the facts discovered during that investigation, or when those facts were disclosed to Birchall and/or Musk.  See Exhibits A, B.

12.     Following the parties' telephonic meet and confer conference on September 13, 2019, Unsworth's counsel understood that Musk would provide the birth certificate and identity of the investigator who provided the same to Birchall, but Musk subsequently and for the first time on September 20, 2019, made an assertion of work product protection regarding this information.  See also Exhibit A

(pp. 7, 9).

13.     Despite demanding during the meet and confer process that Musk produce a privilege log for documents and communications concerning the alleged work product protection, Musk has refused and failed to provide a log.  See Exhibits A, B.

14.     A true and correct copy of the document subpoena served by Musk on Unsworth on August 23, 2019, is attached hereto as Exhibit E.  This subpoena was the first time that Musk disclosed and Unsworth's counsel discovered that Howard's real name is "Howard-Higgins."

15.     A November 3, 2016, media report concerning the individual Plaintiff's counsel understands to be Howard is available at https://www.bournemouthecho.co.uk/news/14839251.businessman-stole-426000-from-companys-accounts-despite-being-given-numerous-second-chances/, stating, inter alia, that Howard "has been jailed after stealing more than £400,000 from his company's accounts."

16.     A true and correct copy of a text message exchange between Birchall and Howard is attached hereto as Exhibit F, produced as MUSK_000199-MUSK_000216.

17.     A true and correct copy of the scheduling order in this case is attached hereto as Exhibit G.

I declare under penalty of perjury under the laws of the State of Georgia and the United States that the foregoing is true and correct and that this document was executed in Atlanta, Georgia.

Dated:  October 10, 2019          **L. LIN WOOD, P.C.**

By: */s/G. Taylor Wilson*
G. Taylor Wilson

3

# EXHIBIT A

# EXHIBIT A

## Taylor Wilson

| | |
|---|---|
| **From:** | Lin Wood |
| **Sent:** | Tuesday, September 24, 2019 12:29 AM |
| **To:** | Alex Spiro |
| **Cc:** | Robert Schwartz; Alex Bergjans; Jeanine Zalduendo; Matt Wood; Chris Chatham; Kimmy Hart Bennett; Taylor Wilson; Jonathan Grunberg; Mark Stephens, CBE; Adam Fellows; Nicole Wade; Michael Lifrak |
| **Subject:** | Re: UK and Wales Damage Claim |

Alex,

I want the name of the investigator who provided the birth certificate to Birchall/Brickhouse. Please provide the privilege log without further delay.

One more time - I don't represent Tik just like you don't represent any of Musk's "wives." And like me, Tik does not know the identity of the investigator who provided her birth certificate to Birchall/Brickhouse.

I will review the iCloud declaration you referenced. I just don't recall seeing it. Will get back to you on that one after further review. Who was the declarant?

I think Ms. Glover has just a little more knowledge of this matter than merely being aware of the BuzzFeed article.

Talk tomorrow. You are making me work too hard. Now I know why your firm wins 88% of the time. You work your opponents to death delaying disclosure and production of relevant information. But we will get there.

Lin

P.S. I made sure not to use any exclamation marks in this email.

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Sep 23, 2019, at 8:33 PM, Alex Spiro <alexspiro@quinnemanuel.com> wrote:

> I understand your request and do not believe it to be well founded but I will respond substantively in due course. Given that I'm dealing with emails with exclamation points that recite timestamps of previous emails I'm trying to just get you the document you requested (even though given she is your client's "wife" one would think you would have access to it).
>
> (323) 430-1160 is teller number.

1

I think we are getting circular with this icloud conversation. While musk said it is possible that something was saved on the cloud, the IT professional who confirmed you have everything signed a declaration and I re-confirmed. There is nothing further.

As to Ms Glover, in the minutes between our emails, I still do not have an update. I understand that she is aware of the buzzfeed article as are lots of other people as I understand your expert to be saying. I don't think that requires her to be on some list.

Alex

Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com
**Sent:** September 23, 2019 8:16 PM
**To:** alexspiro@quinnemanuel.com
**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com; jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.com; nwade@linwoodlaw.com; michaellifrak@quinnemanuel.com
**Subject:** Re: UK and Wales Damage Claim

Thanks for the follow-up, Alex.

I still insist that Musk provide a privilege log with regard to the document to identify the source and relevant dates. It now appears that Musk conducted an investigation through counsel and that information should have been disclosed or a privilege log submitted in response to Mr. Unsworth's initial written interrogatories and document requests. There is now a legitimate question of applicability of, and possible waiver of, the work product protection, if any, resulting from the failure to timely produce the document and identity the source(s).

Mr. Unsworth is entitled to the identify of the source of the document provided to Birchall/Brickhouse and for Musk to confirm whether another investigation was conducted through counsel. His discovery responses only identified James Howard in response to the requests regarding any investigation. We can assess whether this information is protected after we receive and review the privilege log. A supplemental and amended response to Musk's discovery responses is also required under these circumstances. Please accept this email to serve as Mr. Unsworth's demand for supplementation of Musk's responses.

I accept your representation that Birchall/Brickhouse was not involved in the WhatsApp chat. All I need is confirmation of the phone number used by Teller in that conversation if you don't mind providing it. I know you provided me with a cell number for Teller when you initially told me to locate him myself, but I am unclear as to whether he had another phone that may have been used in the WhatsApp discussions.

I do not recall any declarations regarding the search of Musk's iCloud account. If I missed something in that regard, let me know. Otherwise, in light of Musk's periodic destruction of his cell phones, this search is reasonable and necessary and I must insist on the detailed description of the search efforts as set forth in my earlier email.

I contend that Ms. Glover should have been identified months ago in response to Mr. Unsworth's initial discovery. There are other witnesses who were also not timely identified. The requests were not limited to identifying "trial" witnesses, rather they were framed to require identification of all witnesses with

2

"relevant" knowledge. I now know that Ms. Glover had knowledge of at least the BuzzFeed article, Musk's emails to Ryan Mac, and Musk's media strategy regarding same, if not other relevant issues.

Given your agreement to cover the expense of Mr. C's conference room for the September 30 and October 1 depositions (and lunch!), please allow this email to serve as my agreement and amendment to the notices as to the location for those depositions.

Let me know what you propose regarding Ms. Glover's deposition.

You did a good job for the Dawgs. Not so much for the Falcons.

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Sep 23, 2019, at 7:30 PM, Alex Spiro <alexspiro@quinnemanuel.com> wrote:

> Lin-
>
> We will provide the document but maintain that the document came through the work of a lawyer, was done in anticipation of litigation, is protected by attorney-work product, and is not discoverable.
>
> There is nothing further on the cloud. The declarations provided to you are more than sufficient and we have confirmed there is nothing further.
>
> Sam teller name is identified in the chat. That was my point in saying that if you overlay them you can see that. I was working towards being helpful there by doing exactly that. Birchall number doesn't appear.
>
> Yes, we are covering Mr c's and of course you got lunch and we will speak to Ms. Glover and revert.
>
> Alex
>
>
> Sent from my BlackBerry - the most secure mobile device
>
> **From:** lwood@linwoodlaw.com
> **Sent:** September 23, 2019 6:10 PM
> **To:** alexspiro@quinnemanuel.com

3

**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.
mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com;
jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.com;
nwade@linwoodlaw.com; michaellifrak@quinnemanuel.com
**Subject:** RE: UK and Wales Damage Claim

[EXTERNAL EMAIL]

Alex,

Thank you for your email received at 5:40 p.m. ET today. Prior to serving you
tomorrow with the stipulation required to initiate the motion to compel
process, I would urge that you reconsider your position as follows:

1.  Musk continues to refuse to produce Tik's birth certificate as
    described in the communications between Birchall/Brickhouse and
    Howard-Higgins and has refused to identify the source(s) who
    provided the birth certificate to Birchall/Brickhouse. Today, you claim
    the source was a lawyer and that the information is protected by the
    work product doctrine. You have failed to provide me with a privilege
    log per my request with respect to this information. As you know, the
    work product doctrine does not generally protect from discovery
    the factual information obtained from an investigation conducted by
    a third party at the request of an attorney. "It is generally accepted
    that the 'work product doctrine does not protect against the
    disclosure of facts or the identity of persons from whom the facts are
    learned.'" *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco
    Systems, Inc.* 2005 WL 1459555, at *4 (N.D. Cal., June 21, 2005).

In an effort to continue working to resolve this issue, I requested yesterday a
detailed privilege log from Musk in order to assess the claim of privilege or
work product protection (which might require deposing the source). Musk
has failed to provide a privilege log. Your obligation to do so is clear under
federal law. "Federal Rule of Civil Procedure 26(b)(5) provides that '[w]hen a
party withholds information otherwise discoverable by claiming that the
information is privileged or subject to protection as trial-preparation
material, the party must: ... (i) expressly make the claim; and ... (ii) describe
the nature of the documents, communications, or tangible things not
produced or disclosed ... in a manner that, without revealing information
itself privileged or protected, will enable other parties to assess the claim.' ...
A party's '[]failure to provide sufficient information may constitute a waiver
of the privilege.'" *Friends of Hope Valley v. Frederick Co.*, 268 F.R.D. 643, 650
(E.D. Cal. 2010). "A judge of this court has stated that '[t]he requisite detail
for inclusion in a privilege log consists of [1] a description of responsive
material withheld, [2] the identity and position of its author, [3] the date it

4

was written, [4] the identity and position of all addressees and recipients, [5] the material's present location, [6] and specific reasons for its being withheld, including the privilege invoked and grounds thereof.'" *Id.* at 650-51.

2. I have also questioned the good faith of the efforts by Musk to search his iCloud backup account for additional responsive texts and emails and in an effort to continue to working to resolve this issue, I requested that you provide me in writing with a reasonably detailed description of the actual efforts undertaken to comply with this relevant request (which would include, at a minimum, the search terms, date of search, the identity of the individual(s) conducting the search). Musk has not responded to this request.

3. Finally, your response to my requests that Musk identify by name the individuals on the WhatsApp chain have been met with you telling me to overlay the documents with phone numbers onto the redacted chat discussion. This process does nothing to assist Mr. Unsworth in ascertaining the identity of all individuals involved in the chat discussions. In one last effort to compromise and resolve this dispute, would you please confirm that Sam Teller and Jared Birchall were participants in the chat discussions and identify the phone numbers they used for the chat session on the documents previously produced regarding the chat discussion.

Since I plan to serve the stipulation tomorrow afternoon so there is still time for Musk to comply with his discovery obligations without forcing the Court to resolve the issues.

Regarding the location for the September 30 and October 1 depositions, Veritext does not charge for the use of its conference room in LA. I am unwilling to incur an unnecessary expense to my client. If you are willing to pay for the use of the facilities at Mr. C's, let me know. Otherwise, we will proceed per the Notices at Veritext's LA offices.

It is my understanding that Ms. Glover was served with her subpoena this morning. If you wish to confer with me on another date for her deposition, I am happy to discuss provided we can accomplish her deposition on a convenient date prior to October 11.

Thanks.

Lin


L. Lin Wood

L. LIN WOOD, P.C.

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com


**NOTICE: This communication may contain privileged or other
confidential information. If you are not the intended recipient, or
believe that you have received this communication in error, please do
not print, copy, retransmit, disseminate, or otherwise use the
information. Also, please indicate to the sender that you have received
this communication in error, and delete the copy you received. Thank
you.**


**From:** Alex Spiro <alexspiro@quinnemanuel.com>
**Sent:** Monday, September 23, 2019 5:40 PM
**To:** Lin Wood <lwood@linwoodlaw.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans
<alexbergjans@quinnemanuel.com>; Jeanine Zalduendo
<jeaninezalduendo@quinnemanuel.com>; Matt Wood <mwood@wshllp.com>; Chris
Chatham <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>;
Taylor Wilson <twilson@linwoodlaw.com>; Jonathan Grunberg
<jgrunberg@linwoodlaw.com>; Mark Stephens, CBE
<Mark.Stephens@howardkennedy.com>; Adam Fellows

<Adam.Fellows@howardkennedy.com>; Nicole Wade <nwade@linwoodlaw.com>;
Michael Lifrak <michaellifrak@quinnemanuel.com>
**Subject:** Re: UK and Wales Damage Claim

Lin-

The information came through the work of a lawyer, was done in anticipation of
litigation, is protected by attorney-work product, and is not discoverable.

As I indicated we already took care of the Mr c reservation so that is all set and I'll follow
up with Ms. Glover.

There was also no failure to identify Ms. Glover. I have already explained that you
should not take my not responding to a given point in an email as some indication I
agree with you but since I've heard this refrain a lot, I am going to respond this time. We
had no intention to call her as a witness so we did not disclose her, nor did we or do we
have any reason to think she has relevant information.

Alex

Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com

**Sent:** September 22, 2019 3:22 PM

**To:** alexspiro@quinnemanuel.com

**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.
mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com;
jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.com;
nwade@linwoodlaw.com; michaellifrak@quinnemanuel.com

**Subject:** Re: UK and Wales Damage Claim

Alex,

I am going to make an exception to my Saturday and Sunday "off the clock" just for you, Alex.

A claim of "privilege" to the production of Tik's birth certificate is frivolous and in bad faith. By definition and description, the birth certificate cannot be privileged. Nor is the identity of the source or the date it was received and by whom. I demand that Musk submit a privilege log tomorrow by Noon ET that provides the information required required for Plaintiff to assess and challenge the assertion of privilege. It is beginning to appear that Musk engaged in another investigation of Mr. Unsworth that he may have hidden during discovery. I hope that does not prove to be the case but if it does, Plaintiff will move for sanctions. This issue can be better assessed when we receive his privilege log tomorrow.

If you are willing to pay for the cost of the conference room at Mr. C's on September 30 and October 1, I will agree to change the location of the 3 depositions for the convenience of your witnesses. Otherwise, we will plan to proceed at the Veritext offices as set forth in the Notices.

If you commit in writing to making Ms. Glover available for her deposition on a convenient date prior to October 11, I will amend the deposition notice and withdraw the subpoena. Otherwise, Plaintiff will proceed with her deposition as presently noticed on October 8. Musk failed to timely identify her and has also failed to provide her home address and contact number. So we have proceeded in good faith with setting her deposition by subpoena.

Regarding all other issues, my Friday emails were very clear and I stand by the requests, demands, statements, and deadlines set forth therein.

Now I will return to cheering for the Atlanta Falcons and urge you to also "Rise Up!" They need all the help they can get!

Thanks.

Lin

L. Lin Wood"

L. LIN WOOD, P.C.

8

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com


Sent from my iPhone


On Sep 22, 2019, at 2:06 PM, Alex Spiro <alexspiro@quinnemanuel.com> wrote:

Lin -


We received your deposition notices. As to the three witnesses who we
agreed to produce outside the discovery period and who are all flying in
for the depositions, we have previously arranged and scheduled and
reserved Mr. C's for those depositions. We have confirmed that there
will be no timing issue (the room is ours without any time limit) so there
will be no concern and nothing further you need to reserve.


As for Ms. Glover, I assume from your depo notice she lives in Virginia?
Is that a holding date or have you confirmed that the date works for
both you and her? Just want to understand so I can check schedule and
arrange.


As for the birth certificate, we have reached the conclusion it is
privileged and so we are not providing it.


As for the whatsapp chat, I assume you overlayed the two chats
together and you will see that almost all numbers are identified. I was
able to identify the 310 (previously unidentified #) as Chris bowman.

9

I'm not sure I follow your most recent email (other than the Georgia game part- congrats). Can you explain to me what else you think you are missing?

Alex

Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com

**Sent:** September 20, 2019 9:29 PM

**To:** alexspiro@quinnemanuel.com

**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinne mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com; jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.co nwade@linwoodlaw.com; michaellifrak@quinnemanuel.com

**Subject:** RE: UK and Wales Damage Claim

[EXTERNAL EMAIL]

Alex,

I stand by and reiterate each and every one of my requests, statements and deadlines as set forth in my email sent today at 7:00 p.m. with one exception: I accept your statement regarding the AIG reservation of rights and withdraw Plaintiff's request for the AIG communication(s). On every other point, Musk has not complied with his discovery obligations as I set forth in my 7:00 p.m. email. I continue to demand and expect a fulsome response and production to Plaintiff's requests by Monday at 4:30 p.m. Your 7:52 p.m. email is wholly unacceptable as a reasonable response with the sole exception of the AIG issue.

Supplementing my 7:00 p.m. email, I reiterate that we do not represent Tik and you have known that to be the case for

months. We accommodated your request about the photos because you did raise that request at her deposition. Our efforts to obtain the photos and provide them to you were undertaken voluntarily on our part in a "beyond the call of duty" effort to cooperate with you (note that I did not respond to your request by telling you to obtain the photos yourself from Tik, a resident of Thailand). We are under no legal or professional obligation whatsoever to respond to any of your additional issues/disputes regarding Tik and we will not do so.

Further, I do not understand the basis of your email request for Mr. Unsworth's cell phone number and provider. I am happy to review any basis you provide me in writing that supports the validity of your request and I will respond to you in writing. With all due respect, I seriously doubt you would provide me with Musk's numerous cell phone numbers and providers since June 1, 2018 in response to an informal and untimely request on my part, so for the life of me, I do not understand why you would expect me to do so for you. But I invite you to convince me otherwise in writing. Just do not expect a response from me until Monday morning at the earliest because absent legal emergencies, I am "off the clock" this weekend on Saturday and Sunday.

Additionally, to supplement my earlier email to address you claims raised in your 7:52 p.m. email - Plaintiff did in fact timely seek discovery of the birth certificate when we asked for all documents concerning any investigations into Mr. Unsworth. I timely asked Birchall to identity the source of the birth certificate at his deposition. I was very surprised that he did not recall the name but he stated under oath that he could easily ascertain the identity of the person so I did not expect Musk to unreasonably refuse to provide it. The birth certificate should have been produced weeks ago and the identity of the source should have been disclosed as early as initial disclosures. This has now become a well-established pattern by Musk in this case. As one example of many, discovery games were played with respect to Sam Teller - Teller should have been identified in initial disclosures and/or interrogatory responses. When I finally learned of Teller's involvement from a timely review of the documents, I requested his deposition. Initially, you stated that you could not contact him and told me to find him myself and arrange for his deposition myself before finally agreeing to produce him very late in the discovery process. With your experience, you must realize that Musk's

11

tactics will not deter or prevent Mr. Unsworth from developing a full factual record in this case.

Finally, in response to your statement, "We will continue to meet and confer and aim to be helpful," I will borrow a Spiro line: I disagree with your characterization.

Once again, have a great weekend and Go Dawgs!

Lin

L. Lin Wood

L. LIN WOOD, P.C.

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com

**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**

**From:** Alex Spiro <alexspiro@quinnemanuel.com>
**Sent:** Friday, September 20, 2019 7:52 PM
**To:** Lin Wood <lwood@linwoodlaw.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Matt Wood <mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>; Adam Fellows <Adam.Fellows@howardkennedy.com>; Nicole Wade <nwade@linwoodlaw.com>; Michael Lifrak <michaellifrak@quinnemanuel.com>
**Subject:** Re: UK and Wales Damage Claim

Lin-

I disagree with your characterizations again. I said on the last call that we would talk again on Friday or early next week. For some reason, you chose to interpret that as Friday. Regardless, I have been responsive to each of your lengthy requests outside of the regular course of discovery and have made a good-faith effort to answer all of your questions. I will do so again as to the issues you raise in your latest email in order:

You are reading too much into my comment that "I" can't know one way or another that they are the same person. That's all I said. When we have asked for communications involving him, we have assumed that they are one in the same, but I don't personally know that.

As to Ms Glover, I'm not sure why this is so controversial. If you aren't happy that I haven't been able to meet all of your demands in 72 hours then you are free to reach out to her on dates and locations and confer with us. And if I reach her vice versa.

We have searched all the locations we discussed, and there are no more responsive documents.

As to Tik and Mr. Unsworth, the "sworn deposition testimony" was that they had other communications, which you have not yet provided. Are you providing their phone numbers and carriers, as I requested?

AIG has reserved rights.

There is no basis for you to obtain any further information from us about Tik's birth certificate. If you had one, you should have pursued it during discovery.

Thank you for producing the pictures of your client's feet. Far from being "ridiculously irrelevant," they relate directly to your client's involvement in the rescue, and they should have been produced long ago.

13

We will continue to meet and confer and aim to be helpful.


Alex


Sent from my BlackBerry - the most secure mobile device



**From:** lwood@linwoodlaw.com

**Sent:** September 20, 2019 7:01 PM

**To:** alexspiro@quinnemanuel.com

**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinne mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com; jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.co nwade@linwoodlaw.com; michaellifrak@quinnemanuel.com

**Subject:** RE: UK and Wales Damage Claim


[EXTERNAL EMAIL]


Alex,


We held a telephone meet and confer on Tuesday at 2:30 p.m. ET. At 4:30 p.m. ET that day, I sent an email to you stating, among other things, "We agreed to speak again on Friday on the status of these issues. Let me know what time works best for you." I am 100% certain that we agreed on Tuesday to confer today; however, I certainly cannot force you to honor your discovery agreements with opposing counsel. What I can do is insist that future meet and confers be in written exchanges only between counsel or in the unlikely event that a telephone conference is necessary, that the conference be attended and transcribed by a certified court reporter. So, plan on one of those two options going forward.

With regard to our discussions about Mr. Howard-Higgins, I am again 100% certain with regard to your admission as to his identity. But since you disagree with my characterization of our meet and confer on that issue, we can easily resolve it as follows: if Musk contends that James Howard and James Howard-Higgins are different people, please provide me pursuant to Musk's discovery obligations with the last known address and telephone number for the "James Howard-Higgins" that you identified as relevant to this case when you served Mr. Unsworth with a subpoena for all communications with "James Howard-Higgins." Please provide this information by Monday at 4:30 p.m. ET (which is the deadline you unilaterally imposed on Mr. Unsworth today for production of the additional documents we agreed to produce during previous meet and confer conferences).

We have ourselves, as you suggested, addressed Ms. Glover's deposition today so your refusal to accept my effort to cooperate with you and reasonably accommodate the witness (since she is one of Musk's PR consultants) is now irrelevant.

I question the good faith of Musk's efforts to identify the identities of the individuals whose phone numbers appear on the WhatsApp text chain produced by Musk. We will address that issue at the appropriate time with the Court.

I also question the good faith of Mr. Musk's efforts upon which you base your statement, "There is nothing further on any production re any question below in terms of communications of Mr musk or Mr birchall bc none of the things you request exist. There is nothing on cloud. There are no further documents or agreements or communications with the investigator." Your statement is contrary to the sworn testimony of Musk and Birchall. I request that with regard to Musk's efforts to search and produce these documents, you promptly provide me in writing with a reasonably detailed description of the actual efforts undertaken to comply with these relevant requests. If necessary, we will also address this issue at the appropriate time with the Court.

With respect to your request for additional documents related to relevant electronic communications between Mr. Unsworth and Tik, I refer you to their sworn deposition testimony which was unequivocal, accurate and fully responds to your request.

I think we can in good faith resolve the dispute over the production of a copy of the recent communication(s) to AIG. Plaintiff is clearly entitled to discover all insurance policies applicable to the claims set forth in the Complaint. Given Musk's sworn testimony that he is financially illiquid, Mr. Unsworth is entitled to know whether AIG has accepted coverage of the claims, denied coverage of the claims, or has reserved its rights to contest coverage of the claims. This information regarding AIG is also relevant to formulating voir dire questions for jury selection. If you will simply provide me with an answer to that question regarding AIG's position on coverage, there will be no need to address the AIG communication issue with the Court.

The information regarding the identity of the individual or firm who allegedly provided Birchall with a copy of Tik's birth certificate and the production of the birth certificate received by Birchall is unquestionably relevant and reasonably calculated to lead to the discovery of admissible evidence on the issues of falsity and actual malice – that is the legal basis for the requests and it is supported by the factual record developed in the case to date. This discovery should have been provided by Musk months ago in his initial disclosures and his responses to Plaintiff's interrogatories and document requests. No legitimate claim of "privilege" can be asserted by Musk to this information. Please provide this information and the birth certificate by Monday at 4:30 p.m. ET.

In closing, I note that I did not demand that you provide me with the legal basis for your repeated requests to receive copies of the photographs of Mr. Unsworth's feet. Despite the fact that we do not represent Tik, Plaintiff obtained and produced today the photographs of Mr. Unsworth's feet per your requests without forcing you to waste time explaining the legal basis for supporting discovery of such a ridiculously irrelevant request by Musk.

I will look forward to hearing from you in writing by Monday at 4:30 p.m. ET and to receiving Musk's supplemental document production by that same deadline.

Have a great weekend and pull for the UGA Dawgs to defeat Notre Dame!

Lin

L. Lin Wood

L. LIN WOOD, P.C.

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com

**NOTICE: This communication may contain privileged or
other confidential information. If you are not the intended
recipient, or believe that you have received this
communication in error, please do not print, copy,
retransmit, disseminate, or otherwise use the information.
Also, please indicate to the sender that you have received
this communication in error, and delete the copy you
received. Thank you.**

**From:** Alex Spiro <alexspiro@quinnemanuel.com>
**Sent:** Friday, September 20, 2019 3:10 PM
**To:** Lin Wood <lwood@linwoodlaw.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex
Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo
<jeaninezalduendo@quinnemanuel.com>; Matt Wood
<mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>;
Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson
<twilson@linwoodlaw.com>; Jonathan Grunberg
<jgrunberg@linwoodlaw.com>; Mark Stephens, CBE
<Mark.Stephens@howardkennedy.com>; Adam Fellows
<Adam.Fellows@howardkennedy.com>; Nicole Wade
<nwade@linwoodlaw.com>; Michael Lifrak
<michaellifrak@quinnemanuel.com>
**Subject:** Re: UK and Wales Damage Claim

Lin-

I never agreed to a call Friday and you know that.

Where are you with producing the photos from tiks phone? And the corrected texts and everything else from Mr unsworth's phone? Are you all still taking the position that tik and unsworth never communicated electronically? Please provide their cell phone numbers and carriers.

There is nothing further on any production re any question below in terms of communications of Mr musk or Mr birchall bc none of the things you request exist. There is nothing on cloud. There are no further documents or agreements or communications with the investigator.

If you want to provide a legal basis to request the birth certificate go ahead. I will consider it. We are not providing communications to AIG. If you have a question ask it.

Glover is your witness. You need not wait on me and I have no obligation to produce her. If and when I'm able to, I will let you know. We feel she is irrelevant.

I have been able to identify no one further on whatsapp chat.

I would like the answers to unsworth's productions by 430 est Monday.

Thanks

Alex


Sent from my BlackBerry - the most secure mobile device



**From:** lwood@linwoodlaw.com

**Sent:** September 20, 2019 10:35 AM

**To:** alexspiro@quinnemanuel.com

**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinne mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com; jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.co nwade@linwoodlaw.com; michaellifrak@quinnemanuel.com

**Subject:** Re: UK and Wales Damage Claim


Alex,

Mr. Birchall agreed to identify the name of the individual who provided him with a copy of Tik's birth certificate. That certificate must also be produced. He also testified that there may be additional texts related to the investigator and with Musk. He also testified there may be a final report from Howard-Higgins. Your email answers exactly none of these issues.

I extended you the courtesy of obtaining convenient dates from Ms. Julianna Glover. Your email is silent as to that issue.

We have requested that the iCloud backup of Musk emails and texts be searched. Again your email is silent on that issue.

You committed to providing us the identities of the individuals whose phone numbers appear on the WhatsApp documents. No names have been provided.

We requested the employment agreement with Howard-Higgins. Does one exist and if so, will you produce it without further delay?

We requested the AIG notice if claim correspondence. Your email is again silent in this issue.

We did agree to confer on Friday (today) in these issues. I appreciate your agreement to provide Arnold for a deposition on October 1. We will depose him on that date.

Please promptly live up to your agreement in the Tuesday meet and confer. There is no reason to involve the Court on these issues. Please do not force us to do so.

Thanks.

Lin

L. Lin Wood

19

L. LIN WOOD, P.C.

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com


Sent from my iPhone


On Sep 20, 2019, at 10:08 AM, Alex Spiro <alexspiro@quinnemanuel.com>
wrote:

Lin- To answer your first question of what I meant when I said we disagree it
means we disagree with what you wrote.


There are no additional documents from birchall and Arnold can be available
on the 1st in LA. I have no further updates, never agreed to a call Friday date
certain, and there is no need for a call. We can speak next week.


Alex


Sent from my BlackBerry - the most secure mobile device


**From:** lwood@linwoodlaw.com

**Sent:** September 20, 2019 9:08 AM

**To:** alexspiro@quinnemanuel.com

**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinne
mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com;

jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.co
nwade@linwoodlaw.com; michaellifrak@quinnemanuel.com

**Subject:** Re: UK and Wales Damage Claim


Alex,


Would you be kind enough to provide us with options for the time of the meet
and confer to be held this afternoon per our discussion on Tuesday?


Lin

L. Lin Wood

L. LIN WOOD, P.C.

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com


Sent from my iPhone


On Sep 19, 2019, at 6:01 PM, Lin Wood <lwood@linwoodlaw.com> wrote:

Alex,


I never hear back from you about what the disagreement was regarding my
email about the pre-trial stipulation.

Nonetheless, what time do you want to conduct the telephone meet and confer conference tomorrow regarding the remaining discovery issues we discussed on Tuesday? Anytime after 2 pm ET works for me.

Let me hear from you.

Thanks.

Lin

L. Lin Wood

L. LIN WOOD, P.C.

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Sep 18, 2019, at 10:55 AM, Alex Spiro <alexspiro@quinnemanuel.com> wrote:

We disagree

Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com

**Sent:** September 17, 2019 10:26 PM

**To:** alexspiro@quinnemanuel.com

**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinne mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com; jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.co nwade@linwoodlaw.com; michaellifrak@quinnemanuel.com

**Subject:** UK and Wales Damage Claim

[EXTERNAL EMAIL]

Alex,

Today, you communicated a firm "no" on whether Musk would consent to a stipulation in the pre-trial order that Mr. Unsworth was withdrawing his exception to damages suffered in the UK and Wales (Compl. ¶¶ 108-109.)

As you will recall, I first communicated the likelihood that Mr. Unsworth would be withdrawing Paragraphs 108 and 109 on August 14 during his deposition—the very first deposition in this case. I did so on the record, stating that Musk could examine Mr. Unsworth regarding damages suffered in England and Wales. (Unsworth Dep. at 245:18-23).

On September 3, I sent you and your team an email confirming that Mr. Unsworth would in fact be withdrawing the paragraphs and asked if you would consent to a pre-trial stipulation. Since September 3, we have discussed my effort to seek consent on several occasions, including exchanges by email and in person. Initially, you wanted to know if Mr. Unsworth would formally withdraw his action in the UK if you consented to the stipulation. I promptly responded in the affirmative. You later asked if Mr. Unsworth would agree that he would not file another lawsuit against Musk in another jurisdiction if you consented to the stipulation. I again promptly responded in the affirmative.

I was disappointed with your 'no" today because I believe my request for the stipulation is entirely reasonable, is consistent with the Federal Rules, and would avoid burdening the Court with resolving the issue at the pre-trial hearing. I can discern no prejudice to your client by consenting to the stipulation; to the contrary, Musk benefits from an agreement to dismiss of the UK action and the covenant not to sue in other jurisdictions. During our discussions, I asked what prejudice (if any) you thought might result from consenting to the pre-trial stipulation. You have not identified any such prejudice. You timely received our expert reports. Consistent with our position regarding the UK and Wales, the damage calculations included the UK and Wales. Obviously, you are still free to identify a rebuttal expert on those damage calculations. Despite your right of rebuttal, if you feel that there is any additional reasonable and necessary discovery Musk wishes to undertake on UK and Wales damages prior to the submissions of our respective portions of the proposed pre-trial order, just let me know and I will work with you to get it accomplished prior to the pre-trial submissions.

I know you have been extremely busy on this case and other important matters and I understand that you have been trying hard to get an answer from your client on the issue of consent. I had hoped we could go ahead and check this box as we both have many other more important issues to address in order to comply with the deadlines set forth in the unsigned scheduling order. I hope that you will reconsider your position. If so, I would appreciate you letting me know at the earliest possible moment. If you remain unable to consent, we will allow the Court to resolve the issue at the pre-trial hearing. I respect your client's right to withhold consent to the requested stipulation, but I am also confident that I have just been diligent in pursuing this issue to insure that you were aware of, and on notice of, our pre-trial position well in advance of the deadline for submission of a proposed pre-trial order.

Thanks.

Lin

L. Lin Wood

L. LIN WOOD, P.C.

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com


**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**


**From:** Alex Spiro <alexspiro@quinnemanuel.com>
**Sent:** Tuesday, September 17, 2019 4:42 PM
**To:** Lin Wood <lwood@linwoodlaw.com>; Michael Lifrak <michaellifrak@quinnemanuel.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Matt Wood <mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>; Adam Fellows <Adam.Fellows@howardkennedy.com>; Nicole Wade <nwade@linwoodlaw.com>
**Subject:** Re: Scope of damages

Lin - that was (yet again) your list. I agree that's your list. I agreed to 1 and 2.
The rest I told you I would look into or let you know at a future time if I agreed
that I would try to accommodate your many requests.

You also keep mischaracterizing things. For example, when you say in #10 "who
you confirmed are the same person". I have no idea. I answered that for the
purposes of my question you can assume that.

I'll update you in the coming days. Thx

Alex

Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com

**Sent:** September 17, 2019 4:33 PM

**To:** alexspiro@quinnemanuel.com; michaellifrak@quinnemanuel.com

**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinne
mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com;
jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.cc
nwade@linwoodlaw.com

**Subject:** RE: Scope of damages

[EXTERNAL EMAIL]

Alex and Michael,

I want to confirm the issues that we discussed during today's
meet and confer telephone conference to make sure that we
are all on the same page. According to my notes, we discussed
the following:

26

1.  We agreed to take the depositions in
LA of Teller on September 30 and Davis
on October 1 – you will make them
available and arrange their appearance
(let's discuss location – I was not happy
with Mr. C.'s for limiting our time at the
deposition of Birchall);

2.  We will hold open the balance of those
two dates to add a possible third
deposition on September 30 or October 1;

3.  You will attempt to locate the last
known address and phone number of
Arnold. After we get his address, we will
serve him with a subpoena.

4.  You will attempt to see if you can get a
convenient date from Glover. If so, we will
send a subpoena to her.

5.  If you are unable to arrange for
depositions of Arnold and Glover, we will
do our best to work with you and the
witnesses to schedule the depositions on
dates convenient to you and the
witnesses.

6.  You will try to identify for us the
identities of the individuals associated
with the different phone numbers on the
WhatsApp messages (and for
confirmation that we discussed this
during Mr. Musk's deposition on August
22, look at pages 276-77 of his deposition,
where you clearly indicated that you
would "figure it out" after the deposition
and provide us information about "who is
the person behind the various phone
numbers on this WhatsApp chat");

7.  You will advise us on the status of the
iCloud search for additional responsive
documents (including emails and texts)
from Musk;

8.  You will look into all of the Birchall
and Elon documentary issues previously
identified by us, including:

a. Search of Birchall's additional email accounts

b. Written agreement with Howard/Howard-Higgins

c. AIG notice letter

d. Source from which Birchall obtained Tik's birth certificate and a copy of the birth certificate he received.

9. You will not agree to any stipulation on withdrawal of the paragraphs in the complaint relating to UK damages;

10. Howard Kennedy does not have any communications with Howard/Howard-Higgins (who you confirmed are the same person), but I will confirm that again with Mark but I have to again add the caveat to this response by pointing out that there could be communications with him under a name different from Howard or Howard-Higgins, which we would have no way of identifying; and

11. Mike and Taylor will work on the ADR deadline required by the Court to ensure that we have complied with all court requirements.

We agreed to speak again on Friday on the status of these issues. Let me know what time works best for you. Due to time constraints, we would appreciate receiving responsive documents to 6, 7 and 8 above as soon as possible.

Thank you,

Lin

L. Lin Wood

L. LIN WOOD, P.C.

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com

**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**

**From:** Nicole Wade <nwade@linwoodlaw.com>
**Sent:** Monday, September 16, 2019 6:33 PM
**To:** Michael Lifrak <michaellifrak@quinnemanuel.com>; Lin Wood <lwood@linwoodlaw.com>; Alex Spiro <alexspiro@quinnemanuel.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Matt Wood <mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>; Adam Fellows <Adam.Fellows@howardkennedy.com>
**Subject:** Re: Scope of damages

Thanks, Michael, we will get it filed. Also, can you please provide us with a last known address and telephone number for David Arnold?

29

# EXHIBIT B

# EXHIBIT B

**Taylor Wilson**

| | |
|---|---|
| **From:** | Lin Wood |
| **Sent:** | Tuesday, September 24, 2019 6:31 PM |
| **To:** | Alex Spiro |
| **Cc:** | Taylor Wilson; Jonathan Grunberg; Nicole Wade; Matt Wood; Mark Stephens, CBE; Adam Fellows; Chris Chatham; Kimmy Hart Bennett; Robert Schwartz; Alex Bergjans; Jeanine Zalduendo; Michael Lifrak |
| **Subject:** | RE: Musk iCloud Search |
| **Attachments:** | Tesla Records Certification - Unsworth v. Musk.pdf |
| **Importance:** | High |

Alex,

Please produce without further delay the document you describe as a copy of Tik's national ID card. Defense counsel's assumptions are not a basis to continue to refuse to produce this clearly relevant document.

Plaintiff will proceed with Court's required procedures to move to compel the identity of the investigator(s) and urge to the Court Plaintiff's right to obtain his or her deposition upon identification by Musk. I understand the work product doctrine and I am confident the doctrine does not confer an absolute discovery privilege. I am equally confident that the work product doctrine does not allow a party to hide the identities of witnesses with relevant knowledge and is not a mechanism to hide factual information from the opposite party that is only known to, and in the possession of, the party wo conducted the investigation. While Plaintiff's legal position will be set forth in the stipulation we will forward to you, suffice it to say at this time that the information is reasonably calculated to lead to the discovery of admissible evidence on the issues of falsity, negligence, and actual malice (among other things regarding actual malice, to establish a purposeful avoidance of the truth). I know of no rule that forces Plaintiff to accept representations of counsel as to the factual details upon which a claim of work product protection is based and I decline to do so in this instance.

There is no legal basis whatsoever to support Musk's continuing refusal to produce the described document or disclose the identity of the investigator(s). Under these circumstances, Plaintiff must also consider seeking sanctions in his motion for Musk's willful failure to provide clearly relevant discovery.

Regarding the search of Musk's iCloud backup, Plaintiff has only received the attached Records Certification from Tesla. Plaintiff has not received any declaration from SpaceX and no declaration from anyone which confirms a search of Musk's iCloud backup for potentially relevant emails and texts. As I have made clear, the need for the iCloud backup search arises from the sworn testimony of Musk that he destroyed his cell phone which he used during the relevant time period of July to September 2018. It is this issue of potential spoliation that has created the need for the iCloud search. Musk testified that he maintains all of his cell phone information on iCloud and that he has deleted nothing from it. The Tesla records certification has no bearing on Musk's iCloud backup or what has been done, if anything, to search it. In fact, our meet and confer efforts with respect to Musk's need to search his iCloud backup occurred *after* the date of the Tesla records certification and there is no indication that Tesla has access to or has searched Musk's iCloud backup or was even made aware of the undisputed testimony by Musk that he destroyed his cell phone and thereby created the need for a search of his iCloud backup account. Plaintiff will proceed to also address this issue by motion to compel and will include it in our stipulation.

You have today for the first time in our many communications and conferences made a demand that Plaintiff submit a declaration regarding the completeness of Mr. Unsworth's production of relevant emails and texts and Howard Kennedy LLP's search for communications from James Howard-Higgins. Unlike the situation arising from Musk's destruction of his cell phone, you have not identified any factual basis whatsoever to support a contention that there has been a failure by Plaintiff or his counsel to properly and fully produce relevant texts or emails. If you have a factual basis for your demand (other than a playground "tit for tat"), you are invited to identify that basis in detail (as I have done with respect to Musk's cell phone destruction). Absent a reasonable basis for the demand being set forth by Musk, no declaration is required or necessary and no declaration(s) will be forthcoming. Also, to correct your unsupported statement regarding Mr. Unsworth's production, unlike Musk, he has not been guilty of a "very late production" and he has not destroyed potentially relevant documents at a time when by his admission, he clearly anticipated litigation.

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**

**From:** Alex Spiro <alexspiro@quinnemanuel.com>
**Sent:** Tuesday, September 24, 2019 4:40 PM
**To:** Lin Wood <lwood@linwoodlaw.com>
**Cc:** Taylor Wilson <twilson@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Nicole Wade <nwade@linwoodlaw.com>; Matt Wood <mwood@wshllp.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>; Adam Fellows <Adam.Fellows@howardkennedy.com>; Chris Chatham <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Michael Lifrak <michaellifrak@quinnemanuel.com>
**Subject:** Re: Musk iCloud Search

Lin-

Mr. Birchall received the document on Sept 11th. It is a copy of Tik's Thai national ID card, which she has a copy of. We are under no obligation to produce a detailed privilege log related to the activities of counsel (all of which occurred after the September 4, 2018 BuzzFeed article and your public tweet of a demand letter). We have provided sufficient information for you to evaluate our claim of work product protection, including the date

2

of the communication and the basis for the claim of privilege.  Any investigation conducted at the direction of attorneys and in anticipation of litigation is protected by the work product doctrine.  The identity of any investigator is irrelevant and has no bearing on any legal issue.  If you want to provide contrary authority, feel free to do so.  Or if you can explain to me the relevance of what occurred after the BuzzFeed article.  In this regards I'm happy to listen.

All of the Productions included a declaration and the SpaceX tech team who signed that declaration confirmed what I already stated, which is implicit in their declaration. Please provide a declaration for Mr. Unsworth's very late production and the representation you made about the search at Howard Kennedy LLP.

We have met and conferred on these issues and feel free to file any motion related to them.

Alex

Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com
**Sent:** September 24, 2019 3:19 PM
**To:** alexspiro@quinnemanuel.com
**Cc:** twilson@linwoodlaw.com; jgrunberg@linwoodlaw.com; nwade@linwoodlaw.com; mwood@wshllp.com;
Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.com; chris@chathamfirm.com;
khart@linwoodlaw.com; robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com;
jeaninezalduendo@quinnemanuel.com; michaellifrak@quinnemanuel.com
**Subject:** Musk iCloud Search

[EXTERNAL EMAIL]

Alex,

I cannot locate a sworn declaration which confirms that Musk's iCloud backup account has been searched. If this search has been accomplished, please provide me with a signed declaration specifically affirming the iCloud search, the dates of the search, the key words used for the search, and whether any additional emails or texts were discovered. The problem arises because Musk did not retain his iPhone from the relevant time period per his deposition testimony. Let's get this issue resolved.

Also, I am still waiting to receive the privilege log and the identity of the investigator(s) who provided a copy of Tik's birth certificate to Birchall/Brickhouse or information regarding the certificate. I first inquired about the individual's identity at the deposition of Birchall/Brickhouse on September 10. Given the scheduling order, 2 weeks is ample time for disclosure of the identity. Obviously, I may request a deposition from the investigator when his or her identity is disclosed.

Thanks.

Lin

L. Lin Wood

L. LIN WOOD, P.C.

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com

**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**

# EXHIBIT C

# EXHIBIT C

| Individual | General Subject Matter |
|---|---|
| | rescue vehicle: the design and use of the rescue vehicle: Plaintiff's role in the Tham Luang cave rescue |
| Thai government officials | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; Plaintiff's role in the Tham Luang cave rescue |
| Ryan Mac | Mr. Musk's communications to BuzzFeed News at issue in this case; BuzzFeed News' coverage of issues related to this case |
| Employees of SpaceX, the Boring Company, and Tesla, including  Steve Davis, Chris Bowman, and Armor Harris | In light of Plaintiff's public statements that the efforts and involvement of Mr. Musk and his fellow employees in the Thai Cave rescue were "just a PR stunt" and "had absolutely no chance of working," these witness will testify about efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle |
| Individuals described in Plaintiff's Initial Disclosures served on June 20, 2019 | As described in Plaintiff's Initial Disclosures served on June 20, 2019 |
| Individuals needed to authenticate any document produced by Defendant | Authentication of documents |

## INTERROGATORY NO. 3:

Please identify every investigation, including every inquiry, analysis, or background check, concerning Plaintiff undertaken by you or any person on your behalf or for your benefit, including the dates of the investigation, the individuals who conducted or assisted with the investigation, a description of the work undertaken in the investigation, and a description of the investigation's findings.

-9-

1  **Responses and Objections to Interrogatory No. 3:**

2       Defendant incorporates his General Objections herein.  Defendant further
3  objects to Interrogatory No. 3 on the grounds that it is vague and ambiguous.
4  Defendant further objects to Interrogatory No. 3 on the grounds that it is vague and
5  ambiguous with regard to the terms "investigation," "inquiry," "analysis,"
6  "background check," and "benefit." Defendant further objects to Interrogatory No. 3
7  on the grounds that it seeks information that is outside of his possession, custody, or
8  control, or that is equally available to Plaintiff.  Defendant further objects to
9  Interrogatory No. 3 on the grounds that it seeks information that is not relevant and
10  not reasonably calculated to lead to the discovery of admissible evidence.
11  Defendant further objects to Interrogatory No. 3 to the extent that it seeks to elicit
12  information subject to and protected by the attorney-client privilege, the attorney
13  work product doctrine, the joint defense privilege, the common interest doctrine,
14  and/or any other applicable privilege or immunity.  Defendant further objects to
15  Interrogatory No. 3 on the ground that it prematurely calls for the identification of
16  expert witnesses or testimony at this stage of litigation.  Defendant further objects to
17  Interrogatory No. 3 on the grounds that it is compound and comprises discrete
18  subparts resulting in separate interrogatories.

19       Subject to and without waiving the foregoing General Objections and Specific
20  Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil
21  Procedure, Mr. Musk responds:

22       James Howard of Jupiter Military & Tactical Systems conducted an
23  investigation, beginning on or about August 15, 2018.  Defendant will produce
24  documents relating to the work done and the findings of the investigation.

25  **INTERROGATORY NO. 4:**

26       Please identify the number of Twitter followers you had when you made each
27  of the tweets referenced in the Complaint and when you deleted each of the tweets
28  referenced in the Complaint.

-10-

1 **Responses and Objections to Request for Production No. 6:**

2       Defendant incorporates his General Objections herein. Defendant further

3 objects to Request No. 6 on the grounds that it seeks information that is outside of

4 his possession, custody, or control. Defendant further objects to Request No. 6 as

5 argumentative in that it requires the adoption of improper assumptions including

6 that any statement referenced in this Request was defamatory. Defendant further

7 objects to Request No. 6 to the extent that it seeks to elicit information subject to

8 and protected by the attorney-client privilege, the attorney work product doctrine,

9 the joint defense privilege, the common interest doctrine, and/or any other

10 applicable privilege or immunity. Defendant further objects to Request No. 6 on the

11 grounds that the Request is overly broad and unduly burdensome and seeks

12 documents that are not proportional to the needs of the case.

13       Subject to his General and Specific Objections, Defendant responds as

14 follows:

15       To the extent that such documents exist, are within Defendant's possession,

16 custody, or control, and can be located after a reasonably diligent inquiry, Defendant

17 will produce relevant, non-privileged documents responsive to this request, as

18 Defendant understands it.

19 **REQUEST FOR PRODUCTION NO. 7:**

20       All documents and communications concerning or relating to any effort by

21 you or your representative to verify the truthfulness or accuracy of the Defamatory

22 Statements, whether before or after the Defamatory Statements were published.

23 **Responses and Objections to Request for Production No. 7:**

24       Defendant incorporates his General Objections herein. Defendant further

25 objects to Request No. 7 on the grounds that it seeks information that is outside of

26 his possession, custody, or control. Defendant further objects to Request No. 7 on

27 the grounds that it is vague and ambiguous with regard to the terms "representative,"

28 "verify," "accuracy," and "published." Defendant further objects to Request No. 7

-10-

1 │ as argumentative in that it requires the adoption of improper assumptions including

2 │ that any statement referenced in this Request was defamatory.  Defendant further

3 │ objects to Request No. 7 to the extent that it seeks to elicit information subject to

4 │ and protected by the attorney-client privilege, the attorney work product doctrine,

5 │ the joint defense privilege, the common interest doctrine, and/or any other

6 │ applicable privilege or immunity. Defendant further objects to Request No. 7 on the

7 │ grounds that the Request is overly broad and unduly burdensome and seeks

8 │ documents that are not proportional to the needs of the case.

9 │      Subject to his General and Specific Objections,  Defendant responds as

10 │ follows:

11 │      To the extent that such documents exist, are within Defendant's possession,

12 │ custody, or control, and can be located after a reasonably diligent inquiry, Defendant

13 │ will produce relevant, non-privileged documents responsive to this request, as

14 │ Defendant understands it.

15 │ **REQUEST FOR PRODUCTION NO. 8:**

16 │      All documents and communications concerning or relating to any

17 │ investigation concerning Plaintiff by you or by any person on your behalf.

18 │ **Responses and Objections to Request for Production No. 8:**

19 │      Defendant incorporates his General Objections herein.  Defendant further

20 │ objects to Request No. 8 on the grounds that it seeks information that is outside of

21 │ his possession, custody, or control.  Defendant further objects to Request No. 8 on

22 │ the grounds that it is vague and ambiguous with regard to the term "investigation."

23 │ Defendant further objects to Request No. 8 to the extent that it seeks to elicit

24 │ information subject to and protected by the attorney-client privilege, the attorney

25 │ work product doctrine, the joint defense privilege, the common interest doctrine,

26 │ and/or any other applicable privilege or immunity. Defendant further objects to

27 │ Request No. 8 on the grounds that the Request is overly broad and unduly

28 │ burdensome and seeks documents that are not proportional to the needs of the case.

1    Subject to his General and Specific Objections,  Defendant responds as
2 follows:

3    To the extent that such documents exist, are within Defendant's possession,
4 custody, or control, and can be located after a reasonably diligent inquiry, Defendant
5 will produce relevant, non-privileged documents responsive to this request, as
6 Defendant understands it.

7 **REQUEST FOR PRODUCTION NO. 9:**

8    All documents and communications concerning or relating to your state of
9 mind and/or motives when you published the Defamatory Statements.

10 **Responses and Objections to Request for Production No. 9:**

11    Defendant incorporates his General Objections herein.  Defendant further
12 objects to Request No. 9 on the grounds that it seeks information that is outside of
13 his possession, custody, or control.  Defendant further objects to Request No. 9 on
14 the grounds that it is vague and ambiguous with regard to the terms "state of mind,"
15 "motives," and "published." Defendant further objects to Request No. 9 as
16 argumentative in that it requires the adoption of improper assumptions including
17 that any statement referenced in this Request was defamatory.  Defendant further
18 objects to Request No. 9 to the extent that it seeks to elicit information subject to
19 and protected by the attorney-client privilege, the attorney work product doctrine,
20 the joint defense privilege, the common interest doctrine, and/or any other
21 applicable privilege or immunity. Defendant further objects to Request No. 9 on the
22 grounds that the Request is overly broad and unduly burdensome and seeks
23 documents that are not proportional to the needs of the case, including to the extent
24 it contains no reasonable limitation as to time.

25    Subject to his General and Specific Objections,  Defendant responds as
26 follows:

27    To the extent that such documents exist, are within Defendant's possession,
28 custody, or control, and can be located after a reasonably diligent inquiry, Defendant

# EXHIBIT D

# EXHIBIT D

```
 1                 MR. SPIRO:  You can.                   09:55:14

 2                 THE WITNESS:  No.  I was encouraging that  09:55:15

 3    all information possible would be sent to that      09:55:16

 4    email address.                                      09:55:19

 5    BY MR. L. WOOD:                                     09:55:20

 6         Q.   And no one -- I mean, you said you were a  09:55:20

 7    novice.  No one at all suggested to you that you    09:55:21

 8    might want to consider setting up a fake Gmail      09:55:24

 9    account?                                            09:55:29

10         A.   No.                                       09:55:29

11         Q.   That was done on your own?                09:55:29

12         A.   100 percent.                              09:55:31

13         Q.   And did you tell Mr. Musk that you had    09:55:32

14    done it that way?                                   09:55:34

15         A.   I didn't.                                 09:55:35

16         Q.   Why not?                                  09:55:36

17         A.   I didn't feel like it was relevant.  He   09:55:36

18    asked me to -- to gather information, and how I     09:55:39

19    went about doing that -- I didn't feel like it was  09:55:48

20    relevant to -- to share.                            09:55:52

21         Q.   Did he want you to share the information  09:55:54

22    that you were learning with him?  Mr. Musk?         09:55:57

23         A.   Yes.                                      09:56:01

24         Q.   And you would have made sure that you     09:56:02

25    provided him accurate information about             09:56:04
```

20

```
 1   on multiple times saying that that's what he --      15:18:57
 2   that's what his information showed, and then he       15:19:00
 3   vacillated otherwise.  But he did not produce a       15:19:02
 4   birth certificate suggesting that she was 12 or 13    15:19:07
 5   when they met.                                        15:19:12
 6   BY MR. L. WOOD:                                       15:19:13
 7       Q.   You got a birth certificate before he       15:19:13
 8   gave you one, didn't you?                             15:19:15
 9       A.   Yes.                                         15:19:18
10       Q.   Where did you get it?                        15:19:19
11            MR. SPIRO:  If it calls for                  15:19:20
12   information --                                        15:19:22
13            MR. L. WOOD:  There was no lawyer            15:19:22
14   involved at the time.                                 15:19:24
15            MR. SPIRO:  How do you know that?            15:19:25
16            MR. L. WOOD:  Because of the time.  I        15:19:25
17   think that's pretty obvious.                          15:19:28
18            I mean, you're not going to tell me you      15:19:29
19   got it from a lawyer, because that opens up a whole   15:19:31
20   other can of worms.                                   15:19:34
21            I'm just asking you:  Where did you get      15:19:35
22   the birth certificate for Tik?  I know you got it     15:19:37
23   before Howard ever gave you one, if he ever did?      15:19:40
24            THE WITNESS:  Yeah.  I believe it was        15:19:44
25   derived through another, you know, relationship       15:19:50
```

216

| | | |
|---|---|---|
| 1 | that was -- that did involve a legal -- legal | 15:19:54 |
| 2 | counsel. | 15:19:58 |
| 3 | BY MR. L. WOOD: | 15:20:03 |
| 4 | Q.    Who?  I'm not asking you now about | 15:20:04 |
| 5 | substantive communications.  I want to know who | 15:20:06 |
| 6 | provided you with the birth certificate. | 15:20:09 |
| 7 | A.    I don't know the name of the person.  I | 15:20:19 |
| 8 | mean, I could easily find that out if I you give me | 15:20:21 |
| 9 | a little bit of time to look, but -- | 15:20:25 |
| 10 | Q.    I can do that.  But was it a lawyer? | 15:20:27 |
| 11 | A.    It was someone working with a lawyer. | 15:20:29 |
| 12 | Q.    But not a lawyer? | 15:20:31 |
| 13 | A.    No. | 15:20:32 |
| 14 | Q.    Was that lawyer working on this matter? | 15:20:32 |
| 15 | That is the Unsworth/pedophile/Elon Musk matter? | 15:20:34 |
| 16 | A.    I don't know if that lawyer was engaged | 15:20:40 |
| 17 | to work on this matter. | 15:20:42 |
| 18 | Q.    Was the investigator -- was it an | 15:20:44 |
| 19 | investigator that gave it to you? | 15:20:47 |
| 20 | A.    I -- I believe it was someone that this | 15:20:50 |
| 21 | lawyer used to -- | 15:20:52 |
| 22 | Q.    Did you reach out and ask for someone to | 15:20:54 |
| 23 | try to get that for you? | 15:20:56 |
| 24 | A.    I don't believe so.  I believe it was | 15:20:59 |
| 25 | offered up, but I could be wrong.  We may have been | 15:21:00 |

217

```
 1    looking for verification --                            15:21:05

 2        Q.    You had been trying for a period of time    15:21:06

 3    to get your hands on verification?                     15:21:07

 4        A.    Of course, yes.                              15:21:10

 5        Q.    That was the end-all answer.  All this       15:21:11

 6    stuff about how old was she when they met,             15:21:14

 7    et cetera, et cetera.                                  15:21:15

 8              You can answer it plain up and simple        15:21:17

 9    without equivocation if you get a copy of her birth    15:21:17

10    certificate, true?                                     15:21:23

11        A.    Yeah.                                        15:21:23

12        Q.    That should have been your priority --       15:21:24

13        A.    I mean --                                    15:21:26

14        Q.    True?                                        15:21:26

15        A.    Yes.  Though having a birth certificate      15:21:28

16    wouldn't necessarily say they didn't meet prior to    15:21:30

17    a certain age or something.                            15:21:33

18        Q.    Agreed, but it would certainly tell you      15:21:35

19    what her present age was to work back from, true?      15:21:38

20        A.    Yes.  That would help us.                    15:21:43

21        Q.    In fact, when you're trying to work back     15:21:44

22    through -- well, go back.  I want to finish this       15:21:46

23    one.                                                   15:21:47

24              So you got what you said about that his      15:21:47

25    current wife was underage at the time.  You say you    15:21:51
```

218

# EXHIBIT E

# EXHIBIT E

1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (admitted *pro hac vice*)
2 |   alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
3 | New York, New York 10010
Telephone: (212) 849-7000

4

QUINN EMANUEL URQUHART & SULLIVAN, LLP
5 | Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
6 | Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
7 | Jeanine M. Zalduendo (Bar No. 243374)
  jeaninezalduendo@quinnemanuel.com
8 | 865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
9 | Telephone: (213) 443-3000

10

*Attorneys for Defendant Elon Musk*

11

12 | **UNITED STATES DISTRICT COURT**

13 | **CENTRAL DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| VERNON UNSWORTH, | Case No. 2:18-cv-08048 |
| Plaintiff, | Judge: Hon. Stephen V. Wilson |
| vs. | **NOTICE OF DOCUMENT SUBPOENA TO VERNON UNSWORTH** |
| ELON MUSK, | |
| Defendant. | Date:    September 6, 2019 |
| | Time:   9:00 a.m. |
| | Place:  Quinn Emanuel Urquhart & Sullivan, LLP |
| |      865 S. Figueroa Street, 10th floor |
| |      Los Angeles, CA 90017 |
| | Or |
| |      90 High Holborn, Holborn |
| |      London WC1V6LJ, UK |
| | Complaint Filed: September 17, 2018 |
| | Trial Date: December 2, 2019 |

1     TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of

3   Civil Procedure, Defendant Elon Musk, hereby serves the attached Subpoena to

4   Produce Documents, Information, or Objects or to Permit Inspection of Premises in

5   a Civil Action upon Plaintiff Vernon Unsworth.

6

7   DATED:  August 23, 2019            QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP
8

9                                      By   /s/ Alex Spiro
                                           Alex Spiro (admitted *pro hac vice*)
10                                          alexspiro@quinnemanuel.com
                                           51 Madison Avenue, 22nd Floor
11                                          New York, New York 10010
                                           Telephone: (212) 849-7000
12
                                           Michael T. Lifrak (Bar No. 210846)
13                                          michaellifrak@quinnemanuel.com
                                           Robert M. Schwartz (Bar No. 117166)
14                                          robertschwartz@quinnemanuel.com
                                           Jeanine M. Zalduendo (Bar No. 243374)
15                                          jeaninezalduendo@quinnemanuel.com
                                           865 South Figueroa Street, 10th Floor
16                                          Los Angeles, California 90017-2543
                                           Telephone: (213) 443-3000
17
                                           *Attorneys for Defendant Elon Musk*
18

19

20

21

22

23

24

25

26

27

28

NOTICE OF DOCUMENT SUBPOENA TO VERNON UNSWORTH

**CERTIFICATE OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

I hereby certify that a true and correct copy of the document titled "Document Subpoena to Vernon Unsworth" has been served via electronic mail transmission on August 23, 2019 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. The electronic mail transmission was made from jeaninezalduendo@quinnemanuel.com, by transmitting PDF format copies of the document to all counsel of record, at the e-mail address provided to the Court's CM/ECF system. The transmission was reported as complete and without error.

Executed on August 23, 2019, at Los Angeles, California.

*s/ Jeanine M. Zalduendo*
Jeanine M. Zalduendo

-2-

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| Vernon Unsworth | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  Case No. 2:18-cv-08048 |
| Elon Musk | ) | |
| | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    Plaintiff Vernon Unsworth

---

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A

| Place: Quinn Emanuel Urquhart & Sullivan, LLP | Date and Time: |
|---|---|
| 865 S. Figueroa St., 10th Fl, -OR- 90 High Holborn Los Angeles, CA 90017        London WC1V6LJ, UK | 09/06/2019 9:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      08/21/2019

> *CLERK OF COURT*

> OR

| | Alex Spiro |
|---|---|
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Elon Musk
, who issues or requests this subpoena, are:

See Schedule B

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   Case No. 2:18-cv-08048

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____     on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

1

2

## SCHEDULE A

## DEFINITIONS

3    Notwithstanding any definition below, each word, term, or phrase used in

4 these Requests for Production are intended to have the broadest meaning permitted

5 under the Federal Rules of Civil Procedure.

6    1.    The term "communication" means any record, report, conversation,

7 discussion, letter, memorandum, note, e-mail, voice mail, or other transfer of

8 information, whether written, oral, electronic, or by any other means, and includes

9 any document or other medium which abstracts, digests, records, or transcribes any

10 such communication, or any subsequent review or discussion of such

11 communication, whether occurring at meetings or otherwise.

12    2.    The term "document(s)" is used in the broadest sense to include

13 everything contemplated by Rule 34(a)(1)(A) of the Federal Rules of Civil

14 Procedure and by Rule 1001 of the Federal Rules of Evidence, and include, without

15 limitation, any written material (including communications), whether typed,

16 handwritten, printed or otherwise, and whether in draft or final form, of any kind or

17 nature, or any photograph, photostat, microfilm or other reproduction thereof,

18 including, without limitation, each note, memorandum, letter, telegram, telex,

19 circular, release, article, report, prospectus, memorandum of any telephone or in-

20 person conversation, any financial statement, analysis, drawing, graph, chart,

21 account, book, notebook, draft, summary, diary, transcript, computer database,

22 computer printout or other computer generated matter, and other data compilations,

23 and any other documents or electronically stored information in any medium from

24 which information can be obtained, whether directly or, if necessary, after

25 translation to English. Electronic mail, voice mail and any pictures, video, or sound

26 recorded by any means are included within the definition of the terms "document"

27 or "documents." A draft or non-identical copy, including a copy with handwritten

28 notes, is a separate Document within the meaning of the term.

1    3.    The term "electronically stored information," abbreviated herein as
2 "ESI," has the meaning given it in Fed. R. Civ. Pro. 26(b) and 34.

3    4.    "Plaintiff" (as well as "You," "Your," and "Yours") means Vernon
4 Unsworth, as well as all of Mr. Unsworth's agents, representatives, attorneys, and
5 other persons acting on his behalf. This definition specifically includes L. Lin
6 Wood, Howard Kennedy LLP, and any of the attorneys currently representing Mr.
7 Unsworth acting in any capacity.

8                                  **INSTRUCTIONS**

9    1.    In complying with the Subpoena, You are required to produce all
10 Documents described below that are in Your possession, custody, or control.

11    2.    For the purpose of reading, interpreting, or construing the scope of the
12 Requests in this Subpoena, the terms used should be given their most expansive and
13 inclusive interpretation.

14    3.    Unless instructed otherwise, each Request should be construed
15 independently and not by reference to any other Request for the purpose of
16 limitation.

17    4.    If any portion of a document or communication is responsive to any
18 Request, the entire document or communication should be produced.

19    5.    If You object to any Request, in whole or in part, state the grounds of
20 Your objection with specificity and produce documents responsive to the remainder
21 of the Request.

22    6.    If, in answering this Subpoena, You encounter any ambiguities when
23 construing a Request, Instruction, or Definition, Your response shall set forth the
24 matter deemed ambiguous and the construction used in responding. For the
25 avoidance of doubt, this instruction does not in any way limit Your obligation to
26 give terms their most expansive and inclusive interpretation when reading,
27 interpreting or construing the scope of the Requests in this Subpoena.

28

7.     Where a claim of privilege or other protection from discovery is asserted in objecting to any Request, You should identify the nature of the privilege or protection (including work product protection) that is being claimed. In such case, You should also indicate, as to the information requested, whether (a) any documents exist, and (b) also provide the following information for each such document in a "privileged documents log" or similar format:

a.     the type of document;

b.     the general subject matter of the document;

c.     the date of the document;

d.     the author(s) of the document;

e.     any recipient(s), copyee(s) or blind copyee(s) of the Document; and

f.     the custodian of the document, where applicable.

8.     Unless otherwise noted, the Subpoena and the Requests contained herein call for the search for, collection and production of all responsive documents created or obtained by You since June 1, 2018 through the present. If, after an initial production, You obtain or become aware of additional documents existing as of the date for compliance with this Subpoena that are responsive to this Subpoena, You are required to promptly produce such additional documents.

9.     The search will include both hard copies and electronically stored information. Compliance with this Subpoena requires a search of all documents in Your possession, custody, or control, whether or not such documents are on Your premises.

10.     Documents produced pursuant to this Subpoena should be produced as they are kept in the ordinary course of business, including electronically stored information. Electronic materials, information, and data that are electronically searchable should be produced in a form that does not remove or degrade this feature.

-3-

11.     Documents in electronic form, including, but not limited to, e-mail, should be produced in color in single page tagged image file format ("TIFF"). TIFFs shall show all text and images that would be visible in the original electronic format (native format), including redlines and speaker notes, and Defendant reserves the right to make a reasonable request for the production of any documents in native format. An associated load file linking the images to the corresponding document should be provided. All metadata associated with any electronically stored information shall be produced in text format linked to the associated document. Extracted text or, if extracted text is not available, optical character recognition (OCR) text should be provided in document-level text files.

12.     In order to bring within the scope of this Subpoena all information that might otherwise be construed to be outside of its scope, the following rules of construction apply: (i) the singular includes the plural and vice versa; (ii) the masculine, feminine or neuter pronoun does not exclude other genders; (iii) the connectives "and" and "or" should be read either disjunctively or conjunctively as necessary to bring within the scope of the Subpoena all documents that might otherwise be construed to be outside of its scope; (iv) the terms "any," "all," and "each" should be read to mean any, all, each, and every; (v) the word "including" should be read to mean including without limitation; (vi) the present tense should be construed to include the past tense and vice versa; and (vii) references to employees, officers, directors, or agents include both current and former employees, officers, directors, and agents.

13.     Defendant makes these Requests without waiver of, but instead expressly reserving, all defenses it may assert in this matter, including without limitation all arguments relating to market definition.

-4-

1

## REQUESTS FOR DOCUMENTS

2 **REQUEST FOR DOCUMENTS NO. 1:**

3      All communications between You (including Your attorneys or anyone else

4 acting on Your behalf), on the one hand, and James Howard Higgins or any person

5 associated with Jupiter Military & Tactical Systems, Jupiter Executive Protection,

6 Jupiter Private Office, or Berkeley Private Office, on the other hand.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**SCHEDULE B**</u>

2

3

Quinn Emanuel Urquhart & Sullivan, LLP

4

Alex Spiro
alexspiro@quinnemanuel.com

5

51 Madison Ave 22nd Floor

6

New York, NY 10010
212-849-7000

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT F

# EXHIBIT F

Messages - James

iMessage
8/24/18, 8:14 AM

Jim please call when free. James

8/28/18, 9:55 AM

Jim are you free for a conversation ?

In 10 minutes

Now works

8/28/18, 3:20 PM

Jim, in order to proceed as discussed I will need some additional funds. I am close to the limit of the 20k USD for the stage 1 of the investigation which is still ongoing.

I will work with a very old friend Michael Smith who has a credible background and would be the right buffer to ensure there is zero cross contamination. I am sure you appreciate this has to be dealt with in a very sensitive way.

https://en.m.wikipedia.org/wiki/Michael_Smith_(newspaper_reporter)

Can you authorise a further 12k USD to expedite the second stages of the project as discussed.

Please advise. James

Yes, we can get it sent out first thing tomorrow. What is the timeline?

Jim timeline is ASAP I am meeting Mike at 0800 GMT to begin the process. It has to appear organic & not contrived.

Priority is to divert the story away from the principal and let the UK tabloids develop there story.

Great

8/28/18, 10:27 PM

Would be ideal to have more than one publisher receive the info. I trust you are likely already doing this.

100 %

Plan is to reach out indirectly to 3/4 different newspapers & print & online.

MUSK_000199

Messages - James

Sounds good.  Hopefully soon.

This will begin in 90 mins & then be pushed out today. The difficulties will
be getting the editors to ok that line of enquiry & for them to feel this is a
better story that the principles activities.

Ok

It's hit & miss, the Sunday Papers may be the best bet. Timing is good
as not much else of any significance is happening right now

I'll call them update you this evening

Ok

A big part of this is the willingness to recognize the fact that Thailand is
the capital of pedophilia.  Among many other notables who have been
caught is the Subway sandwich spokesman Jared.  I'm sure there are
others.  Could even be part of the story: https://www.hollywoodreporter.
com/news/jared-fogle-tapes-subway-pitchman-835552

Most in the world - especially in the US- don't understand this fact and
Thailand goes to great lengths to keep it quiet.  I'm told people regularly
disappear when found exposing the 'land of smiles'.  In the end, anything
that uncovers a disgusting ongoing practice that just might protect some
children is worth it. So it could easily be spun as: The possible
explanation of Elon's accusation.  The sad/real truth behind Thailand and
ex pats.

Agreed & will be spun in

Unfortunately there is allot of truth in that story - the UK readers are
already familiar with Thailand & it's culture to welcome & protect sex
tourist. We call it 'Yellow Fever' where older men leave there wives for a
young Thai friend.

8/29/18, 3:25 AM

MUSK_000200

Messages - James



### (8) Thailand Brit Divers Untold Story

From: SM - Sun, News <news-sm@the-sun.co.uk> 🔒                11.04 (16 minutes ago) ⊙

To: bangkokhilton

Show details                                   ⊤ ⌄   ▣ ⌄   ◐ ⌄   ↩   ↰   ↪   ⌄

Hi,
Yes we are interested - please tell us more

On 29 August 2018 at 11:01, bangkokhilton <bangkokhilton@protonmail.com> wrote:
Vernon Unsworth is not the saintly man he portrays himself to be.

- Thailand is the world capital of pedophilia
- This man has frequented Thailand since the 80's - eventually leading to his divorce to his wife in the UK.
- While the guise of cave exploration is creative, there are amazing and extensive caving systems in many places throughout the world - not just in Thailand.
- Even the most ardent supporter of Thai food doesn't eat Thai food every day.
- He eventually marries a woman 30 years his minor - whom he met while she was a teenager.
- He had been going to Thailand for decades before marrying her.
- She wasn't the first girl he met - and definitely not the first teenager he interacted with.

I have more information and images if you are interested in this story.

Jim example of what we are doing with all the daily newspapers and Sunday papers

Jim have you seen this

http://www.dailymail.co.uk/news/article-6108365/Elon-Musk-doubles-pedo-guy-claim-British-diver.html

8/29/18, 6:27 AM

http://www.dailymail.co.uk/news/article-6110117/British-cave-divers-mother-insists-son-taking-legal-action-against-Elon-Musk.html

So nothing out yet has your info?

Are you up and free to speak ?

In about 45 minutes

Processing very very well

Page 3 of 18

MUSK_000201

Messages - James



Daily Mail are now interested though Mick Smith. Thats the paper that will have the biggest impact

Ok, good

8/29/18, 10:51 AM

The principle is big UK news this evening

yes

8/29/18, 12:37 PM

wire was sent

Please let me know when you have word of a story with your narrative being published.

8/29/18, 7:52 PM

Other thought, maybe we consider the Australian press as well.  The UK press may be prone to protect one of their own.

Part of the narrative here needs to be the extreme level of darkness that most don't know exists.  The movies show some quirky and bizarre stuff - but the extreme depths of horrific sex trafficking that actually occurs is mostly hidden.

Ok

MUSK_000202

Messages - James

Also, while I've obviously pushed for immediate results, I also realize this may need the be a lengthy investigation.  So let's continue forward with that in mind as well.  Any additional expertise and resources, creative measures and strategies should be explored.

8/29/18, 10:12 PM

Jim all understood

Target is in the UK until Nov 5th when he will return to Chiang Rai for a family party.

He's now Living with his mother in Braintree, Essex. Clearly he will be using this time to mount his legal response - I have images of the home & work addresses in Thailand.

Target has been telling locals how much money the Principle is going to have to pay him etc so he's shown his hand & motivation

Ok

When you say work addresses, what work addresses?

And did he recently go back to the UK?  The story isn't as compelling if he's actually living in the UK.

His wife & Vernon have an office above his wives mothers shop. I'll send over an email with all this info later this morning

It would be good to verify when (if) he actually engaged council.  Is that letter that was posted on twitter legitimate? or post dated?

I will look into that

https://twitter.com/rmac18/status/1034817540495564801?s=12

He arrived back in London 2 days ago specifically to meet with the UK Cave Council who are concerned at the PR fall out & to peruse his libel claim. 5 week visit to the UK - he's domiciles in Thailand

Just heard from the team on the ground that we have quite allot of info coming in this morning & I will keep you updated

How are we getting that info about the UK cave council? And related PR concerns?

MUSK_000203

Messages — James

## Bill Whitehouse MBE
## Vice chairman
## British Cave Rescue Council
## Reg. charity no. 1137252

## 01298.871661

I have spoken to Bill Whitehouse as a rep of the UK Charity interested in the target as an ambassador

Reached out from one charity to another to ask about possible skeletons in the cupboard & he let slip that this negative press was diluting the rescue story

The Thai Gov will also be watching this develop with interest



Mark Stephens is a punchy UK media lawyer

I can only advise the family office to have a preliminary conversation with Kieth Oliver of Peters & Peters

Stephens will be the UK legal adviser to the target

MUSK_000204

Messages - James

Confirmed that he has been retained by unsworth?

No

But I can find out

Later this morning

I know another partner at the law firm

Can make a social call & make a soft enquiry

Who is heading up the legal response from your side

We are solidifying that now

8/30/18, 12:01 AM

Interesting, looks like he retained a lawyer in the US, Georgia based L. Lin Wood.

Yes

But using a prominent UK to manage the target. You need to counter punch with a UK heavyweight

I'm happy to reach out to Keith if you wish me to see if he has the appetite. In the UK the damages for libel would be about 100-125k given his low income & minimal damage as he had no reputation to speak of. In the USA it's a different calculation! As you know damages can be ridiculous

So you believe he'll file suit in both the US and the UK

No I think he'll only file in the USA

I will no more later

He's going to be under pressure now from the cave diving community & the UK press. I will keep the pressure on all day as discussed

8/30/18, 2:42 AM

MUSK_000205

Messages - James



8/30/18, 4:59 AM

We are also looking into his diving qualifications? Checking to see if they
are in date? Just thinking outside of the box. Although he was a
volunteer it wouldn't look good for the Thai authorities if something was
out of date etc.

Have lots of images for you, do you use WhatsApp ?

No, but will set up shortly and circle back to let you know.

Apologies

8/30/18, 7:11 AM

Sent you an email asking for a comprehensive report to date.  Do you
have one?

Jim just replied - in short I can put everything together to date for you.
Can you call when free

8/30/18, 11:11 AM

Page 8 of 18

MUSK_000206

Messages – James

I'll call in 3 minutes

8/30/18, 1:24 PM

Jim I think there would be allot of value in speaking with Keith Oliver. You man have some options with superinjunctions which are popular in the UK and could dissuade and tie up the target. Happy to make an intro, it's an another avenue that should be explored. Rgds James

Ok, I'll circle back on that today.

Might be an easy way to silence Unsworth in advance of any law suit & put allot of pressure on him

Just confirming we are also exploring Australian and other International press that have unmasked these issues in the past?

Affirmative

I am spending all my time educating journalists

Carrot & stick

http://center4girls.org/human-trafficking-in-thailand-chiang-rai-province

https://www.straitstimes.com/asia/se-asia/idyllic-thai-province-hides-a-dirty-secret

Thank you for the information.

8/30/18, 11:03 PM

Any further instructions

Any news on media?

Too early for that

Richard in Bangkok is following up the Australian media

Ok

Just need to make sure the team in Thailand keeps digging. Creatively, extensively and when possible, aggressively.

MUSK_000207

Messages - James

Of course. But bear in mind I am the only link on the chain who knows
who the beneficiary is. The Thai team & Richard all believe that this effort
is for a children's charity in the UK. They are all professionals who will
give 100%. I'm met with a partner of Howard Kennedy last night who
confirmed that Unsworth has been to the London office for meetings. I
suspect he's co-ordinating all this through a London law firm so they can
manage the London newspapers. Please have a think about lawyering
up in London. It won't have a cost to have a conversation and get an
opinion and at least have someone ready to ascot quickly. In the UK it's
about reaction times and skill. Allot can be done in the UK to protect Elon
with superinjuctions to stop the other side from speaking to the press if
that might damage 3rd party shareholders. You maybe served in the usa
but I think Unsworth will want this managed by a UK firm. Happy to
assist, please advise. Rgds James

8/31/18, 8:55 AM



Keith Oliver.vcf

8/31/18, 1:00 PM

Jim do you have a secure Dropbox or equivalent I can use?

9/1/18, 12:14 AM

Let's discuss in the morning.

Sure the report is large so wanted to send in this format. Any instructions
from the principal?

I'm proceeding with the UK surveillance as discussed

9/1/18, 8:32 AM

Jim update sent to you

Received, thank you.

9/1/18, 10:36 AM

Jim would you like to chat through the report ?

9/1/18, 12:41 PM

Does in an hour or two work?

Jim call anytime

Messages - James

9/2/18, 9:18 AM

Jim I have an update for you. Please call when free

9/2/18, 12:39 PM

Jim did you have time to think about a conversation with Keith Oliver to chat over options exchange NDA's etc.... I still believe that there is massive benefit in doing this for Elon.

9/3/18, 7:17 AM

Target meeting Mark Stephens today at 1600 to put libel plan into place. Confirmed the UK office of Howard Kennedy will run the libel action through Mark Stephens

Meeting is scheduled for 2hrs

9/3/18, 9:13 AM

We will bin spin him tonight and again after he has left the UK back to Thailand

Very happy demeanour



9/3/18, 11:23 AM

MUSK_000209

Messages - James

Jim I have deployed x3 investigators to Pattaya and I still believe there is
value in the UK surveillance. My plan is to wait for the Pattaya evidence
then package it up for the x2 journalist in Australia & x 2 in the UK who
want to run this story in both daily and Sunday papers.

Pattaya will take some time probably 7 days. There is a mountain of
work to do there. I have used the 20k USD for the original investigation,
in Thailand, the other 12k has gone into journalist development, which
we are holding back on until we have the smoking gun.

Can you authorise a further 20k USD ? This is to cover the UK
surveillance and Pattaya investigation. James

> Yes, I am hopeful that will get us where we need to be.

> Can send tomorrow morning.  Today is a US bank holiday.

Understood we will proceed as discussed

9/4/18, 9:49 AM

Jim, could you call when free. Have an update for you

> I just tried calling.  Please call back.

> Just confirming the funds were sent on our end.

Rgr that

> Can you confirm the hotel names in Pattaya?  And you said 2 of them
> are considered standard destinations for expats with bad intentions,
> correct?

Correct

Penthouse Hotel  x stays

Dusit Thani - 4 week stay

Penthouse hotel is purely designed for sex

All of the hotels he stayed at & the apartment he used in 2009 are within
100m of the red light area called 'walking st'

What other purpose could there be for using a hotel with lap dancing
poles in the rooms?

MUSK_000210

Messages - James



9/4/18, 11:56 AM

Jim, our goal is to get evidence from the penthouse which is obviously a big win. I'll keep you updated.

I've text Keith Oliver to give him the gypsies warning about your phone call

Jim was that enough information?

yes, thank you

Did you have any legal clarity from Keith ? I believe he could be a massive help in finding the path of least resistance. Rgds James

I called and left him a voicemail.  He didn't pick up.

9/4/18, 2:28 PM

https://www.buzzfeednews.com/article/ryanmac/elon-musk-thai-cave-rescuer-accusations-buzzfeed-email

Please call ASAP!

1 min

Ok, thanks

Back at home

9/4/18, 5:23 PM

So no summary?

MUSK_000211

Messages - James

9/4/18, 11:00 PM

Was sent last night

9/5/18, 8:01 AM

Sorry, I can't talk right now.

Just taking off on a plane.  Will be in the air for about an hour.

Rgr

9/5/18, 9:07 AM

The recent article says his girlfriend is 40.

Yes we are checking with the investigating team, mother said 30

Are you free

Just landed and need to get off the plane

9/5/18, 10:21 AM

To reiterate, documented verifiable evidence is super critical.

Jim all understood, we are retracing our footsteps to ensure accuracy. I
understand your position. I am concerned & don't want to risk exposing
our sources if the principle is likely to publish them. I have requested the
info you need. I have relayed your timings request & I hope you have
what you have asked for this time tomorrow 1800 GMT

Please rest assured our intent is not to expose sources or any direct
information that we shouldn't have.  We understand the sensitive nature
of the work.

Understood but I want to get this right and I don't like or accept mistakes.
I have run EP & investigations for George Soros and Paul Allen since
2005 so I know the pressure you are all under.

No Good Deed Goes Unpunished ....

9/6/18, 9:02 AM

Jim all uk embassy staff our at the Thai celebration & I am waiting for a
report from Richard in Bangkok. I am also waiting for verification on the
age of 'Tik'. I will update you as soon as I have an update.

ok, thank you

9/6/18, 12:13 PM

MUSK_000212

Messages - James

Have we check their social media accounts for history and age info?

Jim, yes Tik's Facebook account which is the only social media she has does not list her age

Ok, is it public or private?  And he doesn't have one?

We are not looking at Vernon's age as we have that and yes he's has an Instagram and Facebook acc. Both are private but our female investigator who has befriended the mother in on Tik's Facebook acc

Ok, got it.

Did one of the guys end up going to the celebration?

Yes Richard is there to try and get close to the target to see if he can overheat any conversations

ok, sounds good

Jim please be assured everyone is going the extra mile on this. I appreciate the pressure you are under. I also want to deliver. I'll be up for another 6-8 hrs

Ok, thank you.  Based on developments in Pattaya, do you believe we will be successful in gathering any data from the Hotels? Or are they more prone to stonewall?

Jim, honestly this is a hot topic in Thailand. The story is on all the TV channels. Right now it's like juggling lite sticks of dynamite. The most recent comments have made the investigation much more difficult. But yes I think we will be able to show that he was a man who lived in the pattern of a sex tourist but we need irrefutable proof before you sure that please.

share

Of course.  Agreed.

are we making any progress on verification of birth date?

I've dispatched the Thai investigator back to Chiang Rai to obtain a driving license or birth certificate or national ID. This should not be difficult to obtain. As soon as she has a copy I will send this to you

Ok, great

9/9/18, 9:17 AM

MUSK_000213

Messages - James

Jim will call you later to provide an update.

9/10/18, 6:23 AM

Jim, I will call you at 0900 LA time. Op has picked up again after I have
had a full debrief and we have agreed the strategy moving forward. It's
probably a good thing that dust has settled a little bit.

9/10/18, 9:59 AM

Jim are you free ?

Yes

9/12/18, 9:45 AM

What's the latest?

Jim sent you an email. I will update you a little later on & call.

Jim I'm in a bad signal area. I'll call you back when I've moved.

ok.  I was going to mention that someone sent what appears to be her
birth record confirming she's 40.  Very unfortunate to have had that
wrong, but appears to be the case.  But as you know this is only part of
the equation.  It seems near impossible that this guy has walked in the
circles that he has, spent as much time there as he has and hasn't left
some trail of his devious behavior.  We must find that trail.

Agree with that

It would make sense about the birth certificate as we where told some
else had applied for a copy. Seems an incredible mistake to make but
perhaps the mother was just plain confused. At the end of the day the
buck stops with me and I take full responsibility. As you say I still believe
there is value in tracing his footsteps in Pattaya. We have plenty of
budget left & with this mistake I won't be asking for funding. I don't what
else to say, Jim. If we can get smoking gun that will go in some part to
restore credibility.

Agreed

9/18/18, 9:42 AM

Jim please call when free

Jim what time is good to call ?

Anytime

Page 16 of 18

MUSK_000214

Messages - James

Jim we are having a wash up. The answer to your question about when
Unsworth first came to Thailand was we believe 29yrs ago in the late
80's. What is the latest from the law suit in the USA. Has this also been
served in London ? Have you spoken to Keith & taken advice? James

9/19/18, 8:10 AM

Jim I'm available to speak. My reception is not great so if you can't get
through text me and I will move to a better place

9/20/18, 8:15 AM

Jim just to confirm the information that Unsworth has been coming to
Thailand for more than 2 decades came from his wife who befriended
our female investigator. They are also getting hard evidence from Thai
government channels of this. She was very clear that Unsworth regularly
traveled to the Thai / Malaysia border to explore other cave networks
many years before they met. I have asked for that evidence to support
our end regardless of costs.

9/20/18, 10:45 AM

Jim please bear with me it's Thailand and nothing happened quickly but
the goods will come. I am very confident of that. I know it's slow but we
are working in a 3rd world country and everything is analogue. I'm back
up in Bangkok & will report back to you when we have what you need.
James

> You've made some pretty specific claims that contradict his legal
> filing.  But at this point we have nothing to confirm any of them.  We
> need something, anything that can support your claims.

Noted Jim and this is what has been reported to me so I am doing as
you asked which is provide supporting evidence.

9/23/18, 8:55 AM

Jim we believe we will have the evidence you require to dispute his
travel claims this time tomorrow. Regards James

9/24/18, 12:01 PM

> Ok where is it?

Jim it's coming to me. It's Thailand. It will materialise!! I'm not leaving to
the  UK until this is finished

10/2/18, 7:21 PM

MUSK_000215

Messages - James

James - go back and review the information you've provided aside from the initial info.  You've just about given us nothing.  And you have given exactly nothing verified.

Read 10/2/18

10/2/18, 11:03 PM

Will do so. We have given you all that we have found. Which to date is not allot apart from what I have sent. I'm travelling to France to bury my step-father & will be back in Bangkok this Friday. I put all the info we have in a spreadsheet and then relate the source & what has been verified & what we are not able to to confirm.

MUSK_000216

# EXHIBIT G

# EXHIBIT G

| EXHIBIT A – PARTIES' JOINT PROPOSED SCHEDULE[1] | |
|---|---|
| **Deadline/Event** | **Date** |
| **Fact Discovery and Expert Disclosure** | |
| Fact Discovery Cutoff | September 13, 2019 |
| Expert Witness Disclosure | September 13, 2019 |
| Rebuttal Expert Disclosure | October 14, 2019 |
| | |
| **Summary Judgment/Adjudication** | |
| Dispositive Motions | September 16, 2019 |
| Oppositions | October 4, 2019 |
| Replies | October 14, 2019 |
| Hearing | October 28, 2019 |
| | |
| **Trial Preparation and Trial** | |
| Motions in Limine | November 4, 2019 |
| Motion in Limine Oppositions | November 11, 2019 |
| Motion in Limine Replies | November 18, 2019 |
| Pre-Trial Filings (Joint Final Pre-Trial Conference Proposed Order, Exhibit List, Witness List, Memorandum of Contentions of Fact and Law. Jury Instructions) | November 18, 2019 |
| Final Pre-Trial Conference | November 25, 2019 |
| Trial | December 2, 2019 |

---

[1]   Any other deadlines pursuant to the Federal Rules of Civil Procedure, Local Rules, and the Court's orders.

JOINT RULE 26(F) REPORT AND DISCOVERY PLAN