QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (admitted pro hac vice)
  alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
  jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH,<br><br>         Plaintiff,<br><br>     vs.<br><br>ELON MUSK,<br><br>         Defendant. | Case No. 2:18-cv-08048<br><br>Judge: Hon. Stephen V. Wilson<br><br>**DEFENDANT ELON MUSK'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**<br><br>Complaint Filed: September 17, 2018<br>Trial Date: December 2, 2019<br><br>Hearing Date:  October 28, 2019<br>Time:          1:30 p.m.<br>Courtroom:     10A |

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................1

II. UNSWORTH IS A LIMITED PURPOSE PUBLIC FIGURE. ........................2

   A. The Statements At Issue Arose From Public Controversies...................2

   B. Unsworth Publicly Inserted Himself Into the Controversies. .................3

   C. Musk's Statements Were Germane to the Controversies. ......................4

III. THE BUZZFEED ARTICLE IS NOT DEFAMATION BY MUSK. ..............5

   A. Unsworth Cannot Prove Malice...............................................................5

   B. Musk Is Not Liable for Publication of Off-the-Record Emails. .............7

   C. Musk's August 28 Tweet Lacked Malice. ...............................................9

IV. MUSK'S JULY 2018 TWEETS WERE NOT DEFAMATORY...................10

   A. Unsworth Has Not Shown a Triable Issue on Malice...........................10

   B. Unsworth Has no Other Evidence of Actual Malice. ...........................11

V.  CONCLUSION ................................................................................................12

# **TABLE OF AUTHORITIES**

**Page**

## CASES

*Ampex Corp. v. Cargle*,
  128 Cal. App. 4th 1569 (2005) ......................................................................... 3

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ....................................................................................... 11

*Annette F. v. Sharon S.*,
  119 Cal. App. 4th 1146 (2004) ..................................................................... 2, 6

*Atlanta Journal-Constitution v. Jewell*,
  555 S.E.2d 175 (Ga. App. 2001) ..................................................................... 4

*Chandler v. Berlin*,
  2019 WL 1471336 (D.D.C., Apr. 3, 2019) .................................................. 7, 8

*Christian Research Inst. v. Alnor*,
  148 Cal. App. 4th 71 (2007) ............................................................................ 7

*Cohen v. Cowles Media*,
  501 U.S. 663 (1991) ......................................................................................... 8

*Copp v. Paxton*,
  45 Cal. App. 4th 829 (1996) ........................................................................ 2, 4

*Cummins v. Lollard*,
  2012 WL 12885117 (C.D. Cal. Nov. 16, 2012) ............................................... 2

*Curley v. Vick*,
  211 Cal. App. 2d 670 (1963) ........................................................................... 7

*DeHavilland v. FXNetworks, LLC*,
  21 Cal. App. 5th 845 (2018) .......................................................................... 11

*Dickens v. Werner Enterprises, Inc.*,
  2014 WL 838224 (N.D.W. Va. Mar. 4, 2014) ................................................. 6

*DiGiorgio Corp. v. Valley Labor Citizen*
  260 Cal. App. 2d 268, 272 (1968) ................................................................... 8

*Good Gov't Grp. of Seal Beach, Inc. v. Superior Court*,
  22 Cal. 3d 672 (1978) ............................................................................... 10, 11

*Grenier v. Taylor*,
  234 Cal. App. 4th 471 (2015) .......................................................................... 5

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989) ....................................................................................... 12

*Heller v. NBCUniversal*,
   2016 WL 6573985 (C.D. Cal. Mar. 30, 2016) ...................................................... 2

*Jankovic v. Int'l Crisis Grp.*,
   822 F.3d 576 (D.C. Cir. 2016) ............................................................................ 4

*Makaeff v. Trump Univ., LLC*,
   715 F.3d 254 (9th Cir. 2013) ............................................................................... 4

*Masson v. New Yorker Magazine*,
   832 F. Supp. 1350 (N.D. Cal. 1993) .................................................................. 11

*Milsap v. Journal/Sentinel, Inc.*,
   100 F.3d 1265 (7th Cir. 1996) ............................................................................ 3

*Mitchell v. Superior Court*,
   37 Cal. 3d 268 (1984) ..................................................................................... 8, 9

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*,
   210 F.3d 1099 (9th Cir. 2000) .......................................................................... 11

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995) .............................................................................. 3

*Reader's Digest Assn. v. Superior Court*,
   37 Cal. 3d 244 (1984) ........................................................................................ 1

*Rosenaur v. Scherer*,
   88 Cal. App. 4th 260 (2001) ............................................................................... 5

*Shively v. Bozanich*,
   31 Cal. 4th 1230 (2003) ..................................................................................... 8

*Silva v. The Hearst Group*,
   1998 WL 883205 (C.D. Cal. Mar. 18, 1998) ..................................................... 2

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) ......................................................................................... 12

*Stoneking v. Briggs*,
   254 Cal. App. 2d 563 (1967) .......................................................................... 7, 8

*Thomas v. Los Angeles Times, LLC*,
   189 F. Supp. 2d 1005 (C.D. Cal. 2002) .............................................................. 3

*Troy Grp., Inc. v. Tilson*,
   364 F. Supp. 2d 1149 (C.D. Cal. 2005) ............................................................ 10

*Waldbaum v. Fairchild Publications, Inc.*,
   627 F.2d 1287 (D.C. Cir. 1980) ..................................................................... 2, 4

## I. INTRODUCTION

Vigorous public debate sometimes subjects the participants to distasteful language or personal attacks. Nonetheless, the First Amendment rightfully raises substantial hurdles to the pursuit of a defamation claim, such that summary judgment is the "favored remedy." *Reader's Digest Assn. v. Superior Court*, 37 Cal. 3d 244, 251 (1984). On this record, those principles compel the Court to grant summary judgment in Defendant Elon Musk's favor—if not entirely, then predominantly.

To defeat summary judgment, Plaintiff Vernon Unsworth's opposition needed to create genuine issues of fact that: (a) he is not a limited purpose public figure, even though he inserted himself into a world-wide debate over who contributed to the 2018 Thai cave rescue, their motives, whether their contributions had value, and whether his words should be believed over Musk's; (b) Musk had "constitutional malice" when he sent an "off the record" email to BuzzFeed, even though it is undisputed that Musk thought his statements about Unsworth were based on a bona fide investigation and Musk had instructed BuzzFeed to verify their truth if it wanted to republish them; (c) Musk should have reasonably expected BuzzFeed *not* to keep his statements off the record, even though he labeled them as such; and (d) Musk intended his initial tweets to be taken as statements of fact, even though the evidence says the opposite.

Unsworth failed. To distract from this record of undisputed facts, his brief instead screams of "untruths," "misrepresentations of the evidence," and "dishonest legal tactics." (Opp. at 1.) But the evidence undermines his rhetoric. Critically, weeks after Musk filed this motion, and months after Unsworth sat for his deposition, Unsworth produced a long-running text chain with a cohort that compromises his case and contradicts his deposition testimony. (*See* Lifrak Supp. Decl. Ex. 28) For example, despite claiming here to be a "private figure," he admits he was in "constant contact" with the press, he retained an "agent/representative" to sell his story to publishers and Hollywood studios, and he "will make the [rescue] divers suffer for leaving us out of the [publicity] loop." *Id.* at 56, 58, & 60. For the last year,

Unsworth and his lawyer have been grandstanding in the media about this case, misrepresenting the facts. The time has come to bring their show to an end.

## II. UNSWORTH IS A LIMITED PURPOSE PUBLIC FIGURE.

### A. The Statements At Issue Arose From Public Controversies.

Unsworth argues that there was no public controversy over the cave rescue or anyone's motives for joining in it because: (a) the general public was not "affected" by it and (b) the controversy ended with the rescue. (Opp. at 14.) Not true.

First, Unsworth misstates what constitutes a public controversy. The public does not need to be "affected" in some political, economic, or physical way. It is sufficient that the dispute be "debated publicly" and have "foreseeable and substantial ramifications for nonparticipants." *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1164 (2004). Courts do not question the "legitimacy" of a controversy or substitute their judgment of importance. *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1297 (D.C. Cir. 1980). This is not a high burden. An issue affects the public when it "engages the public interest" and the public will "feel the impact of the publicity." *Silva v. The Hearst Group*, 1998 WL 883205 at *4 (C.D. Cal. Mar. 18, 1998) (finding public controversy over actor's relationship with assistant because public was engaged in surrounding publicity). *Waldbaum*, 627 F.2d at 1297 (injury to football player qualifies as public controversy).[1]

The cave rescue strategy, including the viability of Musk's rescue sub, was an issue being considered by more than just the rescue participants, and potentially affected those far beyond Unsworth and Musk. This included the Thai government, which held the rescue subs for future use, *see Copp v. Paxton*, 45 Cal. App. 4th 829,

---

[1] *See also Heller v. NBCUniversal*, 2016 WL 6573985, at *5 (C.D. Cal. Mar. 30, 2016) (plaintiff a limited purpose public figure when his "relationship with [performers] was the subject of great public interest"); *Cummins v. Lollard*, 2012 WL 12885117, at *5 (C.D. Cal. Nov. 16, 2012) (plaintiff a limited purpose public figure in controversy concerning "protection of wildlife" because "there is a public interest" in the topic).

846 (1996) (debate over disaster mitigation had ramifications for nonparticipants), and shareholders of Tesla, whose CEO was being accused of engaging in a PR stunt to distract them from the company's business, *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1577-78 (2005) (debate over public company had substantial ramifications for shareholders). Indeed, generating public interest in the matter is exactly what Unsworth sought.

It makes no difference whether the public debate continued after the rescue ended in July 2018 because "an individual who was once a public figure with respect to a controversy remains a public figure for latter commentary on that controversy." *Milsap v. Journal/Sentinel, Inc.*, 100 F.3d 1265, 1269 (7th Cir. 1996); *Partington v. Bugliosi*, 56 F.3d 1147, 1152 n. 8 (9th Cir. 1995) (same). Regardless, the public controversy did not stop in July 2018; it continued into 2019. (Lifrak Supp. Ex. 32.)

### B. Unsworth Publicly Inserted Himself Into the Controversies.

Unsworth's assertion that he did not "thrust himself to the forefront" of the controversy is belied by the undisputed facts. He regularly gave media interviews, questioned Musk's motives for participating in the rescue, and insisted that he should be believed. (Mot. at 13-14.) He did not confine his involvement to a simple press release. Instead, it took the form of continued courting of media attention. (SUF 13, 20; Lifrak Exs. 9, 13.) Unsworth's contrary assertion is contradicted by his own text messages, which he withheld until several months after his deposition and until after Musk filed this motion. They show that Unsworth had hired an agent and attempted to enter book and movie deals to capitalize on his role in the rescue, and that he debated the usefulness of the sub, complained about not receiving enough credit, and denigrated the divers who risked their lives. (*See* Lifrak Supp. Ex. 28 at 36, 41, 58-60.) Such involvement easily satisfies this factor. *Thomas v. Los Angeles Times, LLC*, 189 F. Supp. 2d 1005, 1012 (C.D. Cal. 2002) (plaintiff's cooperation in book about his life "invited public attention—and public scrutiny—to his life" and rendered him limited purpose public figure).

*Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576 (D.C. Cir. 2016), which Unsworth cites, supports Musk. (Opp. 15-16.) The court held that the plaintiff had "used the public controversy" to "draw 'attention to himself' and used 'his position in the controversy 'as a fulcrum to create public discussion.'" *Id*. at 589. That is exactly what Unsworth did here. He used his role in the rescue to catapult himself into the public eye, claiming superior knowledge of the cave system and seeking to bolster his visibility and importance by disparaging Musk's rescue sub.

        **C.**     **Musk's Statements Were Germane to the Controversies.**

Unsworth's opposition ignores the cases granting summary judgment where, as here, the plaintiff asked the public to accept his side of the controversy over someone else's. Thus, and as here, the defendant's statements about the plaintiff's credibility, character, and motivations were necessarily germane. *See Waldbaum*, 627 F.2d at 1298 (affirming summary judgment and holding that plaintiff's "talents, education, experience, and motives" are germane to controversy because it "could have been relevant to the public's decision whether to listen to him"); *Atlanta Journal-Constitution v. Jewell,* 555 S.E.2d 175, 183 (Ga. App. 2001) (in lawsuit brought by accused 1996 Olympics bomber, alleged defamatory statements that he had "an aberrant personality" and "a bizarre employment history," were germane to controversies over the bombing). As in *Jankovic*, 822 F.3d at 589, Musk's statements are far from being "wholly unrelated" to the public controversies.

To create a dispute, Unsworth erects a straw man—that pedophilia allegations are not relevant to the viability of the rescue sub. (Opp. 15-16.) But the germaneness inquiry looks at whether the statements are relevant to "*plaintiff's participation* in the controversy." *See Copp*, 45 Cal. App. 4th at 846 (emphasis added); *see also Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 266 (9th Cir. 2013) ("whether the alleged defamation is related to the *plaintiff's participation* in the controversy") (emphasis added); *Jankovic*, 822 F.3d at 589 (same). Indeed, Unsworth has already *admitted* that Musk's statements were germane to Unsworth's motivation for participating in

the rescue. (*See* Lifrak Ex. 27 ("[H]e's called me a pedophile. Well, by definition, you know, rescuing 12 young boys … puts everyone else in the same context.").)[2]

### III. THE BUZZFEED ARTICLE IS NOT DEFAMATION BY MUSK.

#### A. Unsworth Cannot Prove Malice.

Unsworth does not quarrel with the established and high burden he must overcome. He must demonstrate by clear and convincing evidence that Musk knew his statements to BuzzFeed were false or that Musk recklessly disregarded the truth through a "purposeful avoidance of the truth." *Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 277 (2001). Unsworth has failed, however, to meet his burden.

First, although Unsworth asserts that it is "antithetical" for Musk to argue that "he was not calling Unsworth a pedophile, while on the other hand, he did not harbor serious doubts as to whether Unsworth was a pedophile" (Opp. at 3), there is no inconsistency. As described below, in Musk's July 15 tweets, he did not intend readers to believe he was making factual assertions that Unsworth had engaged in pedophilia. *Infra* at IIIA. But something changed between July 15 and the retention of the investigator: Lin Wood, Unsworth's lawyer, sent a letter threatening a lawsuit and demanding a rich payout. (Lifrak Supp. Ex. 29, Musk Depo. 59:20-62:2; 65:24-67:3.) Only then did Musk's employees respond to Howard's offer to investigate Unsworth. (*Id.*) And it was only after Howard began reporting that Musk thought that "maybe [Unsworth] is actually a pedophile." (*Id.* 62:3-64:15, at 64:1-2.)

Second, there is no evidence that Musk *knew* his statements to BuzzFeed were false. Birchall told Musk that, among other things, there was evidence that Unsworth had begun his relationship with his Thai wife when she was 11 or 12 years old (SUF 56) and that for decades Unsworth had spent time in known hotspots for sex tourism.

---

[2] Unsworth cites *Grenier v. Taylor*, 234 Cal. App. 4th 471, 485 (2015), to claim that Musk's statements were not germane. (Opp. 16.) But the defendant there failed to identify any way in which the plaintiff had "voluntarily acted to influence the resolution of a discrete public controversy." *Id.*

(SUF 64.)  Musk believed that these things could be true.  (Lifrak Supp. Ex. 29, Musk Depo. 62:3–64:15.)  All Unsworth can say is that Musk was not "sure" about their accuracy.  (Opp. at 10, 21.)  But that is not the same as knowing they were false.  *See Dickens v. Werner Enterprises, Inc.*, 2014 WL 838224, at *3 (N.D.W. Va. Mar. 4, 2014), *aff'd*, 582 F. App'x 208 (4th Cir. 2014) (that defendant was "unsure" about truth of statement did not "create a genuine issue of triable fact" regarding defendant's malice) (citations omitted).  And there is ***no*** evidence of that.

Third, Unsworth cannot show that Musk "purposely avoided the truth" based on receipt of conflicting information about the age of Unsworth's wife.  (Opp. at 10.) The undisputed facts are that Musk sought to know the truth.  He did not broadcast the investigator's information to the world.  He sent it non-publicly to a reporter covering the story, and implored him to find out if it was true.  (SUF 77.)  This is confirmed not only by Musk's testimony.  (Wilson Ex. 1, Musk Depo. 176: 4-24) (intent was to provide to Mac for further investigation).  It is also proven by the contemporaneous evidence.  On the same day BuzzFeed published Musk's August 30 "off the record" email, Musk wrote to a PR consultant, making clear that "[m]y intent was to have [BuzzFeed] investigate and come to their own conclusions, not publish my email directly. There is a lot of incriminating evidence about this guy if journalists bloody well look."  (Wilson Ex. 34.)

Fourth, Unsworth's argument that Howard never told Birchall that Unsworth was a child rapist or married a child bride (Opp. at 10) is misleading and irrelevant. Birchall relayed to Musk that Unsworth may have started a relationship with his Thai wife when she was as young as 11.  (SUF 56.)  As Musk testified, having a physical relationship with a young child is, by definition, rape  (Wilson Ex. 1, Musk Depo. 176:8-14.)  That there was uncertainty about whether Unsworth "married" a young girl, as opposed to merely "started a relationship" (Opp. at 10), is irrelevant.  *See Annette F.*, 119 Cal. App. 4th at 1168-70 (use of term "convicted" even without criminal conviction was "erroneous statement," but such "false statements that have

some element of truth" still "must be protected"); *Christian Research Inst. v. Alnor*, 148 Cal. App. 4th 71, 88 (2007) ("careless" misinterpretation of information "would not establish malice").

### B. Musk Is Not Liable for Publication of Off-the-Record Emails.

Musk cannot be liable for BuzzFeed's unauthorized republication of the contents of his August 28, 2018 email to Mac. It is undisputed that Musk designated it as "off-the-record," meaning that its contents and source could not be published. *See Chandler v. Berlin*, 2019 WL 1471336, at * 4 (D.D.C., Apr. 3, 2019) (republication of document not reasonably foreseeable because document was sent "privately" and marked as "confidential"). Nor is there any dispute that Musk understood, based on his prior interactions with the press generally and BuzzFeed specifically, that the information in his email would not be published unless the outlet first confirmed its veracity. (SUF 98.)[3] In fact, BuzzFeed's own newsroom policies did not require that a reporter and source reach an agreement for information to be treated off-the-record, and they require that any information be independently verified before publication. (SUF 100, 102; Lifrak Decl. Ex. 25.) Because Musk neither authorized nor reasonably foresaw republication, any claim based on the BuzzFeed article fails. *See e.g., Curley v. Vick*, 211 Cal. App. 2d 670, 672-73 (1963).

To deal with these undisputed facts, Unsworth invents his own legal rules, relies on communications irrelevant to determining whether republication of the *specific* email was reasonably foreseeable, and mischaracterizes Musk's statements.

First, Unsworth asserts that reasonable foreseeability of republication is "axiomatic" for *any* statement to a reporter. (*See* Opp. at 24 citing *Stoneking v. Briggs*, 254 Cal. App. 2d 563, 577 (1967)). Not true. *See Di Giorgio Corp. v. Valley Labor Citizen*, 260 Cal. App. 2d 268, 272 (1968) (source of information not liable for

---

[3] Arnold similarly testified that BuzzFeed had previously honored a unilateral "off the record" request and that he would not expect a professional journalist to ignore such a request. (Lifrak Supp. Exs. 30-31, Arnold Depo. 133:8-134:1, 166-11:21.)

republication of statements in newspaper).  And in *Stoneking*, unlike here, the defendant did not designate any of his statements to reporters as confidential or off-the-record.  254 Cal. App. 2d at 565.  Unsworth identifies **no** authority to support his position that it is reasonably foreseeable that a professional journalist would publish a statement designated "off-the-record."  His proposition is literally unprecedented.

Unsworth suggests that the law requires a speaker and re-publisher to reach an agreement before a statement can be reasonably expected to be treated as confidential or "off-the-record," citing to *Cohen v. Cowles Media,* 501 U.S. 663, 665, 671 (1991).  *Cohen* says no such thing.  It stands for the proposition only that a source can sue for promissory estoppel against a reporter for breaching an agreement.  The Court did not hold that a mutual agreement is a prerequisite or a factor in the "reasonably foreseeable" analysis.  *Cohen*, 501 U.S. at 666.  To the contrary, courts have held that the unilateral designation of information as confidential can render its republication reasonably **un**foreseeable.  *Chandler*, 2019 WL 1471336, at *4.[4]

Unsworth also points to emails Musk sent **after** BuzzFeed told him that it would be violating Musk's instruction.  (Opp. at 24.)  But those emails are of no help.  In one, Musk states that "I didn't expect Buzzfeed to publish an off the record email."  (Wilson Ex. 34.)  In another, he says he expected Mac to keep the email confidential under "accepted rules of journalism."  (Wilson Ex. 19.)[5]  *See Mitchell v. Superior*

---

[4] Unsworth's similar argument, that BuzzFeed had a "right" to publish Musk's email without a "contractual obligation" to the contrary (Opp. at 24), is without any legal support and irrelevant.  In all of the cases, the right to republish the information is not contested; the foreseeability question is answered without considering the "rights" of the re-publisher.  *See e.g.*, *Shively v. Bozanich*, 31 Cal. 4th 1230, 1243 (2003), *DiGiorgio Corp. v. Valley Labor Citizen*, 260 Cal. App. 2d 268, 272 (1968).

[5] Unsworth argues that Musk did not "fight" to keep his email confidential.  (Opp. at 11.)  Although there is no legal requirement that Musk have done so, the undisputed evidence is that he did.  After Mac waited five days to tell Musk that he was going to publish the emails, Musk immediately objected and said it would "destroy [Mac's] journalistic credibility."  (Musk Decl. Ex. L.)  Musk then asked Tesla's Senior

1  *Court*, 37 Cal. 3d 268, 281 (1984) (defendant must have a reasonable expectation,
2  when he furnishes the information, that it will be republished).
3        Unsworth's remaining arguments are similarly without merit. Musk did not
4  testify that he "expected Mac would report" the accusations of his email if he did not
5  find any supporting evidence. (Opp. at 11.) Musk testified instead that he expected
6  Mac to write about Unsworth "*if* he discovered that it was true." (Wilson Ex. 1,
7  Musk Tr. 189:7-190:6) (emphasis added). Thus, there is no factual dispute as to
8  Musk's intent.[6] That Musk "insulted" Mac is not relevant to the analysis, either.
9  (Opp. at 25.) There is no "rude source" exception under the law or BuzzFeed's
10 policies. (Lifrak Decl. Ex. 25.) And whether Birchall and the investigator were
11 "leaking" information to other outlets is also irrelevant to whether it was reasonably
12 foreseeable *to Musk* that *BuzzFeed* would publish Musk's email. Communications
13 with other outlets were not even designated "off-the-record" and did not include the
14 allegations in Musk's August 29 email to Mac. (*Compare* Musk Ex. L *with* Wilson
15 Ex. 25.) On these undisputed facts, Unsworth cannot sue Musk for BuzzFeed's
16 republication of Musk's emails.
17       **C.**    **Musk's August 28 Tweet Lacked Malice.**
18       Unsworth's only argument about the August 28 Tweet is that it was an
19 "accusation of pedophilia," (Opp. at 20), which Musk did not have a "good faith"
20 basis to make. *Id.* But those weren't Musk's *actual* words, and what he said matters.
21 Musk does not call Unsworth a pedophile or a "pedo guy." He does not call
22 Unsworth anything. Musk asks rhetorically whether, from his point of view,
23 "[p]erhaps there was something odd going on. It's [sic] does not mean he is a

---

24 Communications Director to intervene to no avail. (Lifrak Supp. Ex 31, Wilson Ex.
25 42.)

[6] Although Musk testified that he would expect Mac to print *Mac's* findings, even if
he could not find any negative information against Unsworth, there was no testimony
that Musk expected Mac to publish Musk's email or to reveal Musk as a source. *Id.*
That is the definition of an "off the record" statement.

1  pedophile or not a pedophile.  But perhaps he does not want his situation
2  investigated." (Lifrak Supp. Ex. 29, Musk Depo. 197: 12-15.)  *See Troy Grp., Inc. v.*
3  *Tilson*, 364 F. Supp. 2d 1149, 1156 (C.D. Cal. 2005) (finding that "rhetorical question
4  that does not lend itself to a literal interpretation by the average reader" was not
5  defamatory).  Musk's suspicion was well-founded, due to the investigator's reports.
6  (SUF 63.)  Unsworth has no contrary evidence to create a triable issue.

### IV. MUSK'S JULY 2018 TWEETS WERE NOT DEFAMATORY.

#### A. Unsworth Has Not Shown a Triable Issue on Malice.

Unsworth does not dispute that, to avoid partial summary judgment on the July 2018 tweets, he must provide clear and convincing evidence that Musk knew or reasonably believed that the terms "sus" and "pedo guy" would be interpreted as statements of provable fact. *Good Gov't Grp. of Seal Beach, Inc. v. Superior Court*, 22 Cal. 3d 672, 684 (1978); (Opp. at 18.)  Unsworth does not dispute Musk's testimony that he had no such intention, but was instead trying to insult Unsworth as an "old creepy guy."  (SUF 42-44.)  Musk was influenced by the fact that he was criticized by someone who claimed to be an expert on the rescue that he had never met or even heard about.  Unsworth has no evidence that Musk intended Twitter users to believe he was asserting facts about Unsworth's sexual habits.[7]

Unsworth's contrary arguments are in error, as a matter of law.  Unsworth asserts that Musk's deposition testimony regarding his intent is "simply not credible." (Opp. at 18.)  But Unsworth's view of Musk's credibility does not constitute clear and convincing evidence of anything.  When analyzing an allegedly defamatory statement whose meaning is ambiguous, a "negative assessment of the speaker's credibility … does not constitute clear and convincing evidence of actual malice."

---

[7] When a speaker intends his statement to be taken as opinion, it is not logical to apply a "knowledge or reckless disregard of falsity" standard.  That is why, when a statement can be interpreted as fact or opinion, the plaintiff must prove first that the speaker intended his words to be taken as fact. *Good Gov't*, 22 Cal. 3d at 684.

*Masson v. New Yorker Magazine*, 832 F. Supp. 1350, 1366 (N.D. Cal. 1993)

Second, Unsworth argues that "this Court has already held" that Musk "conveyed to the world that he meant to label [Unsworth] a pedophile as a matter of fact." (Opp. at 18.) Not true. The Court held that the statements "could be construed as *either* fact or opinion" and said nothing about Musk's supposed intentions. (Dkt. 42, at 13, fn. 9.) Under these circumstances, the *Good Government* standard applies and requires Unsworth to show that Musk intended for his statements to be taken as fact, which Unsworth has not done. *Good Gov't*, 22 Cal. 3d at 684.

Third, Unsworth points to Musk's "failure to clarify that point in response to numerous requests for comment expressing an understanding that the accusation was that he was a pedophile." (Opp. at 18.) But none of that has anything to do with Musk's subjective state of mind at the time of his tweets, which is the only relevant inquiry. *Good Gov't*, 22 Cal. 3d at 684; *DeHavilland v. FXNetworks, LLC*, 21 Cal. App. 5th 845, 870 (2018) (malice is "deliberately subjective test" and cannot be based on "implication that merely should have been foreseen").

Finally, Musk's later tweet, "betcha a signed dollar it is true" does not show that he intended his prior "sus" and "pedo guy" tweets to be taken as facts. (Opp. at 18.) He testified that he meant the opposite: that "obviously I'm not certain about this" and that he found Unsworth merely "suspicious." (SUF 47-48.) Unsworth does not, and cannot, point to any contrary evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff cannot defeat summary judgment "by merely asserting that the jury might, and legally could, disbelieve the defendant's denial of … legal malice"); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (if nonmoving party fails to produce enough evidence to create genuine issue of material fact, "the moving party wins summary judgment").

### B. Unsworth Has no Other Evidence of Actual Malice.

Even if Unsworth had clear and convincing evidence that Musk subjectively intended to have readers believe "sus" and "pedo guy" were assertions of fact,

Unsworth must also provide clear and convincing evidence the Musk knew the information was false or that Musk had recklessly disregarded the truth. *St. Amant v. Thompson*, 390 U.S. 727, 731-32 (1968). Unsworth cannot meet either burden.

Before Musk first tweeted about Unsworth, Musk researched Unsworth, finding that he was an older British white man living in an area of Thailand notorious for child sex trafficking. (SUF 36.) That makes Unsworth suspicious, i.e., "sus." At worst, that is a statement of opinion, not fact. And even if Musk tweeted that Unsworth was a pedophile (which he did not), Unsworth still has not shown actual malice. Instead, he criticizes the quality and accuracy of Musk's "research." (Opp. at 19.) As a matter of law, that is insufficient. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) ("The standard is a subjective one …. As a result, failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard.")

## V. CONCLUSION

For the forgoing reasons, the Court should grant Musk's motion.

DATED: October 17, 2019

Respectfully submitted,
QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Alex Spiro*
Alex Spiro
*Attorneys for Defendant Elon Musk*