L. LIN WOOD, P.C.
L. Lin Wood (admitted *pro hac vice*)
lwood@linwoodlaw.com
Nicole J. Wade (admitted *pro hac vice*)
nwade@linwoodlaw.com
Jonathan D. Grunberg (admitted *pro hac vice*)
jgrunberg@linwoodlaw.com
G. Taylor Wilson (admitted *pro hac vice*)
twilson@linwoodlaw.com
1180 West Peachtree Street, Ste. 2040
Atlanta, Georgia 30309
404-891-1402
404-506-9111 (fax)

CHATHAM LAW GROUP
Robert Christopher Chatham
chris@chathamfirm.com
CA State Bar No. 240972
3109 W. Temple St.
Los Angeles, CA 90026
213-277-1800

WEISBART SPRINGER HAYES, LLP
Matt C. Wood (admitted *pro hac vice*)
mwood@wshllp.com
212 Lavaca Street, Ste. 200
Austin, TX 78701
512-652-5780
512-682-2074 (fax)

*Attorneys for Plaintiff Vernon Unsworth*

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Alex B. Spiro (admitted *pro hac vice*)
alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543

*Attorneys for Defendant Elon Musk*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VERNON UNSWORTH,<br><br>                        Plaintiff<br><br>    v.<br><br>ELON MUSK,<br><br>                        Defendant. | Case No. 2:18-cv-08048-SVW (JCx)<br><br>**SECOND JOINT STIPULATION ON PLAINTIFF'S MOTION TO COMPEL**<br><br>Hearing Date:         Nov. 12, 2019<br>Time:                      9:30 a.m.<br>Courtroom:            750<br>Discovery Cutoff:   Sept. 13, 2019<br>Pretrial Conference: Nov. 25, 2019<br>Trial Date:             Dec. 3, 2019 |

PLEASE TAKE NOTICE THAT on November 12, 2019, at 9:30 a.m. in Courtroom 750 of the above-titled Court, Plaintiff Vernon Unsworth will move this Court for an order granting Plaintiff's Motion to Compel pursuant to Fed. R. Civ. P. 37 and Local Rule 37.  Plaintiff's Motion to Compel is made pursuant to this Notice of Motion, the parties' Second Joint Stipulation on Plaintiff's Motion to Compel and supporting declarations, Plaintiff's forthcoming supplemental memorandum of law and proposed order pursuant to Local Rule 37-2.3, and any such additional argument or materials as may be submitted to the Court before the time of the decision in this matter.

DATED:  October 22, 2019                    Respectfully submitted,

**L. LIN WOOD, P.C.**

By: */s/L. Lin Wood*
L. Lin Wood

*Attorneys for Plaintiff Vernon Unsworth*

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENTS. ........................................................................... 1

   A.   Unsworth's Preliminary Statement ................................................................ 1

   B.   Musk's Preliminary Statement ...................................................................... 4

II.   DISCOVERY DISPUTES AT ISSUE................................................................... 6

   A.   Unsworth's Document Requests and Musk's Responses .................................. 6

   B.   Unsworth's Position ...................................................................................... 11

Pursuant to Federal Rule of Civil Procedure 37, and Rule 37 of the Local Rules of Practice for the United States District Court for the Central District of California, Plaintiff Vernon Unsworth ("Unsworth") and Defendant Elon Musk ("Musk") submit this Joint Stipulation in connection with Unsworth's Motion to Compel discovery responses from Musk in this defamation lawsuit.  As required by L.R. 37-1, the parties held multiple telephonic and electronic meet and confer attempts to resolve this issue prior to seeking the Court's intervention.  (Declaration of G. Taylor Wilson ("WD") at ¶¶ 2-3, Exs. A, B, C.)

## I.   PRELIMINARY STATEMENTS.

### A.   Unsworth's Preliminary Statement

This discovery dispute arises from (1) Musk wiping his cell phone in or about May 2019, while this litigation was ongoing, (2) his counsel's initial representation during an August 9, 2019, meet and confer that no record of his cell phone existed, (3) Musk's subsequent testimony in August 2019 that his phone was backed up to iCloud, (4) his refusal thereafter to search his iCloud until October 1, 2019—more than two weeks after the discovery deadline—despite previous claims that he searched it and no responsive information existed, and (5) Musk's use of unreasonably narrow search terms to finally search his phone on October 1, only after he had been served with a stipulation on this motion to compel. Musk only searched his iCloud backup after Unsworth served him with a stipulation for a motion to compel on September 25, (WD ¶ 13, Ex. H, I), and after third-parties disclosed relevant and responsive text messages with Musk on October 1—which gave lie to the notion that no responsive texts existed, (WD ¶ 14, Exs. J, K).  On October 2, Musk provided an iCloud Search Certification ("Certification") describing the inadequate search efforts that failed to reveal any documents. (WD ¶¶ 15-16, Exs. L-N). The Certification does not claim his iCloud is devoid of responsive documents and communications; rather, the search was

transparently designed to avoid uncovering text messages that indisputably exist.[1]  To this day, Musk has not produced a single text message he sent or received.  (WD ¶ 4).

Unsworth asks the Court to compel Musk to search his iCloud and other phone backups—both of which also indisputably exist according to the Certification (WD Ex. N)—and produce information responsive to Unsworth's discovery requests.  The search should include both (1) an eyes-on review of all of Musk's text messages with all contacts, and (2) a keyword search of said text messages for this period using the terms set forth below; and, as Musk himself concedes, documents from July through September of 2018 should be searched.  (*See id.* (searching same period)).

For more than two months, Unsworth's counsel has explicitly demanded that Musk produce responsive documents from his phone, including text messages. (WD ¶¶ 3-9; Exs. A, B, C). In return, Musk has given false and shifting excuses. In an August 9, 2019, meet and confer, Musk's counsel said Musk changed phones and that no record of his prior phone was available. (WD ¶ 5). This defies reason, as Musk and his companies are involved in lawsuits imposing litigation holds.  (WD Ex. E).

Then Musk testified on August 22 that he changed phones "three months ago" but that it may have been backed-up on iCloud.  (WD ¶ 6, Ex. D). Since Musk's testimony, Unsworth has repeatedly demanded that Musk search his phone or backups (including iCloud) and produce responsive documents. (WD ¶ 7, Exs. A, B, C). On September 23, Musk eventually, and nonsensically, stated that the record custodian affidavits attached to his companies' third-party document productions somehow show that backups of his phone were searched and revealed no responsive documents. (WD ¶ 7, Ex. A p. 2) (stating the affidavits "are more than sufficient and we have confirmed that there is nothing further")).  Yet, at the very end of discovery, Tesla produced an email from Musk describing a text from his girlfriend about negative press about the tube—which was clearly responsive and should have been produced

---

[1] Musk has a pattern of withholding his text messages, and was recently ordered to produce his texts in another matter. *See https://dailym.ai/2ILpApO.*

earlier. (WD ¶ 11, Ex. C pp. 1, 6). Unsworth brought this email to Musk's attention, and again Musk failed to produce any of his text messages.  (WD ¶ 11, Ex. C. p.1, 6).

Finally, on October 1, despite Musk consistently denying that responsive texts existed, third-party deponents Steve Davis and Dave Arnold produced text exchanges with Musk about the tube and defamatory emails to Ryan Mac—although they did so minutes before or during their depositions. (WD ¶ 14, Exs. J, K). Their texts with Musk are indisputably responsive and provide incontrovertible evidence that Musk— who did not himself produce any of these texts—has actively hidden evidence during discovery. (*See* WD 14, Ex. O (RFPs 1, 23, 24, 63, 64)).

Despite Musk previously stating that his iCloud had been searched (including as of September 23, 2019), on October 2, 2019, and only after Unsworth sent Musk a stipulation for a motion to compel the phone documents, Musk provided the Certification that he searched his iCloud, which did not yield a single document. (WD Exs. L, N). The Certification admits that his phones are regularly preserved through imaging and iCloud, and that iCloud *was searched for the first time on October 1, weeks after discovery ended.* (WD Ex. N). *That searched used grossly narrow keywords designed to avoid collecting responsive texts*. (*Id.*). The Certification *does not state that the phone backups are actually devoid of documents responsive to Unsworth's pending discovery requests.* (*Id.*). The keywords used to search Musk's iCloud would not uncover the text messages between Musk and Davis or Arnold, and do not include obvious standalone terms like Thai, Thailand, cave, rescue, Mac, or BuzzFeed. (*Id.*).  In short, Musk crafted keywords that are grossly incomplete and instead appear to purposefully avoid uncovering texts that indisputably exist.

Musk's statement in his portion of the previous stipulation for a motion to compel made no attempt to explain Musk's false and shifting explanations about preserving his phone or his failure to search his phone until October 1, 2019. (WD Ex. M).  Instead, Musk decreed that he "submitted a detailed declaration on this issue, which resolved it." (*Id.* at 1 n.1) Musk cannot dispute that Unsworth's requests related

to text messages and iCloud are calculated to lead to the discovery of admissible evidence on falsity, negligence, and actual malice.  Nor can Musk argue that Unsworth has been dilatory in seeking the phone information, particularly given Musk's false statements about his phone being destroyed and their being no backup.

Musk will not "resolve it" until he is forced to produce responsive documents from his phone, iCloud, or its other backups. Unsworth respectfully requests that the Court order Musk to comply with discovery and produce documents after an exhaustive search of the phone data that Musk has so doggedly attempted to hide.

## B.    Musk's Preliminary Statement

Unsworth's motion to compel is misleading, unnecessary, and in violation of the Local Rules.  This is a manufactured dispute.  Musk has agreed to every search of documents Unsworth has ever requested, including this one.  Unsworth's case is failing, and he is grasping at non-existent straws.  The motion should be denied, and Unsworth and his counsel should be sanctioned.

First, Unsworth's motion asserts that Musk has given "false and shifting" excuses about his text messages and that he has "hidden evidence."  This is blatantly false.  Musk has been clear, open, and honest from the beginning.  He changes his phone frequently.  (Musk Tr. 313: 10 – 315: 18) (Lifrak Decl. Ex. A).[2]  The content of his phone is backed up on the iCloud.  (*Id.*).  Musk searched that data in July 2019, which produced no results.  (Lifrak Decl. ¶4).  When Unsworth complained and requested an identification of the search terms, Musk searched again in October 2019, disclosed the search terms that had been used, and he also provided a

---

[2]  Musk's counsel never stated that "no record of [Musk's] cell phone existed," as Unsworth claims.  All Musk's counsel stated was that Musk changes his phone frequently.

4

declaration attesting to the search.  (Lifrak Decl. Ex. B).[3]  In his portion of the joint stipulation, Unsworth asks Musk to search additional terms.   Musk has agreed to do exactly that.  (Lifrak Decl. Ex. C).

Second, the motion is unnecessary.  It requests that Musk use additional search terms on his texts.  Musk has agreed to do so.  (*Id.*).

Third, the motion is in violation of the Local Rules.  Unsworth's counsel simply did not "confer in a good faith effort to eliminate the necessity for hearing the motion."  (L.R. 37-1).  In fact, the first time Unsworth's counsel provided the requested new search terms was in his portion of this joint stipulation.  This is in violation of the Local Rules because:

- Unsworth's counsel did not send a letter requesting a meet and confer conference "specify[ing[ the terms of the discovery order sought."  (L.R. 37-1).

- Unsworth's counsel did not participate in an in-person or telephonic conference prior to transmitting his portion of the joint stipulation in an effort to avoid motion practice. (L.R. 37-1).

Unsworth's counsel did not provide *any* letter or attempt to meet and confer in *any* way regarding the newly-requested search terms.  This is the opposite of meeting and conferring in good faith, and it directly violates the Local Rules.  Unsworth and his counsel should be sanctioned as a result.  *See* L.R. 37-4 ("failure of any counsel to comply with or cooperate in the foregoing procedures may result in the imposition of sanctions.").  After Musk provided a declaration about the October search, Unsworth's counsel said nothing until emailing his portion of this joint stipulation.  Counsel was clearly frustrated that the tactic of shifting focus

---

[3]  The declaration does not say that Musk's iCloud was "searched for the first time on October 1," as Unsworth claims.  In fact, Musk's iCloud was searched in July and again in October, at Unsworth's request.  (Lifrak Decl. ¶¶ 4-5).

away from his failing case and onto some invented discovery issue would bear fruit, and it didn't, hence the frivolous application to the Court.[4]

## II.   DISCOVERY DISPUTES AT ISSUE

### A.   Unsworth's Document Requests and Musk's Responses

<u>**REQUEST FOR PRODUCTION NO. 1**</u>: All documents and communications concerning or relating to the Defamatory Statements.

<u>Musk's Responses and Objections to Request for Production No. 1</u>: Defendant incorporates his General Objections herein. Defendant further objects to Request No. 1 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff. Defendant further objects to Request No. 1 as argumentative in that it requires the adoption of improper assumptions including that any statement referenced in this Request was defamatory. Defendant further objects to Request No. 1 to the extent that it seeks to

---

[4]  Unsworth's own conduct in this case has been egregious, as he has failed to produce relevant documents for months.  Unsworth's first production contained fewer than 500 pages of self-serving documents, which were self-selected by Unsworth.  (Lifrak Decl. ¶ 7).  After counsel for Musk identified materials that were clearly missing, Unsworth produced another 3,000 pages on the eve of his deposition.  (Lifrak Decl. ¶ 8).  But there were still missing documents.  Only after discovery had closed, and months after his deposition did Unsworth finally produce approximately 300 pages of additional materials that materially harm his case.  (Lifrak Decl. ¶9).  For example, the 82-page text conversation between Unsworth and Thanet Natisri, which contained journal-like details of Unsworth's activities during and after the rescue, including his criticisms of the divers who risked their lives, was not produced until September 23.  (Supplemental Declaration of Michael Lifrak in support of Elon Musk's Motion for Summary Judgment, DKT 85, Ex. 28).  Unsworth also withheld all communications with his agent (who he claimed in his deposition did not exist) and communications that depict Unsworth's attempt to monetize his role in the rescue, until October 4, after Musk had threatened to move to compel the information. (Lifrak Decl., Exs. D, E).  Last, but not least, Unsworth has continued to deny that responsive communications between himself and his partner, Tik, exist.  It defies credulity that a couple who spends significant periods of time apart has never discussed the cave rescue, or any of the topics related to this litigation, via some form of messaging.

elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity. Defendant further objects to Request No. 1 on the grounds that the Request is overly broad and unduly burdensome and seeks documents that are not proportional to the needs of the case. Subject to his General and Specific Objections, Defendant responds as follows: To the extent that such documents exist, are within Defendant's possession, custody, or control, and can be located after a reasonably diligent inquiry, Defendant will produce relevant, non-privileged documents responsive to this request, as Defendant understands it. (WD Ex. O).

**REQUEST FOR PRODUCTION NO. 7**: All documents and communications concerning or relating to any effort by you or your representative to verify the truthfulness or accuracy of the Defamatory Statements, whether before or after the Defamatory Statements were published.

<u>Musk's Responses and Objections to Request for Production No. 7</u>: Defendant incorporates his General Objections herein. Defendant further objects to Request No. 7 on the grounds that it seeks information that is outside of his possession, custody, or control. Defendant further objects to Request No. 7 on the grounds that it is vague and ambiguous with regard to the terms "representative," "verify," "accuracy," and "published." Defendant further objects to Request No. 7 as argumentative in that it requires the adoption of improper assumptions including that any statement referenced in this Request was defamatory. Defendant further objects to Request No. 7 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity. Defendant further objects to Request No. 7 on the grounds that the Request is overly broad and unduly burdensome and seeks documents that are not proportional to the needs of the case.

Subject to his General and Specific Objections, Defendant responds as follows:

To the extent that such documents exist, are within Defendant's possession, custody, or control, and can be located after a reasonably diligent inquiry, Defendant will produce relevant, non-privileged documents responsive to this request, as Defendant understands it.

(*Id.*).

**REQUEST FOR PRODUCTION NO. 23**: All documents and communications concerning or relating to your emails with Buzzfeed referenced in the Complaint, including the reason(s) you decided to send the emails.

Musk's Responses and Objections to Request for Production No. 23: Defendant incorporates his General Objections herein. Defendant further objects to Request No. 23 on the grounds that it seeks information that is outside of his possession, custody, or control. Defendant further objects to Request No. 23 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity. Defendant further objects to Request No. 23 on the grounds that the Request is overly broad and unduly burdensome and seeks documents that are not proportional to the needs of the case. Subject to his General and Specific Objections, Defendant responds as follows: To the extent that such documents exist, are within Defendant's possession, custody, or control, and can be located after a reasonably diligent inquiry, Defendant will produce relevant, non-privileged documents responsive to this request, as Defendant understands it.

(*Id.*).

**REQUEST FOR PRODUCTION NO. 24**: All documents and communications concerning or relating to any public relations analysis or strategy pertaining to the Defamatory Statements.

Musk's Responses and Objections to Request for Production No. 24: Defendant incorporates his General Objections herein. Defendant further objects to Request No. 24 on the grounds that it seeks information that is outside of his possession, custody, or control. Defendant further objects to Request No. 24 on the grounds that it is vague and ambiguous with regard to the terms "public relations analysis or strategy." Defendant further objects to Request No. 24 as argumentative in that it requires the adoption of improper assumptions including that any statement referenced in this Request was defamatory. Defendant further objects to Request No. 24 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity. Defendant further objects to Request No. 24 on the grounds that the Request is overly broad and unduly burdensome and seeks documents that are not proportional to the needs of the case. Subject to his General and Specific Objections, Defendant responds as follows: To the extent that such documents exist, are within Defendant's possession, custody, or control, and can be located after a reasonably diligent inquiry, Defendant will produce relevant, non-privileged documents responsive to this request, as Defendant understands it.

(*Id.*).

**REQUEST FOR PRODUCTION NO. 63**: All documents and communications concerning or relating to the Cave Rescue.

Musk's Response to Request for Production No. 63: Defendant incorporates his General Objections herein. Defendant further objects to Request No. 63 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff. Defendant further objects to Request No. 63 to the extent that it is redundant to requests for production propounded in Plaintiff's First Set of Requests for Production to Defendant Elon Musk. Defendant further objects to Request No. 63 to the extent that it seeks to elicit information subject

to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity. Defendant further objects to Request No. 63 on the grounds that the Request is overly broad and unduly burdensome and seeks documents that are not proportional to the needs of the case. Subject to his General and Specific Objections, Defendant responds as follows: To the extent any such documents or communications exist, Defendant has already produced all responsive materials in his possession, custody, or control based on a reasonable search and diligent inquiry. (*Id.*).

**REQUEST FOR PRODUCTION NO. 64**: All documents and communications concerning or relating to your role in designing, creating, and/or building the Tube.

Musk's Response to Request for Production No. 64: Defendant incorporates his General Objections herein. Defendant further objects to Request No. 64 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff. Defendant further objects to Request No. 64 to the extent that it is redundant to requests for production propounded in Plaintiff's First Set of Requests for Production to Defendant Elon Musk. Defendant further objects to Request No. 64 on the grounds that it is vague and ambiguous with regard to the terms "designing," "creating," and "building." Defendant further objects to Request No. 64 on the grounds that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity. Defendant further objects to Request No. 64 on the grounds that the Request is overly broad and unduly burdensome and seeks documents that are not proportional to the needs of the case. Subject to his General and Specific Objections, Defendant responds as follows: To the extent any such documents or communications

exist, Defendant has already produced all responsive materials in his possession, custody, or control based on a reasonable search and diligent inquiry.

(*Id.*).

## B.    Unsworth's Position

Musk respectfully requests that this Court issue an order pursuant to Federal Rule of Civil Procedure 37 compelling Musk to search his cell phone and its backups, (including on iCloud) and produce responsive documents.

Musk has not disclosed any information from his phone in response to any of Unsworth's requests for production of documents—which is to say that each of Musk's responses to Unsworth's seventy-four requests for production of documents may be incomplete.  Nevertheless, Unsworth listed six of his requests above to show that Musk is hiding documents and should have responded to the requests by disclosing his texts with Davis and Arnold, and more.  Musk has no excuse for failing to disclose responsive text messages.  Instead, the day after the third-party productions—when it became impossible to argue that Musk did not have responsive text messages, and Unsworth was on the eve of submitting his first stipulation for a motion to compel—Musk created the Certification that describes a search of his iCloud that was crafted to purposefully avoid uncovering responsive text messages. As described above and below, Musk has gone to great lengths to hide the information on his phone or its backups. And it appears that nothing short of a court order will make him comply with his discovery obligations.

First, on August 9, 2019, Musk's counsel falsely stated Musk changed phones and that no record of his prior phone was available. (WD ¶ 5).

Second, in his deposition on August 22, 2019, Musk testified that he destroyed his cell phone only a few ("maybe … three") months ago, (WD ¶ 6, Ex. D (313:20-314:13)), which would have been after this Court denied his Motion to Dismiss and discovery was starting, (ECF No. 34 (dated April 29, 2019)). Indeed, Musk is under various litigation holds in several lawsuits, (WD ¶ 9, Ex. F (31:1-18), and it strains

credulity that Musk's phone would not be backed up on iCloud and through other means.

Third, Musk also testified that his phone records are stored electronically and may have been backed up to his iCloud, (WD ¶ 6, Ex. D (315:8-18)). And Birchall testified on September 10, 2019, that there may have been texts between him and Musk regarding the Howard investigation, although he was not sure if that was the case, (WD ¶ 8 (Birchall Depo. 10:5-10:22)).  At this point, Musk's team should ceded to Unsworth's request that they search Musk's iCloud and produce responsive documents.

Fourth, instead of actually searching and producing Musk's responsive text messages, his lawyers vaguely stated that there was no responsive information; and, that somehow, Tesla, SpaceX, and The Boring Company's rote records custodian affidavits were sufficient to confirm that there was no responsive information. (*See, e.g.*, WD ¶ 7, Ex. A at 2).  Indeed, Musk's counsel stated repeatedly prior to the October 1 Certification, among other things: that "[t]here is nothing further on the cloud"; that "[t]he declarations[5] provided to you are more than sufficient and we have confirmed there is nothing further"; that "the IT Professional who confirmed you have everything signed a declaration"; and that Tesla, SpaceX, and The Boring Company's production "included a declaration and the SpaceX tech team who signed that declaration confirmed what I already stated, which is implicit in their declaration." (WD ¶ 7, Exs. A (pp. 2-3), B (p. 3)).  Yet, Tesla, SpaceX, and The Boring Company's affidavits were merely form records custodian certifications by third-parties; there was no indication that they possessed, controlled, or searched Musk's iCloud or phone images, and there was no indication that they even knew that Musk had destroyed his

---

[5] Musk's counsel consistently and incorrectly refers to notarized records affidavits as declarations.

cell phone and that his iCloud and images needed to be searched.  (WD Ex. G).[6]

Fifth , after conferring with Musk for more than a month and a half, Unsworth served Musk with a stipulation for a motion to compel, including after Unsworth uncovered a document in Tesla's end-of-discovery production in which Musk described a text form his girlfriend about press coverage of the tube. (WD ¶¶ 11-12, Exs. C (pp. 1, 6), H, I).

Sixth, after Unsworth sent over the stipulation for the motion, third-party witnesses started showing up at their depositions with relevant text messages between them and Musk that are indisputably responsive to Unsworth's requests for production of documents, including numbers 1, 23, 24, 63, and 64.  (WD ¶ 14, Exs. J, K, P).

Sixth, after serving the stipulation for the motion, Musk finally confirmed on October 2, and for the first time, that his counsel's August 9, 2019, representations were false; and that his phone is backed up through iCloud and images.  (WD Ex. N). Through the Certification, Musk also feigned an attempt to search his phone. But the search was calculated to avoid discovering responsive information and, indeed, failed to uncover any of the Musk text messages the third parties produced at their depositions.  (*See id.*).

The Certification does not purport to have searched Musk's iCloud for responsive documents or correspondence, but merely to have employed absurdly

---

[6] In fact, The Boring Company's records custodian affidavit was signed by Birchall as a representative of "Foundation Security," (WD Ex. G p. 1), yet Musk's counsel represented in meet and confer correspondence that "the SpaceX tech team who signed that declaration" confirmed that Musk's iCloud has been searched for responsive documents, (WD Ex. B p. 3). The records custodian affidavit signed by Birchall, not the SpaceX tech team, says absolutely nothing about iCloud, and appears to have been signed by Birchall on behalf of a security company called Foundation Security.  (WD Ex. G p. 1).  Before Musk sent The Boring Company's records custodian affidavit, Musk never disclosed the existence of "Foundation Security"— which appears to be a detective company for which Birchall (who spearheaded Musk's investigation into Unsworth) serves as the CEO.  (WD ¶ 10).

narrow search terms.  (*See id.*). Nor does it purport to have searched any of the preservation images of Musk's phone. For instance, Musk's iCloud was searched only for "James Howard" rather than "Howard" or "investigator" or "Jupiter," independently.  (*See id.*). To uncover a communication related to Howard's investigation, the text must have Howard's full name or all three of the words "Jupiter," "investig!," and "Unsworth" in one single text.  (*See id.*). To return responsive information about Musk's tube and Thailand efforts, a text message would have to satisfy the following incredibly defined parameters:  "(PR or publicity or publish! or market! or press) and ('rescue submarine' or submarine or 'rescue capsule' or capsule or 'rescue tube' or 'Thailand' or rescue)."  (*See id.*). Obvious terms such as "Mac," "Thai," "diver!" and "cave" are nowhere to be found. (*See id.*).

Given Musk's prior representations that he had destroyed his cell phone, his subsequent refusal to search his iCloud, his entirely-too-late search of his iCloud, and his new attempt to hide behind narrow search terms calculated to avoid revealing text messages regarding Unsworth, the investigation(s) into Unsworth, and Musk's efforts in Thailand (which he has repeatedly made an issue in this case), Plaintiff seeks a court order requiring Musk to produce documents responsive to any and all of Unsworth's seventy-four requests for production of documents that are revealed by searching his iCloud and other relevant images of his phone for the period between July 1, 2018, and September 30, 2018, using both (1) an eyes-on, text-by-text review for all correspondence with all contacts, and (2) a search using the following keywords:

| 1. Unsworth! | 2. Howard! | 3. Higgins! | 4. Pattaya |
|---|---|---|---|
| 5. Investig! | 6. Thai! | 7. Pod | 8. Tube |
| 9. Sub! | 10. Rescue | 11. Cave! | 12. Dive! |
| 13. Chiang | 14. Rai | 15. BuzzFeed | 16. Mac |
| 17. Stanton | 18. Tham | 19. Luang | 20. Rowena |

| 21.Consul | 22.Prime | 23.Minister | 24.Bangkok |
|---|---|---|---|
| 25.Off w/3 record | 26.Coach | 27.Soccer | 28.Apolog! |
| 29.Tweet | 30.Twitter | 31.Brickhouse | 32.Lin w/3 Wood |

This is necessary to ensure fairness and a complete factual record. In this litigation and in his motion for summary judgment, Musk has attempted to defend his conduct on the basis of actual malice by claiming that certain (false) information was relayed to him orally, (*see, e.g.*, ECF No. 58 at 7-8)—although it is now undisputed that nobody at any time told Musk that Unsworth was a pedophile, child rapist, or had a child bride, (*see, e.g.*, ECF No. 75 at 9-10). As a result, following Musk's and Birchall's depositions, Unsworth has repeatedly asked that Musk search his iCloud. (WD ¶ 7, Exs. A (pp. 1-3, 5, 13, 19, 26-28), B (pp. 1, 3), and C (pp. 1, 6)). Throughout the discovery period, Musk responded with blanket denials that correspondence exists on his iCloud, while refusing to affirmatively state that Musk's iCloud had been searched, when it was searched, or by whom. (WD ¶ 7, Exs. A (pp. 1-3, 5, 13, 19, 26-28), B (pp. 1, 3), and C (pp. 1, 6)). Now that discovery has expired, Musk has provided the Certification, which appears calculated to avoid production of relevant materials and likely an effort to avoid sanctions.

Musk will undoubtedly cast stones by arguing that Unsworth himself did not produce text messages with his significant other, Tik, and that Unsworth did not produce media from his Line chats. Tik testified that they were consistently together during the relevant period, and thus were not texting about the rescue or Musk's attacks. (WD Ex. Q (59:15-18, 61:3-62:5)). When queried as to any subject matter relevant to this lawsuit, Tik specifically testified that no relevant electronic communications exist, (*id.* (59:15-18)), despite Musk's misrepresentative claims to

the contrary, (WD Ex. A (p. 18); *see also* Ex. G (p. 3)).[7]  As for the Line chats*, just like Musk did with WhatsApp chats*, Unsworth produced the text of the chats, but faced technical difficulties producing the chats in a manner that embedded the emojis, photos, and videos.[8] (WD Ex. G (pp. 4-5)). None of this provides a basis for Musk to hide relevant text messages that indisputably exist.

Thus, in light of Musk's prior representations that his cell phone was wiped clean earlier this year *while litigation was pending*, and the subsequent revelation that it was backed up through iCloud and an image, Unsworth asks the Court to compel Musk to search his iCloud and phone images and then produce the responsive documents and correspondence, as requested herein.[9]

---

[7] Indeed, Musk's counsel disingenuously states he was told that Unsworth and his significant other "never communicated electronically," despite clear evidence to the contrary.

[8] In fact, unlike Musk who produced no such images, Unsworth produced the images associated with his WhatsApp chats. (WD Ex. G (pp. 4-5)).

[9] Rather than seeking a discovery master and/or an order compelling a forensic image of Musk's electronic storage, which Unsworth may well be entitled to in light of Musk's destruction of his cell phone, Unsworth has sought to compromise on this issue merely by requiring a written statement of the efforts undertaken to search for Musk's personal electronic records.  Further, Unsworth may choose to move for sanctions in the form of either striking Musk's Answer or for an adverse inference at trial in light of Musk's failure to even search his phone for responsive records until October 1, 2019, three weeks after discovery closed and two months before trial.

DATED:  October 22, 2019

Respectfully submitted,
L. LIN WOOD, P.C.

By ____/s/ Lin Wood_____

L. LIN WOOD, P.C.
L. Lin Wood (admitted *pro hac vice*)
lwood@linwoodlaw.com
Nicole J. Wade (admitted *pro hac vice*)
nwade@linwoodlaw.com
Jonathan D. Grunberg (admitted *pro hac vice*)
jgrunberg@linwoodlaw.com
G. Taylor Wilson (admitted *pro hac vice*)
twilson@linwoodlaw.com
1180 West Peachtree Street, Ste. 2040
Atlanta, Georgia 30309
404-891-1402
404-506-9111 (fax)

-and-

CHATHAM LAW GROUP
Robert Christopher Chatham
chris@chathamfirm.com
CA State Bar No. 240972
3109 W. Temple St.
Los Angeles, CA 90026
213-277-1800

-and-

WEISBART SPRINGER HAYES, LLP
Matt C. Wood (admitted *pro hac vice*)
mwood@wshlpp.com
212 Lavaca Street, Ste. 200
Austin, TX 78701
512-652-5780
512-682-2074 (fax)

*Attorneys for Plaintiff Vernon Unsworth*

DATED:  October 22, 2019                QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP


                                        By_____/s/ Alex B. Spiro_____
                                           Michael T. Lifrak (Bar No. 210846)
                                           michaellifrak@quinnemanuel.com
                                           Robert M. Schwartz (Bar No. 117166)
                                           robertschwartz@quinnemanuel.com
                                           Jeanine M. Zalduendo (Bar No. 243374)
                                           jeaninezalduendo@quinnemanuel.com
                                           865 South Figueroa Street, 10th Floor
                                           Los Angeles, California 90017-2543
                                           Telephone: (213) 443-3000

                                           Alex B. Spiro (admitted pro hac vice)
                                           alexspiro@quinnemanuel.com
                                           51 Madison Avenue, 22nd Floor
                                           New York, New York 10010
                                           Telephone: (212) 849-7000

                                           *Attorneys for Defendant Elon Musk*

Pursuant to L.R. 5-4.3.4(a)(2)(i), the
filer hereby attests that all signatories
listed, and on whose behalf this filing is
submitted, concur in the filing's content
and have authorized the filing.

  /s/*L. Lin Wood*