L. LIN WOOD, P.C.
L. Lin Wood (admitted *pro hac vice*)
lwood@linwoodlaw.com
Nicole J. Wade (admitted *pro hac vice*)
nwade@linwoodlaw.com
Jonathan D. Grunberg (admitted *pro hac vice*)
jgrunberg@linwoodlaw.com
G. Taylor Wilson (admitted *pro hac vice*)
twilson@linwoodlaw.com
1180 West Peachtree Street, Ste. 2040
Atlanta, Georgia 30309
404-891-1402
404-506-9111 (fax)

WEISBART SPRINGER HAYES, LLP    CHATHAM LAW GROUP
Matt C. Wood (admitted *pro hac vice*)  Robert Christopher Chatham
mwood@wshllp.com                 chris@chathamfirm.com
212 Lavaca Street, Ste. 200      CA State Bar No. 240972
Austin, TX 78701                 3109 W. Temple St.
512-652-5780                     Los Angeles, CA 90026
512-682-2074 (fax)               213-277-1800

Attorneys for Plaintiff
VERNON UNSWORTH

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH,<br><br>    Plaintiff,<br><br>v.<br><br>ELON MUSK,<br><br>    Defendant. | Case No. 2:18-cv-08048-SVW (JC)<br><br><br>**DECLARATION OF G. TAYLOR WILSON IN SUPPORT OF PLAINTIFF VERNON UNSWORTH'S MOTION TO COMPEL** |

## DECLARATION OF G. TAYLOR WILSON

I, G. Taylor Wilson, declare as follows:

1.     I am an attorney at the law firm of L. Lin Wood, P.C., counsel of record in this action for Plaintiff Vernon Unsworth.  I am a member in good standing of the State Bar of Georgia and am admitted *pro hac vice* to practice before this Court.  I have personal knowledge of the facts set forth in this declaration and, if called to testify, I would testify thereto.

2.     Counsel for the parties have met and conferred extensively regarding each of the issues identified in the parties' Second Joint Stipulation on Plaintiff's Motion to Compel, both telephonically and via e-mail.  No resolution has been reached.

3.     The parties have met and conferred regarding Musk's failure to produce material from his phone, including text messages, on August 9, 2019, September 13, 2019, and September 17, 2019, and via e-mail repeatedly.  During the September 13, 2019, call, Musk's counsel stated with respect to searching Musk's iCloud that they "will get anything missing 100%." True and correct copies of the parties' meet and confer e-mail and letter correspondence are attached hereto as Exhibits A, B, and C respectively.

4.     Musk has not produced a single text message by and between himself and any other person.

5.     As a result, during a telephonic meet and confer on August 9, 2019, Unsworth inquired and was told that Musk had since changed cell phones and his cell records were therefore no longer available.

6.     Subsequent to that meet and confer, Musk testified on August 22, 2019, that he had switched phones "[m]aybe … three months ago," that his cell phone is "owned by me," that his "retention policy" is that when his cell phones are destroyed, the "information is stored centrally," so that while his phones are "wiped" "the iMessage and email are stored centrally," and that he "think[s]" "iCloud, SpaceX,

1

and Tesla … would have preserved anything that was on [his] phone."  A true and correct copy of these excerpts from Musk's deposition is attached hereto as Exhibit D.

7.     As shown in Exhibits A (pp. 1-3, 5, 13, 19, 26-28), B (pp. 1, 3), and C (pp. 1, 6), Unsworth's counsel repeatedly requested that Musk search his cell phone and iCloud, produce responsive documents, and disclose what has been done to execute the search—all to no avail. Musk's counsel refused to state what steps were taken, if any, to search the iCloud, when the search was conducted, or how the search was conducted.  Instead, Musk's counsel simply stated that no responsive documents exist and otherwise pointed to form records custodian affidavits of third parties that do not reference the issue in any way.

8.     Birchall also testified there "[l]ikely may have been some texts" between him and Musk regarding Howard's investigation, but he doesn't "actually know the answer" as to whether that is the case.  A true and correct copy of excerpts from Birchall's deposition is attached hereto as Exhibit E.

9.     Sam Teller, who worked for Musk, testified that Musk would likely have been told he was under litigation holds during the time period from June to September of 2018, that he had no reason to believe Musk wouldn't comply with litigation holds, that Musk did not periodically discard his cell phones, and that he believed Musk would backup his cell phone. A true and correct copy of excerpts from Teller's deposition is attached hereto as Exhibit F.

10.    True and correct copies of the records custodian affidavits produced by Tesla, SpaceX, and The Boring Company in response to Unsworth's document subpoenas are attached hereto as Exhibit G. The affidavit on behalf of The Boring Company was signed by Jared Birchall, who swore he was employed by Foundation Security.  Musk never disclosed the existence of Foundation Security until providing this records custodian affidavit at the close of discovery.  It appears that Birchall is the CEO of Foundation Security, which appears to be "a detective and armored car

services company." *See* https://slate.com/technology/2018/08/why-elon-musks-companies-arent-melting-down-even-if-he-is.html.

11.    With less than one week left in the discovery period, on September 11, 2019, Tesla produced an email chain that included an email form Musk in which he described a text message his girlfriend sent him about negative press regarding the tube. A true and correct copy of said email is attached hereto as Exhibit C (pp. 1, 6). The text from his girlfriend still has not been produced.

12.    Given Musk's refusal to disclose his text messages or what measures he has taken to search his iCloud, Unsworth drafted a stipulation for a motion to compel regarding that issue, as well as other discovery issues. A true and correct copy of Unsworth's proposed portion of the stipulation is attached hereto as. Exhibit H.

13.    On September 25, 2019, Unsworth's counsel emailed his portion of the draft stipulation to Musk's counsel. A true and correct copy of said email is attached hereto as Exhibit I.

14.    On October 1, 2019, Unsworth deposed third-party witnesses Steve Davis and Dave Arnold, who minutes before or during their depositions produced several text messages with Musk—marking the first time in this matter that any of Musk's text messages were produced. A true and correct copy of Davis' text messages with Musk is attached hereto as Exhibit J, and a true and correct copy of Arnold's text messages with Musk is attached hereto as Exhibit K.

15.    On October 2, 2019, Musk emailed Unsworth with his portion of the stipulation for Unsworth's motion to compel. A true and correct copy of said email is attached hereto Exhibit L, and a true and correct copy of Musk's portion of the stipulation is attached hereto as Exhibit M.

16.    On October 2, 2019, Musk also provided Unsworth with an iCloud Search Certification ("Certification"), dated October 1, 2019, which is the first time Musk searched a backup of his cell phone in connection with this Matter—although

3

that search used limited terms, and resulted in Musk not disclosing any text messages or other documents. A true and correct copy of the Certification is attached hereto as Exhibit N.  The Certification stated that Musk's cell phones were backed up through iCloud and images, and then wiped clean and stored or destroyed.

17.    Based on the Certification, Musk unilaterally decreed that he "resolved" the dispute with Unsworth over Musk's cell phone and its backups. *See* Exhibit N p. 1 n.1

18.    A true a correct copy of Musk's responses to Unsworth's requests for production 1, 7, 23, 24, 63, and 64 is attached hereto as Exhibit O.

19.    A true and correct copy of the scheduling orders in this case, with the referenced joint stipulations of the parties, is attached hereto as Exhibit P.

20.    A true and correct copy of an excerpt from the deposition testimony of Unsworth's significant other, 'Tik' Woranan Ratrawiphukkun, is attached hereto as Exhibit Q.

I declare under penalty of perjury under the laws of the State of Georgia and the United States that the foregoing is true and correct and that this document was executed in Atlanta, Georgia.

Dated:  October 13, 2019            **L. LIN WOOD, P.C.**

By: */s/G. Taylor Wilson*
G. Taylor Wilson

4

# EXHIBIT A

# EXHIBIT A

**Taylor Wilson**

| | |
|---|---|
| **From:** | Lin Wood |
| **Sent:** | Tuesday, September 24, 2019 12:29 AM |
| **To:** | Alex Spiro |
| **Cc:** | Robert Schwartz; Alex Bergjans; Jeanine Zalduendo; Matt Wood; Chris Chatham; Kimmy Hart Bennett; Taylor Wilson; Jonathan Grunberg; Mark Stephens, CBE; Adam Fellows; Nicole Wade; Michael Lifrak |
| **Subject:** | Re: UK and Wales Damage Claim |

Alex,

I want the name of the investigator who provided the birth certificate to Birchall/Brickhouse. Please provide the privilege log without further delay.

One more time - I don't represent Tik just like you don't represent any of Musk's "wives." And like me, Tik does not know the identity of the investigator who provided her birth certificate to Birchall/Brickhouse.

I will review the iCloud declaration you referenced. I just don't recall seeing it. Will get back to you on that one after further review. Who was the declarant?

I think Ms. Glover has just a little more knowledge of this matter than merely being aware of the BuzzFeed article.

Talk tomorrow. You are making me work too hard. Now I know why your firm wins 88% of the time. You work your opponents to death delaying disclosure and production of relevant information.  But we will get there.

Lin

P.S. I made sure not to use any exclamation marks in this email.

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Sep 23, 2019, at 8:33 PM, Alex Spiro <alexspiro@quinnemanuel.com> wrote:

> I understand your request and do not believe it to be well founded but I will respond substantively in due course. Given that I'm dealing with emails with exclamation points that recite timestamps of previous emails I'm trying to just get you the document you requested (even though given she is your client's "wife" one would think you would have access to it).
>
> (323) 430-1160 is teller number.

1

Ex. A 0006

I think we are getting circular with this icloud conversation. While musk said it is possible that something was saved on the cloud, the IT professional who confirmed you have everything signed a declaration and I re-confirmed. There is nothing further.

As to Ms Glover, in the minutes between our emails, I still do not have an update. I understand that she is aware of the buzzfeed article as are lots of other people as I understand your expert to be saying. I don't think that requires her to be on some list.

Alex

Sent from my BlackBerry – the most secure mobile device

**From:** lwood@linwoodlaw.com
**Sent:** September 23, 2019 8:16 PM
**To:** alexspiro@quinnemanuel.com
**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com; jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.com; nwade@linwoodlaw.com; michaellifrak@quinnemanuel.com
**Subject:** Re: UK and Wales Damage Claim

Thanks for the follow-up, Alex.

I still insist that Musk provide a privilege log with regard to the document to identify the source and relevant dates. It now appears that Musk conducted an investigation through counsel and that information should have been disclosed or a privilege log submitted in response to Mr. Unsworth's initial written interrogatories and document requests. There is now a legitimate question of applicability of, and possible waiver of, the work product protection, if any, resulting from the failure to timely produce the document and identity the source(s).

Mr. Unsworth is entitled to the identify of the source of the document provided to Birchall/Brickhouse and for Musk to confirm whether another investigation was conducted through counsel. His discovery responses only identified James Howard in response to the requests regarding any investigation. We can assess whether this information is protected after we receive and review the privilege log. A supplemental and amended response to Musk's discovery responses is also required under these circumstances. Please accept this email to serve as Mr. Unsworth's demand for supplementation of Musk's responses.

I accept your representation that Birchall/Brickhouse was not involved in the WhatsApp chat. All I need is confirmation of the phone number used by Teller in that conversation if you don't mind providing it. I know you provided me with a cell number for Teller when you initially told me to locate him myself, but I am unclear as to whether he had another phone that may have been used in the WhatsApp discussions.

I do not recall any declarations regarding the search of Musk's iCloud account. If I missed something in that regard, let me know. Otherwise, in light of Musk's periodic destruction of his cell phones, this search is reasonable and necessary and I must insist on the detailed description of the search efforts as set forth in my earlier email.

I contend that Ms. Glover should have been identified months ago in response to Mr. Unsworth's initial discovery. There are other witnesses who were also not timely identified. The requests were not limited to identifying "trial" witnesses, rather they were framed to require identification of all witnesses with

Ex. A 0007

"relevant" knowledge. I now know that Ms. Glover had knowledge of at least the BuzzFeed article, Musk's emails to Ryan Mac, and Musk's media strategy regarding same, if not other relevant issues.

Given your agreement to cover the expense of Mr. C's conference room for the September 30 and October 1 depositions (and lunch!), please allow this email to serve as my agreement and amendment to the notices as to the location for those depositions.

Let me know what you propose regarding Ms. Glover's deposition.

You did a good job for the Dawgs. Not so much for the Falcons.

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Sep 23, 2019, at 7:30 PM, Alex Spiro <alexspiro@quinnemanuel.com> wrote:

> Lin-
>
> We will provide the document but maintain that the document came through the work of a lawyer, was done in anticipation of litigation, is protected by attorney-work product, and is not discoverable.
>
> There is nothing further on the cloud. The declarations provided to you are more than sufficient and we have confirmed there is nothing further.
>
> Sam teller name is identified in the chat. That was my point in saying that if you overlay them you can see that. I was working towards being helpful there by doing exactly that. Birchall number doesn't appear.
>
> Yes, we are covering Mr c's and of course you got lunch and we will speak to Ms. Glover and revert.
>
> Alex
>
> Sent from my BlackBerry - the most secure mobile device
>
> **From:** lwood@linwoodlaw.com
> **Sent:** September 23, 2019 6:10 PM
> **To:** alexspiro@quinnemanuel.com

3

Ex. A 0008

**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.
mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com;
jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.com;
nwade@linwoodlaw.com; michaellifrak@quinnemanuel.com
**Subject:** RE: UK and Wales Damage Claim

[EXTERNAL EMAIL]

Alex,


Thank you for your email received at 5:40 p.m. ET today. Prior to serving you
tomorrow with the stipulation required to initiate the motion to compel
process, I would urge that you reconsider your position as follows:


1.  Musk continues to refuse to produce Tik's birth certificate as
    described in the communications between Birchall/Brickhouse and
    Howard-Higgins and has refused to identify the source(s) who
    provided the birth certificate to Birchall/Brickhouse. Today, you claim
    the source was a lawyer and that the information is protected by the
    work product doctrine. You have failed to provide me with a privilege
    log per my request with respect to this information. As you know, the
    work product doctrine does not generally protect from discovery
    the factual information obtained from an investigation conducted by
    a third party at the request of an attorney. "It is generally accepted
    that the 'work product doctrine does not protect against the
    disclosure of facts or the identity of persons from whom the facts are
    learned.'" *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco
    Systems, Inc.* 2005 WL 1459555, at *4 (N.D. Cal., June 21, 2005).

In an effort to continue working to resolve this issue, I requested yesterday a
detailed privilege log from Musk in order to assess the claim of privilege or
work product protection (which might require deposing the source). Musk
has failed to provide a privilege log. Your obligation to do so is clear under
federal law. "Federal Rule of Civil Procedure 26(b)(5) provides that '[w]hen a
party withholds information otherwise discoverable by claiming that the
information is privileged or subject to protection as trial-preparation
material, the party must: ... (i) expressly make the claim; and ... (ii) describe
the nature of the documents, communications, or tangible things not
produced or disclosed ... in a manner that, without revealing information
itself privileged or protected, will enable other parties to assess the claim.' ...
A party's '[]failure to provide sufficient information may constitute a waiver
of the privilege.'" *Friends of Hope Valley v. Frederick Co.*, 268 F.R.D. 643, 650
(E.D. Cal. 2010). "A judge of this court has stated that '[t]he requisite detail
for inclusion in a privilege log consists of [1] a description of responsive
material withheld, [2] the identity and position of its author, [3] the date it

4

was written, [4] the identity and position of all addressees and recipients, [5] the material's present location, [6] and specific reasons for its being withheld, including the privilege invoked and grounds thereof.'" *Id.* at 650-51.

2. I have also questioned the good faith of the efforts by Musk to search his iCloud backup account for additional responsive texts and emails and in an effort to continue to working to resolve this issue, I requested that you provide me in writing with a reasonably detailed description of the actual efforts undertaken to comply with this relevant request (which would include, at a minimum, the search terms, date of search, the identity of the individual(s) conducting the search). Musk has not responded to this request.

3. Finally, your response to my requests that Musk identify by name the individuals on the WhatsApp chain have been met with you telling me to overlay the documents with phone numbers onto the redacted chat discussion. This process does nothing to assist Mr. Unsworth in ascertaining the identity of all individuals involved in the chat discussions. In one last effort to compromise and resolve this dispute, would you please confirm that Sam Teller and Jared Birchall were participants in the chat discussions and identify the phone numbers they used for the chat session on the documents previously produced regarding the chat discussion.

Since I plan to serve the stipulation tomorrow afternoon so there is still time for Musk to comply with his discovery obligations without forcing the Court to resolve the issues.

Regarding the location for the September 30 and October 1 depositions, Veritext does not charge for the use of its conference room in LA. I am unwilling to incur an unnecessary expense to my client. If you are willing to pay for the use of the facilities at Mr. C's, let me know. Otherwise, we will proceed per the Notices at Veritext's LA offices.

It is my understanding that Ms. Glover was served with her subpoena this morning. If you wish to confer with me on another date for her deposition, I am happy to discuss provided we can accomplish her deposition on a convenient date prior to October 11.

Thanks.

Ex. A 0010

Lin

L. Lin Wood

L. LIN WOOD, P.C.

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com

**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**

**From:** Alex Spiro <alexspiro@quinnemanuel.com>
**Sent:** Monday, September 23, 2019 5:40 PM
**To:** Lin Wood <lwood@linwoodlaw.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Matt Wood <mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>; Adam Fellows

Ex. A 0011

<Adam.Fellows@howardkennedy.com>; Nicole Wade <nwade@linwoodlaw.com>;
Michael Lifrak <michaellifrak@quinnemanuel.com>
**Subject:** Re: UK and Wales Damage Claim

Lin-

The information came through the work of a lawyer, was done in anticipation of
litigation, is protected by attorney-work product, and is not discoverable.

As I indicated we already took care of the Mr c reservation so that is all set and I'll follow
up with Ms. Glover.

There was also no failure to identify Ms. Glover. I have already explained that you
should not take my not responding to a given point in an email as some indication I
agree with you but since I've heard this refrain a lot, I am going to respond this time. We
had no intention to call her as a witness so we did not disclose her, nor did we or do we
have any reason to think she has relevant information.

Alex

Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com

**Sent:** September 22, 2019 3:22 PM

**To:** alexspiro@quinnemanuel.com

**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.
mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com;
jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.com;
nwade@linwoodlaw.com; michaellifrak@quinnemanuel.com

**Subject:** Re: UK and Wales Damage Claim

Alex,

Ex. A 0012

I am going to make an exception to my Saturday and Sunday "off the clock" just for you, Alex.

A claim of "privilege" to the production of Tik's birth certificate is frivolous and in bad faith. By definition and description, the birth certificate cannot be privileged. Nor is the identity of the source or the date it was received and by whom. I demand that Musk submit a privilege log tomorrow by Noon ET that provides the information required required for Plaintiff to assess and challenge the assertion of privilege. It is beginning to appear that Musk engaged in another investigation of Mr. Unsworth that he may have hidden during discovery. I hope that does not prove to be the case but if it does, Plaintiff will move for sanctions. This issue can be better assessed when we receive his privilege log tomorrow.

If you are willing to pay for the cost of the conference room at Mr. C's on September 30 and October 1, I will agree to change the location of the 3 depositions for the convenience of your witnesses. Otherwise, we will plan to proceed at the Veritext offices as set forth in the Notices.

If you commit in writing to making Ms. Glover available for her deposition on a convenient date prior to October 11, I will amend the deposition notice and withdraw the subpoena. Otherwise, Plaintiff will proceed with her deposition as presently noticed on October 8. Musk failed to timely identify her and has also failed to provide her home address and contact number. So we have proceeded in good faith with setting her deposition by subpoena.

Regarding all other issues, my Friday emails were very clear and I stand by the requests, demands, statements, and deadlines set forth therein.

Now I will return to cheering for the Atlanta Falcons and urge you to also "Rise Up!" They need all the help they can get!

Thanks.

Lin

L. Lin Wood"

L. LIN WOOD, P.C.

Ex. A 0013

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com


Sent from my iPhone


On Sep 22, 2019, at 2:06 PM, Alex Spiro <alexspiro@quinnemanuel.com> wrote:

Lin -


We received your deposition notices. As to the three witnesses who we
agreed to produce outside the discovery period and who are all flying in
for the depositions, we have previously arranged and scheduled and
reserved Mr. C's for those depositions. We have confirmed that there
will be no timing issue (the room is ours without any time limit) so there
will be no concern and nothing further you need to reserve.


As for Ms. Glover, I assume from your depo notice she lives in Virginia?
Is that a holding date or have you confirmed that the date works for
both you and her? Just want to understand so I can check schedule and
arrange.


As for the birth certificate, we have reached the conclusion it is
privileged and so we are not providing it.


As for the whatsapp chat, I assume you overlayed the two chats
together and you will see that almost all numbers are identified. I was
able to identify the 310 (previously unidentified #) as Chris bowman.

9

I'm not sure I follow your most recent email (other than the Georgia game part- congrats). Can you explain to me what else you think you are missing?

Alex

Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com

**Sent:** September 20, 2019 9:29 PM

**To:** alexspiro@quinnemanuel.com

**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinne mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com; jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.co nwade@linwoodlaw.com; michaellifrak@quinnemanuel.com

**Subject:** RE: UK and Wales Damage Claim

[EXTERNAL EMAIL]

_____

Alex,

I stand by and reiterate each and every one of my requests, statements and deadlines as set forth in my email sent today at 7:00 p.m. with one exception: I accept your statement regarding the AIG reservation of rights and withdraw Plaintiff's request for the AIG communication(s). On every other point, Musk has not complied with his discovery obligations as I set forth in my 7:00 p.m. email. I continue to demand and expect a fulsome response and production to Plaintiff's requests by Monday at 4:30 p.m. Your 7:52 p.m. email is wholly unacceptable as a reasonable response with the sole exception of the AIG issue.

Supplementing my 7:00 p.m. email, I reiterate that we do not represent Tik and you have known that to be the case for

Ex. A 0015

months. We accommodated your request about the photos because you did raise that request at her deposition. Our efforts to obtain the photos and provide them to you were undertaken voluntarily on our part in a "beyond the call of duty" effort to cooperate with you (note that I did not respond to your request by telling you to obtain the photos yourself from Tik, a resident of Thailand). We are under no legal or professional obligation whatsoever to respond to any of your additional issues/disputes regarding Tik and we will not do so.

Further, I do not understand the basis of your email request for Mr. Unsworth's cell phone number and provider. I am happy to review any basis you provide me in writing that supports the validity of your request and I will respond to you in writing. With all due respect, I seriously doubt you would provide me with Musk's numerous cell phone numbers and providers since June 1, 2018 in response to an informal and untimely request on my part, so for the life of me, I do not understand why you would expect me to do so for you. But I invite you to convince me otherwise in writing. Just do not expect a response from me until Monday morning at the earliest because absent legal emergencies, I am "off the clock" this weekend on Saturday and Sunday.

Additionally, to supplement my earlier email to address you claims raised in your 7:52 p.m. email - Plaintiff did in fact timely seek discovery of the birth certificate when we asked for all documents concerning any investigations into Mr. Unsworth. I timely asked Birchall to identity the source of the birth certificate at his deposition. I was very surprised that he did not recall the name but he stated under oath that he could easily ascertain the identity of the person so I did not expect Musk to unreasonably refuse to provide it. The birth certificate should have been produced weeks ago and the identity of the source should have been disclosed as early as initial disclosures. This has now become a well-established pattern by Musk in this case. As one example of many, discovery games were played with respect to Sam Teller - Teller should have been identified in initial disclosures and/or interrogatory responses. When I finally learned of Teller's involvement from a timely review of the documents, I requested his deposition. Initially, you stated that you could not contact him and told me to find him myself and arrange for his deposition myself before finally agreeing to produce him very late in the discovery process. With your experience, you must realize that Musk's

tactics will not deter or prevent Mr. Unsworth from developing
a full factual record in this case.

Finally, in response to your statement, "We will continue to
meet and confer and aim to be helpful," I will borrow a Spiro
line: I disagree with your characterization.

Once again, have a great weekend and Go Dawgs!

Lin

L. Lin Wood

L. LIN WOOD, P.C.

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com

**NOTICE: This communication may contain privileged or
other confidential information. If you are not the intended
recipient, or believe that you have received this
communication in error, please do not print, copy,
retransmit, disseminate, or otherwise use the information.
Also, please indicate to the sender that you have received
this communication in error, and delete the copy you
received. Thank you.**

Ex. A 0017

**From:** Alex Spiro <alexspiro@quinnemanuel.com>
**Sent:** Friday, September 20, 2019 7:52 PM
**To:** Lin Wood <lwood@linwoodlaw.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex
Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo
<jeaninezalduendo@quinnemanuel.com>; Matt Wood
<mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>;
Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson
<twilson@linwoodlaw.com>; Jonathan Grunberg
<jgrunberg@linwoodlaw.com>; Mark Stephens, CBE
<Mark.Stephens@howardkennedy.com>; Adam Fellows
<Adam.Fellows@howardkennedy.com>; Nicole Wade
<nwade@linwoodlaw.com>; Michael Lifrak
<michaellifrak@quinnemanuel.com>
**Subject:** Re: UK and Wales Damage Claim

Lin-

I disagree with your characterizations again. I said on the last call that we
would talk again on Friday or early next week. For some reason, you chose to
interpret that as Friday. Regardless, I have been responsive to each of your
lengthy requests outside of the regular course of discovery and have made a
good-faith effort to answer all of your questions. I will do so again as to the
issues you raise in your latest email in order:

You are reading too much into my comment that "I" can't know one way or
another that they are the same person. That's all I said. When we have asked
for communications involving him, we have assumed that they are one in the
same, but I don't personally know that.

As to Ms Glover, I'm not sure why this is so controversial. If you aren't happy
that I haven't been able to meet all of your demands in 72 hours then you are
free to reach out to her on dates and locations and confer with us. And if I
reach her vice versa.

We have searched all the locations we discussed, and there are no more
responsive documents.

As to Tik and Mr. Unsworth, the "sworn deposition testimony" was that they
had other communications, which you have not yet provided. Are you
providing their phone numbers and carriers, as I requested?

AIG has reserved rights.

There is no basis for you to obtain any further information from us about Tik's
birth certificate. If you had one, you should have pursued it during discovery.

Thank you for producing the pictures of your client's feet. Far from being
"ridiculously irrelevant," they relate directly to your client's involvement in the
rescue, and they should have been produced long ago.

Ex. A 0018

We will continue to meet and confer and aim to be helpful.


Alex


Sent from my BlackBerry – the most secure mobile device


**From:** lwood@linwoodlaw.com

**Sent:** September 20, 2019 7:01 PM

**To:** alexspiro@quinnemanuel.com

**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinne mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com; jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.co nwade@linwoodlaw.com; michaellifrak@quinnemanuel.com

**Subject:** RE: UK and Wales Damage Claim


[EXTERNAL EMAIL]


Alex,


We held a telephone meet and confer on Tuesday at 2:30 p.m. ET. At 4:30 p.m. ET that day, I sent an email to you stating, among other things, "We agreed to speak again on Friday on the status of these issues. Let me know what time works best for you." I am 100% certain that we agreed on Tuesday to confer today; however, I certainly cannot force you to honor your discovery agreements with opposing counsel. What I can do is insist that future meet and confers be in written exchanges only between counsel or in the unlikely event that a telephone conference is necessary, that the conference be attended and transcribed by a certified court reporter. So, plan on one of those two options going forward.

Ex. A 0019

With regard to our discussions about Mr. Howard-Higgins, I am again 100% certain with regard to your admission as to his identity. But since you disagree with my characterization of our meet and confer on that issue, we can easily resolve it as follows: if Musk contends that James Howard and James Howard-Higgins are different people, please provide me pursuant to Musk's discovery obligations with the last known address and telephone number for the "James Howard-Higgins" that you identified as relevant to this case when you served Mr. Unsworth with a subpoena for all communications with "James Howard-Higgins." Please provide this information by Monday at 4:30 p.m. ET (which is the deadline you unilaterally imposed on Mr. Unsworth today for production of the additional documents we agreed to produce during previous meet and confer conferences).

We have ourselves, as you suggested, addressed Ms. Glover's deposition today so your refusal to accept my effort to cooperate with you and reasonably accommodate the witness (since she is one of Musk's PR consultants) is now irrelevant.

I question the good faith of Musk's efforts to identify the identities of the individuals whose phone numbers appear on the WhatsApp text chain produced by Musk. We will address that issue at the appropriate time with the Court.

I also question the good faith of Mr. Musk's efforts upon which you base your statement, "There is nothing further on any production re any question below in terms of communications of Mr musk or Mr birchall bc none of the things you request exist. There is nothing on cloud. There are no further documents or agreements or communications with the investigator." Your statement is contrary to the sworn testimony of Musk and Birchall. I request that with regard to Musk's efforts to search and produce these documents, you promptly provide me in writing with a reasonably detailed description of the actual efforts undertaken to comply with these relevant requests. If necessary, we will also address this issue at the appropriate time with the Court.

With respect to your request for additional documents related to relevant electronic communications between Mr. Unsworth and Tik, I refer you to their sworn deposition testimony which was unequivocal, accurate and fully responds to your request.

I think we can in good faith resolve the dispute over the production of a copy of the recent communication(s) to AIG. Plaintiff is clearly entitled to discover all insurance policies applicable to the claims set forth in the Complaint. Given Musk's sworn testimony that he is financially illiquid, Mr. Unsworth is entitled to know whether AIG has accepted coverage of the claims, denied coverage of the claims, or has reserved its rights to contest coverage of the claims. This information regarding AIG is also relevant to formulating voir dire questions for jury selection. If you will simply provide me with an answer to that question regarding AIG's position on coverage, there will be no need to address the AIG communication issue with the Court.

The information regarding the identity of the individual or firm who allegedly provided Birchall with a copy of Tik's birth certificate and the production of the birth certificate received by Birchall is unquestionably relevant and reasonably calculated to lead to the discovery of admissible evidence on the issues of falsity and actual malice – that is the legal basis for the requests and it is supported by the factual record developed in the case to date. This discovery should have been provided by Musk months ago in his initial disclosures and his responses to Plaintiff's interrogatories and document requests. No legitimate claim of "privilege" can be asserted by Musk to this information. Please provide this information and the birth certificate by Monday at 4:30 p.m. ET.

In closing, I note that I did not demand that you provide me with the legal basis for your repeated requests to receive copies of the photographs of Mr. Unsworth's feet. Despite the fact that we do not represent Tik, Plaintiff obtained and produced today the photographs of Mr. Unsworth's feet per your requests without forcing you to waste time explaining the legal basis for supporting discovery of such a ridiculously irrelevant request by Musk.

I will look forward to hearing from you in writing by Monday at 4:30 p.m. ET and to receiving Musk's supplemental document production by that same deadline.

Have a great weekend and pull for the UGA Dawgs to defeat Notre Dame!

Lin

L. Lin Wood

L. LIN WOOD, P.C.

Ex. A 0021

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com


**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**


**From:** Alex Spiro <alexspiro@quinnemanuel.com>
**Sent:** Friday, September 20, 2019 3:10 PM
**To:** Lin Wood <lwood@linwoodlaw.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Matt Wood <mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>; Adam Fellows <Adam.Fellows@howardkennedy.com>; Nicole Wade <nwade@linwoodlaw.com>; Michael Lifrak <michaellifrak@quinnemanuel.com>
**Subject:** Re: UK and Wales Damage Claim


Lin-

Ex. A 0022

I never agreed to a call Friday and you know that.

Where are you with producing the photos from tiks phone? And the corrected texts and everything else from Mr unsworth's phone? Are you all still taking the position that tik and unsworth never communicated electronically? Please provide their cell phone numbers and carriers.

There is nothing further on any production re any question below in terms of communications of Mr musk or Mr birchall bc none of the things you request exist. There is nothing on cloud. There are no further documents or agreements or communications with the investigator.

If you want to provide a legal basis to request the birth certificate go ahead. I will consider it. We are not providing communications to AIG. If you have a question ask it.

Glover is your witness. You need not wait on me and I have no obligation to produce her. If and when I'm able to, I will let you know. We feel she is irrelevant.

I have been able to identify no one further on whatsapp chat.

I would like the answers to unsworth's productions by 430 est Monday.

Thanks

Alex


Sent from my BlackBerry - the most secure mobile device



**From:** lwood@linwoodlaw.com

**Sent:** September 20, 2019 10:35 AM

**To:** alexspiro@quinnemanuel.com

**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinne mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com; jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.co nwade@linwoodlaw.com; michaellifrak@quinnemanuel.com

**Subject:** Re: UK and Wales Damage Claim



Alex,

Ex. A 0023

Mr. Birchall agreed to identify the name of the individual who provided him
with a copy of Tik's birth certificate. That certificate must also be produced. He
also testified that there may be additional texts related to the investigator and
with Musk. He also testified there may be a final report from Howard-Higgins.
Your email answers exactly none of these issues.

I extended you the courtesy of obtaining convenient dates from Ms. Julianna
Glover. Your email is silent as to that issue.

==We have requested that the iCloud backup of Musk emails and texts be
searched. Again your email is silent on that issue.==

You committed to providing us the identities of the individuals whose phone
numbers appear on the WhatsApp documents. No names have been provided.

We requested the employment agreement with Howard-Higgins. Does one
exist and if so, will you produce it without further delay?

We requested the AIG notice if claim correspondence. Your email is again silent
in this issue.

We did agree to confer on Friday (today) in these issues. I appreciate your
agreement to provide Arnold for a deposition on October 1. We will depose
him on that date.

Please promptly live up to your agreement in the Tuesday meet and confer.
There is no reason to involve the Court on these issues. Please do not force us
to do so.

Thanks.

Lin

L. Lin Wood

Ex. A 0024

L. LIN WOOD, P.C.

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com


Sent from my iPhone


On Sep 20, 2019, at 10:08 AM, Alex Spiro <alexspiro@quinnemanuel.com> wrote:

Lin- To answer your first question of what I meant when I said we disagree it means we disagree with what you wrote.


There are no additional documents from birchall and Arnold can be available on the 1st in LA. I have no further updates, never agreed to a call Friday date certain, and there is no need for a call. We can speak next week.


Alex


Sent from my BlackBerry - the most secure mobile device


**From:** lwood@linwoodlaw.com

**Sent:** September 20, 2019 9:08 AM

**To:** alexspiro@quinnemanuel.com

**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinne mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com;

20

Ex. A 0025

jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.co
nwade@linwoodlaw.com; michaellifrak@quinnemanuel.com

**Subject:** Re: UK and Wales Damage Claim

Alex,

Would you be kind enough to provide us with options for the time of the meet
and confer to be held this afternoon per our discussion on Tuesday?

Lin

L. Lin Wood

L. LIN WOOD, P.C.

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Sep 19, 2019, at 6:01 PM, Lin Wood <lwood@linwoodlaw.com> wrote:

Alex,

I never hear back from you about what the disagreement was regarding my
email about the pre-trial stipulation.

Ex. A 0026

Nonetheless, what time do you want to conduct the telephone meet and
confer conference tomorrow regarding the remaining discovery issues we
discussed on Tuesday? Anytime after 2 pm ET works for me.

Let me hear from you.

Thanks.

Lin

L. Lin Wood

L. LIN WOOD, P.C.

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Sep 18, 2019, at 10:55 AM, Alex Spiro <alexspiro@quinnemanuel.com>
wrote:

We disagree

Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com

22

Ex. A 0027

**Sent:** September 17, 2019 10:26 PM

**To:** alexspiro@quinnemanuel.com

**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinne mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com; jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.co nwade@linwoodlaw.com; michaellifrak@quinnemanuel.com

**Subject:** UK and Wales Damage Claim

[EXTERNAL EMAIL]

Alex,

Today, you communicated a firm "no" on whether Musk would consent to a stipulation in the pre-trial order that Mr. Unsworth was withdrawing his exception to damages suffered in the UK and Wales (Compl. ¶¶ 108-109.)

As you will recall, I first communicated the likelihood that Mr. Unsworth would be withdrawing Paragraphs 108 and 109 on August 14 during his deposition—the very first deposition in this case. I did so on the record, stating that Musk could examine Mr. Unsworth regarding damages suffered in England and Wales.  (Unsworth Dep. at 245:18-23).

On September 3, I sent you and your team an email confirming that Mr. Unsworth would in fact be withdrawing the paragraphs  and asked if you would consent to a pre-trial stipulation. Since September 3, we have discussed my effort to seek consent on several occasions, including exchanges by email and in person. Initially, you wanted to know if Mr. Unsworth would formally withdraw his action in the UK if you consented to the stipulation. I promptly responded in the affirmative. You later asked if Mr. Unsworth would agree that he would not file another lawsuit against Musk in another jurisdiction if you consented to the stipulation. I again promptly responded in the affirmative.

Ex. A 0028

I was disappointed with your "no" today because I believe my request for the stipulation is entirely reasonable, is consistent with the Federal Rules, and would avoid burdening the Court with resolving the issue at the pre-trial hearing. I can discern no prejudice to your client by consenting to the stipulation; to the contrary, Musk benefits from an agreement to dismiss of the UK action and the covenant not to sue in other jurisdictions. During our discussions, I asked what prejudice (if any) you thought might result from consenting to the pre-trial stipulation. You have not identified any such prejudice. You timely received our expert reports. Consistent with our position regarding the UK and Wales, the damage calculations included the UK and Wales. Obviously, you are still free to identify a rebuttal expert on those damage calculations. Despite your right of rebuttal, if you feel that there is any additional reasonable and necessary discovery Musk wishes to undertake on UK and Wales damages prior to the submissions of our respective portions of the proposed pre-trial order, just let me know and I will work with you to get it accomplished prior to the pre-trial submissions.

I know you have been extremely busy on this case and other important matters and I understand that you have been trying hard to get an answer from your client on the issue of consent. I had hoped we could go ahead and check this box as we both have many other more important issues to address in order to comply with the deadlines set forth in the unsigned scheduling order. I hope that you will reconsider your position. If so, I would appreciate you letting me know at the earliest possible moment. If you remain unable to consent, we will allow the Court to resolve the issue at the pre-trial hearing. I respect your client's right to withhold consent to the requested stipulation, but I am also confident that I have just been diligent in pursuing this issue to insure that you were aware of, and on notice of, our pre-trial position well in advance of the deadline for submission of a proposed pre-trial order.

Thanks.

Lin

L. Lin Wood

L. LIN WOOD, P.C.

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com


**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**


**From:** Alex Spiro <alexspiro@quinnemanuel.com>
**Sent:** Tuesday, September 17, 2019 4:42 PM
**To:** Lin Wood <lwood@linwoodlaw.com>; Michael Lifrak <michaellifrak@quinnemanuel.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Matt Wood <mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>; Adam Fellows <Adam.Fellows@howardkennedy.com>; Nicole Wade <nwade@linwoodlaw.com>
**Subject:** Re: Scope of damages

Ex. A 0030

Lin - that was (yet again) your list. I agree that's your list. I agreed to 1 and 2.
==The rest I told you I would look into or let you know at a future time if I agreed
that I would try to accommodate your many requests.==

You also keep mischaracterizing things. For example, when you say in #10 "who
you confirmed are the same person". I have no idea. I answered that for the
purposes of my question you can assume that.

I'll update you in the coming days. Thx

Alex

Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com

**Sent:** September 17, 2019 4:33 PM

**To:** alexspiro@quinnemanuel.com; michaellifrak@quinnemanuel.com

**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinne
mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com;
jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.cc
nwade@linwoodlaw.com

**Subject:** RE: Scope of damages

[EXTERNAL EMAIL]

Alex and Michael,

I want to confirm the issues that we discussed during today's
meet and confer telephone conference to make sure that we
are all on the same page. According to my notes, we discussed
the following:

Ex. A 0031

1.   We agreed to take the depositions in LA of Teller on September 30 and Davis on October 1 – you will make them available and arrange their appearance (let's discuss location – I was not happy with Mr. C.'s for limiting our time at the deposition of Birchall);

2.   We will hold open the balance of those two dates to add a possible third deposition on September 30 or October 1;

3.   You will attempt to locate the last known address and phone number of Arnold. After we get his address, we will serve him with a subpoena.

4.   You will attempt to see if you can get a convenient date from Glover. If so, we will send a subpoena to her.

5.   If you are unable to arrange for depositions of Arnold and Glover, we will do our best to work with you and the witnesses to schedule the depositions on dates convenient to you and the witnesses.

6.   You will try to identify for us the identities of the individuals associated with the different phone numbers on the WhatsApp messages (and for confirmation that we discussed this during Mr. Musk's deposition on August 22, look at pages 276-77 of his deposition, where you clearly indicated that you would "figure it out" after the deposition and provide us information about "who is the person behind the various phone numbers on this WhatsApp chat");

7.   You will advise us on the status of the iCloud search for additional responsive documents (including emails and texts) from Musk;

8.   You will look into all of the Birchall and Elon documentary issues previously identified by us, including:

27

Ex. A 0032

a.  Search of Birchall's additional email accounts

b.  Written agreement with Howard/Howard-Higgins

c.  AIG notice letter

d.  Source from which Birchall obtained Tik's birth certificate and a copy of the birth certificate he received.

9.  You will not agree to any stipulation on withdrawal of the paragraphs in the complaint relating to UK damages;

10. Howard Kennedy does not have any communications with Howard/Howard-Higgins (who you confirmed are the same person), but I will confirm that again with Mark but I have to again add the caveat to this response by pointing out that there could be communications with him under a name different from Howard or Howard-Higgins, which we would have no way of identifying; and

11. Mike and Taylor will work on the ADR deadline required by the Court to ensure that we have complied with all court requirements.

We agreed to speak again on Friday on the status of these issues. Let me know what time works best for you. Due to time constraints, we would appreciate receiving responsive documents to 6, 7 and 8 above as soon as possible.

Thank you,

Lin

L. Lin Wood

L. LIN WOOD, P.C.

Ex. A 0033

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com


**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**


**From:** Nicole Wade <nwade@linwoodlaw.com>
**Sent:** Monday, September 16, 2019 6:33 PM
**To:** Michael Lifrak <michaellifrak@quinnemanuel.com>; Lin Wood <lwood@linwoodlaw.com>; Alex Spiro <alexspiro@quinnemanuel.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Matt Wood <mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>; Adam Fellows <Adam.Fellows@howardkennedy.com>
**Subject:** Re: Scope of damages


Thanks, Michael, we will get it filed.  Also, can you please provide us with a last known address and telephone number for David Arnold?

Ex. A 0034

# EXHIBIT B

# EXHIBIT B

**Taylor Wilson**

| | |
|---|---|
| **From:** | Lin Wood |
| **Sent:** | Tuesday, September 24, 2019 6:31 PM |
| **To:** | Alex Spiro |
| **Cc:** | Taylor Wilson; Jonathan Grunberg; Nicole Wade; Matt Wood; Mark Stephens, CBE; Adam Fellows; Chris Chatham; Kimmy Hart Bennett; Robert Schwartz; Alex Bergjans; Jeanine Zalduendo; Michael Lifrak |
| **Subject:** | RE: Musk iCloud Search |
| **Attachments:** | Tesla Records Certification - Unsworth v. Musk.pdf |

| | |
|---|---|
| **Importance:** | High |

Alex,

Please produce without further delay the document you describe as a copy of Tik's national ID card. Defense counsel's assumptions are not a basis to continue to refuse to produce this clearly relevant document.

Plaintiff will proceed with Court's required procedures to move to compel the identity of the investigator(s) and urge to the Court Plaintiff's right to obtain his or her deposition upon identification by Musk. I understand the work product doctrine and I am confident the doctrine does not confer an absolute discovery privilege. I am equally confident that the work product doctrine does not allow a party to hide the identities of witnesses with relevant knowledge and is not a mechanism to hide factual information from the opposite party that is only known to, and in the possession of, the party wo conducted the investigation. While Plaintiff's legal position will be set forth in the stipulation we will forward to you, suffice it to say at this time that the information is reasonably calculated to lead to the discovery of admissible evidence on the issues of falsity, negligence, and actual malice (among other things regarding actual malice, to establish a purposeful avoidance of the truth). I know of no rule that forces Plaintiff to accept representations of counsel as to the factual details upon which a claim of work product protection is based and I decline to do so in this instance.

There is no legal basis whatsoever to support Musk's continuing refusal to produce the described document or disclose the identity of the investigator(s). Under these circumstances, Plaintiff must also consider seeking sanctions in his motion for Musk's willful failure to provide clearly relevant discovery.

Regarding the search of Musk's iCloud backup, Plaintiff has only received the attached Records Certification from Tesla. Plaintiff has not received any declaration from SpaceX and no declaration from anyone which confirms a search of Musk's iCloud backup for potentially relevant emails and texts. As I have made clear, the need for the iCloud backup search arises from the sworn testimony of Musk that he destroyed his cell phone which he used during the relevant time period of July to September 2018. It is this issue of potential spoliation that has created the need for the iCloud search. Musk testified that he maintains all of his cell phone information on iCloud and that he has deleted nothing from it. The Tesla records certification  has no bearing on Musk's iCloud backup or what has been done, if anything, to search it. In fact, our meet and confer efforts with respect to Musk's need to search his iCloud backup occurred *after* the date of the Tesla records certification and there is no indication that Tesla has access to or has searched Musk's iCloud backup or was even made aware of the undisputed testimony by Musk that he destroyed his cell phone and thereby created the need for a search of his iCloud backup account. Plaintiff will proceed to also address this issue by motion to compel and will include it in our stipulation.

You have today for the first time in our many communications and conferences made a demand that
Plaintiff submit a declaration regarding the completeness of Mr. Unsworth's production of relevant
emails and texts and Howard Kennedy LLP's search for communications from James Howard-Higgins.
Unlike the situation arising from Musk's destruction of his cell phone, you have not identified any factual
basis whatsoever to support a contention that there has been a failure by Plaintiff or his counsel to
properly and fully produce relevant texts or emails. If you have a factual basis for your demand (other
than a playground "tit for tat"), you are invited to identify that basis in detail (as I have done with respect
to Musk's cell phone destruction). Absent a reasonable basis for the demand being set forth by Musk, no
declaration is required or necessary and no declaration(s) will be forthcoming. Also, to correct your
unsupported statement regarding Mr. Unsworth's production, unlike Musk, he has not been guilty of a
"very late production" and he has not destroyed potentially relevant documents at a time when by his
admission, he clearly anticipated litigation.

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

**NOTICE: This communication may contain privileged or other confidential information. If you are
not the intended recipient, or believe that you have received this communication in error, please
do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please
indicate to the sender that you have received this communication in error, and delete the copy
you received. Thank you.**

**From:** Alex Spiro <alexspiro@quinnemanuel.com>
**Sent:** Tuesday, September 24, 2019 4:40 PM
**To:** Lin Wood <lwood@linwoodlaw.com>
**Cc:** Taylor Wilson <twilson@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Nicole Wade
<nwade@linwoodlaw.com>; Matt Wood <mwood@wshllp.com>; Mark Stephens, CBE
<Mark.Stephens@howardkennedy.com>; Adam Fellows <Adam.Fellows@howardkennedy.com>; Chris Chatham
<chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Robert Schwartz
<robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo
<jeaninezalduendo@quinnemanuel.com>; Michael Lifrak <michaellifrak@quinnemanuel.com>
**Subject:** Re: Musk iCloud Search

Lin-

Mr. Birchall received the document on Sept 11th. It is a copy of Tik's Thai national ID card, which she has a
copy of.  We are under no obligation to produce a detailed privilege log related to the activities of counsel (all of
which occurred after the September 4, 2018 BuzzFeed article and your public tweet of a demand letter). We
have provided sufficient information for you to evaluate our claim of work product protection, including the date

Ex. B 0037

of the communication and the basis for the claim of privilege.  Any investigation conducted at the direction of attorneys and in anticipation of litigation is protected by the work product doctrine.  The identity of any investigator is irrelevant and has no bearing on any legal issue.  If you want to provide contrary authority, feel free to do so.  Or if you can explain to me the relevance of what occurred after the BuzzFeed article.  In this regards I'm happy to listen.

All of the Productions included a declaration and the SpaceX tech team who signed that declaration confirmed what I already stated, which is implicit in their declaration. Please provide a declaration for Mr. Unsworth's very late production and the representation you made about the search at Howard Kennedy LLP.

We have met and conferred on these issues and feel free to file any motion related to them.

Alex

Sent from my BlackBerry – the most secure mobile device

**From:** lwood@linwoodlaw.com
**Sent:** September 24, 2019 3:19 PM
**To:** alexspiro@quinnemanuel.com
**Cc:** twilson@linwoodlaw.com; jgrunberg@linwoodlaw.com; nwade@linwoodlaw.com; mwood@wshllp.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.com; chris@chathamfirm.com; khart@linwoodlaw.com; robertschwartz@quinnemanuel.com; alexbergians@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; michaellifrak@quinnemanuel.com
**Subject:** Musk iCloud Search

[EXTERNAL EMAIL]

Alex,

I cannot locate a sworn declaration which confirms that Musk's iCloud backup account has been searched. If this search has been accomplished, please provide me with a signed declaration specifically affirming the iCloud search, the dates of the search, the key words used for the search, and whether any additional emails or texts were discovered. The problem arises because Musk did not retain his iPhone from the relevant time period per his deposition testimony. Let's get this issue resolved.

Also, I am still waiting to receive the privilege log and the identity of the investigator(s) who provided a copy of Tik's birth certificate to Birchall/Brickhouse or information regarding the certificate. I first inquired about the individual's identity at the deposition of Birchall/Brickhouse on September 10. Given the scheduling order, 2 weeks is ample time for disclosure of the identity. Obviously, I may request a deposition from the investigator when his or her identity is disclosed.

Thanks.

Ex. B 0038

Lin


L. Lin Wood

L. LIN WOOD, P.C.

1180 West Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404) 891-1402

Direct Dial: (404) 891-1406

Facsimile: (404) 506-9111

E-Mail: lwood@linwoodlaw.com


**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**

Ex. B 0039

# EXHIBIT C

# EXHIBIT C



# L. LIN WOOD, P.C.
### TRIAL LAWYERS

L. LIN WOOD
Direct Dial: (404) 891-1406
lwood@linwoodlaw.com

September 27, 2019

**<u>VIA ELECTRONIC MAIL ONLY</u>**

Alex Spiro
alexspiro@quinnemanuel.com

    RE:    *Unsworth vs. Musk,* Case No. 2:18-cv-08048
              Discovery Meet and Confer Regarding Plaintiff's Production

Dear Alex:

    In various e-mails sent yesterday, you made several serious and unfounded accusations against Mr. Unsworth and his counsel. You accused Mr. Unsworth and his counsel of not being "direct, honest and honorable." You also strongly accused Mr. Unsworth and his counsel of filing the complaint in this action in bad faith and without properly investigating the claim "before filing a federal lawsuit, on a matter of this importance, in a very busy district, burdened with life and death emergencies." You claim that it is "stunning" that Mr. Unsworth may not have collected documents entirely irrelevant to Defendant Elon Musk's outrageous, malicious, and false accusations that Mr. Unsworth is a pedophile and child rapist who married a twelve-year-old child bride.  I will address each of your actual discovery issues herein, but preface my comments by reminding you that Musk publicly asked to be sued and started preparing his defense before the complaint was filed and yet Musk is the only party to this litigation who has repeatedly provided discovery responses which are provably dishonest, incomplete and delayed.

    Before falsely and unprofessionally throwing stones and making unfounded accusations against Mr. Unsworth and his counsel, please review the attached e-mails, making clear (once again) that Musk intentionally withheld and failed to produce responsive electronic communications.  The first email is between Musk and two other witnesses in this case about the cave rescue, the tube, and the resulting media coverage – indisputably responsive and relevant. Moreover, it specifically includes Musk's statements that he had been texting with his own significant other about these relevant issues, yet this text and untold others have never been produced by Musk.  While it is unclear to me why the email was not produced, it is very clear why the texts were not produced if I am to believe the representations made during our meet and confer efforts:  Musk destroyed his cell phone while litigation was pending and after the motion to dismiss was denied, and it appears no efforts to search his iCloud or other electronic back up have occurred, assuming Musk testified truthfully about the existence of the back-ups. If anything can be accurately described as "stunning," it is Musk's failure to engage in good faith in the discovery process by hiding and delaying production of relevant documents and identities of witnesses known to be relevant to the issues in this case. To let that happen on your watch in a case, in your words, "on a matter of this importance" and with one of the most sophisticated and tech-savvy clients in the world is inexplicable.  We only recently discovered this document that Tesla

Alex Spiro
September 27, 2019
Page 2 of 5

produced with less 36 hours left in the discovery period, which is an unfortunate failure on Musk's part given its obvious responsiveness and ultimate disclosure in a third-party production.

The second e-mail attached is between your client (again) and his public relations agent Juleanna Glover; a relevant witness who was never identified by the defense in this case. In it, Musk effectively lays out his legal defense and concludes, in his own words, "Still, I'm a fucking idiot." It is again unjustifiable that your client's communications with Ms. Glover were not timely produced, especially in light of the affirmative representations made to us by Musk's counsel during our August 9, 2019, meet and confer that there was no public relations individual or firm involved by Musk.

Unlike you, Alex, I did not raise this issue with you with rhetoric to the effect that "it is stunning that you failed to preserve and produce entirely relevant evidence, including allowing your client to destroy his cell phone as discovery in the case was beginning." I certainly could have used such rhetoric as it would be well-founded, especially in view of your false accusations of litigation misconduct lodged against my client and my firm. Unlike you and your client, I choose to refrain from such unnecessary and demeaning comments despite the fact that your client went out of his way to repeatedly insult me in his deposition. Unlike Musk, I have addressed this issue on the merits without throwing around unprofessional and unfounded accusations and ad hominem attacks related to the collection and destruction of evidence. More to the point, there are no spoliation issues on this side of the case (only on Musk's part) which is clear and I will make even clearer to you in this letter. As I told you last evening by email, I expect in the future that our advocacy in this case will proceed in a manner consistent with the dignity of our profession and its code of conduct.

Contrary to your rhetorical representations, Mr. Unsworth produced exactly **four** additional documents to you in our last production, which were each the product of meet and confer efforts throughout this case. One of the documents merely supplemented previously produced text messages and another document did not exist until August 2019, after our document production in this case. Hardly a sign of withholding documents. The 81-page chat with Thanet is a LINE communication; we discussed this issue in our August 9, 2019, meet and confer in which both parties' counsel agreed that we had never heard of this particular platform and we would investigate how to produce it. We did so. That meet and confer occurred only days prior to Mr. Unsworth's deposition, and my office undertook to produce various items on your list in preparation for his deposition.

Moreover, after your hunt through the 81-page chat with Thanet, the few documents you state to be missing from Mr. Unsworth's production do not appear to be responsive to the RPD you have identified, appear to be of at best *de minimis* relevance to this case, and therefore present an unreasonable burden on Mr. Unsworth. Indeed, Mr. Unsworth has clearly and unequivocally stated under oath all income he has derived in any manner related to and in the aftermath of the cave rescue, which, as you know, is only a few thousand pounds. In short, in addition to your uncalled for and grandiose accusations generally, the specific claims in your email regarding missing documents are unnecessary and based on an incorrect assessment of your document

Alex Spiro
September 27, 2019
Page 3 of 5

_____

requests to Mr. Unsworth, as well as the issue of relevance of the alleged unproduced documents. These issues could have been, and should have been, addressed in the ordinary course of good faith meet and confer efforts rather than being addressed by your inflammatory and accusatory rhetoric.

Plaintiff has always met and conferred with you in good faith and been responsive to each of your issues. My team and my client have been extremely diligent in our efforts to collect documents responsive to Musk's document requests. Nonetheless, and as always, we are willing to search for the specific documents you have referenced in your email to resolve any ongoing discovery dispute. As I understand your e-mail, there are three categories of documents and supplementation you are interested in.

First, you continue to assert that because Mr. Unsworth and Tik communicate electronically we are withholding documents. Let me be very clear with you for the last time on this topic: Mr. Unsworth and Tik do not have responsive or relevant electronic communications other than what has been produced. Moreover, to the extent your request is now to obtain their correspondence generally and without any subject matter limitations irrespective of responsiveness and relevance, you are not entitled to my client's personal conversations with his significant other just because you want them; in the first instance, they must be relevant to this case and responsive to a specific document request. If such communications existed, they would have been produced as demonstrated by the many other communications produced by Mr. Unsworth and which you referenced in your email (including producing text messages with Vanessa). Contrary to your continued statements about Tik's testimony that she and Mr. Unsworth communicate electronically generally (of course they do), when Tik was specifically asked about such communications on relevant subject matter, she expressly testified that they do not e-mail about the case, but instead: "We phone. We talk together. We stay together before. We live together so we talked … *But we never message, do the texting and talk about this case, no.*" (59:6-59:18). She also testified that that "no," she and Mr. Unsworth did not text during the rescue because she was with him the whole time, and that if the media contacted her, she would just show him her phone. (61:3-62:5). You also know from Tik's testimony that we did not in any in way prepare her for her deposition. (58:17-23). You have made this request regarding these phantom electronic communications with Tik repeatedly, and we specifically addressed it with Mr. Unsworth on multiple occasions before and after your requests, which generated the only additional responsive document we produced to you in our last production. Again, unlike Mr. Musk who testified that he destroyed his phone in the middle of this litigation, there are no spoliation issues on this side. We have fully responded to your accusation in this regard and if you remain unsatisfied, you will have to address your concerns with the Court pursuant to his rules.

Second, you have asked about a series of documents and correspondence that you claim are responsive to your RPD 26, which requested "[a]ll documents concerning any other actual or potential income you have earned in any way connected to the Rescue." In addition to Mr. Unsworth's stated objections to this request, namely that it is overbroad and seeks irrelevant information, the documents you suggest exist do not on their face appear to concern "actual or potential income" to Mr. Unsworth as requested in RPD 26. It is not our job to re-write Musk's

Alex Spiro
September 27, 2019
Page 4 of 5

_____

document requests to propound appropriate discovery requests or to interpret vague requests such as "potential income"; and, again, Mr. Unsworth has stated clearly and under oath all income he has received in any manner related to the rescue. Nonetheless, to the extent there exist additional documents or communications with (1) Will Robinson, (2) CAA, (3) Warner Bros., (4) Thanet (LINE communication already produced), (5) Dr. Harry (WhatsApp already produced), or (6) Dr. Craig concerning the cave rescue or Musk, we will promptly search for any such specific documents and advise you as to whether such documents exist, and advise if and when they will be produced.

To fully respond with respect to these individuals and your false and unjustified accusations about my office's review of documents before filing this lawsuit, I provide you with the following information after our preliminary investigation into your meet and confer email. We are prepared to represent to the Court the following information:

(1) Mr. Unsworth *first* met Will Robinson in November 2018, after this case was filed, and he never retained Mr. Robinson. It appears that Mr. Robinson approached Mr. Unsworth in November 2018 and for a period of approximately one-week Mr. Robinson and Mr. Unsworth worked together but that professional relationship ceased and Mr. Unsworth never signed any kind of engagement agreement with Mr. Robinson. Thus, my firm could not have known of his existence at the time this case was filed and the fact no agency was formed diminishes whatever insignificant or arguable relevance he has to this case. For clarity, Mr. Unsworth's message with Thanet regarding Mr. Robinson was sent during a time Mr. Robinson proposed engaging Mr. Unsworth but that engagement was never signed, there was never any income resulting from the proposed engagement, and hence this relationship is non responsive to the request for production you have identified;

(2) Mr. Unsworth engaged in some preliminary discussions with individuals from a company named SK Global, again appearing to have occurred *after* this litigation was filed, an entity he understood to be associated with Warner Bros.; absolutely nothing ever came of that and there was never any income associated with it; and

(3) Mr. Unsworth does not recall receiving any e-mail from CAA, and in any case, if such one-off e-mail correspondence exists, nothing ever came of it and there was no income associated with it as more fully described in my client's written and oral testimony in this case.

Finally, you have asked that we make available a production of the LINE chat with Thanet that shows the media you have identified (I am not conceding that your representations on these matters are accurate, but presume that you are aware without acknowledging that this entire chat was not responsive or relevant, but produced in its entirety in good faith regardless). Respectfully, Plaintiff has previously raised this same issue with Defendant regarding the WhatsApp chats produced by Defendant without the additional media, because Plaintiff was able to and did produce his WhatsApp chats with such media. I understand from my team that we are unaware of how to reasonably do so for LINE. We will investigate this issue and report back to you, and if it can be done with a reasonable expenditure of time and cost, we will do so. But discovery is a two-way

Alex Spiro
September 27, 2019
Page 5 of 5

_____

street, and we expect Musk's agreement as to all similar media, such as videos and photos, included in all WhatsApp or other group conversations produced by him to be included in a supplemental production.  Please confirm your acceptance and agreement on that issue.  Additionally, while I expect we can search, collect, and produce any arguably responsive e-mail communications that may exist as set forth herein, this issue likely cannot be resolved as quickly due to the parties' other, ongoing commitments to this and other cases.

In closing, as demonstrated by Musk's own failure to produce many responsive and relevant documents, the intentional destruction of his cell phone, his failure to identify significant witnesses, and his apparent misrepresentation to you that no public relations individual was involved in this dispute (despite it being obvious from documents received from third parties), it is well-known that document searches are rarely perfect. Mr. Unsworth has engaged in discovery in good faith and Musk has not. If a few additional documents are found to exist, I remain confident that Mr. Unsworth and his counsel have at all times acted in good faith and will continue to do so in responding to meet and confer requests, which, again, I expect in the future to be handled in the ordinary course without unnecessary, unproductive and sarcastic attacks on Mr. Unsworth, his counsel or third-party witnesses. I am foregoing at this time my client's reasonable position and objections to your document requests and, as set forth herein, we will undertake specific searches for these specific documents you identified despite their apparent irrelevance and non-responsiveness and will update you upon completion of that search. Again, aside from your generalized complaining about the timing of our production of **four** additional documents, please let me know if I have missed any issue that you raised in your September 26 emails.

Finally, please let me know when Musk plans to supplement his production, including the production of all of his text message(s) and emails with his girlfriend about the cave rescue, the tube, and the ensuing media, which given the spoliation of Mr. Musk's phone, you have a duty to collect directly from his girlfriend and all backups of his cell phone account.

Sincerely,

L. Lin Wood

cc:   Mr. Vernon Unsworth
      Mark Stephens, CBE
      Counsel of record

| From: | Steve Davis [Steve@spacex.com] |
|---|---|
| Sent: | 7/9/2018 11:28:32 PM |
| To: | Elon Musk [erm@tesla.com] |
| CC: | Sam Teller [steller@tesla.com] |
| Subject: | Re: PowerWalls |

There is a running BBC blog on the rescue. Entirety of relevant entry said:

—————————

Posted at1:10
**Musk's offer 'not practical' for this mission**
The head of the rescue mission, Narongsak Osotthanakorn, has been asked whether he can make use of Elon Musk's offer to help.

He says he acknowledges the help of Musk and his team, but that "the equipment they brought to help us is not practical with our mission".

"Even though their equipment is technologically sophisticated, it doesn't fit with our mission to go in the cave."

—————————

Our guys don't know him so we are figuring out who he is.


On Jul 10, 2018, at 2:18 AM, Elon Musk <erm@tesla.com> wrote:

==Btw, my gf just texted me saying the head of the Thai rescue team said our solution wasn't practical and that the press is turning negative.==

==I just woke up in Shanghai. What's happening?==

<image1.png>

Sent from my iPhone

On Jul 10, 2018, at 1:43 PM, Steve Davis <Steve@spacex.com> wrote:

We have 12 Powerwalls sitting unopened at camp. One of the Thai people asked if we could donate them to a local hospital.

Do you want to:
1. Donate all
2. Donate none
3. Donate 10 and let me take 2 for the boring company - would love to replace our grout car generator w a powerwall :)

TESLA000999

Ex. C 0046
23770317

Subject: Fwd:
From: Dave Arnold <"/o=exchangelabs/ou=exchange administrative group
(fydibohf23spdlt)/cn=recipients/cn=29df0a7448f04984910ec59f5077bd85-dave arnold">
Date: Wed, 05 Sep 2018 16:40:27 -0700
To: Sam Teller <steller@tesla.com>


I do think we should change his email address...




-----
From: Juleanna Glover <juleanna@ridgelywalsh.com>
Sent: Wednesday, September 5, 2018 4:34 PM
To: Dave Arnold; Sam Teller; Sarah O'Brien
Subject: Fwd: Re:


RidgelyWalsh.com
202.288.2076


Begin forwarded message:

From: Elon Musk <erm@tesla.com>
Date: September 5, 2018 at 4:45:17 PM EDT
To: Juleanna Glover <juleanna@ridgelywalsh.com>
Subject: Re:


Yup

On Sep 5, 2018, at 1:06 PM, Juleanna Glover <juleanna@ridgelywalsh.com> wrote:


The podcast can be very long (3 hrs for Tyson for ex) so pick a hard stop time.  Joe
doesn't interrupt much so he will let you roll (he is funny and he curses on air as
no FCC rules for podcasts).  Pls figure out what you want to say about the SEC
matters? If you want to say more than is out there or not. Your attorneys should be
in loop on what you plan to say.   I don't imagine Joe will push you on that but
just be ready, so you don't make the investigation harder?  Also pls pls pls pls if
Thai diver comes up pls just say you think you have gotten into enough trouble on
that already and are not going to say more?

From: ERM <erm@tesla.com>
Date: Wednesday, September 5, 2018 at 3:49 PM
To: Juleanna Glover <juleanna@ridgelywalsh.com>
Subject: Re: Fwd:

No, it's because a lot of people I trust have recommended that I do this.

On Sep 5, 2018, at 4:40 AM, Juleanna Glover <juleanna@ridgelywalsh.com> wrote:

Ok - Joe Rogan it is! Is it because deGrasse Tyson just did the podcast?

RidgelyWalsh.com

202.288.2076

On Sep 4, 2018, at 6:35 PM, Elon Musk <erm@tesla.com> wrote:

Absolutely. Will have to change my email address.

On Sep 4, 2018, at 3:22 PM, Juleanna Glover <juleanna@ridgelywalsh.com> wrote:

You need to ask your teams to do this stuff.  Where the facts merit, the stories will come out. It will often take longer than you want but if it can be done - ethically and appropriately - it will get done.

Reporters are now sharing your email address with each other so pls let us take the queries unless you know and deeply trust the writer.  You will continue to get more notes trying to bait you.

RidgelyWalsh.com


202.288.2076




On Sep 4, 2018, at 6:14 PM, Elon Musk <erm@tesla.com> wrote:


Completely agree. I was told about a lot of bad things this guy did and was upset that no one cared to investigate, so responded in what I felt was off the record. In the past, Buzzfeed has respected emails prefaced with "off the record", but this time they did not. It was still one of the dumbest things I've ever done and this distraction couldn't come at a worse time.




On Sep 4, 2018, at 3:07 PM, Juleanna Glover <juleanna@ridgelywalsh.com> wrote:


We may have to have you do something on the record again soon. We just need to kill this nonsense, speculation around your mental state. Will work with the team to come up with strategic options that present you at length - leading the companies, in charge, droll and self-aware. That in mind, in no universe is it OK for you to continue to contemplate the sexual predilections of a Thai driver who insulted you on TV.  The facts will come out and you can revisit then.

RidgelyWalsh.com


202.288.2076




On Sep 4, 2018, at 5:54 PM, Elon Musk <erm@tesla.com> wrote:

Yes, this is extremely bad. I didn't expect Buzzfeed to publish an off the record email. My intent was to have them investigate and come to their own conclusions, not publish my email directly.

There is a lot of incriminating evidence about this guy if journalists just bloody well look. I was told that he spent ~30 years traveling  several months each year to Thailand, including spending a large part of that time at known underage "sex hotels" in Pattaya Beach. There are no caves of note in the area and he had no business reason to be there.

Still, I'm a fucking idiot.

On Sep 4, 2018, at 2:43 PM, Juleanna Glover <juleanna@ridgelywalsh.com> wrote:

You know all the below already.  He is a serious guy who does impactful work on climate and it is killing him to see your impact diminished.  You do have good people to handle all of these queries (though the Thai diver matter really should just be handled by counsel - forever or until discovery yields proof of illegality).

Twitter feed last 6 days though is 😊

RidgelyWalsh.com

202.288.2076

Ex. C 0050

Begin forwarded message:


From: Jeff Nesbit <jeffnesbit@gmail.com>
Date: September 4, 2018 at 5:21:17 PM EDT
To: juleanna@ridgelywalsh.com
Subject: What can I do to help?


I know I'm a broken record...but why is he emailing with a news organization himself like this? He absolutely SHOULD NOT be doing this sort of direct media outreach himself. It clearly blew up in his face, for no good reason. Who on his staff can handle this for him? One or two more of these and I can guarantee that there will be a no confidence vote on the BOD led by the big institutional investors. And he will not survive such a vote, at least not in the public sphere. I will help you however you tell me to help.


https://www.buzzfeednews.com/article/ryanmac/elon-musk-thai-cave-rescuer-accusations-buzzfeed-email


Sent from my iPhone

# EXHIBIT D

# EXHIBIT D

ELON REEVE MUSK

August 22, 2019

```
 1            Do you know what a retention policy is?
 2      A.   You mean a corporate retention policy?
 3      Q.   Yeah.
 4      A.   Yeah.
 5      Q.   Okay.  That's what I am talking about.
 6            Do you have a corporate retention policy?
 7   Is your phone owned by you personally, or is it
 8   provided by the corporation?
 9      A.   It's owned by me.
10      Q.   And do you have any type of a policy that
11   you follow in terms of when you destroy your phones
12   or whether you preserve your phone information?
13      A.   The information is stored centrally.
14   It's not local on the phone.
15      Q.   So even though -- somebody told me I
16   believe -- maybe it was something I read about.
17   Your lawyer said you periodically change phones?
18      A.   I mean, I upgrade my phone or it gets
19   damaged.
20      Q.   When was the last time you switched
21   phones?
22      A.   When I got the -- I'm not sure.
23      Q.   Over a year ago?
24      A.   No.  Maybe it was three months ago.
25   Whenever the new Apple phone came out.
```

Ex. D 0053

ELON REEVE MUSK

August 22, 2019

```
1        Q.    And what did you do with the old --
2        A.    Sorry.  Generally, if I travel to China
3   they have to give me a new phone because they're
4   worried about hacking or something.
5        Q.    And what did you do with the old phone
6   when you switched to the new Apple?
7        A.    My phones are generally wiped and --
8   wiped and then that's it.
9        Q.    So the phone that you would have been
10  using back during the relevant time period of July
11  and August, maybe early September of 2018 -- has it
12  been wiped?
13       A.    Yeah, it would have, yeah.
14       Q.    When?
15       A.    I don't know.
16       Q.    After this lawsuit was filed in
17  September, did you wipe any of your phones?
18       A.    Wiping.  It doesn't really matter --
19       Q.    Just a question.  Did you wipe any of
20  your phones after this lawsuit was filed in
21  September of 2018?
22       A.    I have new phones, but the iMessage and
23  email are stored centrally.
24       Q.    Thank you.  Did you wipe your phone after
25  September 2018?
```

Ex. D 0054

ELON REEVE MUSK

August 22, 2019

```
 1        A.   My phones are -- I have new phones.  I
 2   actually don't even know where the old phones are.
 3   I didn't wipe anything.  I don't know.  I didn't
 4   wipe anything, but I don't know where the phones
 5   are.
 6        Q.   Who would handle that for you?
 7        A.   SpaceX or Tesla IT usually.
 8        Q.   But you testified very clearly that even
 9   if it was wiped, all of the data on it would be
10   centrally stored?
11        A.   Yes, I believe so.
12        Q.   Where?
13        A.   Well, Apple stores iMessages, and the
14   email is store at SpaceX and Tesla.
15        Q.   So you've got iCloud, SpaceX, and Tesla,
16   that between the three of them you believe would
17   have preserved anything that was on your phone?
18        A.   I think so.
19             MR. WOOD:  You want to give me about five
20   minutes here off the -- let me have some time alone
21   with my guys.
22             MR. SPIRO:  Yeah.
23             THE VIDEOGRAPHER:  We are going off the
24   record at 5:06 p.m.
25             (Recess taken.)
```

Ex. D 0055

# EXHIBIT E

# EXHIBIT E

```
 1       A.   Yes.                                          09:42:16

 2       Q.   And you provided all of the texts between     09:42:16

 3   you and Mr. Howard?                                    09:42:20

 4       A.   Correct.                                      09:42:21

 5       Q.   Did you ever text Mr. Musk about              09:42:22

 6   Mr. Howard's investigation?                            09:42:26

 7       A.   Likely there may have been some texts,        09:42:29

 8   yes.                                                   09:42:32

 9       Q.   And you still have those on your phone?       09:42:33

10       A.   If there were texts, I actually don't         09:42:37

11   know the answer.  I would have to go look.             09:42:41

12       Q.   You have not deleted any texts?               09:42:44

13       A.   No.                                           09:42:46

14       Q.   And your phone remains intact and capable     09:42:46

15   of being searched?                                     09:42:49

16       A.   For sure.                                     09:42:50

17       Q.   Did you also -- were you the person           09:42:51

18   charged with responding to the deposition subpoena     09:42:53

19   to Excession?                                          09:42:58

20       A.   As far as charged with responding --          09:43:02

21       Q.   Asked to compile the information?             09:43:05

22       A.   No.                                           09:43:08

23       Q.   Did anyone ever ask you to ever get any       09:43:09

24   information from Excession to provide in response      09:43:13

25   to a subpoena in this case?                            09:43:15
```

10

# EXHIBIT F

# EXHIBIT F

Samuel Teller                                    September 30, 2019
Unsworth, Vernon v. Musk, Elon

Page 31

1       Q    So Mr. Musk, during the time period of June

2    to September of 2018, just based on this chart of

3    litigation alone, there had to be under a number of

4    litigation hold orders or demands; would you agree?

5             MR. SPIRO:   Objection.

6             If you know.

7             THE WITNESS:   I would imagine, yeah.

8    BY MR. WOOD:

9       Q    Do you know what a litigation hold is?

10      A    I do.

11      Q    Where you're supposed to preserve all

12   possibly relevant information?

13      A    Absolutely.

14      Q    And he's got a lot of things going on where

15   he would likely have been told that he was subject

16   to a litigation hold, don't you believe?

17      A    I agree that it's likely, but I don't know

18   what he was told.

19      Q    Was his cell phone, to your knowledge,

20   provided by one of the companies, or did he pay for

21   it himself?

22      A    I actually don't know.

23      Q    Do you know whether he backed it up in order

24   to comply with litigation holds?

25      A    I know that -- or I -- I have no reason to

Page 32

1    believe that he didn't comply with any litigation

2    holds.

3         Q   Do you know, in fact, whether his cell phone

4    is the information contained on it -- strike that.

5             Do you know that he periodically says that he

6    destroys his cell phone?

7             MR. SPIRO:  Objection to form.

8             THE WITNESS:  No.

9    BY MR. WOOD:

10        Q   Have you ever known him to destroy a cell

11   phone?

12        A   No.

13        Q   Does he change periodically to different cell

14   phones, or is it your recollection that Elon had a

15   cell phone and unless he bought an upgrade Apple, so

16   to speak, he kept his cell phone?

17        A   No.  It would be the latter, unless

18   there's -- unless he's upgraded or broke his phone,

19   he wouldn't change his phone just for another

20   reason.

21        Q   So, for example, you -- you would believe

22   that if I wanted to ask him about information on his

23   cell phone from July, August, September of 2018,

24   that he would still have that cell phone to be able

25   to search to provide me with the information, from

Samuel Teller                                               September 30, 2019
Unsworth, Vernon v. Musk, Elon

                                                                    Page 33

1      your observation?

2               MR. SPIRO:  Objection to form.

3               MR. WOOD:  I'm not through with it.  Let me

4      ask my question.

5               MR. SPIRO:  Objection to form now.

6               MR. WOOD:  I'm not through, but I'm going to

7      go back and restate it so we have a clean record,

8      because these are important issues.

9          Q    You would believe, from your observations and

10     how you understood Mr. Musk's handling of his cell

11     phone that if I were to ask Mr. Musk to provide me

12     information from his cell phone as to calls or texts

13     or e-mails, that he would still have that same cell

14     phone to be able to search it to provide me with the

15     requested information, true?

16              MR. SPIRO:  Objection as to form.

17              You can answer if you can answer.

18              THE WITNESS:  I have no reason to believe

19     that he wouldn't, but you would have to ask him.

20     BY MR. WOOD:

21         Q    Okay.  Well, I did.  That's why I asked you

22     about this idea that he periodically would discard

23     his cell phone and get a new one.  You've never

24     heard of that before, have you?

25         A    I have not heard of that, but you would have

Samuel Teller                                          September 30, 2019
Unsworth, Vernon v. Musk, Elon

Page 34

1    to ask him about what --

2       Q   Oh, I did.  I'm asking you now.  You never

3    heard -- you're not aware of Mr. Musk ever

4    periodically discarding his cell phone to get a new

5    one, true?

6           MR. SPIRO:  Objection as to form.  I think

7    the witness was also trying to still answer when you

8    started asking your next question, but I'm making

9    that objection just for the record.

10          And if you can answer that, please answer.

11          THE WITNESS:  Sorry.  Can you restate the

12   question.

13   BY MR. WOOD:

14      Q   Yeah.  Sure.  You're not aware of Mr. Musk

15   having a routine where he would periodically discard

16   his cell phone and replace it with another cell

17   phone, true?

18      A   I am not aware of any such routine.

19      Q   Do you believe, as his chief of staff, that

20   you would know if he switched cell phones?

21          MR. SPIRO:  Objection as to form.

22          THE WITNESS:  I might or I might not.  I'm

23   not involved in every detail of his life.

24   BY MR. WOOD:

25      Q   Do you have yourself any knowledge of

Page 35

1      Mr. Musk ever discarding, in the last year and a

2      half, his cell phone to get a new cell phone?

3          A    Can you be more precise with the word

4      "discarding"?  Do you mean literally discarding?  I

5      don't understand.

6          Q    I -- I can go back.  I can go back, and I can

7      tell you exactly what he said.  I came away with the

8      impression that he physically destroyed one, but I

9      can be wrong about that.  So I'm using discard in

10     the sense of, you know, this one's gone, you know --

11     have you ever changed your phone?

12         A    Yeah, but --

13         Q    Yeah, you put it in the drawer, and you clean

14     it out five years later you find -- find an iPhone 2

15     or something.

16              I'm not asking you about whether he

17     physically destroyed it or whether he stuck it in a

18     drawer.  I'm just asking you whether you have any

19     personal knowledge yourself over the last year and a

20     half, let's say since June of 2018, of Mr. Musk

21     actually physically replacing one cell phone for

22     another.

23         A    I -- I don't have a specific recollection of

24     him doing so, yeah.

25         Q    Would you -- but you were -- but you were

Samuel Teller
Unsworth, Vernon v. Musk, Elon
September 30, 2019

Page 36

1    aware of the extent of the litigation that he was

2    involved in during that time period, true?

3        A    I was.

4        Q    And I think you would tell me, based on

5    your knowledge -- knowledge as his chief of staff,

6    that if for some reason he were to discard his cell

7    phone, that -- if for no other reason than the

8    litigation holds, that that cell phone would be

9    backed up so that the information would not be lost

10   or destroyed, true?

11           MR. SPIRO:  Objection to form.

12           THE WITNESS:  Sorry.  It was -- the question

13   is a little convoluted, but --

14   BY MR. WOOD:

15       Q    I'll go back and try to restate it.

16       A    Yeah, yeah.

17       Q    Based on your knowledge as his chief of

18   staff, if for some reason he were to discard one

19   cell phone to replace with another, the information

20   in his cell phone is at all times backed up so that

21   it is not lost or destroyed, true?

22           MR. SPIRO:  Same objection.

23           THE WITNESS:  I imagine so, but you would

24   have to ask him.  I don't --

25   BY MR. WOOD:

# EXHIBIT G

# EXHIBIT G

## RECORDS CERTIFICATION

I, _Javed Birchall_ , as a representative employed by _Foundation Security_ hereby certify as follows:

A.    The attached records were made at or near the time of the occurrence of the matters set forth in the documents;

B.    The attached records were made by a person with knowledge of those matters, or from information transmitted by a person with knowledge of those matters;

C.    The attached records were made and kept in the course of regularly conducted business activity; and

D.    The attached records were made and kept as a regular practice of the activity of the business.

Dated: _9/11/19_                    Signed by: _____

                                                                    Custodian of Records

Sworn to and subscribed before me,

This _____ day of _____, 2019.          _See attached California Jurat_

_____

NOTARY PUBLIC

My commission expires: _____

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**          GOVERNMENT CODE § 8202

ⅩSee Attached Document (Notary to cross out lines 1–6 below)
See Statement Below (Lines 1–6 to be completed only by document signer[s], *not* Notary)

_____          _____
*Signature of Document Signer No. 1*          *Signature of Document Signer No. 2 (if any)*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of  *Los Angeles*

Subscribed and sworn to (or affirmed) before me

on this  11ᵗʰ  day of  *September*, 20 19,
          *Date*        *Month*      *Year*

by

(1)  *Jared Birchall*
_____

(and (2) _____ ),
          *Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____
        *Signature of Notary Public*

MATILDA N. SIMON-FERRIGNO
Notary Public - California
Los Angeles County
Commission # 2174858
My Comm. Expires Dec 8, 2020

*Seal*
*Place Notary Seal Above*

──────────────── OPTIONAL ────────────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____  Document Date: _____

Number of Pages: _____  Signer(s) Other Than Named Above: _____  _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5910

## RECORDS CERTIFICATION

I, _John Shumway_, as a representative employed by _Tesla_, hereby certify as follows:

A.    The attached records were made at or near the time of the occurrence of the matters set forth in the documents;

B.    The attached records were made by a person with knowledge of those matters, or from information transmitted by a person with knowledge of those matters;

C.    The attached records were made and kept in the course of regularly conducted business activity; and

D.    The attached records were made and kept as a regular practice of the activity of the business.

Dated:                          Signed by: _____
                                              Custodian of Records

Sworn to and subscribed before me,

This _11_ day of _September_ 2019.

_Ingrid Robertson_

NOTARY PUBLIC

My commission expires: _1/29/21_

INGRID ROBERTSON
Notary Public - California
Alameda County
Commission # 2178230
My Comm. Expires Jan 29, 2021

## RECORDS CERTIFICATION

I,   UMER   KHAN   ,   as   a   representative   employed   by

_____SPACEX_____, hereby certify as follows:

A.    The attached records were made at or near the time of the occurrence of the matters

set forth in the documents;

B.    The attached records were made by a person with knowledge of those matters, or

from information transmitted by a person with knowledge of those matters;

C.    The attached records were made and kept in the course of regularly conducted

business activity; and

D.    The attached records were made and kept as a regular practice of the activity of the

business.

Dated:   9/12/2019          Signed by:   _____

                                              Custodian of Records

Sworn to and subscribed before me,

This ____ day of _____, 2019.    Please see attached
                                    California Jurat
_____                  —Linda Sh
NOTARY PUBLIC

My commission expires: _____

Ex. G 0069

# JURAT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 12 day of September,

20 19 by Umer Mohammad Aslam Khan

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.



Signature _____ (Seal)

LINDA SMITH
Commission No. 2293751
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires    JUNE 17, 2023

## OPTIONAL INFORMATION

## INSTRUCTIONS

The wording of all Jurats completed in California after January 1, 2015 must be in the form as set forth within this Jurat. There are no exceptions. If a Jurat to be completed does not follow this form, the notary must correct the verbiage by using a jurat stamp containing the correct wording or attaching a separate jurat form such as this one with does contain the proper wording. In addition, the notary must require an oath or affirmation from the document signer regarding the truthfulness of the contents of the document. The document must be signed AFTER the oath or affirmation. If the document was previously signed, it must be re-signed in front of the notary public during the jurat process.

DESCRIPTION OF THE ATTACHED DOCUMENT

Records Certification

(Title or description of attached document)

_____

(Title or description of attached document continued)

Number of Pages 10 Document Date 8|20|19

_____

Additional information

- State and county information must be the state and county where the document signer(s) personally appeared before the notary public.
- Date of notarization must be the date the signer(s) personally appeared which must also be the same date the jurat process is completed.
- Print the name(s) of the document signer(s) who personally appear at the time of notarization.
- Signature of the notary public must match the signature on file with the office of the county clerk.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different jurat form.
  - ❖ Additional information is not required but could help to ensure this jurat is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
- Securely attach this document to the signed document with a staple.

Ex. G 0070

# EXHIBIT H

# EXHIBIT H

L. LIN WOOD, P.C.
L. Lin Wood (admitted *pro hac vice*)
lwood@linwoodlaw.com
Nicole J. Wade (admitted *pro hac vice*)
nwade@linwoodlaw.com
Jonathan D. Grunberg (admitted *pro hac vice*)
jgrunberg@linwoodlaw.com
G. Taylor Wilson (admitted *pro hac vice*)
twilson@linwoodlaw.com
1180 West Peachtree Street, Ste. 2040
Atlanta, Georgia 30309
404-891-1402
404-506-9111 (fax)

CHATHAM LAW GROUP
Robert Christopher Chatham
chris@chathamfirm.com
CA State Bar No. 240972
3109 W. Temple St.
Los Angeles, CA 90026
213-277-1800

WEISBART SPRINGER HAYES, LLP
Matt C. Wood (admitted *pro hac vice*)
mwood@wshllp.com
212 Lavaca Street, Ste. 200
Austin, TX 78701
512-652-5780
512-682-2074 (fax)

*Attorneys for Plaintiff Vernon Unsworth*

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Alex B. Spiro (admitted *pro hac vice*)
alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543

*Attorneys for Defendant Elon Musk*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VERNON UNSWORTH,<br><br>    Plaintiff<br><br>  v.<br><br>ELON MUSK,<br><br>    Defendant. | Case No. 2:18-cv-08048-SVW (JCx)<br><br>**JOINT STIPULATION ON PLAINTIFF'S MOTION TO COMPEL**<br><br>Discovery Cutoff:   Sept. 13, 2019<br>Pretrial Conference:  Nov. 25, 2019<br>Trial Date:      Dec. 3, 2019 |

Ex. H 0072

1

Pursuant to Rule 37 of the Local Rules of Practice for the United States District Court for the Central District of California, Plaintiff Vernon Unsworth ("Unsworth") and Defendant Elon Musk ("Musk") submit this Joint Stipulation in connection with Unsworth's Motion to Compel discovery responses from Musk in this defamation lawsuit.

I.      PRELIMINARY STATEMENTS.

    A.      Unsworth's Preliminary Statement

Unsworth has sued Musk for defamation based on false and defamatory statements that Musk made accusing Unsworth of being a pedophile and a child rapist. There are two discovery disputes before this Court arising from: (1) a previously undisclosed investigation into Unsworth by Musk, and (2) Musk's destruction of his cell phone during this litigation and testimony that relevant information may be retrievable from the iCloud back-up of his iPhone.[1]  Unsworth seeks an order from this Court compelling Musk to provide the following:

- Production of documents obtained during the previously undisclosed investigation, including the birth certificate/identity card of Unsworth's companion, Tik;

- Identification of the person(s) who conducted that (or any other) investigation;

- Deposition of the investigator(s);

- Production of a privilege log of all documents being withheld regarding any investigation into Unsworth; and

- Confirmation of a search of Musk's iCloud (with production of any additional documents located during that search).

These requests are clearly calculated to lead to the discovery of admissible evidence concerning falsity, negligence, and actual malice in this defamation case, particularly given Musk's production of the results of a different investigation with respect to which he did not assert any privilege and the fact that he produced no documents evidencing communications by him regarding any investigation.  Given the importance of this discovery dispute and the impasse between the

---

[1] As required by L.R. 37-1, the parties have had multiple telephonic and electronic meet and confer attempts to resolve this issue prior to seeking the Court's intervention.  *See* Declaration of G. Taylor Wilson ("Wilson Decl.") at ¶¶ 2-3.

Ex. H 0073

1    parties on this issue, Unsworth reluctantly resorts to the Court's intervention to resolve the dispute.

2         Musk's failure to disclose relevant individuals and information concerning his investigations

3    into Unsworth has persisted throughout discovery. Musk failed to identify any individual who

4    participated in any investigation into Unsworth in his initial disclosures. (*Id.* ¶ 6). Plaintiff first

5    discovered the existence of an investigation of Unsworth undertaken by Howard in Musk's July 18

6    interrogatory responses. (*Id.*).[2] It was only upon review of Musk's first production of documents in

7    this case that Unsworth discovered the identity of Jared Birchall ("Birchall"), a Musk associate who

8    oversaw the Howard investigation at Musk's request.  (*Id.* ¶¶ 6-7, 9 (Birchall Depo. at 20:17-18)).

9    After Unsworth sought to meet and confer, Musk identified by supplemental interrogatory responses

10   Birchall, whose alleged oral communications with Musk as the Howard investigation now form the

11   principal basis for Musk's questionable motion for summary judgment.  (*Id.* ¶¶ 5, 7).

12        During the deposition of Birchall on September 10, 2019, it was revealed that Birchall

13   received from a different investigator the birth certificate of Unsworth's significant other, who is

14   the person Musk falsely accused Unsworth of marrying when she was twelve years old.  (*Id.* ¶ 10

15   (Birchall Depo. at 216:7-218:1)).  Although Musk did not possess any information to substantiate

16   his twelve-year-old-bride claim in the first place, and in fact had contrary information, this birth

17   certificate would make plain that the age of Unsworth's significant other (40). Yet, Birchall was

18   unable or unwilling to disclose the identity of the person who provided the birth certificate, testifying

19   "I believe it was derived through another, you know, relationship that was – that did involve a legal

20   – legal counsel," that the birth certificate was not provided by "a lawyer" but "someone working

21   with a lawyer," that he "do[es]n't know the name of the person" but "could easily find that out,"

22   and that he "do[es]n't know if that lawyer was engaged to work on this matter."  (*Id.*).  The identity

23   _____

24        [2] Notably, Musk did not even disclose the fact that Howard's true identity is Howard-*Higgins* –
     an Englishman with a reported criminal history who was apparently incarcerated just months before
25   he began working for Musk.  (Wilson Decl. ¶ 21).  Unsworth learned Howard's true name on August
     23, 2019, with less than a month left in discovery, when Musk served a subpoena on Unsworth
26   seeking production of any communications with "James Howard Higgins."  (*Id.* ¶ 20).  Notably,
     Howard claims in his written correspondence to have infiltrated the law firm of Unsworth's UK-
27   based lawyers during his investigation to obtain insider information about Unsworth and his case.
     (*Id.* ¶ 22 (MUSK_000203, 000205, 000209)). Musk has provided no explanation for withholding
28   Howard-Higgins' true identity, thereby frustrating Unsworth's ability to obtain discovery from him.

Ex. H 0074

of the individual who apparently conducted a second investigation into Unsworth, when that individual was retained for the stated purpose of "seeking verification," the facts discovered in that investigation, and when those facts were disclosed to Birchall and/or Musk have never been identified by Musk in discovery despite both interrogatories and document requests calling for that information, which is relevant to falsity, negligence, and actual malice; the pending motion for summary judgment; and an eventual trial.  (*Id.* ¶¶ 10-11 (Birchall Depo. 217:24-218:1)).  In response to Unsworth's written discovery requests, Musk offered only boilerplate objections without stating whether any documents were, in fact, being withheld.  (*Id.* ¶ 6).

Unsworth understood during e-mail and telephonic meet and confers that the birth certificate and identity of the person who provided it would be provided by Musk, but Musk has subsequently claimed that information is protected by the work product doctrine, again in boilerplate fashion.  (*Id.* ¶ 12).  Although Unsworth immediately requested a privilege log when Musk first asserted the privilege on September 22, Musk has never provided a privilege log during this case.  (*Id.* ¶ 3, 13).

Having failed to disclose the existence of an apparent second investigation into Unsworth, the identity of the investigator, or a privilege log consistent with Rule 26, and moreover, having relied on the Howard investigation to support his defenses, Musk cannot now claim that this second investigation is shielded from discovery. Accordingly, Unsworth seeks a court order as set forth above, requiring Musk to (1) produce responsive non-privileged documents, particularly including Tik's birth certificate/ID card; (2) identify the investigator; (3) make the investigator available for a deposition; and (4) produce a privilege log of all documents prepared by, and communications with, the investigator.  Unsworth further seeks sanctions in the form of his attorneys' fees and costs in litigating against Musk's frivolous positions on this issue.

Additionally, Unsworth has been unable to obtain a written statement from Musk as to what steps he has taken, if any, to search any back-up storage of his destroyed cell phone, and Unsworth therefore seeks a Court Order requiring such disclosure.  In an early meet and confer effort, Musk's counsel represented that Musk had changed phones and that no record of his prior phone was available.  (*Id.* ¶ 15).  Subsequently, Musk testified that he changed phones "three months ago" but that his phone may have been backed-up and stored on his iCloud, but he was not

1    sure.  (*Id.* ¶ 16 (Musk Depo. at 313:6-315:18)).  Unsworth has since sought confirmation of

2    Musk's attempts to search his iCloud for responsive documents, and while Musk has made blanket

3    representations that no responsive documents exist, Unsworth has not received confirmation of

4    any actual steps taken to search that iCloud back-up.  (*Id.* ¶¶ 3, 17).  Instead, Musk has simply

5    represented that third-party records custodian affidavits implicitly confirm that his iCloud (if it

6    exists at all), does not contain responsive information.  (*Id.*).

7           **B.      Musk's Preliminary Statement**

8           [INSERT]

9    **II.    DISCOVERY DISPUTES AT ISSUE**

10          **A.      Unsworth's Verbatim Discovery Requests and Musk's Responses**

11                  **<u>Unsworth's Interrogatory Request and Musk's Response</u>**

12   **<u>INTERROGATORY NO. 3</u>:**

13          Please identify every investigation, including every inquiry, analysis, or background check,

14   concerning Plaintiff undertaken by you or any person on your behalf or for your benefit, including

15   the dates of the investigation, the individuals who conducted or assisted with the investigation, a

16   description of the work undertaken in the investigation, and a description of the investigation's

17   findings.

18   **<u>Responses and Objections to Interrogatory No. 3</u>:**

19          Defendant incorporates his General Objections herein. Defendant further objects to

20   Interrogatory No. 3 on the grounds that it is vague and ambiguous. Defendant further objects to

21   Interrogatory No. 3 on the grounds that it is vague and ambiguous with regard to the terms

22   "investigation," "inquiry," "analysis," "background check," and "benefit." Defendant further

23   objects to Interrogatory No. 3 on the grounds that it seeks information that is outside of his

24   possession, custody, or control, or that is equally available to Plaintiff. Defendant further objects to

25   Interrogatory No. 3 on the grounds that it seeks information that is not relevant and not reasonably

26   calculated to lead to the discovery of admissible evidence. Defendant further objects to Interrogatory

27   No. 3 to the extent that it seeks to elicit information subject to and protected by the attorney-client

28   privilege, the attorney work product doctrine, the joint defense privilege, the common interest

Ex. H 0076

doctrine, and/or any other applicable privilege or immunity. Defendant further objects to Interrogatory No. 3 on the ground that it prematurely calls for the identification of expert witnesses or testimony at this stage of litigation. Defendant further objects to Interrogatory No. 3 on the grounds that it is compound and comprises discrete subparts resulting in separate interrogatories.

Subject to and without waiving the foregoing General Objections and Specific Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Musk responds:

James Howard of Jupiter Military & Tactical Systems conducted an investigation, beginning on or about August 15, 2018. Defendant will produce documents relating to the work done and the findings of the investigation.

**<u>Unsworth's Document Requests and Musk's Responses</u>**

**<u>REQUEST FOR PRODUCTION NO. 7:</u>**

All documents and communications concerning or relating to any effort by you or your representative to verify the truthfulness or accuracy of the Defamatory Statements, whether before or after the Defamatory Statements were published.

**<u>Responses and Objections to Request for Production No. 7:</u>**

Defendant incorporates his General Objections herein. Defendant further objects to Request No. 7 on the grounds that it seeks information that is outside of his possession, custody, or control. Defendant further objects to Request No. 7 on the grounds that it is vague and ambiguous with regard to the terms "representative," "verify," "accuracy," and "published." Defendant further objects to Request No. 7 as argumentative in that it requires the adoption of improper assumptions including that any statement referenced in this Request was defamatory. Defendant further objects to Request No. 7 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity. Defendant further objects to Request No. 7 on the grounds that the Request is overly broad and unduly burdensome and seeks documents that are not proportional to the needs of the case.

Subject to his General and Specific Objections, Defendant responds as follows:

Ex. H 0077

1   To the extent that such documents exist, are within Defendant's possession, custody, or

2   control, and can be located after a reasonably diligent inquiry, Defendant will produce relevant, non-

3   privileged documents responsive to this request, as Defendant understands it.

4   **REQUEST FOR PRODUCTION NO. 8:**

5   All documents and communications concerning or relating to any investigation concerning

6   Plaintiff by you or by any person on your behalf.

7   **Responses and Objections to Request for Production No. 8:**

8   Defendant incorporates his General Objections herein. Defendant further objects to Request

9   No. 8 on the grounds that it seeks information that is outside of his possession, custody, or control.

10   Defendant further objects to Request No. 8 on the grounds that it is vague and ambiguous with

11   regard to the term "investigation." Defendant further objects to Request No. 8 to the extent that it

12   seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work

13   product doctrine, the joint defense privilege, the common interest doctrine, and/or any other

14   applicable privilege or immunity. Defendant further objects to Request No. 8 on the grounds that

15   the Request is overly broad and unduly burdensome and seeks documents that are not proportional

16   to the needs of the case.

17   Subject to his General and Specific Objections, Defendant responds as follows:

18   To the extent that such documents exist, are within Defendant's possession, custody, or

19   control, and can be located after a reasonably diligent inquiry, Defendant will produce relevant, non-

20   privileged documents responsive to this request, as Defendant understands it.

21   **B.     Unsworth's Position**

22   **a.   Issue #1:  The Unidentified Second Investigation and Investigator**

23   Unsworth seeks a supplemental response to interrogatory number three identifying (1) the

24   identity of the investigator who provided the birth certificate and (2) the dates of the investigation.

25   As the investigator's identity should have been disclosed in Musk's July 18, 2019, interrogatory

26   responses, Unsworth also seeks permission to conduct a deposition of this investigator and/or the

27   relevant members of the investigator's team to discover the facts surrounding this investigation.

28   Further, Unsworth seeks a privilege log for the documents relating to the investigation and

Ex. H 0078

1   responsive to requests for production seven and eight, both because the log will contain information

2   bearing on  Musk's defenses, including a claim of no actual malice, and it will allow for an

3   assessment of the claim of privilege.  A log is required, and will, in any case, reveal the information

4   sought by Unsworth in response to interrogatory number three.  Finally, Unsworth seeks sanctions

5   in the form of attorneys' fees for Musk's failure to abide by his discovery obligations in identifying

6   the investigator and producing a privilege log in the first place, and his stubborn refusal to do so

7   after substantial meet and confer efforts.

8        There appears to be no dispute that the information sought by Unsworth is responsive and

9   calculated to lead to the discovery of admissible evidence, but instead only as to whether it is

10  protected by the work product doctrine.  Thus, Unsworth will skip the litany of statements of law

11  regarding the broad scope of discovery and focus on the work product doctrine.

12       *First*, it is black letter law that Unsworth is entitled to disclosure of the identity of the

13  investigator(s) and dates of the investigation(s), as neither constitutes work product.  *See, e.g.,*

14  *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.*, 2005 WL 1459555, at *4

15  (N.D. Cal., June 21, 2005) ("It is generally accepted that the 'work product doctrine does not protect

16  against the disclosure of facts or the identity of persons from whom the facts are learned.'") (internal

17  citations omitted).  Thus, pretermitting whether any documents and communications concerning this

18  investigation even qualify as work product prepared in anticipation of litigation, the identity and

19  location of individuals possessing relevant knowledge are not work product, and no showing of

20  substantial need is required to obtain this information.  *See, e.g., Burlingame v. County of Calaveras*,

21  2007 WL 2669523, at *2 (E.D. Cal., Sept. 7, 2007) (discussing difference between "opinion work

22  product" and "fact work product" and stating that "while work product immunity protects

23  documents and tangible things, it generally does not protect the underlying facts contained within

24  the document or tangible thing," and noting that "the identity and location of persons having

25  knowledge of any discoverable matter are discoverable").  For the same reason, the dates on which

26  this investigation was undertaken are not protected; this is merely a fact underlying the investigation

27  and does not require the production of any arguably protected tangible materials.  Indeed, as set

28  forth below, the identity of the investigator and dates of the investigation are the precise type of

7

1    information which would have to be provided via a privilege log or other compliant claim of

2    privilege.

3         *Second*, Musk must produce a privilege log or its substantial equivalent consistent with the

4    mandates of Fed. R. Civ. P. 26(b)(5), which provides that "[w]hen a party withholds information

5    otherwise discoverable by claiming that the information is privileged or subject to protection as

6    trial-preparation material, the party must: … (i) expressly make the claim; and … (ii) describe the

7    nature of the documents, communications, or tangible things not produce or disclosed … in a manner

8    that, without revealing information itself privileged or protected, will enable other parties to assess

9    the claim."  Notably, a "party's 'failure to provide sufficient information may constitute a waiver of

10   the privilege." *Friends of Hope Valley v. Frederick Co.*, 268 F.R.D. 643, 650 (E.D. Cal. 2010)

11   (internal citation omitted).

12        The information required to be contained in the privilege log is all that Unsworth requests

13   in response to his interrogatories.  "A judge of this court has stated that '[t]he requisite detail for

14   inclusion in a privilege log consists of [1] a description of responsive material withheld, [2] the

15   identity and position of its author, [3] the date it was written, [4] the identity and position of all

16   addressees and recipients, [5] the material's present location, [6] the specific reasons for its being

17   withheld, including the privilege invoked and grounds thereof." *Id.* at 650-51 (internal citations

18   omitted).  To date, Musk has stated –  late in the meet and confer process – only that "we have

19   reached the conclusion it [the information sought by Unsworth] is privileged and so we are not

20   providing it," and that "Mr. Birchall received the document [the national ID card] on Sept 11th…

21   We are under no obligation to produce a detailed privilege log related to the activities of counsel …

22   We have provided sufficient information for you to evaluate our claim of work product protection,

23   including the date of the communication and the basis for the claim of privilege. … The identity of

24   any investigator is irrelevant and has no bearing on any legal issue."  (Wilson Decl. ¶ 3).  As held

25   in *Friends of Hope Valley*, Musk's vague boilerplate claims of privilege within his response to

26   Unsworth's requests for production and in meet and confer correspondence do not meet the

27   requirements of Fed. R. Civ. P. 26.  *Friends of Hope Valley*, 268 F.R.D at 651 ("One of plaintiff's

28   meet-and-confer letters explains that all of these non-attorney communications 'related directly to

Ex. H 0080

forming a response to a query provided by an attorney or precede and relate to forming a communication to an attorney.'  However, defendant and the court should not be obligated to take plaintiff's blanket assertion at face value as to all the documents withheld.").  *See also Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (establishing this Circuit's rules for waiver of privilege by failure to timely assert the privilege and stating "[w]e hold that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege").  This is especially so because Unsworth is still unaware of the scope of the investigation and the extent of any documents and communications for which Musk now claims protection.

*Third*, Unsworth is entitled to depose the investigator and/or relevant members of the investigator's team to reveal the facts discovered in the investigation as well as how those facts bear on Musk's stated actual malice defense.  Indeed, Birchall has testified with respect to his receipt of this birth certificate that "[w]e may have been looking for verification." (Wilson Decl. ¶ 10 (Birchall Depo. 217:24-218:1)).  If Musk was "looking for verification" beyond the Howard investigation to determine the age of Unsworth's significant other, such an effort is circumstantial evidence of among other things, his state of mind.  Moreover, even if confirmation of her age was disclosed to Musk or Birchall after Musk's accusations to BuzzFeed, it bears on his state of mind in continuing to permit without correction the republication of his false accusations.  Regardless, at a minimum, Unsworth's discovery requests are reasonably calculated to led to the discovery of admissible evidence, the evidence sought is not protected by the work product doctrine, and Musk is not entitled to shield from Unsworth a second investigation on vague claims of privilege.  It is clear that Musk has demonstrated a pattern of hiding and delaying disclosure of the facts about his investigations into, and thus knowledge about, Unsworth. But for Musk's failure to identify the investigator, Unsworth would have deposed this investigator within the discovery period.[3]

---

[3] Unsworth continues to believe that he is entitled to the documents and communications themselves, including because it is unclear if they were created in anticipation of litigation based upon Birchall's testimony, because Unsworth has a substantial need for the documents, and because Musk has waived his right to assert the protection of the work product doctrine.  In compliance with

9

**b.  Issue #2:  Musk's Destruction of His Cell Phone**

In what appears to be conscious spoliation in light of Musk's claims to work product privilege as to the second investigation – i.e., Musk claims his subjective anticipation of litigation at the time of the first Howard-Higgins investigation and second unidentified investigation – Musk got rid of his cell phone only a few ("maybe … three") months ago.  (*Id.* ¶ 16 (Musk Depo. at 313:6-315:18)).[4]  During Unsworth's first attempt to meet and confer on this issue, it was represented that the phone was gone and there was nothing that could be done to recover its lost storage media.  (*Id.* ¶ 15).  Yet, Musk testified during his deposition that his phone records are stored electronically and may have been backed up to his iCloud, and Birchall testified that there may have been texts between him and Musk regarding the Howard investigation (though he was not sure if that was the case).  (*Id.* ¶¶ 10, 16, 18 (Birchall Depo. 10:5-10:22)).  Unsworth has not received any such texts nor any emails by and between Musk and any other person regarding the Howard investigation.  (*Id.* ¶ 14).

In this litigation and in his motion for summary judgment, Musk has attempted to defend his conduct on the basis of actual malice by claiming that certain (false) information was relayed to him orally.  (*Id.* ¶¶ 5, 14).  As a result, following Musk's and Birchall's depositions, Unsworth has repeatedly asked that Musk search his iCloud; in response, Unsworth has received only blanket denials that correspondence exists on the iCloud without ever being told in the affirmative that Musk's iCloud has been searched, when it was searched, or by whom.  Indeed, Musk's counsel has simply stated repeatedly in blanket fashion "[t]here is nothing further on the cloud.  The declarations provided to you are more than sufficient and we have confirmed there is nothing further," that "the IT Professional who confirmed you have everything signed a declaration," and that Tesla, SpaceX, and The Boring Company's production "included a declaration and the SpaceX tech team who

---

L.R. 37-2.1, Unsworth proposed to compromise by receiving a privilege log to assess the merits of the privilege assertion rather than seeking production of the investigator's documents and communications themselves.  Thus, because there is no further compromise, Unsworth seeks here that privilege log so that he and the Court can assess the privilege assertion.

[4] Curiously, despite his testimony that he hired Howard-Higgins because he had received a demand letter from Plaintiff's counsel, Musk has never asserted a work product or anticipation of litigation privilege with respect to the Howard-Higgins investigation.  (Wilson Decl. ¶ 16 (Musk Depo. at 66:3-67:21)).

Ex. H 0082

1   signed that declaration confirmed what I already stated, which is implicit in their declaration." (*Id.*

2   ¶¶ 3, 17).  Yet, the declarations received by Unsworth are merely form records custodian

3   certifications of third-parties — there is no indication that they possess. control, or have searched

4   Musk's iCloud aback-up account, and there is no indication that they were even aware that Musk

5   had destroyed his cell phone and that his iCloud needed to be searched. (*Id.* ¶¶ 3, 17, 19).[5]  There

6   is no good reason why Musk will not represent and confirm in meet and confer efforts that his iCloud

7   has been searched other than blandly representing that form third-party custodian affidavits covered

8   the issue unless he has not completed the search.

9        Thus, in light of Musk's apparent destruction of his cell phone earlier this year *while*

10  *litigation was pending*, Unsworth asks the Court to require Musk's counsel to state by declaration

11  when the iCloud has been searched, by whom, what search terms were used, and whether the iCloud

12  contained responsive text and/or e-mail records from July-September 2018.[6]

13       **C.**     **Musk's Position**

14       [INSERT]

---

21      [5] In fact, The Boring Company's records custodian affidavit was signed by Birchall as a
representative of "Foundation Security," yet Musk's counsel represented in meet and confer
correspondence that "the SpaceX tech team who signed that declaration" confirmed that Musk's
iCloud has been searched for responsive documents; the records custodian affidavit signed by
Birchall, not the SpaceX tech team, says absolutely nothing about the iCloud and appears to have
been signed by him on behalf of a security company called Foundation Security.  (Wilson Decl. ¶¶
3, 19).  Before Musk sent the Boring Company's records custodian affidavit, Musk never disclosed
the existence of "Foundation Security"—which appears to be a detective company for which
Birchall (who spearheaded Musk's investigation into Unsworth) serves as the CEO.

[6] Rather than seeking a discovery master and/or an order compelling a forensic image of Musk's
electronic storage, which Unsworth may well be entitled to in light of Musk's destruction of his cell
phone, Unsworth has sought to compromise on this issue merely by requiring a written statement of
the efforts undertaken to search for Musk's personal electronic records.

Ex. H 0083

DATED:  September __, 2019

Respectfully submitted,
L. LIN WOOD, P.C.


By _____/s/ Lin Wood_____
L. LIN WOOD, P.C.
L. Lin Wood (admitted *pro hac vice*)
lwood@linwoodlaw.com
Nicole J. Wade (admitted *pro hac vice*)
nwade@linwoodlaw.com
Jonathan D. Grunberg (admitted *pro hac vice*)
jgrunberg@linwoodlaw.com
G. Taylor Wilson (admitted *pro hac vice*)
twilson@linwoodlaw.com
1180 West Peachtree Street, Ste. 2040
Atlanta, Georgia 30309
404-891-1402
404-506-9111 (fax)

-and-

CHATHAM LAW GROUP
Robert Christopher Chatham
chris@chathamfirm.com
CA State Bar No. 240972
3109 W. Temple St.
Los Angeles, CA 90026
213-277-1800

-and-

WEISBART SPRINGER HAYES, LLP
Matt C. Wood (admitted *pro hac vice*)
mwood@wshlpp.com
212 Lavaca Street, Ste. 200
Austin, TX 78701
512-652-5780
512-682-2074 (fax)

*Attorneys for Plaintiff Vernon Unsworth*

Ex. H 0084

1   DATED:  September __, 2019     QUINN EMANUEL URQUHART &
2                    SULLIVAN, LLP

3

4            By _____ /s/ DRAFT ONLY _____

5                 Michael T. Lifrak (Bar No. 210846)
                  michaellifrak@quinnemanuel.com
6                 Robert M. Schwartz (Bar No. 117166)
                  robertschwartz@quinnemanuel.com
7                 Jeanine M. Zalduendo (Bar No. 243374)
                  jeaninezalduendo@quinnemanuel.com
8                 865 South Figueroa Street, 10th Floor
                  Los Angeles, California 90017-2543
9                 Telephone: (213) 443-3000

10               Alex B. Spiro (admitted pro hac vice)
11              alexspiro@quinnemanuel.com
                51 Madison Avenue, 22nd Floor
12              New York, New York 10010
                Telephone: (212) 849-7000
13

14             *Attorneys for Defendant Elon Musk*

15

16   Pursuant to L.R. 5-4.3.4(a)(2)(i), the filer
17   hereby attests that all signatories listed, and on
     whose behalf this filing is submitted, concur in
18   the filing's content and have authorized the
     filing.
19

     _/s/*L. Lin Wood*_
20

21

22

23

24

25

26

27

28

Ex. H 0085

13

# EXHIBIT I

# EXHIBIT I

**Jonathan Grunberg**

| | |
|---|---|
| **From:** | Taylor Wilson |
| **Sent:** | Wednesday, September 25, 2019 6:07 PM |
| **To:** | Alex Spiro; Robert Schwartz; Alex Bergjans; Jeanine Zalduendo; Michael Lifrak |
| **Cc:** | Lin Wood; Jonathan Grunberg; Nicole Wade; Matt Wood; Chris Chatham |
| **Subject:** | Unsworth v. Musk - Plaintiff's Motion to Compel |
| **Attachments:** | 2019-09-25 Stipulation re Motion to Compel_LLWPC Draft.pdf; 2019-09-25 GTW Declaration_Motion to Compel.pdf; 2019-09-25 Exhibits to Wilson Decl_Motion to Compel_size reduced.pdf |

**Importance:** High

Counsel:

I received a bounce back for this e-mail from each of you a few minutes ago, so I am re-sending after reducing the size of the attachments.  Please confirm your receipt of this e-mail and three attachments.

Pursuant to L.R. 37-2, attached please find plaintiff's portion of the Joint Stipulation on Plaintiff's Motion to Compel as well as the supporting Declaration and exhibits referenced in Lin's prior e-mail.  Per L.R. 37-2.2, we will await your portion and assimilate for the parties' final approval before filing.

Thank you.

_____

**G. Taylor Wilson**
Partner

L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, Georgia 30309
Telephone: (404) 891-1402
Direct Dial: (678) 365-4107
Facsimile: (404) 506-9111
E-mail: twilson@linwoodlaw.com

*** PLEASE NOTE OUR NEW SUITE NUMBER

Ex. I 0087

# EXHIBIT J

# EXHIBIT J

 

.ıll AT&T  5G E                    8:00 AM                    ⚹ 97% ▰

‹ 6                                   E

                                   Elon ›

                        Jul 5, 2018, 10:53 PM

Thai consul-general just texted that the PM would like you to send an "assessment team" to check out the terrain.

I responded that we will happily help but that you should speak w the PM and that we would want to speak w someone in the field to gather data, esp on total volume of water to be removed.

Am still surprised this can't be solved w pumps/power/minimizing-water-intrusion - note the news reported today they mistakenly pumped water back into the cave and wasted a whole day.

Saw your tweet on the nylon

iMessage

         



EXHIBIT 98
Deponent Davis
Date 10|1|19 Rptr. NN
WWW.DEPOBOOKPRODUCTS.COM

EXJ 0089







Got this made overnight. "Body bubble"

Team flying out today/ tomorrow. Chris Bowman was already there plus 4 others: zack (general), Vince (pumps), chris (fluids), and Flo (drilling). Have survey teams ready to go if deemed useful.

Jul 6, 2018, 12:31 PM

Ok



@thanr · 45m
Replying to @thanr @elonmusk and @JamesWorldSpace
50Hz freq

@thanr · 47m
Replying to @elonmusk and @JamesWorldSpace
All 3-phases
All trucks at 400V. 500kW, 500kW, 120kW, 60 kW, 60 kW
Current load at about 280A per phase.



Ex. J 0092





within next 5 min " to you hah!

Ok :)

Are you in touch with the British divers?

I just got their emails and reached out. No response yet but that was 15 min ago.

Currently on phone w Will's friend Bill Stone, who is clearly a badass diver. Wikipidedia Page and all. He thinks we should go rigid.

Ok

Makes sense

Actually, a pressurized pod will be very rigid

Ex. J 0094



be very rigid

If it is lined with foam on the inside, that will protect against injury

Bill Stone wasn't the tool who gave the "I'm an expert lecture", was he?

Adding mechanical bumpers to Wing's bubble and seeing if we can "smooth out" the tunnel walls to minimize edges.  Not sure what inside is like but will ask.

In parallel, eby's spacesuit Team constructing their own pod.

Both units will be on your plane tonight.



# EXHIBIT K

# EXHIBIT K





EXHIBIT 105
Deponent Arnold
10/1/19   Rptr NN
WWW.DEPO...
Ex. K-0098

# EXHIBIT L

# EXHIBIT L

**Jonathan Grunberg**

| | |
|---|---|
| **From:** | Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com> |
| **Sent:** | Wednesday, October 2, 2019 10:26 PM |
| **To:** | Taylor Wilson; Lin Wood; Jonathan Grunberg; Nicole Wade; Matt Wood; 'Chris Chatham' |
| **Cc:** | Alex Spiro; Robert Schwartz; Alex Spiro; Michael Lifrak |
| **Subject:** | Unsworth v. Musk - Plaintiff's Motion to Compel |
| **Attachments:** | 11098033_7_Musk Section - Stipulation re Motion to Compel.DOCX; Decl. of M. Lifrak ISO Motion to Compel.pdf; Lifrak Exhs. Combined.pdf; 11104518_1_Birchall Decl. ISO Motion to Compel.pdf |

Counsel,

Attached please find Mr. Musk's portion of the joint stipulation on Plaintiff's Motion to Compel.  Please let us review the final combined version of the stipulation prior to filing.

Thank you,
Jeanine

**From:** Taylor Wilson [mailto:twilson@linwoodlaw.com]
**Sent:** Wednesday, September 25, 2019 3:07 PM
**To:** Alex Spiro <alexspiro@quinnemanuel.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Michael Lifrak <michaellifrak@quinnemanuel.com>
**Cc:** Lin Wood <lwood@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Nicole Wade <nwade@linwoodlaw.com>; Matt Wood <mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>
**Subject:** Unsworth v. Musk - Plaintiff's Motion to Compel
**Importance:** High

[EXTERNAL EMAIL]

Counsel:

I received a bounce back for this e-mail from each of you a few minutes ago, so I am re-sending after reducing the size of the attachments.  Please confirm your receipt of this e-mail and three attachments.

Pursuant to L.R. 37-2, attached please find plaintiff's portion of the Joint Stipulation on Plaintiff's Motion to Compel as well as the supporting Declaration and exhibits referenced in Lin's prior e-mail.  Per L.R. 37-2.2, we will await your portion and assimilate for the parties' final approval before filing.

Thank you.

———————————————
**G. Taylor Wilson**
Partner

L. LIN WOOD, P.C.
1180 West Peachtree Street

Ex. L 0100

Suite 2040
Atlanta, Georgia 30309
Telephone: (404) 891-1402
Direct Dial: (678) 365-4107
Facsimile: (404) 506-9111
E-mail: twilson@linwoodlaw.com

*** PLEASE NOTE OUR NEW SUITE NUMBER

Ex. L 0101

# EXHIBIT M

# EXHIBIT M

### B.    Musk's Preliminary Statement[1]

This motion is born of Plaintiff Vernon Unsworth's desperation over the crumbling of his case.  With Musk's summary judgment motion pending, and unable to counter Musk's showing that Unsworth cannot prove his case as to any of the statements at issue, Unsworth seeks to invade the work product of Musk's attorneys.  There is no basis to do so.  Unsworth is simply not entitled to discovery into the strategy of Musk's attorneys, the investigations they directed, or the facts that they uncovered in anticipation of threatened litigation.

This improper incursion into privileged information is the entirety of what Unsworth seeks through this motion.  The information Unsworth is trying to obtain was the fruit of an investigation undertaken at the direction of Musk's counsel, which began on September 7, 2018, *after* one of Unsworth's attorneys, Lin Wood, had publicly posted on Twitter a litigation threat and demand letter.  The investigator starting providing information to Musk's attorneys on September 11, 2018, less than a week before Unsworth filed this lawsuit.  Birchall Decl. at ¶ 5.  These facts alone demonstrate that the requested information is protected work product and not subject to discovery.  Unsworth's lawyers know all of this.  Remarkably, they omitted it from their motion.

None of the relief Unsworth seeks has any basis in fact or law:

***First***, Unsworth cannot obtain a "production of documents" from the investigation directed by counsel.  Even to the extent the documents or information sought are "factual" in nature, such "fact work product" remains protected unless a party has shown "substantial need" and "an inability to secure the substantial equivalent of the materials by alternate means."  Unsworth has not even attempted to make such a showing.  Indeed, the one example he cites – the national identity card of Unsworth's Thai "wife" – proves the point.[2]  Certainly he and his "wife" already

---

[1]  Unsworth's motion initially included a request that Musk confirm that he has searched his iCloud account for responsive materials.  Musk submitted a detailed declaration on this issue, which resolved it.  Lifrak Decl. ¶ 3.

[2]  Musk offered to compromise on Unsworth's requests regarding the investigator by providing him with Tik's national identity card.  Wilson Decl. Ex. A (September 23, 2019 Email from Alex Spiro).  Unsworth rejected this offer and demanded the additional relief sought in this motion.  *Id.* (September 23, 2019 Email from L. Lin Wood).

1   have her national ID card, her birth certificate, and other proof of her age.  And any factual

2   information the investigator could have transmitted to Musk's counsel about Unsworth, Unsworth

3   already knows himself.

4     **Second**, for the same reasons, Unsworth is not entitled to the identity of the investigator

5   nor to any deposition of him.  The investigator is not a fact witness.  He is the agent of the

6   attorneys for whom he was working.  The only case Unsworth cites in support of this argument

7   stands for the unremarkable proposition that a party cannot withhold the identity of fact witnesses

8   even if they were discovered through an investigation directed by counsel.  That is not the issue

9   here.  Musk has disclosed any such witnesses.  No case Unsworth cites allows a party to obtain

10  discovery from a private investigator hired by counsel in anticipation of litigation or the identity of

11  such investigator.

12    **Third**, Unsworth is not entitled to a detailed privilege log concerning the investigator's

13  work.  Rule 26 does not require the logging of documents withheld for privilege, especially where

14  doing so could reveal the strategy of counsel or other protected information.  Musk has provided

15  Unsworth all information necessary to evaluate the privilege claim: that the investigation was

16  conducted at the direction of counsel, the date that his "wife's" national identity card was sent by

17  the investigator to counsel, and the basis for its withholding.  That is all that Rule 26 requires.  *See*

18  Wilson Decl. Ex. B.  Moreover, there is no requirement of a log when litigation is imminent or

19  after a complaint has been filed, which were the circumstances here.[3]

20    **Finally**, Unsworth's motion is faulty for other reasons.  What Musk's counsel discovered

21  through their own investigation after Musk made allegedly defamatory statements is not relevant

22  to any claim or defense.  Nonetheless, Musk produced the full files of a prior investigation

23  conducted by a different investigator, Mr. Howard, because (a) it was not directed by counsel; and

24  (b) it related to the basis for Musk's allegedly defamatory statements.[4]  Neither circumstance is

25

26  [3]  Notably, Unsworth has failed to do the very thing he demands here.  He has produced **no**
    privilege log during the course of discovery in this case.

27  [4]  Specifically, Howard reported to Musk that Unsworth was a fixture in Pattaya Beach, Thailand

28  – a locale notorious for prostitution and child trafficking, that he had a taste for young Thai girls,

present in the information Unsworth seeks by his motion.  Moreover, Unsworth's motion is late.  Fact discovery is over.  Unsworth has been aware since July that Musk's attorney had directed an investigation of Unsworth, and Unsworth's attorneys asked questions about it during depositions in August.  Unsworth has no explanation for waiting weeks and weeks, until October and with summary judgment motions pending, to raise this dispute and to seek to invade the attorney work product of Musk's lawyers.

The Court should deny Unsworth's Motion to Compel in its entirety.

### C.     **Musk's Position**

### 1.     **Unsworth misstates the facts.**

Unsworth's section of the joint stipulation is rife with factual misstatements, the more significant of which are as follows:

First, Unsworth's statement that Musk's "failure to disclose relevant individuals and information concerning his investigations into Unsworth has persisted throughout discovery" is false.  It is also ironic given that Unsworth himself has persistently refused to produce relevant, non-privileged information.  For example:

- Unsworth's alleged Thai "wife," Tik, testified in deposition that she and Unsworth communicate through WhatsApp and Line.  Yet, Unsworth has not produced a single chat log or document related to those communications on either application.  In fact, Unsworth has produced only three emails between him and Tik.  He has produced no other electronic communications between the two of them.  Lifrak Decl. Ex. 2.

- Unsworth belatedly produced 100 pages of key documents over a month *after* his deposition and several weeks *after* the discovery cutoff.  The production included text messages between Unsworth and his British wife, Vanessa.  *Id.*.

- Unsworth's belated production identifies 632 photographs, 12 video files, and 37

that he whore-mongered his way through the go-go bars of Thailand, that his only friends were his "sexpat" peers, and that he married his Thai wife when she was a teenager, after starting a relationship when she was a young girl.  Declaration of Jared Birchall in support of Musk's Motion for Summary Judgment [DKT 65] ("Birchall MSJ Decl.") at ¶¶ 18-19, Ex. E.  Musk sent an email to BuzzFeed News repeating some of this information, making clear it could not publish any of his statements because they were "off the record."  Declaration of Elon Musk in support of Musk's Motion for Summary Judgment [DKT 60] ("Musk MSJ Decl.") at ¶43, Ex. L.  Those statements by Musk form the basis of part of Unsworth's defamation claim.  Complaint, ¶¶ 88-97.

Ex. M 0105

other files, which he has refused to produce. *Id.*

- Unsworth has failed to produce numerous communications between him and his agent, studios, and others that reflect his persistent efforts to cash in on his fame from the role he played in the cave rescue. *Id.*[5]

Second, Musk did not "fail" to identify in his Rule 26 initial disclosures either Howard or any other investigator. Rule 26 requires the identification of witnesses "that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Musk does not plan to call Howard or any other investigator as a witness at trial or otherwise. As noted above, Musk readily produced all documents regarding Howard's investigation (including all his communications with Birchall) because the investigation was not directed by counsel and formed the basis for some of Musk's allegedly defamatory statements. Lifrak Decl. at ¶ 5.

Third, Unsworth blames Musk for the fact that the full name of James Howard-Higgins was unknown to him until August 23, 2019. However, Musk never became aware of the "Higgins" portion of Howard's name during his investigation because Howard/Howard-Higgins did not use it in any reports or correspondence. More importantly, the lawyers at one of Unsworth's law firms know Howard/Howard-Higgins and have even spoken to him about the case. Wilson Decl. Ex. H (at MUSK000205, 208-09). Thus, the notion that his true identity has been "hidden" is laughable.

Fourth, Unsworth's assertion that Musk "hid" the existence of counsel's later investigation from him is incorrect. Documents produced by Musk on July 17, 2019 evidence Birchall telling Howard that he had obtained Tik's "birth record" via other means. Lifrak Decl. Ex. 3. Unsworth's counsel was aware of this, sufficiently so to question Birchall about it at his deposition. Wilson Decl., Ex. D (Birchall Depo. 216: 7-9).

### 2. <u>Unsworth is not entitled to production of attorney work product.</u>

All of the information Unsworth seeks to obtain through this Motion to Compel is attorney work product created in anticipation of litigation. The facts are not disputed:

---

[5] Unsworth's attorneys have refused to reconsider their position on these issues. As a result, Musk reserves his right to file a separate motion to compel, as discussed further below.

Ex. M 0106

- Birchall hired Howard on August 15, 2018.  Birchall MSJ Decl. at ¶ 4.

- Howard reported highly negative information to Birchall throughout August 2018.  *Id.* at ¶¶ 11-19.

- Musk repeated some of that information in an email to BuzzFeed News, with the statement that it was "off-the-record."  BuzzFeed published the email anyway, and Unsworth sued Musk as a result.  Musk MSJ Decl. at ¶ 43.

- Musk has produced all communications with Howard.  Lifrak Decl. ¶ 5.

- On August 28, 2018, Unsworth's counsel, Lin Wood, tweeted a demand letter to Musk.  Lifrak Decl. Ex. 4.

- On September 7, 2018, Musk's counsel at Cooley hired the investigator whose information Unsworth now seeks.  Birchall Decl. ¶ 4.

- The investigator provided Tik's national identity card to Cooley and Birchall on September 11, 2018.  Birchall Decl. ¶ 5.

Because the investigator was working for Cooley in preparation for litigation (which Unsworth had already publicly threatened and was a week away from filing), the investigator is an agent of the attorney.  His work and the fruits thereof are protected by the attorney work product doctrine ***to the same extent an attorney's work would be protected***.  *See Coito v. Superior Court*, 54 Cal. 4th 480, 488 (2012) ("material created by or derived from an attorney's work reflecting the attorney's evaluation of the law or facts" including "witness statements obtained as a result of interviews conducted by an attorney, or by an attorney's agent at the attorney's behest, constitute work product protected by section 2018.030."); *see also United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (the attorney work product "doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system.  One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."); *People v. Superior Court (Jones)*, 34 Cal. App. 5th 75, 81 (2019), *review granted* July 24, 2019 No. S255826 ("California's work product protection exists to encourage attorneys to thoroughly prepare their cases for trial

1   and to investigate the favorable and unfavorable aspects of their cases, as well as to prevent

2   attorneys from 'taking undue advantage of their adversary's industry and efforts,'" and work

3   product "includes materials compiled by investigators and other agents in preparation for trial.").

4   The production of materials created during or found as a result of the Cooley-led investigation are

5   therefore not discoverable.

6       Moreover, contrary to Unsworth's position, factual material obtained during the

7   investigation, such as Tik's national ID card, is also protected work product because the release of

8   documents containing such factual information would necessarily require production of "material

9   created by or derived from an attorney's work reflecting the attorney's evaluation of the law or

10  facts." *Coito*, 54 Cal. 4th at 488.

11      The case Unsworth relies on, *Burlingame v. County of Calaveras*, 2007 WL 2669523 (E.D.

12  Cal., Sept. 7, 2007), does not suggest otherwise.  That case makes clear that factual information

13  that is part of protected communications is discoverable *only* when it is unavailable via alternative

14  means, an aspect of the case Unsworth failed to mention.  *See id.* ("fact work product" can be

15  ordered produced only "if the requesting party demonstrates both a 'substantial need' and 'an

16  inability to secure the substantial equivalent of the materials by alternate means without undue

17  hardship'" (citations omitted)); *see also* F.R.C.P 26(b)(3).  Moreover, the court in *Burlingame*

18  denied the motion to compel for this very reason – the moving party did not demonstrate

19  substantial need and a lack of alternative means for obtaining the information.  *See Burlingame* at

20  *3.  Here, Unsworth has access to Tik's national identity card or other proof of her birthday, and

21  he does not need to demand it from Musk.  The same holds true for the other factual information

22  the investigator uncovered regarding Unsworth.  Unsworth already knows about himself, and the

23  information is otherwise available (or else the investigator could not have obtained it).

24      **3.    Unsworth is not entitled to a deposition of the investigator or his identity.**

25      For the same reasons, any request to obtain information from the investigator through a

26  deposition is also improper.  An agent cannot be deposed unless an attorney standing in the same

27  shoes could be deposed.  *Daniels v. Hadley Mem'l Hosp.*, 68 F.R.D. 583, 588 (D.D.C. 1975).

28  Here, Unsworth has not even attempted to make such a showing.  Nor could he, as he would have

Ex. M 0108

1   to demonstrate that "no other means exist to obtain the information than to depose opposing

2   counsel" and "the information sought is … nonprivileged."  *Littlefield v. Nutribullet, LLC*, 2017

3   WL 10438897, at *3 (C.D. Cal. Nov. 7, 2017).  Unsworth has not and cannot demonstrate either.

4   Nor does any basis exist for Unsworth to discover the identity of the investigator.  The

5   only case Unsworth cites for this proposition, *Plumbers & Pipefitters Local 572 Pension Fund*,

6   2005 WL 145955 (N.D. Cal June 21, 2005), held simply that a party can be compelled to "disclose

7   the identity of persons having knowledge" of relevant facts, even if they had been interviewed by

8   counsel.  *Id*. at *4.  The investigator here, however, is not a fact witness, unlike the individuals at

9   issue in *Plumbers*, and has no first-hand knowledge of anything.  Musk has already timely

10  disclosed all of the witnesses who do.

11  Moreover, Unsworth does not need to know the name of the investigator Musk's counsel,

12  Cooley, hired in order to evaluate the claim of privilege asserted over the investigation materials.

13  Rule 26(b)(5)(a) requires the disclosure only of information sufficient to "enable other parties to

14  assess the claim" of privilege.  The name of an investigator does not render the investigator's

15  findings any more or less privileged.

16      **4.      Unsworth has sufficient information to assess Musk's privilege claim.**

17  Musk is not required to produce a privilege "log" concerning the investigation.  As noted

18  above, Rule 26 requires that Musk "describe the nature of the documents, communications, or

19  tangible things not produced or disclosed" in a "manner that, without revealing information itself

20  privileged or protected, will enable other parties to assess the claim."  *See* F.R.C.P. 26(b)(5)(a).  A

21  privilege log is simply one way to enable a party to assess the claim of privilege.  *See Hully*

22  *Enters. v. Baker Botts LLP,* 286 F. Supp. 3d 1, 7 (D.D.C. 2017) ("[W]hen a discovery request

23  demands production of an attorney's records in connection with representation of a client,

24  invocation of the protections of the attorney-client privilege and work-product doctrine may be

25  effective without requiring a detailed privilege log.  Otherwise, any objection to the scope of a

26  discovery demand would be rendered moot because interposing that objection would trigger the

27  very burdensome obligation to prepare a privilege log that the objection would be intended to

28  avoid.").

Ex. M 0109

1          Even the case Unsworth cites, *Friends of Hope Valley v. Frederick Co.*, does not hold

2   otherwise.  *See* 268 F.R.D. 643, 651 (E.D. Cal. 2010) ("[W]hether the requisite information

3   [necessary to assess privilege] is provided in a particular format is not dispositive.").[6]  Musk has

4   provided Unsworth all information necessary to evaluate the privilege claim: (1) the date the

5   investigation began, (2) that it was conducted at the direction of counsel, (3) the date the

6   investigator sent a copy of Tik's national identity card to Cooley, (4) that it was a national identity

7   card, and, (5) the basis for its withholding.  That is all Rule 26 requires.  Unsworth has all of the

8   information he needs to assess the privilege claim.

9          Moreover, most jurisdictions, including this one, do not require the logging of privileged

10  materials created when litigation is imminent or after a complaint has been filed.  *See In re Snap*

11  *Inc. Sec. Litig.*, 2018 WL 7501294, at *1 (C.D. Cal. Nov. 29, 2018) ("Courts in this circuit

12  routinely deny a motion to compel a privilege log of attorney-client communications or work

13  product dated after commencement of litigation."); *Frye v. Dan Ryan Builders, Inc.*, 2011 WL

14  666326, at *7 (N.D.W.Va. Feb. 11, 2011) (party did not have to produce a privilege log for its

15  litigation file).

16         **5.       The information sought is irrelevant.**

17         The information Unsworth demands is not discoverable.  It is not "relevant to any party's

18  claim or defense" within the meaning of Federal Rule of Civil Procedure 26(b)(1).  "The party

19  moving to compel bears the burden of demonstrating why the information sought is relevant and

20  why the responding party's objections lack merit."  *Saucedo v. McKesson Med.-Surgical, Inc.*,

21

---

22  [6]  In *Friend of Hope Valley*, the court did *not* indicate that a privilege log is the only acceptable
    way to communicate information that would allow an opposing party to assess a claim of

23  privilege.  Further, and most importantly, the communications at issue in *Friends of Hope Valley*
    were among non-attorneys.  Plaintiff's privilege log was deficient because it did not allow the

24  Court to assess why "communications among non-attorneys" were privileged.  The subject of
    Unsworth's discovery request—for communications and documents transmitted from an

25  attorney's agent to an attorney—is not analogous.  *Id*.  Finally, in *Friends of Hope Valley*, plaintiff
    "just copied the subject line from the e-mail or letter withheld," which was not enough

26  information for the Court or the opposing party to assess the claim of privilege.  *Id*.  Musk has
    provided significantly more information, including the nature of the document withheld, the date it

27  was received, and that it was transmitted from the investigator to Cooley in preparation for this
    litigation.

28

8

Ex. M 0110

1   2017 WL 10591593, at *2 (C.D. Cal. June 2, 2017).  Unsworth has not met his burden of showing

2   the requested information is relevant to any claim or defense in this case.

3        As explained above, Musk, via counsel, did not receive any information from the

4   investigator until September 11, 2018.  This was two weeks after Musk made his allegedly

5   defamatory statements.  What Musk's counsel may have learned about Unsworth after the fact has

6   no bearing on Musk's statements weeks earlier or to whether they were made with actual malice.

7   *See e.g.*, *Saucedo*, 2017 WL 10591593, at *3 (denying plaintiffs' discovery request because

8   "[p]laintiff's Requests for Production are not 'relevant to any party's claim or defense'" (citing

9   Fed. R. Civ. P. 26(b)(1)); *Manigo v. Time Warner Cable, Inc.*, 2016 WL 9281314, at *4 (C.D. Cal.

10  Dec. 29, 2016) (denying plaintiffs' discovery request where "[p]laintiffs have made no showing

11  that the requested information is relevant to any party's claim or defense").

12       **5.      Unsworth's motion is untimely.**

13       Musk produced documents on July 17, 2019, which included communications between

14  Birchall and Howard and referenced a separate investigation—the investigation that is now the

15  subject of this motion.  Musk Decl. Ex. 2.  Unsworth questioned Birchall about this investigation

16  at Birchall's August deposition, and Birchall made clear that the investigation was conducted at

17  the behest of counsel.  Wilson Decl. Ex. D (Birchall Depo. 216:17 – 217:21).

18       The discovery cutoff was September 13.  *See* Joint Rule 26 Report [DKT 54].  Musk filed

19  his summary judgment motion on September 16.  [DKT 58].  On the same day, the parties

20  submitted a joint stipulation (which Judge Wilson has since approved) that Unsworth could take a

21  handful of depositions after the cutoff.  That document made clear that "[t]he Parties have agreed

22  that they will not seek any other depositions except those set forth herein absent exceptional

23  circumstances."  [DKT 64].  Unsworth said nothing about the investigator issue until September

24  17.  Wilson Decl. at Ex. A.  It is now October, and discovery has closed.

25       Musk did not hide anything from Unsworth.  Unsworth was aware of this issue months

26

27

28

Ex. M 0111

ago.  The fact that he waited until after the discovery cutoff to raise it makes it untimely.[7]  District courts "take an active role to ensure that discovery deadlines are adhered to by the parties."  *Aardwolf Indus., LLC v. Abaco Machines USA, Inc.*, 2017 WL 10339007, at *2 (C.D. Cal. Aug. 9, 2017).  As several courts have held, "compliance with the discovery cutoff requires motions to compel be filed and heard sufficiently in advance of the cutoff so that the Court [can] grant effective relief within the allotted discovery time." (*Id.*) (citing cases).

---

[7]  Musk reserves his right to move to compel the outstanding discovery from Unsworth as outlined herein.  Musk's motion will be based upon information culled from documents Musk has demanded for months, which Unsworth finally produced after the September 16 discovery cutoff, on September 23, 2019.  Lifrak Decl. Ex. 5.  Musk had no way of knowing that these new materials would indicate even more withheld documents existed.  Indeed, by way of example, Unsworth testified at his deposition that he did not have an agent.  However, the September 23 production proved this was false – Unsworth did in fact have an agent, and had corresponded with his agent extensively.  Lifrak Decl. Exs. 6, 7.

Ex. M 0112

# EXHIBIT N

# EXHIBIT N

## ICLOUD SEARCH CERTIFICATION

I, _Alex Bradford Stillings_, as a representative employed by _SpaceX_, as a _IT Support Lead_ with expertise in _macOS + iOS support, management, and repairs_. I hereby certify as follows:

A.   On _October 1_, 2019, I was provided access Elon Musk's computer, cell phones, and iCloud account that backs up and stores the contents of his devices.

B.   For security purposes, Mr. Musk regularly changes his cellular device, at which time his old device is imaged, wiped clean, and stored or destroyed.

C.   Upon checking Mr. Musk's accessible cell phones, I became aware that he has engaged the setting on the phones to sync his text messages via iCloud. This setting confirms that searches made on this phone would include his full text message history during the period of time requested.

D.   I assisted Mr. Musk in searching the phones using the following search terms for documents or communications from the period July through September 2018:

- "Unsworth"
- pedo! or rapist or rape! or "child bride"
- "James Howard"
- "Jupiter" and investig! and Unsworth
- (PR or publicity or publish! or market! or press) and ("rescue submarine" or submarine or "rescue capsule" or capsule or "rescue tube" or "Thailand" or rescue)

E.   Based on my review of the preserved data, there are no documents that respond to these terms.

Dated:  10/1/19

Signed by:  _Alex Stillings_

Sworn to and subscribed before me,

This ___ day of _____, 2019.

See attached

_____

NOTARY PUBLIC

My commission expires:_____

Ex. N 0115

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**            GOVERNMENT CODE § 8202

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], *not* Notary)

_Signature of Document Signer No. 1_            _Signature of Document Signer No. 2 (if any)_

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Los Angeles_

MATILDA N. SIMON-FERRIGNO
Notary Public - California
Los Angeles County
Commission # 2174858
My Comm. Expires Dec 8, 2020

_Seal_
Place Notary Seal Above

Subscribed and sworn to (or affirmed) before me
on this _1ST_ day of _October_, _2019_,
by          _Date_            _Month_            _Year_

(1) _Alex Bradford Stillings_

(and  (2)_____ ),
                _Name(s) of Signer(s)_

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____
                _Signature of Notary Public_

──────────────────── OPTIONAL ────────────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*
**Description of Attached Document**
Title or Type of Document: _____  Document Date: _____
Number of Pages: _____  Signer(s) Other Than Named Above: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5910

Ex. N 0116

# EXHIBIT O

# EXHIBIT O

1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Alex Spiro (admitted *pro hac vice*)
2     alexspiro@quinnemanuel.com
    51 Madison Avenue, 22nd Floor
3   New York, New York 10010
    Telephone: (212) 849-7000
4
    QUINN EMANUEL URQUHART & SULLIVAN, LLP
5   Robert M. Schwartz (Bar No. 117166)
      robertschwartz@quinnemanuel.com
6   Michael T. Lifrak (Bar No. 210846)
      michaellifrak@quinnemanuel.com
7   Jeanine M. Zalduendo (Bar No. 243374)
      jeaninezalduendo@quinnemanuel.com
8   865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
9   Telephone: (213) 443-3000

10  *Attorneys for Defendant Elon Musk*

11

12              **UNITED STATES DISTRICT COURT**

13             **CENTRAL DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| 15 VERNON UNSWORTH, | Case No. 2:18-cv-08048 |
| 16      Plaintiff, | Judge: Hon. Stephen V. Wilson |
| 17      vs. | **DEFENDANT ELON MUSK'S RESPONSES AND OBJECTIONS TO PLAINTIFF VERNON UNSWORTH'S FIRST SET OF REQUESTS FOR PRODUCTION** |
| 18 ELON MUSK, | |
| 19      Defendant. | |
| 20 | Complaint Filed: September 17, 2018 Trial Date: December 2, 2019 |
| 21 | |

22  PROPOUNDING PARTY:    Plaintiff Vernon Unsworth

23  RESPONDING PARTY:     Defendant Elon Musk

24  SET NUMBER:           One (1)

25

26

27

28

12.     By responding to the Requests, Defendant does not waive any of his rights to object on any ground to the use of his responses in this or any other proceedings, including at any trial of this action.

13.     By agreeing to search for documents in response to a specific Request, Defendant does not concede that the Request seeks information that is relevant to a claim or defense in this action.  Defendant expressly reserves all further objections to the relevance and admissibility of the information or documents provided, as well as the right to object to further discovery relating to the subject matter of any information provided.

14.     Defendant will not produce confidential documents until the entry of an appropriate protective order regarding the protection of confidential information.

15.     Defendant's responses are based on his current knowledge.  Without any obligation to do so, Defendant expressly reserves the right to supplement, amend, correct, clarify, or modify the responses if and as further information becomes available to him.  Defendant also expressly reserves the right to use or rely on, at any time, subsequently discovered documents or documents omitted from these objections and responses as a result of mistake, error, oversight, or inadvertence.

16.     The foregoing objections and limitations shall be included in Defendant's response to each and every Request.

**SPECIFIC OBJECTIONS AND RESPONSES**

**REQUEST FOR PRODUCTION NO. 1:**

All documents and communications concerning or relating to the Defamatory Statements.

**Responses and Objections to Request for Production No. 1:**

Defendant incorporates his General Objections herein.  Defendant further objects to Request No. 1 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff.

-5-

Defendant further objects to Request No. 1 as argumentative in that it requires the adoption of improper assumptions including that any statement referenced in this Request was defamatory.  Defendant further objects to Request No. 1 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity. Defendant further objects to Request No. 1 on the grounds that the Request is overly broad and unduly burdensome and seeks documents that are not proportional to the needs of the case.

Subject to his General and Specific Objections,  Defendant responds as follows:

To the extent that such documents exist, are within Defendant's possession, custody, or control, and can be located after a reasonably diligent inquiry, Defendant will produce relevant, non-privileged documents responsive to this request, as Defendant understands it.

**REQUEST FOR PRODUCTION NO. 2:**

All documents and communications concerning or relating to Plaintiff.

**Responses and Objections to Request for Production No. 2:**

Defendant incorporates his General Objections herein.  Defendant further objects to Request No. 2 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff. Defendant further objects to Request No. 2 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity. Defendant further objects to Request No. 2 on the grounds that the Request is overly broad and unduly burdensome and seeks documents that are not proportional to the needs of the case.

ELON MUSK'S RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET OF REQUESTS FOR PRODUCTION

1  <u>Responses and Objections to Request for Production No. 6</u>:

2      Defendant incorporates his General Objections herein.  Defendant further

3  objects to Request No. 6 on the grounds that it seeks information that is outside of

4  his possession, custody, or control.  Defendant further objects to Request No. 6 as

5  argumentative in that it requires the adoption of improper assumptions including

6  that any statement referenced in this Request was defamatory.  Defendant further

7  objects to Request No. 6 to the extent that it seeks to elicit information subject to

8  and protected by the attorney-client privilege, the attorney work product doctrine,

9  the joint defense privilege, the common interest doctrine, and/or any other

10  applicable privilege or immunity.  Defendant further objects to Request No. 6 on the

11  grounds that the Request is overly broad and unduly burdensome and seeks

12  documents that are not proportional to the needs of the case.

13      Subject to his General and Specific Objections,  Defendant responds as

14  follows:

15      To the extent that such documents exist, are within Defendant's possession,

16  custody, or control, and can be located after a reasonably diligent inquiry, Defendant

17  will produce relevant, non-privileged documents responsive to this request, as

18  Defendant understands it.

19  <mark>**REQUEST FOR PRODUCTION NO. 7:**</mark>

20      All documents and communications concerning or relating to any effort by

21  you or your representative to verify the truthfulness or accuracy of the Defamatory

22  Statements, whether before or after the Defamatory Statements were published.

23  <mark><u>**Responses and Objections to Request for Production No. 7:**</u></mark>

24      Defendant incorporates his General Objections herein.  Defendant further

25  objects to Request No. 7 on the grounds that it seeks information that is outside of

26  his possession, custody, or control.  Defendant further objects to Request No. 7 on

27  the grounds that it is vague and ambiguous with regard to the terms "representative,"

28  "verify," "accuracy," and "published."  Defendant further objects to Request No. 7

-10-

as argumentative in that it requires the adoption of improper assumptions including that any statement referenced in this Request was defamatory.  Defendant further objects to Request No. 7 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity. Defendant further objects to Request No. 7 on the grounds that the Request is overly broad and unduly burdensome and seeks documents that are not proportional to the needs of the case.

Subject to his General and Specific Objections,  Defendant responds as follows:

To the extent that such documents exist, are within Defendant's possession, custody, or control, and can be located after a reasonably diligent inquiry, Defendant will produce relevant, non-privileged documents responsive to this request, as Defendant understands it.

**REQUEST FOR PRODUCTION NO. 8:**

All documents and communications concerning or relating to any investigation concerning Plaintiff by you or by any person on your behalf.

**Responses and Objections to Request for Production No. 8:**

Defendant incorporates his General Objections herein.  Defendant further objects to Request No. 8 on the grounds that it seeks information that is outside of his possession, custody, or control.  Defendant further objects to Request No. 8 on the grounds that it is vague and ambiguous with regard to the term "investigation." Defendant further objects to Request No. 8 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity. Defendant further objects to Request No. 8 on the grounds that the Request is overly broad and unduly burdensome and seeks documents that are not proportional to the needs of the case.

-11-

1    To the extent that such documents exist, are within Defendant's possession,

2  custody, or control, and can be located after a reasonably diligent inquiry, Defendant

3  will produce relevant, non-privileged documents responsive to this request, as

4  Defendant understands it.

5  **REQUEST FOR PRODUCTION NO. 23:**

6    All documents and communications concerning or relating to your emails

7  with Buzzfeed referenced in the Complaint, including the reason(s) you decided to

8  send the emails.

9  **Responses and Objections to Request for Production No. 23:**

10    Defendant incorporates his General Objections herein.  Defendant further

11  objects to Request No. 23 on the grounds that it seeks information that is outside of

12  his possession, custody, or control.  Defendant further objects to Request No. 23 to

13  the extent that it seeks to elicit information subject to and protected by the attorney-

14  client privilege, the attorney work product doctrine, the joint defense privilege, the

15  common interest doctrine, and/or any other applicable privilege or immunity.

16  Defendant further objects to Request No. 23 on the grounds that the Request is

17  overly broad and unduly burdensome and seeks documents that are not proportional

18  to the needs of the case.

19    Subject to his General and Specific Objections,  Defendant responds as

20  follows:

21    To the extent that such documents exist, are within Defendant's possession,

22  custody, or control, and can be located after a reasonably diligent inquiry, Defendant

23  will produce relevant, non-privileged documents responsive to this request, as

24  Defendant understands it.

25  **REQUEST FOR PRODUCTION NO. 24:**

26    All documents and communications concerning or relating to any public

27  relations analysis or strategy pertaining to the Defamatory Statements.

28

-24-

**Responses and Objections to Request for Production No. 24:**

Defendant incorporates his General Objections herein.  Defendant further objects to Request No. 24 on the grounds that it seeks information that is outside of his possession, custody, or control.  Defendant further objects to Request No. 24 on the grounds that it is vague and ambiguous with regard to the terms "public relations analysis or strategy."  Defendant further objects to Request No. 24 as argumentative in that it requires the adoption of improper assumptions including that any statement referenced in this Request was defamatory.  Defendant further objects to Request No. 24 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity.  Defendant further objects to Request No. 24 on the grounds that the Request is overly broad and unduly burdensome and seeks documents that are not proportional to the needs of the case.

Subject to his General and Specific Objections,  Defendant responds as follows:

To the extent that such documents exist, are within Defendant's possession, custody, or control, and can be located after a reasonably diligent inquiry, Defendant will produce relevant, non-privileged documents responsive to this request, as Defendant understands it.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and communications concerning or relating to any public relations analysis or strategy pertaining to this litigation.

**Responses and Objections to Request for Production No. 25:**

Defendant incorporates his General Objections herein.  Defendant further objects to Request No. 25 on the grounds that it seeks information that is outside of his possession, custody, or control.  Defendant further objects to Request No. 25 on the grounds that it is vague and ambiguous with regard to the terms "public relations

-25-

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Alex Spiro (admitted *pro hac vice*)
2      alexspiro@quinnemanuel.com
   51 Madison Avenue, 22nd Floor
3  New York, New York 10010
   Telephone: (212) 849-7000
4
   QUINN EMANUEL URQUHART & SULLIVAN, LLP
5  Robert M. Schwartz (Bar No. 117166)
       robertschwartz@quinnemanuel.com
6  Michael T. Lifrak (Bar No. 210846)
       michaellifrak@quinnemanuel.com
7  Jeanine M. Zalduendo (Bar No. 243374)
       jeaninezalduendo@quinnemanuel.com
8  865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
9  Telephone: (213) 443-3000

10 *Attorneys for Defendant Elon Musk*

11

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14

15 VERNON UNSWORTH,                      | Case No. 2:18-cv-08048

16         Plaintiff,                     | Judge: Hon. Stephen V. Wilson

17     vs.                                | **ELON MUSK'S RESPONSES AND OBJECTIONS TO PLAINTIFF**

18 ELON MUSK,                             | **VERNON UNSWORTH'S SECOND SET OF REQUESTS FOR PRODUCTION**

19         Defendant.

20

21                                        | Complaint Filed: September 17, 2018
                                          | Trial Date: December 2, 2019
22

23

24

25 PROPOUNDING PARTY:    Plaintiff Vernon Unsworth

26 RESPONDING PARTY:     Defendant Elon Musk

27 SET NUMBER:           Two (2)

28

12.     By responding to the Requests, Defendant does not waive any of his rights to object on any ground to the use of his responses in this or any other proceedings, including at any trial of this action.

13.     By agreeing to search for documents in response to a specific Request, Defendant does not concede that the Request seeks information that is relevant to a claim or defense in this action. Defendant expressly reserves all further objections to the relevance and admissibility of the information or documents provided, as well as the right to object to further discovery relating to the subject matter of any information provided.

14.     Defendant will not produce confidential documents until the entry of an appropriate protective order regarding the protection of confidential information.

15.     Defendant's responses are based on his current knowledge. Without any obligation to do so, Defendant expressly reserves the right to supplement, amend, correct, clarify, or modify the responses if and as further information becomes available to him. Defendant also expressly reserves the right to use or rely on, at any time, subsequently discovered documents or documents omitted from these objections and responses as a result of mistake, error, oversight, or inadvertence.

The foregoing objections and limitations shall be included in Defendant's response to each and every Request.

## RESPONSES TO SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 63:**

All documents and communications concerning or relating to the Cave Rescue.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

Defendant incorporates his General Objections herein.  Defendant further objects to Request No. 63 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff. Defendant further objects to Request No. 63 to the extent that it is redundant to requests for production propounded in Plaintiff's First Set of Requests for Production to Defendant Elon Musk.  Defendant further objects to Request No. 63 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity.  Defendant further objects to Request No. 63 on the grounds that the Request is overly broad and unduly burdensome and seeks documents that are not proportional to the needs of the case.

Subject to his General and Specific Objections, Defendant responds as follows:

To the extent any such documents or communications exist, Defendant has already produced all responsive materials in his possession, custody, or control based on a reasonable search and diligent inquiry.

**REQUEST FOR PRODUCTION NO. 64:**

All documents and communications concerning or relating to your role in designing, creating, and/or building the Tube.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Defendant incorporates his General Objections herein.  Defendant further objects to Request No. 64 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff. Defendant further objects to Request No. 64 to the extent that it is redundant to

1   requests for production propounded in Plaintiff's First Set of Requests for

2   Production to Defendant Elon Musk.  Defendant further objects to Request No. 64

3   on the grounds that it is vague and ambiguous with regard to the terms "designing,"

4   "creating," and "building."   Defendant further objects to Request No. 64 on the

5   grounds that it seeks to elicit information subject to and protected by the attorney-

6   client privilege, the attorney work product doctrine, the joint defense privilege, the

7   common interest doctrine, and/or any other applicable privilege or immunity.

8   Defendant further objects to Request No. 64 on the grounds that the Request is

9   overly broad and unduly burdensome and seeks documents that are not proportional

10  to the needs of the case.

11       Subject to his General and Specific Objections, Defendant responds as

12  follows:

13       To the extent any such documents or communications exist, Defendant has

14  already produced all responsive materials in his possession, custody, or control

15  based on a reasonable search and diligent inquiry.

16

17  **REQUEST FOR PRODUCTION NO. 65:**

18       All documents and communications concerning or relating to the Tube.

19

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

21       Defendant incorporates his General Objections herein.  Defendant further

22  objects to Request No. 65 on the grounds that it seeks information that is outside of

23  his possession, custody, or control, or that is equally available to Plaintiff.

24  Defendant further objects to Request No. 65 to the extent that it is redundant to

25  requests for production propounded in Plaintiff's First Set of Requests for

26  Production to Defendant Elon Musk.  Defendant further objects to Request No. 65

27  to the extent that it seeks to elicit information subject to and protected by the

28  attorney-client privilege, the attorney work product doctrine, the joint defense

# EXHIBIT P

# EXHIBIT P

**EXHIBIT A – PARTIES' JOINT PROPOSED SCHEDULE[1]**

| Deadline/Event | Date |
| --- | --- |
| **Fact Discovery and Expert Disclosure** | |
| Fact Discovery Cutoff | September 13, 2019 |
| Expert Witness Disclosure | September 13, 2019 |
| Rebuttal Expert Disclosure | October 14, 2019 |
| | |
| **Summary Judgment/Adjudication** | |
| Dispositive Motions | September 16, 2019 |
| Oppositions | October 4, 2019 |
| Replies | October 14, 2019 |
| Hearing | October 28, 2019 |
| | |
| **Trial Preparation and Trial** | |
| Motions in Limine | November 4, 2019 |
| Motion in Limine Oppositions | November 11, 2019 |
| Motion in Limine Replies | November 18, 2019 |
| Pre-Trial Filings (Joint Final Pre-Trial Conference Proposed Order, Exhibit List, Witness List, Memorandum of Contentions of Fact and Law. Jury Instructions) | November 18, 2019 |
| Final Pre-Trial Conference | November 25, 2019 |
| Trial | December 2, 2019 |

[1] Any other deadlines pursuant to the Federal Rules of Civil Procedure, Local Rules, and the Court's orders.

Ex. P 0130

L. LIN WOOD, P.C.
L. Lin Wood (admitted *pro hac vice*)
lwood@linwoodlaw.com
Nicole J. Wade (admitted *pro hac vice*)
nwade@linwoodlaw.com
Jonathan D. Grunberg (admitted *pro hac vice*)
jgrunberg@linwoodlaw.com
G. Taylor Wilson (admitted *pro hac vice*)
twilson@linwoodlaw.com
1180 West Peachtree Street, Ste. 2040
Atlanta, Georgia 30309
404-891-1402
404-506-9111 (fax)

CHATHAM LAW GROUP
Robert Christopher Chatham
chris@chathamfirm.com
CA State Bar No. 240972
3109 W. Temple St.
Los Angeles, CA 90026
213-277-1800

WEISBART SPRINGER HAYES, LLP
Matt C. Wood (admitted *pro hac vice*)
mwood@wshlpp.com
212 Lavaca Street, Ste. 200
Austin, TX 78701
512-652-5780
512-682-2074 (fax)

*Attorneys for Plaintiff Vernon Unsworth*

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Alex B. Spiro (admitted *pro hac vice*)
alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543

*Attorneys for Defendant Elon Musk*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VERNON UNSWORTH, <br><br> Plaintiff <br><br> v. <br><br> ELON MUSK, <br><br> Defendant. | Case No. 2:18-cv-08048-SVW (JC) <br><br> Judge: Hon. Stephen V. Wilson <br><br> **JOINT STIPULATION TO REQUEST AMENDMENTS TO SCHEDULING ORDER** <br><br> Complaint Filed: Sept. 17, 2018 <br> Trial Date: Dec. 3, 2019 |

Ex. P 0131

1    Plaintiff Vernon Unsworth and Defendant Elon Musk (collectively, the "Parties") by and

2    through their counsel of record, hereby stipulate pursuant to Central District of California Local

3    Rules ("L.R.") 7-1 to request that the Court amend the Scheduling Order (Doc. 54)[1] to permit at

4    least six depositions to be taken after the close of discovery on September 13, 2019 and to permit

5    Plaintiff to take in excess of ten (10) depositions, as follows:

6    1.    WHEREAS, on June 17, 2019, the parties filed their Proposed Discovery Plan,

7    which provided that fact discovery would close on Friday, September 13, 2019;

8    2.    WHEREAS, the Parties have acted diligently in undertaking discovery, having

9    exchanged written discovery and taken a total of seven (7) depositions to date;

10   3.    WHEREAS, this is the first request by the Parties to amend deadlines in the

11   Scheduling Order;

12   4.    WHEREAS, the amendments requested in this Joint Stipulation will not delay the

13   currently scheduled trial date of December 3, 2019 or any other scheduled date or deadline;

14   5.    WHEREAS, both Parties agree to the amendment of the Scheduling Order as set

15   forth herein;

16   NOW THEREFORE, the Parties agree and stipulate to the following:

17   1.    The deposition of third-party witness Ryan Mac, who published certain statements

18        at issue in this litigation, will take place after the close of discovery, as soon as can

19        be arranged after resolution of his motion to quash the subpoenas served on him by

20        both parties;

21   2.    Defendant will make available for deposition Steve Davis, an employee of a

22        Defendant-related entity whose deposition was initially noticed for September 9,

23        after the close of discovery as soon as can be arranged in light of the ongoing

24        medical condition that rendered him unable to attend his scheduled deposition;

25

26   [1]   The Parties are treating the Proposed Discovery Plan that was attached as Exhibit A to the

27   Joint Rule 26(F) Report and Proposed Discovery Plan submitted on June 17, 2019, (Doc. 54), as the "Scheduling Order." The Parties are not aware that the Court has actually issued a Scheduling

28   Order based on that proposed plan but are proceeding on the assumption that the Proposed Discovery Plan is the currently operative Scheduling Order in this matter.

Ex. P 0132

3.     Defendant will make available for deposition third-party witness Sam Teller, who until very recently was employed by Defendant-related entities and who was identified in Defendant's Supplementary Interrogatory Responses served on August 21, after the close of discovery on a date to be agreed upon by counsel not later than October 11, 2019;

6.     Plaintiff will subpoena for deposition third-party witness David Arnold, a former employee of a Defendant-related entity, who was identified as the result of the document production by third-party Tesla in response to a subpoena on September 11, after the close of discovery not later than October 11, 2019;

7.     Plaintiff will subpoena for deposition third-party witness Juleanna Glover with Ridgely Walsh, LLP, who was identified as a result of the document production by third-party Tesla in response to a subpoena on September 11, after the close of discovery not later than October 11, 2019;

8.     Plaintiff shall be permitted to take in excess of the statutory limit of ten (10) depositions solely to complete the depositions set forth herein;

9.     The Parties have agreed that they will not seek any other depositions except those set forth herein absent exceptional circumstances;

The Parties have submitted herewith a proposed Order for the Court's consideration to effectuate the agreed-upon requested amendments to the Scheduling Order.

1 | DATED:  September 16, 2019        Respectfully submitted,

2                                       L. LIN WOOD, P.C.

3

4                               By            */s/ Lin Wood*

5                                   L. LIN WOOD, P.C.
                                  L. Lin Wood (admitted *pro hac vice*)

6                                   lwood@linwoodlaw.com
                                  Nicole J. Wade (admitted *pro hac vice*)

7                                   nwade@linwoodlaw.com
                                  Jonathan D. Grunberg (admitted *pro hac vice*)

8                                   jgrunberg@linwoodlaw.com
                                  G. Taylor Wilson (admitted *pro hac vice*)

9                                   twilson@linwoodlaw.com

10                                   1180 West Peachtree Street, Ste. 2040
                                  Atlanta, Georgia 30309

11                                   404-891-1402
                                  404-506-9111 (fax)

12

13                                   -and-

14                                   CHATHAM LAW GROUP
                                  Robert Christopher Chatham

15                                   chris@chathamfirm.com
                                  CA State Bar No. 240972

16                                   3109 W. Temple St.
                                  Los Angeles, CA 90026

17                                   213-277-1800

18                                   -and-

19

20                                   WEISBART SPRINGER HAYES, LLP
                                  Matt C. Wood (admitted *pro hac vice*)

21                                   mwood@wshlpp.com
                                  212 Lavaca Street, Ste. 200

22                                   Austin, TX 78701
                                  512-652-5780

23                                   512-682-2074 (fax)

24                                   *Attorneys for Plaintiff Vernon Unsworth*

25

26

27

28

Ex. P 0134

Case 2:18-cv-08048-SVW-JC   Document 86-1   Filed 09/24/19   Page 136 of 154   Page ID
#:4887
Case 2:18-cv-08048-SVW-JC   Document 84-1   Filed 09/16/19   Page 5 of 6   Page ID
#:2613

DATED: September 16, 2019

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____/s/ Michael T. Lifrak_____

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
robertschwartz@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

Alex B. Spiro (admitted pro hac vice)
alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

*Attorneys for Defendant Elon Musk*

Pursuant to L.R. 5-4.3.4(a)(2)(i), the filer hereby attests that all signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

_/s/Nicole Jennings Wade_

Case 2:18-cv-08048-SVW-JC Document 86-1 Filed 10/29/19 Page 137 of 154 Page ID
Case 2:18-cv-08048-SVW-JC Document 84-1 Filed 09/26/19 Page 187 of 194 Page ID
#:2614

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VERNON UNSWORTH, | Case No. 2:18-cv-08048-SVW (JC) |
| Plaintiff | Judge: Hon. Stephen V. Wilson |
| v. | **[PROPOSED] ORDER AMENDING SCHEDULING ORDER** |
| ELON MUSK, | |
| Defendant. | |

Ex. P 0136

Case 2:18-cv-08048-SVW-JC Document 86-1 Filed 10/29/19 Page 138 of 154 Page ID
Case 2:18-cv-08048-SVW-JC Document 66-1 Filed 09/26/19 Page 2 of 2 Page ID #:889
#:2615

1

### [PROPOSED] ORDER

2      Currently before the Court is a Joint Stipulation to Request Amendments to the Scheduling

3  Order filed by Plaintiff Vernon Unsworth and Defendant Elon Musk (collectively, the Parties").

4      The Court, having read and considered the Joint Stipulation to Request Amendments to the

5  Scheduling Order, and good cause appearing therefore, **GRANTS** the Stipulation.  **IT IS**

6  **HEREBY ORDERED** that:

7      The Scheduling Order (Attachment A to Doc. 54) is amended as set forth in the attached

8  Joint Stipulation to Request Amendments to the Scheduling Order, which is hereby made the

9  Order of this Court.

10  Dated: September ____, 2019

11

12

13                                                    _____

14                                                    Honorable Stephen V. Wilson
                                                      United States District Court Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ex. P 0137

Case 2:18-cv-08048-SVW-JC   Document 86-1   Filed 09/17/19   Page 139 of 154   Page ID
#:2616
Case 2:18-cv-08048-SVW-JC   Document 86-1   Filed 09/17/19   Page 1 of 1   Page ID #:964

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH, <br><br> Plaintiff <br><br> v. <br><br> ELON MUSK, <br><br> Defendant. | Case No. 2:18-cv-08048-SVW (JC) <br><br> Judge: Hon. Stephen V. Wilson <br><br> **ORDER AMENDING SCHEDULING ORDER** |

Currently before the Court is a Joint Stipulation to Request Amendments to the Scheduling Order filed by Plaintiff Vernon Unsworth and Defendant Elon Musk (collectively, the Parties").

The Court, having read and considered the Joint Stipulation to Request Amendments to the Scheduling Order, and good cause appearing therefore, **GRANTS** the Stipulation.  **IT IS HEREBY ORDERED** that:

The Scheduling Order (Attachment A to Doc. 54) is amended as set forth in the attached Joint Stipulation to Request Amendments to the Scheduling Order, which is hereby made the Order of this Court.

Dated: September 17, 2019

_____
Honorable Stephen V. Wilson
United States District Court Judge

Ex. P 0138

<div style="columns:2">

L. LIN WOOD, P.C.
L. Lin Wood (admitted *pro hac vice*)
lwood@linwoodlaw.com
Nicole J. Wade (admitted *pro hac vice*)
nwade@linwoodlaw.com
Jonathan D. Grunberg (admitted *pro hac vice*)
jgrunberg@linwoodlaw.com
G. Taylor Wilson (admitted *pro hac vice*)
twilson@linwoodlaw.com
1180 West Peachtree Street, Ste. 2040
Atlanta, Georgia 30309
404-891-1402
404-506-9111 (fax)

CHATHAM LAW GROUP
Robert Christopher Chatham
chris@chathamfirm.com
CA State Bar No. 240972
3109 W. Temple St.
Los Angeles, CA 90026
213-277-1800

WEISBART SPRINGER HAYES, LLP
Matt C. Wood (admitted *pro hac vice*)
mwood@wshllp.com
212 Lavaca Street, Ste. 200
Austin, TX 78701
512-652-5780
512-682-2074 (fax)

</div>

*Attorneys for Plaintiff Vernon Unsworth*

<div style="columns:2">

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Alex B. Spiro (admitted *pro hac vice*)
alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543

</div>

*Attorneys for Defendant Elon Musk*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VERNON UNSWORTH,<br><br>                Plaintiff<br><br>   v.<br><br>ELON MUSK,<br><br>                Defendant. | Case No. 2:18-cv-08048-SVW (JCx)<br><br>Judge: Hon. Stephen V. Wilson<br><br>**JOINT STIPULATION TO REQUEST AMENDMENTS TO SCHEDULING ORDER**<br><br>Complaint Filed: Sept. 17, 2018<br>Trial Date: Dec. 3, 2019 |

Ex. P 0139

Plaintiff Vernon Unsworth and Defendant Elon Musk (collectively, the "Parties") by and through their counsel of record, hereby stipulate pursuant to Central District of California Local Rules ("L.R.") 7-1 to request that the Court amend the Scheduling Order (Docs. 54, 69) (the "Scheduling Order") to stipulate to certain expert discovery and to a brief extension of the motion in limine deadlines with respect to expert discovery, as follows:

1.      WHEREAS, the Scheduling Order required initial expert disclosures on or before September 13, 2019 (Doc. 54 Ex. A);

2.      WHEREAS, Plaintiff Vernon Unsworth disclosed two experts, Eric Rose (located in California) and Dr. Bernard Jansen (located in Qatar), and served their expert reports on September 13, 2019;

3.      WHEREAS, Defendant Elon Musk's deadline to disclose rebuttal expert(s) and serve report(s) is October 14, 2019 (*id.*);

4.      WHEREAS, the Scheduling Order does not state a cut-off for expert discovery but contains deadlines for motions in limine (*id.*);

5.      WHEREAS, the current deadlines for all motions in limine is November 4, 2019, with oppositions to such motions due November 11, 2019, and replies to such motions due November 18, 2019 (*id.*);

6.      WHEREAS, the Parties stipulate to the following dates for document and deposition discovery of Plaintiff's experts;

7.      WHEREAS, to accommodate the availability of Plaintiff's international expert witness, the Parties seek short extensions of motions in limine briefing deadlines with respect to expert discovery only;

8.      WHEREAS, the Parties have acted diligently in attempting to schedule and complete expert discovery;

9.      WHEREAS, this is the first request by the Parties (and second by Plaintiff) to amend briefing deadlines in the Scheduling Order;

10.     WHEREAS, the amendments requested in this Joint Stipulation will not delay other scheduled dates, including the filing of all pre-trial filings on November 18, the final pre-trial conference on November 25, 2019, and the currently scheduled trial date of December 3, 2019;

11.     WHEREAS, both Parties agree to the amendment of the Scheduling Order as set forth herein;

NOW THEREFORE, the Parties agree and stipulate to the following:

1.     Plaintiff Vernon Unsworth shall complete his document production for experts Eric Rose and Dr. Bernard Jansen on or before October 25, 2019;

2.     Plaintiff Vernon Unsworth shall make available for deposition Mr. Eric Rose on November 1, 2019, at 10:00 a.m. at Defendant's counsel's offices in Los Angeles, CA;

3.     Plaintiff Vernon Unsworth shall make available for deposition Dr. Bernard Jansen on November 4, 2019, at 10:00 a.m. at Plaintiff's counsel's offices in Atlanta, GA;

4.     All deadlines relating to motions in limine excepting such motions relating to expert testimony shall remain as set forth in the current Scheduling Order;

5.     The deadline for filings of motions in limine relating to expert testimony shall be extended from November 4, 2019, to November 8, 2019;

6.     The deadline for filing oppositions to motions in limine relating to expert testimony shall be extended from November 11, 2019, to November 14, 2019;

7.     The deadline for filings replies in support of motions in limine relating to expert testimony shall be extended from November 18, 2019, to November 21, 2019;

Ex. P 0141

8.     In the event Defendant discloses a rebuttal expert(s) on or before October 14, 2019, the Parties agree to cooperate in timely completing document and deposition discovery of said expert(s), but Plaintiff reserves his right to seek an extension of the motion in limine deadline for Plaintiff to challenge such expert(s), if necessary.

The Parties have submitted herewith a proposed Order for the Court's consideration to effectuate the agreed-upon requested amendments to the Scheduling Order.

[signature pages follow]

Ex. P 0142

1 | DATED:  October 3, 2019

Respectfully submitted,
L. LIN WOOD, P.C.

By    */s/ Lin Wood*
     L. LIN WOOD, P.C.
     L. Lin Wood (admitted *pro hac vice*)
     lwood@linwoodlaw.com
     Nicole J. Wade (admitted *pro hac vice*)
     nwade@linwoodlaw.com
     Jonathan D. Grunberg (admitted *pro hac vice*)
     jgrunberg@linwoodlaw.com
     G. Taylor Wilson (admitted *pro hac vice*)
     twilson@linwoodlaw.com
     1180 West Peachtree Street, Ste. 2040
     Atlanta, Georgia 30309
     404-891-1402
     404-506-9111 (fax)

     -and-

     CHATHAM LAW GROUP
     Robert Christopher Chatham
     chris@chathamfirm.com
     CA State Bar No. 240972
     3109 W. Temple St.
     Los Angeles, CA 90026
     213-277-1800

     -and-

     WEISBART SPRINGER HAYES, LLP
     Matt C. Wood (admitted *pro hac vice*)
     mwood@wshllp.com
     212 Lavaca Street, Ste. 200
     Austin, TX 78701
     512-652-5780
     512-682-2074 (fax)

Ex. P 0143

4

1

2 *Attorneys for Plaintiff Vernon Unsworth*

3
DATED:  October 3, 2019          QUINN EMANUEL URQUHART &
4                                SULLIVAN, LLP

5

6

7 By_____/s/ Robert M. Schwartz_____
        Michael T. Lifrak (Bar No. 210846)
8       michaellifrak@quinnemanuel.com
        Robert M. Schwartz (Bar No. 117166)
9       robertschwartz@quinnemanuel.com
        Jeanine M. Zalduendo (Bar No. 243374)
10      jeaninezalduendo@quinnemanuel.com
        865 South Figueroa Street, 10th Floor
11      Los Angeles, California 90017-2543
        Telephone: (213) 443-3000
12

13      Alex B. Spiro (admitted pro hac vice)
14      alexspiro@quinnemanuel.com
        51 Madison Avenue, 22nd Floor
15      New York, New York 10010
        Telephone: (212) 849-7000
16

17      *Attorneys for Defendant Elon Musk*

18

19

20

21 Pursuant to L.R. 5-4.3.4(a)(2)(i), the
   filer hereby attests that all signatories
22 listed, and on whose behalf this filing is
   submitted, concur in the filing's content
23 and have authorized the filing.

24

25   /s/ L. Lin Wood

26

27

28

5

Ex. P 0144

Case 2:18-cv-08048-SVW-JC  Document 86-1  Filed 10/22/19  Page 146 of 154  Page ID
Case 2:18-cv-08048-SVW-JC  Document 74-1  Filed 10/03/19  Page 1 of 2  Page ID #:980
#:2623

1

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

9

10

VERNON UNSWORTH,

Plaintiff

11

v.

12

ELON MUSK,

13

Defendant.

14

Case No. 2:18-cv-08048-SVW (JC)

Judge: Hon. Stephen V. Wilson

**[PROPOSED] ORDER AMENDING
SCHEDULING ORDER**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ex. P 0145

1

## [PROPOSED] ORDER

Currently before the Court is a Joint Stipulation to Request Amendments to the Scheduling Order [Docs. 54, 69] filed by Plaintiff Vernon Unsworth and Defendant Elon Musk (collectively, the Parties").

The Court, having read and considered the Joint Stipulation to Request Amendments to the Scheduling Order, and good cause appearing therefore, **GRANTS** the Stipulation. **IT IS HEREBY ORDERED** that:

The Scheduling Order [Doc. 54 Ex A., Doc. 69] is amended as set forth in the attached Joint Stipulation to Request Amendments to the Scheduling Order, which is hereby made the Order of this Court.

Dated: October ___, 2019

_____
Honorable Stephen V. Wilson
United States District Court Judge

Ex. P 0146

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED
CLERK, U.S. DISTRICT COURT

OCT 1 0 2019

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

VERNON UNSWORTH,

                 Plaintiff

    v.

ELON MUSK,

              Defendant.

Case No. 2:18-cv-08048-SVW (JC)

Judge: Hon. Stephen V. Wilson

[PROPOSED] ORDER AMENDING SCHEDULING ORDER

Ex. P 0147

1

**[PROPOSED] ORDER**

Currently before the Court is a Joint Stipulation to Request Amendments to the Scheduling Order [Docs. 54, 69] filed by Plaintiff Vernon Unsworth and Defendant Elon Musk (collectively, the Parties").

The Court, having read and considered the Joint Stipulation to Request Amendments to the Scheduling Order, and good cause appearing therefore, **GRANTS** the Stipulation. **IT IS HEREBY ORDERED** that:

The Scheduling Order [Doc. 54 Ex A., Doc. 69] is amended as set forth in the attached Joint Stipulation to Request Amendments to the Scheduling Order, which is hereby made the Order of this Court.

Dated: October /0 , 2019

_____
Honorable Stephen V. Wilson
United States District Court Judge

Ex. P 0148

2

# EXHIBIT Q

# EXHIBIT Q

RATRAWIPHAKKUN - SPIRO

1

2     A.     Yes, we talk about something that

3   I need to know, because there is something about

4   my private life and this is well that I should

5   know that.

6     Q.     How do you talk to him about the

7   case?  Do you e-mail him about the case?

8     THE WITNESS:  No.

9     Q.     Do you text message him about the

10  case?

11     THE WITNESS:  We phone.  We talk together.

12  We stay together before.

13     A.     (Through the interpreter) We live

14  together so we talked.

15     Q.     But sometimes you are not together

16  during the day when you are at work; right?

17     A.     But we never message, do the

18  texting and talk about this case, no.

19     Q.     Why?

20     THE WITNESS:  Do not know.

21     A.     (Through the interpreter) I do not

22  know.

23     Q.     Did you guys have a conversation

24  where you said, "We are not going to text about

25  this case.  It is not appropriate"?

RATRAWIPHAKKUN - SPIRO

1

2      A.     No, we did not talk about that.

3  Vern just asked me about spelling of my parents'

4  names, the address of my grandparents, our house

5  number and all the other detail.

6      Q.     Why did he need that?

7      A.     He did not understand how the house

8  number in Thailand run.  So like my house number

9  is 99, but in the paper my address is 99/1, and

10  after that, after the house number, there would be

11  the subdistrict, the district and then the

12  province.  He did not know that.

13     Q.     That was done via text message?

14     A.     Some text, and then some phone

15  calls.

16     Q.     Did you text when he was doing the

17  cave rescue?

18     A.     Yes.

19     Q.     Like, say, "Can I bring you some

20  food?"

21     A.     Right, Vern's mobile is -- he used

22  foreign SIM card.  Normally, he would e-mail

23  through his computer, but during this rescue he

24  had to connect his phone with mine in order to

25  share WiFi.  Since then he can use WiFi to talk to

RATRAWIPHAKKUN - SPIRO

1

2   Rob Harper.

3        Q.      But during the cave rescue, did you

4   and he text so that you could stay in touch?

5        A.      No.

6        Q.      Is that because you were with him

7   the whole time?

8        A.      Yes.  It just on some occasion when

9   I had to look after the English divers and he had

10  to go to the mountain, the hill, that is when we

11  separated, but we would enter the cave and came

12  out the cave together.

13       Q.      So almost entirely the whole time

14  you were together?

15       A.      Yes.

16       Q.      Afterwards, when the media would

17  contact you, would you tell him via text?

18       A.      There was some, and he just advised

19  me to cut off, just ignore.

20       Q.      Right, but when the media would

21  contact you, would you let him know and save the

22  information and send it to him via text so he had

23  it?

24       A.      Yes, I did tell him about every

25  case, you know, from the media.

```
                        RATRAWIPHAKKUN - SPIRO
 1
 2           Q.      Via text?
 3           A.      I just show him my phone and tell
 4   him that, "Look, somebody is trying to contact
 5   me."
 6           Q.      Did you get injured in the cave at
 7   all?
 8           A.      There was, because I fell over a
 9   bit.
10           Q.      What was the injury?
11           A.      My knees.  I got some like
12   abrasion.
13           Q.      Was Vern injured?
14           A.      Yes, because he was wearing these
15   boots, you know, under the water for a long time,
16   so he has some injury from that.
17           Q.      What did it look like?
18           A.      The injury?
19           Q.      Yes.
20           A.      Over his body he has some cuts
21   from, you know, being in contact with some sharp
22   rocks and that and the injury on his feet was
23   caused by wearing boots under the water for a long
24   time.
25           Q.      Just so I am clear, the marks you
```