L. LIN WOOD, P.C.
L. Lin Wood (*pro hac vice*)
lwood@linwoodlaw.com
Nicole J. Wade (*pro hac vice*)
nwade@linwoodlaw.com
Jonathan D. Grunberg (*pro hac vice*)
jgrunberg@linwoodlaw.com
G. Taylor Wilson (*pro hac vice*)
twilson@linwoodlaw.com
1180 West Peachtree Street, Ste. 2040
Atlanta, Georgia 30309
404-891-1402
404-506-9111 (fax)

WEISBART SPRINGER HAYES, LLP        CHATHAM LAW GROUP
Matt C. Wood (*pro hac vice*)              Robert Christopher Chatham
mwood@wshllp.com                          chris@chathamfirm.com
212 Lavaca Street, Ste. 200               CA State Bar No. 240972
Austin, TX 78701                          3109 W. Temple St.
512-652-5780                              Los Angeles, CA 90026
512-682-2074 (fax)                        213-277-1800

Attorneys for Plaintiff VERNON UNSWORTH

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| VERNON UNSWORTH, | Case No. 2:18-cv-08048-SVW (JCx) |
|---|---|
| Plaintiff, | Judge: Hon. Stephen V. Wilson |
| v. | **PLAINTIFF VERNON UNSWORTH'S NOTICE OF MOTION AND MOTION IN LIMINE** |
| ELON MUSK, | |
| Defendant. | |
| | Pretrial Conference: Nov. 25, 2019 |
| | Hearing Date:   Nov. 25, 2019 |
| | Time:   3:00 p.m. |
| | Courtroom:   10A |

PLEASE TAKE NOTICE THAT on November 25, 2019, at 3:00 p.m. in Courtroom 10A of the above-titled Court, Plaintiff Vernon Unsworth will move this Court for an order granting Plaintiff's Motion in Limine.  Plaintiff's Motion in Limine is made pursuant to this Notice of Motion, Plaintiff's memorandum in support filed below, and any such additional argument or materials as may be submitted to the Court before the time of the decision in this matter.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place telephonically on November 1, 2019, and via e-mail between November 1 and November 4, 2019.

DATED:  November 4, 2019                    Respectfully submitted,

**L. Lin Wood, P.C.**

By: */s/ L. Lin Wood*
L. Lin Wood

*Attorney for Plaintiff Vernon Unsworth*

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 1

II.    ARGUMENT ............................................................................................. 1

1.     Litigation Outside of the United States ........................................ 2

2.     Unsworth's and His Lawyers' Alleged Motives for Filing Suit ................ 4

3.     Unsworth's Failure to Sue Republishers ..................................... 7

4.     No Damages .................................................................................. 8

5.     Unsworth's Previous Employment ............................................... 10

6.     Unsworth's Relationship with His Family .................................. 11

7.     Unsworth's Purported Interest in Publicity ................................ 12

8.     BuzzFeed News Standards and Ethics Guide ............................. 13

9.     "Big Kren's" Facebook posting (Translated) ............................. 14

10.    Purported Page from Jobpub.com Opinion Board (Translated) ............... 16

11.    Pornography .................................................................................. 19

12.    Unidentified Third-Party Tweets ................................................. 20

13.    Previously Undisclosed Trial Witnesses .................................... 21

III.   CONCLUSION ........................................................................................ 22

Plaintiff Vernon Unsworth ("Unsworth") respectfully submits the following thirteen (13) Motions in Limine and moves to preclude Defendant Elon Musk ("Musk") from making statements or offering evidence regarding these subjects at trial absent further order of the Court.

## I.   INTRODUCTION

As indicated in the preceding Notice of Motion, counsel for Unsworth attempted to resolve all of the issues set forth in these Motions in Limine via telephone conference with counsel for Musk on Friday, November 1, and in follow-up emails over the weekend on November 2, 3, and 4, during which Unsworth provided additional information about these issues that was requested by counsel for Musk.  Musk was unwilling to agree that he would not attempt to introduce the evidence outlined below at trial.

The majority of the evidence for which Unsworth seeks exclusion is information that personally attacks Unsworth in some form – regarding his previous employment (even though he is not seeking any damages for lost income), his family, his motivations, and even his viewing of pornography.  Musk's objective at trial is obviously the same as it has been with respect to Unsworth since Musk's first tweet on July 15, 2018: to distract from his own outrageous actions by focusing on his accusations against Unsworth.

## II.   ARGUMENT

Evidence must be both authenticated and relevant to be deemed admissible. Federal Rule of Evidence 401 provides that:

> Evidence is relevant if:
>
> > (a) it has any tendency to make a fact more or less probable than
> >
> > it would be without the evidence; and
>
> > (b) the fact is of consequence in determining the action.

Fed. R. Evid. 401.  Federal Rule of Evidence 402 provides that "[i]rrelevant evidence is not admissible."  Moreover, even relevant evidence may be excluded under certain circumstances:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.  Evidence is unfairly prejudicial if it has an "undue tendency to suggest decision on an ***improper basis***, commonly, though not necessarily, an ***emotional*** one." *Contreras v. City of Los Angeles*, No. 2:11-CV-01480-SVW-SH, 2012 WL 12893417, at *3 (C.D. Cal. Sept. 11, 2012) (emphasis added).

Documents also must be authenticated before they can be admitted, and "[h]earsay and authentication are separate and independent requirements for evidentiary admissibility." *Demirchyan v. Gonzales*, No. CV 08-3452 SVW MAN, 2010 WL 3521784, at *3 (C.D. Cal. Sept. 8, 2010), *supplemented*, No. CV 08-3452 SVW MANX, 2013 WL 1338784 (C.D. Cal. Mar. 28, 2013) (citing Fed.R.Evid. 901(a)).  "Any documentary evidence may be authenticated through extrinsic evidence 'sufficient to support a finding that the matter in question is what its proponent claims.'" *Id.* at *1.

All of the evidence identified below should be excluded at trial for the reasons set forth herein:

**1.  <u>Litigation Outside of the United States</u>**

Unsworth originally included in his Complaint a request for worldwide damages excluding England and Wales.  Doc. 1 ¶ 108-09.  At the time of his deposition, Unsworth had initiated a separate legal proceeding for libel in the United Kingdom ("UK").  *See* Deposition of Vernon Unsworth dated August 14, 2019 ("Unsworth Depo."), at 242:4-17.  Unsworth also testified that "[t]here's a

2

1   possibility" that he might pursue litigation in Thailand.  *Id.*  When asked during his

2   deposition why he filed two lawsuits, Unsworth responded that he was following the

3   advice of his attorneys.  *See id.* at 152:22-153:6.  Unsworth's counsel advised on the

4   record at Unsworth's deposition that "it would not surprise me in the near future [if]

5   the exclusion of England and Wales will be removed" from this case—i.e., that the

6   separate action would be dismissed and all issues tried in this case.  *Id.* at 245:5-22.

7   Unsworth's counsel thereafter advised Musk's counsel in writing that Unsworth

8   intended to seek worldwide damages in this case and sought a pre-trial stipulation

9   that prior to the pre-trial hearing Unsworth would dismiss the UK action, and at the

10  pre-trial, the Complaint would be deemed amended to conform to the evidence to

11  seek worldwide damages with no exclusion for UK and Wales. Despite Unsworth

12  meeting every request made by Musk to obtain his agreement to this stipulation,

13  Musk ultimately refused to stipulate to the dismissal of the UK action in return for

14  confirmation that this case would seek worldwide damages, necessitating that

15  Unsworth address this issue with the Court at the pre-trial conference in this action.

16  Regardless, evidence and argument regarding a separate UK suit should be excluded

17  at trial.

18      First, any evidence related to a UK suit, or the potential of filing any other

19  suit, is irrelevant.  Relevance is a fundamental requirement for admissibility and

20  means that the evidence makes a fact of consequence more or less likely.  *See* FED.

21  R. EVID. 401, 402.  The existence of the UK suit has no bearing on any fact of

22  consequence in this defamation case, nor any claim or defense.  All the jury needs

23  to know is the geographical scope of the damages at issue.  Courts have excluded

24  evidence of other litigation as irrelevant.  *See, e.g.*, *Um Corp. v. Tsuburaya Prods.*

25  *Co.*, CV-15-03764-AB, 2017 U.S. Dist. LEXIS 218369, at *25-27 (C.D. Cal. Nov.

26  3, 2017) (granting motion in limine to preclude references to findings from foreign

27  lawsuits).

28

Second, evidence related to the UK suit, or any other potential suit, would be unfairly prejudicial. *See* FED. R. EVID. 403. "Unfair prejudice is an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Anderson*, 741 F.3d 938, 950 (9th Cir. 2013) (cleaned up). Here, a jury might believe that Unsworth should get a lower recovery (or no recovery at all) due to the possibility of a recovery in the UK. This risk is heightened by the fundamental differences between the law of libel in the U.S. versus the UK, including burdens of proof and limitations on damages—differences about which a jury would almost certainly have no understanding. Thus, the risk of unfair prejudice substantially outweighs any conceivable probative value. *See Hymes v. Bliss*, No. 16-cv-04288-JSC, 2018 U.S. Dist. LEXIS 203535, at *5 (N.D. Cal. Nov. 30, 2018) (granting motion in limine to preclude evidence of other lawsuits due to "danger of unfair prejudice").

## 2. Unsworth's and His Lawyers' Alleged Motives for Filing Suit

A repeated refrain from Musk's defense team – both in this Court and in the court of public opinion – is that Unsworth's suit is motivated by greed. Defense counsel Alex Spiro has called the suit a "money grab" in multiple interviews with the press and has said that the "truth of [Unsworth's] motivations" will come out.[1]

---

[1] *See, e.g.*, LA TIMES, *Musk's top advisers urged Twitter break after cave diver attack* (Oct. 8, 2019), https://www.latimes.com/business/story/2019-10-08/elon-musk-twitter-break-cave-diver-attack ("Musk's lawyer in the defamation suit, Alex Spiro, said in an email that the case is '***nothing but a money grab***' by Unsworth and accused him of profiting off the Thai cave rescue. 'The truth of his ***motivations will come out soon enough***,' Spiro wrote.") (emphasis added); LA TIMES, *Elon Musk testifies he's financially illiquid, court filing says* (Oct. 16, 2019), https://www.latimes.com/business/story/2019-10-16/elon-musk-testifies-defamation-case-cave-diver ("'Mr. Musk's insurance carrier was notified of the ***money-grab*,**' Alex Spiro, Musk's lawyer, said in an emailed statement. 'It is a non-event.'") (emphasis added).

Mr. Spiro has told the press that "Mr. Musk refused to be shaken down over a tweet,"[2] that Unsworth brought this lawsuit "in pursuit of 'self-promotion',"[3] and that "Unsworth would like to milk his 15 minutes of fame."[4]   In his Answer, Musk

[2] *See, e.g.,* BUSINESS INSIDER, *Elon Musk hired a PI to dig up dirt on cave diver Vernon Unsworth.   That guy is reportedly a convicted felon.* (Oct. 4, 2019), https://www.businessinsider.com/elon-musk-hired-fraudster-to-investigate-vernon-unsworth-2019-10 ("attorney for Elon Musk Alex Spiro told Business Insider on Friday: 'Mr. Musk refused to be **shaken down over a tweet**, so his team hired someone who approached them with information and they thought was a legitimate investigator.   Unbeknownst to them at the time, it now appears that he was engaged in his own fraud. …'") (emphasis added).

[3] *See, e.g.,* THE GUARDIAN, *Elon Musk claims his investigator tricked him about diver he called a 'pedo',* (Oct. 8, 2019), https://www.theguardian.com/technology/2019/oct/08/elon-musk-diver-vernon-unsworth-pedo-idiot ("Musk's legal team said Unsworth brought the case in pursuit of 'self-promotion'. 'This case is nothing but a **money-grab** in which Unsworth has hired an agent and **pursued profit, publicity and self-promotion** at every turn,' Alex Spiro, Musk's lawyer, told the Guardian by email."); *see also, e.g.,* CNBC, *Elon Musk pressured Thai officials to say nice things about his mini-subs in the midst of a deadly rescue mission,* (Oct. 8 2019), https://www.cnbc.com/2019/10/08/tesla-ceo-elon-musk-pressured-thai-officials-for-positive-pr.html; BUZZFEED NEWS, *The Cave Rescuer Suing Elon Musk Claims The Tesla CEO Fabricated Pedophilia Claim Against Him,* (Oct. 8 2019) https://www.buzzfeednews.com/article/ryanmac/unsworth-reply-elon-musk-fucking-idiot; FORBES, *Elon Musk Defamation Suit Reveals He Overruled Staff Requests To Apologize After British Cave Diver Tweet,* (Oct. 9. 2019), https://www.forbes.com/sites/alanohnsman/2019/10/09/elon-musk-defamation-suit-reveals-he-overruled-staff-requests-to-stop-tweeting-about-british-cave-diver/#7289e0fe395d; THE HILL, *Court documents show Elon Musk privately called himself a 'f---ing idiot' after attack on British diver,* https://thehill.com/policy/technology/tech-execs/464824-court-documents-show-elon-musk-privately-called-himself-a-f-ing.

[4] *See, e.g.,* LA TIMES, *Elon Musk is headed to trial over 'pedo guy' Twitter feud,* (Oct. 28, 2019), https://www.latimes.com/business/story/2019-10-28/elon-musk-headed-to-trial-in-britain-over-pedo-tweets; Forbes, *Elon Musk Heads To Trial In Cave Diver's Defamation Suit,* (Oct. 29, 2019), https://www.forbes.com/sites/lisettevoytko/2019/10/29/elon-musk-heads-to-trial-

5

says that "[o]ne has to question Mr. Unsworth's motive in turning this into a federal case" and accuses him of a "devious desire to milk the media coverage . . . to reap a financial windfall."  Doc. 45 ¶ 7.  Musk himself leveled a similar attack in his deposition, repeatedly calling the lawsuit a "shakedown" and attacking Unsworth's counsel personally as a "shakedown lawyer."  Musk Depo. 223:2-19, 244:13-22.[5]

These (incorrect) speculations about the motives of Unsworth or his lawyers are irrelevant and prejudicial.  "The rule generally prevailing is that, where a suitor is entitled to relief in respect to the matter concerning which he sues, his motives are immaterial."  *Samsung Elecs. Co. v. NVIDIA Corp.*, No. 3:14cv757, 2016 U.S. Dist. LEXIS 22799, at *5-6 (E.D. Va. Feb. 23, 2016) (quoting *Johnson v. King-Richardson Co.*, 36 F.2d 675, 677 (1st Cir. 1930)).  Courts throughout the country—including this one—have held that evidence of a plaintiff's motivation is irrelevant and unfairly prejudicial.  *See Samsung*, 2016 U.S. Dist. LEXIS 22799, at *6 (excluding evidence of motive for patent suit); *Taylor v. Lemus*, No. CV-11-9614-FMO, 2015 U.S. Dist. LEXIS 186790, at *27 (C.D. Cal. June 17, 2015) (excluding evidence of motive for civil rights suit); *Medeiros v. Kong Choy*, 418 P.3d 574, 581-87 (Haw. 2018) (collecting cases from around the country, including federal courts,

---

in-cave-divers-defamation-suit/#762ff59a7bd5; THE GUARDIAN, *Elon Musk to go to trial in December over 'pedo guy' tweet*, (Oct. 29, 2019), https://www.theguardian.com/technology/2019/oct/29/elon-musk-vernon-unsworth-tweet-trial-defamation-lawsuit.

[5] Besides being pure speculation, these attacks are flatly contradicted by the evidence.  Musk himself publicly suggested that Unsworth was guilty precisely because Unsworth had *not* yet sued him.  Musk's Depo. 195:15-21. Moreover, Musk's description of Unsworth's retraction demand as "demanding a rich payment" is entirely false.  Doc. 85 at 9.  There is no demand for any payment – rich or otherwise – in Unsworth's retraction demand.  *See* Doc. 1 at 41.  Unsworth requested contact from Musk or his counsel only "[i]n an attempt to avoid litigation and to see the public record corrected."  *Id.*  Musk made no such attempt.

1   and holding that evidence of motive for personal injury suit should have been

2   excluded).[6]

3       Based on these principles, evidence and argument that Unsworth or his

4   lawyers are financially motivated should be precluded at trial.[7]   *See Tallman v.*

5   *Freedman Anselmo Lindberg, L.L.C.*, Civ. No. 11-3201, 2013 U.S. Dist. LEXIS

6   82768, at *7-8 (C.D. Ill. June 12, 2013) (granting motion in limine for "derogatory

7   comments about Plaintiff's or his counsel's motivation for bringing this case,"

8   including any reference to "greedy lawyers," due to irrelevance and unfair

9   prejudice).   The potential for such attacks to distract from the merits of the claims

10   by inflaming the passions of the jury is obvious.[8]

11       **3.   Unsworth's Failure to Sue Republishers**

12       Unsworth sued Musk for his publication of false and defamatory accusations.

13   Musk was the original talemaker and is fully liable for all republications that were

14   intended, authorized, or reasonably foreseeable.   *See Mitchell v. Superior Court*, 37

15   Cal. 3d 268, 281 (1984).   As the original publisher, Musk is liable for damages

16

17     [6] A plaintiff's motive may become relevant to his credibility where the motive is
18   alleged to be something *other than* the monetary recovery allowed by law—which
19   is not the case here.   *See Medeiros*, 418 P.3d at 582-83 (collecting cases).

20     [7] This would include evidence or argument about Unsworth's counsel's
21   compensation, which counsel for Musk asked about during Unsworth's deposition.
     *See* Unsworth Depo. at 272 ("Is Mr. Wood providing free legal services to you?").
22   Such questions are not relevant and are likely to be prejudicial.   *See, e.g., Positive*
23   *Ions, Inc. v. Ion Media Networks, Inc.*, No. CV064296ABCFFMX, 2007 WL
     9701734, at *3 (C.D. Cal. Nov. 7, 2007) (holding that "proof of contingency fee
24   arrangements carries with it too high a risk of unfair prejudice, confusion and the
     potential to mislead the jury" and should be excluded).

25     [8] Federal Rule of Evidence 404(b) permits evidence of "motive" in certain
26   circumstances, but case law is clear that "Rule 404(b) contemplates admission of
27   evidence to show the motive for the underlying act committed, rather than a motive
     for bringing suit."   *Taylor*, 2015 U.S. Dist. LEXIS 186790, at *27 (cleaned up).
28

caused by republication, and he cannot "reduce" those damages somehow through an argument that Unsworth arguably had a legal right also to sue BuzzFeed or any other outlets which republished Musk's accusations but failed to do so. *Shively v. Bozanich*, 31 Cal. 4th 1230, 1243 (2003), *as modified* (Dec. 22, 2003) ("In general, the repetition by a new party of another person's earlier defamatory remark also gives rise to a separate cause of action for defamation against the *original defamer*, when the repetition was reasonably foreseeable. It is the foreseeable subsequent *repetition* of the remark that constitutes publication and an actionable wrong in this situation, even though ***it is the original author of the remark who is being held accountable***.") (italics in original, bold italics added).

Musk's attorneys may attempt to argue or introduce evidence that Unsworth did not sue the republishers and suggest that he should have. Similarly, Musk's attorneys may attempt to argue or introduce evidence that the republishers – not Musk – are responsible for some or all of Unsworth's damages. *See* Doc. 58 at 28 n.10 (Musk's argument in motion for summary judgment that BuzzFeed's failure to investigate breaks any "causal chain" for damages caused by BuzzFeed's republication of defamatory statements).

All such argument and evidence should be precluded as irrelevant and unfairly prejudicial. It is irrelevant because the fault of any republishers does nothing as a matter of law to reduce Musk's own liability. For a similar reason, it would be unfairly prejudicial because it "suggest[s] decision on an improper basis." *Anderson*, 741 F.3d at 950.

### 4. <u>No Damages</u>

In his Answer, Musk repeatedly asserts that Unsworth suffered no damages, arguing that "Mr. Unsworth and his reputation are no worse off" and that "the previously unknown Mr. Unsworth remains the utterly undamaged Mr. Unsworth." Doc. 45 ¶ 6. This line of evidence and argument should be precluded at trial.

Unsworth is suing for libel per se, which means that damages are conclusively presumed if he prevails on liability.  "Perhaps the clearest example of libel per se is an accusation of crime." *Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 385 (1986).  Accusations of child rape are obviously criminal and libelous per se. *See Ray v. Citizen-News Co.*, 14 Cal. App. 2d 6, 9 (1936) (finding libel per se based on accusation of "unlawful sexual relations with young girls").  Similarly, accusations that plaintiff is a "sexual deviate" are libelous per se.  *Shumate v. Johnson Publishing Co.*, 139 Cal. App. 2d 121, 132 (1956) (adultery).  Thus, if liability is shown, "[d]amage to plaintiff's reputation is conclusively presumed and he need not introduce evidence of actual damages in order to obtain or sustain an award of damages." *Barnes-Hind*, 181 Cal. App. 3d at 382 (cleaned up).

Because damages are conclusively presumed, courts have held that "evidence tending to show lack of injury to reputation is inadmissible" in a case of libel per se. *Clay v. Lagiss*, 143 Cal. App. 2d 441, 448 (1956).  Such inadmissible evidence includes evidence that "the plaintiff's standing and reputation in the community were in fact not deleteriously affected by the libel." *Schomberg v. Walker*, 132 Cal. 224, 230 (1901).  It also includes evidence that "the person to whom the [defamation] may have been uttered was not influenced thereby or had subsequently regained his confidence in the plaintiff." *Clay*, 143 Cal. App. 2d at 448.

As a result, Musk should be precluded from introducing evidence or argument at trial that Unsworth suffered no damage from Musk's defamation, including any argument or evidence that no one believed the defamation or that somehow Unsworth's reputation is better off after being accused of pedophilia and child rape than it was before.

The excluded evidence also should include questions to Unsworth or any of the witnesses regarding whether they have personal knowledge whether third parties "believed" Musk's accusations of pedophilia, child rape, a child bride, or child sex trafficking.  In addition to constituting irrelevant evidence, such questions obviously

ask for speculation about other people's states of mind and private opinions. Such questions and answers are simply not probative of what the public thought, which is, in any case, not the legal standard to be tried. *Cf. Peck v. Tribune Co.*, 214 U.S. 185, 190 (1909) (defamatory meaning is not a matter of "majority vote"); *Varian Med. Sys., Inc. v. Delfino*, 6 Cal. Rptr. 3d 325, 337-38 (2003) ("It is not necessary that anyone believe them to be true, since the fact that such words are in circulation at all … must be to some extent injurious to his reputation"). At a minimum, the risk of unfair prejudice substantially outweighs any conceivable probative value.

### 5. Unsworth's Previous Employment

During Unsworth's deposition, Musk's attorneys asked questions about Unsworth's involvement with the financial services firm Burgess, Wreford, and Unsworth. *See* Unsworth Depo. 325:13-327:2. The firm was dissolved in 1996 and investigated and possibly fined by a British financial regulator. *Id.* Unsworth did not know much regarding the circumstances of the dissolution, investigation, or fine. *Id.* at 326:6-327:2. This line of questioning was presumably intended to dredge up potentially negative information related to Unsworth.

None of the information related to Unsworth's business affairs is relevant to the claims or defenses before the Court. Unsworth is not seeking special damages for financial or business-related losses. *See* Unsworth's Resp. to Musk's First Interrogatories at 3. More importantly, events in a plaintiff's past are irrelevant without evidence that the events impacted the plaintiff's reputation—i.e., that the events were generally known and affected other people's opinion of the plaintiff. *See Sanders v. Walsh*, 219 Cal. App. 4th 855, 873 (2013) (excluding evidence of plaintiff's prior conviction because "the mere fact of the conviction does not directly bear on reputation"); *Meyer v. Crain Communications, Inc.*, No. 88-C-10373, 1992 U.S. Dist. LEXIS 5526, at *4-6 (N.D. Ill. April 6, 1992) (applying California law and excluding evidence of plaintiff's drug use because "while general reputation evidence, if any, will be admitted, the Court will not permit testimony as to particular

1  instances of bad behavior or specific rumors"); *Hearne v. De Young*, 132 Cal. 357,

2  362, 64 P. 576, 578 (1901) (noting that defendant in a defamation case "may not go

3  into particular instances" on the issue of damages).  No evidence has been or can be

4  presented connecting Unsworth's business affairs and his general reputation.

5       For the same reason, any conceivable probative value of Unsworth's business

6  affairs is substantially outweighed by the danger of unfair prejudice.  *See* FED. R.

7  EVID. 403.  Such evidence could cause a jury to make a personal judgment about

8  Unsworth that has no relevance to reputational damages and would confuse the

9  issues.  *See, e.g.*, *HTC Corp. v. Tech. Props.*, No. 5:08-cv-00882-PSG, 2013 U.S.

10  Dist. LEXIS 129263, at *6-7 (N.D. Cal. Sept. 6, 2013) (excluding evidence of

11  business bankruptcy due to "high likelihood of substantial prejudice" based on

12  "visceral reactions among jurors").  Musk's lawyers apparently want to defend this

13  case in part by smearing Unsworth further by distorting events from his past, even

14  when those events have no demonstrated connection to Unsworth's reputation, much

15  less to this case.

16       **6.  <u>Unsworth's Relationship with His Family</u>**

17       In his motion for summary judgment, Musk falsely accused Unsworth of

18  being "a man who abandoned his wife and daughter in England to live in an area of

19  Thailand known for sex trafficking."  Doc. 58 at 9.  There is no evidence to support

20  this accusation (nor did Musk cite any in his motion).  As Unsworth testified at his

21  deposition, his daughter has not spoken to him since he physically separated from

22  his wife in 2011, but he has tried to maintain contact with his daughter by regularly

23  sending her birthday cards and gifts on holidays.  Unsworth Depo. 117:9-118:15.

24  Unsworth's wife also testified that Unsworth still cares deeply for his daughter and

25  has attempted to stay in touch with her. Vanessa Unsworth Depo. 12:13-13:17, 24:5-

26  12.

27       Musk should be precluded at trial from claiming that Unsworth abandoned his

28  wife and/or daughter or otherwise offering evidence about the details of Unsworth's

relationship with his daughter.  Besides the utter lack of evidence that Unsworth abandoned his daughter, his relationship with her is a personal matter that has no relevance to Unsworth's damages absent a showing that the relationship somehow affected Unsworth's reputation.  *See Sanders*, 219 Cal. App. 4th at 873 (excluding evidence of plaintiff's prior conviction because "the mere fact of the conviction does not directly bear on reputation"); *Meyer*, 1992 U.S. Dist. LEXIS 5526, at *4-6 (excluding evidence of plaintiff's drug use because irrelevant to reputation without more).  No evidence has been or can be presented linking Unsworth's reputation to his relationship with his daughter.

Moreover, any conceivable probative value of Unsworth's relationship with his daughter is substantially outweighed by the risk of unfair prejudice.  *See* FED. R. EVID. 403.  Such evidence could cause a jury to make a personal judgment about Unsworth which has no relevance to the amount of reputational damage and would confuse the issues.  This risk is especially high given the propensity of Musk's attorneys to make completely unsubstantiated public allegations of abandonment.

### 7. Unsworth's Purported Interest in Publicity

Musk has argued that Unsworth sought publicity for his role in the Thai cave rescue.  During his deposition, Unsworth testified that he had given a few media interviews and presentations to several groups about the rescue effort.  Unsworth Depo. 51:6-52:16, 56:10-23, 104:20-24.  Unsworth also testified that he received a total of £2,400 (about $3,000) for assistance on two films related to the rescue.  *Id.* at 83:9-22.  In support of his motion for summary judgment, Musk cited evidence that Unsworth had hired an agent at one point (although Unsworth never actually hired an agent, just worked informally with one for a period of two or three weeks after the agent approached him).  Doc. 85 at 5.  Musk's motion also cited evidence that Unsworth privately expressed frustration with the divers' approach to publicity.  *Id.*

1   None of the evidence related to Unsworth's purported interest in publicity is
2   relevant to the remaining issues in the case.   At the recent hearing on Musk's
3   summary judgment motion, the Court indicated its determination that Unsworth is a
4   private figure for purposes of this case. Doc. 92. Media activities by Unsworth are
5   no longer at issue in the case.   The evidence cited above is not relevant to the
6   remaining issues in the case: (1) whether Unsworth is entitled to recover actual
7   damages for negligent publication of false and defamatory statements and (2)
8   whether Unsworth is entitled to recover presumed and punitive damages for
9   publication with actual knowledge of falsity or a reckless disregard for truth or
10  falsity.

11   **8.  BuzzFeed News Standards and Ethics Guide**

12   By subpoena, Musk obtained from BuzzFeed copies of its News Standards
13  and Ethics Guide (the "Standards").  In response, BuzzFeed produced two versions
14  of its Standards—one updated in January 2018 (before the relevant events in this
15  case), and another in November 2018 (after Musk emailed BuzzFeed reporter Ryan
16  Mac calling Unsworth a "child rapist").   Musk has cited the amendment to
17  BuzzFeed's Standards to argue that a prior agreement was not required to establish
18  "off the record" at the time Musk sent his "child rapist" email and therefore, he was
19  entitled to believe that BuzzFeed would follow his unilateral designation of the email
20  as "off the record."  Doc. 58 at 27 n.9.

21   Evidence of the Standards should be precluded, because neither their
22  applicability nor their interpretation is relevant. Reasonable foreseeability is an
23  objective standard, and Musk cannot show that the BuzzFeed Standards have any
24  relevance to this inquiry.  Moreover, even from a subjective perspective, Musk has
25  presented no evidence that he ever read or considered the Standards at the time he
26  emailed Mac.  Even if he had, the Standards in effect at the time of his email are
27  silent about the protocol for off-the-record conversations—they simply do not say
28  one way or the other whether an advance agreement is required or whether (as Musk

13

contends) a unilateral designation by the interviewee is enough.  The later amended version of the Standards is even more irrelevant, because the amendment came three months *after* Musk emailed Mac.  The Standards totally fail to provide *any* relevant evidence about accepted journalistic standards for arranging off-the-record discussion.

Besides being irrelevant, the Standards should be precluded based on the substantial risk of unfair prejudice and confusion of the issues.  *See* FED. R. EVID. 403.  A jury could be confused into thinking the issue of foreseeability boils down to BuzzFeed's published Standards which Musk was not even aware of at the time of his email.  Such an inference would be highly misleading and inappropriate given that BuzzFeed will not testify about the Standards based on journalistic privilege and no evidence will be introduced about BuzzFeed's actual approach to off-the-record discussions at the time of Musk's "child rapist" email.  Musk is simply grasping at straws because he could not obtain any testimony to support his false proposition that no agreement with the reporter is required – he only supports the proposition with his subjective belief that no one would disobey Elon Musk and risk burning bridges with Musk forever.  *See* Deposition of David Arnold dated October 1, 2019, at 59-60 ("[T]hey would know they've just burned that bridge.").

### 9.  "Big Kren's" Facebook posting (Translated)

During Unsworth's deposition, he was asked about a Facebook post by some unknown person or group purportedly named "Big Kren."  Unsworth Depo. 318-324 & Ex. 33.  The entire Facebook post, including the name of the owner of the Facebook page, is in Thai (using the Thai alphabet, not Romanization).  Musk has provided a purported translation, which indicates that the Facebook post describes an alleged interview with Unsworth's partner, Woranan "Tik" Ratrawiphakkun. *Id.* at Ex. 33.  Tik also was asked about this Facebook post during her deposition.

As an initial matter, the translation of the Facebook post has not been properly authenticated and is inadmissible on that basis. Under the Federal Rules of Evidence,

14

"[w]itness testimony translated from a foreign language must be properly authenticated and any interpretation must be shown to be an accurate translation done by a competent translator." *Kesel v. United Parcel Servs., Inc.*, No. C 00-3741 SI, 2002 WL 102606, at *3 (N.D. Cal. Jan. 17, 2002) (citing Fed. R. Evid. 604, 901), *aff'd*, 339 F.3d 849 (9th Cir. 2003). Thus, where a party "provides no explanation about how the document was translated, who the translator was, or the expertise of that translator," then the party "has failed to lay a proper foundation for the admission of the translated declaration." *Id.* The translation provided by Musk has an attachment with a notarized signature of an individual named Jodeci Guzman, saying that the translation is "to the best of my knowledge and belief, a true and accurate translation from Thai into English." *See* Ex. 33. Musk has provided no additional information about the translation, and it is unknown how the document was translated, who the translator was, or the expertise of the translator. Indeed, it appears that the translation was automated, and it unquestionably contains known errors. For example, the translation describes Vern as having said during the CNN interview that: "He is just a public relations businessman. That's all he is." We know, however, that Vern's statement was actually: "Just a PR stunt." Those are two very different statements – and it is unknown to what extent there are other errors in the translation.

In the translation, "Big Kren" claims that Tik said in an interview that Unsworth found the pedophile accusation "humorous."[9] *Id.* In Tik's deposition, she denied ever giving an interview to "Big Kren," and explained that she had given an interview only to an outlet named Coconuts. *See* Ratrawiphakkun Depo. 28:6-18. Tik also denied that Vern ever described the pedophile accusation as "humorous"— instead she said that she told an interviewer the accusation was "laughable." Ratrawiphakkun Depo. 28:24-29:7. During Unsworth's deposition, he likewise

---

[9] This is apparently Musk's point in attempting to introduce this Facebook post.

1   denied ever saying that the pedophile accusation was humorous.  Unsworth Depo.
2   324:6-9.

3        Even if the translation of the Facebook post could be authenticated, the exhibit
4   is inadmissible because it contains several layers of classic hearsay.  According to
5   Musk, *if* the Thai translation is correct, then "Big Kren" (whoever that is) *said* in a
6   post on Facebook that "Coconuts" *said* that Tik *said* that Vern *said* that he found the
7   pedophilia accusations "humorous."  Musk apparently wants to offer this triple
8   hearsay for the truth of the matter asserted, namely that Vern said that he found the
9   accusations of pedophilia "humorous."  Although an admission against interest could
10  constitute an exception to the hearsay rule, there is no basis upon which the other 3
11  layers of hearsay can be admissible.  *See* FED. R. EVID. 801(c); *cf. United States v.*
12  *El-Mezain*, 664 F.3d 467, 495 (5th Cir. 2011) (noting that "newspaper articles are
13  classic inadmissible hearsay").

14       In addition, the posting's probative value is substantially outweighed by the
15  risk of unfair prejudice.  *See* FED. R. EVID. 403.  The translation on its face indicates
16  that certain words were not able to be translated, thus calling into doubt the reliability
17  of the whole translation.  In addition, Tik testified that she said "laughable," not
18  "humorous," proving that the one portion of the posting Musk wants to use is
19  unreliable.  Because of Tik's denial, the multiple layers of hearsay, and the unreliable
20  translation, the risk of unfair prejudice is clear, substantial, and warrants exclusion
21  of the posting and related testimony.

22  **10. <u>Purported Page from Jobpub.com Opinion Board (Translated)</u>**

23       When Musk's lawyers cross-examined Unsworth's partner, Tik, during her
24  deposition taken by Unsworth for use in evidence, they confronted her at the end of
25  her examination with a purported printout of one page of a 39-page opinion board
26  thread on a website titled "JobPub.com."  *See* Ratrawiphakkun Depo. Ex. 55.  The
27  webpage is in Thai (using the Thai alphabet, not Romanization), but Musk's lawyers
28  attached a purported translated version of the webpage, which was apparently auto-

generated.  *Id.*  The translated webpage purports to show a portion of an opinion thread starting on October 18, 2007 (the Thai version appears to identify the date as "18/10/2550"), where an unknown user says "I want to work at nighttime tourist venues" and asks "[i]f any venue is taking applications."  *Id.*  In response, the webpage shows several postings, including a posting on October 26, 2007, by a user identified only as "suwimoltik@yahoo.co.th."  *Id.*  According to Musk's translation, this user says, "What kind of work do you want to do?  There are lots of types of night work.  I work at night.  The money's good, too.  But you need a bit of fortitude. You can contact me."  *Id.*  The printout says at the bottom "Page 1 of 39," but only Page 1 is included in the exhibit.  *Id.* at Ex. 55.  The printout and related testimony should be excluded from evidence, because the page is not authenticated, and there is no apparent relevance whatsoever to this litigation.[10]

First, there is no authentication of this document.  As discussed regarding Motion number 9, *supra*, a translation cannot be admitted where a party "provides no explanation about how the document was translated, who the translator was, or the expertise of that translator…."  *Kesel*, 2002 WL 102606 at *3.  This document has the same type of certificate as the one attached to the Facebook post, with no information about the translation or any qualifications of the translator.

No one has identified what the "Jobpub.com" website is or who wrote the posts – there is simply no indicia of reliability for this document. Tik acknowledged in her deposition that "suwimoltik@yahoo.co.th" is her email address, but she testified that she did not post the comment.  *Id.* at 89:6-8, 101:3-11. Tik testified that "no," she does not recognize the post; "I never do it" when asked if she wrote it; "no" she did not write it when asked again if she wrote it; "Anyone can make it, not me" when she was asked yet again if she wrote it; "I do not know" when asked if

---

[10] Indeed, Unsworth's counsel were surprised when Musk's counsel flatly refused, without explanation, to agree that they would not use this document.

anyone has access to her email; and "Not me" when she was asked yet another time if she wrote it.  *Id.* at 89:13; 90:3, 8, 22, 25; 101:11.  Thus, there is no evidence in the record as to what this single page is, which is apparently printed from a 39-page string of posts on what appears to be a job board website, or who wrote the post in question.

Unsworth's legal team was prevented from timely reviewing this exhibit as it was not produced prior to Tik's deposition (an obvious sandbagging tactic by Musk's counsel).  Counsel for Unsworth objected to the use of the exhibit and to any testimony related to the exhibit during Tik's deposition and moved to strike the exhibit and related testimony.  *Id.* at 102:9-12.  Tik, a resident of Thailand, will not be appearing in person at trial, and Musk therefore cannot ask her any additional questions about this exhibit.

Moreover, the evidence has no relevance to this case.  Even if this posting had been made by Tik, it apparently dates from 2007 – four years before she met Unsworth in 2011 – and purports to refer to job searches.  The translation of the single page of the 39-page post reflects nothing more than a discussion among unknown individuals about possible night jobs (identified by one user as being from 5:30 pm to 11:30 pm) in tourist venues.  The translation reflects the unknown users discussing various job positions, such as a "leader position," and jobs where you can make "good tips."  Thus, at most, Musk could attempt to use the document to imply that, several years prior to meeting Unsworth, Tik did some evening/nighttime work at certain tourist venues.  There is simply no basis upon which this evidence could possibly be relevant in this litigation.

Musk maintains a hope that he can persuade the jury, not with relevant, admissible evidence, but rather with unverified, irrelevant information designed to prejudice and confuse them. Here, Musk insists on asserting the proposition that an ambiguous, incomplete, and unverified document from the Internet apparently dated

1  years before the date Vernon met his companion is relevant and admissible.  It is

2  not, and should be excluded from trial.

3      **11.  <u>Pornography</u>**

4      During Unsworth's deposition, Musk's attorneys asked him whether he had

5  "ever viewed pornography."  Unsworth Depo. 335:18-19.  This general question has

6  no bearing on the defamatory accusations Musk has made against Unsworth.  As a

7  result, it should be excluded based on lack of relevance and unfair prejudice. No

8  witness or party should be subjected to such irrelevant, intrusive and ambiguous

9  questioning.  "Pornography" has been identified as a topic that may be appropriate

10 for exclusion as more prejudicial than probative.  *See, e.g., Wood v. State of Alaska*,

11 957 F.2d 1544, 1552 (9th Cir. 1992) (holding trial court properly excluded

12 references to pornography where evidence was "not highly probative and the risk of

13 confusion and prejudice is substantial" and noting that "[b]ecause many people

14 consider prostitution and pornography to be particularly offensive, there is a

15 significant possibility that jurors would be influenced by their impression of M.G.

16 as an immoral woman"), *modified on other grounds by United States v. Larson*, 495

17 F.3d 1094 (9th Cir. 2007); *U.S. v. Bonner*, 2014 WL 347439, at *2 (S.D. Cal. Jan.

18 30, 2014) (excluding references at trial to pornography).  Whether or not Unsworth

19 has *ever* viewed any form of pornography cannot possibly be relevant to whether

20 Musk acted negligently in this case.

21     During Unsworth's deposition, Musk's attorneys also asked Unsworth

22 whether he had ever viewed child pornography, and Unsworth said that he had not.

23 Unsworth Depo. 335:20-22.  This topic must also be excluded in limine as there is

24 not an iota of evidence that Unsworth has ever committed pedophilia, and while

25 Musk will not admit it to this Court or the jury, he knows that there is NO evidence

26 to support it. To not exclude this subject in advance would open the door to a

27 question by Musk to Unsworth on cross-examination that is the equivalent of asking,

28 "Did you view child porn again last night?" Given Musk's ongoing attempts to

smear Unsworth in any way possible, Musk should be precluded from making unsubstantiated insinuations merely by asking the question. Any line of questioning on pornography is clearly improper.

### 12. <u>Unidentified Third-Party Tweets</u>

In his trial exhibit list, Musk identified several third-party tweets which purport to comment on the meaning of "pedo guy." *See, e.g.*, Musk's Disclosure of Potential Exhibits at Ex. 770-773, 775-777, 779-780. The tweets generally purport to describe how the word "pedo" is used. The tweets are made by unknown individuals, with an unknown basis for knowledge (if any), with unknown motives, of unknown veracity, and offered to prove the truth of the matters asserted.

Musk has not presented any evidence authenticating the tweets—simply having someone go to the website and print off the webpage is not enough. *See Internet Specialties West, Inc. v. Ispwest*, No. CV 05-3296-FMC, 2006 U.S. Dist. LEXIS 96373, at *3-4 (C.D. Cal. Sept. 19, 2006).

Moreover, the tweets are unquestionably hearsay—out-of-court statements offered to prove the truth of the matter asserted. *See United States v. Krug*, No. 1:15-CV-00157-RJA, 2019 U.S. Dist. LEXIS 118316, at *19-20 (W.D.N.Y. July 16, 2019) (excluding evidence of social media posts offered to prove the truth of the matter asserted). Musk may try to argue that the tweets are not being offered to prove the truth of the matter asserted, but rather to show how people use the word "pedo" or "pedo guy." *Cf. Moroccanoil, Inc. v. Marc Anthony Cosmetics, Inc.*, 57 F. Supp. 3d 1203, 1213 n.5 (C.D. Cal. 2014) (holding that Facebook comments were not offered for truth of matter asserted but instead to show how customers used the term "Moroccanoil"). The problem, however, is that the tweets on Musk's exhibit list do not show people *actually using* the terms (e.g., tweets using the term "pedo guy" to describe a creepy old man). Instead, the tweets involve people *describing* how they and others have used the terms, clearly evidencing that the tweets are being used to prove the truth of the matter asserted and are thus inadmissible hearsay.

1   These tweets are also irrelevant, as what a few unknown, anonymous
2   individuals have said on Twitter about "pedo guy" has no bearing on the legal
3   standard at issue in this case.  The meaning of alleged defamatory statements is not
4   decided by the few, or even the many (though a quick scan of what is publicly
5   available reveals a general mockery of Musk's sworn testimony that "pedo" means
6   anything other than "pedophile").  *See, e.g., Peck*, 214 U.S. 185, 190 (1909)
7   (defamatory meaning is not a matter of "majority vote"); Restatement (Second) of
8   Torts § 559 cmt. e ("A communication to be defamatory need not tend to prejudice
9   the other in the eyes of everyone in the community or all of his associates, nor even
10  in the eyes of a majority of them.  It is enough that the communication would tend
11  to prejudice him in the eyes of a substantial and respectable minority of them …").

12   Finally, any conceivable probative value is substantially outweighed by the
13  risk of unfair prejudice.  *See* FED. R. EVID. 403.  The tweets were made by unknown
14  individuals whose credibility, personal knowledge, and accuracy cannot be
15  evaluated, much less subjected to cross-examination at trial.  In essence, Musk has
16  cherry-picked, if not created, a handful of tweets from the entire internet, presumably
17  to support arguments about how Musk's accusations were interpreted.  But Musk
18  transmitted his accusations to *millions* of people, and these cherry-picked samples
19  from anonymous individuals of unknown background are far more misleading than
20  illuminating.  Musk can testify to how he understood the term "pedo guy," and even
21  how he purportedly used it as a child, but all other related evidence – such as
22  unidentified tweets – should be excluded.

### 13.  Previously Undisclosed Trial Witnesses

24   In his trial witness list, Musk identifies two individuals as potential witnesses
25  for the first time—Ben Reymenants and Ray Lightfoot.  These individuals were
26  never disclosed by Musk in his Initial Disclosures, Supplemental Disclosures, or
27  Responses to Interrogatories.  It is clear from documents produced by Musk,
28  however, that he was aware of their existence early in the case.  Indeed, Musk's own

trial exhibit list reflects communications between Armor Harris, the leader of Musk's tube-building effort, and Reymenants during the Thai cave rescue. *See* Musk's Disclosure of Potential Trial Exhibits at Ex. 561. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." FED. R. CIV. P. 37(c)(1).  Musk can show no justification for his failure to timely disclose these witnesses at any time prior to November 1, 2019, and Unsworth suffered harm due to his inability to seek discovery, including documents and/or deposition, from the newly identified witnesses.  The Federal Rules were formulated to prevent ligation by surprise. Such tactics should not be condoned or rewarded.  For these reasons, the newly identified witnesses should be excluded from testifying at trial.

## III.   CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's Motion in Limine to exclude arguments or evidence at trial regarding the identified topics.  A proposed Order is being submitted with this Motion.

Dated:  November 4, 2019          L. LIN WOOD, P.C.

By: */s/L. Lin Wood*
L. Lin Wood
***Attorneys for Plaintiff Vernon Unsworth***