L. LIN WOOD, P.C.
L. Lin Wood (*pro hac vice*)
lwood@linwoodlaw.com
Nicole J. Wade (*pro hac vice*)
nwade@linwoodlaw.com
Jonathan D. Grunberg (*pro hac vice*)
jgrunberg@linwoodlaw.com
G. Taylor Wilson (*pro hac vice*)
twilson@linwoodlaw.com
1180 West Peachtree Street, Ste. 2040
Atlanta, Georgia 30309
404-891-1402; 404-506-9111 (fax)

WEISBART SPRINGER HAYES, LLP
Matt C. Wood (*pro hac vice*)
mwood@wshllp.com
212 Lavaca Street, Ste. 200
Austin, TX 78701
512-652-5780
512-682-2074 (fax)

CHATHAM LAW GROUP
Robert Christopher Chatham
chris@chathamfirm.com
CA State Bar No. 240972
3109 W. Temple St.
Los Angeles, CA 90026
213-277-1800

Attorneys for Plaintiff Vernon UNSWORTH

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH,<br><br>        Plaintiff,<br><br>v.<br><br>ELON MUSK,<br><br>        Defendant. | Case No. 2:18-cv-08048-SVW (JCx)<br>Judge: Hon. Stephen V. Wilson<br><br>**PLAINTIFF VERNON UNSWORTH'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF DEFENDANT'S UNRELATED TWEETS AND SEC SETTLEMENT AGREEMENT**<br><br>Pretrial Conference: Nov. 25, 2019<br>Hearing Date:          Nov. 25, 2019<br>Time:                       3:00 p.m.<br>Courtroom:             10A |

## **INTRODUCTION**

1

2       The genesis of this litigation was Musk's use of his Twitter account to accuse

3   Unsworth of pedophilia to Musk's 22.5 million followers because Unsworth had

4   expressed his honest opinion about Musk's rescue tube in response to a CNN

5   International reporter's question. The reach and importance of Musk's Twitter

6   account is therefore relevant to this action in considering how many people were

7   exposed to Musk's tweets, whether people would be likely to understand that Musk

8   was communicating *facts* about Unsworth, and whether Musk knows that readers

9   view his Tweets as conveying facts or only opinions.  Musk's Twitter account

10  forms the context for several of the accusations of pedophilia at issue in this case.

11  Musk's problems with the SEC in August of 2018 also had their genesis in

12  statements published on his Twitter account which were deemed factual. Musk's

13  Twitter commentary regarding the outcome of the SEC matter is relevant evidence

14  for a jury to consider in evaluating punitive damages intended to deter Musk from

15  using Twitter for the publication of false, misleading, and defamatory facts.

16                              **FACTS**

17  **Musk's Twitter Account Is Relevant to This Case**

18      Throughout this case, Musk has sought to describe his accusations against

19  Unsworth as being "Twitter banter."  *See* Doc. 77 (Musk Depo.) at 84.  In his

20  Motion to Dismiss filed in December 2018, Musk contended that "[r]easonable

21  readers discount internet speech. . . ."  Doc. 30 at 19.  Musk argued that "[t]he

22  presumption is particularly strong here because Twitter was the gravitational center

23  of this war of words."  *Id.*  Musk also has contended that Unsworth's honest

24  statement of his opinion about the tube on CNN International was "a much more

25  serious affair" than Musk's "[i]nsults on Twitter," which he says, "are common."

26  *See* Doc. 77 (Musk Depo.) at 68.  Musk seems to urge the idea that his comments

27  – which would be undisputedly actionable if published by Musk on CNN – are

28  protected opinion because they were published on Twitter.

1  It is therefore relevant to this litigation both how Musk uses his Twitter
2  account and how people perceive his tweets; which is another issue Musk has
3  placed before the Court.  It is well-established that Musk is not just a run-of-the-
4  mill Twitter user.   Elon Musk is one of the wealthiest and most influential
5  individuals in the World.  When Elon Musk speaks, people listen. And Musk wants
6  them to listen and wants them to believe him, including his now almost 30 million
7  followers. Musk's Twitter account is not an isolated location where Musk is free to
8  rant or accuse. Musk's Twitter account is formally used to provide investors with
9  information about Tesla.[1]

10  **The SEC Action Involved a Tweet During the Relevant Time Frame**

11  The SEC action at issue took place right in the midst of Musk's public
12  campaign of reputation assassination against Unsworth.   Musk's first tweets
13  accusing Unsworth of being a pedophile were on July 15, 2018, and he tweeted
14  additional accusations on August 28, 2018.  On August 7, 2018 – right between the
15  tweets about Unsworth – Musk tweeted about taking Tesla private.  Within less
16  than 1 ½ hours after the tweet, the value of Tesla stock had shot up 7%, and
17  NASDAQ had to stop trading on the stock as a result of Musk's tweet. *See, e.g.,*
18  "Elon Musk Details 'Excruciating' Personal Toll of Tesla Turmoil," *The New York*
19  *Times*,          Aug.          16,          2018,          *avail.          at*
20  https://www.nytimes.com/2018/h08/16/business/elon-musk-interview-tesla.html
21  (last visited Nov. 10, 2019).  Trading was suspended for a full 90 minutes as the
22  direct result of a statement Musk published on Twitter.

23  On September 27, 2018, the SEC filed enforcement actions against Musk
24  and Tesla, and on September 29, 2018, the SEC announced a settlement with both
25  Musk  and  Tesla.  *See*  https://www.sec.gov/news/press-release/2018-226  (last

26

27  [1]  Musk also regularly publishes statements on his Twitter account conveying
28  factual information about SpaceX.

2

1   visited Nov. 10, 2019).  As part of the settlement, Musk neither admitted nor denied

2   the SEC allegations, but he agreed to pay $20 million in fines, with Tesla paying

3   another $20 million in fines, and Musk also agreed to "controls and procedures to

4   oversee Musk's communications." *Id.*  Musk's settlement agreement with the SEC

5   is a matter of public record, and as part of that document, Musk agreed to "comply

6   with all mandatory procedures implemented by Tesla, Inc. . . . regarding (i) the

7   oversight of communications relating to the Company made in any format,

8   including, but not limited to, posts on social media (*e.g.,* Twitter) . . . and (ii) the

9   pre-approval of any such written communications that contain, or reasonably could

10  contain, information material to the Company or its shareholders. . . ." *See United*

11  *States Securities and Exchange Comm'n v. Musk*, United States District Court for

12  the Southern District of New York, Case 1:18-cv-08865-AJN, Doc. 6-1 at 3.

13      Despite the importance placed upon his tweets by the SEC, Musk

14  nevertheless argued in his motion to dismiss filed in December of 2018 that his

15  tweets should be discounted as Twitter is a forum of insults and opinions, not for

16  the publication of facts.  Doc. 30.  As outlined above, Musk also has continued to

17  assert in this litigation that his accusations against Unsworth should be minimized

18  because they were published on Twitter.

19  **Musk's "Worth It" Tweet Demonstrates Musk's State of Mind and**
20  **Ability to Pay**

21      In response to a tweet from one of his followers asking whether the Tesla

22  tweet was worth it in light of the $20 million fine, Musk tweeted back "Worth it."

23  *See, e.g.,* "Elon Musk: Tweet that cost $20 million was 'worth it,'" *The Washington*

24  *Post*,        Oct.        29,        2018,        *avail.*        *at*

25  https://www.washingtonpost.com/business/2018/10/29/musk-tweet-that-cost-

26  million-was-worth-it/ (last visited Nov. 10, 2019).  Musk confirmed this statement

27  during his deposition by testifying "yes" when asked whether "[i]t was worth the 20

28  million?"  Doc. 99 at 7.  The total fine levied on Tesla and Musk was $40 million.

# **ARGUMENT**

The SEC action, including the settlement and Musk's follow-up "worth it" tweet, is relevant in this case and is not properly excluded under Federal Rule of Evidence 408 or any other rule of evidence.  The evidence regarding the SEC settlement and related tweets is relevant not to establish liability in this case, but it is admissible evidence because (1) it is relevant and probative to the jury's understanding of the reach, importance, and impact of Musk's Twitter account and how his tweets are interpreted by readers, (2) it is relevant and probative on the issue of Musk's state of mind regarding the consequences of his tweets, (3) it is relevant and probative to his malice, and (3) it is relevant and probative on the issue of punitive damages.

This evidence is highly probative and not unfairly prejudicial. "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, ***substantially outweighing probative value***, which permits exclusion of relevant matter under Rule 403." *Positive Ions, Inc.,* 2007 WL 9701734, at *1 (citing *U.S. v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000)) (emphasis added).  Indeed, "Rule 403's 'major function is limited to excluding matter of ***scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.***'" *Id.* (citing *Hankey*, 203 F.3d at 1172) (emphasis added).  The evidence here is highly relevant and not being introduced solely for any unfairly prejudicial effect.[2]

---

[2] If Unsworth wanted to introduce evidence primarily for its prejudicial value, there are any number of pending legal actions involving Musk that are arguably relevant – for example, an NLRB complaint against Musk for a May 2018 tweet that allegedly violated labor laws, a defamation action by a former Tesla engineer who contends that Musk and Tesla attempted to destroy her after she spoke out, whistle blower lawsuits by two former Tesla employees who allege that Tesla spied on them and covered up narcotics trafficking in one of its plants, a class action lawsuit alleging racism at Tesla, and many others. *See, e.g.*, "Tesla and Elon Musk face dozens of lawsuits and investigations far beyond the SEC court fight," CNBC, Mar. 19, 2019, *avail. at* https://www.cnbc.com/2019/03/19/tesla-

1

2

## I.   FRE 408 DOES NOT REQUIRE EXCLUSION OF EVIDENCE REGARDING THE SEC ACTION AND RELATED TWEETS.

3        Federal Rule of Evidence 408 does not require this Court to exclude evidence

4  in this case about the SEC settlement and related tweets – indeed, it does not even

5  apply here.  By its express terms, FRE 408 provides that:

6              (a)  **Prohibited Uses.** Evidence of the following is not

7                   admissible – on behalf of any party – either to prove

8                   or disprove the validity or amount of a disputed claim

9                   or to impeach by a prior inconsistent statement or a

10                  contradiction:

11                     (1) Furnishing, promising, or offering . . . a valuable

12                         consideration in compromising or attempting to

13                         compromise a claim.

14                         . . .

15             (b)  **Exceptions.** The court may admit this evidence for

16                  another purpose, such as proving a witness's bias or

17                  prejudice, negating a contention of undue delay, or

18                  proving an effort to obstruct a criminal investigation

19                  or prosecution.

20

---

21  and-elon-musk-lawsuits-overview.html (last visited Nov. 11, 2019); "When Elon

22  Musk Tried to Destroy a Tesla Whistleblower," Bloomberg Businessweek, Mar.
    13, 2019, *avail. at* https://www.bloomberg.com/news/features/2019-03-

23  13/when-elon-musk-tried-to-destroy-tesla-whistleblower-martin-tripp (last

24  visited Nov. 11, 2019); "In new lawsuit, ex-Tesla engineer claims company is
    trying to 'catastrophically damage' her," GeekWire, Jan. 21, 2019, *avail. at*

25  https://www.geekwire.com/2019/new-lawsuit-ex-tesla-engineer-claims-

26  company-trying-catastrophically-damage/ (last visited Nov. 11, 2019).  However,
    Unsworth seeks to introduce evidence related only to the SEC litigation – which

27  is a completed matter – because it is highly relevant to this litigation, involving a

28  tweet during the relevant time period.

1   Thus, FRE 408 explicitly contemplates exceptions to the general rule, which in

2   itself is narrowly limited to situations where the settlement is being used "to prove

3   or disprove the validity or amount of a disputed claim" or "to impeach by a prior

4   inconsistent statement or a contradiction."  There is no blanket rule that information

5   related to settlements is excluded, as Musk would have this Court believe. Indeed,

6   here relevance is not premised on the fact that Musk settled the matter, rather it is

7   premised on his published Twitter statements reacting to the settlement.

8          The comments to the 2006 Amendment of the Rule are clear that the Rule

9   "bars compromise evidence ***only*** when offered as evidence of the 'validity,'

10  'invalidity,' or 'amount of the disputed claim'" and that Rule 408 is "inapplicable

11  when compromise evidence is offered for a purpose other than to prove the validity,

12  invalidity, or amount of a disputed claim."   FRE 408 at 2006 Amendment

13  (emphasis added).  *See generally Brocklesby v. U.S.*, 767 F.2d 1288, 1292-93 (9th

14  Cir. 1985) (recognizing admissibility of settlement agreement for "purposes that

15  are distinct from proving liability"); *Bradbury v. Phillips Petroleum Co.*, 815 F.2d

16  1356, 1363-64 (10th Cir. 1987) (recognizing admissibility of settlement of different

17  case to demonstrate, *inter alia*, "[defendant]'s continuous course of reckless

18  conduct and disregard of personal and property rights, to negate the defense of

19  mistake . . . and to rebut [defendants] assertion that the conduct was unintentional");

20  *Cunningham v. Gates*, 2006 WL 2294877, at *2 (C.D. Cal. Aug. 2, 2006) (rejecting

21  argument that previous punitive damages awards should be excluded under FRE

22  408 where they were "relevant to demonstrate whether Defendant policymakers

23  knew of and acquiesced in officers' conduct," and recognizing that "the City's

24  decision to pay punitive damages on behalf of individual officers is probative of

25  the City's indifference and ratification of [their] conduct").[3]

---

26  [3] Musk's reliance on *Kramas v. Security Gas & Oil, Inc.*, 672 F.2d 766 (9th Cir.

27  1982) is misplaced, as the enforcement proceeding in that case was offered

28  pursuant to Fed. R. Evid. 404(b) as a prior bad act where there was no real

In this case, Unsworth does not intend to introduce evidence of the SEC settlement to establish the validity or amount of a disputed claim.  Instead, as explained in this brief, this evidence is relevant to the reach, use and impact of Musk's Twitter account, including his knowledge of same.

## II.    THE SEC ACTION IS RELEVANT BECAUSE IT INVOLVES MUSK'S TWITTER ACCOUNT.

Musk's initial attacks against Unsworth were on Twitter, and the reach and scope of Musk's Twitter account is therefore relevant, as is Musk's knowledge of that reach and scope and his willingness to use his Twitter account to achieve his own purposes.  The SEC action involves Musk's Twitter account and particularly a tweet made by Musk at the same time as Musk's tweets about Unsworth.  Indeed, at the time of Musk's "don't you think it's strange he hasn't sued me" tweet on August 28, the SEC was actively investigating Musk's Tesla tweet from August 7, and Musk's Twitter account was the subject of countless news stories. Undeterred by the SEC investigation, Musk arrogantly attacked Unsworth again on Twitter.

The fact that the SEC took action against Musk for a tweet on August 7 — right between Musk's July 15 and August 28 tweets about Unsworth — is relevant to this action because it demonstrates the importance and impact of Musk's tweets as well as Musk's tweets capacity to convey provable facts and impact the world. Musk is not your average Twitter user — his tweets literally change markets, and in this instance, changed Unsworth's life. As the result of one tweet by Musk, NASDAQ stopped trading on Tesla. Thus, when Musk tweeted that he was taking Tesla private — apparently falsely — the SEC filed an action against him.  The fact that the SEC finds it necessary to regulate Musk's tweets demonstrates the

---

probative value. Here, the SEC action was on-going at the time of the defamation against Unsworth, thereby increasing Musk's awareness of the impact of his tweets on Unsworth – particularly his August 28 tweet.

1   importance of his use of Twitter and how damaging it can be for an individual or

2   entity who is the object of Musk's scorn or contempt.

3          The timing also demonstrates the type of tweets Musk was making during

4   that time period.  His tweet about Tesla going private was alleged by the SEC to be

5   false — it is irrelevant that Musk did not take blame for it in the settlement.

6   Unsworth does not intend to litigate the truth or falsity of Musk's statement

7   regarding taking Tesla private.  The key fact is that one of Musk's tweets made in

8   the midst of his Twitter attacks on Unsworth was alleged by the SEC to be false,

9   and the fact that Musk tweeted something that was allegedly false was of such

10  significance and impact that the United States government took action against him

11  as a result of the tweet.  Musk has mocked Unsworth for making a "federal case"

12  out of Musk's tweets, but Musk's tweets carry an imprimatur of importance to tens

13  of millions of people, and the SEC action clearly demonstrates that his tweets can

14  result in a "federal case."  *See, e.g., Orr v. City of Albuquerque*, 531 F.3d 1210,

15  1219 (10th Cir. 2008) (holding that compromise discussions can be used "to show

16  not liability *per se* but the absence of mistake" where there is a "larger and

17  deliberate pattern").

18         Thus, this information is relevant and probative with respect to Musk's

19  actual malice,[4] the actual damages suffered by Unsworth as a result of Musk's

20  tweets, and the punitive damages arising from Musk's reckless disregard for the

21  harm he was causing to Unsworth with his tweets.

22

23  [4] Circumstantial evidence can be introduced to establish actual malice under

24  California law, including evidence of common law malice such as "anger and
    hostility toward the plaintiff," as long as those factors reflect "on the subjective

25  attitude of the publisher."  *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d

26  244, 257-58 (1984).  The fact that Musk doubled and tripled down on his
    accusations against Unsworth via Twitter – at a time when he was acutely aware

27  of the power and impact of his own tweets – is relevant to establish actual malice

28  here.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   MUSK'S STATEMENT THAT A MULTI-MILLION DOLLAR SEC PAYMENT WAS "WORTH IT" IS RELEVANT TO PUNITIVE DAMAGES.

Under California law, the burden is on the plaintiff to introduce evidence of a defendant's financial condition to support an award for punitive damages. *See, e.g., Farmers & Merchants Trust Co. v. Vanetik*, 33 Cal. App. 5th 638, 647-48 (2019) ("The California Supreme Court has declined to prescribe any particular standard for assessing a defendant's ability to pay punitive damages, but it has held that actual *evidence* of the defendant's financial condition is essential.") (citations omitted).   The jury must have evidence from which it can determine "the defendant's ability to pay the damage award." *Green v. Laibco, LLC*, 192 Cal. App. 4th 441, 454 (2011).

The $20 million paid by Musk is relevant to punitive damages in this case. Musk told his Twitter followers — the same people to whom he tweeted the false and defamatory statements about Unsworth — that $20 million was "worth it" to have made allegedly false statements about taking Tesla private.  Whether those statements were true or not is irrelevant — the key is not only that Musk was financially able to pay the $20 million, but also that he publicly stated that the multi-million dollar fine was not an impediment to his Twitter behavior. The jury will attempt to find a fair and reasonable amount of monetary damages which will deter Musk. In that deliberation, the jury is entitled to know the truth and know the amount of money paid for a tweet which did not, as shown by his expressed statement, deter him in the slightest.

Information about the SEC enforcement action is also relevant to punitive damages because it demonstrates that Musk knew or should have known the potential harm that could be caused by his tweets. *See, e.g., O'Connor v. Boeing North Am., Inc.* 2005 WL 6035256, at *30, No. CV 00-0186 DT RCX (C.D. Cal., Aug. 9, 2005) ("Punitive damages may be awarded absent an intent to cause the

harm 'when a party intentionally performs an act for which he knows, or should know, it is highly probable harm will result.'") (quoting *Ford Motor Co. v. Home Ins. Co.,* 116 Cal. App. 3d 374, 381 (1981)).   It is not sufficient for a man whose tweets move markets to downplay his tweets as mere "insults" when he knows the power of those tweets.

Interestingly, Musk describes the SEC settlement as evidence "suggesting that Mr. Musk is wealthy and may be willing to pay large sums of money to get himself out of trouble that results from his tweets."  (Mot. at 7). That is exactly what Musk's "worth it" tweet demonstrates, and that attitude supports punitive damages.    Musk dismissed any consequence of the $20 million payment,[5] indicating that it would not deter his behavior.[6]    This does not constitute inadmissible "character" evidence – this is exactly the type of evidence that a jury can consider in awarding, and determining the amount of, punitive damages.  That is what punitive damages are intended to address – the amount that would deter similar future behavior.  *See, e.g., Peterson v. Superior Court,* 31 Cal. 3d 147, 155-56 (1982) ("The primary purpose of punitive damages is 'to penalize wrongdoers in a way that will deter them and others from repeating the wrongful conduct in the future.'").

---

[5] Musk is the largest shareholder of Tesla, and his "worth it" tweet can be reasonably viewed as his reaction to the total fine of $40 million. One can only speculate as to whether other Tesla shareholders thought his tweet was "worth it."

[6] We know, in fact, that the $20 million fine did not deter Musk's behavior.  In February 19, 2019, Musk sent another tweet that the SEC deemed to be false and a violation of the settlement agreement, and the two hammered out a more detailed agreement regarding Musk's use of Twitter.  *See, e.g.,* "Here are the 9 things Elon Musk needs permission to tweet about in the future," CNN Business, May 1, 2019, *avail. at* https://www.cnn.com/2019/05/01/tech/elon-musk-twitter-rules-sec/index.html (last visited Nov. 11, 2019).

1

<u>**CONCLUSION**</u>

2    Punitive damages in a civil case are considered to be quasi-criminal because
3    they do not compensate and are in the nature of a criminal fine. *See, e.g.*, *In re Late*
4    *Fee & Over-Limit Fee Litig.*, 741 F.3d 1022, 1027 (9th Cir.), *cert. denied*, 573 U.S.
5    947 (2014) (recognizing that punitive damages "further a State's legitimate
6    interests in punishing unlawful conduct and deterring its repetition" and that "[t]he
7    Supreme Court has characterized this state interest as 'quasi-criminal'") (citations
8    omitted).  A punitive damage award must be reasonably supported by evidence. A
9    judge would need to know the impact of prior fines or punishments in assessing the
10   proper sentence to be given to a criminal defendant.  In order to render a fair verdict
11   on punitive damages, the jury in this civil case is entitled to know the impact on
12   Musk of a prior substantial monetary payment in a civil action based on a tweet.
13   By his own admission, the prior payment had no deterrent effect because it was
14   "worth it."

15    Evidence relating to the SEC settlement, including Musk's "worth it" tweet,
16   is relevant evidence in this case on a variety of issues in dispute.  The evidence is
17   not subject to exclusion under FRE 403, 404, or 408 because it is not being
18   submitted for any purpose prohibited under those rules, and it is highly probative.

19

20    Dated:  November 11, 2019        L. LIN WOOD, P.C.

21

22                                     By: */s/L. Lin Wood*
23                                     L. Lin Wood
                                       *Attorneys for Plaintiff Vernon Unsworth*

24

25

26

27

28

11