L. LIN WOOD, P.C.
L. Lin Wood (*pro hac vice*)
lwood@linwoodlaw.com
Nicole J. Wade (*pro hac vice*)
nwade@linwoodlaw.com
Jonathan D. Grunberg (*pro hac vice*)
jgrunberg@linwoodlaw.com
G. Taylor Wilson (*pro hac vice*)
twilson@linwoodlaw.com
1180 West Peachtree Street, Ste. 2040
Atlanta, Georgia 30309
404-891-1402
404-506-9111 (fax)

WEISBART SPRINGER HAYES, LLP
Matt C. Wood (*pro hac vice*)
mwood@wshllp.com
212 Lavaca Street, Ste. 200
Austin, TX 78701
512-652-5780
512-682-2074 (fax)

CHATHAM LAW GROUP
Robert Christopher Chatham
chris@chathamfirm.com
CA State Bar No. 240972
3109 W. Temple St.
Los Angeles, CA 90026
213-277-1800

Attorneys for Plaintiff VERNON UNSWORTH

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH,<br><br>    Plaintiff,<br><br>v.<br><br>ELON MUSK,<br><br>    Defendant. | Case No. 2:18-cv-08048-SVW (JCx)<br>Judge: Hon. Stephen V. Wilson<br><br>**PLAINTIFF VERNON UNSWORTH'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE OF PURPORTED PRESS LEAKS**<br><br>Pretrial Conference: Nov. 25, 2019<br>Hearing Date:       Nov. 25, 2019<br>Time:               3:00 p.m.<br>Courtroom:          10A |

## INTRODUCTION AND FACTUAL BACKGROUND

Defendant Elon Musk's motion to exclude his now-admitted campaign to plant stories – via written instructions to his felonious investigator – in the UK and Australian press is frivolous as to its substance, rife with misrepresentative omissions, and disturbing in its defamatory suggestions regarding Plaintiff Vernon Unsworth's UK counsel, again highlighting the desperation of Musk in his efforts to create any defense to his conduct in this case.

Musk takes the position that this Court should exclude evidence of Musk's staged and malicious campaign to plant false stories in the press via that same investigator because the investigator reported to Musk that he was attempting to surreptitiously obtain privileged information about Unsworth's UK counsel and legal strategy. This specious contention is based ***on the entirely false, malicious, and baseless suggestion that somehow Unsworth's UK attorneys were in cahoots with the investigator to set up Musk by having the investigator provide Musk with false and defamatory information about Unsworth from his very first communication to Musk on and after July 15, 2018.¹*** In an act of shameless hypocrisy, Musk relies heavily on Howard's false, unverified, and vague information to defend this case on the issue of actual malice, while seeking to prohibit admission of Howard's efforts to plant false and defamatory accusations against Unsworth at the specific request of Musk. With a straight face and an abusive intent, Musk asserts an utterly nonsensical position that Unsworth's UK counsel and

---

¹ Unsworth has recently learned that this false, malicious, and baseless accusation was made by Musk's lead attorney, Alex Spiro, *in a fraud report filed with a police agency in the UK on September 25, 2019*. Unsworth will be prepared to provide the Court with an in camera review of the UK police report filed by Spiro at the hearing on this motion or at the pre-trial hearing. To accuse Unsworth's UK counsel of fraud without a scintilla of supporting evidence, and then submit the false report in this proceeding as a defense trial exhibit, raises serious legal and ethical questions justifying *sua sponte* sanctions against Musk and his law firm, Quinn Emanuel, and revocation of Spiro's pro hac vice privileges.

the investigator conspired to create Musk's libel while also creating his defense to the libel. Musk's contention crosses the line of proper conduct before this Court and amounts to an obstruction of justice by Musk and his involved attorneys.

The complete facts regarding Musk's overt instruction and intention to have published false and misleading accusations against Unsworth were fully addressed in Unsworth's Statement of Genuine Disputes in Opposition to Defendant's Motion for Summary Judgment, Statements of Fact 55-57 [Dkt. 76 at pp. 43-48]. Specifically:

1. Contemporaneously with Musk's August 28, 2018, tweet stating, *inter alia*, "don't you think it's strange he hasn't sued me" in response to a reporter stating he had called Unsworth a "pedo," Musk's front man Jared Birchall (under the fictional identity of Jim Brickhouse) delivered an e-mail to the investigator, James Howard, stating in material part:

> We would like you to immediately move forward with 'leaking' this information to the UK press. Obviously must be done very carefully.
>
> The line of thinking at this point is as follows:
> - Thailand is the world capital of pedophilia
> - This man has frequented Thailand since the 80's – eventually leading to his divorce to his wife in the UK.
> - While the guise of cave exploration is creative, there are amazing and extensive caving systems in many places throughout the world – not just in Thailand. Even the most ardent supporter of Thai food doesn't eat Thai food every day.
> - He eventually woman 30 years his minor [sic] – who he met while she was a teenager
> - He had been going to Thailand for decades before marrying her. She wasn't the first girl he met – and definitely not the first teenager he interacted with.

Share the facts and as you said, that should be enough for a story.

But we'd like to make this happen immediately.

(Wilson Decl. [Dkt. 79] Ex. 33 at p. 569).

2. Contemporaneously, Birchall was texting with Howard confirming his authority to plant these accusations in the press and stating it should expand from the UK to include Australia, with the two of them stating, e.g.:

- "…Priority is to divert the story away from the principal and let the UK tabloids develop there [sic] story." [Howard]
- "Would be ideal to have more than one publisher receive the info." [Birchall]
- "100%. Plan is to reach out indirectly to 3/4 different newspapers & print & online. …" [Howard]
- "So nothing out yet has your info?" [Birchall]
- "Daily Mail are now interested through Mick Smith. That's [sic] the paper that will have the biggest impact" [Howard]
- "Ok, good … Please let me know when you have word of a story with your narrative being published. One other thought, maybe we consider the Australian press as well. …" [Birchall]

(Wilson Decl. [Dkt. 78] at Ex. 25).

3. Birchall then confirmed in his deposition that Musk authorized this press campaign and that he was likely involved in framing the information set out in the instructive e-mail to Howard, testifying in material part as follows:

- The "we" in the above August 28, 2019, e-mail instructing Howard to plant this information in the UK press is Birchall and Musk
- Birchall testified "Yeah" in response to being asked whether "you wanted the story to be published, and Mr. Musk wanted it to be published too. True?"
- Birchall stated "I believe so, yes" in response to being asked whether

3

"Mr. Musk wanted this information leaked to the UK press"

- Birchall stated "Yes" in response to being asked "you said 'We agree to it,' and Musk said that 'I agree to it being leaked,' right?"
- Birchall testified "Yes" in response to being asked that "you are saying that you and Mr. Musk did want these leaks to happen immediately, true?"
- Birchall testified the story was purposed to "have people question the motive [of Unsworth] for being in Thailand" and that "pedophilia" "would be among the things that people would question," and that this was done because "we needed to somehow balance … a clear imbalance in what was in the media."
- Birchall testified "Yes" in response to being asked whether the "fact of the matter is you and Elon Musk wanted this information contained in Exhibit 66 and forwarded to the Sun as reflected on Exhibit 67, you and Mr. Musk wanted this information to be public; to be written about by the media, true?"
- Birchall testified that it was "Likely" that "Mr. Musk would have known that you were suggesting the avenue of also publishing in Australia," too.

(Wilson Decl. [Dkt. 77] Ex. 2 (Birchall Depo. 109:18-110:6, 111:18-24, 114:23-115:21, 119:1-120:25, 125:13-126:3, 129:10-13, 273:4-24)).

The evidence Musk wishes to exclude is relevant and probative on the issues of (1) Musk's state of mind, (2) Musk's intention and desire that BuzzFeed publish his August 30, 2019, e-mail accusing Unsworth of being a child rapist and taking a 12-year-old child bride, (3) punitive damages, and (4) Musk's subjective intent with respect to the factual nature and defamatory meaning of his tweets in this case, including without limitation the August 28 "don't think you it's strange he hasn't sued me yet" tweet which was published contemporaneously with these press leak

efforts.

Musk's motion is nothing more than an objection to relevant, probative, and truthful evidence on the grounds that Musk knows the evidence is damning and incriminating. This is exactly the type of information the jury must consider in its search for the truth. "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Positive Ions, Inc. v. Ion Media Networks, Inc.*, 2007 WL 9701734, at *1 (citing *U.S. v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000)). Musk's motion and objection must be overruled.

## ARGUMENT

The legal arguments raised by Musk in his misguided effort to exclude this evidence must be viewed in the context of the inequities inherent in Musk's request.

### I. MUSK RELIES ON HOWARD'S REPORTS AS HIS DEFENSE.

Musk improperly seeks to selectively use portions of his investigations of Unsworth as both swords and shields. First, Musk relied at summary judgment almost exclusively on the vague, unsubstantiated, and unverified communications between his investigator, Howard, and his right-hand-man Birchall, to (1) knowingly and falsely paint Unsworth as all those things Musk has accused him of being and (2) suggest that he was not reckless in accusing Unsworth of being a child rapist and having a child bride, among other false accusations. To assert this defense at trial, Musk will by necessity have to rely on Howard's reports and communications. Second, Musk has shielded from discovery the existence, purpose, scope, and facts uncovered during a second investigation by a second investigator on the purported basis of work product protection. (*See generally* Joint Stipulation on Plaintiff's Motion to Compel [Dkt. 84]). Musk's ongoing attempts to selectively use portions of his investigations as both swords and shields are inequitable and should not be endorsed.

Indeed, at bottom, Musk is asking this Court to permit his use of Howard's reports and communications to support his defenses in this case and then exclude certain portions of those communications that clearly demonstrate Musk's personal involvement in the investigation and the scope of his unwarranted and unfounded attacks on Unsworth. Such an inequitable contention could only be allowed in the fictional "Court of Musk" – it has no place in a United States District Court.

## II. EVIDENCE REGARDING MUSK'S EFFORTS TO PLANT STORIES IN THE PRESS REGARDING UNSWORTH IS RELEVANT AND PROBATIVE OF VARIOUS ISSUES IN THIS CASE.

Not surprisingly, Musk intentionally misstates the evidence before the Court. The issue is not whether Unsworth seeks to admit "speculative evidence at trial" regarding "[w]hether Mr. Howard leaked information about Mr. Unsworth…" (Mot. at 3). The issue is not whether such "'leaks' were real" or whether "any stories were ever published." (Mot. at 2). Rather, the issue is whether Unsworth can admit into the record the *undisputed* evidence that Musk and Birchall specifically instructed Howard to plant such stories in the press, their knowledge and expectation that he was in fact doing so, as outlined herein, and the e-mail itself as being evidence of Musk's knowledge and state of mind. It is clear that this evidence is relevant: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FRE 401.

### a. Musk's Malicious Public Relations Campaign Is Relevant to Musk's State of Mind Regarding Truth or Falsity.

As the Court acknowledged at the summary judgment hearing of this matter, while Unsworth is a private figure for the purpose of assessing liability in this matter, actual malice and common law malice remain at issue in this case. Musk's press campaign is highly probative of Musk's malice and his knowing disregard of truth or falsity.

In Birchall's August 28, 2018, e-mail to Howard instructing him "to immediately move forward with 'leaking' this information to the UK press," the substance of which Birchall testified Musk was likely involved in creating, Birchall and Musk *did not accuse Unsworth of being a child rapist or having a child bride despite the fact that the accusations would have been coming from an anonymous third-party who Musk and Birchall had taken great pains to avoid being tied to, including by use of aliases and avoiding any written contact with Musk.* Instead, Birchall suggested Unsworth is a pedophile by stating some generalities such as, e.g., "Thailand is the world capital of pedophilia," while also stating some specifics such as, e.g., "He eventually [married] a woman 30 years his minor – whom he met while she was a teenager." (Wilson Decl. [Dkt. 79] at Ex. 33).

In other words, despite having the relative comfort of total anonymity in making these accusations, Musk and Birchall stated only that Unsworth had married a younger woman that he had met while she was a teenager, but not that Unsworth is a "child rapist" who moved to Chiang Rai "for a child bride who was about 12 years old at the time," as Musk published to BuzzFeed just two days later in claimed reliance on the investigator's information. (Wilson Decl. [Dkt. 78] at Ex. 19).

These discrepancies are material and significant. They are highly probative as to Musk's knowledge that his accusations were false. Indeed, the substance of the August 28, 2018, e-mail instructing Howard to conduct these press "leaks" is highly relevant to Musk's accusations against Unsworth. The sharp discrepancies between the investigative notes as to the leaks and Musk's statements to BuzzFeed support a jury finding that Musk's accusations were knowing and outright fabrications.

### b. Musk's Malicious Public Relations Campaign Is Relevant to Musk's Alleged Subjective Intent in Publishing the Tweets.

Musk asserted at summary judgment, and apparently intends to so claim again at trial, that he never intended to describe Unsworth as a pedophile on Twitter but only intended to convey that Unsworth struck him as a "creepy old man" in

appearance and manner. He further asserted on motion to dismiss and apparently intends to argue at trial that he was not conveying factual information in tweeting his accusation of pedophilia against Unsworth. The August 28, 2018, e-mail at issue in this motion paints a much different picture.

The August 28, 2018, e-mail and Birchall's testimony regarding its purpose plainly reveals Musk's testimony that he did not intend to call Unsworth a pedophile on Twitter to be frivolous and potentially perjurious. Indeed, for instance, Musk was tweeted at by a reporter stating, in part, "your dedication to facts and truth would have been wonderful if applied to **that time when you called someone a pedo**." (Wilson Decl. [Dkt. 78] at Ex. 18) (Emphasis added). Musk responded at 9:41 a.m. on August 28, 2018, stating, in part, "You don't think it's strange he hasn't sued me?" (*Id.*).

It was just seven minutes later, at 9:48 a.m. on August 28, 2018, that Birchall sent the e-mail instructing Howard to plant stories in the press suggesting that Unsworth is a pedophile. (Wilson Decl. [Dkt. 79] at Ex. 33). Birchall affirmatively testified that the information being "leaked" was purposed "to have people question the motive [of Unsworth] for being in Thailand," and that pedophilia "would be among the things that people would question." (Wilson Decl. [Dkt. 77] at Ex. 2). The timing and content of the e-mail to Howard is highly probative of Musk's claimed subjective intent that his Twitter postings were anything other than factual assertions of pedophilia.

### c. Musk's Malicious Public Relations Campaign is Relevant to Musk's Liability for Republications of His Accusations.

Musk asserts that his instruction to Howard to plant false stories in the press regarding Unsworth "does not bear on whether Mr. Musk intended to [sic] his communications with BuzzFeed to be 'off the record,'" (Mot. at 2), but the jury is entitled to find otherwise. The leak campaign is relevant to this litigation and highly probative of Musk's intent – and the lengths to which he was willing to go – to ensure

8

that the media published false and defamatory accusations against Unsworth in order to "level the playing field." This is especially so in light of Birchall's affirmative testimony confirming that Musk "wanted the story published" in order to obtain "unflattering" articles regarding Unsworth which would "balance … a clear imbalance in what was in the media." (Wilson Decl. [Dkt. 77] at Ex. 2).

The legal standard on republication is whether "(b) the repetition was authorized or intended by the original defamer, or (c) the repetition was reasonably to be expected." Restatement (Second) of Torts § 576. This evidence clearly goes to this standard, as it is undisputed that Musk intended that the media republish his false statements conveying Unsworth to be a child rapist. It was, according to Birchall, his express intention that such stories "happen immediately" beginning August 28, 2018, and the temporal connection to his August 30, 2018, e-mail to BuzzFeed cannot be denied. He wanted this information in the public realm, and he achieved that by e-mailing BuzzFeed when this initial effort via Howard did not pay off quickly enough.

The evidence is clear that at the very same time Musk was emailing BuzzFeed that Unsworth was a child rapist, he was also actively attempting to have accusations of sexual misconduct published in the UK through the machinations of a convicted felon "investigator." The timing makes it clear — or is at least highly probative of the fact — that the two "leaks" to the media were related. Indeed, that there is no evidence that Howard was successful in getting the information actually published in the UK media makes the information more relevant, not less relevant – a jury will be entitled to draw the reasonable inference from this evidence that Howard's failure sparked Musk to take matters into his own hands and fire off his emails to BuzzFeed to get his "unflattering" accusations published anonymously to "correct" the "imbalance" in the media. Who reasonably would be expected to not publish salacious and heinous criminal accusations leveled against the cave rescuer who was the subject of the pedo guy controversy when the source is Elon Musk? No one. The

9

media would investigate (as BuzzFeed did) and publish the entire truth (as BuzzFeed did).

### d. Musk's Malicious Public Relations Campaign Is Relevant to Punitive Damages.

Musk's attempt to plant stories in the press via Howard is also relevant and probative on the issue of punitive damages as it is evidence of actual malice and common law malice. "The requisite intent to support punitive damages is malice, and it may be proved either expressly (by direct evidence probative on the existence of hatred or ill will) or by implication (by indirect evidence from which the jury may draw inferences)." *Kaffaga v. Estate of Steinbeck*, 938 F.3d 1006, 1016 (9th Cir. 2019) (internal quotations and citations omitted).

There can be no reasonable dispute that Musk's efforts to orchestrate a press campaign to assassinate Unsworth's character is probative evidence of Musk's common law malice, directly and indirectly.

### III. EVIDENCE REGARDING MUSK'S EFFORTS TO PLANT STORIES IN THE PRESS CANNOT BE EXCLUDED UNDER FRE 403.

Musk's assertion that the probative value of this evidence – addressed above – is outweighed by the danger of unfair prejudice is unavailing. The standard is not whether this highly relevant evidence is "unnecessarily prejudicial to Mr. Musk's case," as suggested by Musk. (Mot. at 2). "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, *substantially outweighing probative value*, which permits exclusion of relevant matter under Rule 403." *Positive Ions, Inc.*, 2007 WL 9701734, at *1 (citing *U.S. v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000)) (emphasis added). Indeed, "[r]ule 403's 'major function is limited to excluding matter of *scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.*'" *Id.* (citing *Hankey*, 203 F.3d at 1172) (emphasis added).

10

The probative value of this evidence is many, varied, and clear. The fact that it is prejudicial to Musk's case is not a factor in the analysis; it must be ***unfairly*** prejudicial and that unfair prejudice must substantially outweigh the probative value. Musk cannot submit to this Court any law suggesting that a defendant's conduct against the plaintiff is irrelevant and unfairly prejudicial – whether it be prior conduct or contemporaneous conduct as is the case here – under these or other circumstances.

Musk's related assertion that admitting this evidence will result in a "trial within a trial" is based on his self-created, false and unsupported accusation against Unsworth's UK counsel first asserted by the filing of the UK police report by Spiro. The creation of this issue is an effort to perpetrate a fraud upon this Court and the parties to that fraud are Musk and his attorney. That dispute may well be decided on another day in another forum, but it has no relevance to this case and its assertion by Musk is sanctionable.

*First,* the "trial within a trial" position makes no sense on its face. Musk asserts that "both parties would have to present evidence regarding an entirely different set of (non-existent) news stories." (Mot. at 4). Musk's suggestion is dishonest and disingenuous when he states that admitting this evidence "will, by necessity, require Defendant to explore communications between Mr. Howard and Mr. Unsworth's attorneys," which "would include any evidence regarding *their knowledge of Mr. Howard's purported leaks and other activities*." (Mot. at 4-5) (emphasis added). Musk knows that there is absolutely, unequivocally, no such evidence. He sought communications, if any, between the investigator and Unsworth's counsel by subpoena. He received no such documents or communications because they do not exist. Non-existent evidence and a fictional accusation created by Musk and his counsel do not create a trial within a trial. They only create a need for severe sanctions to be imposed on Musk and his counsel.

*Second*, Musk's continued casting of defamatory aspersions on Unsworth is contradicted by all of the evidence. Howard reached out to Musk on July 15

11

suggesting he had dirt on Unsworth. He then engaged in a months' long campaign to invade the privacy of Unsworth and reported back false and defamatory innuendo and false information. Moreover, the evidence in this case is unequivocal that Musk and Birchall knew and encouraged Howard to spy on Unsworth and obtain information regarding his legal representation and strategy. *See, e.g.,* Wilson Decl. [Dkt. 78] at Ex. 25 (text messages between Howard and Birchall with Birchall asking, e.g., "Confirmed that he has been retained by Unsworth?" and Howard responding "No Bcut I can find out Later this morning I know another partner at the law firm Can make a social call & make a soft enquiry" and "I'm met with a partner of Howard Kennedy last night who confirmed that Unsworth has been to the London office for meetings…"); *Id.* at Ex. 23 ("This will be to establish how far along the legal route he has gone and what the strategy is.").

FRE 403 is not a basis to exclude evidence of Musk's authorization of and instruction to Howard to plant false information in the press regarding Unsworth.

## IV. EVIDENCE REGARDING MUSK'S EFFORTS TO PLANT STORIES IN THE PRESS REGARDING UNSWORTH DOES NOT CONSTITUTE CHARACTER EVIDENCE.

Evidence regarding Musk orchestrating a press campaign against Unsworth is not character evidence at all. It is not submitted to prove any character trait of Musk's, and Musk's six-line argument in this regard does not even attempt to identify what trait this evidence is establishing. Indeed, as outlined herein regarding the various relevant purposes for which this evidence is being submitted, there are a litany of non-character purposes to admit this evidence.

First, this evidence is not evidence of an "*other act*" identified by FRE 404(b)(1). (Emphasis added). This is the very same act constituting a single transaction against the very same party. This is not a case where the defendant may have on a separate occasion committed a similar bad act against another individual. Musk's actions in orchestrating this press campaign form part and parcel of the

relevant factual circumstances of this very case; not another case. It is one single investigation against one single person, Unsworth.

Even if this evidence did constitute character evidence, it would be admissible under FRE 404(b)(2) because it is being submitted for various non-character purposes. "Evidence of a crime, wrong, or other act … may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FRE 401(b)(1)-(2); cf. *McFee v. State*, 511 So.2d 130, 136 (Miss. 1987) ("Proof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction, where it is necessary to identify the defendant, where it is material to prove motive and there is an apparent relation or connection between the act proposed to be proved and that charged … In short, evidence of a defendant's other crimes is admissible, where it is integrally related in time, place, and fact,' to that for which he stands trial …"). To the extent evidence of Musk's contemporaneous actions against Unsworth can somehow be considered character evidence, it is admissible to prove motive, intent, and knowledge, and because it is simply part of the factual circumstances of this particular case. Musk's malicious motive and intent in publishing his false accusations against Unsworth; his motive and intent for e-mailing BuzzFeed to ensure after Howard had failed that his false accusations would be published; his intent in publishing his August 28 tweets; and his intent and knowledge that his e-mails to BuzzFeed and his tweets were factual and defamatory in nature.

To elaborate further on one additional and permissible non-character purpose of this evidence, even if Musk's efforts to assassinate Unsworth's character through a campaign other than his Twitter posts and BuzzFeed e-mail constituted character evidence submitted for the purpose of proving character, it would still be admissible on punitive damages. See, e.g., *O'Connor v. Boeing North American, Inc.*, 2005 WL 6035256, at *30 n. 34 (C.D. Cal., Aug. 9, 2005) (rejecting assertion of character of

evidence and holding that "[t]he California Supreme Court has held that evidence regarding a defendant's conduct which is related to the cause of action are admissible to establish punitive damages pursuant to § 3294" and stating "if the 'conduct in question replicates prior transgressions, it would be properly admitted to determine punitive damages.") (citing *Potter v. Fire Stone Tire & Rubber*, 7 Cal. 4th 965 (1993) and *Johnson v. Ford Motor Co.*, 35 Cal. 4th 1191, 1203 (2005) ("Similar conduct by a defendant may be potentially relevant to the reprehensibility of the conduct, and hence to the permissible size of punitive damages.")).

## CONCLUSION

For the foregoing reasons, Unsworth respectfully requests that the Court deny Musk's Motion in Limine to exclude evidence of Musk's instruction to plant stories in the UK and Australian press regarding Unsworth. Unsworth also requests that the Court consider severe sanctions against Musk and his counsel.

Dated:  November 11, 2019   **L. LIN WOOD, P.C.**
By: */s/L. Lin Wood*
L. Lin Wood
*Attorneys for Plaintiff Vernon Unsworth*