QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (admitted pro hac vice)
  alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
  jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH,<br><br>          Plaintiff,<br><br>     vs.<br><br>ELON MUSK,<br><br>          Defendant. | Case No. 2:18-cv-08048<br><br>Judge: Hon. Stephen V. Wilson<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE**<br><br>Complaint Filed: September 17, 2018<br>Trial Date: December 2, 2019 |

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................... 1

II. THE COURT SHOULD DENY PLAINTIFF'S EFFORTS TO
    EXCLUDE EVIDENCE ABOUT HIS REPUTATION AND THE
    LACK OF ANY HARM TO IT (MIL NOS. 4, 7, 2 & 5) ................................. 3

    A.  Because Mr. Unsworth Has Put At Issue His Reputation And Any
        Harm To It, He Cannot Keep The Jury From Hearing That He Has
        No Evidence Of Harm ................................................................... 3

    B.  The Court Should Not Exclude Evidence of Lack of Harm (No. 4). ....... 4

    C.  The Court Should Not Exclude Evidence About Mr. Unsworth's
        Efforts to Manage the Public's Views About Him (No. 7). .................. 6

    D.  The Court Should Not Bar Evidence On Motives for Suing (No.
        2) .............................................................................................. 6

    E.  The Court Should Not Exclude Evidence of Unsworth's Business
        Reputation (No. 5) ...................................................................... 8

III. THERE IS NO BASIS TO EXCLUDE EVIDENCE ABOUT
     BUZZFEED ..................................................................................... 10

    A.  Evidence About BuzzFeed's Policies Is Relevant (No. 8). .................. 10

    B.  There Is No Basis To Exclude Evidence About Mr. Unsworth's
        Failure to Sue BuzzFeed (No. 3) .................................................. 11

IV. THE COURT SHOULD NOT EXCLUDE OTHER EVIDENCE ................... 12

    A.  The Court Should Not Exclude Evidence Regarding Mr.
        Unsworth's UK Lawsuit Against Mr. Musk (No. 1). ........................ 12

    B.  The Court Should Not Exclude Evidence Concerning Mr.
        Unsworth's Relationship with his Family (No. 6). ............................ 14

    C.  The Court Should Not Exclude Tik's Testimony Regarding Big
        Kren or Jobpub.com (Nos. 9 and 10). ........................................... 16

    D.  The Court Should Not Exclude Evidence of Pedophilia (No. 11) ......... 17

    E.  The Court Should Not Exclude Third-Party Tweets (No. 12). ............. 17

    F.  The Court Should Not Preclude Witnesses With Knowledge Of
        Mr. Unsworth's Role in the Rescue (No. 13). ................................ 18

V.  CONCLUSION ................................................................................. 19

# TABLE OF AUTHORITIES

**Page**

### CASES

*Barnes-Hind, Inc. v. Superior Court*,
    181 Cal. App. 3d 377 (1986) ................................................................. 6

*Brennan v. Reinhart Institutional Foods*,
    211 F.3d 449  (8th Cir. 2000) ............................................................. 18

*Buckeye Assoc., Ltd. v. Fila Sport, S.p.A.*,
    931 F.2d 59 (9th Cir. 1991) ................................................................ 13

*Bularz v. Prudential Ins. Co.*,
    93 F.3d 372 (7th Cir. 1996) .................................................................. 9

*Clay v. Lagiss*,
    143 Cal. App. 2d 441 (1956) ................................................................ 4

*Cobige v. City of Chicago, Ill.*,
    651 F.3d 780 (7th Cir. 2011) .............................................................. 14

*Cohen v. Hansen*, 2016 WL 1688004 (D. Nev. Apr. 27, 2016), *aff'd*, 748 F.
    App'x 128 (9th Cir. 2019) .................................................................... 5

*Design Strategies, Inc. v. Davis*,
    228 F.R.D. 210 (S.D.N.Y. 2005) ........................................................ 19

*Desnick v. Am. Broad. Companies, Inc.*,
    1999 WL 51796 (N.D. Ill. Jan. 29, 1999) .......................................... 12

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
    472 U.S. 749 (1985) ............................................................................. 5

*Equal Employment Opportunity Comm'n v. Peters' Bakery*,
    301 F.R.D. 482 (N.D. Cal. 2014) ....................................................... 15

*Ferreira v. City of Binghamton*,
    2016 WL 4991600 (N.D.N.Y. Sept. 16, 2016) .................................... 8

*Gowder v. Bucki*,
    2013 WL 6182964 (N.D. Ill. Nov. 26, 2013) ....................................... 7

*Hopey v. Spear*,
    2016 WL 9665165 (C.D. Ill. June 23, 2016) .............................. 7, 8, 14

*HTC Corp.* v. Tech. Props.,
    2013 U.S. Dist. LEXIS 129263 (N.D. Cal Sept. 6, 2013) ................. 10

*Lewis v. Davis*,
    2019 WL 764749 (N.D. Tex. Feb. 21, 2019) ..................................... 11

*Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*,
   189 F.3d 473, 1999 WL 547400 (9th Cir. 1999)................................17

*Marcone v. Penthouse Int'l Magazine For Men*,
   754 F.2d 1072 (3d Cir. 1985)..............................................6

*McKesson Info. Sols., Inc. v. Bridge Med., Inc.*,
   434 F. Supp. 2d 810 (E.D. Cal. 2006)....................................18

*Miller v. Schmitz*,
   2013 WL 5754945 (E.D. Cal. Oct. 23, 2013) ................................8

*Newton v. Nat'l Broad. Co.*,
   930 F.2d 662 (9th Cir. 1990) ...............................................5

*Schafer v. Time, Inc.*,
   142 F.3d 1361 (11th Cir. 1998) ...........................................10

*Shively v. Bozanich*,
   31 Cal. 4th 1230 (2003)..................................................12

*Sleem v. Yale Univ.*,
   843 F. Supp. 57 (M.D.N.C. 1993) ...........................................5

*Smith for J.L. v. Los Angeles Unified Sch. Dist.*,
   2018 WL 6137133 (C.D. Cal. Feb. 13, 2018) ..............................15

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
   547 F.3d 406 (2d Cir. 2008) ..............................................11

*Um Corp. v. Tsuburaya*,
   2017 U.S. Dist. LEXIS 218369 ...........................................13

*United States v. Stone*,
   222 F.R.D. 334 (E.D. Tenn. 2004), *aff'd*, 432 F.3d 651 (6th Cir. 2005) .........18

*Weller v. Am. Broad. Companies, Inc.*,
   232 Cal. App. 3d 991 (1991)...............................................5

*World Wide Ass'n of Specialty Programs v. Pure, Inc.*,
   450 F.3d 1132 (10th Cir. 2006)............................................9

*Wynberg v. Nat'l Enquirer, Inc.*,
   564 F. Supp. 924 (C.D. Cal. 1982).....................................6, 10

RULES

Fed. R. Civ. P. 15(a)(2)...................................................13

Fed. R. Civ. P. 26(a)(1)(A)(i) .............................................19

Fed. R. Civ. P. 37(c)(1)...................................................19

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE

Fed. R. Evid. 403 ................................................................................................11

Fed. R. Evid. 902(13).........................................................................................17

Fed. R. Evid. 902(14).........................................................................................17

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE

# I.    __INTRODUCTION__

To put Mr. Unsworth's Motions in Limine in context, Mr. Musk summarizes here what he intends to prove at trial:  Although Mr. Unsworth played a role in the cave rescue's early days—by convincing Thai authorities to contact British cave rescue divers and by suggesting where the boys likely were located—his role receded after the boys were found and the focus turned to devising a way to safely extract them, by diving them out.  Mr. Unsworth was not a cave diver and did not have the expertise needed to participate in those life-threatening aspects of the rescue, which claimed the life of one Thai Navy Seal.

Nonetheless, Mr. Unsworth remained front and center to the media, providing interviews on the status of the rescue efforts and reminding anyone who would listen of the role he had played.  The evidence will show that he intended to capitalize monetarily on his role, and sought to remain the focus of the limelight.  Mr. Unsworth found a singularly effective way to do that:  He went on an international news broadcast, CNN, to tell the world that Mr. Musk did not care about the lives of the boys and was engaging in only a PR stunt.  That was just one part of Mr. Unsworth's larger plan to highlight his role in the rescue and diminish the actions of others involved—the Thai Navy Seals, the Governor of Chiang Rai, the British divers, and the doctors who risked their lives diving to the boys to administer the sedatives needed to implement the rescue—all in the service of his plan to sell the rights to his version of the story for a large windfall.

Mr. Musk responded to Mr. Unsworth's unprovoked attack.  His response included calling Mr. Unsworth "sus" (for "suspicious"), and an insult ("pedo guy") that was not literal and not meant to be taken literally.  The context of this public exchange is critical to understanding that.  Context is also critical to the republication of Mr. Musk's later statements about Mr. Unsworth.  With the threat of a lawsuit and a belief based on an investigator's reports that Mr. Unsworth was involved in inappropriate and illegal activities, Mr. Musk sent an "off-the-record" email to a

1   BuzzFeed reporter directing him to further investigate Mr. Unsworth's background.

2   Mr. Musk never intended for BuzzFeed to publish his off-the-record email.  Yet,

3   BuzzFeed published it anyway, contrary to its publicly-stated policies, and with input

4   from Mr. Unsworth's attorney.  This article, that Mr. Unsworth now says caused him

5   great harm, lionized him and attacked Mr. Musk.  Contrary to Mr. Unsworth's claims

6   that he suffered actual, reputational and emotional damage as a result of this

7   "publication," the evidence will show he has suffered no harm at all.

8         The evidence on these points is relevant and admissible.  But Mr. Unsworth

9   seeks to exclude almost all of it because it is counter to his narrative that he is a

10  heroic victim being bullied by a billionaire.  Mr. Unsworth wants to ignore that a

11  defendant possesses the right to present evidence at trial to dispute the elements of a

12  plaintiff's claims.  And in a defamation case, including this one, in which Mr.

13  Unsworth claims that Mr. Musk's statements about him were assertions of fact, were

14  false, and harmed his reputation, Mr. Unsworth must accept Mr. Musk's right to

15  present wide-ranging evidence about the plaintiff's reputation.

16        Mr. Unsworth, however, does not want to live by these rules.  For example, he

17  seeks to keep the jury from knowing that:  (a) both Mr. Unsworth and his expert have

18  admitted that they have no evidence that his reputation has been harmed, e.g., that no

19  one believes that Mr. Unsworth is a pedophile or child rapist (No. 4); (b) Mr.

20  Unsworth has been on a campaign, starting when the rescue was still underway, to

21  claim fame and fortune for himself, while diminishing the role and recognition

22  accorded everyone else involved, and that his damage-less lawsuit is a mere

23  manifestation of that campaign (Nos. 2 and 7); and (c) he already had a negative

24  business reputation due to a government determination that his company had engaged

25  in unlawful business practices.  (No. 5.)  This evidence is relevant and admissible.

26        Similarly, the jury will have to decide whether it was "reasonably foreseeable"

27  that BuzzFeed would republish Mr. Musk's "off-the-record" email.  Yet, Mr.

28  Unsworth seeks to exclude evidence that, in doing so, BuzzFeed was violating its

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE

1  own publicly-posted policies, which BuzzFeed changed right after it published his
2  "off-the-record" email.  (No. 8.)

3      Mr. Unsworth also seeks to exclude evidence related to the credibility of his
4  witnesses (Nos. 9 & 10), as well as witnesses and documents (recovered from his
5  phone) that will show he has publicly overstated his contributions to the rescue and
6  has been trying to generate publicity and money from it and diminish the roles of
7  others.  (No. 13.)  The list goes on and on.[1]  This evidence is material, relevant, and
8  admissible.  The Court should deny Mr. Unsworth's motion.

9  **II.    THE COURT SHOULD DENY PLAINTIFF'S EFFORTS TO EXCLUDE**
10       **EVIDENCE ABOUT HIS REPUTATION AND THE LACK OF ANY**
11       **HARM TO IT (MIL NOS. 4, 7, 2 & 5)**

12       **A.    Because Mr. Unsworth Has Put At Issue His Reputation And Any**
13            **Harm To It, He Cannot Keep The Jury From Hearing That He Has**
14            **No Evidence Of Harm.**

15       Mr. Unsworth intends to tell the jury his story of victimization by Mr. Musk,
16  and the purported injuries to his reputation and emotional well-being that, he claims,
17  ensued.  If Mr. Unsworth wants to offer that evidence, Mr. Musk has to be given the
18  right to present evidence to the contrary, including evidence that Mr. Unsworth has
19  not been harmed.  But Mr. Unsworth does not want the jury to know that.  Why?
20  Because he has no facts or evidence that anyone in the world thinks he is a pedophile
21  or believes what Mr. Musk said about him.  (Michael Lifrak Opposition Declaration
22  ("Lifrak Decl.") Ex. 1 (Unsworth Tr. 94:20-95:1).)  And his experts, who could have
23  conducted surveys or focus groups on the issue, are similarly unable to identify

24  ---
25  [1]  To be clear, however, Mr. Musk has no intention of asking Mr. Unsworth about
     child pornography, and has already agreed to refrain from asking about adult
26  pornography.  Nonetheless, because Mr. Unsworth has the burden to prove the falsity
     of Mr. Musk's statements, and without knowing what doors Mr. Unsworth may open
27  in the process, Mr. Musk requests the Court reserve his right to raise this issue if the
     need arises, with the Court's permission.
28

1 | anyone who believes what Mr. Musk said or thinks any less of Mr. Unsworth as a

2 | result.  (Lifrak Decl. Exs. 2, 3 (Rose Tr. 183:14-184:6; Jansen Tr. 33:6-13).)

3 |       To prepare to rebut elements of Mr. Unsworth's claim, Mr. Musk has adduced

4 | evidence that Mr. Unsworth has ***not*** been harmed.  For example, after Mr. Musk said

5 | everything Mr. Unsworth is suing him over, Mr. Unsworth received extensive praise

6 | and publicity around the world:  The Queen of England bestowed Mr. Unsworth with

7 | the Member of the Most Excellent Order of the British Empire ("MBE") title, the

8 | King of Thailand honored him with the Royal Thai Insignia—King Commander

9 | (second class) Most Admirable Order of Direkgunabhorn, the British Royal Humane

10 | Society awarded him the Certificate of Commendation, and the British Chamber of

11 | Commerce Thailand awarded him its Social Impact Award (on behalf of the UK team

12 | involved in the rescue).  (Lifrak Decl. Ex. 4 (Response No. 4).)  Mr. Unsworth has

13 | been invited to speak at numerous events, contributed to books, and participated in

14 | two documentaries.  (*Id.* at Response Nos. 3, 5, 7.)  The objective evidence shows

15 | that no third parties have acted as if they thought any less of him because of Mr.

16 | Musk's statements.  The jury is entitled to hear this evidence.

17 | **B.**   **The Court Should Not Exclude Evidence of Lack of Harm (No. 4).**

18 |      As a basis to keep the jury from hearing evidence that Mr. Musk's statements

19 | did not harm his reputation, Mr. Unsworth argues that those statements are libelous

20 | "per se" such that he is entitled to "presumed damages."  (Mot. at 9.)  He then leaps

21 | to the conclusion that, in such cases, evidence of lack of injury is inadmissible.  (*Id.*)

22 |      That is not the law.  The case Mr. Unsworth cites, *Clay v. Lagiss*, does not

23 | support exclusion of this evidence.  143 Cal. App. 2d 441 (1956).  There, the plaintiff

24 | did not put on affirmative evidence of harm to reputation, and instead relied solely on

25 | the presumption of harm.  That is not what Mr. Unsworth is doing here.  As he admits

26 | in his motion, he is seeking "to recover actual damages for negligent publication of

27 | false and defamatory statements."  (Mot. at 13.)  He intends to introduce evidence of

28 | supposed harm, including of "actual reputational, emotional, and mental harm," and

harm in the form of "stress, emotional distress, anxiety, and feelings of social isolation."  (Lifrak Decl. Ex. 4 (Response No. 1).)  He plans also to have an expert testify—without evidence to support it—that Mr. Unsworth's reputation has been "harmed."  (Lifrak Decl. Ex. 5 (Rose Report at 1) ("I will discuss the impact, effects, ramifications, and negative consequences resulting in damage to plaintiff.").)

If Mr. Unsworth intends to offer evidence on any of these matters, he cannot preclude Mr. Musk from offering contrary evidence and from arguing that Mr. Unsworth has suffered no harm.  *See, e.g.*, *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 671 (9th Cir. 1990) (reducing jury award of presumed damages "precisely because the court itself determined that Newton's 'outstanding reputation' had been unharmed by the stories"); *Cohen v. Hansen*, 2016 WL 1688004, at *3 (D. Nev. Apr. 27, 2016), *aff'd*, 748 F. App'x 128 (9th Cir. 2019) (in presumed damages case, parties not "precluded from offering evidence of loss of reputation or business"); *Weller v. Am. Broad. Companies, Inc.*, 232 Cal. App. 3d 991, 1014 (1991) (holding "failure to prove special damages may be a factor in concluding that [presumed] damages for injury to reputation are excessive"); *Sleem v. Yale Univ.*, 843 F. Supp. 57, 61 (M.D.N.C. 1993) (in majority of states, defendant permitted to show that there was no reputational injury, even though plaintiff was entitled to recover presumed damages). *See also Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 765 (1985) (White, J., concurring) (noting that traditionally "[t]he defendant was permitted to show that there was no reputational injury; but at the very least, the prevailing rule was that at least nominal damages were to be awarded for any defamatory publication actionable *per se*").

Mr. Unsworth plans to stretch his right to "presumed damages" even further, by seeking such damages, and the exclusion of evidence of harm, for statements that are not libelous "per se."  His claim includes Mr. Musk's tweet that he was "sus," Mr. Musk's apology, and Mr. Musk's statements that Mr. Unsworth's comments about him were untrue.  (Compl., ¶ 113.)  These are not libelous "per se" because they lack

1  any defamatory content in them that would direct a "reasonable reader [to] perceive

2  … a meaning which tended to injure [Mr. Unsworth's] reputation in any [way]," even

3  when read in the context of the entire dialogue. *Barnes-Hind, Inc. v. Superior Court*,

4  181 Cal. App. 3d 377, 386 (1986).  Thus, Mr. Unsworth is not entitled to damages for

5  those statements unless he can show harm.  For that reason alone Mr. Musk is entitled

6  to present evidence as to the lack of harm to his reputation.

7      **C.**    **The Court Should Not Exclude Evidence About Mr. Unsworth's**

8          **Efforts to Manage the Public's Views About Him (No. 7).**

9        Mr. Unsworth claims that, in light of the Court's ruling that he is not a limited

10  purpose public figure, evidence of his efforts to obtain publicity for himself are no

11  longer relevant.  (Mot. at 12.)  But that is not the only issue in this case to which this

12  evidence pertains.  That Mr. Unsworth has attempted to parlay his role in the rescue

13  to fame and recognition is relevant to whether his reputation was actually harmed.

14  As described above, even after Mr. Musk's statements about him, Mr. Unsworth has

15  sought and received awards, speaking engagements, and other praise.  He wants to

16  preclude that evidence.  (*Id.*, citing money received from his fame, hiring an agent,

17  and giving presentations.)  The jury is entitled to hear this evidence in deciding

18  whether Mr. Unsworth's reputation has actually been harmed.  *See, e.g.*, *Wynberg v.*

19  *Nat'l Enquirer, Inc.*, 564 F. Supp. 924, 927–28 (C.D. Cal. 1982) (allowing reputation

20  evidence in libel case); *Marcone v. Penthouse Int'l Magazine For Men*, 754 F.2d

21  1072, 1079 (3d Cir. 1985) (evidence of publicity about plaintiff in other

22  circumstances was relevant to plaintiff's "reputation" and to defamation damages).

23      **D.**    **The Court Should Not Bar Evidence On Motives for Suing (No. 2).**.

24        Mr. Musk is entitled to argue to the jury that Mr. Unsworth's suit does not arise

25  from any actual harm but rather from his continued attempts to personally benefit

26  from his role in the rescue.  As noted above and elsewhere, Mr. Unsworth has

27  consistently attempted to monetize his role in the rescue, working with an agent

28  (Lifrak Decl. Exs. 6, 22), speaking with representatives of Warner Bros. and Netflix

(Lifrak Decl. Ex. 7, at VU03361, 73), and bragging about the "big offer" he would need to be paid if he were to participate in any movie or book project. (Lifrak Decl. Ex. 8.) But that has not been good enough. Mr. Unsworth has also used his fame to diminish others who participated in the rescue, including those who risked their lives. He stated that he would "make the divers suffer" because they were getting more fame than him. (Lifrak Decl. Ex. 7, at VU03370-71.) He took issue with the performance of the Thai Navy Seals (one of whom lost his life in the rescue). (*Id.* at VU03322, 27, 45.) He criticized the decision-making of the Chiang Rai regional governor. (*Id.* at VU03332, 37, 59.) And he tried to impede the efforts of the rescue divers to sell their stories in favor of his own attempts to do the same. (Lifrak Exs. 7, 8.) This is not someone who has been harmed by Mr. Musk's statements. It is someone trying above all to make a profit from the cave rescue. Evidence regarding his motivations is relevant for several reasons.

First, evidence that Mr. Unsworth filed this lawsuit motivated by fame and pecuniary gain, and not because he actually suffered emotional or reputational harm, bears directly on damages. In *Hopey v. Spear*, the plaintiff filed a motion in limine requesting the court "bar mention of the motive of Plaintiff in filing and prosecuting this action, as ascribing bad motives to a party is improper, irrelevant, and highly prejudicial." 2016 WL 9665165, at *3 (C.D. Ill. June 23, 2016). The Court denied the motion in limine, noting that "Courts have allowed defense counsel to argue that, in seeking damages, a plaintiff's motive behind filing suit was to obtain money," and finding that "if evidence exists to show that Plaintiff had improper motives in bringing suit and *was exaggerating the extent of his injuries to obtain more money*, such evidence and argument would be very relevant." *Id.* at *4 (emphasis added); *see also Gowder v. Bucki*, 2013 WL 6182964, at *2 (N.D. Ill. Nov. 26, 2013) ("[E]vidence relating to motive in bringing the instant action would be relevant for the jury in ascertaining whether to award [plaintiff] compensatory and punitive damages."). Mr. Musk is entitled to probe whether the claimed damage to Mr.

Unsworth's reputation is the real reason he sued, including whether he is exaggerating his "injuries" for pecuniary gain. *Hopey*, 2016 WL 9665165, at *3.

Second, evidence of a plaintiff's motivation for litigating is admissible when it bears on credibility. Mr. Unsworth has presented himself as a victim of Mr. Musk. But he has not suffered any real harm, and the jury is entitled to hear what is driving this case. *See Miller v. Schmitz,* 2013 WL 5754945, at *3 (E.D. Cal. Oct. 23, 2013) (denying plaintiff's motion in limine to exclude evidence of motive for filing suit because it "may go to the issue of Plaintiff's motives, bias, and credibility"); *Ferreira v. City of Binghamton*, 2016 WL 4991600, at *15 (N.D.N.Y. Sept. 16, 2016) (denying plaintiff's motion in limine to exclude "evidence or argument alleging that Plaintiff's motive for filing the lawsuit was a purely pecuniary one," because "evidence at trial may make such argument appropriate").

Third, whether Mr. Unsworth has ulterior motives for bringing this lawsuit is relevant to his allegation that Mr. Musk defamed him by challenging the truth of his comments. (Compl., ¶ 116.) He avers that he "is not a liar." (*Id.* at ¶ 125.) Thus, evidence that could show that Mr. Unsworth is a liar, including that he is not being forthright about the reasons for filing this case, is relevant to his substantive claims.

### E.   The Court Should Not Exclude Evidence of Unsworth's Business Reputation (No. 5).

In 1999, regulatory authorities in England investigated and publicly reprimanded Mr. Unsworth's firm, Burgess Wreford and Unsworth. (Lifrak Decl. Ex. 4 (Response No. 10).) In 2004, the Financial Services Compensation Scheme, declared a default against a related entity, BWU Limited. (*Id.*)

Publicly-available documents show that government agencies in England, where Mr. Unsworth conducted his business activities, reprimanded and fined his companies for writing an "excess number of protection and investment policies" that led to the failure of the business. In its findings the British authorities "wish[ed] to make clear the condemnation of such practices," which were "an imprudent,

improper, and reckless form of business financing." *See* http://www.m2.com/m2/web/story.php/1999852568440080DDE88025683B005E451 3. These proceedings were publicized and remain available online. *See, e.g., id.*; https://www.fscs.org.uk/uploaded_files/Publications/declarations/2004/Declarations_ 02_Nov_2004.pdf; and https://www.stockmarketwire.com/article/498717/Have-YOU-lost-money-to-one-of-these.html.  Mr. Unsworth has inserted his business reputation into the case by claiming that Mr. Musk has harmed it:

- His complaint alleges that "[a]s the direct and proximate result of Musk's false and defamatory accusations, Mr. Unsworth suffered damages to his reputation in the State of California, as well as on a national and international basis." (Compl., ¶ 103.)

- His expert, Eric Rose, plans to testify that Mr. Unsworth "suffered negative consequences" from Mr. Musk's statements, including "loss of goodwill" and "reduced trust in ***working relationships with peers and future business partners***." (Lifrak Decl. Ex. 5 (Rose Report, p. 23) (emphasis added).)

- Mr. Rose also plans to testify about "harm [the statements] have done to Mr. Unsworth's personal and professional reputation." (*Id.* at p. 32.)

Under these circumstances, Mr. Musk is entitled to present evidence about Mr. Unsworth's pre-existing reputation in this same field. *See, e.g., Bularz v. Prudential Ins. Co.*, 93 F.3d 372, 378–79 (7th Cir. 1996) (evidence of general reputation in business dealings deemed "relevant to determining whether [plaintiff's] reputation was already compromised at the time that [defendant] allegedly defamed him, and thus to the jury's computation of damages"); *see also World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1138 (10th Cir. 2006) (district court did not err in admitting evidence of other, unrelated media reports that may have also damaged plaintiff's reputation, because other sources of harm to reputation were relevant to the quantum of damages); *Schafer v. Time, Inc.*, 142 F.3d 1361, 1372

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE

1   (11th Cir. 1998) ("Since the plaintiff's character is substantively at issue in a libel

2   case … Rule 405(b) permits the admission of evidence regarding specific instances of

3   the plaintiff's conduct on that issue."); *Wynberg*, 564 F. Supp. at 927–28.

4          The cases Mr. Unsworth cites do not hold otherwise.  *HTC Corp. v. Tech.*

5   *Props.*, in which the court held that reputation evidence regarding a bankruptcy was

6   not admissible (Mot. at 11), was a patent case that had nothing to do with defamation.

7   2013 U.S. Dist. LEXIS 129263, at *6-7 (N.D. Cal Sept. 6, 2013).  Mr. Unsworth's

8   other cases dealt with issues unrelated to the alleged harm to reputation, such as drug

9   use.  *See* Mot. at 10 (citing *Meyer* and *Sanders*).  Here, Mr. Unsworth's negative

10  business reputation is directly relevant to whether Mr. Musk's statements had any

11  impact on that same aspect of his reputation.  Mr. Unsworth cannot claim harm to his

12  reputation while blocking Mr. Musk from presenting evidence showing what his

13  reputation actually was previously.

14  **III.    THERE IS NO BASIS TO EXCLUDE EVIDENCE ABOUT BUZZFEED**

15         **A.    Evidence About BuzzFeed's Policies Is Relevant (No. 8).**

16         Much of Mr. Unsworth's case arises from the content of an email Mr. Musk

17  sent to BuzzFeed, which it unilaterally published despite his having labeled it "off-

18  the-record."  (Compl., Ex. K.)  At the time, BuzzFeed's publicly-available policies

19  said nothing about requiring an "agreement" between a reporter and source to go off

20  the record.  (Lifrak Decl. Ex. 9.)  BuzzFeed added such a requirement not long ***after***

21  Mr. Musk sent the "off-the-record" emails and ***after*** Mr. Musk told BuzzFeed that, if

22  it published his "off-the-record" email, it would be violating journalistic ethics.

23  (Lifrak Decl. Ex. 10.)  All of this is relevant to whether it was reasonably foreseeable

24  to Mr. Musk that BuzzFeed would republish his email.  If BuzzFeed had not

25  republished it, Mr. Unsworth could not have sued Mr. Musk for writing it.  But

26  BuzzFeed did, and whether Mr. Musk is liable for BuzzFeed's republication is a

27  central issue in dispute.

28

Mr. Unsworth argues that because "[r]easonable foreseeability is an objective standard, … Musk cannot show that the BuzzFeed Standards have any relevance …" (Mot. at 13.)  He has it backwards.  What those publicly-available policies say goes directly to the issue of whether a reasonable person would foresee that BuzzFeed would republish an email in violation of its own policies.  And the fact that BuzzFeed changed its policies after its episode with Mr. Musk to add an "agreement" requirement provides further evidence about the lack of any such requirement at the relevant time and whether it would be reasonable to require Mr. Musk to foresee that the republication would violate those policies.  *See Lewis v. Davis*, 2019 WL 764749, at *5 (N.D. Tex. Feb. 21, 2019) (attributing all facts in the public domain to a reasonable member of the public for the reasonable person standard); *cf. Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 432 (2d Cir. 2008) (because inquiry notice is objective standard, publicly-available information relevant to inquiry).

Mr. Unsworth argues that the BuzzFeed standards should be excluded also under Federal Rule of Evidence 403, because the "jury could be confused into thinking the issue of foreseeability boils down to BuzzFeed's published Standards which Musk was not even aware of at the time of his email." (Mot. at 14.)  But again, Mr. Unsworth has claimed that reasonable foreseeability is an objective standard.  If it is, then it does not matter whether Mr. Musk had seen the BuzzFeed standards ahead of time.  If Mr. Unsworth wants the issue tried on Mr. Musk's subjective beliefs about foreseeability of republication, Mr. Musk will agree.

**B.** **There Is No Basis To Exclude Evidence About Mr. Unsworth's Failure to Sue BuzzFeed (No. 3).**

Mr. Unsworth's argument that Mr. Musk should be prohibited from introducing evidence that Mr. Unsworth did not sue BuzzFeed or from arguing that BuzzFeed is responsible for some or all of Mr. Unsworth's damages lacks merit.  First, Mr. Unsworth's failure to demand a retraction is directly relevant to his failure to mitigate damages. *Desnick v. Am. Broad. Companies, Inc.*, 1999 WL

51796, at *2 (N.D. Ill. Jan. 29, 1999) ("[D]efendants are not precluded from offering the lack of a request for retraction as evidence of failure to mitigate damages" even where state law "does not require plaintiffs to request retraction as a prerequisite to recovering damages.").  Second, a republisher is liable for the republication, even if the publication was not reasonably foreseeable to the original publisher, *see Shively v. Bozanich*, 31 Cal. 4th 1230, 1243 (2003), and Mr. Unsworth's decision to sue only one party bears on his motivations for filing the suit, *see supra* at 7–9.  Finally, at a minimum, this motion is premature until Mr. Unsworth presents his evidence on the issue of "reasonable foreseeability" of the republication of Mr. Musk's email.

## IV. <u>THE COURT SHOULD NOT EXCLUDE OTHER EVIDENCE</u>

### A. <u>The Court Should Not Exclude Evidence Regarding Mr. Unsworth's UK Lawsuit Against Mr. Musk (No. 1).</u>

Mr. Unsworth's complaint seeks damages on a world-wide basis, "with the exception of the reputational damage he suffered in England and Wales."  (Compl., ¶ 108.)  He filed a separate claim against Mr. Musk in England for defamation and "malicious falsehoods," seeking damages and an injunction.  (Lifrak Decl. Ex. 21.)

Mr. Unsworth's plan went awry at his deposition, when he conceded that he could not "separate out" any alleged injury on a country-by-country basis.  (Lifrak Decl. Ex. 1 (Unsworth Tr. 246:21-247:9).)  His counsel thereafter stated that "it would not surprise me" if he withdrew the England/Wales "carve-out" from his complaint.  (*Id.* at 245:5-22.)  On September 3, 2019, Mr. Unsworth stated his intention to do so and, for the first time, sought a stipulation to that effect.  (Lifrak Decl. Ex. 11.)  When the parties then met and conferred, Mr. Musk said he was not willing to agree, given that discovery had closed and the trial was approaching. (Lifrak Decl. Ex. 12.)

During the meet and confer, Mr. Musk told Mr. Unsworth that, if he wanted to remove the carve-out and expand the scope of this case, he needed to move to amend his complaint.  Mr. Unsworth refused, stating he would simply raise the issue at the

1  Final Pre-Trial Conference, the week before trial.  (*Id.*)  His complaint remains as

2  filed, and he has given no notice that he has withdrawn his UK claim.

3       Mr. Unsworth is therefore stuck with "carve-out" for any damages he believes

4  he sustained in England and Wales.  (Compl., ¶ 108.)  He cannot somehow "amend"

5  his complaint at the Final Pre-Trial Conference.  Except for amendments made before

6  an answer or pursuant to stipulation, Mr. Unsworth needs leave of Court to amend his

7  complaint.  Fed. R. Civ. P. 15(a)(2).  He has made no such motion—intentionally—

8  and he cannot do so at the Final Pre-Trial Conference.  In *Buckeye Assoc., Ltd. v. Fila*

9  *Sport, S.p.A.*, the plaintiff tried to do just that.  931 F.2d 59 (9th Cir. 1991).  It sought

10  to include a new theory—"in essence, an attempt to amend the complaint at the

11  pretrial conference." *Id*. at *2.  The District Court did not allow it, finding that "it

12  had ample time to seek leave to amend the complaint and state the new theory" prior

13  to the pre-trial conference and failed to do so.  *Id.*

14       Given Mr. Unsworth's carve-out, the jury cannot be left to speculate as to why

15  it exists.  It should know that Mr. Unsworth has sued Mr. Musk in England and is

16  seeking damages there.  To not say anything would invite confusion and speculation,

17  which can be avoided by letting the jury know the truth.  None of the cases Mr.

18  Unsworth cites support the erroneous and misleading view of the evidence he wants

19  the jury to hear.  Mr. Musk is not seeking introduction of "findings" from other

20  lawsuits, as in *Um Corp. v. Tsuburaya*, 2017 U.S. Dist. LEXIS 218369, at *25-27.

21  Mr. Musk wants the jury to know only that there is another lawsuit pending, and that

22  is why it is being asked to carve-out damages from England and Wales.

23       Nor is there any potential for unfair prejudice to Mr. Unsworth.  He argues that

24  "a jury may believe that Unsworth should get a lower recovery (or no recovery at all)

25  due to the possibility of a recovery in the UK." (Mot. at 4.)  But that is the point.  Mr.

26  Unsworth should obtain a lower recovery in this case because, pursuant to the carve-

27  out in his complaint, the jury cannot include in its consideration any damage he

28  claims to have suffered in his home country.

There is an additional and equally important reason to admit evidence that Mr. Unsworth has brought claims in multiple jurisdictions.  The jury is entitled to know that Mr. Unsworth's motivation is not to repair a reputation for which he has no damage of harm, but to gain a windfall through a global litigation campaign.  *See*, *e.g.*, *Hopey*, 2016 WL 9665165, at *3 ("Courts have allowed defense counsel to argue that, in seeking damages, a plaintiff's motive behind filing suit was to obtain money.");  *see also* Section II.B *supra* (evidence regarding motives).

**B.**   **The Court Should Not Exclude Evidence Concerning Mr. Unsworth's Relationship with his Family (No. 6).**

Mr. Unsworth seeks to preclude Mr. Musk from offering evidence that Mr. Unsworth abandoned his wife and daughter when he moved to Thailand, and that his daughter refuses to communicate with him as a result.  (Mot. at 11-12.)  But Mr. Unsworth injected this topic into the litigation by claiming damages based on the alleged emotional harm Mr. Musk's statements caused to his former family.

Mr. Unsworth admitted this in his interrogatory responses.  The purported harm Mr. Musk's statements caused, and for which he seeks compensation, include "stress, emotional distress, and anxiety because of the pain Defendant's accusations have caused to [his] family, including … his wife Vanessa (although separated), his daughter Danielle …." (Lifrak Decl., Ex. 4 (Response No. 1).)  Mr. Musk has a right to present evidence about Mr. Unsworth's relationship with his family:

First, Mr. Musk is entitled to present evidence that contradicts Mr. Unsworth's claim that he is concerned about emotional harm to his former family.  For example, in *Cobige v. City of Chicago, Ill.*, the Seventh Circuit determined that, where emotional distress of a decedent's son was at issue, the opposing party could present negative evidence regarding their relationship because it was "relevant to how much loss [the] son suffered by her death."  651 F.3d 780, 784 (7th Cir. 2011), *as amended on denial of reh'g* (Sept. 8, 2011).

Second, Mr. Musk has the right to probe the alternative causes of Mr. Unsworth's claimed emotional harm and whether it is based on his abandonment of his wife and daughter, as opposed to any pain they suffered on account of what Mr. Musk said about him.  (Lifrak Decl. Ex. 13 (Vanessa Unsworth Tr. 33:20–35:2).) Where a plaintiff alleges "that he suffers from significant and substantial emotional distress as a result of Defendants' conduct, a party may seek to challenge a claim for emotional distress damages by offering evidence of other stressors in a plaintiff's life." *Smith for J.L. v. Los Angeles Unified Sch. Dist.*, 2018 WL 6137133, at *2 (C.D. Cal. Feb. 13, 2018).  Therefore, "[o]nce a plaintiff 'opens the door' to this issue, the plaintiff cannot block a defendant's challenge to her damages by objecting to the introduction of evidence that pertains to her mental or emotional health." *Id.*

In *Smith for J.L.*, plaintiff alleged he suffered emotional harm as a result of actions taken by his middle school, and sought to block evidence of other abuse in his life.  The court held that "[i]f Plaintiff is seeking emotional distress damages from Defendants on the grounds of Defendants' conduct toward him, it is reasonable for Defendants to cross examine Plaintiff's witnesses with evidence pertaining to Plaintiff's emotional health." *Id.* at *3.  As such, the court refused to grant a motion in limine to exclude evidence of "events which may have played a role in any emotional distress he is suffering," stating that "even if the evidence is not ultimately admitted for substantive purposes, Defendants may seek to use such evidence for impeachment." *Id.*; *see also Equal Employment Opportunity Comm'n v. Peters' Bakery*, 301 F.R.D. 482, 486 (N.D. Cal. 2014) (regarding plaintiff's damages for emotional distress, court held that "Defendant retains the opportunity to cross-examine [plaintiff] concerning other stressors in her life that may have contributed to her alleged emotional distress" as well as "examine percipient witnesses or submit other evidence to show that the claim [for emotional distress] is exaggerated or false. All of these avenues of discovery provide ample fairness to marshal evidence to defeat Plaintiff's claims.").

1    Because, Mr. Unsworth wants to use his former family members as a vehicle to

2    obtain damages for himself, Mr. Musk is entitled to present evidence that points to

3    other sources of emotional harm to them, including damage inflicted by Mr.

4    Unsworth himself, by leaving them to fend economically and emotionally for

5    themselves so that he could live with another woman, 6,000 miles away.

6    **C.      The Court Should Not Exclude Tik's Testimony Regarding Big**

7    **Kren or Jobpub.com (Nos. 9 and 10).**

8    Mr. Unsworth seeks to exclude evidence and testimony regarding his partner,

9    Tik, who gave an interview to the Thai news outlet, Big Kren, that reported: "When

10   asked about Elon Musk's accusation that her husband was a pedophile, Tik said that

11   her husband found that humorous." (Lifrak Decl. Ex. 14.)  Mr. Unsworth also seeks

12   to preclude evidence and testimony regarding a post Tik made on the Jobpub.com

13   discussion board regarding night work, in which a web user with Tik's email address

14   (to which Tik testified that only she has access) made the following post: "There are

15   lots of types of night work.  I work at night.  The money's good, too.  But you need a

16   bit of fortitude.  You can contact me." (Lifrak Decl. Ex. 15.)[2]

17   To be clear, the issue is not whether the Big Kren article or the post to

18   Jobpub.com should be admitted.[3]  Mr. Musk does not currently intend to offer them

19   into evidence.  Thus, there is no need to resolve issues regarding authentication and

20   hearsay.  Tik's testimony on those issues, however, goes to her credibility.  Mr.

21   Unsworth plans to present that through her videotaped deposition.  (Lifrak Decl. Ex.

22   16.)  Tik's deposition testimony on these issues, e.g., her denial of ever speaking to

23   Big Kren, or saying what they reported she said, and her denial of ever posting to

---

24   [2] This statement was also translated at Tik's deposition as:  "What kind of work do

25   you want? There are several kinds of work? I also work at night and I got good

     money for it. But it is hard work. You can contact me." (Lifrak Decl. Ex. 17 (Tik.

26   Depo., 101:3-7).)

27   [3] For context, Mr. Unsworth's complaint alleges that Mr. Musk labeled him a sex-

28   trafficker and disclaims that he was.  (Compl. at ¶¶121-122.)

1   Jobpub.com, go to her credibility, which can be judged from her testimony.  Mr.

2   Musk should not be denied his only ability to cross-examine Tik on her credibility by

3   playing excerpts from her deposition that show she is not a credible witness.

4          **D.     The Court Should Not Exclude Evidence of Pedophilia (No. 11).**

5          Mr. Musk has no intention of presenting evidence at trial regarding Mr.

6   Unsworth's or any witnesses' pornography tendencies, adult or otherwise.   However,

7   in Mr. Unsworth's lawsuit regarding accusations of pedophilia, the truth or falsity of

8   that allegation is relevant.  If Mr. Unsworth opens the door to pornography in his

9   case-in-chief, Mr. Musk cannot be foreclosed from exploring it, with the Court's

10  approval at trial.

11         **E.     The Court Should Not Exclude Third-Party Tweets (No. 12).**

12         Mr. Unsworth's proposed expert, Eric Rose, plans to opine that Mr. Musk

13  intended the term "pedo guy" to mean "pedophile."  (Lifrak Decl. Ex. 5 (Rose Report

14  at 4 ("[H]e intended his accusation literally"), 8 ("[H]e wanted Mr. Unsworth to be

15  viewed as a pedophile.")); Ex. 2 (Rose Tr. at 110:13-14 ("pedo guy … is short for

16  pedophile.").)  Mr. Rose plans to base his testimony on "tweets where Mr. Musk was

17  on the thread, and people were obviously commenting that 'pedo guy' means

18  'pedophile.'" (Lifrak Decl. Ex. 2 (Rose Tr. 126:21-127:18).)

19         If Mr. Unsworth's expert is allowed to opine on the definition of "pedo guy"

20  by relying, in part, on Twitter comments, then Mr. Musk is entitled to cross examine

21  that witness with other Twitter posts that say the opposite—that "pedo guy" is an

22  insult used is South Africa and not meant literally.  (Lifrak Ex. 18).[4]  *See Local 159,*

23  *342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 189 F.3d 473, 1999 WL 547400, at *9

24  (9th Cir. 1999) ("Every expert will make decisions as to which pieces of evidence to

25  rely on; on cross-examination the opposing party is entitled to challenge why the

26

27  ─────────────
    [4] Under Fed. R. Evid. 902(13), (14), authentication issues can be remedied by

28  certifications that these tweets do indeed appear on the Internet.

1  expert seemingly ignored certain evidence."); *see also Brennan v. Reinhart*

2  *Institutional Foods*, 211 F.3d 449, 451 (8th Cir. 2000) ("allowing an expert to testify

3  about facts and data outside of the record for the limited purpose of exposing the

4  factual basis of the expert's opinion" but stating that "[e]ffective cross-examination

5  can then highlight the weaknesses in the expert's opinion"); *United States v. Stone*,

6  222 F.R.D. 334, 339 (E.D. Tenn. 2004), *aff'd*, 432 F.3d 651 (6th Cir. 2005) (counsel

7  could elicit hearsay testimony from expert "on cross-examination" because "the

8  purpose of the out-of-court statements would not be for hearsay purposes but rather

9  would be for evaluating the merit of the opinions offered on direct examination).

10  **F.    The Court Should Not Preclude Witnesses With Knowledge Of Mr.**

11       **Unsworth's Role in the Rescue (No. 13).**

12       Mr. Unsworth asks the Court to exclude two witnesses on Mr. Musk's trial

13  witness list, Ben Reymenants and Ray Lightfoot (aka Raymond Huber), on the

14  grounds that they were not disclosed as potential witnesses until Mr. Musk served his

15  trial witness list on November 1.  The Court should deny this request.

16       First, Mr. Unsworth knows who they are, from his contact with them during the

17  rescue, and from his documents that discuss Mr. Reymenants and Mr. Huber.  (Lifrak

18  Decl. Ex. 19.)

19       Second, Musk's counsel was first able to reach and speak with these witnesses

20  on October 27, 2019.  (Lifrak Decl., ¶22.)  Mr. Musk disclosed them that same week,

21  with his list of trial witness.  (Lifrak Decl. Ex. 20.)  Mr. Musk could not have

22  disclosed that he might be using these witnesses earlier because his counsel had not

23  spoken with them.  Under these circumstances, not including these witnesses in initial

24  disclosures was "substantially justified."  Fed. R. Civ. P. 37(c)(1).  *See McKesson*

25  *Info. Sols., Inc. v. Bridge Med., Inc*., 434 F. Supp. 2d 810, 813 (E.D. Cal. 2006)

26  (denying motion in limine to exclude late noticed witnesses "[b]ecause these

27  witnesses were otherwise made known to [Defendant] during the course of litigation,

28  there is no prejudice to [Defendant] in allowing the witnesses' testimony at trial.

Fed.R.Civ.P. 37(c)(1).”); *Design Strategies, Inc. v. Davis*, 228 F.R.D. 210, 212–13 (S.D.N.Y. 2005) (substantial justification found where plaintiff was already familiar with the late-noticed witness, and plaintiff had not provided any information to contradict defendant's explanation for belated addition).

Both witnesses are listed as ones Mr. Musk "may present" at trial. Both were involved in the cave rescue and would be called only to impeach Mr. Unsworth's testimony about the rescue, to the extent needed. As such, Mr. Musk was under no obligation to disclose them, even if he had contacted them earlier (which he had not). *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (not requiring disclosure of witnesses used "solely for impeachment.").

## V.    **CONCLUSION**

For the foregoing reasons, Mr. Musk respectfully requests that the Court deny Mr. Unsworth's motions in limine.

DATED:  November 11, 2019          Respectfully submitted,

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By    */s/ Alex Spiro*
_____
Alex Spiro (admitted *pro hac vice*)
*Attorneys for Defendant Elon Musk*