# EXHIBIT 12

| | |
|---|---|
| **Subject:** | FW: UK and Wales Damage Claim |
| **Importance:** | High |

**From:** Lin Wood [mailto:lwood@linwoodlaw.com]
**Sent:** Tuesday, September 17, 2019 7:27 PM
**To:** Alex Spiro
**Cc:** Robert Schwartz ; Alex Bergjans ; Jeanine Zalduendo ; Matt Wood ; Chris Chatham ; Kimmy Hart Bennett ; Taylor Wilson ; Jonathan Grunberg ; Mark Stephens, CBE ; Adam Fellows ; Nicole Wade ; Michael Lifrak
**Subject:** UK and Wales Damage Claim
**Importance:** High

[EXTERNAL EMAIL]

Alex,

Today, you communicated a firm "no" on whether Musk would consent to a stipulation in the pre-trial order that Mr. Unsworth was withdrawing his exception to damages suffered in the UK and Wales (Compl. ¶¶ 108-109.)

As you will recall, I first communicated the likelihood that Mr. Unsworth would be withdrawing Paragraphs 108 and 109 on August 14 during his deposition—the very first deposition in this case. I did so on the record, stating that Musk could examine Mr. Unsworth regarding damages suffered in England and Wales. (Unsworth Dep. at 245:18-23).

On September 3, I sent you and your team an email confirming that Mr. Unsworth would in fact be withdrawing the paragraphs and asked if you would consent to a pre-trial stipulation. Since September 3, we have discussed my effort to seek consent on several occasions, including exchanges by email and in person. Initially, you wanted to know if Mr. Unsworth would formally withdraw his action in the UK if you consented to the stipulation. I promptly responded in the affirmative. You later asked if Mr. Unsworth would agree that he would not file another lawsuit against Musk in another jurisdiction if you consented to the stipulation. I again promptly responded in the affirmative.

I was disappointed with your 'no' today because I believe my request for the stipulation is entirely reasonable, is consistent with the Federal Rules, and would avoid burdening the Court with resolving the issue at the pre-trial hearing. I can discern no prejudice to your client by consenting to the stipulation; to the contrary, Musk benefits from an agreement to dismiss of the UK action and the covenant not to sue in other jurisdictions. During our discussions, I asked what prejudice (if any) you thought might result from consenting to the pre-trial stipulation. You have not identified any such prejudice. You timely received our expert reports. Consistent with our position regarding the UK and Wales, the damage calculations included the UK and Wales. Obviously, you are still free to identify a rebuttal expert on those damage calculations. Despite your right of rebuttal, if you feel that there is any additional reasonable and necessary discovery Musk wishes to undertake on UK and Wales damages prior to the submissions of our respective portions of the proposed pre-trial order, just let me know and I will work with you to get it accomplished prior to the pre-trial submissions.

I know you have been extremely busy on this case and other important matters and I understand that you have been trying hard to get an answer from your client on the issue of consent. I had hoped we could go ahead and check this box as we both have many other more important issues to address in order to comply with the deadlines set forth in the unsigned scheduling order. I hope that you will reconsider your position. If so, I would appreciate you letting me know at the earliest possible moment. If you remain unable to consent, we will allow the Court to resolve the issue at the pre-trial hearing. I respect your client's right to withhold consent to the requested stipulation, but I am also confident that I have just been diligent in pursuing this issue to insure that you were aware of, and on notice of, our pre-trial position well in advance of the deadline for submission of a proposed pre-trial order.

Thanks.

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**

---

**From:** Alex Spiro <alexspiro@quinnemanuel.com>
**Sent:** Tuesday, September 17, 2019 4:42 PM
**To:** Lin Wood <lwood@linwoodlaw.com>; Michael Lifrak <michaellifrak@quinnemanuel.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Matt Wood <mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>; Adam Fellows <Adam.Fellows@howardkennedy.com>; Nicole Wade <nwade@linwoodlaw.com>
**Subject:** Re: Scope of damages

Lin - that was (yet again) your list. I agree that's your list. I agreed to 1 and 2. The rest I told you I would look into or let you know at a future time if I agreed that I would try to accommodate your many requests.

You also keep mischaracterizing things. For example, when you say in #10 "who you confirmed are the same person". I have no idea. I answered that for the purposes of my question you can assume that.

I'll update you in the coming days. Thx
Alex

Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com
**Sent:** September 17, 2019 4:33 PM
**To:** alexspiro@quinnemanuel.com; michaellifrak@quinnemanuel.com
**Cc:** robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com; jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.com; nwade@linwoodlaw.com
**Subject:** RE: Scope of damages

**[EXTERNAL EMAIL]**

Alex and Michael,

I want to confirm the issues that we discussed during today's meet and confer telephone conference to make sure that we are all on the same page. According to my notes, we discussed the following:

1. We agreed to take the depositions in LA of Teller on September 30 and Davis on October 1 – you will make them available and arrange their appearance (let's discuss location – I was not happy with Mr. C.'s for limiting our time at the deposition of Birchall);

2. We will hold open the balance of those two dates to add a possible third deposition on September 30 or October 1;

3. You will attempt to locate the last known address and phone number of Arnold. After we get his address, we will serve him with a subpoena.

4. You will attempt to see if you can get a convenient date from Glover. If so, we will send a subpoena to her.

5. If you are unable to arrange for depositions of Arnold and Glover, we will do our best to work with you and the witnesses to schedule the depositions on dates convenient to you and the witnesses.

6. You will try to identify for us the identities of the individuals associated with the different phone numbers on the WhatsApp messages (and for confirmation that we discussed this during Mr. Musk's deposition on August 22, look at pages 276-77 of his deposition, where you clearly indicated that you would "figure it out" after the deposition and provide us information about "who is the person behind the various phone numbers on this WhatsApp chat");

7. You will advise us on the status of the iCloud search for additional responsive documents (including emails and texts) from Musk;

8. You will look into all of the Birchall and Elon documentary issues previously identified by us, including:
   a. Search of Birchall's additional email accounts
   b. Written agreement with Howard/Howard-Higgins
   c. AIG notice letter
   d. Source from which Birchall obtained Tik's birth certificate and a copy of the birth certificate he received.

9. You will not agree to any stipulation on withdrawal of the paragraphs in the complaint relating to UK damages;

10. Howard Kennedy does not have any communications with Howard/Howard-Higgins (who you confirmed are the same person), but I will confirm that again with Mark but I have to again add the caveat to this response by pointing out that there could be communications with him under a name different from Howard or Howard-Higgins, which we would have no way of identifying; and

11. Mike and Taylor will work on the ADR deadline required by the Court to ensure that we have complied with all court requirements.

We agreed to speak again on Friday on the status of these issues. Let me know what time works best for you. Due to time constraints, we would appreciate receiving responsive documents to 6, 7 and 8 above as soon as possible.

Thank you,

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**

**From:** Nicole Wade <nwade@linwoodlaw.com>
**Sent:** Monday, September 16, 2019 6:33 PM
**To:** Michael Lifrak <michaellifrak@quinnemanuel.com>; Lin Wood <lwood@linwoodlaw.com>; Alex Spiro <alexspiro@quinnemanuel.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Matt Wood <mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>; Adam Fellows <Adam.Fellows@howardkennedy.com>
**Subject:** Re: Scope of damages

Thanks, Michael, we will get it filed. Also, can you please provide us with a last known address and telephone number for David Arnold?

**From:** Michael Lifrak <michaellifrak@quinnemanuel.com>
**Date:** Monday, September 16, 2019 at 5:43 PM
**To:** Nicole Wade <nwade@linwoodlaw.com>, Lin Wood <lwood@linwoodlaw.com>, Alex Spiro <alexspiro@quinnemanuel.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>, Alex Bergjans <alexbergjans@quinnemanuel.com>, Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>, Matt Wood <mwood@wshllp.com>, Chris Chatham <chris@chathamfirm.com>, Kimmy Hart Bennett <khart@linwoodlaw.com>, Taylor Wilson <twilson@linwoodlaw.com>, Jonathan Grunberg <jgrunberg@linwoodlaw.com>, "Mark Stephens, CBE" <Mark.Stephens@howardkennedy.com>, Adam Fellows <Adam.Fellows@howardkennedy.com>
**Subject:** RE: Scope of damages

4

Yes. Thank you.

**From:** Nicole Wade [mailto:nwade@linwoodlaw.com]
**Sent:** Monday, September 16, 2019 2:29 PM
**To:** Michael Lifrak <michaellifrak@quinnemanuel.com>; Lin Wood <lwood@linwoodlaw.com>; Alex Spiro <alexspiro@quinnemanuel.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Matt Wood <mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>; Adam Fellows <Adam.Fellows@howardkennedy.com>
**Subject:** Re: Scope of damages

**[EXTERNAL EMAIL]**

Document attached....

**From:** Nicole Wade <nwade@linwoodlaw.com>
**Date:** Monday, September 16, 2019 at 5:28 PM
**To:** Michael Lifrak <michaellifrak@quinnemanuel.com>, Lin Wood <lwood@linwoodlaw.com>, Alex Spiro <alexspiro@quinnemanuel.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>, Alex Bergjans <alexbergjans@quinnemanuel.com>, Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>, Matt Wood <mwood@wshllp.com>, Kimmy Hart Bennett <khart@linwoodlaw.com>, Taylor Wilson <twilson@linwoodlaw.com>, Jonathan Grunberg <jgrunberg@linwoodlaw.com>, "Mark Stephens, CBE" <Mark.Stephens@howardkennedy.com>, Adam Fellows <Adam.Fellows@howardkennedy.com>
**Subject:** Re: Scope of damages

Michael, I have accepted all of your changes and made a couple of additional changes, mostly stylistic, with the only substantive change being to remove from the preamble the reference to the damages issue given your removal of that issue in the numbered paragraphs. Please advise whether this is acceptable and if we have your permission to file.

Thanks,
Nicole

**From:** Michael Lifrak <michaellifrak@quinnemanuel.com>
**Date:** Saturday, September 14, 2019 at 3:49 PM
**To:** Nicole Wade <nwade@linwoodlaw.com>, Lin Wood <lwood@linwoodlaw.com>, Alex Spiro <alexspiro@quinnemanuel.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>, Alex Bergjans <alexbergjans@quinnemanuel.com>, Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>, Matt Wood <mwood@wshllp.com>, Chris Chatham <chris@chathamfirm.com>, Kimmy Hart Bennett <khart@linwoodlaw.com>, Taylor Wilson <twilson@linwoodlaw.com>, Jonathan Grunberg <jgrunberg@linwoodlaw.com>, "Mark Stephens, CBE" <Mark.Stephens@howardkennedy.com>, Adam Fellows <Adam.Fellows@howardkennedy.com>
**Subject:** RE: Scope of damages

Attached is our proposed redline of the stipulation.

**From:** Nicole Wade [mailto:nwade@linwoodlaw.com]
**Sent:** Friday, September 13, 2019 3:03 PM
**To:** Lin Wood <lwood@linwoodlaw.com>; Alex Spiro <alexspiro@quinnemanuel.com>
**Cc:** Michael Lifrak <michaellifrak@quinnemanuel.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Matt Wood <mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>; Adam Fellows <Adam.Fellows@howardkennedy.com>
**Subject:** Re: Scope of damages

[EXTERNAL EMAIL]

Counsel:

Attached is a revised proposed Discovery Stipulation based on the Meet and Confer this afternoon. We included a date for the additional depositions to be completed by October 7, 2019 – we did not discuss this during our call, but we thought having an end date would be to everyone's benefit.

Please let us know if you have any additional changes to the proposed stipulation.

Thanks,
Nicole

## Nicole Jennings Wade

Partner

**L. LIN WOOD, P.C.**
TRIAL LAWYERS

1180 West Peachtree Street NW, Suite 2040
Atlanta, Georgia 30309

direct: 404.891.1403 | main: 404.891.1402 | fax: 404.506.9111

nwade@linwoodlaw.com
SuperLawyers  |  LinkedIn  |  Firm Bio  |  Download vCard

**From:** Lin Wood <lwood@linwoodlaw.com>
**Date:** Thursday, September 12, 2019 at 8:08 PM
**To:** Alex Spiro <alexspiro@quinnemanuel.com>
**Cc:** Michael Lifrak <michaellifrak@quinnemanuel.com>, Robert Schwartz <robertschwartz@quinnemanuel.com>, Alex Bergjans <alexbergjans@quinnemanuel.com>, Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>, Chris Chatham <chris@chathamfirm.com>, Kimmy Hart Bennett <khart@linwoodlaw.com>, Taylor Wilson <twilson@linwoodlaw.com>, Nicole Wade <nwade@linwoodlaw.com>, Jonathan Grunberg <jgrunberg@linwoodlaw.com>, "Mark Stephens, CBE" <Mark.Stephens@howardkennedy.com>, Adam Fellows <Adam.Fellows@howardkennedy.com>
**Subject:** RE: Scope of damages

Alex,

As you know, Tik is not my client but we are doing everything we can to ascertain if we can obtain any additional documents if they exist. I recall from her deposition that you were interested in the photos of Mr. Unsworth's feet. While we make no claim for damages in this case with respect to the medical problems Mr. Unsworth suffered with his feet as a result of the time he spent in the cave in the rescue effort, we will nonetheless make another run at it for you.

I apologize – I forgot to address in my email the request for written communications between Mark's firm and Mr. Howard. The answer I received from Mark was there are no such documents to his knowledge, but if I am wrong, Mark is on this email and can correct me. I must point out one caveat to that representation: given the use of fake names, identities and email addresses used as part of your client's investigative scheme, we cannot rule out that communications could exist under a fake name; but Mark's firm has no such documents under the names of James Howard or James Howard-Higgins.

Talk to you tomorrow.

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**

---

**From:** Alex Spiro <alexspiro@quinnemanuel.com>
**Sent:** Thursday, September 12, 2019 7:54 PM
**To:** Lin Wood <lwood@linwoodlaw.com>
**Cc:** Michael Lifrak <michaellifrak@quinnemanuel.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Matt Wood <mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Nicole Wade <nwade@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>
**Subject:** Re: Scope of damages

Lin -

As to Tik, I do not see how that is possible given her testimony, the photos she has of vernon's injury, and other off the record communications she had with counsel for both sides.

I had also asked you to tell us whether or not there were any communications between Howard Kennedy firm and Mr. Howard.

Thx
Alex

Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com
**Sent:** September 12, 2019 7:50 PM
**To:** alexspiro@quinnemanuel.com
**Cc:** michaellifrak@quinnemanuel.com; robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com; nwade@linwoodlaw.com; jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com
**Subject:** RE: Scope of damages

[EXTERNAL EMAIL]

Alex,

To help streamline the meet and confer tomorrow, I am attaching hereto a DRAFT Stipulation that identifies the issues we presently need to discuss on behalf of Mr. Unsworth. The DRAFT is only sent for purposes of facilitating our discussion tomorrow . If we are forced to formalize it, the final stipulation may vary from this DRAFT. I hope that we can resolve or reduce the number of issues and thereby avoid or limit the issues for resolution by the Court following his required procedures. If there any unresolved issues after our call, we will serve the required final stipulation with authorities and any necessary supporting materials required by Judge Wilson's rules.

I know you asked me Monday at our informal discussion about Vernon's text messages. Since our conversation, Taylor has been working with Vernon to get the requested information to you (I think a software program may be required to replicate what you are looking forward and I know they are trying their best to get a solution with no guarantee yet of success). We do not have any additional documents from Tik (subject to a final confirmation of that fact from Taylor in the morning as he was at an out-of-state deposition all day today). If you don't mind, let me know if there are any other discovery issues you want to discuss tomorrow from Musk's viewpoint so I can be prepared to address them on the call tomorrow.

Thanks.

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

Exhibit 12, Page 199

**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**

---

**From:** Alex Spiro <alexspiro@quinnemanuel.com>
**Sent:** Thursday, September 12, 2019 4:33 PM
**To:** Lin Wood <lwood@linwoodlaw.com>
**Cc:** Michael Lifrak <michaellifrak@quinnemanuel.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Matt Wood <mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Nicole Wade <nwade@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>
**Subject:** Re: Scope of damages

Lin -

I don't respond to emails like this but dont take that to mean that I agree with anything in it, or don't see through it. How's 2pm est tmorrow? If that works circulate a dial in
Alex

Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com
**Sent:** September 12, 2019 1:21 PM
**To:** alexspiro@quinnemanuel.com
**Cc:** michaellifrak@quinnemanuel.com; robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com; nwade@linwoodlaw.com; jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com
**Subject:** Re: Scope of damages

Alex,

My deadline was necessary because I have yet to get straight answers to simple questions. But I too don't believe in unilateral or artificial deadlines if they can be avoided. What time would you propose for a meet and confer in the morning?

I do not use depositions coercively. I don't make the facts of the case. That is done by the documents and oral testimony. Your client clearly perjured himself in my opinion. It is also clear that Musk has intentionally failed to disclose numerous, relevant emails prior to his deposition. His strategy has now been exposed and must be addressed by the Court in the event we cannot reach agreement tomorrow morning.

I am also learning of other highly relevant individuals who were not identified by Musk and may need to be deposed as we go through the last minute document dump that is continuing to harvest a number of emails not previously disclosed or produced by Musk despite being unquestionably responsive to our earlier RPDs.

There are no veiled threats. I could care less what happens to Musk when the substantial and damning evidence of his misconduct is revealed in response to his motion for summary judgment. I only care about Mr. Unsworth's case and my duty to zealously advocate for him under the rules of our justice system. I intend to continue doing so as this case works its way to trial. The jury will be the final arbiter of who has engaged in unscrupulous conduct and acts when all the evidence is produced and presented.

9

On behalf of Mr. Unsworth, we have timely produced in good faith and you are free to "keep going" if you feel otherwise. But you will end up going nowhere. Happy to also discuss all of your complaints about his production tomorrow.

Let me know what time works for you tomorrow morning. I await your prompt response.

Thanks.

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Sep 12, 2019, at 12:54 PM, Alex Spiro <alexspiro@quinnemanuel.com> wrote:

> Lin- I am not making blanket agreements to each request (many of which aren't supported by the facts, law, or how a judge would rule if you made a motion) just because you demand it.
>
> I felt we had a productive meet and confer this week and I'm happy to discuss finding a solution along those lines. I'm not going to respond to artificial deadlines and veiled threats.
>
> Finding some perceived inconsistency between two depositions and trying to use it coercively is improper and you know it. Vernon unsworth and his wives had demonstrably inconsistent testimony on far more critical life events. Unsworth has still not given us his completed production and he decided to bring this suit a year ago. And I could keep going.
>
> If you would like to meet and confer tomorrow and finalize some reasonable solution to these issues we are happy to meet and confer.
>
> Alex
>
> Sent from my BlackBerry - the most secure mobile device
>
> **From:** lwood@linwoodlaw.com
> **Sent:** September 12, 2019 9:25 AM
> **To:** alexspiro@quinnemanuel.com
> **Cc:** michaellifrak@quinnemanuel.com; robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com; nwade@linwoodlaw.com; jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com
> **Subject:** Re: Scope of damages
>
> Alex,

We are working through a review of the documents produced this week by Tesla and SpaceX but we have already discovered highly relevant Musk emails that clearly should have been produced by Musk prior to his deposition.

I will attempt to get the proposed stipulation to you this evening or tomorrow morning but the recent disclosures have slowed me down in drafting the stipulation.

I would like your firm agreement in writing today by 3 pm ET that you will (1) promptly schedule the deposition of Sam Teller; (2) agree to the withdrawal of the exemption of UK and Wales damages; (3) agree that Stanton and Davis depositions can be taken outside the present discovery deadline; and (4) agree that Mac can be deposed outside the present deadline subject only to the Court's ruling on the anticipated motion to quash by BuzzFeed.

In light of Birchall's deposition testimony, I no longer request an agreement on the timing of the deposition of Howard-Higgins.

I also reserve our right to demand additional sworn testimony from Musk upon the completion of our review of the documents produced this week.

You have repeatedly made clear that Musk intends to file a motion for summary judgment on actual malice and republication on or before September 16. Under the undisputed evidence revealed in Birchall's deposition, I would urge that you reconsider the wisdom of filing that motion but I understand that is Musk's call to make.

I further request that you immediately provide AIG and the members of the Tesla and SpaceX boards with complete copies of the depositions of Musk and Birchall. Among many other serious issues raised by Musk's preciously undisclosed misconduct regarding his efforts to falsely impugn Mr. Unsworth, it now appears clear that Musk committed perjury when he testified that he hired Howard-Higgins on August 15 because of my letter of August 6.

I will look to receive your response to this email before 3 pm ET today.

Thanks.

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Sep 7, 2019, at 5:41 PM, Alex Spiro <alexspiro@quinnemanuel.com> wrote:

> Enjoy. If you need anything at the hula hut you can use my name.
>
> Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com
**Sent:** September 7, 2019 5:22 PM
**To:** alexspiro@quinnemanuel.com
**Cc:** michaellifrak@quinnemanuel.com; robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com; nwade@linwoodlaw.com; jgrunberg@linwoodlaw.com; Mark.Stephens@howardkenned
**Subject:** Re: Scope of damages

See you Monday, Alex. Enjoy the weekend. I am with my grandson in Austin today and work has disappeared from my radar screen!

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Sep 7, 2019, at 3:21 PM, Alex Spiro <alexspiro@quinnemanuel.com> wrote:

> Lin -your email with the follow up answers came to us at the end of the day on Wednesday. The issues were many, and unexpected. I responded Friday.
>
> We are happy to meet and confer about all on Monday. See you then
>
> Alex
>
> Sent from my BlackBerry - the most secure mobile device
>
> **From:** lwood@linwoodlaw.com
> **Sent:** September 6, 2019 11:39 PM
> **To:** alexspiro@quinnemanuel.com
> **Cc:** michaellifrak@quinnemanuel.com; robertschwartz@quinnemanuel.com; alexbergjans@quinnemanuel
> jeaninezalduendo@quinnemanuel.com; mwood@wshllp.com; chris@chathamfirm.com; khart@linwoodla
> twilson@linwoodlaw.com; nwade@linwoodlaw.com; jgrunberg@linwoodlaw.com; Mark.Stephens@howard
> **Subject:** RE: Scope of damages
>
> [EXTERNAL EMAIL]
>
> Alex,
>
> Your email below was sent on Friday night around 10:30 p.m. ET despite these questions having been on the table for the last

Exhibit 12, Page 203

couple of days. I do not have time tonight to prepare a fulsome response, but let me address the key points:

1. I will plan to discuss your remaining concerns about the worldwide damage stipulation or amendment on Monday. Suffice it to say tonight that I do not believe that the damage issue creates any additional burdens on Mr. Musk. We put you on notice at Mr. Unsworth's deposition that the exclusion of the UK and Wales would likely be withdrawn. We have addressed each of your concerns raised this week about other filings in other jurisdictions. But let's save the back and forth on that issue for Monday. I am optimistic that we can resolve this issue on Monday.

2. Do you agree that we have satisfied the meet and confer obligation relating to our motion for leave to take depositions outside the present discovery deadline? If so, we will file our motion on Monday.

3. Regarding Davis, I remind you that Mr. Musk offered the date of September 9 for the SpaceX discovery depositions of witnesses you stated were expected to be trial witnesses for Mr. Musk. Then this week, you informed us of a medical condition that would not allow Mr. Davis to testify live in LA on the 9th. I was not willing to agree to a videoconference deposition of a witness who resides within the US and is within the federal subpoena power. I have legitimate reasons for requesting his deposition in person. I accepted your representation as to Mr. Davis' medical condition without asking for any verification from his health care provider. I offered to travel to Boston for his deposition. I assume his medical condition does not allow travel so he remains subject to a subpoena for his deposition in Boston. Under your "my way or the highway" approach to his deposition, I will take the highway and go to the Court with the issue by including his deposition in our motion for leave. Under the circumstances, I will not be forced by your unreasonableness to take a videoconference deposition on Monday. You may so inform Mr. Davis in order to avoid any inconvenience to him on Monday.

As a final good faith effort to resolve the deposition disputes, I am willing to enter into an agreement that extends discovery for these witnesses only through and including October 15. As I have told you, Mr. Stanton resides overseas and we are working with him for a deposition date on or before October 15. If you prefer, I am willing to allow all discovery to be extended until October 15 in the event you have any additional discovery matters to pursue for Mr. Musk. My offer includes an

agreement to extend the time for filing Mr. Musk's summary
judgement until October 18 (tracking the timing of the present
scheduling agreement). We have accomplished a great deal in a
relatively compacted time frame in this case. I would hope that
our history of reasonable accommodation will not fall apart at
this time. I think my offer is fair and reasonable to all parties
and consistent with the spirit of the Federal Rules of Civil
Procedure. My offer of a one month extension does not
interfere with the existing trial date or preclude Mr. Musk from
obtaining a pre-trial ruling on his dispositive motion.
Furthermore, I assume you will be seeking depositions of our
expert witnesses when they are identified next week (as I will
request of any expert identified by Mr. Musk) so some
additional depositions are necessary beyond the present
deadline of September 13, including the deposition of Ryan
Mac which can only be scheduled after a ruling on his motion
to quash. Let me know if you will agree to this offer before we
file our motion on Monday. I do not expect the motion to be
filed before Noon ET on Monday.

Thank you.

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

**NOTICE: This communication may contain privileged or
other confidential information. If you are not the intended
recipient, or believe that you have received this
communication in error, please do not print, copy,
retransmit, disseminate, or otherwise use the information.
Also, please indicate to the sender that you have received
this communication in error, and delete the copy you
received. Thank you.**

**From:** Alex Spiro <alexspiro@quinnemanuel.com>
**Sent:** Friday, September 06, 2019 10:31 PM
**To:** Lin Wood <lwood@linwoodlaw.com>
**Cc:** Michael Lifrak <michaellifrak@quinnemanuel.com>; Robert
Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans
<alexbergjans@quinnemanuel.com>; Jeanine Zalduendo

<jeaninezalduendo@quinnemanuel.com>; 'Matt Wood'
<mwood@wshllp.com>; 'Chris Chatham' <chris@chathamfirm.com>;
Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson
<twilson@linwoodlaw.com>; Nicole Wade <nwade@linwoodlaw.com>;
Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Mark Stephens, CBE
<Mark.Stephens@howardkennedy.com>
**Subject:** Re: Scope of damages

Lin-
We may very well accept the pre-trial stipulation you have offered based
on the representations that Mr. Unsworth will be dismissing his case in
the UK and will not be filing in any other jurisdiction. But we first need
further assurances that this change will not expand the scope of evidence
or witnesses at trial and that Mr. Musk will not be prejudiced by
changing the scope of the case at this late date. I would like to discuss
this with you on Monday at the depositions.
As to Mr. Davis, due to his medical condition and inability to travel from
Boston, we have offered a video deposition on September 9. There is no
good reason to delay his deposition. The deposition will be limited, as
demonstrated by the fact that you scheduled it along with two others on
the same day. There is no indication that Mr. Davis's medical condition
will resolve soon, so taking the deposition now makes the most sense for
all of us. If you do not, Mr. Davis is out of the jurisdiction for the
foreseeable future and will not voluntarily appear for a future deposition.
As to Mr. Stanton, you've had the entire discovery period to depose Mr.
Stanton and only raised it as a possibility a week before the discovery
cutoff (and after we took a round of depositions in London). We will not
agree to his deposition after the cutoff.
As to Mr. Teller and Mr. Howard, it appears you have not even made
contact with these third-party witnesses. We cannot agree to an open-
ended extension of the discovery cutoff or to theoretical depositions. If
you want to proceed with their depositions, you should do so within the
existing discovery period. We otherwise reserve all rights.
Alex

Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com
**Sent:** September 6, 2019 5:12 PM
**To:** alexspiro@quinnemanuel.com
**Cc:** michaellifrak@quinnemanuel.com; robertschwartz@quinnemanuel.com;
alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; mwood@wshllp.com;
chris@chathamfirm.com; khart@linwoodlaw.com; twilson@linwoodlaw.com; nwade@linwoodla
jgrunberg@linwoodlaw.com; Mark.Stephens@howardkennedy.com
**Subject:** RE: Scope of damages

[EXTERNAL EMAIL]

Alex,

On other addendum to the request regarding depositions – we
would add Ryan Mac to the list of deponents since both parties

will be unable to obtain his testimony before the discovery deadline due to the promised motion to quash.

Thanks again. Have a great weekend.

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**

---

**From:** Lin Wood
**Sent:** Friday, September 06, 2019 3:50 PM
**To:** Alex Spiro <alexspiro@quinnemanuel.com>
**Cc:** Michael Lifrak <michaellifrak@quinnemanuel.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; 'Matt Wood' <mwood@wshllp.com>; 'Chris Chatham' <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Nicole Wade <nwade@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>
**Subject:** RE: Scope of damages
**Importance:** High

Alex,

I have not yet received an answer to my questions below.

Please confirm whether Defendant will agree to a consent motion regarding certain depositions as stated below. Otherwise, please confirm your availability for a telephonic meet and confer later this afternoon or no later than Monday at Noon ET regarding our planned motion seeking an order

16

granting leave to depose Howard-Higgins, Teller, Stanton, and Davis. Defendant failed to timely identify Howard-Higgins and Teller and have shifted the burden to Plaintiff to locate them to arrange their depositions. As you know, Stanton and Howard-Higgins are located out of the country, and we have not received an answer as to taking Davis live on another date after September 9.

Subject to receiving your agreement to accept a the pre-trial stipulation that I have offered in this case as set forth below, Mr. Unsworth will not file another lawsuit in another jurisdiction. Please confirm we have your agreement to that stipulation. I would like to avoid burdening the Court with these matters as they seem to be the type of issues on which counsel can and should easily agree.

Let me hear from you. Thanks.

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**

**From:** Lin Wood
**Sent:** Wednesday, September 04, 2019 4:06 PM
**To:** Alex Spiro <alexspiro@quinnemanuel.com>
**Cc:** Michael Lifrak <michaellifrak@quinnemanuel.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; 'Matt Wood' <mwood@wshllp.com>; 'Chris Chatham' <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Nicole Wade <nwade@linwoodlaw.com>;

Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>
**Subject:** RE: Scope of damages
**Importance:** High

Alex,

In response to your inquiry, the London action will be dismissed by Plaintiff through his UK counsel. Additionally, Plaintiff is not seeking damages for lost wages and earning opportunities. Plaintiff is not seeking "damages … he has suffered in respect to his property, business, trade, profession, or occupation," as special damages are in part defined by the California code, but Plaintiff may elect and reserves the right to rely on the prospective cost of remediation of the libel as evidence of damages, as well as expenses incurred as a result of filing suit.

Please provide confirmation that Defendant will accept the written stipulation in the pre-trial order that Plaintiff is including damages suffered in England and Wales in this action per this email and my earlier email request.

Turning to another issue, we are still attempting to locate Mr. Higgins and Mr. Heller. It is clear that if we are successful (or if you contact either or both) that we will not be able to obtain their depositions prior to the expiration of the discovery time period. We have contacted Rick Stanton and although he is not subject to subpoena, he has agreed to provide us with a deposition for use at trial. It is our plan to set his discovery deposition for mid-October (his first availability) which is also outside the discovery time period. Given the medical situation of Mr. Davis and the logistics of the other live depositions of SpaceX employees set for Monday, September 9, we do not wish to depose Mr. Davis on that day by videoconference. If necessary, we are willing to travel to Boston for his deposition when he is medically improved. If his condition does not improve in the near term, we will also reconsider the possibility of a videoconference deposition later this month or early October.

Will you consent to the filing of a motion seeking an order granting leave to depose Higgins, Heller, Stanton and Davis after discovery ends on September 13 and prior to November 1, 2019? Your prompt response will be appreciated. Finally, if you anticipate the need for any specific depositions after September 13, we will be happy to include them in the consent motion.

Thank you.

18

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**

**From:** Alex Spiro <alexspiro@quinnemanuel.com>
**Sent:** Wednesday, September 04, 2019 10:24 AM
**To:** Lin Wood <lwood@linwoodlaw.com>
**Cc:** Michael Lifrak <michaellifrak@quinnemanuel.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; 'Matt Wood' <mwood@wshllp.com>; 'Chris Chatham' <chris@chathamfirm.com>; Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Nicole Wade <nwade@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>
**Subject:** RE: Scope of damages

Lin – I just wanted to clarify if you will be dismissing the action in London. Please also confirm that Plaintiff is not still seeking damages for lost wages or earning opportunities or any other special financial damages, as set forth in your prior interrogatory responses. Thanks

**Alex Spiro**
*Partner*
Quinn Emanuel Urquhart & Sullivan, LLP

51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7364 Direct
617-755-4555 Cell
alexspiro@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of

this message is not the intended recipient or agent responsible for delivering it to the intended
recipient, you are hereby notified that you have received this document in error and that any
review, dissemination, distribution, or copying of this message is strictly prohibited. If you have
received this communication in error, please notify us immediately by e-mail, and delete the
original message.

**From:** Lin Wood [mailto:lwood@linwoodlaw.com]
**Sent:** Tuesday, September 03, 2019 10:48 PM
**To:** Alex Spiro <alexspiro@quinnemanuel.com>
**Cc:** Michael Lifrak <michaellifrak@quinnemanuel.com>; Robert
Schwartz <robertschwartz@quinnemanuel.com>; Alex Bergjans
<alexbergjans@quinnemanuel.com>; Jeanine Zalduendo
<jeaninezalduendo@quinnemanuel.com>; 'Matt Wood'
<mwood@wshllp.com>; 'Chris Chatham' <chris@chathamfirm.com>;
Kimmy Hart Bennett <khart@linwoodlaw.com>; Taylor Wilson
<twilson@linwoodlaw.com>; Nicole Wade <nwade@linwoodlaw.com>;
Jonathan Grunberg <jgrunberg@linwoodlaw.com>
**Subject:** Scope of damages
**Importance:** High

**[EXTERNAL EMAIL]**

Alex,

As I forecast during Mr. Unsworth's deposition, Plaintiff will be
seeking worldwide damages in this action without exception.
Accordingly, Plaintiff is eliminating the carve out for damages
suffered in England and Wales referenced in paragraph 108 of
the Complaint. Will you will accept this written stipulation (to
be included in the pre-trial order)? Doing so will save me from
having to file an amended complaint. Let me know.

Thanks.

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

**NOTICE: This communication may contain privileged or
other confidential information. If you are not the intended
recipient, or believe that you have received this
communication in error, please do not print, copy,
retransmit, disseminate, or otherwise use the information.
Also, please indicate to the sender that you have received**

**this communication in error, and delete the copy you received. Thank you.**

# EXHIBIT 13

1

2                UNITED STATES DISTRICT COURT
             CENTRAL DISTRICT OF CALIFORNIA
3

4

5

6
     ------------------------)
7                            )
                             )
8    VERNON UNSWORTH,        )
                             )
9            Plaintiff       )
                             )
10   vs.                     ) Case No. 2:18-cv-08048
                             )
11                           )
     ELON MUSK,              )
12                           )
             Defendant       )
13                           )
     ------------------------)
14

15

16
      Videotape Deposition of VANESSA JULIET UNSWORTH
17

18
             On Tuesday, 27th August 2019
19

20

21
     Taken at the offices of:
22
             Howard Kennedy LLP
23           1 London Bridge
             London SE1 9BG
24           United Kingdom

25

UNSWORTH - SPIRO

**QUESTIONS BY MR. SPIRO**

BY MR. SPIRO:

      Q.     Good morning, Mrs. Unsworth.

      A.     Good morning.

      Q.     So I am going to ask you some questions as well.  You know, all I am asking for is for you to be, you know, as honest and thoughtful as possible.

      A.     Okay.

      Q.     You know, some of these topics and questions may be a little bit uncomfortable.  I am not trying to pry.  It is my job to ask you certain questions ----

      A.     Of course.

      Q.     ---- and to try and fully understand this.  So please be as thorough and accurate as possible.  Is that okay?

      A.     Yes, of course.

      Q.     You sort of ended by saying a few things, that this situation brought up a lot of situations and memories.

      A.     Hmm.

      Q.     What did you mean by that?

      A.     I think it sort of -- when you have

|    | UNSWORTH - SPIRO |
|----|------------------|
| 1  |                  |
| 2  | gone through a separation, obviously you are very |
| 3  | sort of hurt and any break-up of a marriage is |
| 4  | very sad.  I had sort of moved on from there.  We |
| 5  | had built a new life with each other, with Dani |
| 6  | and myself, and things had just, you know, been |
| 7  | going quite smoothly, and then suddenly the whole |
| 8  | thing happened.  Obviously, I was incredibly proud |
| 9  | of what he had achieved.  You know, to this day |
| 10 | I know how good he is at doing, you know, some of |
| 11 | the impossible things.  You know, he has always |
| 12 | been very brave, very courageous when it comes to |
| 13 | that.  So that side of it is, you know, the way |
| 14 | that our relationship sort of -- I would like to |
| 15 | see our relationship, when it ended, you know, the |
| 16 | respect for each other.  You know, when you |
| 17 | revisit something, you see him on the television, |
| 18 | you hear him, you know, talking, of course it |
| 19 | brings up memories from before.  I had not spoken |
| 20 | to -- I had not seen him.  I think I saw him once |
| 21 | after we split up, actually face-to-face.  That |
| 22 | was it.  So then suddenly on the television was a |
| 23 | "wow". |
| 24 |         Q.    And it triggered some of those sort |
| 25 | of thoughts of the separation? |

UNSWORTH - SPIRO

1

2      A.     Yes.

3      Q.     And things to Dani that are not

4  fully positive?

5             MR. WILSON:  Objection to form.

6      A.     I think you will find that in any

7  relationships when a relationship ends, you know,

8  people are sad and they are hurt.  That would

9  affect both Dani and myself.

10 BY MR. SPIRO:

11     Q.     And did seeing him on TV in this

12 situation trigger some of those memories?

13     A.     What it did was just -- I was quite

14 shocked.  You know, I was just in the middle of

15 getting ready for work and suddenly there he was

16 talking, you know, explaining how he was going

17 to -- or what they were going to try and do to get

18 the children out.

19     Q.     You talked a little bit about your

20 job?

21     A.     Yes.

22     Q.     What do you go by at work; what is

23 your title or your name?

24     A.     Mrs. Unsworth.

25     Q.     They call you Mrs. Unsworth?

1

2                          **CERTIFICATE OF COURT REPORTER**

3

4            I, Paula Foley, Accredited Court Reporter,

5    do hereby certify that I took the Stenograph notes

6    of the foregoing, and that the transcript thereof

7    is a true and accurate record transcribed to the

8    best of my skill and ability.

9

10           I further certify that I am neither

11   counsel for, related to, nor employed by any of

12   the parties to the action in which the deposition

13   was taken and that I am not a relative or employee

14   of any attorney or counsel employed by the parties

15   hereto, nor financially or otherwise interested in

16   the outcome of the action.

17

18

22   Signed .........................

23           PAULA FOLEY

24

25

# EXHIBIT 14

05/08/2019                                      (93) บิ๊กเกรียน - Posts



บิ๊กเกรียน
@teambigkren

Home
Posts
Reviews
Videos
Photos
About
Community
Groups
YouTube

Create a Page



Like    Follow    Share                    Watch Video    Send Message

บิ๊กเกรียน
July 17, 2018

**#ฮิลลอน** มัสก์ "เงิน"รอบสอง
ภรรยา "เวิร์น อันสเวิร์ธ"เปิดตัว
อยู่กินมา 7 ปี
ยืนยันสามีสายชาติ 100%
และเป็นคนปากกับใจตรงกัน
เผยไม่คิดฟ้องร้องมองเป็นเรื่องขำ
แต่สอนท้ายใช้ชีวิตอย่างไร้พิษดวงงวงการเทคโนโลยีสำนึก

กลายเป็นประเด็นร้อนขึ้นมาเมื่อฮิลลอน มัสก์ ผู้ก่อตั้งบริษัทเทสลา หรือมหาเศรษฐีระดับ
โลกซึ่งขึ้นชื่อว่าเป็นผองเลของวงการเทคโนโลยี เจ้าของวัดกระแสเรือดำน้ำจิ๋วที่นำ
มาสนับสนุนกิจภูกัด 13 หมูป่าอะคาเดมีแมลลสาย ยิ่งเก่า โพสต์ข้อความหารว่าเวอร์ออน
อันสเวิร์ธ เป็นพวกใคร่เด็ก เล่นเอาหลายฝ่ายองว์ ทั้งนี้งานจะมากกับกล้วรงค้ำขาวัญใน
คนใจหนึ่งได้ให้สัมภาษณ์ CNN รายป่วงเรือดำน้ำจิ๋ว ไม่อาจใช้ในงานกิจค้าหลวงได้และ
ประโยคที่แสนสนสุดคือ "เป็นแค่พ่อคำกับประชาสัมพันธ์ ทั้งหมดที่ขาเป็น" และราวา
ได้เดินทางกลับโยเซียลาๆนั่งจะขนลงดังการฟ้องร้องโดยผ่านารรรอยว่าในวันที่ 18
ก.ค.นี้อินสเวิร์ธ จะเดินทางกลับอังกฤษ และจะดำเนินเรื่องดังกล่าว

**#เปิดใจรองนายกฯอบต.ห้วยใคร่**
ภรรยา "เวอร์นออน อันสเวิร์ธ" 1 ในอีโก้ถ้ำหลวง

ทีมข่าวสอบถามไปยัง "คุณลีน่า" วรนันท์ จัดอวิธัตกุล รองนายก อบต.ห้วยใคร่
อ.แม่สาย จ.เชียงราย ภรรยาของเวอร์นออน อันสเวิร์ธ เพื่อทราบข้อเท็จจริงได้รับการ
เปิดเผยว่าเรื่องที่ระหมดอ่วยมันวางส่วนเข้าใจกันผิด แต่บางส่วนเกิดขึ้นจริงขำการ
ฟ้องร้องฮิลลอน มัสก์ คงไม่มีขนาดเนั้นแค่ต้องค้องหาอะไรแบบนี้จะเป็นการกล่าว
หายอ่วางไม่มีมูลความจริง

คุณลีน่า เปิดเผยชีวิตรัก 7 ปีที่อยู่กินกันอันสเวิร์ธ ว่าเคยมีโอกาสไปเที่ยวอังกฤษ และ
รู้จักกันซึ่งลนนัดูรักรอ่วมด้วยช่วยสามมีเป็นในเกอร์องสังหาริมทรัพย์ ให้คำแนะนำว่า
การซื้อขายบ้าน ที่ดินฟ้องชุดในอังกฤษ หลังจากติดต่อกันเรื่อยมาจนเกิดเป็นความรัก
มีการแต่งงานพี่พี่แองทราบกันมาทั้ง 2 ฝ่าย

**#ยืนยันเป็นขาย** 100 % ไม่คิดฟ้องร้อง
แต่ "ฮิลลอน มัสก์" ต้องรับบทเรียน

"สามีเป็นผู้ขาย 100 % และชาวบ้านที่แม่สายเขาก็ทราบกันดี ปัญหาน่าจะเกิดจากเขา
เป็นคนพูดไปตรงมา คิดอ่วางไรก็พูดอ่วางนั้น และพี่สำคัญคือมันเป็นเวลาเร่งถ่าน ทุก
วินาทีมีความหมายยิ่ง ผู้มูลแผ่ว่าฯ โมเฟ่ และสองมาคือเรือดำน้ำจิ๋ว ซึ่งแต่ของอุปกรณ์
เหล่านี้เขาก็รู้ว่ามันไม่สามารถนำไปใช้ได้ แต่เมื่อมีผู้นำมาเสนอและพรของร้องให้ช่วย
กันลองดูแล้วมาถูกก็คือใช้ไม่ได้จริงๆ เนื่องจากน้ำหลวงมีความคดแค่นั้น มีช่วงแคบๆ
บำงที่ก็ตลอดไม่มีทางที่เรือดำน้ำจิ๋ว หรืออุปไมค้ดอุดจะใช้ได้เลย เขาเป็นคนพูดตรงจึง
บอกไปตรงๆ แต่ด้วยความจริงมากว่านั้น ปัญหาคือมีการนำเอาคำสัมภาษณ์ไปอ่อบางช่อง
บางตอนลองออกไปเกิดความเข้าใจผิดกัน"

เมื่อนามถึงข้อก่าวหาของฮิลลอน มัสก์ ที่ระบุว่าสามีเป็นคนใคร่เด็ก คุณลีน่าออกว่าสามี
รู้สึกขำ แต่ลอง โกรธ เราคูยกันว่าเขาเป็นนักธุรกิจธรรมสั่งสูงก่อนเวลาเร่งด่วนไม่เครื่องเรื่องนี้อ
ไปสนใจสนุกคิดวรหารายละเอียดท่าน การเดินทางไปอังกฤษ วันพรุ่งนี้ไม่เกี่ยวกับ
การฟ้องร้องแต่เป็นแผนการเดินมานานแต่เดือนแล้ว "เราคงไม่ฟ้องร้อง หลังจากเขา
โพสต์ข้อเรามบอกแผลออกมาอยากท่าอะไรสักอย่างให้เขาดูว่าได้ทำไปใช่ที่ไม่ถูกต้อง"

**#บิ๊กเกรียน**

See Translation



https://www.facebook.com/teambigkren/posts/458338304638098                    1/7

4.5    **4.5 out of 5** ~ Based on the opinion of 1,468 people

**Community**                                      See All

Invite your friends to like this Page

555,690 people like this

665,454 people follow this

**About**                                          See All

📞 0891109990

💬 Send Message

🌐 www.bigkren.com

📰 Media/News Company

✏️ Suggest Edits

**Page Transparency**                              See More

Facebook is showing information to help you better
understand the purpose of a Page. See actions taken
by the people who manage and post content.

Page created - July 7, 2017

**Pages Liked by This Page**

เกรียนพารวย                          Like

English (US) · Polski · Español ·
Português (Brasil) · Français (France)

Privacy · Terms · Advertising · Ad Choices ▷ ·
Cookies · More
Facebook © 2019


EXHIBIT 33
VERNON UNSWORTH
08-14-19
Patricia Y. Schuler, CSR No. 11149
FIRST LEGAL

Chat

Exhibit 14, Page 218



05/08/2019

(93) บิ๊กเกรียน - Posts

บิ๊กเกรียน

Paul   Home   Find Friends   Create   93

168                                6 Comments  3 Shares

Like              Comment              Share

เพจอินดี้
บิ๊กเกรียน
สอนนอกคอก

บิ๊กเกรียน
@teambigkren

Home
Posts
Reviews
Videos
Photos
About
Community
Groups
YouTube

Create a Page

Oldest

Porsche Natchanon จะเป็นอะไรที่ช่าง ที่สำคัญสุดคือเขาหุ่มเทนเรกกาย ตั้งแต่วันแรกจนอบ
Like · Reply · See Translation · 1y                        6
1 Reply

Suphakorn Kritnithikunchai อิสอน...ก็ไม่เล่าอะไรกับ ค่ายเพลง คือเป็น นักร้อง ที่ถวย โอกาส ปั้น ยอดวิว
Like · Reply · See Translation · 1y

แมททักต์ แสงวิลัธ

Like · Reply · 1y

ดาราณิ ประดับเดือนเด่น #ทีมลุงเวร์กัน ค่ะ อู้ี่ณะคะ เห็นลุงแกมาช่วยตั้งแต่วันแรกๆเลย
Like · Reply · See Translation · 1y

Write a comment...
Press Enter to post.

Write a post...

Photo/Video        Tag Friends        Check in

บิ๊กเกรียน
9 hrs ·

#ย้อนภาพที่น่าประทับใจ
#ความรักที่ยิ่งใหญ่
#12สิงหา61
*** วันนี้แอดมีกิจกรรมดีๆ อยากจะแจกเสื้อยืดอันลิมิเด็ตของเพจบิ๊กเกรียน แต่มี ข้อแม้อยู่ว่าท่านต้องส่งรูปมาประกวด อวดความรักที่ยิ่ง ใหญ่ สุดแสนน่าประทับใจ ที่มีต่อแม่เนื่องในโอกาส " วันแม่แห่งชาติ " ***... See More
See Translation

101                                6 Comments  6 Shares

Like              Comment              Share

View 4 more comments                          Oldest

อามัส ชาธีตี้ อาริยา สุดที่รัก เป็นคนเลือวที่อยู่เคียงข้างในเวลาที่ทุกที่สุด รัก ม๊ะสุดหัวใจ ขอบคุณที่เลี้ยงลูกมาขอบคุณที่เลี้ยงหลานอีก

Chat

Exhibit 14, Page 219



05/08/2019

(93) ᴵBig Kren ᴵ - Posts

Big Kren

93

[logo:] Indie Page

Big Kren

Non-mainstream Media

# Big Kren

## Indie Page, Non-mainstream Media

Big Kren

@teambigkren

Home

Posts

Reviews

Videos

Photos

About

Community

Groups

YouTube

Create a Page

Like    Follow    Share              Watch Video      Send Message

Big Kren
July 17, 2018 ·

#Elon Musk "loses face" a second time.
Wife of "Vern Unsworth" reveals that
they've lived together for 7 years
She confirms that her husband is 100% man's man
and that he says what means.
She revealed that there will not be a lawsuit. He thinks it is funny.
but they have to do something so that the technology wizard [to realize] [what he's done]

It became a hot issue when Elon Musk, founder of the Tesla Company and world renowned billionaire, who's known as a technology wizard, owner of the miniature submarine innovation that was used to support the rescue 13 wild boars from the Mae Sai Academy trapped in a cave, posted a comment alleging that Vernon Unsworth was a pedophile confusing many.  This was likely due to the fact that this cave surveyor loved by the Thai people stated in an interview with CNN that the miniature submarines could not be used [for] the Tham Luang cave mission, and the sentence that stung the most was "He is just a public relations businessman  That's all he is."  This social media quarrel may end in a lawsuit, as on July 18 Unsworth will travel back to England and pursue said matter.

#Deputy Chairperson of the Huay Khrai SAO [Sub-district Administrative Organization] opens up
Wife of "Vernon Unsworth," one of the Tham Luang heroes

The news team asked "Tik" Woranan Rattawiphakkun, Deputy Chairperson of the Huay Khrai SAO in Mae Sai District, Chiang Rai Province, wife of Vernon Unsworth, in order to learn the facts.  She disclosed that the entire matter may partially be a misunderstanding, but some parts actually happened.  For example, a lawsuit against Elon Musk probably won't happen, but they do need to do something because of the baseless allegation.
Tik disclosed that [prior to] the 7 years she has lived with Unsworth, she had the opportunity to travel to England and got to know him.  She had her own business, and her husband was a real estate broker who provides advice on buying and selling homes, land, and condominiums in England.  After being in regular contact for a long time, they fell in love and got married, as relatives of both parties were well aware.

#Confirms 100% man's man; does not intend to sue
But "Elon Musk" must learn a lesson

"My husband is 100% man, and the people of Mae Sai know this  The problem likely occurred because he speaks very directly.  He says what he thinks.  Another point is that it was an urgent matter.  Every second counted.  Someone recommended the tube and then the submarine idea came after.  He saw this device and knew immediately that it could not be used, but since someone proposed it and asked that he please consider it, the result was that it really could not be used because the cave had twists and turns with narrow sections.  There were some switchbacks where a miniature submarine or air tube could not be used.  He is a very direct person, so he spoke frankly.  But there is more than that. The problem is that the interview was edited with something deleted, so it led to a misunderstanding."

When asked about Elon Musk's accusation that her husband was a pedophile, Tik said that her husband found that humorous, but that she was mad.  We talked about him being a high level businessman.
Before proposing using devices for support, he should have studied the details.  As for the travel to England tomorrow, it has nothing to do with a lawsuit.  It has been planned for months  "We probably will not sue.  After posting it, we quickly deleted it.  But we want to do something so he realizes that what he did was wrong.

#Big Kren

See Translation

4.5    4.5 out of 5 · Based on the opinion of
1,468 people

Community                           See All

Invite your friends to like this Page

555,690 people like this

665,454 people follow this

About                               See All

0891109990

Send Message

www.bigkren.com

Media/News Company

Suggest Edits

Page Transparency                   See More

Facebook is showing information to help you better understand the purpose of a Page. See actions taken by the people who manage and post content.

Page created - July 7, 2017

Pages Liked by This Page

[illegible]          Big Kren helps you get rich    Like

English (US) · Polski · Español ·
Português (Brasil) · Français (France)

Privacy · Terms · Advertising · Ad Choices
Cookies · More
Facebook © 2019

Chat

Exhibit 14, Page 220



05/08/2019                                                              (93) 'Big Kren 1 – Posts

| Big Kren | | Paul   Home   Find Friends   Create | 93 |

[logo:] Indie Page

Big Kren

Non-mainstream Media

Big Kren
@teambigkren

Home
Posts
Reviews
Videos
Photos
About
Community
Groups
YouTube

Create a Page

168                                                6 Comments  3 Shares

Like          Comment          Share

Oldest

**Porsche Natchanon** I don't care what he is. What is important is that he gave
everything he had from the first day until the last.

Like · Reply · See Translation · 1y                              6

1 Reply

**Suphakorn Kritnithikunchai** Elon … is no different than musicians, artists, [and]
singers who opportunistically try to increase their number of views.

Like · Reply · See Translation · 1y

Somsak Saengwisai

Like · Reply · 1y

Daonit Pradapdueanden #Uncle Vern's Team   Fight, fight!  I saw him come help from
the very first day.

Like · Reply · See Translation · 1y

Write a comment...

Press Enter to post.

Write a post...

Photo/Video          Tag Friends          Check in

'Big Kren
9 hrs ·

#Back to impressive photos
#Great Love
#12August2018
*** Today I have a good activity.  I want to distribute and unlimited number of Big Kren page t-shirts,
but there is a catch that everyone has to send in a photo as part of a contest to show great love that you
are most impressed with that you have for your mothers on account of "National Mother's Day" ***
See More

See Translation

101                                                6 Comments  6 Shares

Like          Comment          Share

View 4 more comments                                             Oldest

Dearest Anas Asiti Ariya: He was the only one there in the time of direst need.  I love him
with all my heart.  Thank you for raising children and grandchildren.

Chat

Exhibit 14, Page 221



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Jodeci Guzman, hereby certify that the document, "TeamBigKren FB Post" is, to the best of my knowledge and belief, a true and accurate translation from Thai into English.

Jodeci Guzman

Sworn to before me this
August 13, 2019

Signature, Notary Public

RYAN ALEXANDER DROST
Notary Public - State of New York
No. 01DR6262048
Qualified in NEW YORK County
My Commission Expires MAY 21, 2020

Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Alyssa Mullally, hereby certify that the document "Ex. 033 - Unsworth" is, to the best of my knowledge and belief, a true and accurate translation from Thai to English, which we formatted to match the Thai document as closely as possible.

_____

Alyssa Mullally

Sworn to before me this
November 8, 2019

_____

Signature, Notary Public

_____

Stamp, Notary Public

Exhibit 14, Page 223

# EXHIBIT 15

งาน หางาน สมัครงาน ลงโฆษณางาน ประกาศรับสมัครงาน Job thailand job thai job                09/08/2019, 22:53



Exhibit 15, Page 224



Jobs, Job Search, Job Application, Job Ads, Recruitment, Job thailand job thai job

08/09/2019, 10:53 PM

**JOBPUB.COM** TODAYJOB.COM

advertisement
Apply for an IAG X-Card credit card37 – April 30, 2007

AIG  LIFE X tra  WIT X · card  2  ALWAYS DOUBLE

Home    |    Write a Job    |    Post an Ad    |    Search Job

Quick Search
Quick Search Enter your keyword

GO

Knowledge Center
Things you should know about
" 10 oldest cities in the world "

Knowledge Center by Topic
• Medicine
• General knowledge
• Women's Issues
• Sports
• News & Media

and lots of other things...

Apply to be a Content Editor

Search Your Interests
Enter your keyword

GO

**::Topic Detail::**

Date : 10/18/2007

From : Nat

**Want to work at night**

I want to work at nighttime tourist venues, in any position. If any venue is taking applications, please put a contact address. Thank you.

**::Opinion::**

Date : 10/21/2007

From : tani

They only take women to work as PGs [Promotion Girls]

**::Opinion::**

Date : 10/23/2007

From : Anne

Lots of work around Ratchada. If you have a language skills, try for a leader position. Good tips too. Suggest looking in the Huai Khwang area.

**::Opinion::**

Date : 10/26/2007

From : suwimoltik@yahoo.co.th

What kind of work do you want to do? There are lots of types of night work. I work at night. The money's good, too. But you need a bit of fortitude. You can contact me.

**::Opinion::**

Date : 10/27/2007

Night work from 5:30 p.m. to 11:30 p.m., any position, any place, message to email worapongas@gmail.com

http://jobpub.com/WebBoard_detail.asp?message_no=11817&no=6

Page 1 of 39



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Aurora Landman, hereby certify that the document "งาน หางาน สมัครงาน ลงโฆษณางาน ประกาศรับสมัครงาน **Job thailand job thai jo...**" is, to the best of my knowledge and belief, a true and accurate translation from Thai into English.



Aurora Landman

Sworn to before me this
August 19, 2019

_____
Signature, Notary Public

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 I T 212.689.5555 I F 212.689.1059 I WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

Exhibit 15, Page 226



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Alyssa Mullally, hereby certify that the document "Ex. 055 - Ratrawiphukkun" is, to the best of my knowledge and belief, a true and accurate translation from Thai to English, which we formatted to match the Thai document as closely as possible.

_____
Alyssa Mullally

Sworn to before me this
November 8, 2019

_____
Signature, Notary Public

_____
Stamp, Notary Public

WENDY POON
NOTARY
NO. 01PO6356754
QUALIFIED IN
QUEENS COUNTY
COMM. EXP.
04-03-2021
PUBLIC
STATE OF NEW YORK

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS
1250 BROADWAY, 6TH FLOOR, NEW YORK, NY 10001 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

# EXHIBIT 16

1  L. LIN WOOD, P.C.
2  L. Lin Wood (admitted *pro hac vice*)
   lwood@linwoodlaw.com
3  Nicole J. Wade (admitted *pro hac vice*)
4  nwade@linwoodlaw.com
   Jonathan D. Grunberg (admitted *pro hac vice*)
5  jgrunberg@linwoodlaw.com
6  G. Taylor Wilson (admitted *pro hac vice*)
   twilson@linwoodlaw.com
7  1180 West Peachtree Street, Ste. 2040
8  Atlanta, Georgia 30309
   404-891-1402; 404-506-9111 (fax)
9

10  WEISBART SPRINGER HAYES, LLP          CHATHAM LAW GROUP
    Matt C. Wood (admitted *pro hac vice*)    Robert Christopher Chatham
11  mwood@wshllp.com                        chris@chathamfirm.com
12  212 Lavaca Street, Ste. 200            CA State Bar No. 240972
    Austin, TX 78701                       3109 W. Temple St.
13  512-652-5780                           Los Angeles, CA 90026
14  512-682-2074 (fax)                     213-277-1800

15  Attorneys for Plaintiff Vernon Unsworth

16
                    UNITED STATES DISTRICT COURT
17                  CENTRAL DISTRICT OF CALIFORNIA

18
19  VERNON UNSWORTH,                    Case No. 2:18-cv-08048-SVW (JC)

20       Plaintiff,

21  v.                                  **PLAINTIFF VERNON
                                        UNSWORTH'S INITIAL TRIAL
22  ELON MUSK,                          WITNESS LIST AND
                                        DEPOSITION DESIGNATIONS**
23
24       Defendant.                     Pretrial Conference:  Nov. 25, 2019
                                        Trial Date:          Dec. 3, 2019
25

26
27
28

Pursuant to Federal Rule of Civil Procedure 26(a)(3), the Scheduling Order [Doc. 54 Ex. A] as amended [Doc. 55, 69, 83], and agreement of the parties, Plaintiff Vernon Unsworth hereby serves upon Defendant Elon Musk the following names of witnesses he intends to call at the trial of this matter via live testimony and via deposition.

Plaintiff intends to call the following witnesses live[1] or by deposition as indicated:

1. Vernon Unsworth

2. Elon Musk (Plaintiff also anticipates playing portions of Mr. Musk's deposition at trial, and since Mr. Musk is an available party, Plaintiff will provide reasonable notice of those portions in advance of trial)

3. Jared Birchall

4. Woranan ("Tik") Ratrawiphukkun (*See* Plaintiff's Disclosure of Deposition Designations for Woranan ("Tik") Ratrawiphukkun, attached hereto as Exhibit B)

5. Vanessa Unsworth (*See* Plaintiff's Disclosure of Deposition Designations for Vanessa Unsworth, attached hereto as Exhibit C)

6. Ryan Mac (Plaintiff will make this disclosure within a reasonable time following receipt of Mr. Mac's deposition transcript)

Plaintiff may call the following witnesses live or by deposition designations as indicated[2]:

1. Martin Ellis*

2. Richard William Stanton MBE GM*

3. Rob Harper*

4. Sam Teller*

---

[1] Please refer to the table attached hereto as Exhibit A for the information called for by Fed. R. Civ. P. 26(a)(3)(A)(i).

[2] Per L.R. 16-5, Plaintiff affixes an asterisk next to each of these witnesses.

1

5.      Chris Bowman*

6.      David Arnold* (*See* Plaintiff's Disclosure of Deposition Designations for David Arnold, attached hereto as Exhibit D)

7.      Steven Davis* (*See* Plaintiff's Disclosure of Deposition Designations for Steven Davis, attached hereto as Exhibit E)

8.      Armor Harris* (*See* Plaintiff's Disclosure of Deposition Designations for Armor Harris, attached hereto as Exhibit F)

9.      Eric Rose*

10.     Dr. Bernard "Jim" Jansen*

Plaintiff reserves the right to call any witness identified on Defendant's witness list, to call custodians of records if needed to overcome any objection or secure admission of documentary evidence, and to amend this witness list to add additional witnesses that may become necessary, either for rebuttal or other purposes.

Dated:  November 1, 2019          **L. LIN WOOD, P.C.**
                                  By: */s/L. Lin Wood*
                                  L. Lin Wood
                                  *Attorneys for Plaintiff Vernon Unsworth*

2

## **CERTIFICATE OF SERVICE**

I am employed in the Fulton County, State of Georgia. I am over the age of eighteen years and not a party to the within action; my business address is 1180 West Peachtree Street, Suite 2040, Atlanta, GA 30309.

I hereby certify that a true and correct copy of the document titled "PLAINTIFF VERNON UNSWORTH'S INITIAL TRIAL WITNESS LIST AND DEPOSITION DESIGNATIONS" has been served via electronic mail transmission on November 1, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system and who have otherwise agreed to electronic service. The electronic mail transmission was made from twilson@linwoodlaw.com, by transmitting PDF format copies of the document to all counsel of record, at the e-mail address provided to the Court's CM/ECF system. The transmission was reported as complete and without error.

Executed on November 1, 2019, at Atlanta, Georgia.

*/s/ G. Taylor Wilson*

3

## Exhibit A – Plaintiff's Live Witness List

| Witness | Address | Presence |
|---|---|---|
| Vernon Unsworth | To be contacted through Plaintiff's counsel. | Will have present |
| Elon Musk | c/o Alex Spiro<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>212-849-7000 | Will have present |
| Jared Birchall | c/o Alex Spiro<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>212-849-7000 | Will have present |
| Martin Ellis | May be contacted through Plaintiff's counsel; thailandcaves@gmail.com; +66 809 921 141 | May have present |
| Richard William Stanton MBE GM | May be contacted through Plaintiff's counsel; resurgence42@gmail.com; +44 7713 618 339 | May have present |
| Rob Harper | May be contacted through Plaintiff's counsel; rob@robharper.co.uk; +44 7968 444 937 | May have present |
| Sam Teller | c/o Alex Spiro<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>212-849-7000 | May have present |
| Chris Bowman | c/o Alex Spiro<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>212-849-7000 | May have present |

i

### **Exhibit B - Deposition Designations for Woranan ("Tik") Ratrawiphukkun**

| Start P:L | End P:L | Objections |
|-----------|---------|------------|
| 5:22 | 8:15 | |
| 9:23 | 16:22 | |
| 17:2 | 20:13 | |
| 20:16 | 24:3 | |
| 32:4 | 32:15 | |
| 33:17 | 33:19 | |
| 35:9 | 36:4 | |
| 65:6 | 67:23 | |

i

## Exhibit C – Deposition Designations for Vanessa Unsworth

| Start P:L | End P:L | Objections |
|-----------|---------|------------|
| 5:20 | 5:22 | |
| 6:20 | 10:13 | |
| 11:6 | 11:17 | |
| 13:18 | 14:21 | |
| 17:8 | 18:11 | |
| 19:12 | 24:4 | |
| 24:14 | 28:19 | |
| 30:5 | 30:11 | |
| 31:9 | 32:21 | |
| 58:17 | 59:22 | |
| 92:16 | 93:5 | |

i

## Exhibit D – Deposition Designations for David Arnold

| Start P:L | End P:L | Objections |
|-----------|---------|------------|
| 8:11 | 8:13 | |
| 9:3 | 9:21 | |
| 10:7 | 10:15 | |
| 14:3 | 15:24 | |
| 21:15 | 21:19 | |
| 27:15 | 28:21 | |
| 32:3 | 33:16 | |
| 37:12 | 38:11 | |
| 42:12 | 43:12 | |
| 45:3 | 49:3 | |
| 53:4 | 53:16 | |
| 64:22 | 66:15 | |
| 69:19 | 70:5 | |
| 75:23 | 77:9 | |
| 79:19 | 84:1 | |
| 84:19 | 85:2 | |
| 100:16 | 105:23 | |
| 111:17 | 112:3 | |
| 113:16 | 121:2 | |
| 128:15 | 130:1 | |
| 142:11 | 145:4 | |
| 155:14 | 156:6 | |
| 164:14 | 166:4 | |

i

## Exhibit E – Deposition Designations for Steven Davis

| Start P:L | End P:L | Objections |
|-----------|---------|------------|
| 7:9 | 8:1 | |
| 10:2 | 11:14 | |
| 13:6 | 15:24 | |
| 43:7 | 43:16 | |
| 49:16 | 50:12 | |
| 51:11 | 53:6 | |
| 67:12 | 70:9 | |
| 81:3 | 88:24 | |
| 93:10 | 102:12 | |
| 103:5 | 125:18 | |
| 129:16 | 143:25 | |
| 149:8 | 152:24 | |
| 156:14 | 161:12 | |
| 161:19 | 167:23 | |
| 168:19 | 170:22 | |

i

## Exhibit F – Deposition Designations for Armor Harris

| Start P:L | End P:L | Objections |
|-----------|---------|------------|
| 6:12 | 6:14 | |
| 8:10 | 10:13 | |
| 10:19 | 13:10 | |
| 21:23 | 24:8 | |
| 24:22 | 26:10 | |
| 27:17 | 28:15 | |
| 29:18 | 31:21 | |
| 33:5 | 37:13 | |
| 39:18 | 40:14 | |
| 58:9 | 59:12 | |
| 68:20 | 70:5 | |
| 74:22 | 76:19 | |
| 111:5 | 113:21 | |
| 121:19 | 129:13 | |
| 129:14 | 135:22 | |
| 137:19 | 141:14 | |
| 153:13 | 157:21 | |
| 163:5 | 163:18 | |

i

# EXHIBIT 17

1

2                      UNITED STATES DISTRICT COURT
                      CENTRAL DISTRICT OF CALIFORNIA
3

4

5

6
        ------------------------)
7                               )
                                )
8       VERNON UNSWORTH,        )
                                )
9               Plaintiff       )
                                )
10      vs.                     )  Case No. 2:18-cv-08048
                                )
11                              )
        ELON MUSK,              )
12                              )
                Defendant       )
13      ------------------------)

14

15

16
          Videotape Deposition of WORANAN RATRAWIPHAKKUN
17

18
                 On Wednesday, 28th August 2019
19

20
        Taken at the offices of:
21
                Howard Kennedy LLP
22              1 London Bridge
                London SE1 9BG
23              United Kingdom

24

25

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 020 7067 2900**

www.martenwalshcherer.com

RATRAWIPHAKKUN - SPIRO

1

2          MR. SPIRO:  Yes.

3          A.     (Through the interpreter) What kind

4     of work do you want?  There are several kinds of

5     work?  I also work at night and I got good money

6     for it.  But it is hard work.  You can contact

7     me."

8          Q.     And you are denying that that is

9     your sentence?  You are denying that those are

10    your words?

11         THE WITNESS:  Not me.

12         A.     (Through the interpreter) I deny

13    it.

14              MR. SPIRO:  Okay, I have no further

15    questions.

16              MR. WILSON:  I appreciate if you do

17    not sandbag the witness or any ----

18              MR. SPIRO:  I can ask her any

19    question I want of the witness.

20              MR. WILSON:  Can we have a break

21    now?

22              MR. SPIRO:  Just because you did

23    not anticipate a question does not make it

24    sandbagging.

25              THE VIDEOGRAPHER:  Going off the

**CERTIFICATE OF COURT REPORTER**

I, Paula Foley, Accredited Court Reporter, do hereby certify that I took the Stenograph notes of the foregoing, and that the transcript thereof is a true and accurate record transcribed to the best of my skill and ability.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which the deposition was taken and that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially or otherwise interested in the outcome of the action.

Signed ...........................
        PAULA FOLEY

# EXHIBIT 18

← **Tweet**

**Phillip de Wet** ✔ @phillipdewet · Sep 17            ⌄
We need your help for an important historical inquiry, please Twitter.

48-year-old Elon Musk says "pedo guy" was a common insult in South Africa
when he was growing up, and was a generic reference to a creepy older guy.

Is this true?

◯ 46            ⊔ 6            ♡ 6            ⬆

**John Thisismyname**                              ⌄
@HeatingHades

Replying to @phillipdewet

I have mates that were in his old highschool that use
the phrase quite often. So perhaps it's just from that
part.

3:34 AM · Sep 17, 2019 · Twitter for Android

**2** Likes

◯            ⊔            ♡            ⬆



← **Tweet**

**Phillip de Wet** ✔ @phillipdewet · Sep 17

We need your help for an important historical inquiry, please Twitter.

48-year-old Elon Musk says "pedo guy" was a common insult in South Africa when he was growing up, and was a generic reference to a creepy older guy.

Is this true?

💬 46        🔁 6        ♡ 6        ⬆

**Joburg lawyer**
@joburglawyer

Replying to @phillipdewet

Yes it's true. It was used in the 70s and 80s when my brothers and I were at school and university. It was a mildly derogatory term for anyone who was irritating or who did something stupid. Mostly just limited to "pedo". Never meant as a word to accuse someone of paedophilia.

6:50 AM · Sep 17, 2019 · Twitter for iPhone

**2** Likes

💬        🔁        ♡        ⬆





← **Tweet**

**Phillip de Wet** ✔ @phillipdewet · Sep 17

We need your help for an important historical inquiry, please Twitter.

48-year-old Elon Musk says "pedo guy" was a common insult in South Africa when he was growing up, and was a generic reference to a creepy older guy.

Is this true?

💬 46     🔁 6     ♡ 6     ⬆

**miro**
@sedgebrook

Replying to @phillipdewet

## Was certainly used in the Sandton area in the 80's

3:55 AM · Sep 17, 2019 · Twitter for iPhone

💬     🔁     ♡     ⬆



← **Tweet**

**Phillip de Wet** ✓ @phillipdewet · Sep 17

We need your help for an important historical inquiry, please Twitter.

48-year-old Elon Musk says "pedo guy" was a common insult in South Africa when he was growing up, and was a generic reference to a creepy older guy.

Is this true?

💬 46      �log, 6      ♡ 6      ⬆

**Herbert du Plessis**
@HerbertduPlessi

Replying to @phillipdewet

Yes.

5:52 AM · Sep 17, 2019 · Twitter for Android



← **Tweet**

**Phillip de Wet** ✔ @phillipdewet · Sep 17

We need your help for an important historical inquiry, please Twitter.

48-year-old Elon Musk says "pedo guy" was a common insult in South Africa when he was growing up, and was a generic reference to a creepy older guy.

Is this true?

💬 46        ↻ 6        ♡ 6        ⬆

**Hussein Badat**
@GrownUpHandle

Replying to @phillipdewet

Probably a Pretoria Boys High thing. I was there fifteen years later and nothing would surprise me about that school. Apparently things have changed for the better since ...

7:39 AM · Sep 17, 2019 · Twitter for Android

← **Tweet**



**Phillip de Wet** ✔ @phillipdewet · Sep 17

We need your help for an important historical inquiry, please Twitter.

48-year-old Elon Musk says "pedo guy" was a common insult in South Africa when he was growing up, and was a generic reference to a creepy older guy.

Is this true?

💬 46          ⟲ 6          ♡ 6          ⬆

**Ricky Bobby**
@RickyBobbyrulez

Replying to @phillipdewet

Not that hard. Different words have different meanings depending on when and how they are used. For example, if I call someone a dickhole, obviously it is not meant literally, just means they are unpleasant to look at and be around. Same goes for "pedo"

3:29 AM · Sep 18, 2019 · Twitter Web App

💬          ⟲          ♡          ⬆

← **Tweet**

**Phillip de Wet** ✓ @phillipdewet · Sep 17

We need your help for an important historical inquiry, please Twitter.

48-year-old Elon Musk says "pedo guy" was a common insult in South Africa when he was growing up, and was a generic reference to a creepy older guy.

Is this true?

💬 46          ⟲ 6          ♡ 6          ⬆

**justfoodnow**
@justfoodnow

Replying to @phillipdewet

I'm from the Western Cape but a good friend from Pretoria always uses it - usually when talking about a stupid/deadbeat/miserable person.

2:49 AM · Sep 18, 2019 · Twitter for iPhone

**1** Like

💬          ⟲          ♡          ⬆



← **Tweet**

**Phillip de Wet** ✓ @phillipdewet · Sep 17

We need your help for an important historical inquiry, please Twitter.

48-year-old Elon Musk says "pedo guy" was a common insult in South Africa when he was growing up, and was a generic reference to a creepy older guy.

Is this true?

💬 46        🔁 6        ♡ 6        ⬆

**xCountryRun**
@gamtoosm

Replying to @phillipdewet

We joked about creepy old men hanging out around spooky places (called them Pedo's) - I had never heard of pedophile or there were transgender people (we called feminish boys pansy's - babies). In early days Pedo was a insult directed at car less poor whites

5:17 AM · Sep 24, 2019 · Twitter for iPhone

💬        🔁        ♡        ⬆

**xCountryRun** @gamtoosm · Sep 24
Replying to @gamtoosm
@elonmusk I agree with your understanding of the use of the term Pedo over here, we called scary weird old men that - see my tweet. It never had other connotations to us!

💬        🔁        ♡        ⬆

# EXHIBIT 19

**To:**     Lin Wood[lwood@linwoodlaw.com]; CBE Mark Stephens[mark.stephens@howardkennedy.com]
**Cc:**     Taylor Wilson[twilson@linwoodlaw.com]; Matt Wood[mwood@wshllp.com]
**From:**   Vernon Unsworth
**Sent:**   Sun 8/25/2019 1:21:22 PM
**Subject:** Fw: Ben Reymanants
Dive Sections.pdf
Rick Stanton Email (1).pdf



----- Forwarded message -----
**From:** Ben Svasti <ben.svasti@gmail.com>
**To:** Vernon Unsworth <vernon_unsworth@yahoo.co.uk>
**Sent:** Sunday, 25 August 2019, 09:17:44 BST
**Subject:** Fwd: Ben Reymanants


---------- Forwarded message ---------
From: **Richard Stanton** <resurgence42@gmail.com>
Date: Wed, 21 Aug 2019 at 21:55
Subject: Re: Ben Reymanants
To: Ben Svasti <ben.svasti@gmail.com>


One final thing that ought to be added for completeness regarding Ben's version.
Ben's modest line laying (115m) on the Monday morning was crucial in enabling us to reach the boys later that afternoon;
it would have been impossible for us to do so, on that day, without his contribution. The 588m of line we carried and laid
on that day would not have been enough to reach them.

On Wed, 21 Aug 2019 at 08:08, Ben Svasti <ben.svasti@gmail.com> wrote:

Dear Rick,
I owe you a big thank you for putting so much effort into setting the record straight in a calm and professional manner.

I forwarded it to my contact who heads the camera crew and he has forwarded it to Raymond Huber at Joyplex who are
handling the production.

Lets hope it steers their production to a more accepted middle ground.

Many thanks again

Ben

On Wed, 21 Aug 2019 at 06:20, Richard Stanton <resurgence42@gmail.com> wrote:

Hi Ben

I've been a bit busy of late but here are my thoughts on our various interactions with Ben, in narrative note form, and approximate chronological order,.

I'm happy for you to share this with the director because he may appear out on a limb when Harry's book, my book, and Kevin Macdonald's Nat Geo documentary come out. Maybe that's what he wants? Strange that he's not contacted us ?

I had met Ben before the Thailand rescue at a dive conference in Sydney Australia (maybe 2011, or earlier). I was Facebook friends with him from that time & we shared many common friends so I suspected he was a competent diver. I still maintain that this is correct.

To my knowledge he did not however have any river cave or sump diving experience to anywhere near the extent that we possessed. This manifested itself when we first met on the Thursday, along with his friend the US dive instructor Bruce Konefe. They were retelling the story of the SEAL's original rescue attempt dives from the first Sunday and Monday where they had reached a restriction where it was too tight to proceed. Here the SEALs had taken off their cylinders and were digging their way through; plus they stated that the current had reversed in this area. Most likely they were off route, through inexperience; as we simply followed the maximum main flow coming towards us as a way of navigating later on when laying line.

Vern had said no such restriction existed, which was of course true, we think we know the spot in question as it is marked by black mountaineering webbing used as a guide line by those SEALs (more on this later)

Clearly currents in caves cannot reverse, same as mountain rivers never change direction (there could have been a localised current eddy caused by the shape of the passage) but Ben wouldn't listen to us and was insistent that there must be another water exit at the end of the southern branch (where in fact water enters the cave from unknown sources on the surface, hundreds of meters above). Their insistence that this theoretical exit would be a good way of accessing the children was clearly nonsense, which they maintained it in spite of our refutation attempts with cave facts. Ben and Bruce were actually being listened to as they had the advantage of having some of the SEALs as friends and were respected by them as cave divers and instructors. We felt was this was creating a confusing situation, so from that point onward we largely distanced ourselves from him and his group. We mainly conferred with the USAF contingent from then to get our messages across.

This was the day we rescued the four water workers from chamber 3.

On the next day, Friday JV and myself wanted to dive beyond chamber 3 to assess the conditions. This had been our priority for the previous day but had to be abandoned in lieu of the urgent rescue of the water workers. On that Friday Ben was clearly intend on getting there and diving before us. We entered later on to make our own assessment and at the very least to help Ben get out with his equipment as it transpired that he had gone in solo. The current was even stronger than the previous day and we felt that diving progress would have been virtually impossible beyond chamber 3 judging from what we had observed on the Thursday whilst we conducted the rescue.

We met Ben on his short dive out to chamber 2, in our opinion he looked a bit flustered and said that he had dived for 100m beyond chamber 3 where he himself had met a reversing current and had been turned around. JV and myself realised diving was probably impossible so didn't proceed with our plan but simply retreated and assisted Ben with some of his equipment.

Chamber 3 is approximately 800m from the entrance and if Ben's dive details are to be believed he then proceeded no further than a maximum of 900m from the entrance.

On the Saturday it was brought to my attention of some wild interment boasts by Ben, claiming that he had reached 4km (in one post now lost) and others, where I still have the evidence, that he had reached 2.5km. Incidentally the boys eventual location was proved to be 2.3 km so if he his wild claims are correct then he actually swam past them! There was of course no line left in place to evidence he had made anything more than a cursory look beyond chamber 3 on that day.

On being confronted first by Vern and then by myself he immediately back tracked on his claims. It was clear then that he was an egotistical fantasist, who couldn't be trusted to report the truth.

Saturday, all diving operations were stopped and we didn't think it likely that the water current would reduce enough for it to practical to dive again. JV and myself started making plans to leave as we didn't want to wait around, not being operational, until it was certain that the boys would all be deceased due to length of time without food. Probably over another 2 weeks from that day.

Ben made a dive in the evening, possibly as a means of justifying his wild internet boasts from the Friday. Miraculously

the water had receded enough to make diving possible. It hadn't rained for two days by then.

Sun morning, Ben and his Ukranian born dive companion named Maksym Polejaka, plus some teams of Thai Navy SEAL divers continued with the line laying process. Ben had sent a message to me saying that conditions were improving and that we should help in the path finding process.

We met Ben at some point outside and then JV and myself went into chamber 3. Conditions had improved considerably from when we were last there on the Thurs.

A team of two SEALs had just returned from a line laying dive and were cold and exhausted, we took two of the big bags of rope which were described as holding 200m each. I suspect it was fractionally less in reality.

All the lines measured in situ recently during the dry season, so we know exactly who did what and where.

We dived and easily reached the end of the existing line which was 285m from base, through difficult and confusing passage. They had done a good job. We continued to lay all of the line we had and patched into various short bits of rope that had been placed over pools earlier during the rescue as the cave was flooding. The distance we proceeded was measured as 496m.

We reached the only junction in the cave (known as Sam Yaek) having covered a total distance of 781m from chamber 3. We were positive we had reached the junction as there was an inlet of warmer clear water issuing from the Monks Series passage on the right.

Of note was the fact that the passage JV and I laid line through, beyond the previous divers limit, was much shallower and contained more air spaces than the previous passage, this was a new revelation and not as expected. This gave us hope that the boys had a chance of survival.

Following day Monday 2nd July,  Ben & Maksym dived early as was usual, we got Vern and Rob Harper to draw a detailed sketch of the passage immediately beyond our final point as it was known there was a series of complicated cross rifts and the way on was low down, we thought it would prove useful for them to navigate forward into easier passage. JV and I dived later and met with Ben in chamber 3 where we had or a debrief of their actions before starting our own dive. We set off with two full line bags plus a UK style line reel with over 200m of thinner blue 4mm dive line to maximise our penetration possibility. We followed the line Ben had laid beyond the Sam Yaek junction, (which was 115m) and ended at the 20m black tape marking the point reached earlier by the SEALs when the water had been lower, prior to our arrival. There was no indication that Ben had been further, for unknown reason, although he presumably carried more than just 115m of line with him.

We laid our two bags of rope plus the all of the line reel which totalled a distance of  588m that day until we found the boys on their slope.

Further more earlier in the cave we found a new section of very poorly abandoned line that was trying to bypass a section of smaller passage, and at a different location about 10m of string laid from a reel which most divers carry as emergency line. We had not been informed of either of these events and they could have only been from Ben, to us it represented both poor line laying skills and team work.

Later that night we first had an informal debrief of our finding at the SEAL camp, this was followed by the more formal one (of which a photo exists). The meeting was between the four British personnel present, Rear Admiral Apakorn head of the Thai SEALs, Commander Pinyo (the Rear Admiral's staff or planning officer), a couple of retired high ranking SEALs who both spoke good English, Mitch from the USAF and an Australian consulate chap. These were the people sat around the table although there were also many bystanders. John and I were thanked for being the pathfinders and told that we would no longer be diving but to act only as advisers to the Thai SEALs, who would be conducting dive operations from then on.

It was then that Ben became agitated and kept insisting that we should all go in and rescue the boys there and then, stating he had a stretcher to do so!

I have no idea of his detailed plan but to us it seemed too early to act, (we had no clue how to get the boys out at that stage, and any immediate action would have been extremely dangerous);  Ben wasn't any part of the meeting until that moment then he had just barged into the discussion. Things became heated between him and John and Ben was lead away by a companion, in my opinion the Rear Admiral simply ignored him we carried on with the meeting as if nothing had happened.

The next day Ben left to go on holiday as he'd previously planned.

During the week the SEALs retracted on us not diving and put the dive rescue planning into our hands, then it was looking likely for the rescue to commence on the Sunday.  On the Saturday morning I heard from Dr Richard Harris that Ben was wanting to show up to participate in the rescue.

I knew that the UK team members would not tolerate Ben's strange behaviours and his presence would completely detract from the well planned rescue mission., Dr Richard Harris completely backed me up on this assumption. We had also been working well with the four members of the 'Euro' diving team, one of whom, Claus, even worked for Ben; we didn't want any interference to this working relationship.

Lastly Ben had actually only dived to 100m beyond Sam Yaek on one occasion, Almost 600m short of where the boys had found sanctuary, so he was no where near as familiar with the full journey as the other team members tasked with doing so.

I mentioned my concerns to Garry Mitchell from the UK, who had deployed in a surface support role, his action was to ban Ben from the cave site.

Effective, but not necessarily how I would have addressed the issue. Ben was by now presumably disgruntled by his treatment. He did arrive on site at some stage, I cannot remember when and although I met him he declined to say anything to me at the time or since.

He has subsequently attempted to discredit us by claiming

1) we were all packed and set to leave the site - there is an element of truth but the reasons were mentioned above.

2) He still claims to have laid most of the line. Facts show that he (or the SEALs early on) were responsible for 420m and us 1084m giving a total continuous dive distance to the boys from chamber 3 of 1504m. Ben can therefore legitimately lay claim to approx 30%. I have annotated a schematic, & not to scale map to illustrate the sections he was actually responsible for.

3)He claims to have reached the junction first, its a matter of semantics. We reached it, he overcame the short complex section of route finding just beyond it.

4) Ben claims that there was an agreement put in place for us not to find the boys, and to leave that for the Thai SEAL divers. This is clearly an absurd operational procedure for a pathfinder team who are not even sure of the location of their target. This concept was never mentioned to us by either the SEAL Rear Admiral, his staff officer or the USAF officers who often acted as intermediaries between the SEALs and UK diver team.

If the director would like an independent view on the Ben situation then I suggest that he also asks the USAF personnel like Derek Anderson.

We had a pact of not taking video footage/evidence during the rescue, and this may now be to our disadvantage although I still maintain it was the correct policy. If Ben does have some incredible footage of himself laying the line taken on his helmet camera; I could replicate that myself in any murky cave. Who would know the difference?

Apologies for the not so brief report, it's actually partly for my own benefit as I've never written this down. The short of it is that Ben took more energy to deal with and detracted more from the rescue than any advantages he could possibly offer. The results speak for themselves.

Regards
Rick

# EXHIBIT 20

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice* pending)
  alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
  jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH, | Case No. 2:18-cv-08048 |
| Plaintiff, | Judge: Hon. Stephen V. Wilson |
| vs. | **DEFENDANT ELON MUSK'S DISCLOSURE OF POTENTIAL TRIAL WITNESSES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(3)** |
| ELON MUSK, | |
| Defendant. | |

DEFENDANT ELON MUSK'S DISCLOSURE OF POTENTIAL TRIAL WITNESSES

Pursuant to Federal Rule of Civil Procedure 26(a)(3), Defendant Elon Musk, hereby provides the following disclosure of potential trial witnesses (other than solely for impeachment):

<u>Witnesses Defendant Expects to Present</u>

David Arnold*

Jared Birchall*

Chris Bowman*

Steve Davis*

Armor Harris*

Elon Musk*

Woranan Ratrawiphukkun (by video)

Sam Teller*

Vanessa Unsworth (by video)

Vernon Unsworth

* Can be contacted through counsel for Mr. Musk

<u>Witnesses Defendant May Present</u>

L. Lin Wood†

Mark Stephens†

Ryan Mac

Ben Reymenants

Ray Lightfoot

† Mr. Musk will forego calling at trial if Plaintiff stipulates to authenticity and admissibility of documents related to this witness.

- 1 -
DEFENDANT ELON MUSK'S DISCLOSURE OF POTENTIAL TRIAL WITNESSES

1  Dated:  November 1, 2019

2

3                                    QUINN EMANUEL URQUHART
                                     & SULLIVAN, LLP
4                                    Alex Spiro
                                     Robert M. Schwartz
5                                    Michael T. Lifrak
                                     Jeanine M. Zalduendo
6

7

8                                    By: _/s/Alex Spiro_____

9                                    Alex Spiro
                                     *Attorneys for Defendant Elon Musk*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

I am employed in the County of Los Angeles, State of California. I am over

3

the age of eighteen years and not a party to the within action; my business address is

4

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

5

I hereby certify that a true and correct copy of the document titled "Defendant

6

Elon Musk's Disclosure of Potential Trial Witnesses" has been served via electronic

7

mail transmission on November 1, 2019 to all counsel of record who are deemed to

8

have consented to electronic service via the Court's CM/ECF system. The electronic

9

mail transmission was made from jeaninezalduendo@quinnemanuel.com, by

10

transmitting PDF format copies of the document to all counsel of record, at the e-

11

mail address provided to the Court's CM/ECF system. The transmission was

12

reported as complete and without error.

13

14

Executed on November 1, 2019 at Los Angeles, California.

15

16

17

*s/ Jeanine M. Zalduendo*
Jeanine M. Zalduendo

18

19

20

21

22

23

24

25

26

27

28

- 3 -
DEFENDANT ELON MUSK'S DISCLOSURE OF POTENTIAL TRIAL WITNESSES

# EXHIBIT 21



# Claim Form

*ASSIGNED MASTER* _____

ALL CORRESPONDENCE TO BE ADDRESSED TO THE COURT MANAGER

Claimant(s) name(s) and address(es) including postcode

VERNON UNSWORTH
413 WANSTEAD PARK ROAD
ILFORD
IG1 3TT
UNITED KINGDOM

Defendant(s) name and address(es) including postcode

ELON MUSK
10911 CHALON ROAD
LOS ANGELES
CALIFORNIA 90077
UNITED STATES OF AMERICA

**HIGH COURT OF JUSTICE**

**10 Jul 2019**

**QUEEN'S BENCH DIVISION**

QB-2019-002471

NOT FOR
SERVICE OUT OF
JURISDICTION

Brief details of claim

THIS IS A CLAIM FOR DEFAMATION AND MALICIOUS FALSEHO
BY THE DEFENDANT ON 15 JULY 2018 AND 28 AUGUST 2018 S
PAEDOPHILE AND LIED ABOUT HIS INVOLVEMENT IN THE RES
COACH IN THAM LUANG, THAILAND, AND FURTHER PUBLICAT
EMAIL TO BUZZFEED ON 30 AUGUST 2018. THE CLAIMANT CL
DAMAGES, AND AN INJUNCTION TO PREVENT THE DEFENDAN

Value

UNSPECIFIED. DAMAGES ARE NOT FOR A LIQUIDATED SUM A
COURT.

You must indicate your preferred court for hearings here (see notes for guidance)

ROYAL COURTS OF JUSTICE, STRAND, LONDON WC2A 2LL

| | £ |
|---|---|
| Defendant's name and address for service including postcode<br>ELON MUSK<br>10911 CHALON ROAD<br>LOS ANGELES<br>CALIFORNIA 90077<br>UNITED STATES OF AMERICA | |
| Amount claimed | |
| Court fee | 10,000.00 |
| Solicitor's costs | |
| Total amount | 10,000.00 |

Offices within the Royal Courts of Justice, Strand, London WC2A 2LL      are open between 10am and 4.30pm Monday to Friday.
When sending correspondence, please address to relevant office (see top right) and quote the claim number.

N1(2)(RCJ) Claim form (CPR Part 7) (12.12) - Royal Courts of Justice     © Crown copyright acknowledged     Laserform International 1/13

#46364821v3\af8

Exhibit 21, Page 258

VU00479

| Claim No. | |
|---|---|

Does, or will, your claim include any issues under the Human Rights Act 1998?   ☐ Yes   ☒ No

Particulars of Claim XXXXXXXX(to follow)

**Statement of Truth**
XXXXXXXX(The Claimant believes) that the facts stated in these particulars of claim are true.
* I am duly authorised by the claimant to sign this statement

Full name MARK HOWARD STEPHENS CBE

Name of claimant's solicitor's firm   Howard Kennedy LLP

signed _____
XXXXXXXX XXXXXXXXXXXX (Claimant's solicitor)
*delete as appropriate

position or office held   PARTNER
(if signing on behalf of
firm or company)

Howard Kennedy LLP
No.1 London Bridge
London
SE1 9BG

DX144370 Southwark 4
+44 (0)203 650 7000

Claimant's or claimant's solicitor's address to
which documents or payments should be sent if
different from overleaf including (if appropriate)
details of DX, fax or e-mail.

#46364821v3\af8

Exhibit 21, Page 259

VU00480

# EXHIBIT 22

**To:**       Taylor Wilson[twilson@linwoodlaw.com]
**From:**     Vernon Unsworth
**Sent:**     Fri 9/27/2019 8:54:33 AM
**Subject:**  Fw: Vern Unsworth - more info

----- Forwarded message -----
**From:** William Robinson <willrobinson001@outlook.com>
**To:** Vernon Unsworth <vernon_unsworth@yahoo.co.uk>
**Sent:** Thursday, 29 November 2018, 05:01:59 GMT
**Subject:** Re: Vern Unsworth - more info

Ok I will tell him in the next exchange. Obi

Get Outlook for iOS

---

**From:** Vernon Unsworth <vernon_unsworth@yahoo.co.uk>
**Sent:** Thursday, November 29, 2018 11:59 am
**To:** William Robinson
**Subject:** Re: Vern Unsworth - more info

couple of comments in RED

Best
Vern


---

**From:** William Robinson <willrobinson001@outlook.com>
**To:** "brianbrightly@gmail.com" <brianbrightly@gmail.com>
**Sent:** Thursday, 29 November 2018, 3:50
**Subject:** Vern Unsworth - more info

Hi Brian,

Many thanks for your emails and advice.

Here is some more information on what's happening. Vern has avoided everyone so far, only Warners have spoke to him, we are due a meeting with them soon.

The Government in Thailand have put together a committee called "The Wild Boar Committee" to represent the football team and their coach. They are currently choosing which film company (over 20 are pitching for the rights of the boys and coach story including Universal, Warner, Ivanhoe, Netflix and Disney), we will know early January. But there are other projects including the one you sent by Thai film company but they only have the news story. There are three major stories in the Tham Luang rescue,

1.The 12 boys and their coach getting stuck in the cave.

2.The Doctor who sedated them with Ketamine so they could be rescued by the divers. (he arrived late on the scene 7th July after a request from Vern's team) - Universal, I think have an option on this story, a book is being written at present.

3.The Mastermind of the rescue Vern Unsworth, Vern using his Northern English character put his life on the line, and head on the chopping block, by him and his Thai partner convincing the Thai Government to fly in his specialist team from England to help find the boys in a race against time. The Thai Navy didn't have the equipment or expertise for cave diving to get to the children, one of them died in the process, and with orders from up above it was left to Vern and his team to bring them out against all the odds with a probability of saving one life would be a good result. They were under a huge amount of pressure with the whole world watching, some other divers who came gave up and left

the country(only one diver that I know of) . They also had to rescue four other people from the Water authoritiesOn 28th June and assist four Thai divers who ran out of oxygen and couldn't get back.

I thought this dramatic story would of been right up your street but I know how busy must be. I hope this further information is of interest.

Look forward to hearing from you.

Best,
Will

Vern Unsworth

Veteran caver Vern Unsworth is 63 years old and is originally from Lancaster, England. Now living in Mae Sai, Thailand with his partner Tik he received an emergency call from locals that twelve boys and their coach had gone missing in Tham Luang Cave.

It was June 23rd and what turned out to be Day1 of the world's biggest cave rescue. Vern together with locals and his caving equipment rushed to Tham Luang cave to look for the boys.

Vern was the mastermind behind the Wild Boar rescue mission at Tham Luang cave, Thailand. He has an incredible story to tell, probably one of the greatest stories ever. Without him none of the football team would be alive. Knowing just about every inch of Tham Luang his character and his and his partners sheer persistence persuaded the powers that be in Thailand to allow him to fly in his team of UK divers and later Australian divers. Directed by Vern, his team found the boys alive after 13 days in the cave. The rescue mission co- directed by Vern and his team which also included key local specialists who made the water recede and brought in mountaineering and also was a huge success saving the life of all twelve boys and their coach.