QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (admitted *pro hac vice*)
  alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
  jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON MR. UNSWORTH,<br><br>      Plaintiff,<br><br>  vs.<br><br>ELON MUSK,<br><br>      Defendant. | Case No. 2:18-cv-08048<br><br>Judge: Hon. Stephen V. Wilson<br><br>**DEFENDANT ELON MUSK'S MOTION TO ENFORCE TRIAL SUBPOENA DUCES TECUM TO VERNON UNSWORTH**<br><br>Complaint Filed: September 17, 2018<br>Trial Date: December 3, 2019<br><br>Hearing Date:  November 25, 2019<br>Time:                3:00 p.m.<br>Courtroom:       10A |

1   PLEASE TAKE NOTICE that on November 25, 2019 at 3:00 p.m. in
2  Courtroom 10A of the above-titled Court, Defendant Elon Musk Defendant will
3  move this Court for an order compelling Plaintiff Vernon Unsworth to produce on
4  November 29, 2019 those documents described in the Subpoena to Appear and
5  Testify at a Trial in a Civil Action, which was duly served on November 12, 2019.
6   This motion is made pursuant to this Notice of Motion, the concurrently-filed
7  Memorandum of Points and Authorities, the Declaration of Michael Lifrak (and all
8  exhibits thereto), the [Proposed] Orders Granting Mr. Musk's Motion to Enforce the
9  Trial Subpoena Duces Tecum to Vernon Unsworth, the files and records in this
10 action, and any such additional argument or materials as may be submitted to the
11 Court before the time of the decision in this matter.
12  This motion is made following the conference of counsel pursuant to C.D. Cal.
13 L.R. 7-3, which took place on November 5 and 6, 2019.

15 DATED: November 18, 2019          Respectfully submitted,

                                    QUINN EMANUEL URQUHART &
                                    SULLIVAN, LLP

                                    By  */s/ Alex Spiro*

                                        Alex Spiro (admitted *pro hac vice*)
                                        alexspiro@quinnemanuel.com
                                        51 Madison Avenue, 22nd Floor
                                        New York, New York 10010
                                        Telephone: (212) 849-7000

                                        *Attorneys for Defendant Elon Musk*

-1-                                                         Case No. 2:18-cv-08048
DEFENDANT ELON MUSK'S MOTION TO ENFORCE TRIAL SUBPOENA DUCES TECUM TO VERNON UNSWORTH

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................ 1

STATEMENT OF RELEVANT FACTS ..................................................................... 1

    A.    Mr. Unsworth's Persistent Failure to Produce Relevant Materials. ............................................................................................ 1

    B.    The Trial Subpoena to Mr. Unsworth Seeks Responsive Materials Known to Exist. ................................................................. 4

    C.    The Subpoenaed Materials Are Responsive To Mr. Musk's Prior Discovery Requests. ................................................................. 6

LEGAL DISCUSSION ................................................................................................. 7

I.    THE COURT HAS THE POWER TO ORDER COMPLIANCE WITH THE TRIAL SUBPOENA. ............................................................. 7

II.    THE MATERIALS MR. MUSK SEEKS ARE PLAINLY RESPONSIVE. ............................................................................................... 8

III.    MR. UNSWORTH HAS THWARTED MR. MUSK'S ATTEMPTS TO OBTAIN THESE MATERIALS IN DISCOVERY. ................................ 9

CONCLUSION .......................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvarado v. Rainbow Inn, Inc.*,
   2016 WL 10703674 (D.D.C. Feb. 5, 2016) ........................................................ 7, 10

*Gaudin v. Remis*,
   2007 WL 294130 (D. Hawaii Jan. 29, 2007) ........................................................... 8

*Hatcher v. Precoat Metals*,
   271 F.R.D. 674 (N.D. Ala. 2010) ............................................................................ 8

*Joseph P. Carroll Ltd. v. Baker*,
   2012 WL 1232957 (S.D.N.Y. Apr. 12, 2012) ..................................................... 7, 10

*nSight, Inc. v. PeopleSoft, Inc.*,
   2006 WL 988807 (N.D. Cal. Apr. 13, 2006) ............................................................ 7

*Rice v. United States*,
   164 F.R.D. 556 (N.D.Okla.1995) ............................................................................ 8

**Rules and Regulations**

Fed. R. Civ. P. 45(a)(1)(C) ............................................................................................ 8

# INTRODUCTION

Mr. Unsworth has, at every turn, tried to prevent Mr. Musk from obtaining the evidence necessary to defend himself. Remarkably, the most harmful documents to Mr. Unsworth's case – those that depict him an unflattering light, reveal his manipulation of others, and demonstrate his pursuit of money above all else – have been produced only *after* his deposition and *after* discovery closed.

But the documents Mr. Unsworth produced after the completion of discovery provided more questions than answers. Among other things, they specifically referred to other relevant documents that Mr. Unsworth still has not produced – and refuses to produce. These documents are crucial to Mr. Musk's ability to defend himself. The Court should order Mr. Unsworth comply with the trial subpoena duces tecum that was served upon him, and produce the materials Mr. Musk has requested shortly before the start of the trial.

# STATEMENT OF RELEVANT FACTS

### A. Mr. Unsworth's Persistent Failure to Produce Relevant Materials.

Mr. Unsworth made his first production of responsive documents on August 1, 2019. This production contained fewer than 500 pages of self-serving materials, selected by Mr. Unsworth. (Declaration of Michael Lifrak ("Lifrak Decl.") ¶ 3.) Numerous categories of responsive materials – such as communications between Mr. Unsworth and individuals involved in the cave rescue efforts, communications between Mr. Unsworth and his wife, communications between Mr. Unsworth and his Thai partner, Tik, communications between Mr. Unsworth and the press, and communications between Mr. Unsworth's counsel and the press – were glaringly missing from the production set. (Lifrak Decl. Ex. 1.) After conferring on the

-1-                    Case No. 2:18-cv-08048
DEFENDANT ELON MUSK'S MOTION TO ENFORCE TRIAL  SUBPOENA DUCES TECUM TO VERNON UNSWORTH

missing materials, and on the eve of his deposition, Mr. Unsworth produced another 2,800 pages of responsive documents.[1] (Lifrak Decl., ¶ 5.)

The discovery cutoff of September 13 came and went. On September 23, 2019, Mr. Unsworth made his fourth production (his second belated production) of responsive documents. (Lifrak Decl. ¶ 7.) This production of approximately 200 pages of additional materials contained numerous critical documents, including an 82-page text conversation between Mr. Unsworth and Thanet Natisri, which contained journal-like details of Mr. Unsworth's activities during and after the rescue. This document chronicles Mr. Unsworth's attempts to monetize his role in the rescue (even by impeding the opportunities of others), and criticize the role of many who participated in the rescue, including those who risked their lives. (Lifrak Decl. Ex. 2.) This production also contained complete versions of texts between Mr. Unsworth and his wife, Vanessa, that had been produced in partial and undated format previously. (Lifrak Decl. Ex. 3.) These documents revealed conversations between Mr. Unsworth and his wife that not only paint Mr. Unsworth in an unflattering light, but also challenge his claim for damages based on the supposed pain and suffering of his family. (*Id.* at VU03413.)

These documents, produced after the close of discovery, referenced a significant number of additional responsive, unproduced materials. On September 26, counsel for Mr. Musk detailed these deficiencies in correspondence to counsel for Mr. Unsworth. (Lifrak Decl. Ex. 4.) The deficiencies included, for example, hundreds of media files that were indicated in the Mr. Unsworth's chat log with Mr. Natisri, materials related to Mr. Unsworth's relationship with his agent/representative, Will Robinson, to monetize his role in the rescue, and materials related to Mr. Unsworth's communications with agents and production

---

[1] Despite appearances of a fulsome production, however, 1900 pages of the 2800 page production was comprised of copies of the Complaint, forwarded to various members of the press. (Lifrak Decl., ¶ 6.)

studios relating to his role in the rescue, including representatives of Creative Artists Agency ("CAA"), SKG Global, Warner Brothers, and Netflix. (*Id.*)  In addition, counsel for Mr. Musk expressed concern over Mr. Unsworth's failure to produce communications with his partner, Tik, notwithstanding the fact that Tik testified in deposition that she and Mr. Unsworth communicate on the applications WhatsApp and Line. (*Id.*)

Counsel for Mr. Unsworth responded the following day, denying that there were responsive communications between Mr. Unsworth and Tik, denying that Mr. Unsworth had ever been formally represented by Mr. Robinson, denying that Mr. Unsworth had ever arrived at a deal with SKG Global or Warner Brothers, and denying that Mr. Unsworth had any correspondence with CAA. (Lifrak Decl. Ex. 5.) Counsel further indicated that because no money was generated via the relationships that did exist between Mr. Unsworth and these various entities, the relationships were non-responsive. (*Id.*).  Ultimately counsel agreed to search for additional materials despite their supposed "irrelevance and non-responsiveness." (*Id.*)

After Mr. Musk threatened to move to compel this information, Mr. Unsworth produced an additional approximately 100 pages of documents on October 4, 2019. (Lifrak Decl., ¶ 7.).  While this production did include some communications between Mr. Unsworth and Mr. Robinson, it did not include any communications with other representatives or agencies.  On November 5, counsel for Mr. Musk again outlined the many and various communications that Mr. Unsworth's documents, primarily the chat conversation with Mr. Natisri, revealed the existence of. (Lifrak Decl. Ex. 6.)  These include numerous additional emails between Mr. Unsworth and Mr. Natisri which have never been produced, as well as communications between Mr. Unsworth and Peter Ahmed of SKG Global/Warner Brothers, and additional communications between Mr. Unsworth and Mr. Robinson. (*Id.*)

Counsel for Mr. Unsworth responded that Mr. Musk's prior discovery requests did not seek this information, that the information sought is irrelevant, that the information sought does not exist, and/or that the information sought has already been produced (although no identification of such production has ever been provided). (Lifrak Decl. Exs. 7, 8.) Upon further discussion regarding the responsiveness of the information, the parties could not reach agreement for additional production. (Lifrak Decl. ¶15.)

### B. The Trial Subpoena to Mr. Unsworth Seeks Responsive Materials Known to Exist.

As the parties are now on the eve of trial, and desiring to stop Mr. Unsworth's endless game-play, Mr. Musk has issued a trial subpoena to Mr. Unsworth, requesting the production of specific documents that are referenced in other documents but have not been produced. (Lifrak Decl. Ex. 9.) All of the documents requested are those materials, known to exist, which Mr. Musk has previously identified to Mr. Unsworth. They all are directly related to the cave rescue and Mr. Unsworth's role. The subpoena requests include:

1. The email communications between [Mr. Unsworth] and Thanet Natisri, which took place on or about July 4, 2018, as referenced at VU03319.

2. The email communications between [Mr. Unsworth] and Thanet Natisri, which took place on or about August, 3, 2018, as referenced at VU03329.

3. The email communications between [Mr. Unsworth] and Thanet Natisri, which took place on or about September 16, 2018, as referenced at VU0334.

4. The email communications between [Mr. Unsworth] and Thanet Natisri, which took place on or about October 27, 2018, as referenced at VU03363.

5. The email communications between [Mr. Unsworth], Dr. Craig Challen, Dr. Richard Harris, and/or Ellis Henican, which took place on or about November 13, 2018, as referenced at VU03370.

6. The email communications between [Mr. Unsworth] and Will Robinson, which took place on or about November 13, 2018, as referenced at VU03370.

7. The email communications between [Mr. Unsworth] and anyone at Creative Artists Agency, or "CAA," which took place on or about November 13, 2018, as referenced at VU03371.

8. The email communications between [Mr. Unsworth] and Thanet Natisri, which took place on or about November 16, 2018, as referenced at VU03372.

9. The email communications between [Mr. Unsworth] and Thanet Natisri, which took place on or about November 16, 2018, as referenced at VU03372

10. The email communications between [Mr. Unsworth] and Thanet Natisri, which took place on or about November 17, 2018, as referenced at VU03373.

11. All text communications sent via the text chat group "Vern - Tham Luang Team," as referenced in VU00600.

12. All communications between [Mr. Unsworth] and Ahmed (Peter) Nafis, as referenced in VU00602-03, VU00629, VU03391-92.

13. All media, including but not limited to, photos, videos, stickers, emojis, and/or other symbols that are identified in documents VU00579-591, VU00592, VU00593, VU00600-602, VU00603-605, VU00610, VU00615-616, VU00629-634, VU00639-662, VU00663-730 VU03314-3394, which have not yet been produced in this action.

### C. The Subpoenaed Materials Are Responsive To Mr. Musk's Prior Discovery Requests.

For ease of reference, and the sake of clarity, the materials sought by the trial subpoena to Mr. Unsworth are responsive to the following requests for production issued to Mr. Unsworth in this case. (Lifrak Decl. Ex. 10.) They are no surprise.

**REQUEST FOR PRODUCTION NO. 1:**

All documents or communications concerning the Cave Rescue, including but not limited to Your role or roles in the Cave Rescue.

**REQUEST FOR PRODUCTION NO. 2:**

All communications between You and any Person involved in the Cave Rescue, including but not limited to communications with Richard Stanton, Rob Harper, John Volanthen, members of the British Cave Rescue Council, Ali Comkeaw, Nikorn Phopluechai, Hataiwan Patisan, members of the Thai navy, or Thai government officials.

**REQUEST FOR PRODUCTION NO. 11:**

All documents concerning the allegations in paragraph 44 of the Complaint that your surveys of the Cave System helped find the Boys, including but not limited to documents, surveys, studies, or maps You created or You caused to be created concerning the Cave System.

**REQUEST FOR PRODUCTION NO. 19:**

All documents concerning any damage You claim to have suffered as a result of Mr. Musk's actions, including the "substantial and permanent damage" You allege in paragraph 130 of the Complaint.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and communications concerning any offers to publish Your version of events in relation to the Cave Rescue, including but not limited to documents showing amounts offered for publication, drafts of such publications, and communications with publishers.

**REQUEST FOR PRODUCTION NO. 26:**

All documents concerning any other actual or potential income you have earned in any way connected to the Cave Rescue.

**REQUEST FOR PRODUCTION NO. 47:**

To the extent not covered by the other Requests herein, all documents authored by You, provided to You, or read by You concerning: (a) Mr. Musk; (b) this Litigation; or (c) any of the allegations underlying the Complaint, including but not limited to the injuries or damages that You allege.

## LEGAL DISCUSSION

### I. THE COURT HAS THE POWER TO ORDER COMPLIANCE WITH THE TRIAL SUBPOENA.

Mr. Musk requests that the Court order production of the materials outlined above, and that Mr. Unsworth be required to produce them no later than November 29, 2019. Trial courts have enforced trial subpoenas requiring a person to bring documents to trial where the subpoena is narrowly focused and does not seek to introduce new matters into the case, where the materials are needed for trial preparation, or where the materials are sought for impeachment. *See, e.g.*, *Alvarado v. Rainbow Inn, Inc.*, 2016 WL 10703674, at *1 (D.D.C. Feb. 5, 2016)(ordering compliance with trial subpoena "[b]ecause the information sought in the subpoena is narrow in scope and appears directed solely at impeachment"); *Joseph P. Carroll Ltd. v. Baker*, 2012 WL 1232957, at *3 (S.D.N.Y. Apr. 12, 2012) (enforcing a trial subpoena for documents that was "limited in scope and will not lead to additional discovery or delay the trial date of this action…."); *See also nSight, Inc. v. PeopleSoft, Inc.*, 2006 WL 988807, at *2 (N.D. Cal. Apr. 13, 2006) ("Trial subpoenas ... include requests for attendance at a hearing or trial ... and may be used in narrow circumstances to secure documents.")(citations omitted).

All materials sought by Mr. Musk's trial subpoena are covered by his previous discovery requests served on Mr. Unsworth during the discovery period.

The issue here is not new requests for production, but rather the newly discovered existence of specific documents that are responsive to the prior requests. Accordingly, these requests do not circumvent the Court's discovery deadline or otherwise run afoul of limitations on the use of trial subpoenas. *See Gaudin v. Remis*, 2007 WL 294130 at *4 (D. Hawaii Jan. 29, 2007) (where hearing subpoena sought an update of previously requested and provided information, the subpoena at issue was not discovery in violation of discovery restrictions). *Cf. Hatcher v. Precoat Metals*, 271 F.R.D. 674, 675 (N.D. Ala. 2010) (although the Court confirmed that trial subpoenas duces tecum are permitted, it quashed the subpoena seeking basic requests that should have been made under Rule 34); *Rice v. United States,* 164 F.R.D. 556, 558 n. 1 (N.D.Okla.1995) (Rule 45 subpoena duces tecum cannot be used as a form of discovery to circumvent deadlines).

Accordingly, such materials are within the Court's discretion to order under Federal Rule of Civil Procedure 45(a)(1)(C).

## II. THE MATERIALS MR. MUSK SEEKS ARE PLAINLY RESPONSIVE.

The trial subpoena requests to Mr. Unsworth are narrowly tailored and redundant to document requests Mr. Musk served in discovery. Nine of the thirteen subpoena requests to Mr. Unsworth seek specific communications between him and other individuals that participated in the cave rescue, about topics related to the rescue. These communications are directly responsive to Mr. Musk's Requests for Production Nos. 1 and 2. Three of the thirteen subpoena requests seek specific communications between Mr. Unsworth and agents or representatives pertaining to his attempts to monetize his role in the rescue. These communications are directly responsive to Mr. Musk's Requests for Production Nos. 25 and 26. The final request seeks media that had been sent as a part of the chat conversations Mr. Unsworth had already produced, and is critical to the ability to read and understand

such chat conversations.[2]

The subpoena requests also identify the precise materials sought thereby.  The requests specify the date the communications were made, and provides bates numbered references for Mr. Unsworth to locate the materials.  Accordingly, the burden of locating and producing these materials is small.

### III. MR. UNSWORTH HAS THWARTED MR. MUSK'S ATTEMPTS TO OBTAIN THESE MATERIALS IN DISCOVERY.

As described above, one of the most important documents in the case is Mr. Unsworth's 81 page chat correspondence with Mr. Natisri.  This document, produced after discovery on September 23, 2019, is critical to Mr. Musk's defense.  In it, Mr. Unsworth consistently diminishes others who participated in the rescue, including those who risked their lives, stated that he would "make the divers suffer" because they were getting more fame than him, took issue with the performance of the Thai Navy Seals (one of whom lost his life in the rescue, and criticized the decision-making of the Chiang Rai regional governor.  (Lifrak Decl. Ex. 2.) (VU03322, 27, 32, 37, 45, 59, 70-71).  Counsel for Mr. Unsworth has implied that the delayed production of this key document was due to the fact that the communication was made via the application LINE.  (Lifrak Decl. Ex. 5.)  However, that does not explain why no other communications with Mr. Natisri, whom Mr. Unsworth worked closely with during the cave rescue, and kept in close regular contact after the rescue, was never produced.

Indeed, the chat correspondence details numerous emails exchanged between them.  Shockingly, however, Mr. Unsworth has produced only one such communication, and did not do so until October 4, 2019.  This communication depicts Mr. Unsworth in an unflattering light, as he describes his attempts to thwart

---

[2] The materials Mr. Musk has subpoenaed may also be responsive to Requests for Production Nos. 11, 19, and 47, based on the context in which reference to the materials was made.

the efforts of rescue divers Dr. Craig Challen and Dr. Richard Harris to monetize the story of their participation in the rescue.³ (Lifrak Decl. Ex. 11.) What is significant is not that this document was finally produced, but that it was withheld for so long. Thus, with good reason, Mr. Musk is highly concerned about the content of the unproduced communications with Mr. Natisri, and others. These documents, along with the other specific communications requested, are critical for Mr. Musk's continued trial preparations, and may prove to be key to the cross-examination of Mr. Unsworth and should be ordered produced by the Court. *See Alvarado*, 2016 WL 10703674, at *1; *Joseph P. Carroll Ltd.*, 2012 WL 1232957, at *3.

Accordingly, the Court should Order Mr. Unsworth's full compliance with the trial subpoena duces tecum.

## CONCLUSION

For the aforementioned reasons, the Court should grant Mr. Musk's motion enforcing the trial subpoena duces tecum to Vernon Unsworth.

DATED: November 18, 2019            Respectfully submitted,

                                                  QUINN EMANUEL URQUHART
                                                      & SULLIVAN, LLP

                                  By     */s/ Alex Spiro*
                                                 Alex Spiro

                                     *Attorneys for Defendant Elon Musk*

---

[3] Mr. Musk has also requested specific communications between Mr. Unsworth, Dr. Harris, Dr. Challen, and the doctors' agent, Ellis Henican, that might shed further light on Mr. Unsworth's attempts to thwart their deal. (Lifrak Decl. Ex. 9.)