# EXHIBIT 3



DTAC 🔵 ▶ ☁                          🔊 ‖ 79% 🔋 10:37

← **Dani**
+44 7745 817248                        📞    ⋮

Not looking good 5 days
and to much rain

                                        13:34

Wednesday, 4 July 2018

Hi still working on how
we get the kids out after
locating them in good
health and spirits. Don't
be surprised if the press
try to contact you V

                                        15:16

Friday, 13 July 2018

Hi I apologise if by any
chance you and Dani are
being tracked down by
the media take care V

                                        16:24

🖇    Type message              ☺    ➤

        ◁          ○          □

 DTAC  80% 10:40

← **Dani**
+44 7745 817248  

Hi, I wouldn't say pestered, I would say contacted, but as they got a no comment response they gave up! Have they contacted any of your family? Mail online. Fancy that, you meeting the PM. Difficult day for us yesterday at work as we were both the subject of huge discussion and whispering in corners, not pleasant but inevitable...someone always has an opinion! It's certainly caused a great furore!

Type message   

  



DTAC

83% 10:50

**Dani**
+44 7745 817248

October with pre-trial om the 7th. Be prepared not to speak with anyone from the media/press. Stay strong V 💪💪💪

19:14

I read about it in the paper prior to you contacting me. At least a court date is set. Please give us the heads up on any press coverage or any up - dates so that we are prepared. Thanks V

23:37

Thursday, 30 May

Hi can you let me have

Type message

DTAC

**Dani**
+44 7745 817248

14:07

Apparently they mentioned both me and Dani not by name saying we were devastated, as I have not spoken to them and said anything I wonder where they got that comment. Dani must not get dragged into this! V

22:42

Thursday, 19 July 2018

Got home to find a note through the door from mail on line asking me for a comment re the apology and asking when

Type message

DTAC   📶80% 🔋 10:39

← **Dani**
+44 7745 817248

 Hi, I was shocked by what has happened and urge you to be very measured and professional in what you say to the press. Do not lose your cool.
I was contacted by the press at school and at home and have said no comment. I hope the rest of your family will do the same!
Dani is understandably terribly upset by all of this too.
He has made an awful error by saying that and it affects us all. You must

Type message



DTAC 💬 ⯈ ☁                                    📶 81% 🔋 10:44

← **Dani**
+44 7745 817248                          📞   ⋮

next week V

20:41

I'm not surprised, I think it's taken its toll on us all one way or another. There's been stuff on local St albans Facebook pages with somebody asking whether anyone knows you or can give any info. A friend at work told me and apparently complained and the page was removed. I didn't see it but obviously they're fishing! V

20:46

Type message                        ☺  ⯈



DTAC 💬 🐦 ☁️     🛜 📶 80% 🔋 10:41

← **Dani**
+44 7745 817248    📞   ⋮

17:00

I know but she's been through so much. I'm sure you understand how much we have all been affected. V

17:52

I understand and I also still hurt V

17:52

Dani just texted to say there's something in the mail not sure I'm it's wife or mother says musk should be shot, what the fxxk is she doing!

17:54

📎   Type message    ☺   ➤

◁    ○    □



DTAC 🗨 ✅ ☁                                    📶 .ᵢᵢᵢ 79% 🔋 10:37

← **Dani**
+44 7745 817248

Gas 248901
E/Low 53635
E/Norm 42638
Thanks V

07:36

Wednesday, 27 June 2018

Hi, saw you on the BBC
news this morning from
Thailand. Hope to god
you are able to help find
those kids, if anyone can,
you can! Good luck. V

13:26

😫😫😫

13:33

Type message   ☺  ➢



DTAC 💬 ▷ ☁                                    📶 .↕82% 🔋 10:45

← **Dani**
+44 7745 817248                                    📞    ⋮

Hi Defamation papers will be lodged in California Courts <u>tomorrow</u> so expect a media frenzy. Ignore phone calls or reporters possibly turning up on the doorstep. V 🙏

18:41

Thank you for the heads up, I just hope it dosen't affect Dani as badly as it has done. It's  pretty unpleasant for all of us. Please try your best to keep our names out of the press if you possibly can.

Type message                                    ☺    ▷

◁          ○          □





DTAC 💬 ▷ ☁                                    📶 .ıll 79% 🔋 10:38

← **Dani**
   +44 7745 817248                           📞        ⋮

Are you involved with the
press conference back
here or are you still there?

21:21

Saturday, 14 July 2018

No unfortunately. I am
back on Thursday night.
Been in meetings with
various Government
officials at a High level.
My 60 day tourist visa
was only until 21st July. V

12:20

Sunday, 15 July 2018

Thought they might have
given you citizenship after
what you did!

Type message              ☺    ▷

◁        ○        □

Exhibit 3, Page 100
VU00465



DTAC 📶 81% 🔋 10:42

← **Dani**
+44 7745 817248

18:57

I know it's been so unpleasant and I'm not surprised she's so upset. Please send her my best.

19:13

You should call her !!!

19:14

I am in St Albans tomorrow. It's important you understand what could happen with Musk dirty tricks !!!V

20:07

Wednesday, 1 August 2018

Your account ending

Type message

"Conversation between Me and Dani, Dani",,,,,
Name,Phone,Content,Date,MMS Subject,MMS Link
Dani,4.48E+11,"Hi, saw you on the BBC news this morning from Thailand. Hope to god you are able to help find those kids, if anyone can, you can! Good luck. V ",6/27/2018 13:26,,
Me,,◆◆◆,6/27/2018 13:33,,
Me,,Not looking good 5 days and to much rain,6/27/2018 13:34,,
Me,,Hi still working on how we get the kids out after locating them in good health and spirits. Don't be surprised if the press try to contact you V,7/4/2018 15:16,,
Me,,Hi I apologise if by any chance you and Dani are being tracked down by the media take care V,7/13/2018 16:24,,
Dani,4.48E+11,Surprisingly no! ,7/13/2018 18:21,,
Me,,That's good I'm well out of my comfort zone with them !!! V,7/13/2018 19:07,,
Generated by GilApps SMSShare 2,,,,,

"Conversation between Me and Dani, Dani",,,,,
Name,Phone,Content,Date,MMS Subject,MMS Link
Dani,4.47746E+11,Are you involved with the press conference back here or are you still there?,7/13/2018 21:21,,
Me,,No unfortunately. I am back on Thursday night. Been in meetings with various Government officials at a High level. My 60 day tourist visa was only until 21st July. V,7/14/2018 12:20,,
Dani,4.47746E+11,Thought they might have given you citizenship after what you did!,7/15/2018 0:39,,
Me,,Little chance and No chance and it never crossed my mind V,7/15/2018 14:31,,
Generated by GilApps SMSShare 2,,,,,

"Conversation between Me and Dani, Dani",,,,,

Name,Phone,Content,Date,MMS Subject,MMS Link

Dani,4.47746E+11,"Hi, I was shocked by what has happened and urge you to be very measured and professional in what you say to the press. Do not lose your cool.

I was contacted by the press at school and at home and have said no comment. I hope the rest of your family will do the same! Dani is understandably terribly upset by all of this too.

He has made an awful error by saying that and it affects us all. You must take whatever action is necessary. V",7/17/2018 12:10,,

Me,,Hi who was it that pestered you and Dani? V,7/18/2018 12:33,,

Dani,4.47746E+11,"Hi, I wouldn't say pestered , I would say contacted , but as they got a no comment response they gave up! Have they contacted any of your family? Mail online.

Fancy that, you meeting the PM.

Difficult day for us yesterday at work as we were both the subject of huge discussion and whispering in corners,not pleasant but inevitable...someone always has an opinion!

It's certainly caused a great furore!

Please remember to be very careful in what you say as it not only impacts on you but also us. It's too easy to lose it when challenged or accused of something utterly untrue.

V

",7/18/2018 13:22,,

Me,,I understand and I will be careful with my words. Yes meeting with the PM on Tuesday. Yes they pestered mum. Sorry about this V,7/18/2018 13:34,,

Dani,4.47746E+11,"Apparently they mentioned both me and Dani not by name saying we were devastated, as I have not spoken to them and said anything I wonder where they got that comment. Dani must not get dragged into this!

V",7/18/2018 22:42,,

Dani,4.47746E+11,Got home to find a note through the door from mail on line asking me for a comment re the apology and asking when you're home. How on earth did they find me! V,7/19/2018 0:40,,

Generated by GilApps SMSShare 2,,,,,

Exhibit 3, Page 104

VU03407

"Conversation between Me and Dani, Dani",,,,,

Name,Phone,Content,Date,MMS Subject,MMS Link

Dani,4.47746E+11,"I was not surprised he apologised, he's trying very hard to save face  and save his companies from losing money!
He will learn a very valuable lesson in respecting other people or paying the price for not doing so!
Ignore my last comment, of course they can easily find me. V
",7/19/2018 3:33,,

Me,,Morning does Killigrew break up today? I will be in St Albans tomorrow. If you want to chat about what's going on with the media and
Musk let me know. I understand if you don't V,7/20/2018 12:41,,

Me,,Seeing a client. I won't come to the flat sad it's not good for Dani V,7/20/2018 17:06,,

Dani,4.47746E+11,I know but she's been through so much. I'm sure you understand how much we have all been affected. V,7/20/2018
17:52,,

Dani,4.47746E+11,"Dani just texted to say there's something in the mail not sure I'm it's wife or mother says musk should be shot, what
the fxxk is she doing! ",7/20/2018 17:54,,

Me,,Mum said nothing,7/20/2018 17:55,,

Generated by GilApps SMSShare 2,,,,,

"Conversation between Me and Dani, Dani",,,,,

Name,Phone,Content,Date,MMS Subject,MMS Link

Me,,Someone called round yesterday she said no comments nothing to say,7/20/2018 17:55,,

Me,,What mail or the Daily Mail newspaper,7/20/2018 17:56,,

Dani,4.47746E+11,Daily mail online this is awful. She must have said something for them to print that!,7/20/2018 18:04,,

Me,,I have not seen anything and she said she said nothing but at 88yrs of age!!! I have no idea what is going on. I'm not in control of the amoeba scum press ,7/20/2018 18:05,,

Me,,I have personally not spoken to any press or news media here even though they have offered £££,7/20/2018 18:32,,

Dani,4.47746E+11,"Nor me, don't do anything to harm your libel case . If you are seen to lose your rag it will not bode well. I think your mum must have said s.omething, do nothing! V",7/20/2018 21:44,,

Generated by GilApps SMSShare 2,,,,,

"Conversation between Me and Dani, Dani",,,,,
Name,Phone,Content,Date,MMS Subject,MMS Link
Me,,Mum is very upset V,7/27/2018 18:57,,
Dani,4.48E+11,I know it's been so unpleasant and I'm not surprised she's so upset. Please send her my best.,7/27/2018 19:13,,
Me,,You should call her !!!,7/27/2018 19:14,,
Me,,I am in St Albans tomorrow. It's important you understand what could happen with Musk dirty tricks !!!V,7/27/2018 20:07,,
Generated by GilApps SMSShare 2,,,,,

"Conversation between Me and Dani, Dani",,,,,
Name,Phone,Content,Date,MMS Subject,MMS Link
Me,,Hi I am in St Albans tomorrow free after 1 o'clock let me know if you wish to meet up. I understand if the answer to NO same goes for
Dani ◆ V ,8/17/2018 23:57,,
Dani,4.47746E+11,I'm afraid we are away this weekend. V,8/18/2018 0:14,,
Me,,C'est la vie never mind V,8/18/2018 0:14,,
Me,,Hi just to let you know that Musk is trying to lure us out. The Datamation papers will be lodged in the California courts very soon. If
any media tries to call you or Dani politely tell them to go away sorry V,8/29/2018 17:15,,
Me,,Defamation papers,8/29/2018 18:04,,
Dani,4.47746E+11,"Mail online just knocked on my door, said no thank you and shut it! V",8/29/2018 19:50,,
Generated by GilApps SMSShare 2,,,,,

"Conversation between Me and Dani, Dani",,,,,
Name,Phone,Content,Date,MMS Subject,MMS Link
Me,,◆◆◆◆◆,8/29/2018 19:53,,
Dani,4.47746E+11,"Please tell your mum to just say no comment and either hang up or close the door instead of speaking! It's ill advised to say anything, however minor!
Just read it online, looks like he's trying to implode! Wazack! Definitely hoping you'll make a mistake if he goads you... careful you don't!
Keep me informed V",8/29/2018 20:19,,
Me,,I'm keeping my mouth shut everything being dealt with by Lawyer's on both sides. My mum had a visit and she closed the door !!! She and Shirley and James now know what needs to happen. V,8/29/2018 20:25,,
Me,,News media been trying to speak to me since 4 o'clock this morning◆,8/29/2018 20:27,,
Dani,4.47746E+11,What does that mean?,8/29/2018 20:27,,
Me,,I've told them nothing No Comments,8/29/2018 20:27,,
Generated by GilApps SMSShare 2,,,,,

"Conversation between Me and Dani, Dani",,,,,

Name,Phone,Content,Date,MMS Subject,MMS Link

Me,,Hi my lawyer Mark Stephens CBE has offered both you and Dani his full support. If you think this would help let me know and I will put you in touch. He's a lovely guy and will help you through the shitty press harassment. V,9/6/2018 15:44,,

Dani,4.47746E+11,Thank you much appreciated. How's it all going? ,9/15/2018 20:39,,

Me,,I'm frazzled and very tired just need to get back to normal. The defamation papers are being lodged in a California court early next week V,9/15/2018 20:41,,

Dani,4.47746E+11," I'm not surprised, I think it's taken its toll on us all one way or another.

There's been stuff on local St albans Facebook pages with somebody  asking whether anyone knows you or can give any info. A friend at work told me and apparently complained and the page was removed. I didn't see it but obviously they're fishing! V",9/15/2018 20:46,,

Me,,Hi Defamation papers will be lodged in California Courts tomorrow so expect a media frenzy. Ignore phone calls or reporters possibly turning up on the doorstep. V◆,9/17/2018 18:41,,

Dani,4.47746E+11,"Thank you for the heads up, I just hope it dosen't affect Dani as badly as it has done. It's  pretty unpleasant for all of us. Please try your best to keep our names out of the press if you possibly can.

Was it you or your girlfriend who gave the press the pictures of you both together? Also do they know we are still married and were when you were living with her as she said you'd been together for 7 years? V

",9/17/2018 23:43,,

Generated by GilApps SMSShare 2,,,,,

"Conversation between Me and Dani, Dani",,,,,
Name,Phone,Content,Date,MMS Subject,MMS Link
Me,,Thanks. At age 64 very quiet day ◆ V,3/7/2019 13:17,,
Dani,4.47746E+11,"Hi, hope you're well. I had a letter from e-on to say that the fixed tariff is coming to an end on 31/5/19. New tariff will
be sent soon. They need to be contacted before the 31 or standard rates will apply without any discounts.
Not sure if they are the cheapest supplier? I'll ask around to see if there are any other better deals, although I'm sure you'll do this.
Hope life is treating you well. When is your award ceremony? V",4/15/2019 23:02,,
Me,,Hi I'm ok and hope you are both ok. Yes received email from them. I need to review and decide what's best. MBE ceremony on 12th
June but at the moment up in the air !!! take care V◆◆,4/16/2019 8:01,,
Me,,HAPPY EASTER a warm EBH for a change V ◆◆◆◆,4/21/2019 15:13,,
Dani,4.47746E+11,"Same to you, the first hot one for a while V",4/22/2019 4:05,,
Me,,Hi won the 1st round against MUSK in the states. Judge ruled and denied his attempt for a Motion to Dismiss. Written ruling out soon.
Next my Lawyer's will in Los Angeles will bash him into submission under oath ◆,4/27/2019 17:03,,
Generated by GilApps SMSShare 2,,,,,

# EXHIBIT 4

| | |
|---|---|
| **From:** | Alex Spiro |
| **Sent:** | Thursday, September 26, 2019 12:40 PM |
| **To:** | Lin Wood |
| **Cc:** | Matt Wood; Nicole Wade; Jonathan Grunberg; Taylor Wilson; Chris Chatham; Mark Stephens, CBE; Adam Fellows; Alex Bergjans; Jeanine Zalduendo; Robert Schwartz; Michael Lifrak |
| **Subject:** | Re: Response to Musk MSJ |

Lin,

I will respond to your questions and comments about the experts in due course but the recent production has created a pressing and significant issue.

On Monday September 23, 2019, your firm served its third supplemental production of documents, well after the discovery cutoff and long after we'd deposed your client. In the email serving the production, Taylor represented that "[w]ith the production of these documents, Plaintiff has completed his production and responded to each of Defendant's meet and confer requests." That is not true. You continue to withhold responsive documents. They should be produced immediately. Moreover, given that these holes continue to exist after you represented that the production is complete, we are concerned about the preservation, collection, and review process that Mr. Unsworth and your firm have undertaken in this case.

Perhaps most troubling and puzzling is the fact that despite the reality that it was your and Mr unsworth's decision to bring suit well over a year ago, no one bothered to collect responsive documents (or review them) at the outset.

**Mr. Unsworth Produced No Instant Messages Between Him and Tik**

Mr. Unsworth's partner, Tik, testified in deposition that she and Mr. Unsworth communicate on WhatsApp and Line. Yet, we have not received any chat logs or documents related to their communications on either application. In fact, Mr. Unsworth has only produced three emails between him and his partner, Tik. He has produced no other electronic communications between the two of them.

The absence of these chats from your production is concerning. As your production makes clear, Mr. Unsworth frequently uses these applications to chat with his friends and fellow rescue volunteers about the Thai Cave Rescue, opportunities arising from his role in the rescue, Mr. Musk, and this lawsuit. Mr. Unsworth has produced (belatedly) around 100 pages of chats between him and friends, and zero between him and his partner (even though we know they used them to communicate). Given the volume of responsive chats with other persons, Tik's testimony, and the fact that Mr. Unsworth and Tik live apart for a substantial portion of the year, Mr. Unsworth appears to be withholding responsive communications between him and Tik.

**Mr. Unsworth Produced 100 Pages of Key Documents Well After His Deposition and Eleven Days After the Discovery Cut-Off**

On Monday, you produced 100 pages of documents and communications, which should have been produced earlier and in advance of Mr. Unsworth's deposition. For instance, the production included text messages between Mr. Unsworth and his estranged wife Vanessa. We requested a complete production of these messages in our August 7, 2019 meet

and confer letter and you agreed to produce them on our August 9, 2019 call. It is unclear why it took nearly one-and-a-half months to produce these documents. But as a result, we were unable to question either Mr. Unsworth or Vanessa about them at their depositions.

Also on Monday, you produced 81 pages of chat logs between Mr. Unsworth and Thanet Natisri. These chats contain probative information relating to Mr. Unsworth's reputation, credibility, and potential damages. The messages include numerous references to Mr. Musk and this lawsuit. They also identify financial opportunities Mr. Unsworth received after Mr. Musk's statements that are relevant to testing the purported harm to Mr. Unsworth's reputation. Again, there is no justification for your having withheld these relevant chats from Mr. Unsworth's earlier productions. They could and should have been collected and produced with the other chat logs Mr. Unsworth produced in August, before his deposition.

**<u>Additional Missing Documents</u>**

Your last production also identifies relevant documents and communications that you have not produced. Mr. Unsworth's chat log with Mr. Natisri shows that the two exchanged 632 photographs, 491 "stickers", 12 video files, and 37 files. This media cannot be viewed in the format for which you produced the chat log. Please produce all chats in a format that allows us to view all photographs, videos, sticker, and other files that Mr. Unsworth received and exchanged in all of these chats.

Mr. Unsworth's chats with Mr. Natisri also reference other responsive documents and communications that you have not produced. For instance, on November 13, 2018, Mr. Unsworth told Mr. Natisri that he retained an agent/representative, Will Robinson, to assist him negotiate film rights. However, Mr. Unsworth has produced only one communication involving his agent (an email with an author in which Mr. Robinson is copied) and no other documents relating to this relationship. According to the chats, more communications exist that you have not produced. *See* VU03370 ("You should see the email I've just received from Dr Harry and Dr Craig book writer. They NEED ME SO SO MUCH. Sent it on to my agent").

Mr. Unsworth also describes emails he received from agents and studios relating to his role in the Thai Cave Rescue. On November 13, 2018, Mr. Unsworth told Mr. Natisri that he had received an email from CAA. You have failed to produce that email. On November 15, 2018, Mr. Unsworth messaged Mr. Natisri that he sent him an email to put him in contact with Mr. Robinson. Again, you have failed to produce that email. Mr. Unsworth also claims in these chats that he has had a number of meetings and communications with representatives from Warner Brothers, but again, you have failed to produce any documents constituting or relating to these communications.

All of these referenced communications and documents are responsive to Mr. Musk's RFP No. 26 and should have been produced.

The absence of a significant number of responsive documents (including communications between Mr. Unsworth and Tik) from your purportedly "complete" production suggests either that key documents were deleted or never collected in the first place. We ask that, consistent with your obligations under the Federal Rules of Civil Procedure and your responses to Mr. Musk's document requests, all of these documents be produced promptly.

Please let us know by tomorrow evening, Friday September 27, 2019, if you will be producing these documents and by when.

Alex


Sent from my BlackBerry - the most secure mobile device
 **From:** lwood@linwoodlaw.com

**Sent:** September 26, 2019 10:33 AM
**To:** alexspiro@quinnemanuel.com
**Cc:** mwood@wshllp.com; nwade@linwoodlaw.com; jgrunberg@linwoodlaw.com; twilson@linwoodlaw.com;
chris@chathamfirm.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.com;
alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com;
robertschwartz@quinnemanuel.com; michaellifrak@quinnemanuel.com
**Subject:** Re: Response to Musk MSJ

Alex,

One more quick question - given the detailed expert reports provided to you by Mr. Unsworth's experts, how
much time do you wish to block off for each deposition?

Thanks.

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Sep 26, 2019, at 10:33 AM, Lin Wood <lwood@linwoodlaw.com> wrote:

> Alex,
>
> I have not refused to make these witnesses available to you. You first made the request at 9:30
> pm last night. Give me reasonable time to work through your request in order to respond. I hope
> to do so later today.
>
> Plaintiff adhered to the scheduling order and the experts were timely identified. Any suggestion
> to the contrary is dead wrong.
>
> Unlike Musk, my client has adhered to the letter and spirit of the Federal Rules relating to
> discovery.
>
> As I speak with the experts in order to respond to your demand of last night, please confirm that
> Musk will be responsible for paying for any necessary travel expenses for the depositions
> incurred by the deponents. Please note that Mr. Jansen resides in Qatar.
>
> Also, please confirm that Musk will pay these experts for their time spent preparing for the
> requested depositions, traveling to and from the depositions, and for the time spent being
> deposed.

Thanks.

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Sep 26, 2019, at 6:32 AM, Alex Spiro <alexspiro@quinnemanuel.com> wrote:

> Lin,
>
> As in most cases, you disclosed your experts at the close of fact discovery. That
> made it impossible for us to depose them earlier. The court expects you to make
> them available for deposition (and rule 26b4a requires it). We've asked you to
> check with them for the weeks of October 21 and 28. Let us know when they are
> available during that period.
>
> We will let you know by the October 14 deadline whether we intend to call
> experts. Of course we will cooperate with a request to depose them.
>
> I want to be clear. We remain willing to allow you the extension of time to oppose
> our summary judgment motion (as always so long as it doesn't throw off the
> whole schedule). I was merely questioning whether it was really necessary given
> the various timing issues which is neither of our faults. Our request that you
> present it to the Court in the form of an unopposed request is driven by our desire
> to not convey to the Court that we, as opposed to plaintiff, are asking to encroach
> into the 14-day period the local rule requires for review of the briefs.
>
> Thx
>
> Alex
>
>
> Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com
**Sent:** September 25, 2019 11:01 PM
**To:** alexspiro@quinnemanuel.com
**Cc:** mwood@wshllp.com; nwade@linwoodlaw.com; jgrunberg@linwoodlaw.com; twilson@linwoodlaw.com;
chris@chathamfirm.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.com;
alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; robertschwartz@quinnemanuel.com;
michaellifrak@quinnemanuel.com
**Subject:** Re: Response to Musk MSJ

4

Alex,

I will provide a more fulsome response to you tomorrow. Suffice it for tonight to say that we will certainly accept subpoenas for dates we agree on with respect to any witness.

Does Musk plan to identify experts? If so, am I correct that you will cooperate with requests for their depositions? You had earlier suggested you did not think you would be identifying experts but I could be mistaken on that point or you may have changed your mind.

I wish this expert issue had been addressed before we did the consent stipulation. The order is somewhat inflexible on additional depositions beyond the discovery date. But I will be the first to say that the scheduling order has been a bit of a scheduling fiasco. I thought my request today for a 3 day extension of time by consent was entirely reasonable and fair yet you insist on putting me to the task of filing a motion and getting a ruling because of the strict language of the Court's rule and order.

I will continue to work with you in good faith on scheduling issues provided the road goes in two directions going forward.

Thanks.

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Sep 25, 2019, at 9:36 PM, Alex Spiro <alexspiro@quinnemanuel.com> wrote:

> Lin-
>
> In terms of the msj schedule, we are not comfortable changing the requirement in the Local Rules that the judge have 14 days between the filing of our reply and the hearing. It cuts into the judge's time to consider our motion. We are also are not willing to cut into our own time to respond or to change the hearing date. I think given that reality we should just leave it and not bother the court but if you file a motion to push the due dates on the opposition and reply by three days, we would not oppose so long as the above is understood. We just can't stipulate to it bc of the issues above.

In terms of experts, please provide available dates for the depositions of Mr. Rose and Mr. Jansen, particularly the weeks of October 21 and October 28. Please also confirm that you will accept service of document subpoenas for these witnesses.

Thx

Alex


Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com
**Sent:** September 25, 2019 2:36 PM
**To:** alexspiro@quinnemanuel.com
**Cc:** mwood@wshllp.com; nwade@linwoodlaw.com; jgrunberg@linwoodlaw.com; twilson@linwoodlaw.com; chris@chathamfirm.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.com; alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; robertschwartz@quinnemanuel.com; michaellifrak@quinnemanuel.com
**Subject:** Re: Response to Musk MSJ

I may be overly optimistic but I think the Court would be wiling to cut us a couple days slack on the 14 day requirement if we present him with a consent order on the dates. Let me know if it works for you and your team to present such a consent order. Then the Court will do what he wants with it. He will sign it or refuse to sign it. The consent order can include a reference to the fact that the hearing is presently set for October 28. Thanks.

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Sep 25, 2019, at 2:32 PM, Alex Spiro <alexspiro@quinnemanuel.com> wrote:

> Let me chat the team and circle back. Your proposal makes sense if it didn't back into the 14 day rule but I'll get back to you asap
>
> Sent from my BlackBerry - the most secure mobile device

**From:** lwood@linwoodlaw.com

Exhibit 4, Page 117

**Sent:** September 25, 2019 2:25 PM
**To:** alexspiro@quinnemanuel.com
**Cc:** mwood@wshllp.com; nwade@linwoodlaw.com; jgrunberg@linwoodlaw.com; twilson@linwoo
chris@chathamfirm.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@howardkennedy.c
alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; robertschwartz@quinn
michaellifrak@quinnemanuel.com
**Subject:** Re: Response to Musk MSJ

Don't you think that since you have a weekend for
your reply to what we file on the 7th that you will
not really need any additional time for the reply? If
not, I am fine with you adding reply by the 17th and
us submitting a consent order to the Judge with
those dates. He will either sign it or he will not. If
not, we are stuck with the present dates. Is he signs
it, we both have the same extra time.

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Sep 25, 2019, at 2:22 PM, Alex Spiro
<alexspiro@quinnemanuel.com> wrote:

> The 14th. So I'm genuinely trying to
> be helpful to your team but I'm
> boxed in a bit
>
> Sent from my BlackBerry - the most
> secure mobile device
>
> **From:** lwood@linwoodlaw.com
> **Sent:** September 25, 2019 2:14 PM
> **To:** alexspiro@quinnemanuel.com
> **Cc:** mwood@wshllp.com; nwade@linwoodlaw.com; jgrunberg@linwoodlaw.com; twilson@
> chris@chathamfirm.com; Mark.Stephens@howardk
> alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; robertschwartz@
> michaellifrak@quinnemanuel.com
> **Subject:** Re: Response to Musk MSJ
>
> Remind me - what is your present
> reply date?
>
> L. Lin Wood
> L. LIN WOOD, P.C.

1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Sep 25, 2019, at 2:11 PM, Alex
Spiro
<alexspiro@quinnemanuel.com>
wrote:

> The other problem
> because of Wilson's
> rules is if we give you
> an extension then we
> have less time. We
> can't work in an
> extension
>
> Sent from my
> BlackBerry - the most
> secure mobile device

**From:** alexspiro@quinnemanuel.com
**Sent:** September 25, 2019 1:57 PM
**To:** lwood@linwoodlaw.com
**Cc:** mwood@wshllp.com; nwade@linwoodlaw.com; jgrunberg@linwoodlaw.com; chris@chathamfirm.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@h alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; robert michaellifrak@quinnemanuel.com
**Subject:** Re: Response to Musk MSJ

Let me check and also
check on our filing on
Columbus day and get
back to you

Sent from my
BlackBerry - the most
secure mobile device

**From:** lwood@linwoodlaw.com
**Sent:** September 25, 2019 1:55 PM
**To:** alexspiro@quinnemanuel.com
**Cc:** mwood@wshllp.com; nwade@linwoodlaw.com; jgrunberg@linwoodlaw.com; chris@chathamfirm.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@h alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; robert michaellifrak@quinnemanuel.com
**Subject:** RE: Response to Musk MSJ

8

**[EXTERNAL EMAIL]**

---

Alex,

Understood. We will file our response on or before October 7 and you will file your reply on or before October 14. Given our agreement, do you think we are required to submit a consent order to Judge Wilson or can we simply proceed in reliance on our agreement as to those dates?

Looks like we both may possibly need to supplement after the depositions of Glover, the resolution of Mac's deposition and any ruling on our proposed discovery dispute stipulation (which I hope to send to you today or in the morning). But we can discuss and cross those bridges down the road if and when necessary, don't you think?

Thanks.

Lin

L. Lin Wood

L. LIN WOOD, P.C.

9

1180 West
Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404)
891-1402

Direct Dial: (404)
891-1406

Facsimile: (404)
506-9111

E-Mail:
lwood@linwoodlaw.
com

**NOTICE: This
communication
may contain
privileged or other
confidential
information. If you
are not the
intended recipient,
or believe that you
have received this
communication in
error, please do
not print, copy,
retransmit,
disseminate, or
otherwise use the
information. Also,
please indicate to
the sender that you
have received this
communication in
error, and delete
the copy you
received. Thank
you.**

**From:** Alex Spiro
<alexspiro@quinnem
anuel.com>
**Sent:** Wednesday,

10

September 25, 2019
1:38 PM
**To:** Lin Wood <lwood@linwoodlaw.com>
**Cc:** Matt Wood <mwood@wshllp.com>; Nicole Wade <nwade@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Taylor Wilson <twilson@linwoodlaw.com>; Chris Chatham <chris@chathamfirm.com>; Mark Stephens, CBE <Mark.Stephens@howardkennedy.com>; Adam Fellows <Adam.Fellows@howardkennedy.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Michael Lifrak <michaellifrak@quinnemanuel.com>
**Subject:** Re: Response to Musk MSJ

We can use our office. I have my own personal ice machine just so you know.

What about Oct 7, and we respond on 14. Gives you the weekend. Under Wilson rules we have

to file by 14 bc he
requires 2 wks before
hearing.

Sent from my
BlackBerry - the most
secure mobile device

**From:** lwood@linwoodlaw.com

**Sent:** September 25, 2019 1:27 PM

**To:** alexspiro@quinnemanuel.com

**Cc:** mwood@wshllp.com; nwade@linwoodlaw.com; jgrunberg@linwoodlaw.com;
chris@chathamfirm.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@
alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; robert
michaellifrak@quinnemanuel.com

**Subject:** RE: Response to Musk MSJ

[EXTERNAL EMAIL]

Thanks, Alex. I will
look to hear from
you on the extension
request.

October 8 in NYC
works for me for Ms.
Glover's depo. We
can pin down
location well in
advance of that date.
Do you have any
suggestions? Your
law office would be
fine with me.

Lin

L. Lin Wood

L. LIN WOOD, P.C.

1180 West
Peachtree Street

Suite 2040

Atlanta, GA 30309

12

Telephone: [(404) 891-1402](#)

Direct Dial: [(404) 891-1406](#)

Facsimile: [(404) 506-9111](#)

E-Mail: [lwood@linwoodlaw.com](#)

**NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error, and delete the copy you received. Thank you.**

---

**From:** Alex Spiro <[alexspiro@quinnemanuel.com](#)>
**Sent:** Wednesday, September 25, 2019 1:23 PM
**To:** Lin Wood <[lwood@linwoodlaw.com](#)>
**Cc:** Matt Wood <[mwood@wshllp.co](#)

13

m>; Nicole Wade
<nwade@linwoodlaw.com>; Jonathan
Grunberg
<jgrunberg@linwoodlaw.com>; Taylor
Wilson
<twilson@linwoodlaw.com>; Chris
Chatham
<chris@chathamfirm.com>; Mark
Stephens, CBE
<Mark.Stephens@howardkennedy.com>;
Adam Fellows
<Adam.Fellows@howardkennedy.com>;
Alex Bergjans
<alexbergjans@quinnemanuel.com>;
Jeanine Zalduendo
<jeaninezalduendo@quinnemanuel.com>;
Robert Schwartz
<robertschwartz@quinnemanuel.com>;
Michael Lifrak
<michaellifrak@quinnemanuel.com>

**Subject:** Re:
Response to Musk
MSJ

Lin- an extension
shouldn't be a
problem let us just
check judge Wilson
rules and let me
confer w my team.

Also- I heard back
from Ms Glover who
informed me she is in
NY on Oct 8.
Obviously I'm fine to
do it in NY but
wanted to check

14

Sent from my
BlackBerry - the most
secure mobile device

**From:** lwood@linwoodlaw.com

**Sent:** September 25, 2019 1:08 PM

**To:** alexspiro@quinnemanuel.com

**Cc:** mwood@wshllp.com; nwade@linwoodlaw.com; jgrunberg@linwoodlaw.com;
chris@chathamfirm.com; Mark.Stephens@howardkennedy.com; Adam.Fellows@
alexbergjans@quinnemanuel.com; jeaninezalduendo@quinnemanuel.com; robert
michaellifrak@quinnemanuel.com

**Subject:** RE: Response to Musk MSJ

[EXTERNAL EMAIL]

Alex,

My turn to admit
hitting the send
button
inadvertently. Sorry.

Will you agree to a
consent order being
submitted to Judge
Wilson that extends
Mr. Unsworth's
response date by
one week, i.e., to
October 11? We will
certainly agree to
any extension you
request as to your
reply due date and
can include that in
the consent order if
you wish. The depos
next week have
simply put us in a
time crunch to meet
the present October
4 deadline.

Can you let me know
today if that is
agreeable?

15

Thank you,

Lin

L. Lin Wood

L. LIN WOOD, P.C.

1180 West
Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404)
891-1402

Direct Dial: (404)
891-1406

Facsimile: (404)
506-9111

E-Mail:
lwood@linwoodlaw.
com

**NOTICE: This
communication
may contain
privileged or other
confidential
information. If you
are not the
intended recipient,
or believe that you
have received this
communication in
error, please do
not print, copy,
retransmit,
disseminate, or
otherwise use the
information. Also,
please indicate to
the sender that you
have received this
communication in
error, and delete**

16

**the copy you
received. Thank
you.**

---

**From:** Lin Wood
**Sent:** Wednesday,
September 25, 2019
12:57 PM
**To:** Alex Spiro
<alexspiro@quinnem
anuel.com>
**Cc:** Matt Wood
<mwood@wshllp.co
m>; Nicole Wade
<nwade@linwoodlaw
.com>; Jonathan
Grunberg
<jgrunberg@linwoodl
aw.com>; Taylor
Wilson
<twilson@linwoodla
w.com>; Chris
Chatham
<chris@chathamfirm.
com>; Mark
Stephens, CBE
<Mark.Stephens@ho
wardkennedy.com>;
Adam Fellows
<Adam.Fellows@ho
wardkennedy.com>;
Alex Bergjans
<alexbergjans@quinn
emanuel.com>;
Jeanine Zalduendo
<jeaninezalduendo@q
uinnemanuel.com>;
Robert Schwartz
<robertschwartz@qui
nnemanuel.com>;
Michael Lifrak
<michaellifrak@quin
nemanuel.com>
**Subject:** Response to
Musk MSJ

Alex,

Would you agree to
a consent order to

17

L. Lin Wood

L. LIN WOOD, P.C.

1180 West
Peachtree Street

Suite 2040

Atlanta, GA 30309

Telephone: (404)
891-1402

Direct Dial: (404)
891-1406

Facsimile: (404)
506-9111

E-Mail:
lwood@linwoodlaw.
com

**NOTICE: This
communication
may contain
privileged or other
confidential
information. If you
are not the
intended recipient,
or believe that you
have received this
communication in
error, please do
not print, copy,
retransmit,
disseminate, or
otherwise use the
information. Also,
please indicate to
the sender that you
have received this
communication in
error, and delete
the copy you
received. Thank
you.**

# EXHIBIT 5



<div align="right">
L. LIN WOOD<br>
Direct Dial: (404) 891-1406<br>
lwood@linwoodlaw.com
</div>

September 27, 2019

**VIA ELECTRONIC MAIL ONLY**

Alex Spiro
alexspiro@quinnemanuel.com

      RE:    *Unsworth vs. Musk,* Case No. 2:18-cv-08048
                Discovery Meet and Confer Regarding Plaintiff's Production

Dear Alex:

      In various e-mails sent yesterday, you made several serious and unfounded accusations against Mr. Unsworth and his counsel. You accused Mr. Unsworth and his counsel of not being "direct, honest and honorable." You also strongly accused Mr. Unsworth and his counsel of filing the complaint in this action in bad faith and without properly investigating the claim "before filing a federal lawsuit, on a matter of this importance, in a very busy district, burdened with life and death emergencies." You claim that it is "stunning" that Mr. Unsworth may not have collected documents entirely irrelevant to Defendant Elon Musk's outrageous, malicious, and false accusations that Mr. Unsworth is a pedophile and child rapist who married a twelve-year-old child bride. I will address each of your actual discovery issues herein, but preface my comments by reminding you that Musk publicly asked to be sued and started preparing his defense before the complaint was filed and yet Musk is the only party to this litigation who has repeatedly provided discovery responses which are provably dishonest, incomplete and delayed.

      Before falsely and unprofessionally throwing stones and making unfounded accusations against Mr. Unsworth and his counsel, please review the attached e-mails, making clear (once again) that Musk intentionally withheld and failed to produce responsive electronic communications. The first email is between Musk and two other witnesses in this case about the cave rescue, the tube, and the resulting media coverage – indisputably responsive and relevant. Moreover, it specifically includes Musk's statements that he had been texting with his own significant other about these relevant issues, yet this text and untold others have never been produced by Musk. While it is unclear to me why the email was not produced, it is very clear why the texts were not produced if I am to believe the representations made during our meet and confer efforts: Musk destroyed his cell phone while litigation was pending and after the motion to dismiss was denied, and it appears no efforts to search his iCloud or other electronic back up have occurred, assuming Musk testified truthfully about the existence of the back-ups. If anything can be accurately described as "stunning," it is Musk's failure to engage in good faith in the discovery process by hiding and delaying production of relevant documents and identities of witnesses known to be relevant to the issues in this case. To let that happen on your watch in a case, in your words, "on a matter of this importance" and with one of the most sophisticated and tech-savvy clients in the world is inexplicable. We only recently discovered this document that Tesla

Alex Spiro
September 27, 2019
Page 2 of 5

_____

produced with less 36 hours left in the discovery period, which is an unfortunate failure on Musk's part given its obvious responsiveness and ultimate disclosure in a third-party production.

The second e-mail attached is between your client (again) and his public relations agent Juleanna Glover; a relevant witness who was never identified by the defense in this case. In it, Musk effectively lays out his legal defense and concludes, in his own words, "Still, I'm a fucking idiot." It is again unjustifiable that your client's communications with Ms. Glover were not timely produced, especially in light of the affirmative representations made to us by Musk's counsel during our August 9, 2019, meet and confer that there was no public relations individual or firm involved by Musk.

Unlike you, Alex, I did not raise this issue with you with rhetoric to the effect that "it is stunning that you failed to preserve and produce entirely relevant evidence, including allowing your client to destroy his cell phone as discovery in the case was beginning." I certainly could have used such rhetoric as it would be well-founded, especially in view of your false accusations of litigation misconduct lodged against my client and my firm. Unlike you and your client, I choose to refrain from such unnecessary and demeaning comments despite the fact that your client went out of his way to repeatedly insult me in his deposition. Unlike Musk, I have addressed this issue on the merits without throwing around unprofessional and unfounded accusations and ad hominem attacks related to the collection and destruction of evidence. More to the point, there are no spoliation issues on this side of the case (only on Musk's part) which is clear and I will make even clearer to you in this letter. As I told you last evening by email, I expect in the future that our advocacy in this case will proceed in a manner consistent with the dignity of our profession and its code of conduct.

Contrary to your rhetorical representations, Mr. Unsworth produced exactly **four** additional documents to you in our last production, which were each the product of meet and confer efforts throughout this case. One of the documents merely supplemented previously produced text messages and another document did not exist until August 2019, after our document production in this case. Hardly a sign of withholding documents. The 81-page chat with Thanet is a LINE communication; we discussed this issue in our August 9, 2019, meet and confer in which both parties' counsel agreed that we had never heard of this particular platform and we would investigate how to produce it. We did so. That meet and confer occurred only days prior to Mr. Unsworth's deposition, and my office undertook to produce various items on your list in preparation for his deposition.

Moreover, after your hunt through the 81-page chat with Thanet, the few documents you state to be missing from Mr. Unsworth's production do not appear to be responsive to the RPD you have identified, appear to be of at best *de minimis* relevance to this case, and therefore present an unreasonable burden on Mr. Unsworth. Indeed, Mr. Unsworth has clearly and unequivocally stated under oath all income he has derived in any manner related to and in the aftermath of the cave rescue, which, as you know, is only a few thousand pounds. In short, in addition to your uncalled for and grandiose accusations generally, the specific claims in your email regarding missing documents are unnecessary and based on an incorrect assessment of your document

Alex Spiro
September 27, 2019
Page 3 of 5

_____

requests to Mr. Unsworth, as well as the issue of relevance of the alleged unproduced documents.
These issues could have been, and should have been, addressed in the ordinary course of good
faith meet and confer efforts rather than being addressed by your inflammatory and accusatory
rhetoric.

Plaintiff has always met and conferred with you in good faith and been responsive to each
of your issues.  My team and my client have been extremely diligent in our efforts to collect
documents responsive to Musk's document requests.  Nonetheless, and as always, we are willing
to search for the specific documents you have referenced in your email to resolve any ongoing
discovery dispute.  As I understand your e-mail, there are three categories of documents and
supplementation you are interested in.

First, you continue to assert that because Mr. Unsworth and Tik communicate
electronically we are withholding documents.  Let me be very clear with you for the last time on
this topic: Mr. Unsworth and Tik do not have responsive or relevant electronic communications
other than what has been produced.  Moreover, to the extent your request is now to obtain their
correspondence generally and without any subject matter limitations irrespective of responsiveness
and relevance, you are not entitled to my client's personal conversations with his significant other
just because you want them; in the first instance, they must be relevant to this case and responsive
to a specific document request.  If such communications existed, they would have been produced
as demonstrated by the many other communications produced by Mr. Unsworth and which you
referenced in your email (including producing text messages with Vanessa).  Contrary to your
continued statements about Tik's testimony that she and Mr. Unsworth communicate
electronically generally (of course they do), when Tik was specifically asked about such
communications on relevant subject matter, she expressly testified that they do not e-mail about
the case, but instead:  "We phone.  We talk together.  We stay together before.  We live together
so we talked … *But we never message, do the texting and talk about this case, no*." (59:6-
59:18).  She also testified that that "no," she and Mr. Unsworth did not text during the rescue
because she was with him the whole time, and that if the media contacted her, she would just show
him her phone. (61:3-62:5).  You also know from Tik's testimony that we did not in any way
prepare her for her deposition.  (58:17-23).  You have made this request regarding these phantom
electronic communications with Tik repeatedly, and we specifically addressed it with Mr.
Unsworth on multiple occasions before and after your requests, which generated the only
additional responsive document we produced to you in our last production.  Again, unlike Mr.
Musk who testified that he destroyed his phone in the middle of this litigation, there are no
spoliation issues on this side.  We have fully responded to your accusation in this regard and if you
remain unsatisfied, you will have to address your concerns with the Court pursuant to his rules.

Second, you have asked about a series of documents and correspondence that you claim
are responsive to your RPD 26, which requested "[a]ll documents concerning any other actual or
potential income you have earned in any way connected to the Rescue."  In addition to Mr.
Unsworth's stated objections to this request, namely that it is overbroad and seeks irrelevant
information, the documents you suggest exist do not on their face appear to concern "actual or
potential income" to Mr. Unsworth as requested in RPD 26.  It is not our job to re-write Musk's

Alex Spiro
September 27, 2019
Page 4 of 5

_____

document requests to propound appropriate discovery requests or to interpret vague requests such
as "potential income"; and, again, Mr. Unsworth has stated clearly and under oath all income he
has received in any manner related to the rescue.  Nonetheless, to the extent there exist additional
documents or communications with (1) Will Robinson, (2) CAA, (3) Warner Bros., (4) Thanet
(LINE communication already produced), (5) Dr. Harry (WhatsApp already produced), or (6) Dr.
Craig concerning the cave rescue or Musk, we will promptly search for any such specific
documents and advise you as to whether such documents exist, and advise if and when they will
be produced.

     To fully respond with respect to these individuals and your false and unjustified accusations
about my office's review of documents before filing this lawsuit, I provide you with the following
information after our preliminary investigation into your meet and confer email. We are prepared
to represent to the Court the following information:

     (1) Mr. Unsworth *first* met Will Robinson in November 2018, after this case was filed, and
he never retained Mr. Robinson. It appears that Mr. Robinson approached Mr. Unsworth in
November 2018 and for a period of approximately one-week Mr. Robinson and Mr. Unsworth
worked together but that professional relationship ceased and Mr. Unsworth never signed any kind
of engagement agreement with Mr. Robinson.  Thus, my firm could not have known of his
existence at the time this case was filed and the fact no agency was formed diminishes whatever
insignificant or arguable relevance he has to this case. For clarity, Mr. Unsworth's message with
Thanet regarding Mr. Robinson was sent during a time Mr. Robinson proposed engaging Mr.
Unsworth but that engagement was never signed, there was never any income resulting from the
proposed engagement, and hence this relationship is non responsive to the request for production
you have identified;

     (2) Mr. Unsworth engaged in some preliminary discussions with individuals from a
company named SK Global, again appearing to have occurred *after* this litigation was filed, an
entity he understood to be associated with Warner Bros.; absolutely nothing ever came of that and
there was never any income associated with it; and

     (3) Mr. Unsworth does not recall receiving any e-mail from CAA, and in any case, if such
one-off e-mail correspondence exists, nothing ever came of it and there was no income associated
with it as more fully described in my client's written and oral testimony in this case.

     Finally, you have asked that we make available a production of the LINE chat with Thanet
that shows the media you have identified (I am not conceding that your representations on these
matters are accurate, but presume that you are aware without acknowledging that this entire chat
was not responsive or relevant, but produced in its entirety in good faith regardless).  Respectfully,
Plaintiff has previously raised this same issue with Defendant regarding the WhatsApp chats
produced by Defendant without the additional media, because Plaintiff was able to and did produce
his WhatsApp chats with such media. I understand from my team that we are unaware of how to
reasonably do so for LINE.  We will investigate this issue and report back to you, and if it can be
done with a reasonable expenditure of time and cost, we will do so. But discovery is a two-way

Alex Spiro
September 27, 2019
Page 5 of 5

_____

street, and we expect Musk's agreement as to all similar media, such as videos and photos, included
in all WhatsApp or other group conversations produced by him to be included in a supplemental
production.  Please confirm your acceptance and agreement on that issue.  Additionally, while I
expect we can search, collect, and produce any arguably responsive e-mail communications that
may exist as set forth herein, this issue likely cannot be resolved as quickly due to the parties'
other, ongoing commitments to this and other cases.

  In closing, as demonstrated by Musk's own failure to produce many responsive and
relevant documents, the intentional destruction of his cell phone, his failure to identify significant
witnesses, and his apparent misrepresentation to you that no public relations individual was
involved in this dispute (despite it being obvious from documents received from third parties), it
is well-known that document searches are rarely perfect. Mr. Unsworth has engaged in discovery
in good faith and Musk has not. If a few additional documents are found to exist, I remain confident
that Mr. Unsworth and his counsel have at all times acted in good faith and will continue to do so
in responding to meet and confer requests, which, again, I expect in the future to be handled in the
ordinary course without unnecessary, unproductive and sarcastic attacks on Mr. Unsworth, his
counsel or third-party witnesses. I am foregoing at this time my client's reasonable position and
objections to your document requests and, as set forth herein, we will undertake specific searches
for these specific documents you identified despite their apparent irrelevance and non-
responsiveness and will update you upon completion of that search. Again, aside from your
generalized complaining about the timing of our production of **four** additional documents, please
let me know if I have missed any issue that you raised in your September 26 emails.

  Finally, please let me know when Musk plans to supplement his production, including the
production of all of his text message(s) and emails with his girlfriend about the cave rescue, the
tube, and the ensuing media, which given the spoliation of Mr. Musk's phone, you have a duty to
collect directly from his girlfriend and all backups of his cell phone account.

          Sincerely,

          L. Lin Wood

cc: Mr. Vernon Unsworth
  Mark Stephens, CBE
  Counsel of record

| | |
|---|---|
| **From:** | Steve Davis [Steve@spacex.com] |
| **Sent:** | 7/9/2018 11:28:32 PM |
| **To:** | Elon Musk [erm@tesla.com] |
| **CC:** | Sam Teller [steller@tesla.com] |
| **Subject:** | Re: PowerWalls |

There is a running BBC blog on the rescue. Entirety of relevant entry said:

_____

Posted at1:10

**Musk's offer 'not practical' for this mission**

The head of the rescue mission, Narongsak Osotthanakorn, has been asked whether he can make use of Elon Musk's offer to help.

He says he acknowledges the help of Musk and his team, but that "the equipment they brought to help us is not practical with our mission".

"Even though their equipment is technologically sophisticated, it doesn't fit with our mission to go in the cave."

_____

Our guys don't know him so we are figuring out who he is.



On Jul 10, 2018, at 2:18 AM, Elon Musk <erm@tesla.com> wrote:

> Btw, my gf just texted me saying the head of the Thai rescue team said our solution wasn't practical and that the press is turning negative.
>
> I just woke up in Shanghai. What's happening?
>
> <image1.png>
>
> Sent from my iPhone
>
> On Jul 10, 2018, at 1:43 PM, Steve Davis <Steve@spacex.com> wrote:
>
>> We have 12 Powerwalls sitting unopened at camp. One of the Thai people asked if we could donate them to a local hospital.
>>
>> Do you want to:
>> 1. Donate all
>> 2. Donate none
>> 3. Donate 10 and let me take 2 for the boring company - would love to replace our grout car generator w a powerwall :)

TESLA000999

Subject: Fwd:
From: Dave Arnold <"/o=exchangelabs/ou=exchange administrative group
(fydibohf23spdlt)/cn=recipients/cn=29df0a7448f04984910ec59f5077bd85-dave arnold">
Date: Wed, 05 Sep 2018 16:40:27 -0700
To: Sam Teller <steller@tesla.com>


I do think we should change his email address...




-----
From: Juleanna Glover <juleanna@ridgelywalsh.com>
Sent: Wednesday, September 5, 2018 4:34 PM
To: Dave Arnold; Sam Teller; Sarah O'Brien
Subject: Fwd: Re:


RidgelyWalsh.com
202.288.2076


Begin forwarded message:


From: Elon Musk <erm@tesla.com>
Date: September 5, 2018 at 4:45:17 PM EDT
To: Juleanna Glover <juleanna@ridgelywalsh.com>
Subject: Re:


Yup

On Sep 5, 2018, at 1:06 PM, Juleanna Glover <juleanna@ridgelywalsh.com> wrote:


The podcast can be very long (3 hrs for Tyson for ex) so pick a hard stop time.  Joe
doesn't interrupt much so he will let you roll (he is funny and he curses on air as
no FCC rules for podcasts).  Pls figure out what you want to say about the SEC
matters? If you want to say more than is out there or not. Your attorneys should be
in loop on what you plan to say.   I don't imagine Joe will push you on that but
just be ready, so you don't make the investigation harder?  Also pls pls pls pls if
Thai diver comes up pls just say you think you have gotten into enough trouble on
that already and are not going to say more?

From: ERM <erm@tesla.com>
Date: Wednesday, September 5, 2018 at 3:49 PM
To: Juleanna Glover <juleanna@ridgelywalsh.com>
Subject: Re: Fwd:

No, it's because a lot of people I trust have recommended that I do this.

On Sep 5, 2018, at 4:40 AM, Juleanna Glover <juleanna@ridgelywalsh.com> wrote:

Ok - Joe Rogan it is! Is it because deGrasse Tyson just did the podcast?

RidgelyWalsh.com

202.288.2076

On Sep 4, 2018, at 6:35 PM, Elon Musk <erm@tesla.com> wrote:

Absolutely. Will have to change my email address.

On Sep 4, 2018, at 3:22 PM, Juleanna Glover <juleanna@ridgelywalsh.com> wrote:

You need to ask your teams to do this stuff.  Where the facts merit, the stories
will come out. It will often take longer than you want but if it can be done -
ethically and appropriately - it will get done.

Reporters are now sharing your email address with each other so pls let us take the
queries unless you know and deeply trust the writer.  You will continue to get more
notes trying to bait you.

RidgelyWalsh.com


202.288.2076




On Sep 4, 2018, at 6:14 PM, Elon Musk <erm@tesla.com> wrote:


Completely agree. I was told about a lot of bad things this guy did and was upset
that no one cared to investigate, so responded in what I felt was off the record. In
the past, Buzzfeed has respected emails prefaced with "off the record", but this
time they did not. It was still one of the dumbest things I've ever done and this
distraction couldn't come at a worse time.




On Sep 4, 2018, at 3:07 PM, Juleanna Glover <juleanna@ridgelywalsh.com> wrote:


We may have to have you do something on the record again soon. We just need to kill
this nonsense, speculation around your mental state. Will work with the team to come
up with strategic options that present you at length - leading the companies, in
charge, droll and self-aware. That in mind, in no universe is it OK for you to
continue to contemplate the sexual predilections of a Thai driver who insulted you
on TV.  The facts will come out and you can revisit then.

RidgelyWalsh.com


202.288.2076




On Sep 4, 2018, at 5:54 PM, Elon Musk <erm@tesla.com> wrote:

Yes, this is extremely bad. I didn't expect Buzzfeed to publish an off the record email. My intent was to have them investigate and come to their own conclusions, not publish my email directly.

There is a lot of incriminating evidence about this guy if journalists just bloody well look. I was told that he spent ~30 years traveling  several months each year to Thailand, including spending a large part of that time at known underage "sex hotels" in Pattaya Beach. There are no caves of note in the area and he had no business reason to be there.

Still, I'm a fucking idiot.

On Sep 4, 2018, at 2:43 PM, Juleanna Glover <juleanna@ridgelywalsh.com> wrote:

You know all the below already.  He is a serious guy who does impactful work on climate and it is killing him to see your impact diminished.  You do have good people to handle all of these queries (though the Thai diver matter really should just be handled by counsel - forever or until discovery yields proof of illegality).

Twitter feed last 6 days though is 😊

RidgelyWalsh.com

202.288.2076

Begin forwarded message:


From: Jeff Nesbit <jeffnesbit@gmail.com>
Date: September 4, 2018 at 5:21:17 PM EDT
To: juleanna@ridgelywalsh.com
Subject: What can I do to help?


I know I'm a broken record...but why is he emailing with a news organization himself
like this? He absolutely SHOULD NOT be doing this sort of direct media outreach
himself. It clearly blew up in his face, for no good reason. Who on his staff can
handle this for him? One or two more of these and I can guarantee that there will be
a no confidence vote on the BOD led by the big institutional investors. And he will
not survive such a vote, at least not in the public sphere. I will help you however
you tell me to help.


https://www.buzzfeednews.com/article/ryanmac/elon-musk-thai-cave-rescuer-accusations
-buzzfeed-email


Sent from my iPhone

# EXHIBIT 6

| From: | Alex Spiro |
|---|---|
| Sent: | Tuesday, November 5, 2019 3:55 AM |
| To: | 'Lin Wood'; Michael Lifrak; Robert Schwartz; Jeanine Zalduendo; Alex Bergjans; 'Taylor Wilson'; 'Jonathan Grunberg'; 'Nicole Wade'; 'Matt Wood'; 'Chris Chatham' |

Lin,

On Monday September 23, 2019, your firm served its third supplemental production of documents, after the discovery cut-off, that contained Mr. Unsworth's 81 page text log with Thanet Natisri. Mr. Unsworth's chats with Mr. Natisri reference a number responsive documents and communications that still have not been produced. I first raised this issue with you on September 26, which lead to an additional production of communications between Mr. Unsworth and his agent, Will Robinson.

Nonetheless, many communications referenced are still missing. For instance,

• On July 4, 2018, Mr. Unsworth told Mr. Natisri that he would be emailing him information related to the rescue, and then confirmed doing so. *See* VU03319.

• On August 3, 2018, Mr. Unsworth requested that Mr. Natisri email him geological maps of Thailand and Mr. Natisri confirmed doing so. *See* VU03329.

• On September 14-16, 2018, Mr. Natisri told Mr. Unsworth he would be emailing him "some useful information on the cave rescue," and confirmed doing so. *See* VU03344.

• On October 27, 2018, Mr. Unsworth requested an emailed copy of Mr. Natisri's diary of the cave rescue. *See* VU03363.

• On November 13, Mr. Unsworth told Mr. Natisri, "You should see the email I've just received from Dr Harry and Dr Craig book writer. They NEED ME SO SO MUCH. Sent it on to my agent". *See* VU03370.

• Also on November 13, 2018, Mr. Unsworth told Mr. Natisri that he sent his contact information to his agent, Mr. Robinson. *See* VU03370.

• Also on November 13, 2018, Mr. Unsworth told Mr. Natisri that he received an email from CAA. *See* VU03371.

• On November 16, 2018, Mr. Unsworth told Mr. Natisri that he sent him an email about sticking together to form a deal. *See* VU03372.

• On November 17, 2018, Mr. Natisri told Mr. Unsworth that he emailed him a link to Matt Gutman's book about the cave rescue, and Mr. Unsworth confirmed receipt. *See* VU03373.

It is clear that other documents are missing from the production as well. For instance,

• On May 9, 2019, Mr. Unsworth sent a chat message to Thanet Natisri informing him that Mr. Unsworth had created the group, "Vern - Tham Luang Team" and that he would be adding others to the group. No texts from this chat group have ever been produced. *See* VU00600.

• In the above mentioned May 9, 2019 chat with Mr. Natisri, Mr. Unsworth sent photos of the business card of Nafis (Peter) Ahmed. Although it appears that Mr. Unsworth has been in contact with Mr. Ahmed, no communications with Mr. Ahmed have been produced. *See* VU00602. *See also* VU00603 and VU00629, where Mr. Unsworth's communications with Mr. Ahmed are referenced.

• Mr. Unsworth also claims throughout his chats with friends and acquaintances, including Mr. Natisri, that he was approached by and had a number of meetings and communications with representatives from Warner Brothers, but again, no documents relating to these communications have been produced. *See, e.g.*, VU00511, VU00664, VU03361, VU003372-3, VU003391.

• Philip Sherwell emailed Mr. Unsworth on numerous occasions and not one single response communication from Mr. Unsworth was provided. *See, e.g.*, VU00478, VU00500, VU00502, VU506, VU00524, VU00533, VU00567, VU00570. Please produce or confirm that there are none.

As we have already informed you, all of these referenced communications and documents are responsive to Mr. Musk's RFP No. 26 and should have been located after a reasonable search and produced.

Please produce these missing items by **November 8, 2018**.

Finally, we confirm that you have produced the email VU03404 that is an email between Mr. Unsworth and Tik. That, in addition to VU00006, and VU00337, are the only emails in the production between Mr. Unsworth and Tik. Please certify that there are no additional communications between Mr. Unsworth and Tik, by **November 8, 2019**.


Thanks

Alex


Sent from my BlackBerry - the most secure mobile device

2

# EXHIBIT 7

| From: | Lin Wood <lwood@linwoodlaw.com> |
|---|---|
| Sent: | Tuesday, November 5, 2019 4:32 AM |
| To: | Alex Spiro |
| Cc: | Michael Lifrak; Robert Schwartz; Jeanine Zalduendo; Alex Bergjans; Taylor Wilson; Jonathan Grunberg; Nicole Wade; Matt Wood; Chris Chatham |
| Subject: | Re: your email |

**[EXTERNAL EMAIL]**

Alex,

I will forward this email to Taylor for a fulsome response. I believe we have produced all documents to you. Taylor can confirm. He is the most knowledgeable member of our team on this subject.

I do not understand the relevancy of these documents, assuming they exist and are in Vernon's control. To what issue(s) in this case are they relevant? You can respond to me with your answer and will still hear from Taylor otherwise. I believe our document production is complete and over.

It appears you are trying to conduct additional discovery to litigate some ill-defined issue over the cave rescue and perhaps the efforts of others to write a book about the rescue.  If I am correct, I will need a much better understanding of your position on relevancy because I do not see your point. You might also revisit Musk's written discovery requests which I recall did not seek this type of information. It strikes me that you are less than a month away from trial and are still looking for a defense. Good luck, especially since discovery is over and you have not pursued a stipulation for a motion to compel despite having this information since at least September 26. But we are happy to discuss with you.

Let me hear from you and then you will hear from Taylor.

On another and somewhat personal note, we missed you at the summary judgment hearing and the expert depositions. It appears Bobby Schwartz has taken over the case from you for Musk and is now Musk's lead trial counsel. You seem to be relegated to documents while Bobby is handling the key trial matters. Should we work with him in that role or is Musk planning to replace your firm with yet another set of civil litigators like he did after he lost the motion to dismiss? I hope your diminished role is not the result of your Achilles injury. That would be an unfortunate turn of events. Let me know. Thanks.

Lin

L. Lin Wood
L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, GA 30309
Telephone: (404) 891-1402
Direct Dial: (404) 891-1406
Facsimile: (404) 506-9111
E-Mail: lwood@linwoodlaw.com

Sent from my iPhone

On Nov 5, 2019, at 6:55 AM, Alex Spiro <alexspiro@quinnemanuel.com> wrote:

Lin,

On Monday September 23, 2019, your firm served its third supplemental production of documents, after the discovery cut-off, that contained Mr. Unsworth's 81 page text log with Thanet Natisri. Mr. Unsworth's chats with Mr. Natisri reference a number responsive documents and communications that still have not been produced.  I first raised this issue with you on September 26, which lead to an additional production of communications between Mr. Unsworth and his agent, Will Robinson.

Nonetheless, many communications referenced are still missing.  For instance,

- On July 4, 2018, Mr. Unsworth told Mr. Natisri that he would be <u>emailing</u> him information related to the rescue, and then confirmed doing so.  *See* VU03319.

- On August 3, 2018, Mr. Unsworth requested that Mr. Natisri <u>email</u> him geological maps of Thailand and Mr. Natisri confirmed doing so.  *See* VU03329.

- On September 14-16, 2018, Mr. Natisri told Mr. Unsworth he would be <u>emailing</u> him "some useful information on the cave rescue," and confirmed doing so.  *See* VU03344.

- On October 27, 2018, Mr. Unsworth requested an <u>emailed</u> copy of Mr. Natisri's diary of the cave rescue.  *See* VU03363.

- On November 13, Mr. Unsworth told Mr. Natisri, "You should see the <u>email</u> I've just received from Dr Harry and Dr Craig book writer. They NEED ME SO SO MUCH. Sent it on to my agent".  *See* VU03370.

- Also on November 13, 2018, Mr. Unsworth told Mr. Natisri that he sent his contact information to his agent, Mr. Robinson.  *See* VU03370.

- Also on November 13, 2018, Mr. Unsworth told Mr. Natisri that he received an <u>email</u> from CAA.  *See* VU03371.

- On November 16, 2018, Mr. Unsworth told Mr. Natisri that he sent him an <u>email</u> about sticking together to form a deal.  *See* VU03372.

2

Exhibit 7, Page 144

- On November 17, 2018, Mr. Natisri told Mr. Unsworth that he emailed him a link to Matt Gutman's book about the cave rescue, and Mr. Unsworth confirmed receipt.  *See* VU03373.

It is clear that other documents are missing from the production as well.  For instance,

- On May 9, 2019, Mr. Unsworth sent a chat message to Thanet Natisri informing him that Mr. Unsworth had created the group, "Vern - Tham Luang Team" and that he would be adding others to the group.  No texts from this chat group have ever been produced.  *See* VU00600.

- In the above mentioned May 9, 2019 chat with Mr. Natisri, Mr. Unsworth sent photos of the business card of Nafis (Peter) Ahmed.  Although it appears that Mr. Unsworth has been in contact with Mr. Ahmed, no communications with Mr. Ahmed have been produced.  *See* VU00602.  *See also* VU00603 and VU00629, where Mr. Unsworth's communications with Mr. Ahmed are referenced.

- Mr. Unsworth also claims throughout his chats with friends and acquaintances, including Mr. Natisri, that he was approached by and had a number of meetings and communications with representatives from Warner Brothers, but again, no documents relating to these communications have been produced.  *See, e.g.*, VU00511, VU00664, VU03361, VU003372-3, VU003391.

- Philip Sherwell emailed Mr. Unsworth on numerous occasions and not one single response communication from Mr. Unsworth was provided.  *See, e.g.*,  VU00478, VU00500, VU00502, VU506, VU00524, VU00533, VU00567, VU00570.  Please produce or confirm that there are none.

As we have already informed you, all of these referenced communications and documents are responsive to Mr. Musk's RFP No. 26 and should have been located after a reasonable search and produced.

Please produce these missing items by **November 8, 2018**.

Finally, we confirm that you have produced the email VU03404 that is an email between Mr. Unsworth and Tik.  That, in addition to VU00006, and VU00337, are the only emails in the production between Mr. Unsworth and Tik.  Please certify that there are no additional communications between Mr. Unsworth and Tik, by **November 8, 2019**.

Thanks

3

Alex


Sent from my BlackBerry - the most secure mobile device

4

# EXHIBIT 8

| | |
|---|---|
| **From:** | Taylor Wilson <twilson@linwoodlaw.com> |
| **Sent:** | Tuesday, November 5, 2019 1:19 PM |
| **To:** | Alex Spiro; Michael Lifrak; Robert Schwartz; Jeanine Zalduendo; Alex Bergjans; Lin Wood; Jonathan Grunberg; Nicole Wade; Matt Wood; Chris Chatham |
| **Subject:** | RE: Production |

<div style="background-color:yellow;text-align:center">**[EXTERNAL EMAIL]**</div>

Alex,

You are, again, re-writing history with your below email without regard to the facts of Plaintiff's productions or Plaintiff's good faith meet and confer efforts.

You are correct, I think, in one respect:  Defendant's prior meet and confer efforts focused solely on RFP No. 26, which states "All documents concerning any other actual or potential income you have earned in any way connected to the Cave Rescue."  It does not appear that *any* of the documents you have identified below have anything do to with that vague request, and, in fact, despite your claims to the contrary, you have already received multiple of the documents you have identified in your email.  You received them because we complied with your various prior meet and confer demands in good faith despite their questionable responsiveness and relevancy and you subsequently dropped the issue for a month prior to this morning.

Other of the stated-to-be-missing documents are premised on counsel's continued false assumptions that all communications must take place in writing rather than orally and in person.  Indeed, we have already completed searches – which you know – regarding CAA, Mr. Ahmed, Warner Brothers, and Will Robinson pursuant to your prior demands.  And we have repeatedly confirmed what Tik already confirmed under oath:  there are no additional relevant communications between Tik and Mr. Unsworth.  You have raised this false issue numerous times.  You have already gotten the sworn testimony confirming the answer.  Your continued supposition that relevant communications must exist does not change the answer you have been given over and over again:  they don't exist.  Unlike Mr. Musk,  Mr. Unsworth has preserved his cell phone and his counsel has never represented (truthfully or falsely, still unclear) that he destroyed his phone and any record of it.  His electronic communications with Tik have been reviewed and are not relevant other than as produced.  Defendant is not entitled to irrelevant communications between significant others just because he wants them.

Moreover, even if the documents you have identified exist (the ones that have not already been produced) and are conceivably responsive to other RFPs you have not identified for the purpose of these meet and confer efforts, Plaintiff has conducted several good-faith searches with Defendant's grossly over-expansive notion of relevance in mind to collect and produce documents responsive to Defendant's overbroad RFPs and any suggestion Plaintiff has not conducted a reasonable search is flatly false.  The majority of the documents you now seek do not seem to comport even with the most expansive view of relevance.  Rather than respond to Lin's email requesting an explanation of how any of these documents are relevant, you have simply shifted your focus from RFP 26 for the first time and vaguely claimed that you had previously demanded documents relating to the cave rescue and have impliedly suggested that this meet and confer issue has remained idly open for the past month; it has not, you had dropped it altogether after we met your prior demands (as

comprehensively addressed in prior meet and confer correspondence that I understand you do not take the time to read at all per your discussions with Lin at later depositions).  Rather than respond on the merits as to the relevancy of this information you seek below, you have just shifted your position to wanting additional documents relating to previously unidentified topics and without articulating their relevance to the claims or defenses in this case.  The total irrelevance of these documents, if they exist, is demonstrated by Defendant's inexplicable delay in pursuing this matter until 4 weeks before trial.  That includes Defendant's delay in pursuing some of these issues for the first time while simultaneously demanding documents be produced within three days.

Talk with you tomorrow.  But if you wish to comply in good faith with your meet and confer obligations, however, I request that you respond prior to the call to Lin's previous query on a document by document basis and explain their alleged relevance to the claims and defenses in this case.

Taylor

_____

**G. Taylor Wilson**
Partner

L. LIN WOOD, P.C.
1180 West Peachtree Street
Suite 2040
Atlanta, Georgia 30309
Telephone: (404) 891-1402
Direct Dial: (678) 365-4107
Facsimile: (404) 506-9111
E-mail: twilson@linwoodlaw.com

*** PLEASE NOTE OUR NEW SUITE NUMBER

**From:** Alex Spiro <alexspiro@quinnemanuel.com>
**Sent:** Tuesday, November 05, 2019 12:56 PM
**To:** Taylor Wilson <twilson@linwoodlaw.com>; Michael Lifrak <michaellifrak@quinnemanuel.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Jeanine Zalduendo <jeaninezalduendo@quinnemanuel.com>; Alex Bergjans <alexbergjans@quinnemanuel.com>; Lin Wood <lwood@linwoodlaw.com>; Jonathan Grunberg <jgrunberg@linwoodlaw.com>; Nicole Wade <nwade@linwoodlaw.com>; Matt Wood <mwood@wshllp.com>; Chris Chatham <chris@chathamfirm.com>
**Subject:** Production

Taylor -

Since you are handling production related issues I direct this to you. As you are aware, we have previously demanded all documents related to the cave rescue. We also previously demanded documents that should have been turned over originally, and were later discovered due to plaintiff's late production. We had understood that you agreed and the production was forthcoming. We can meet and confer on tomorrow's call regarding this issue and if cannot obtain the required production we will move to compel.

On Monday September 23, 2019, your firm served its third supplemental production of documents, after the discovery cut-off, that contained Mr. Unsworth's 81 page text log with Thanet Natisri. Mr. Unsworth's chats with Mr. Natisri reference a number responsive documents and communications that still have not been produced. I first raised this issue with you on September 26, which lead to an additional production of communications between Mr. Unsworth and his agent, Will Robinson.

Nonetheless, many communications referenced are still missing. For instance,

- On July 4, 2018, Mr. Unsworth told Mr. Natisri that he would be <u>emailing</u> him information related to the rescue, and then confirmed doing so. *See* VU03319.

- On August 3, 2018, Mr. Unsworth requested that Mr. Natisri <u>email</u> him geological maps of Thailand and Mr. Natisri confirmed doing so. *See* VU03329.

- On September 14-16, 2018, Mr. Natisri told Mr. Unsworth he would be <u>emailing</u> him "some useful information on the cave rescue," and confirmed doing so. *See* VU03344.

- On October 27, 2018, Mr. Unsworth requested an <u>emailed</u> copy of Mr. Natisri's diary of the cave rescue. *See* VU03363.

- On November 13, Mr. Unsworth told Mr. Natisri, "You should see the <u>email</u> I've just received from Dr Harry and Dr Craig book writer. They NEED ME SO SO MUCH. Sent it on to my agent". *See* VU03370.

- Also on November 13, 2018, Mr. Unsworth told Mr. Natisri that he sent his contact information to his agent, Mr. Robinson. *See* VU03370.

- Also on November 13, 2018, Mr. Unsworth told Mr. Natisri that he received an <u>email</u> from CAA. *See* VU03371.

- On November 16, 2018, Mr. Unsworth told Mr. Natisri that he sent him an <u>email</u> about sticking together to form a deal. *See* VU03372.

- On November 17, 2018, Mr. Natisri told Mr. Unsworth that he <u>emailed</u> him a link to Matt Gutman's book about the cave rescue, and Mr. Unsworth confirmed receipt. *See* VU03373.

It is clear that other documents are missing from the production as well. For instance,

- On May 9, 2019, Mr. Unsworth sent a chat message to Thanet Natisri informing him that Mr. Unsworth had created the group, "Vern - Tham Luang Team" and that he would be adding others to the group. No texts from this chat group have ever been produced. *See* VU00600.

- In the above mentioned May 9, 2019 chat with Mr. Natisri, Mr. Unsworth sent photos of the business card of Nafis (Peter) Ahmed. Although it appears that Mr. Unsworth has been in contact with Mr. Ahmed, no communications with Mr. Ahmed have been produced. *See* VU00602. *See also* VU00603 and VU00629, where Mr. Unsworth's communications with Mr. Ahmed are referenced.

• Mr. Unsworth also claims throughout his chats with friends and acquaintances, including Mr. Natisri, that he was approached by and had a number of meetings and communications with representatives from Warner Brothers, but again, no documents relating to these communications have been produced.  *See, e.g.*, VU00511, VU00664, VU03361, VU003372-3, VU003391.

• Philip Sherwell emailed Mr. Unsworth on numerous occasions and not one single response communication from Mr. Unsworth was provided.  *See, e.g.*,  VU00478, VU00500, VU00502, VU506, VU00524, VU00533, VU00567, VU00570.  Please produce or confirm that there are none.

-  We also again demand you produce all pictures, signs, stickers, emojis etc from Mr. Unsworth's communications.

As we have already informed you, all of these referenced communications and documents are responsive to Mr. Musk's RFP No. 26 and should have been located after a reasonable search and produced.

Please produce these missing items by **November 8, 2018**.

Finally, we confirm that you have produced the email VU03404 that is an email between Mr. Unsworth and Tik.  That, in addition to VU00006, and VU00337, are the only emails in the production between Mr. Unsworth and Tik.  Please certify that there are no additional communications between Mr. Unsworth and Tik, by **November 8, 2019**.

Thanks

Alex

Sent from my BlackBerry - the most secure mobile device

Exhibit 8, Page 150

# EXHIBIT 9

AO 88  (Rev. 02/14)  Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| Vernon Unsworth | ) |
| *Plaintiff* | ) |
| v. | ) |
| Elon Musk | ) |
| *Defendant* | ) |

Civil Action No.   2:18-CV-08048

## SUBPOENA TO APPEAR AND TESTIFY
## AT A HEARING OR TRIAL IN A CIVIL ACTION

To:  Vernon Unsworth

*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place set forth below to testify at a hearing or trial in this civil action.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: First Street Courthouse<br>350 W. 1st Street<br>Los Angeles, California 90012 | Courtroom No.: 10A |
|---|---|
| | Date and Time: 12/03/2019 9:00 am |

You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*:     See Schedule A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  11/12/2019

*CLERK OF COURT*

OR

_____
*Signature of Clerk or Deputy Clerk*

/s/ Alex Spiro
_____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Elon Musk
_____, who issues or requests this subpoena, are:

See Schedule B

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Exhibit 9, Page 151

AO 88  (Rev. 02/14)  Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action  (page 2)

Civil Action No.  2:18-CV-08048

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Exhibit 9, Page 152

AO 88  (Rev. 02/14)  Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# SCHEDULE A

# DEFINITIONS

Notwithstanding any definition below, each word, term, or phrase used in these Requests for Production are intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1.      The term "communication" means any record, report, conversation, discussion, letter, memorandum, note, e-mail, voice mail, or other transfer of information, whether written, oral, electronic, or by any other means, and includes any document or other medium which abstracts, digests, records, or transcribes any such communication, or any subsequent review or discussion of such communication, whether occurring at meetings or otherwise.

2.      The term "document(s)" is used in the broadest sense to include everything contemplated by Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure and by Rule 1001 of the Federal Rules of Evidence, and include, without limitation, any written material (including communications), whether typed, handwritten, printed or otherwise, and whether in draft or final form, of any kind or nature, or any photograph, photostat, microfilm or other reproduction thereof, including, without limitation, each note, memorandum, letter, telegram, telex, circular, release, article, report, prospectus, memorandum of any telephone or in-person conversation, any financial statement, analysis, drawing, graph, chart, account, book, notebook, draft, summary, diary, transcript, computer database, computer printout or other computer generated matter, and other data compilations, and any other documents or electronically stored information in any medium from which information can be obtained, whether directly or, if necessary, after translation to English.  Electronic mail, voice mail and any pictures, video, or sound recorded by any means are included within the definition of the terms "document" or "documents." A draft or non-identical copy, including a copy with handwritten notes, is a separate Document within the meaning of the term.

3.      The term "electronically stored information," abbreviated herein as "ESI," has the meaning given it in Fed. R. Civ. Pro. 26(b) and 34.

4.      "Plaintiff" (as well as "You," "Your," and "Yours") means Vernon Unsworth, as well as all of Mr. Unsworth's agents, representatives, attorneys, and other persons acting on his behalf.  This definition specifically includes L. Lin Wood, Howard Kennedy LLP, and any of the attorneys currently representing Mr. Unsworth acting in any capacity.

## INSTRUCTIONS

1.      In complying with the Subpoena, You are required to produce all Documents described below that are in Your possession, custody, or control.

2.      For the purpose of reading, interpreting, or construing the scope of the Requests in this Subpoena, the terms used should be given their most expansive and inclusive interpretation.

3.      Unless instructed otherwise, each Request should be construed independently and not by reference to any other Request for the purpose of limitation.

4.      If any portion of a document or communication is responsive to any Request, the entire document or communication should be produced.

5.      If You object to any Request, in whole or in part, state the grounds of Your objection with specificity and produce documents responsive to the remainder of the Request.

6.      If, in answering this Subpoena, You encounter any ambiguities when construing a Request, Instruction, or Definition, Your response shall set forth the matter deemed ambiguous and the construction used in responding. For the avoidance of doubt, this instruction does not in any way limit Your obligation to give terms their most expansive and inclusive interpretation when reading, interpreting or construing the scope of the Requests in this Subpoena.

7.      Where a claim of privilege or other protection from discovery is asserted in objecting to any Request, You should identify the nature of the privilege or protection (including work product protection) that is being claimed. In such case, You should also indicate, as to the information requested, whether (a) any documents exist, and (b) also provide the following information for each such document in a "privileged documents log" or similar format:

      a.      the type of document;

      b.      the general subject matter of the document;

      c.      the date of the document;

      d.      the author(s) of the document;

      e.      any recipient(s), copyee(s) or blind copyee(s) of the Document; and

      f.      the custodian of the document, where applicable.

8.      Unless otherwise noted, the Subpoena and the Requests contained herein call for the search for, collection and production of all responsive documents created or obtained by You since June 1, 2018 through the present. If, after an initial production, You obtain or become aware of additional documents existing as of the date for compliance with this Subpoena that are responsive to this Subpoena, You are required to promptly produce such additional documents.

9.      The search will include both hard copies and electronically stored information. Compliance with this Subpoena requires a search of all documents in Your possession, custody, or control, whether or not such documents are on Your premises.

10.      Documents produced pursuant to this Subpoena should be produced as they are kept in the ordinary course of business, including electronically stored information. Electronic materials, information, and data that are electronically searchable should be produced in a form that does not remove or degrade this feature.

11.     Documents in electronic form, including, but not limited to, e-mail, should be produced in color in single page tagged image file format ("TIFF"). TIFFs shall show all text and images that would be visible in the original electronic format (native format), including redlines and speaker notes, and Defendant reserves the right to make a reasonable request for the production of any documents in native format. An associated load file linking the images to the corresponding document should be provided. All metadata associated with any electronically stored information shall be produced in text format linked to the associated document. Extracted text or, if extracted text is not available, optical character recognition (OCR) text should be provided in document-level text files.

12.     In order to bring within the scope of this Subpoena all information that might otherwise be construed to be outside of its scope, the following rules of construction apply: (i) the singular includes the plural and vice versa; (ii) the masculine, feminine or neuter pronoun does not exclude other genders; (iii) the connectives "and" and "or" should be read either disjunctively or conjunctively as necessary to bring within the scope of the Subpoena all documents that might otherwise be construed to be outside of its scope; (iv) the terms "any," "all," and "each" should be read to mean any, all, each, and every; (v) the word "including" should be read to mean including without limitation; (vi) the present tense should be construed to include the past tense and vice versa; and (vii) references to employees, officers, directors, or agents include both current and former employees, officers, directors, and agents.

13.     Defendant makes these Requests without waiver of, but instead expressly reserving, all defenses it may assert in this matter, including without limitation all arguments relating to market definition.

SCHEDULE A TO TRIAL SUBPOENA TO VERNON UNSWORTH

**REQUESTS FOR DOCUMENTS**

**REQUEST FOR DOCUMENTS NO. 1:**

The email communications between You and Thanet Natisri, which took place on or about July 4, 2018, as referenced at VU03319.

**REQUEST FOR DOCUMENTS NO. 2:**

The email communications between You and Thanet Natisri, which took place on or about August, 3, 2018, as referenced at VU03329.

**REQUEST FOR DOCUMENTS NO. 3:**

The email communications between You and Thanet Natisri, which took place on or about September 16, 2018, as referenced at VU0334.

**REQUEST FOR DOCUMENTS NO. 4:**

The email communications between You and Thanet Natisri, which took place on or about October 27, 2018, as referenced at VU03363.

**REQUEST FOR DOCUMENTS NO. 5:**

The email communications between You, Dr. Craig Challen, Dr. Richard Harris, and/or Ellis Henican, which took place on or about November 13, 2018, as referenced at VU03370.

**REQUEST FOR DOCUMENTS NO. 6:**

The email communications between You and Will Robinson, which took place on or about November 13, 2018, as referenced at VU03370.

**REQUEST FOR DOCUMENTS NO. 7:**

The email communications between You and anyone at Creative Artists Agency, or "CAA," which took place on or about November 13, 2018, as referenced at VU03371.

**REQUEST FOR DOCUMENTS NO. 8:**

The email communications between You and Thanet Natisri, which took place on or about November 16, 2018, as referenced at VU03372.

SCHEDULE A TO TRIAL SUBPOENA TO VERNON UNSWORTH
Exhibit 9, Page 158

1  **REQUEST FOR DOCUMENTS NO. 9:**

2       The email communications between You and Thanet Natisri, which took

3  place on or about November 16, 2018, as referenced at VU03372

4  **REQUEST FOR DOCUMENTS NO. 10:**

5       The email communications between You and Thanet Natisri, which took

6  place on or about November 17, 2018, as referenced at VU03373.

7  **REQUEST FOR DOCUMENTS NO. 11:**

8       All text communications sent via the text chat group "Vern - Tham Luang

9  Team," as referenced in VU00600.

10  **REQUEST FOR DOCUMENTS NO. 12:**

11       All communications between You and Ahmed (Peter) Nafis, as referenced in

12  VU00602-03, VU00629, VU03391-92.

13  **REQUEST FOR DOCUMENTS NO. 13:**

14       All media, including but not limited to, photos, videos, stickers, emojis,

15  and/or other symbols that are identified in documents VU00579-591, VU00592,

16  VU00593, VU00600-602, VU00603-605, VU00610, VU00615-616, VU00629-634,

17  VU00639-662, VU00663-730 VU03314-3394, which have not yet been produced in

18  this action.

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SCHEDULE B

Quinn Emanuel Urquhart & Sullivan, LLP
Alex Spiro
alexspiro@quinnemanuel.com
51 Madison Ave 22nd Floor
New York, NY 10010
212-849-7000

-7-

# EXHIBIT 10

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (admitted *pro hac vice*)
   alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
   robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
   michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
   jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH, | Case No. 2:18-cv-08048 |
| Plaintiff, | Judge: Hon. Stephen V. Wilson |
| vs. | **ELON MUSK'S FIRST SET OF REQUESTS FOR PRODUCTION TO VERNON UNSWORTH** |
| ELON MUSK, | |
| Defendant. | Complaint Filed: September 17, 2018<br>Trial Date: December 2, 2019 |

1    Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure,

2  Defendant Elon Musk requests that Plaintiff Vernon Unsworth produce for

3  inspection and copying within thirty (30) days of service of these Requests the

4  documents and things described herein within Plaintiff's possession, custody or

5  control, at the offices of Quinn Emanuel Urquhart & Sullivan, LLP, 865 South

6  Figueroa Street, 10th Floor, Los Angeles, CA 90017.

7                                 **<u>DEFINITIONS</u>**

8    Notwithstanding any definition below, each word, term, or phrase used in

9  these Requests for Production are intended to have the broadest meaning permitted

10 under the Federal Rules of Civil Procedure.

11    1.    The "Boys" refers to the twelve Thai boys that had been trapped in the

12 Cave System between June 24, 2018 and July 10, 2018.

13    2.    The "Cave Rescue" means the rescue operation that took place from

14 June 24, 2018 through July 10, 2018, to extract the Boys and their soccer coach

15 from the Cave System.

16    3.    The "Cave System" means the Tham Luang Nang Non cave system

17 located in Northern Thailand.

18    4.    The "Complaint" means the Complaint for Defamation filed by

19 Plaintiff at Docket No. 1 in this Litigation, and any subsequent amendments thereto

20 or versions thereof.

21    5.    The term "communication" means any record, report, conversation,

22 discussion, letter, memorandum, note, e-mail, voice mail, or other transfer of

23 information, whether written, oral, electronic, or by any other means, and includes

24 any document or other medium which abstracts, digests, records, or transcribes any

25 such communication, or any subsequent review or discussion of such

26 communication, whether occurring at meetings or otherwise.

27    6.    The term "concerning" means relating or related to, referring to,

28 describing, evidencing, or constituting.

ELON MUSK'S FIRST SET OF REQUESTS FOR PRODUCTION TO VERNON UNSWORTH

Exhibit 10, Page 162

1      7.    "Defendant" or "Mr. Musk" means Elon Musk.

2      8.    The term "document(s)" is used in the broadest sense to include

3  everything contemplated by Rule 34(a)(1)(A) of the Federal Rules of Civil

4  Procedure and by Rule 1001 of the Federal Rules of Evidence, and include, without

5  limitation, any written material (including communications), whether typed,

6  handwritten, printed or otherwise, and whether in draft or final form, of any kind or

7  nature, or any photograph, photostat, microfilm or other reproduction thereof,

8  including, without limitation, each note, memorandum, letter, telegram, telex,

9  circular, release, article, report, prospectus, memorandum of any telephone or in-

10  person conversation, any financial statement, analysis, drawing, graph, chart,

11  account, book, notebook, draft, summary, diary, transcript, computer database,

12  computer printout or other computer generated matter, and other data compilations,

13  and any other documents or electronically stored information in any medium from

14  which information can be obtained, whether directly or, if necessary, after

15  translation to English.  Electronic mail, voice mail and any pictures, video, or sound

16  recorded by any means are included within the definition of the terms "document"

17  or "documents." A draft or non-identical copy, including a copy with handwritten

18  notes, is a separate Document within the meaning of the term.

19      9.    The term "electronically stored information," abbreviated herein as

20  "ESI," has the meaning given it in Fed. R. Civ. Pro. 26(b) and 34.

21      10.    The "Litigation" means the above-captioned litigation in the United

22  States District Court for the Central District of California, *Unsworth v. Musk*, Case

23  No. 2:18-cv-08048.

24      11.    The terms "Person" or "Persons" shall mean an individual, corporation,

25  limited liability company, limited partnership, limited liability partnership, joint

26  venture, trust, proprietorship, partnership, association, or any other entity.

27      12.    "Plaintiff" (as well as "You," "Your," and "Yours") means Vernon

28  Unsworth, as well as all of Mr. Unsworth's agents, representatives, attorneys, and

-2-

other persons acting on his behalf.  This definition specifically includes L. Lin Wood and any of the attorneys currently representing Mr. Unsworth acting in any capacity.

13.     "Rescue Vehicle" means one or more of the rescue devices designed and engineered at Mr. Musk's direction for use in the Cave Rescue.

14.     "Travel" means any vacation, excursion, visit, tour, or trip taken for any reason, including for the purpose of work or leisure.

## **INSTRUCTIONS**

1.     In complying with the Requests, You are required to produce all Documents described below that are in Your possession, custody, or control.

2.     For the purpose of reading, interpreting, or construing the scope of these Requests, the terms used should be given their most expansive and inclusive interpretation.

3.     Unless instructed otherwise, each Request should be construed independently and not by reference to any other Request for the purpose of limitation.

4.     If any portion of a Document or Communication is responsive to any Request, the entire Document or Communication should be produced.

5.     If You object to any Request, in whole or in part, state the grounds of Your objection with specificity and produce Documents responsive to the remainder of the Request.

6.     If, in answering these Requests, You encounter any ambiguities when construing a request, instruction, or definition, Your response shall set forth the matter deemed ambiguous and the construction used in responding.  For the avoidance of doubt, this instruction does not in any way limit Your obligation to give terms their most expansive and inclusive interpretation when reading, interpreting or construing the scope of the Requests.

7.    Where a claim of privilege or other protection from discovery is asserted in objecting to any Request, You should identify the nature of the privilege or protection (including work product protection) that is being claimed.  In such case, You should also indicate, as to the information requested, whether (a) any documents exist, and (b) also provide the following information for each such document in a "privileged documents log" or similar format:

a.    the type of document;

b.    the general subject matter of the document;

c.    the date of the document;

d.    the author(s) of the document;

e.    any recipient(s), copyee(s) or blind copyee(s) of the document; and

f.    the custodian of the document, where applicable.

8.    Unless otherwise noted, the Requests contained herein call for the search for, collection, and production of all responsive Documents created or obtained by You from January 1, 2000 through the present, unless otherwise specified in a Request.  If, after an initial production, You obtain or become aware of additional Documents that are responsive to these Requests, You are required to promptly produce such additional Documents.

9.    Your search should include both hard copies and ESI.

10.    Documents produced pursuant to these Requests should be produced as they are kept in the ordinary course of business, including ESI.  Electronic materials, information, and data that are electronically searchable should be produced in a form that does not remove or degrade this feature.

11.    Documents in electronic form, including, but not limited to, e-mail, should be produced in color in single page tagged image file format ("TIFF").  TIFFs shall show all text and images that would be visible in the original electronic format (native format), including redlines and speaker notes, and Defendant reserves

-4-

2:18-cv-08048-SVW-JC   Document 118-3   Filed 11/18/19   Page 86 of 99   Page ID
#:4515

the right to make a reasonable request for the production of any documents in native format.  An associated load file linking the images to the corresponding Document should be provided.  All metadata associated with any ESI shall be produced in text format linked to the associated Document.  Extracted text or, if extracted text is not available, optical character recognition (OCR) text should be provided in Document-level text files.

12.    The source and location of each responsive Document shall be designated.

13.    In order to bring within the scope of these Requests all information that might otherwise be construed to be outside of its scope, the following rules of construction apply:  (i) the singular includes the plural and vice versa; (ii) the masculine, feminine or neuter pronoun does not exclude other genders; (iii) the connectives "and" and "or" should be read either disjunctively or conjunctively as necessary to bring within the scope of these Requests all Documents that might otherwise be construed to be outside of its scope; (iv) the terms "any," "all," and "each" should be read to mean any, all, each, and every; (v) the word "including" should be read to mean including without limitation; and (vi) the present tense should be construed to include the past tense and vice versa.

14.    Defendant makes these requests without waiver of, but instead expressly reserving, all defenses it may assert in this matter.

ELON MUSK'S FIRST SET OF REQUESTS FOR PRODUCTION TO VERNON UNSWORTH
Exhibit 10, Page 166

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents or communications concerning the Cave Rescue, including but not limited to Your role or roles in the Cave Rescue.

**REQUEST FOR PRODUCTION NO. 2:**

All communications between You and any Person involved in the Cave Rescue, including but not limited to communications with Richard Stanton, Rob Harper, John Volanthen, members of the British Cave Rescue Council, Ali Comkeaw, Nikorn Phopluechai, Hataiwan Patisan, members of the Thai navy, or Thai government officials.

**REQUEST FOR PRODUCTION NO. 3:**

All communications between You (including Your attorney or anyone else acting on Your behalf), on the one hand, and any member of the media, news, or tabloid organization or agency, or any journalist, columnist, broadcaster, commentator, editor, author or writer, on the other hand, concerning: (a) the Cave Rescue, (b) Mr. Musk, (c) Mr. Musk's role in the Cave Rescue, (d) Mr. Musk's statements about You, or (e) the Rescue Vehicle.

**REQUEST FOR PRODUCTION NO. 4:**

All documents concerning any communication covered by Request No. 3, including but not limited to any document indicating the date or time any such communication occurred, or memorializing the content of such communication, including but not limited to interview notes or draft or proposed articles.

**REQUEST FOR PRODUCTION NO. 5:**

All audio or video recordings of any statements made by You concerning (a) the Cave Rescue, (b) Mr. Musk, (c) Mr. Musk's role in the Cave Rescue, (d) Mr. Musk's statements about You, or (e) the Rescue Vehicle.

**REQUEST FOR PRODUCTION NO. 6:**

All communications between You and any Person concerning the Rescue Vehicle.

**REQUEST FOR PRODUCTION NO. 7:**

All communications between You and any Person concerning Mr. Musk.

**REQUEST FOR PRODUCTION NO. 8:**

All documents concerning the allegation in paragraph 4 of the Complaint and elsewhere that Mr. Musk's statements about You were false.

**REQUEST FOR PRODUCTION NO. 9:**

All documents concerning the allegations in paragraph 10 of the Complaint that You have been "involved in numerous cave rescues in the United Kingdom ("UK"), including rescues necessary due to flooding, mostly in the 1970s and 1980s as a member of a UK caving club," including but not limited to documents showing the identities of the individuals rescued, the dates of the rescues, the locations of the rescues, the identity of the UK caving club You were a member of, and any awards, accolades, titles, and other public recognition You have received for your role in such rescue efforts.

**REQUEST FOR PRODUCTION NO. 10:**

All documents and communications concerning the allegations in Paragraph 39 of the Complaint that You had a role in putting together the "dive portion of the rescue plan that ultimately saved the Boys."

**REQUEST FOR PRODUCTION NO. 11:**

All documents concerning the allegations in paragraph 44 of the Complaint that your surveys of the Cave System helped find the Boys, including but not limited to documents, surveys, studies, or maps You created or You caused to be created concerning the Cave System.

-7-

**REQUEST FOR PRODUCTION NO. 12:**

All documents concerning the allegation in paragraph 49 of the Complaint that You were asked to attend a meeting on July 6, 2018 but chose not to do so.

**REQUEST FOR PRODUCTION NO. 13:**

All documents concerning the allegation in paragraph 68 of the Complaint that You were given the opportunity to visit the Boys in the hospital.

**REQUEST FOR PRODUCTION NO. 14:**

All documents concerning the allegation in paragraph 71 footnote 4 of the Complaint that Your comments about the Rescue Vehicle "were well-founded."

**REQUEST FOR PRODUCTION NO. 15:**

All documents concerning the allegation in paragraph 82 of the Complaint that You, through counsel, transmitted a letter to Mr. Musk on August 6, 2018.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and communications concerning the allegations in Paragraph 94 of the Complaint that Mr. Musk made false accusations about Your involvement in the rescue and/or Your relationship with the diving team.

**REQUEST FOR PRODUCTION NO. 17:**

All documents and communications concerning the allegations in Paragraph 126 of the Complaint that You did not lie in the CNN Interview.

**REQUEST FOR PRODUCTION NO. 18:**

All documents concerning the "separate action for reputational damage [You] suffered in England and Wales" as alleged in paragraph 109 of the Complaint, including but not limited to all documents filed in that action and all communications concerning that action.

**REQUEST FOR PRODUCTION NO. 19:**

All documents concerning any damage You claim to have suffered as a result of Mr. Musk's actions, including the "substantial and permanent damage" You allege in paragraph 130 of the Complaint.

-8-

**REQUEST FOR PRODUCTION NO. 20:**

All documents concerning the emotional distress You allege to have suffered in Paragraph 141 of the Complaint, including but not limited to documents showing (a) the characteristics and symptoms of the emotional distress, (b) when such emotional stress began and ended, (c) the name of any doctors or other medical professionals that have examined You for the emotional distress, (d) the dates of such examinations, (e) diagnoses, and (f) prescriptions You received for medication related to the emotional distress.

**REQUEST FOR PRODUCTION NO. 21:**

All documents concerning Your contention, as reported in The Guardian newspaper that You " have a lot of support from people around the world astonished by [Mr. Musk's] unfounded comments."

**REQUEST FOR PRODUCTION NO. 22:**

All documents concerning Your contention, as reported by Reuters that You were "approached by British lawyers, American lawyers."

**REQUEST FOR PRODUCTION NO. 23:**

All documents concerning awards, accolades, titles, and other public recognition You have received for any reason from the year 2000 to the present.

**REQUEST FOR PRODUCTION NO. 24:**

All documents concerning any actual or proposed speaking engagements that have been proposed to you or to which you have been invited from the year 2000 to the present, including but not limited to documents concerning any compensation You have been offered or received as a result.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and communications concerning any offers to publish Your version of events in relation to the Cave Rescue, including but not limited to documents showing amounts offered for publication, drafts of such publications, and communications with publishers.

**REQUEST FOR PRODUCTION NO. 26:**

All documents concerning any other actual or potential income you have earned in any way connected to the Cave Rescue.

**REQUEST FOR PRODUCTION NO. 27:**

Documents sufficient to: (a) show all income and/or compensation You have received since the year 2000 and (b) identify the sources of any such income.

**REQUEST FOR PRODUCTION NO. 28:**

Documents sufficient to show Your employment history between 1990 and the present, including but not limited to documents showing the names and address of each employer, title or position You held, duration of employment, and the reason You left such employment.

**REQUEST FOR PRODUCTION NO. 29:**

All documents concerning any business You currently own or have any connection to, including but not limited to all documents that relate to the financial performance of such business.

**REQUEST FOR PRODUCTION NO. 30:**

All documents concerning the (1) financial performance, (2) current operational status, (3) reasons for your resignation or departure from, or (4) reasons for the closure or dissolution of any business You previously owned or had any connection to, including but not limited to Heritage Financial Centre Limited, Hertfordshire Independent Financial Services Limited, Direct Independent Financial Services Limited, Direct Life & Investments Limited, Nationwide Independent Advisers Network Limited, AIMS Marketing Limited, Mortgage & Insurance Services Limited, Glacier Water Global Limited, Verulam Golf Club Limited, Quarternoon House Limited, Seddon Smith Financial Services Limited, and Burgess Wreford & Unsworth.

**REQUEST FOR PRODUCTION NO. 31:**

All documents concerning any investigation or action taken by the Financial Services Compensation Scheme, the Personal Investment Authority, or any other governmental agency or department against or related to You concerning any business or entity with which you are or have been affiliated, including without limitation Burgess Wreford & Unsworth.

**REQUEST FOR PRODUCTION NO. 32:**

All documents concerning any disciplinary proceeding involving You or any business with which You are or have been affiliated, regardless of whether such proceeding resulted in any disciplinary action.

**REQUEST FOR PRODUCTION NO. 33:**

All documents concerning any criminal proceeding or investigation involving You in any jurisdiction, including records of Your arrest, arraignment, indictment, plea bargain, trial, conviction, sentencing, incarceration, or parole or probation, irrespective of whether an arrest resulted in subsequent charge, conviction, or acquittal.

**REQUEST FOR PRODUCTION NO. 34:**

All documents concerning any civil lawsuit, arbitration, or similar proceeding in which either You or a business with which You are or have been affiliated was a party.

**REQUEST FOR PRODUCTION NO. 35:**

All documents concerning any treatment You have ever received related to your use or consumption of alcohol or drugs.

**REQUEST FOR PRODUCTION NO. 36:**

All documents concerning any efforts undertaken by You or at Your direction to mitigate or correct any damage to You or to Your reputation that You allege has been caused by Mr. Musk, including efforts related to Your online reputation or online search results related to You.

1   **REQUEST FOR PRODUCTION NO. 37:**

2        All documents concerning all organizations, clubs, affiliations, groups, or

3   memberships to which You now belong or have ever belonged, including but not

4   limited to those related to caving, spelunking, cave mapping, cave surveying, cave

5   diving, or cave rescue efforts.

6   **REQUEST FOR PRODUCTION NO. 38:**

7        All communications between You, on the one hand, and any member of the

8   media, news, or tabloid organization or agency, or any journalist, columnist,

9   broadcaster, commentator, editor, author or writer, on the other hand, concerning

10  caving, spelunking, cave mapping, cave diving, or cave rescue efforts, at any time,

11  in any country.

12  **REQUEST FOR PRODUCTION NO. 39:**

13       All documents concerning any communication covered by Request No. 38,

14  including but not limited to any document indicating the date or time any such

15  communication occurred, or memorializing the content of such communication,

16  including but not limited to interview notes or draft or proposed articles.

17  **REQUEST FOR PRODUCTION NO. 40:**

18       All documents concerning all Travel You have taken to Thailand, including

19  but not limited to documents showing dates of travel, cities visited, the names and

20  addresses of accommodations where You stayed, the identities of any Persons who

21  accompanied You, the purpose of the Travel, visas required for such Travel,

22  passports used for the Travel, and credit card statements depicting payments related

23  to the Travel and any activities in which you engaged.

24  **REQUEST FOR PRODUCTION NO. 41:**

25       All documents concerning all Travel You have taken to the United States of

26  America, including but not limited to documents showing dates of Travel, cities

27  visited, the names and addresses of accommodations where You stayed, the

28  identities of any Persons who accompanied You, the purpose of the Travel, visas

-12-

1  required for such Travel, passports used for the Travel, and credit card statements

2  depicting payments related to the Travel and any activities in which you engaged.

3  **REQUEST FOR PRODUCTION NO. 42:**

4       All documents concerning all Travel You have taken outside of the United

5  Kingdom other than to Thailand or the United States, including but not limited to

6  documents showing dates of travel, cities visited, the names and addresses of

7  accommodations where You stayed, the identities of any Persons who accompanied

8  You, the purpose of the Travel, visas required for such Travel, passports used for the

9  Travel, and credit card statements depicting payments related to the Travel and any

10  activities in which you engaged.

11  **REQUEST FOR PRODUCTION NO. 43:**

12       All publications You have made to any social media or blogging site,

13  platform, or application, including but not limited to Twitter, Facebook, Instagram,

14  Snapchat, YouTube, Pinterest, Myspace, LinkedIn, or classmates.com, concerning:

15  (a) the Cave Rescue, (b) Mr. Musk, (c) Mr. Musk's role in the Cave Rescue, (d) Mr.

16  Musk's statements about You, or (e) the Rescue Vehicle.

17  **REQUEST FOR PRODUCTION NO. 44:**

18       All documents concerning Your relationship with and marriage to Woranan

19  Ratrawiphukkun, including but not limited to documents showing Your ceremonial

20  or legal marriage to her, the dates of any such marriage acts, and marital or joint

21  property.

22  **REQUEST FOR PRODUCTION NO. 45:**

23       Documents sufficient to show all aliases You have ever used.

24  **REQUEST FOR PRODUCTION NO. 46:**

25       All documents that You have provided to or received from any Person who

26  may testify at trial or any hearing in this Litigation.

27

28

-13-

1  **REQUEST FOR PRODUCTION NO. 47:**

2         To the extent not covered by the other Requests herein, all documents

3  authored by You, provided to You, or read by You concerning: (a) Mr. Musk;

4  (b) this Litigation; or (c) any of the allegations underlying the Complaint, including

5  but not limited to the injuries or damages that You allege.

6  **REQUEST FOR PRODUCTION NO. 48:**

7         To the extent not covered by the other Requests herein, all communications

8  between You and any Person concerning (a) Mr. Musk; (b) this Litigation; or

9  (c) any of the allegations underlying the Complaint, including but not limited to the

10  injuries or damages that You allege.

11  **REQUEST FOR PRODUCTION NO. 49:**

12         All documents and communications identified in or concerning Your

13  responses to Mr. Musk's Interrogatories to You in this Litigation, including all

14  documents or communications You used to answer the Interrogatories.

15

16  DATED:  June 17, 2019                    Respectfully submitted,

17                                           QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
18

19                                           By   */s/ Michael T. Lifrak*
                                             _____
20                                           Michael T. Lifrak (Bar No. 210846)
                                             michaellifrak@quinnemanuel.com
                                             Robert M. Schwartz (Bar No. 117166)
21                                           robertschwartz@quinnemanuel.com
                                             Jeanine M. Zalduendo (Bar No. 243374)
22                                           jeaninezalduendo@quinnemanuel.com
                                             865 South Figueroa Street, 10th Floor
23                                           Los Angeles, California 90017-2543
                                             Telephone: (213) 443-3000
24
                                             Alex Spiro (admitted *pro hac vice*)
25                                           alexspiro@quinnemanuel.com
                                             51 Madison Avenue, 22nd Floor
26                                           New York, New York 10010
                                             Telephone: (212) 849-7000
27
                                             *Attorneys for Defendant Elon Musk*
28

-14-

## **CERTIFICATE OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

I hereby certify that a true and correct copy of the document titled "Elon Musk's First Set of Requests for Production to Vernon Unsworth" has been served via electronic mail transmission on June 17, 2019 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. The electronic mail transmission was made from jeaninezalduendo@quinnemanuel.com, by transmitting PDF format copies of the document to all counsel of record, at the e-mail address provided to the Court's CM/ECF system.  The transmission was reported as complete and without error.

Executed on June 17, 2019, at Los Angeles, California.


*s/ Jeanine M. Zalduendo*
Jeanine M. Zalduendo

# EXHIBIT 11

**To:**      Taylor Wilson[twilson@linwoodlaw.com]
**From:**    Vernon Unsworth
**Sent:**    Fri 9/27/2019 6:55:13 AM
**Subject:** Fw: Harry book - Tham Luang Deal

----- Forwarded message -----
**From:** Vernon Unsworth <vernon_unsworth@yahoo.co.uk>
**To:** William Robinson <willrobinson001@outlook.com>
**Sent:** Friday, 16 November 2018, 03:23:56 GMT
**Subject:** Fw: Fw: Harry book - Tham Luang Deal

----- Forwarded Message -----
**From:** Thanet Natisri <thanetnatisri@gmail.com>
**To:** Vernon Unsworth <vernon_unsworth@yahoo.co.uk>
**Sent:** Friday, 16 November 2018, 0:31
**Subject:** Re: Fw: Harry book - Tham Luang Deal

Hi Vern
Thank you for the email.
From Ellis's email. Yes, I agreed with you that he desperately need you on board.
The whole rescue key factor is begin with you, and your recommendation to bring in UK dive team, without this
   incident, the rescue would be a failure.

It also sound clear to me is that, any books or film that wanted to include your part in it, they will need to seek
   your permission or your concent first. Otherwise, you have the right to sue them later on. And I think is good,
   it's mean you have bargaining power.

I agreed with you that everyone try to make deal that likely won't work without our part in it. book or film will be
   incomplete and bored.

and seem like everyone just wanted a free pass from you to help them out, while they making fortune out of our
   story.


Thanet

On Thu, Nov 15, 2018 at 2:28 AM Vernon Unsworth <vernon_unsworth@yahoo.co.uk> wrote:


Hi Thanet

Hope you are both well

My agent Will Robinson is now representing me.

Dr Harry and Dr Craig with coach Ekk have apparently sold rights to a book for $6m dollars+ which has been
   sold on to Universal, but they do have problems

One, the guy Ellis has seen Coach Ekk but the Wild Boars Committee won't allow him to be interviewed. He
   tried 3 days ago in Maesai.

Two, I am integral to the book as you can see from the contents of the email from Ellis

Ellis have constantly phoned me for a meeting but I don't answer or wish to meet with him

The book therefore will fall flat on it's feet and Dr H and Dr C now know this.

What I don't like about all this is that everyone is trying to do deals that won't work. I am the KEY, I am the BIG piece in the Jigsaw.

Ellis now knows that they need to make a BIG offer on the table !!!

I have spoken with Josh who also met with Will yesterday in Chiangmai.

Let me make it perfectly clear that my story, Josh's story and your story is HUGE one of the greatest stories ever !!!

It may not be film material but certainly Book and maybe documentary material.

Let me know your thoughts

Take Care
Best
Vern


----- Forwarded Message -----
**From:** Ellis Henican <ellis@henican.com>
**To:** "vernon_unsworth@yahoo.co.uk" <vernon_unsworth@yahoo.co.uk>
**Cc:** "Dr. Richard "Harry" Harris" <drharry@me.com>
**Sent:** Tuesday, 13 November 2018, 3:21
**Subject:** Harry book


Vern—as Harry and Craig tell their story with Coach Ekk, they want to fully recognize the crucial roles played by others—you very much at the top of the list. Were it not for your experience, knowledge of the cave and swift response, it is no exaggeration to say those boys would most likely not be alive today.
I would like to ask about
—Your previous time in the cave and its special challenges.
—the details of how you were alerted to this crisis and your earliest thoughts (many others were quite pessimistic about the boys' chances)
—your impressions upon first arriving
—your feeling about how the rescue was organized
—how you worked with the other British divers, the Thai military personnel, the US military and others on the scene.
—your thoughts about the rescue plan as it came together.
—Your impressions of how the rescuers did and did not work well together.
—lessons learned for the future for cave diving, rescue, Thailand, the boys and your adopted home.
—any personal recollections about the many characters involved.
I am sure I will think of some other things as we speak. But the goal is to share YOUR insights and unique perspective—good, bad or otherwise. Without it, our book won't be as thorough and truthful as it could be.
I look forward to sitting down with you in a more relaxed environment.
Ellis


Sent from my iPhone