1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Alex Spiro (admitted pro hac vice)
2    alexspiro@quinnemanuel.com
   51 Madison Avenue, 22nd Floor
3  New York, New York 10010
   Telephone: (212) 849-7000
4
   QUINN EMANUEL URQUHART & SULLIVAN, LLP
5  Robert M. Schwartz (Bar No. 117166)
     robertschwartz@quinnemanuel.com
6  Michael T. Lifrak (Bar No. 210846)
     michaellifrak@quinnemanuel.com
7  Jeanine M. Zalduendo (Bar No. 243374)
     jeaninezalduendo@quinnemanuel.com
8  865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
9  Telephone: (213) 443-3000

10 *Attorneys for Defendant Elon Musk*

11

12            **UNITED STATES DISTRICT COURT**

13            **CENTRAL DISTRICT OF CALIFORNIA**

14

15 VERNON UNSWORTH,                    Case No. 2:18-cv-08048

16         Plaintiff,                  Judge: Hon. Stephen V. Wilson

17     vs.                            **DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**
18 ELON MUSK,

19         Defendant.                  Complaint Filed: September 17, 2018
                                       Trial Date: December 2, 2019
20
                                       Hearing Date: November 25, 2019
21                                     Time: 3:00 p.m.
                                       Courtroom: 10A
22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF CONTENTIONS OF FACT AND LAW .................................. 1

I.    THE PARTIES' CLAIMS AND DEFENSES. ............................................ 1

    A.    Mr. Unsworth's Claims. ............................................................ 1

        1.    Defamation Per Se. ............................................................ 1

        2.    Defamation Per Quod. ...................................................... 3

    B.    Mr. Musk's Affirmative Defenses. ............................................ 4

        1.    Consent. ............................................................................. 4

        2.    Unclean Hands. ................................................................. 5

        3.    Failure to Mitigate Damages. ........................................... 6

        4.    Failure to Request a Retraction. ....................................... 7

II.   ANTICIPATED EVIDENTIARY ISSUES. ............................................ 7

III.  IDENTIFICATION OF ANY ISSUES OF LAW. ................................... 8

        1.    Mr. Unsworth Invited And Induced Mr. Musk's Comments, Barring Any Claim Based Upon Them. ......................... 9

        2.    Mr. Unsworth Is A Public Figure. ................................. 11

        3.    BuzzFeed's Republication Of Mr. Musk's Statements Was Not Reasonably Foreseeable .......................................... 13

        4.    The Statements Could Not Be Understood In A Defamatory Way. ................................................................................ 15

        5.    Mr. Unsworth May Recover Only Limited Damages Because He Did Not Request A Retraction. ................... 17

IV.   BIFURCATION OF ISSUES. ............................................................. 18

V.    JURY TRIAL. .................................................................................. 18

VI.   ATTORNEY'S FEES. ........................................................................ 18

VII.  ABANDONMENT OF ISSUES. ........................................................... 18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anderson v. Hearst Pub. Co.*,
   120 F. Supp. 850 (S.D. Cal. 1954) ...................................................17

*Atlanta Journal-Constitution v. Jewell*,
   555 S.E.2d 175 (Ga. App. 2001) ....................................................12

*Bryan v. News Corp.*,
   2018 WL 720057 (Cal. Ct. App. Feb. 6, 2018)...........................2, 3, 14

*Bueno v. Becker*,
   2016 WL 4506070 (Cal. Ct. App. Aug. 29, 2016)...........................5, 9

*Chandler v. Berlin*,
   2019 WL 1471336 (D.D.C., Apr. 3, 2019) ......................................14

*Chavez v. Ill. State Police*,
   251 F.3d 612 (7th Cir. 2001) .........................................................8

*Copp v. Paxton*,
   45 Cal. App. 4th 829 (1996) ........................................................12

*Curley v. Vick*,
   211 Cal. App. 2d 670 (1963) ...................................................2, 3, 13

*Desnick v. Am. Broad. Companies, Inc.*,
   1999 WL 51796 (N.D. Ill. Jan. 29, 1999 .........................................7

*DiGiorgio Corp. v. Valley Labor Citizen*,
   260 Cal. App. 2d 268 (1968).................................................7, 14, 17

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) ........................................................15

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ...............................................................12, 13

*Howard v. S. Cal. Associated Newspapers*,
   95 Cal. App. 2d 580 (1950) .........................................................15

*Information Control Corp. v. Genesis One Computer Corp.*,
   611 F.2d 781 (9th Cir. 1980)........................................................15

*Jankovic v. Int'l Crisis Grp.*,
   822 F.3d 576 (D.C. Cir. 2016) .....................................................12

*Kaelin v. Globe Commc'ns Corp.*,
   162 F.3d 1036 (9th Cir. 1998)......................................................15

*Kendall-Jackson Winery, Ltd. v. Superior Court,*
76 Cal. App. 4th 970 (1999)
*as modified on denial of reh'g* (Jan. 3, 2000)......................................................6

*Koch v. Goldway,*
817 F.2d 507 (9th Cir. 1987)......................................................15

*MacArthur v. San Juan Cty.,*
416 F. Supp. 2d 1098 (D. Utah 2005) ......................................................8

*Marisol A. v. Giuliani,*
126 F.3d 372 (2d Cir. 1997) ......................................................8

*Masson v. New Yorker Magazine, Inc.,*
501 U.S. 496 (1991) ......................................................16

*Mitchell v. Superior Court,*
37 Cal. 3d 268 (1984)......................................................1, 2, 3, 14

*N. Jackson Pharm., Inc. v. Caremark RX, Inc.,*
385 F. Supp. 2d 740 (N.D. Ill. 2005) ......................................................8

*New York Times Co. v. Sullivan,*
376 U.S. 254 (1964) ......................................................12

*People v. Davidson,*
2015 WL 4751166 (Cal. Ct. App. Aug. 12, 2015)......................................................5, 9, 10

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.,*
946 F. Supp. 2d 957 (N.D. Cal. 2013)
*aff'd,* 609 F. App'x 497 (9th Cir. 2015) ......................................................6

*Puranmalka v. Puranmalka,*
149 A.D.2d 493 (N.Y. App. Div. 1989)......................................................5

*Royer v. Steinberg,*
90 Cal. App. 3d 490 (1979) ......................................................5, 9, 11

*Shively v. Bozanich,*
31 Cal. 4th 1230 (2003)
*as modified* (Dec. 22, 2003) ......................................................1, 3, 7, 14

*Sleepys LLC v. Select Comfort Wholesale Corp.,*
779 F.3d 191 (2d Cir. 2015)......................................................5, 9, 11

*Stanley v. Davis,*
2015 WL 435077 (N.D. Cal. Feb. 2, 2015)......................................................8

*Unilogic, Inc. v. Burroughs Corp.,*
10 Cal App. 4th 612 (1992)......................................................6

*Waldbaum v. Fairchild Publications, Inc.,*
627 F.2d 1287 (D.C. Cir. 1980) ......................................................12

## **STATUTORY AUTHORITIES**

Cal. Civ. Code § 48a .................................................................................. 7, 17

## **RULES AND REGULATIONS**

Fed. R. Civ. P. 16(c)(2)(A) ............................................................................... 8

Local Rule 16 ..................................................................................................... 8

Local Rule 16-4 .................................................................................................. 1

## **TREATISES**

Wright & Miller *Fed. Prac. & Proc. Civ.* § 1525 (3d ed. 2019) ...................... 8

## **ADDITIONAL AUTHORITIES**

CACI 1702 ..................................................................................................... 1, 2

CACI 1703 ..................................................................................................... 3, 4

CACI 1721 ......................................................................................................... 5

CACI 1722 ......................................................................................................... 7

CACI 3930 ......................................................................................................... 6

Matthew Bender, Cal. Forms of Jury Instruction 300F.29 ............................... 5

Restatement (Second) of Torts § 583 (1977) .................................................... 9

Restatement (Second) of Torts § 892 (1979) ................................................. 5, 9

## MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Pursuant to Local Rule 16-4, Defendant Elon Musk submits this memorandum of contentions of fact and law.

## I.   THE PARTIES' CLAIMS AND DEFENSES.

### A.   Mr. Unsworth's Claims.

Mr. Musk anticipates that Mr. Unsworth will pursue the following two pleaded claims at trial:

#### 1.   Defamation Per Se.

<u>Summary:</u>  Mr. Unsworth alleges that Mr. Musk is liable for defamation per se for statements Mr. Unsworth asserts call Mr. Unsworth a pedophile, a child rapist, a child sex-trafficker, and the husband to a 12-year old bride in tweets of July 15-17, 2018 and in a September 4, 2018 BuzzFeed article.

<u>Elements:</u>  Assuming that Mr. Unsworth is a private figure and the statements were on a matter of public concern, the elements of defamation per se are as follows: Mr. Unsworth must prove (1) that Mr. Musk published one or more of the statements to a person other than Mr. Unsworth; (2) that these people reasonably understood that the statements made to another person were about Mr. Unsworth; (3) that these people reasonably understood the statements made to another person to mean that Mr. Unsworth was a pedophile, a child rapist, a child sex-trafficker, and the husband to a 12-year old bride; (4) that the statements were false; and (5) that Mr. Musk failed to use reasonable care to determine the truth or falsity of the statements.  <u>Source:</u> CACI 1702.

To the extent that liability is premised on republication of Mr. Musk's statements, Mr. Unsworth must also show that Mr. Musk authorized or intended such republication, or that the republication was reasonably foreseeable.  For the republication to be reasonably foreseeable, it must have been an expected consequence of Mr. Musk's actions.  <u>Source:</u>  *See Shively v. Bozanich*, 31 Cal. 4th 1230 (2003), *as modified* (Dec. 22, 2003); *Mitchell v. Superior Court*, 37 Cal. 3d 268

1  (1984); *Bryan v. News Corp.*, 2018 WL 720057 (Cal. Ct. App. Feb. 6, 2018); *Curley*

2  *v. Vick*, 211 Cal. App. 2d 670 (1963).

3    To recover actual damages, Mr. Unsworth must show that Mr. Musk's wrongful

4  conduct was a substantial factor in causing any of the following:  (1) harm to Mr.

5  Unsworth's property, business, trade, profession, or occupation; (2) expenses Mr.

6  Unsworth had to pay as a result of the defamatory statements; (3) harm to Mr.

7  Unsworth's reputation; or (4) shame, mortification, or hurt feelings.  Source: CACI

8  1702.

9    If Mr. Unsworth does not prove actual damages for harm to reputation or

10  shame, mortification, or hurt feelings, but proves by clear and convincing evidence

11  that Mr. Musk knew the statements were false or that he had serious doubts about the

12  truth of the statements, then the law assumes that Mr. Unsworth's reputation has been

13  harmed and that he has suffered shame, mortification, or hurt feelings. Without

14  presenting evidence of damage, Mr. Unsworth is entitled to compensation for this

15  assumed harm.  Source: CACI 1702.

16    Mr. Unsworth may recover damages to punish Mr. Musk if he proves by clear

17  and convincing evidence that Mr. Musk knew the statements were false or that he had

18  serious doubts about the truth of the statements, and if he proves by clear and

19  convincing evidence that Mr. Musk acted with malice, oppression, or fraud.  Source:

20  CACI 1702.

21    Mr. Musk's Evidence in Opposition:  The evidence will show that the allegedly

22  defamatory statements were protected opinion, and not actionable statements of fact.

23  Even if the jury finds they were statements of fact, the statements examined in

24  context cannot be understood to defame Mr. Unsworth and, indeed, Mr. Unsworth is

25  not aware of anyone who believed the purportedly factual assertions he attributes to

26  Mr. Musk's statements.  Mr. Musk did not intend, authorize, or expect BuzzFeed to

27  publish his off-the-record statements, and BuzzFeed's policies at the time did not

28  specify a need for a prior agreement for a statement to be treated as off-the-record.

1  Mr. Unsworth invited, and therefore consented to, Mr. Musk's statements and

2  therefore should not benefit from his own conduct.  Finally, Mr. Unsworth has not

3  established any damages and failed to mitigate any damages he did suffer, including

4  by failing to try to stop BuzzFeed's publication or to seek a retraction.

5  ## 2.  Defamation Per Quod.

6  Summary:  Mr. Unsworth alleges that Mr. Musk is liable for defamation per

7  quod for his statements calling Mr. Unsworth a liar in his tweets of July 15-17, 2018

8  and in the September 4, 2018 BuzzFeed article.

9  Elements:  Assuming that Mr. Unsworth is a private figure and the statements

10  were on a matter of public concern, the elements of defamation per quod are as

11  follows:  Mr. Unsworth must prove (1) that Mr. Musk published one or more of the

12  statements to a person other than Mr. Unsworth; (2) that these people reasonably

13  understood that the statements made to another person were about Mr. Unsworth; (3)

14  that because of the facts and circumstances known to the readers of the statements,

15  they tended to injure Mr. Unsworth in his occupation, or to expose him to hatred,

16  contempt, ridicule, or shame, or to discourage others from associating or dealing with

17  him; (4) that the statements were false; (5) that Mr. Musk failed to use reasonable

18  care to determine the truth or falsity of the statements; (6) that Mr. Unsworth suffered

19  harm to his property, business, profession, or occupation; and (7) that the statement

20  was a substantial factor in causing Mr. Unsworth's harm.  Source: CACI 1703.

21  As discussed *supra*, to the extent that liability is premised on republication, Mr.

22  Unsworth must show that Mr. Musk authorized or intended such republication or that

23  such republication was reasonably foreseeable.  For the republication to be

24  reasonably foreseeable, it must have been an expected consequence of Mr. Musk's

25  actions.  Source:  *See Shively v. Bozanich*, 31 Cal. 4th 1230 (2003), *as modified* (Dec.

26  22, 2003); *Mitchell v. Superior Court*, 37 Cal. 3d 268 (1984); *Bryan v. News*

27  *Corp.*, 2018 WL 720057 (Cal. Ct. App. Feb. 6, 2018); *Curley v. Vick*, 211 Cal. App.

28  2d 670 (1963).

To recover actual damages, Mr. Unsworth must show that Mr. Musk's wrongful conduct was a substantial factor in causing any of the following:  (1) harm to Mr. Unsworth's property, business, trade, profession, or occupation; (2) expenses Mr. Unsworth had to pay as a result of the defamatory statements; (3) harm to Mr. Unsworth's reputation; or (4) shame, mortification, or hurt feelings.  <u>Source</u>:  CACI 1703.

Mr. Unsworth may recover damages to punish Mr. Musk if he proves by clear and convincing evidence that Mr. Musk knew the statements were false or that he had serious doubts about the truth of the statements, and if he proves by clear and convincing evidence that Mr. Musk acted with malice, oppression, or fraud.  <u>Source</u>:  CACI 1703.

<u>Mr. Musk's Evidence in Opposition</u>:  The evidence will show that the allegedly defamatory statements were protected opinion, and not actionable statements of fact.  Even if the jury finds they were statements of fact, the factual assertion that Mr. Unsworth is a liar is true.  Mr. Musk did not intend, authorize, or expect BuzzFeed to publish his off-the-record statements and BuzzFeed's policies at the time did not specify the need for a prior agreement for a statement to be treated as off-the-record.  Mr. Unsworth invited, and therefore consented to, Mr. Musk's statements and therefore should not benefit from his own conduct.  Finally, Mr. Unsworth has not established any damages and failed to mitigate any damages he did suffer, including by failing to try to stop BuzzFeed's publication or to seek a retraction.

**B.    Mr. Musk's Affirmative Defenses.**

Mr. Musk asserts the following affirmative defenses with regard to the allegedly defamatory statements contained in his Tweets and in the September 4, 2018 BuzzFeed article:

**1.    Consent.**

<u>Summary</u>:  Mr. Musk asserts that Mr. Unsworth's claims are barred because he consented to the publication of Mr. Musk's statements.

<u>Elements:</u>  Mr. Musk is not responsible for any reputational harm Mr. Unsworth claims has incurred if Mr. Musk shows that Mr. Unsworth consented, by words or conduct, to the publication or republication of Mr. Musk's communication of the statement to others.  Inaction or silence can constitute actual or implied consent to publication.  Consent may be inferred from the circumstances surrounding Mr. Unsworth's words or conduct.  <u>Source:</u>  CACI 1721; *Royer v. Steinberg*, 90 Cal. App. 3d 490 (1979); *Bueno v. Becker*, 2016 WL 4506070 (Cal. Ct. App. Aug. 29, 2016); *People v. Davidson*, 2015 WL 4751166 (Cal. Ct. App. Aug. 12, 2015); *see also Sleepys LLC v. Select Comfort Wholesale Corp.*, 779 F.3d 191 (2d Cir. 2015); *Puranmalka v. Puranmalka*, 149 A.D.2d 493 (N.Y. App. Div. 1989); Restatement, Torts, 2d, § 892.

<u>Mr. Musk's Evidence in Support:</u>  The evidence will show that Mr. Unsworth sought to use his proximity to the Thai Cave rescue as means for monetary gain.  To do so, Mr. Unsworth asserted on an international news broadcast that Mr. Musk did not care about the lives of the trapped boys and was engaging in only a PR stunt, provoking a response from Mr. Musk.  Later, as a result of Mr. Unsworth publicizing his letter threatening to sue Mr. Musk, which expressly invited Mr. Musk to respond, Mr. Musk responded with an "off-the-record" email to a BuzzFeed reporter directing him to further investigate Mr. Unsworth's background based on information provided by an investigator on the subject matter that Mr. Unsworth claimed was defamatory.

### 2.   <u>Unclean Hands.</u>

<u>Summary:</u>  Mr. Musk asserts that Mr. Unsworth's claims are barred because Mr. Unsworth's conduct connected with the issues in this case was inequitable and resulted in prejudice to Mr. Musk.

<u>Elements:</u>  Mr. Musk must show (1) that Mr. Unsworth's conduct has been inequitable, unfair, unconscionable, or deceitful; (2) that such conduct resulted in prejudice to Mr. Musk; and (3) that Mr. Unsworth's misconduct was connected with the issues in this case.  <u>Source:</u>  Matthew Bender, Cal. Forms of Jury Instruction 300F.29;

*Unilogic, Inc. v. Burroughs Corp.*, 10 Cal App. 4th 612 (1992); *Kendall–Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970 (1999), *as modified on denial of reh'g* (Jan. 3, 2000); *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497 (9th Cir. 2015).

Mr. Musk's Evidence in Support:  The evidence will show that Mr. Unsworth sought to monetize his proximity to the Thai Cave rescue by baselessly attacking Mr. Musk's motivation for assisting the trapped boys.  Mr. Unsworth engaged in a campaign, starting when the rescue was still underway, to claim fame and fortune for himself, while diminishing the role and recognition accorded everyone else involved. As part of this campaign, Mr. Unsworth asserted on an international news broadcast that Mr. Musk did not care about the lives of the trapped boys and was engaging in only a PR stunt.

### 3.   Failure to Mitigate Damages.

Summary:  Mr. Musk asserts that Mr. Unsworth's damages must be reduced to the extent that he failed to mitigate his damages, in particular in failing to request that BuzzFeed not publish its September 4, 2018 article and in failing to request a retraction.

Elements:  Mr. Musk must prove by a preponderance of the evidence that Mr. Unsworth has failed to minimize his damages.  A plaintiff who has been injured by the defamation of another must use reasonable care to prevent any aggravation or increase of the injury.  Mr. Unsworth is not entitled to be compensated for any injury or aggravation of injury caused by his failure to minimize damages.  His damages award must be reduced to the extent that Mr. Unsworth made his condition worse by not taking reasonable care to prevent any aggravation or increase of the injury. Source:  CACI 3930.

Mr. Musk's Evidence in Support:  The evidence will show that, to the extent any damages exist, Mr. Unsworth failed to mitigate.  Despite knowing about it in advance, Mr. Unsworth never urged BuzzFeed not to publish the allegedly

1  defamatory article and instead welcomed it.  Once the article was published, Mr.

2  Unsworth never requested a retraction from BuzzFeed.

3  **4.    <u>Failure to Request a Retraction.</u>**

4  <u>Summary:</u>  Mr. Musk asserts that, with regard to any alleged damages resulting

5  from BuzzFeed's republication of Mr. Musk's statements in the September 4, 2018

6  article, Mr. Unsworth may recover only special damages because he failed to request

7  a retraction.

8  <u>Elements:</u>  Because BuzzFeed News is a news publication, Mr. Unsworth may

9  recover for the republication of Mr. Musk's statements by BuzzFeed News only the

10  following:

11  a.  Damages to property, business, trade, profession, or occupation; and

12  b.  Damages for money spent as a result of the defamation.

13  However, this limitation does not apply if Mr. Unsworth proves both of the

14  following:

15  a.  That Mr. Unsworth demanded a correction of the statement within 20

16  days of discovering the statement; and

17  b.  That BuzzFeed News did not publish an adequate correction.

18  <u>Source</u>:  CACI 1722; Cal. Civ. Code, § 48a; *Shively v. Bozanich*, 31 Cal. 4th 1230

19  (2003), *as modified* (Dec. 22, 2003);  *DiGiorgio Corp. v. Valley Labor Citizen,* 260

20  Cal. App. 2d 268 (1968); *see also Desnick v. Am. Broad. Cos., Inc.*, 1999 WL 51796

21  (N.D. Ill. Jan. 29, 1999).

22  <u>Mr. Musk's Evidence in Support:</u>  Mr. Unsworth is suing Mr. Musk

23  based on BuzzFeed's allegedly defamatory article, but Mr. Unsworth never requested

24  a retraction from BuzzFeed and thus BuzzFeed has never published a retraction.

25  **II.    <u>ANTICIPATED EVIDENTIARY ISSUES.</u>**

26  The parties continue to work in good faith to narrow, if not resolve, evidentiary

27  disputes.  Notwithstanding those efforts, Mr. Musk anticipates that there may be

28

1  evidentiary disputes that will be the subject of motions *in limine* or other pre-trial

2  submissions filed by both parties.

3  ### III.    <u>IDENTIFICATION OF ANY ISSUES OF LAW.</u>

4      Rule 16 empowers district courts, at any pretrial conference, to "consider and

5  take appropriate action on … formulating and simplifying the issues, and eliminating

6  frivolous claims or defenses." Fed. R. Civ. P. 16(c)(2)(A).  In this regard, "Rule

7  16(c), of course, affords the district court wide latitude at pre-trial conferences to

8  narrow the issues and to require, in advance of trial, that plaintiffs pinpoint the

9  evidence they will rely on to prove each individual claim." *Marisol A. v. Giuliani*,

10  126 F.3d 372, 379 (2d Cir. 1997); *see Stanley v. Davis*, 2015 WL 435077, at *3 (N.D.

11  Cal. Feb. 2, 2015) (noting that "Fed. R. Civ. Pro. 16(c)(2) allows a district court

12  broad authority to take action on a variety of pre-trial matters"); 6A Wright & Miller

13  Fed. Prac. & Proc. Civ. § 1525 (3d ed. 2019) ("The court thus is directed to define the

14  issues, facts, and theories actually in contention, which means that extraneous issues

15  should be weeded out.").

16      Because Rule 16 authorizes district courts to use the pretrial conference "to

17  determine whether there are any issues remaining in the case that justify proceeding

18  to a full trial on the merits," the Court may simplify the upcoming trial in this case by

19  dismissing claims that cannot be proved. *Chavez v. Ill. State Police*, 251 F.3d 612,

20  654 (7th Cir. 2001) (quotation marks omitted) (affirming dismissal of claims pursuant

21  to Rule 16); *N. Jackson Pharm., Inc. v. Caremark RX, Inc.*, 385 F. Supp. 2d 740, 743

22  (N.D. Ill. 2005) (granting motion to narrow issues under Rule 16); *MacArthur v. San*

23  *Juan Cty.*, 416 F. Supp. 2d 1098, 1112-13 (D. Utah 2005) (dismissing unsupportable

24  claims pursuant to Rule 16).

25      Mr. Musk identifies the following issues of law:

26

27

28

Case No. 2:18-cv-08048
DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1

### 1.    <u>Mr. Unsworth Invited And Induced Mr. Musk's Comments,</u>
### <u>Barring Any Claim Based Upon Them.</u>

3      This Court should dismiss prior to trial Mr. Unsworth's claims as to Mr.

4 Musk's tweets and BuzzFeed's publication of Mr. Musk's response to Mr.

5 Unsworth's lawsuit threat because Mr. Unsworth impliedly consented to these

6 publications.  Mr. Unsworth directly challenged Mr. Musk's motivations for assisting

7 in the Thai Cave rescue, thus inviting Mr. Musk's corresponding challenge to Mr.

8 Unsworth's motivations.  And Mr. Unsworth's counsel published his lawsuit demand

9 letter on Twitter and sent it to media entities, thus inviting media attention and

10 comment from Mr. Musk, which BuzzFeed published.

11      "The primary purposes of the doctrine of consent in defamation law is to

12 prevent a party from inviting or inducing indiscretion and thereby laying the

13 foundation of a lawsuit for his own pecuniary gain."  *Royer v. Steinberg*, 90 Cal. App.

14 3d 490, 499 (1979) (cited in CACI 1721); *see also Sleepys LLC v. Select Comfort*

15 *Wholesale Corp.*, 779 F.3d 191, 199-200 (2d Cir. 2015) ("[I]n some circumstances, a

16 person's intentional eliciting of a statement she expects will be defamatory can

17 constitute her consent to the making of the statement.").  "[C]onduct that gives

18 apparent consent is sufficient to bar recovery."  Restatement (Second) of Torts § 583

19 (1977).  "Whether words or other conduct are reasonably to be interpreted as

20 expressions of consent to the publication is to be determined by the reasonable

21 inferences from the conduct in the light of the circumstances surrounding it."  *Id.*

22 Consent in fact may "be manifested by silence or inaction, if the circumstances or

23 other evidence indicate that the silence or inaction is intended to give

24 consent."  Restatement (Second) of Torts § 892 (1979); *see generally*, *Bueno v.*

25 *Becker*, 2016 WL 4506070, at *2 (Cal. Ct. App. Aug. 29, 2016) (discussing consent

26 in tort and contract, holding that "plaintiff may also express consent by silence or

27 inaction if a reasonable person would understand that the silence or inaction intended

28 to indicate consent"); *People v. Davidson*, 2015 WL 4751166, at *7 n. 3 (Cal. Ct.

App. Aug. 12, 2015) (discussing California civil jury instructions on consent, noting a "person may also express consent by silence or inaction if a reasonable person would understand that the silence or inaction intended to indicate consent").

Although the tweets and BuzzFeed's republication of Mr. Unsworth's emails must be analyzed separately, each necessarily resulted from Mr. Unsworth's inviting public attention to these issues and a response from Mr. Musk.

As to the tweets, Mr. Unsworth's baseless accusations on an international news broadcast that Mr. Musk did not care about the lives of the trapped boys and was engaging in only a PR stunt was targeted—intentionally or not—at provoking a response from Mr. Musk. Mr. Unsworth criticized Mr. Musk's rescue efforts and insulted Mr. Musk by making off-color remarks on CNN. (TX 13, 14.) Unlike Mr. Musk, Mr. Unsworth never apologized, but subsequently doubled down on his remarks, including to journalists. (TX 8.)

As to the off-the-record email to the BuzzFeed reporter, Mr. Musk sent that email (and the subsequent email "on background") as a direct response to Mr. Unsworth publicizing his threat to sue Mr. Musk, in a letter that expressly invited Mr. Musk to respond. Mr. Unsworth's counsel tweeted the demand letter to Musk (TX 876), and sent the demand letter to journalists, including the Editor-in-Chief of BuzzFeed (TX 686).

Mr. Musk responded with an "off-the-record" email to a BuzzFeed reporter directing him to look into Mr. Unsworth's background based on information provided by an investigator on the very subject matter that Mr. Unsworth claimed was defamatory. After learning that Mr. Musk had made statements to BuzzFeed, Mr. Unsworth's counsel provided comment and facts to BuzzFeed to assist with, rather than attempting to stop, BuzzFeed's republication of Mr. Musk's off-the-record statements. (TX 690-694, 702.) Thus, not only did Mr. Unsworth and his representatives fail to request that BuzzFeed not publish the information, they

1   voluntarily chose to make a statement to BuzzFeed for inclusion in the allegedly

2   defamatory article.

3         These circumstances fall squarely within the consent exception to liability for

4   defamation.  Mr. Unsworth "invit[ed]" and "induc[ed]," *Royer*, 90 Cal. App. 3d at

5   499, Mr. Musk to respond to the baseless accusations that Mr. Musk depravedly used

6   the trapped boys as a PR stunt and crude admonishment that Mr. Musk should "stick

7   his submarine where it hurts."  Mr. Musk responded in turn.  And Mr. Unsworth's

8   repeated public representations that Mr. Unsworth was preparing a lawsuit against

9   Mr. Musk for calling him a pedophile likewise invited media attention and the

10  corresponding response from Mr. Musk.  Further, the lawsuit demand letter from Mr.

11  Unsworth's counsel—which his counsel tweeted out to his followers—specifically

12  requested Mr. Musk respond to the allegation that he defamed Mr. Unsworth.  Mr.

13  Unsworth's counsel's publication of this letter and invitation to the media to write

14  about it "constituted nothing less than a request for the publication of the evidence"

15  supporting Mr. Musk's allegedly defamatory statement.  *Royer*, 90 Cal. App. 3d at

16  498 (holding a "challenge" "to prove" the truth of the charges qualified as consent);

17  *Sleepys LLC*, 779 F.3d at 199-200 ("When a plaintiff sues for defamation based on a

18  statement of the defendant elicited by the plaintiff with some reason to expect that the

19  defendant's statement might be defamatory, the more the evidence supports the

20  proposition that the plaintiff elicited the statement with a high degree of certainty that

21  it would be defamatory, for the purpose of enabling a lawsuit, the stronger the

22  defendant's case for deeming the statement consented to, thus barring the claim.").

23        For these reasons, this Court should hold that Mr. Unsworth consented, by his

24  conduct, to Mr. Musk's responses to his inflammatory statements and dismiss the

25  claims prior to trial.

26              **2.    Mr. Unsworth Is A Public Figure.**

27        This Court, having already ruled that the Thai Cave rescue is a matter of public

28  concern, also should hold before trial that the "actual malice" standard applies to Mr.

1  Unsworth's claims because the statements are germane to the controversy.   *See New*
2  *York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *see also Gertz v. Robert Welch,*
3  *Inc.*, 418 U.S. 323, 334 (1974).

4       A plaintiff is a limited purpose public figure if there is a public controversy, the
5  plaintiff voluntarily injects himself into the controversy and/or seeks to influence the
6  resolution of it, and the alleged defamatory statement is "germane" to the plaintiff's
7  participation in the controversy.  *See Copp v. Paxton*, 45 Cal. App. 4th 829, 845-46
8  (1996).   A statement is germane unless it is "wholly unrelated" to the public
9  controversy.  *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 589 (D.C. Cir. 2016).   In
10 particular, statements are germane if they relate "to understanding [plaintiff's] role
11 and why he wanted to be involved" in the controversy.  *Id.*  Because the germaneness
12 inquiry focuses on the plaintiff's role—and not the nature of the underlying
13 controversy itself—courts have held comments germane when they bear on a
14 plaintiff's credibility.  Where the plaintiff has injected himself into a public
15 controversy, the public is entitled to know whether he should be believed.  Thus, in
16 *Waldbaum v. Fairchild Publications, Inc.*, the D.C. Circuit explained that comments
17 about the plaintiff's "talents, education, experience, and motives" were germane
18 because such comments "could have been relevant to the public's decision whether to
19 listen to him."  627 F.2d 1287, 1298 (D.C. Cir. 1980); *see also Atlanta Journal-*
20 *Constitution v. Jewell*, 555 S.E.2d 175, 183 (Ga. App. 2001) (comments comparing
21 the plaintiff to a serial killer and discussing his "aberrant personality" and "bizarre
22 employment history" held germane to a controversy over the 1996 Olympic
23 bombing).

24       This Court, having indicated that the first two elements of the limited-purpose
25 public figure test are met, also should hold that the germaneness requirement is met.
26 Mr. Musk's statements were germane to the question of the propriety of and
27 motivation for Mr. Unsworth's participation in the rescue.  As in *Jewell*, Mr. Musk's
28 statements about Mr. Unsworth's character "might help the public decide how much

credence should be given to the plaintiff." 555 S.E.2d at 185. If Mr. Unsworth were a pedophile, the public would be entitled to use that information to evaluate his credibility and motives for participating in the rescue. Consequently, Mr. Musk's comments were germane, and Mr. Unsworth is at minimum a limited purpose public figure.

Indeed, Mr. Unsworth likely can be considered a general ("all purpose") public figure. As the Supreme Court explained in *Gertz*, individuals are properly classified as public figures "by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention …." 418 U.S. at 342. Mr. Unsworth has used his role in the Thai Cave rescue as a springboard to fame, starting with the CNN interview he gave attacking Mr. Musk.[1] Indeed, Mr. Unsworth has given numerous television interviews, hired an agent, sought book and movie deals, and received a high-profile honor from the Queen of the United Kingdom. (*See, e.g.*, Dkt. 59, at ¶ 18). Thus, Mr. Unsworth may be considered a general public figure.

In either event, this Court should determine before trial that Mr. Unsworth is required to show actual malice.

### 3. <u>BuzzFeed's Republication Of Mr. Musk's Statements Was Not Reasonably Foreseeable.</u>

This Court also should narrow the issues for trial by excluding any claims based on BuzzFeed's publication of Mr. Musk's off-the-record and "on background" emails because Mr. Musk neither intended, authorized, nor reasonably expected their publication.

---

[1] Notably, Mr. Unsworth withheld until after the close of discovery hundreds of pages of responsive documents showing his attempts to monetize his role in the rescue and demonstrating he had hired an agent. (Dkt. 118.) Mr. Musk seeks to enforce a trial subpoena to obtain additional communications with his agent as well as other agents and production companies with whom Mr. Unsworth met and communicated. (*Id.*)

A defendant is only liable for defamation based on a third-party's republication if the republication was intended or authorized, *Curley v. Vick*, 211 Cal. App. 2d 670, 673 (1963), or otherwise "reasonably foreseeable." *Shively v. Bozanich*, 31 Cal. 4th 1230, 1243 (2003), *as modified* (Dec. 22, 2003); *see also DiGiorgio Corp. v. Valley Labor Citizen,* 260 Cal. App. 2d 268, 273 (1968) (holding original author of an article not liable for republication because republication was not reasonably foreseeable). "Reasonable foreseeability is a narrow exception to the single publication rule," and it is not sufficient that the republication was possible. *Bryan v. News Corp.*, 2018 WL 720057, at *10 (Cal. Ct. App. Feb. 6, 2018). Instead, a higher standard applies— whether "the repetition was reasonably to be expected." *Mitchell v. Superior Court*, 37 Cal. 3d 268, 281 (1984).

The parties here dispute whether the standard for reasonable foreseeability is solely objective, as Mr. Unsworth claims (and Mr. Musk disputes). "Intended," "authorized," and "expected," however, all depend upon Mr. Musk's genuinely held belief. Mr. Musk clearly marked his email "off the record," (TX 42), and Mr. Musk testified that he never expected BuzzFeed to publish the contents of his emails. No evidence calls into question whether that belief was reasonably held. Instead, the text of the email confirms that Mr. Musk wanted BuzzFeed to investigate the investigator's findings that he was passing along. BuzzFeed's own public standards in effect at the time Mr. Musk sent his email said nothing about an advance agreement being necessary for a communication to remain off the record. (TX 508.) Under no standard could the republication be reasonably foreseeable. *See, e.g.*, *Chandler v. Berlin*, 2019 WL 1471336, at *3-5 (D.D.C. Apr. 3, 2019) (original publisher not liable for the republication of a private document marked "confidential" where publically available information at the time of the original publication would not have put a reasonable person on notice that republication was an expected consequence of his actions). Based on the above, "no reasonable juror could find

1  [BuzzFeed's] republication… reasonably foreseeable." *Id.* at *5.  Thus, the Court

2  should narrow the issues for trial to exclude the BuzzFeed September 4, 2018 article.

3          **4.**    **<u>The Statements Could Not Be Understood In A Defamatory</u>**

4                 **<u>Way.</u>**

5        This Court also should narrow the issues for trial by excluding any claims

6  based on Mr. Musk's emails to BuzzFeed and BuzzFeed's republication of them

7  because, as the article makes clear, Mr. Musk's statements could not be and were not

8  understood in a defamatory manner.

9        To be actionable defamation, a reasonable reader must believe that statements

10  are supported by objective facts, otherwise statements are "nonactionable opinion."

11  *Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009).  Thus, "the law of defamation

12  teaches … that in some instances speech must seek its own refutation without

13  intervention by the courts" and "[b]ase and malignant speech is not necessarily

14  actionable." *Koch v. Goldway*, 817 F.2d 507, 510 (9th Cir. 1987).  Even if a

15  statement could be read as an assertion of fact, a reasonable reader must understand it

16  to defame the plaintiff for a plaintiff to succeed on a claim for defamation.

17  *Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th

18  Cir. 1980).

19        "[A] defamatory meaning must be found, if at all, in a reading of the

20  publication as a whole." *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1041 (9th

21  Cir. 1998).  "In determining whether or not [a publication] is libelous, the article must

22  be read as a whole in order to understand its import and the effects which it was

23  calculated to have upon the minds of those who read it." *Howard v. S. Cal.*

24  *Associated Newspapers*, 95 Cal. App. 2d 580, 584 (1950) (citation omitted).  As the

25  Ninth Circuit has explained, a court must "examine the statement in its totality in the

26  context in which it was uttered or published," "must consider all the words used, not

27  merely a particular phrase or sentence," and "must give weight to cautionary terms

28  used by the person publishing the statement." *Information Control Corp.*, 611 F.2d

15

at 784.  Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published." *Id.*

No reasonable factfinder could find that the September 4, 2018 BuzzFeed article contains defamatory statements of objective fact accusing Mr. Unsworth of being, *inter alia*, a pedophile, a child rapist, a child sex-trafficker, or the husband of a 12-year old bride.  The article does accuse Mr. Unsworth of engaging in any untoward behavior, and does not even imply that anything Mr. Musk said about him is true.  The entire point of the BuzzFeed article was that BuzzFeed had not been able to verify Mr. Musk's statements.  (Dkt. 1, at 56.)  To the contrary, the article notes that BuzzFeed "could find no evidence to support that claim, and Musk did not provide any documentation to support his accusations."  (*Id.* at 57.)  The thrust of the article is not even about Mr. Unsworth; it is about Mr. Musk and Mr. Musk's "erratic" behavior as the CEO of Tesla.  (*Id.* at 57.)  The article does not accuse Mr. Unsworth of being a pedophile—it accuses Mr. Musk of being an erratic bully.  (*Id.*)  The words and context of the BuzzFeed article demonstrate that nothing in the article was capable of defamatory meaning.

Further, examining Mr. Musk's words in context demonstrates that even his email to BuzzFeed, examined in isolation, was not defamatory.  In plain text, Mr. Musk's email to BuzzFeed directed BuzzFeed to further investigate the allegations contained therein, which must be considered as part of the context.  *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) ("[W]ords and punctuation express meaning.  Meaning is the life of language.").  The recipient of the email understood that Mr. Musk was requesting only an investigation (TX 42), and concluded that Mr. Musk was acting erratically (Dkt. 1 at 57.)  Thus, even were the Court to examine Mr. Musk's emails alone, Mr. Musk's statements still are not actionable defamation.

Because nothing in Mr. Musk's emails, republished in the BuzzFeed article, can reasonably be read to defame Mr. Unsworth, since the article disclaims that any potential statements of fact are true, the Court should narrow the issues for trial to exclude the BuzzFeed September 4, 2018 article.  The statements in Mr. Musk's emails included in the BuzzFeed article are not defamatory per se.

### 5. Mr. Unsworth May Recover Only Limited Damages Because He Did Not Request A Retraction.

If this Court does not dispose of Mr. Unsworth's claims arising from the September 4, 2018 BuzzFeed article, the Court should at minimum limit the scope of damages Mr. Unsworth may claim as a result of this publication.  Because BuzzFeed News is a news publication, California law states that Mr. Unsworth may recover only special damages, that is damages to property, business, trade, profession, or occupation, and damages for money spent as a result of the defamation.  Cal. Civ. Code § 48a ("In any action for damages for the publication of a libel in a daily or weekly news publication…plaintiff shall only recover special damages…."); *see also Anderson v. Hearst Pub. Co.*, 120 F. Supp. 850, 852 (S.D. Cal. 1954) (requiring plaintiff to request a retraction before recovering general damages is constitutional); *DiGiorgio Corp.*, 260 Cal. App. 2d at 273 (failure to request a retraction "limits the extent of the damages recoverable by the plaintiff").

This limitation applies unless Mr. Unsworth proves both that he demanded a correction of the statement within 20 days of discovering the statement, and that BuzzFeed News did not publish an adequate correction.  Cal. Civ. Code § 48a.  Mr. Unsworth never demanded a retraction or correction from BuzzFeed of its September 4, 2018 article, and Mr. Unsworth has admitted that he did not request a retraction from BuzzFeed and that BuzzFeed has never published a retraction.[2]  Consequently,

---

[2]  Mr. Unsworth's counsel clearly knew that the article would be published before it was available to the public, because Mr. Unsworth's counsel is quoted in the article

1 the Court should determine before trial that the jury may only award Mr. Unsworth

2 special damages with regard to the BuzzFeed publication.

3 **IV.   BIFURCATION OF ISSUES.**

4   The parties have not requested bifurcation in this case, and Mr. Musk does not

5 believe that bifurcation is warranted.

6 **V.   JURY TRIAL.**

7   Mr. Unsworth's claims for defamation per se and defamation per quod are

8 triable to a jury, as are Mr. Musk's affirmative defenses of consent, unclean hands,

9 failure to mitigate damages, and failure to request a retraction.  Mr. Musk seeks a jury

10 trial on all of the claims and issues in this case.

11 **VI.   ATTORNEY'S FEES.**

12   Neither Mr. Unsworth nor Mr. Musk is entitled to attorney's fees on the issues

13 set for trial.

14 **VII.   ABANDONMENT OF ISSUES.**

15   Mr. Musk has not abandoned any defenses or issues.

16 DATED:  November 18, 2019   Respectfully submitted,

17

18         QUINN EMANUEL URQUHART
         & SULLIVAN, LLP

19

20        By */s/ Alex Spiro*

21          Alex Spiro (admitted *pro hac vice*)
         *Attorneys for Defendant Elon Musk*

22

23

24

25 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26 more than once giving his opinions about Mr. Musk's statements.  (Dkt. 1, at 56-57,
62.)  This puts Mr. Unsworth's failure to request a correction or retraction in

27 context—there was nothing to correct or retract, because the BuzzFeed article does

28 not say anything bad about Mr. Unsworth.