QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (admitted pro hac vice)
  alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
  jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON MR. UNSWORTH,<br><br>    Plaintiff,<br><br>    vs.<br><br>ELON MUSK,<br><br>    Defendant. | Case No. 2:18-cv-08048 |
| | Judge: Hon. Stephen V. Wilson |
| | **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE OF PURPORTED PRESS LEAKS** |
| | Complaint Filed: September 17, 2018<br>Trial Date: December 2, 2019 |

1    Much of Mr. Unsworth's opposition consists of histrionics over a footnote in
2 Mr. Musk's motion about a connection between James Howard and Mr. Unsworth's
3 attorney in England and over a fraud report that was filed against Mr. Howard in
4 London.  Mr. Musk will address these highly-tangential issues below.

5    Regardless, they should not distract from the actual questions presented by this
6 motion: Should Mr. Unsworth be permitted to offer evidence that Mr. Howard and
7 Mr. Birchall (the head of Mr. Musk's home office) discussed potential leaks to the
8 media even though: (a) it was Mr. Howard's idea to leak information; (b) there is no
9 reliable evidence that any "leaks" occurred; (c) no stories were ever published based
10 on or as a result of any "leaks"; (d) Mr. Unsworth's case is not based on any
11 statement that allegedly could have been "leaked"; and (e) the non-existent "leaks"
12 have nothing to do with what the jury will decide, including whether Mr. Musk's
13 tweets were defamatory, whether he was negligent or malicious in relying on Mr.
14 Howard's reports about Mr. Unsworth, and whether it was reasonably foreseeable
15 that BuzzFeed would republish Mr. Musk's "off the record" email.

16    Mr. Unsworth cannot articulate a valid reason to inject this evidence into the
17 case.  There are no factual "discrepancies" between the non-existent "leaks" and Mr.
18 Musk's email to BuzzFeed.  The "leaks" have no bearing on Mr. Musk's prior "pedo
19 guy" tweet, and they do not relate to whether Mr. Musk intended BuzzFeed to publish
20 his off-the-record email.  The evidence is just not relevant.  Evidence of "leaks" that
21 may have never occurred and are not part of Mr. Unsworth's case would confuse the
22 jury and improperly prejudice Mr. Musk.  The only purpose of the evidence is to
23 enable Mr. Unsworth to argue that Mr. Musk acted in conformance with this same
24 "character" when he allegedly defamed Mr. Unsworth, which is barred by Rule 404.

25    As to Mr. Unsworth's focus on the fraud report filed in London with respect to
26 Mr. Howard's conduct, this is much ado about nothing despite Mr. Unsworth's
27 dramatic invocation of "sanctions," revocation of counsel's pro hac vice status, and
28 claims of "obstruction of justice." (Opp. at 1, 11-12.)  In a footnote, Mr. Musk's

1   opening brief noted only that Mr. Howard had been in contact with a friend who is a

2   lawyer at Mr. Unsworth's London law firm, Howard Kennedy LLP, at the same time

3   Mr. Howard was having "leak" discussions with Mr. Birchall.  Among other things,

4   Mr. Howard told Mr. Birchall that he was meeting with a lawyer at Howard Kennedy,

5   and Mr. Howard later provided detailed information supposedly from that lawyer,

6   including Mr. Unsworth's travel schedule, the time, location, and duration of Mr.

7   Unsworth's meetings with his lawyers (including providing a picture of Mr.

8   Unsworth leaving a meeting), and information about where Mr. Unsworth would file

9   his case and when.  (Lifrak Supp. Decl. Ex. 10 (TX 67).)  The footnote expressed

10   concern as to whether information was flowing in the other direction, that is, from

11   Mr. Howard to his friend in Mr. Unsworth's firm.  It strains credulity to believe that

12   Mr. Howard received this level of detail without providing information in return.

13        Mr. Musk will be forced to litigate this if Mr. Unsworth presents evidence of

14   the simultaneous discussions about "leaks" to the press or other connected

15   information.  That is all Mr. Musk said in the footnote.  The fraud report, which was

16   filed by Excession LLC (not Alex Spiro, who is simply listed as a contact person)

17   against the investigator (not Mr. Unsworth's lawyers at Howard Kennedy, LLP)

18   pointed to those same facts and concerns.  And Excession LLP stands by them.

19   **I.    THE PURPORTED PRESS LEAKS ARE NOT RELEVANT TO ANY**

20   **ISSUE IN THE CASE.**

21        That Mr. Howard discussed potential leaks with Mr. Birchall is not relevant to

22   any "fact [that] is of consequence in determining the action."  Fed. R. Evid. 401.[1]

23

24   _____

[1]   Mr. Unsworth's discussion of the factual background consists of half-quotes and

25   unreliable evidence.  Among other things, Mr. Unsworth extensively cites to

26   speculative testimony from Mr. Birchall about what Mr. Musk "wanted."  (*See* Opp.
     at 3-4.)  Mr. Unsworth cites no reliable evidence about Mr. Musk's intentions, such

27   as emails, texts, alleged statements by Mr. Musk, or Mr. Musk's own testimony about

28   the potential leaks (because there is none).  Moreover, it remains undisputed that Mr.

1    Mr. Unsworth's arguments to the contrary do not withstand scrutiny.

2    First, Mr. Unsworth argues that the conversations between Mr. Birchall and

3 Mr. Howard are relevant because there are "discrepancies" between the information

4 they discussed giving to the media and what Mr. Musk wrote to BuzzFeed in his "off-

5 the-record" email, in which he implored BuzzFeed to look further into Mr.

6 Unsworth's background.  (Opp. at 7.)  Mr. Unsworth argues that these "sharp

7 discrepancies" show "Musk's knowledge that his accusations [in his BuzzFeed email]

8 were false."  (*Id.*)  This argument, however, makes little sense because:

9    • There is no evidence that Mr. Musk saw or was even aware of any of

10      discussions between Mr. Birchall and Mr. Howard about "leaks."

11   • The discussion between Mr. Howard and Mr. Birchall was consistent

12     with Mr. Musk's email to BuzzFeed.  Mr. Musk's email mentioned Mr.

13     Unsworth travelling to Thailand for 30+ years.  So did Mr. Birchall's

14     email to Mr. Howard.  Both talked about areas in Thailand renowned for

15     sex trafficking.  Both talked about Mr. Unsworth having a relationship

16     with his Thai wife when she was young.  (*Compare* Wilson Decl. [Dkt.

17     No. 79] Ex. 33 at p. 569 (TX 66) and Lifrak Supp. Decl. Ex. 7 (TX 42.)).

18   • Both Mr. Birchall's email to Mr. Howard and Mr. Musk's email to

19     BuzzFeed were based on what Mr. Howard was reporting at the time.

20     (Lifrak Supp. Decl. Ex. 8, Musk Depo. 62:6:64:16 and Wilson Decl. Ex.

21     33 at p. 569 ("Ok, thank you for this information. We would like you to

22     immediately move forward with 'leaking' this information to the UK

23     press").)

24   • The only "inconsistency" Mr. Unsworth actually cites is that Mr. Musk's

25     email to BuzzFeed mentions Mr. Unsworth starting a relationship with

26

27 _____

Howard initiated the idea of "leaking" information to the press, and there is no

28 evidence that anything ever materialized from the idea.

his Thai wife, who was "about 12 years old at the time," while Mr.
Birchall's email says she was a "teenager." (*Compare* Wilson Decl.
[Dkt. 79] Ex. 33 at p. 569 (TX 66) and Lifrak Supp. Decl. Ex. 7 (TX
42).)  As Mr. Birchall testified, a teenager includes someone who is
thirteen.  (Lifrak Supp. Decl. Ex. 9, Birchall Depo. 113:11-19.)  This is
hardly a significant discrepancy, and there is no evidence Mr. Musk even
knew about Mr. Birchall's email to Mr. Howard.

Second, Mr. Unsworth asserts that the conversations between Mr. Birchall and
Mr. Howard are relevant because they are inconsistent with Mr. Musk's testimony
that he meant his "pedo guy" tweet as an insult and not a factual statement about Mr.
Unsworth's sexual preferences.  (Opp. at 7-8.)  But Mr. Unsworth's argument ignores
the timing of these events.  Mr. Musk's tweet occurred on July 15, 2018.  (Dkt. No. 1,
Compl., ¶ 76).  From mid- to late-August, Mr. Howard reported disturbing
information about Mr. Unsworth to Mr. Birchall, which was relayed to Mr. Musk.
(Dkt. No. 65, Birchall Decl.,¶¶ 16-17.)  And it was only after Mr. Howard began
reporting this information that Mr. Musk thought that "maybe [Unsworth] is actually
a pedophile."  (Ex. 8, Musk Depo. 62:3-64:15, at 64:1-2.).  Simply put, Mr. Musk's
subsequent beliefs (based on Mr. Howard's supposed investigation) have no bearing
on Mr. Musk's intentions a month earlier.  Moreover, what Mr. Birchall wrote to Mr.
Howard about potential leaks in August 2018 is even further removed from relevancy
given that there is no evidence Mr. Musk was aware of the specifics of their
discussions.

Third, Mr. Unsworth argues that the "leak" conversations are relevant because
they support the argument that Mr. Musk should be liable for BuzzFeed's
republication of his email.  (Opp. at 9.)  However, Mr. Unsworth's argument is faulty,
as it is based on an assumption that "***it is undisputed*** that Musk intended that the
media republish his false statements conveying Unsworth to be a child rapist." (Opp.
at 9) (emphasis added).  That is false.  Mr. Musk testified that he expected Ryan Mac,

1  the BuzzFeed reporter, to write negative information about Mr. Unsworth only "*if* he

2  discovered that it was true," (Ex. 8, Musk Depo. 189:7-190:6) (emphasis added), and

3  it is undisputed that Mr. Musk wrote "off the record" on the email, signifying that the

4  email itself could not be published.  (Ex. 8, Must Depo. 178:22-179:20; *see also* Dkt.

5  No. 60 ("Musk Decl.") ¶ 43.)[2]  Thus, whether Mr. Birchall and Mr. Howard wanted

6  to "leak" information to other outlets is irrelevant to whether it was reasonably

7  foreseeable *to Musk* that *BuzzFeed* would publish Musk's email, especially when

8  communications with other outlets were not designated "off-the-record" and did not

9  include the detailed allegations in Musk's email to Mr. Mac, including any mention

10  of a "child rapist.".

11       Finally, Mr. Unsworth claims that the "leak" discussions are relevant to

12  punitive damages as "evidence of actual malice and common law malice."  (Opp. at

13  10.)  However, Mr. Unsworth has not sued Mr. Musk for these "leaks."  And it would

14  be improper and prejudicial for the jury to consider unrelated evidence of conduct,

15  particularly when there is no evidence the "leaks" caused any harm or even happened.

16  *See* Section II, *infra*.[3]

17  **II.    THE PURPORTED LEAKS SHOULD BE EXCLUDED UNDER**

18  **RULE 403.**

19       As noted above, the probative value of this evidence is negligible.  It is not a

20  basis for any of Mr. Unsworth's claims or any of Mr. Musk's defenses, and the

21  _____

22  [2] Similarly, there is no indication that Mr. Birchall or Mr. Musk expected a
newspaper to publish anonymous "leaks" from Mr. Howard about Mr. Unsworth

23  without verifying them.

24  [3] Mr. Musk is not using Mr. Howard's investigation as a "sword and a shield."  (Opp.
at 5.)  He is entitled to rely on what he learned from Mr. Howard in his defense, as to

25  both negligence and malice.  *Reader's Digest Assn. v. Superior Court*, 37 Cal. 3d

26  244, 253 (1984) (finding no actual malice where defendant published information
obtained from a third party source).  And although Mr. Unsworth mentions a "second

27  investigation by a second investigator" and a pending motion to compel related to

28  that investigation (Opp. at 5), he withdrew it after filing this motion.  (Dkt. No. 102.)

Case No. 2:18-cv-08048
DEFENDANT'S  REPLY ISO MIL. NO. 3

1  evidence does not relate to any issue the jury will decide.  On the other hand, it would
2  be confusing and prejudicial for the jury to hear about media leaks Mr. Birchall and
3  Mr. Howard discussed but that never materialized.  Its only purpose would be to
4  make Mr. Birchall (and by association, Mr. Musk) look bad on an unrelated issue.
5  Rule 403 prevents that result.

6      Mr. Unsworth argues that there is no risk of a "trial within a trial."  (Opp. at
7  11.)  But that cannot be correct.  The jury will have to consider, among other things,
8  (a) who had the idea of leaking information to the press; (b) what was Mr. Birchall's
9  understanding of the facts; (c) what conversations did he have with Mr. Howard
10  about it; (d) what did Mr. Musk know about the potential leaks; (e) did Mr. Musk
11  know about the specific information proposed to be leaked; (f) what was Mr. Musk's
12  state of knowledge regarding the accuracy of the proposed leaks; (g) were the
13  proposed leaks false; (h) did Mr. Howard leak the information; (i) to whom; and
14  (j) what was the reaction to any leaks.  None of this is relevant and all of it would be
15  part of the case if the evidence is allowed.

16  **III.  THE PURPORTED PRESS LEAKS SHOULD BE EXCLUDED UNDER**
17  **RULE 404 AS IMPROPER CHARACTER EVIDENCE.**

18      This is improper character evidence.  Mr. Unsworth wants to argue that,
19  because Mr. Howard supposedly leaked information to the media here, it is more
20  likely that Mr. Musk wanted BuzzFeed to republish his email.  (Opp. at 8-9.)
21  However, that ignores that: (a) there is no reliable evidence information was actually
22  leaked; (b) the discussions between Mr. Birchall and Mr. Howard arose under
23  different circumstances.  *See* Section I, *supra*.  It is thus precluded by Rule 404.  *See*
24  Fed. R. Evid. 404(b) ("act is not admissible to prove a person's character in order to
25  show that on a particular occasion the person acted in accordance with the
26  character.").

27      Remarkably, Mr. Unsworth argues that Rule 404 does not apply because the
28  potential leaks are the "same act constituting a single transaction against the very

1  same party." (Opp. at 12.)  However, compared to the BuzzFeed email, the potential

2  leaks here were made, if at all, by different people to different third-parties, with

3  different facts.  They are not one "transaction."

4        Nor is the evidence being offered for "non-character purposes."  (Opp. at 13.)

5  Mr. Unsworth claims the evidence is relevant to Mr. Musk's "motive, intent, and

6  knowledge" (Opp. at 13), but this is not a criminal case, and Mr. Musk's motive,

7  intent, or knowledge is not an element of any claim or defense.  Nor is it a "crime" or

8  a "wrong" for people to discuss leaking what they believe is factual information to

9  the press; it is protected by the First Amendment.  *See Mitchell v. Superior Court,* 37

10  Cal. 3d 268, 283(1984) (discussing protections for press sources); *Paterno v.*

11  *Superior Court*, 163 Cal. App. 4th 1342, 1352 (2008) (defendant's "truthful

12  statements enjoy First Amendment protection and, in publishing them, she is entitled

13  to a 'reasonable degree of flexibility in [the] choice of language'").[4]

14  **IV.**    **THE UK FRAUD REPORT HAS NO BEARING ON THESE ISSUES.**

15        Mr. Unsworth complains about the suggestion that Mr. Unsworth's lawyers at

16  Howard Kennedy, LLP have relevant information about Mr. Howard.  (Opp. at 1, 11-

17  12.)  But they do.  Among other things, a lawyer at the firm provided information to

18  Mr. Howard and had conversations with him at the same time of Mr. Howard was

19  having discussions with Mr. Birchall about "leaking" information.  *See Section I,*

20  *supra*.

21        In addition, Mr. Musk must correct the false and incomplete record Mr.

22  Unsworth has created over the fraud report (Opp. at 1):

23        •    Excession LLP, the company that hired Mr. Howard, filed the fraud

24            report.  Mr. Musk's counsel, Alex Spiro, did not.  Mr. Spiro was listed as

25            the contact person if the authorities wanted further information;

26

27

28

---

[4] Nor would the evidence be admissible at to punitive damages.  *See Section I, supra.*

- •     Mr. Spiro did not file this document nor did he ever speak to the authorities in London about it;

- •     The complaint concerned the conduct of Mr. Howard and not Howard Kennedy LLP in any way;

- •     As discussed above, Excession had a good faith concern that Mr. Higgins may have had a conflict of interest and may have relayed information to Howard Kennedy LLP.  Equally, if Mr. Higgins lied about these issues, those lies would still be a basis for the complaint. Either way, there was nothing inappropriate about the report;

- •     Mr. Musk has no current intention of seeking the admission of this complaint (or the fact that it was made) at trial.[5]

## CONCLUSION

Mr. Musk respectfully requests that the Court grant his motions in limine.

DATED:  November 18, 2019        Respectfully submitted,

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By    _/s/ Alex Spiro_
Alex Spiro (admitted *pro hac vice*)
*Attorneys for Defendant Elon Musk*

---

[5] The document was placed on the exhibit list out of an abundance of caution and for purposes of full disclosure, in case either Mr. Musk or Mr. Birchall were challenged as to why they never complained about the misleading information Mr. Howard provided to them.