L. LIN WOOD, P.C.
L. Lin Wood (*pro hac vice*)
lwood@linwoodlaw.com
Nicole J. Wade (*pro hac vice*)
nwade@linwoodlaw.com
Jonathan D. Grunberg (*pro hac vice*)
jgrunberg@linwoodlaw.com
G. Taylor Wilson (*pro hac vice*)
twilson@linwoodlaw.com
1180 West Peachtree Street, Ste. 2040
Atlanta, Georgia 30309
404-891-1402
404-506-9111 (fax)

WEISBART SPRINGER HAYES, LLP
Matt C. Wood (*pro hac vice*)
mwood@wshllp.com
212 Lavaca Street, Ste. 200
Austin, TX 78701
512-652-5780
512-682-2074 (fax)

CHATHAM LAW GROUP
Robert Christopher Chatham
chris@chathamfirm.com
CA State Bar No. 240972
3109 W. Temple St.
Los Angeles, CA 90026
213-277-1800

Attorneys for Plaintiff
VERNON UNSWORTH

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

VERNON UNSWORTH,

    Plaintiff,

v.

ELON MUSK,

    Defendant.

Case No. 2:18-cv-08048-SVW (JC)

**PLAINTIFF
VERNON UNSWORTH'S
REPLY IN SUPPORT OF
MOTION IN LIMINE**

# Index of Authorities

## Cases

*Blank v. Sullivan & Cromwell*,
  418 F. Supp. 1 (S.D.N.Y. 1975) ............................................................... 3

*Brooks v. Cook*,
  938 F.2d 1048 (9th Cir. 1991) ................................................................ 1

*Bularz v. Prudential Ins. Co.*,
  93 F.3d 372 (7th Cir. 1996) ..................................................................... 9

*Carnell v. Constr. Corp. v. Danville Redevelopment & Hous. Aut.*,
  745 F.3d 703 (4th Cir. 2014) ................................................................... 12

*Cohen v. Hansen*,
  No. 2:12-CV-1401 JCM (PAL), 2016 U.S. Dist. LEXIS 55976 (D. Nev.
  Apr. 27, 2016) .......................................................................................... 7

*Colton Crane Co. v. Terex Cranes Wilmington, Inc.*,
  CV 08-8525 PSG, 2010 U.S. Dist. LEXIS 141013 (C.D. Cal. May 19,
  2010) ...................................................................................................... 16

*Corman v. Blanchard*,
  211 Cal. App. 2d 126 (1962) ..................................................................... 8

*Coursen v. A.H. Robins Co.*,
  764 F.2d 1329 (9th Cir. 1985) ................................................................ 16

*Digital Equip. Corp. v. Sys. Indus. Inc.*,
  108 F.R.D. 742 (D. Mass. 1986) ............................................................... 3

*Dun & Bradstreet v. Greenmoss Builders*,
  472 U.S. 749 (1985) .............................................................................. 6, 7

*Dyber v. Quality King Distribs.*,
  No. CV 06-735, 2006 U.S. Dist. LEXIS 89707 (E.D.N.Y. Dec. 12, 2006) ........... 3

*Ferreira v. City of Binghamton*,
  No. 3:13-CV-107, 2016 U.S. Dist. LEXIS 126011 (N.D.N.Y. Sep. 16,
  2016) ........................................................................................................ 4

*First Card v. Hunt (In re Hunt)*,
  238 F.3d 1098 (9th Cir. 2001) ................................................................... 2

*Gowder v. Bucki*,
   No. 13-C-1834, 2013 U.S. Dist. LEXIS 167785 (N.D. Ill. Nov. 26, 2013) .......... 4

*Hearne v. De Young*,
   132 Cal. 357 (1901) .......................................................................................... 10

*Hopey v. Spear*,
   No. 13-CV-2220, 2016 U.S. Dist. LEXIS 192843 (C.D. Ill. June 23, 2016) ........ 4

*Icicle Seafoods, Inc. v. Baker*,
   229 F.3d 790 (9th Cir. 2000) .............................................................................. 1

*Marcone v. Penthouse Int'l Magazine for Men*,
   754 F.2d 1072 (3d Cir. 1985) ............................................................................ 11

*Medeiros v. Kong Choy*,
   418 P.3d 574 (Haw. 2018) .................................................................................. 3

*Miller v. Schmitz*,
   No. 1:12-cv-0137, 2013 U.S. Dist. LEXIS 152491 (E.D. Cal. Oct. 23,
   2013) .................................................................................................................... 4

*Newton v. National Broadcasting Company*,
   930 F.2d 662 (9th Cir. 1990) .............................................................................. 7

*Olivarez v. Geo Grp., Inc.*,
   844 F.3d 200 (5th Cir. 2016) ............................................................................ 17

*Paradis v. Arave*,
   240 F.3d 1169 (9th Cir. 2001) .......................................................................... 13

*Parker v. Alexander Marine Co.*,
   721 F. App'x 585 (9th Cir. 2017) ....................................................................... 1

*Rayfield Aviation, LLC v. Lyon Aviation, Inc.*,
   No. 1:11CV274, 2012 U.S. Dist. LEXIS 105393 (M.D.N.C. July 30, 2012) ........ 3

*Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*,
   Civ. No. 88-9752, 1991 U.S. Dist. LEXIS 12959 (E.D. Pa. Sep. 16, 1991) .......... 3

*Sanders v. Walsh*,
   219 Cal. App. 4th 855 (2013) ............................................................................ 10

*Schafer v. Time, Inc.*,
   143 F.3d 1361 (11th Cir. 1998) .......................................................................... 9

*Scott v. Times-Mirror Co.*,
   181 Cal. 345 (1919) ........................................................................... 6

*Shively v. Bozanich*,
   31 Cal. 4th 1230 (2003) .................................................................... 5

*Sleem v. Yale Univ.*,
   843 F. Supp. 57 (M.D.N.C. 1993) .................................................... 7

*Standley v. Edmonds-Leach*,
   783 F.3d 1276 (D.C. Cir. 2015) ...................................................... 18

*T.C. ex rel. S.C. v. Metro. Gov't of Nashville & Davidson Cty.*,
   No. 3:17-CV-01098, 2018 U.S. Dist. LEXIS 113517 (M.D. Tenn. July 9,
   2018) ................................................................................................. 3

*Theoharis v. Rongen*,
   No. C13-1345RAJ, 2014 U.S. Dist. LEXIS 98086 (W.D. Wash. July 18,
   2014) ............................................................................................... 18

*United States v. Anderson*,
   741 F.3d 938 (9th Cir. 2013) ........................................................... 3

*United States v. Blixt*,
   548 F.3d 882 (9th Cir. 2008) ........................................................... 7

*United States v. Christensen*,
   801 F.3d 970 (9th Cir. 2015) ........................................................... 7

*United States v. Crouch*,
   731 F.2d 621 (9th Cir. 1984) ................................................... 13, 15

*United States v. Ghailani*,
   761 F. Supp. 2d 114 (S.D.N.Y. 2010) ........................................... 13

*United States v. Kincaid-Chauncey*,
   556 F.3d 923 (9th Cir. 2009) ......................................................... 14

*United States v. Saget*,
   991 F.2d 702 (11th Cir. 1993) ....................................................... 13

*Waite v. San Fernando Publ'g Co.*,
   178 Cal. 303 (1918) ......................................................................... 9

*Weller v. ABC*,
   232 Cal. App. 3d 991 (1991) ........................................................... 7

*Wilkins v. Kmart Corp.*,
    487 F. Supp. 2d 1216 (D. Kan. 2007) ............................................................... 18

*World Wide Ass'n of Specialty Programs v. Pure, Inc.*,
    450 F.3d 1132 (10 Cir. 2006) .................................................................. 9

*Wynberg v. Nat'l Enquirer, Inc.*,
    564 F. Supp. 924 (C.D. Cal. 1982) ....................................................... 9, 11

**Rules**

FED. R. CIV. P. 26(a) .................................................................................. 17

Fed. R. Civ. P. 26(b) .................................................................................. 3

FED. R. EVID. 401 ....................................................................................... 6

FED. R. EVID. 403 ............................................................................... passim

Plaintiff Vernon Unsworth ("Unsworth") respectfully submits this Reply in Support of Motion in Limine.

# I.      ARGUMENT

## 1.      Litigation Outside the United States

Musk gives two reasons why the jury should know about Unsworth's litigation outside the United States: (1) the jury needs to know why damages in England and Wales were initially excluded from the Complaint; and (2) the UK proceeding proves that Unsworth has financial motives for suing. (Doc. 106 at 18-19.)

As a threshold matter, the jury is not authorized to adjust its verdict to achieve whatever outcome the jury believes is appropriate, regardless of the law.  The Ninth Circuit has held that "a jury should assess damages but not determine how much defendants should 'actually' pay or how much plaintiffs should 'actually receive.'" *Icicle Seafoods, Inc. v. Baker*, 229 F.3d 790, 798 (9th Cir. 2000) (noting that jurors are barred from knowing about indemnifications, statutory trebling, damage caps, the effect of comparative fault findings, and settlement agreements). Thus, for example, it was error for a district court to tell the jury about another item of recovery (attorney's fees) because "the fear is that a jury, informed of plaintiff's right to additional funds, will view the money as a windfall and take steps to offset it." *Brooks v. Cook*, 938 F.2d 1048, 1052 (9th Cir. 1991); *see also Parker v. Alexander Marine Co.*, 721 F. App'x 585, 588 (9th Cir. 2017) (collateral source rule requires exclusion of evidence the plaintiff received other payments for injury).  Jurors are directed to follow the law, not "inflate or reduce their damages award in order to 'secure justice' for the parties." *Icicle Seafoods*, 229 F.3d at 799.

Second, the matter is even simpler because, as explained in Unsworth's Motion in Limine, Plaintiff has months ago informed Defendant that contrary to the Complaint as originally filed, Plaintiff would be pursuing worldwide damages, including for England and Wales. (Doc. 95 at 2-3.) Unsworth has given Musk ample notice of the damages he is seeking in this case, and approval of the pretrial order in

1

1  this case will govern the damages at trial.  *See First Card v. Hunt (In re Hunt)*, 238

2  F.3d 1098, 1102 (9th Cir. 2001) (holding that a pretrial order that modifies the

3  requested relief supersedes the pleadings).  In that event, there is no England/Wales

4  damage exclusion to be explained to the jury in the first place.

5       Musk's other reason for wanting to mention the litigation outside the United

6  States is a similar refrain: it gives him another opportunity to attack Unsworth's

7  motives for suing as a "money grab."  For the reasons mentioned below in Section 2,

8  Unsworth's motives for suing—in the United States, the UK, or anywhere else—are

9  irrelevant to the merits of this dispute and unduly prejudicial.  Admitting evidence of

10  another action in the UK for this purpose will also be unfairly prejudicial in that

11  whatever probative value it allegedly has will be substantially outweighed by

12  confusing the issues and misleading the jury, who will not understand the different in

13  UK and US defamation law and the remedies available from each.

14       **2.  <u>Unsworth's and His Lawyers' Alleged Motives for Filing Suit</u>**

15       Musk gives two main reasons for wanting to inject argument and evidence that

16  Unsworth is suing for financial gain: (1) it helps prove that Unsworth suffered no

17  damage and (2) Unsworth's motives for suing could undermine his credibility.  (Doc.

18  106 at 7-8.)

19       The first argument is disposed of below in Section 4.  Musk is legally barred

20  from arguing that Unsworth suffered no damage, because the law conclusively

21  presumes damage from libel per se, and, in any case, the evidence Musk seeks to

22  admit for this purpose (e.g. Unsworth's testimony that nobody has specifically

23  advised him that they believe the accusation) is not probative of the ultimate issue of

24  whether the public or some segment of it believe the accusation.

25       Musk's argument about Unsworth's credibility is equally irrelevant and

26  prejudicial.  As courts have recognized, "evidence that a plaintiff is seeking the relief

27  that is at stake in the case has no additional bearing on the plaintiff's credibility as a

28  witness beyond what is inherent in the very existence of the lawsuit."  *Medeiros v.*

1  *Kong Choy*, 418 P.3d 574, 583 (Haw. 2018).  There is nothing "ulterior" about the

2  fact that Unsworth, like virtually every other plaintiff in a lawsuit, is requesting a

3  financial award.  Our legal system operates on the principle that money compensates

4  for injury.  To argue that something is wrong with this fact—or worse, that it indicates

5  an unreliable character for truthfulness—is "to suggest decision on an improper

6  basis," precisely what the rules of evidence forbid.  *United States v. Anderson,* 741

7  F.3d 938, 950 (9th Cir. 2013) (citing FED. R. EVID. 403).  It compounds the

8  prejudice—and distracts from the merits of the suit—to go further, as Musk would

9  do, and introduce evidence about a person's unrelated activities (a potential movie

10  deal, criticism of other members of the rescue team, etc.) to argue that the suit was

11  brought for financial reasons.  (Doc. 106 at 6-7.)  Accordingly, as pointed out in

12  Unsworth's Motion in Limine, courts around the country—including this one—have

13  deemed a plaintiff's financial motivation for suing irrelevant and unfairly prejudicial.

14  (Doc. 95 at 6-7.)[1]

15      The cases cited by Musk are not persuasive authority to the contrary.  In *Hopey*

16  *v. Spear*, the district court allowed argument that the plaintiff was suing and

17  _____

18  [1] *See also T.C. ex rel. S.C. v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:17-CV-01098, 2018 U.S. Dist. LEXIS 113517, at *40 (M.D. Tenn. July 9, 2018) ("[I]t is

19  well-established that in ordinary litigation the plaintiff's motive in bringing suit is not relevant to the subject matter of the litigation and is not a matter for discovery."

20  (cleaned up)); *Rayfield Aviation, LLC v. Lyon Aviation, Inc.*, No. 1:11CV274, 2012 U.S. Dist. LEXIS 105393, at *5-6 (M.D.N.C. July 30, 2012) ("[T]he Court concludes

21  that the 'motive' for the suit is not relevant to the actual breach of contract claims raised in this case."); *Dyber v. Quality King Distribs.*, No. CV 06-735, 2006 U.S. Dist.

22  LEXIS 89707, at *6 (E.D.N.Y. Dec. 12, 2006) ("The gravamen of Defendants' argument is that the compelled disclosure will illustrate Plaintiffs' 'motive' in

23  commencing this lawsuit.  However, courts have held that a plaintiff's motive in bringing an action, even at the discovery phase, is irrelevant."); *Rhone-Poulenc Rorer,*

24  *Inc. v. Home Indem. Co.*, Civ. No. 88-9752, 1991 U.S. Dist. LEXIS 12959, at *7 (E.D. Pa. Sep. 16, 1991) ("Courts which have dealt with this issue, however, have held that

25  the motive behind the institution of an action has been deemed not relevant to the subject matter involved pursuant to Fed. R. Civ. P. 26(b)."); *Digital Equip. Corp. v.*

26  *Sys. Indus. Inc.*, 108 F.R.D. 742, 743 (D. Mass. 1986) ("It is difficult to see how an inquiry into the circumstances surrounding the instigation of the action could affect

27  the substance of the claim."); *Blank v. Sullivan & Cromwell*, 418 F. Supp. 1, 4 (S.D.N.Y. 1975) ("The court's ruling that the motive of plaintiff in bringing the action

28  is irrelevant is consistent with well-settled law.").

exaggerating the extent of injuries "to obtain more money," but the court was careful to point out that any prejudice was lessened by the fact that "the jury will not be determining liability, but will only be concerning itself with damages based on the extent of Plaintiff's injuries."  No. 13-CV-2220, 2016 U.S. Dist. LEXIS 192843, at *10-11 (C.D. Ill. June 23, 2016).  In *Gowder v. Bucki*, the district court denied a motion in limine on the plaintiff's motives with just a single sentence of explanation and cited no authority.  No. 13-C-1834, 2013 U.S. Dist. LEXIS 167785, at *4 (N.D. Ill. Nov. 26, 2013).  *Miller v. Schmitz* involved allegations of an ulterior motive other than financial gain, which Unsworth acknowledges could be relevant where supported by evidence.  No. 1:12-cv-0137, 2013 U.S. Dist. LEXIS 152491, at *7 (E.D. Cal. Oct. 23, 2013).  In *Ferreira v. City of Binghamton*, the court simply reserved a ruling on plaintiff's motion in limine for trial.  No. 3:13-CV-107, 2016 U.S. Dist. LEXIS 126011, at *44 (N.D.N.Y. Sep. 16, 2016).  None of the cases cited by Musk addressed the line of precedent cited by Unsworth, much less grappled with the well-reasoned basis for those cases.

### 3.  Unsworth's Failure to Sue Republishers

Musk also fails to give a persuasive reason for presenting argument or evidence about Unsworth's failure to sue BuzzFeed or other republishers.  (Doc. 106 at 11-12.)  As Musk acknowledges by his silence, his own liability is independent of, and not reduced by, any liability BuzzFeed may have.

Instead, Musk first changes the subject, arguing that he should be able to introduce evidence that Unsworth *failed to demand a retraction* from BuzzFeed.  *Id.* at 11-12.  That is different from introducing evidence about why Unsworth did not *sue* BuzzFeed, the subject of Unsworth's limine request.

In any event, evidence regarding whether Unsworth demanded a retraction from BuzzFeed is also irrelevant, because BuzzFeed is not a defendant.  BuzzFeed is not the only media entity that republished Musk's false accusations that Unsworth is a pedophile.  Obviously Unsworth has no obligation to identify and then demand a

4

retraction from every news source, website, television station, newspaper, or individual who republished Musk's defamatory accusation.  That is the very reason for holding the initial publisher liable for foreseeable republications.  *See Shively v. Bozanich*, 31 Cal. 4th 1230, 1243 (2003) (noting that "the repetition by a new party of another person's earlier defamatory remark also gives rise to a separate cause of action for defamation against the original defamer, when the repetition was reasonably foreseeable").  To hold otherwise would put too great a burden on a plaintiff seeking redress for wrongful assassination of his character, and Musk has not and cannot cite a single authority suggesting Unsworth has such a burden.

Musk also trots out a familiar red herring, arguing that Unsworth's failure to sue BuzzFeed is relevant to Unsworth's motive for suing Musk.  (Doc. 106 at 12.) Presumably Musk wants to argue that Unsworth sued the "deeper pockets," another version of the "money grabber" theme, as if suing one defendant rather than two supports that theme.  As shown above in Section 2, however, Unsworth's motive for suing Musk is irrelevant and unfairly prejudicial.

Moreover, the factual inference that Musk would draw (inferring the plaintiff's motive for suing the defendant based on the failure to sue someone else) is especially tenuous and prejudicial.  The decision of who to sue is often made by lawyers for legal reasons, so explaining the decision could require Unsworth to either waive the privilege or stay silent to avoid waiver.  The prejudice to Unsworth is thus severe. And as a factual matter, a lawyer's legal reasoning does not necessarily reflect the motives of the client, so Musk's proposed inference would be speculative, misleading to the jury, and lacking probative value.  Given this balance, the evidence should be excluded under Rule 403.

### 4. <u>No Damages</u>

Musk's response misconstrues Unsworth's position on damages.  Unsworth is not suggesting that the Court bar all "contrary evidence" that might reduce the jury's damage award.  (Doc. 106 at 10.)  The parties can certainly dispute by admissible

5

evidence the *extent* of Unsworth's damages.  But Musk has no right to argue or introduce the non-probative evidence he seeks to admit for the purpose of allegedly proving that Unsworth suffered *no damages* from Musk's defamation.

Musk does not deny the controlling legal principle.  If liability is shown, then damages are conclusively presumed as a matter of law because Musk's accusation that Unsworth is a pedophile is libelous per se.  (Doc. 95 at 8-9.)  California law, like the law of most states, recognizes that damages from defamation are uniquely difficult to prove and thus erects a conclusive presumption of damage.  *See Scott v. Times-Mirror Co.*, 181 Cal. 345, 365 (1919) ("The respondent is not required to prove, *and in the nature of things cannot prove*, the extent to which he has been damaged by this libel . . . ." (emphasis added)).[2]

Musk never explains how an argument of no damage would be consistent with the rules of evidence.  Nor could he.  Given the conclusive presumption of damage, any such argument or evidence is irrelevant as a matter of law.  *See* FED. R. EVID. 401 (relevant evidence must relate to a "fact . . . of consequence in determining the action").  Moreover, an argument of no damage would suggest a forbidden outcome to the jurors, creating an unjustifiable risk of "confusing the issues" and "misleading the jury."  FED. R. EVID. 403.  Musk's argument is effectively an invitation to jury nullification.  If the law presumes damage, then Musk and his lawyers must present their case to the jury within the confines of the law.  *See United States v. Christensen*, 801 F.3d 970, 1011 (9th Cir. 2015) (noting that trial courts have a "duty to forestall or prevent" jury nullification of the controlling law); *United States v. Blixt*, 548 F.3d 882, 890 (9th Cir. 2008) (affirming trial court's instruction for jury to disregard

---

[2] *See also Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 760-61 (1985) ("The rationale of the common-law rules has been the experience and judgment of history that proof of actual damage will be impossible in a great many cases where, from the character of the defamatory words and the circumstances, it is all but certain that serious harm has resulted in fact.  As a result, courts for centuries have allowed juries to presume that some damage occurred from many defamatory utterances and publications." (cleaned up)).

attorney's jury nullification argument).  More specifically, the evidence Musk seeks to admit on this issue is not probative, including because it is irrelevant whether any particular individual has specifically advised Unsworth that they believed the accusation or withheld from him an earning opportunity due to the accusation; this is precisely why the law presumes damages.

The cases cited by Musk are inapposite.  In *Newton v. National Broadcasting Company*, the district court directed a remittitur of the jury's $5 million damage award to $50,000 in presumed damages based on a determination that the defamation at issue "did not tarnish [Wayne Newton's] outstanding reputation"; the decision had nothing to do with the propriety of evidence or argument *to the jury*.  930 F.2d 662, 671 (9th Cir. 1990).  Musk misleadingly quotes *Cohen v. Hansen*—in full, the quoted sentence states: "*a plaintiff* seeking only presumed damages is not precluded from offering evidence of loss of reputation or business."  No. 2:12-CV-1401 JCM (PAL), 2016 U.S. Dist. LEXIS 55976, at *7 (D. Nev. Apr. 27, 2016) (emphasis added).  *Weller v. ABC* simply holds that a failure to prove special damages may be a factor for courts to consider when reviewing reputational damages for excessiveness.  232 Cal. App. 3d 991, 1014 (1991).  The final two opinions cited by Musk (one of which is a concurring opinion) are not about California law and in dicta make vague generalities about "the law of defamation" prior to 1964.  *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 765 (1985) (White, J., concurring); *Sleem v. Yale Univ.*, 843 F. Supp. 57, 61 (M.D.N.C. 1993).  In short, Musk's cases are either wholly irrelevant or wholly unpersuasive.

In a final effort to sidestep the conclusive presumption of damage, Musk argues that some of Unsworth's claims do not involve libel per se.  (Doc. 106 at 5.)  This argument misconstrues Unsworth's defamation claim – it is based on the statements that Unsworth is a pedophile. A false allegation that someone is a pedophile is per se defamatory. The term speaks for itself and is so heinous on its face that any false accusation that someone is a pedophile creates damages. The law acknowledges that

such heinous accusations create damage incapable of specific proof.

### 5. **Unsworth's Previous Employment**

Musk argues that he can introduce evidence of Unsworth's business difficulties twenty years ago because "Unsworth has inserted his business reputation into the case" and opened the door to contrary evidence "on that same aspect of his reputation." (Doc. 106 at 9-10.)   At the time of Musk's response, Unsworth had submitted an expert report by PR consultant Eric Rose asserting that Musk had damaged Unsworth's "working relationships" and "professional reputation."   *Id.*

Whatever merit Musk's argument may have once had, it no longer carries any weight.  Unsworth has formally withdrawn Eric Rose as an expert witness in this case. (Doc. 110.)  Unsworth does not anticipate introducing evidence regarding damage to his professional reputation specifically.  As a result, Unsworth's business difficulties in the distant past are not relevant.

In addition, Musk never explains how Unsworth's business difficulties more than twenty years ago, and any resulting reprimand fifteen years ago, would be more probative than prejudicial.  *See* FED. R. EVID. 403.  Musk tendered no evidence that these events had a material impact on Unsworth's reputation—much less an impact that still lingers fifteen or twenty years later.  Nor are these events similar in kind to the accusation by Musk that Unsworth is a pedophile.  Unsworth should not be expected to come prepared for a trial-within-a-trial regarding business difficulties that occurred decades in the past.

Musk cites several defamation cases that permitted evidence of a plaintiff's prior misconduct.   (Doc. 106 at 9-10.)   But those cases involved either past misconduct that was similar to the conduct at issue in the case,[3] or misconduct that

---

[3] *See Bularz v. Prudential Ins. Co.*, 93 F.3d 372, 378 (7th Cir. 1996); *Schafer v. Time, Inc.*, 143 F.3d 1361, 1372 (11th Cir. 1998); *Wynberg v. Nat'l Enquirer, Inc.*, 564 F. Supp. 924, 927-28 (C.D. Cal. 1982).

was publicized around the same time as the alleged defamation.[4]   Here the prior conduct is both different in kind and remote in time.  As a result, Rule 403's balance weighs against admission.

### 6. Unsworth's Relationship with His Family

To be clear, Unsworth is not seeking damages for the suffering of his family members.  Instead, California law allows Unsworth to recover damages for his own mental suffering, and "such suffering may be increased and the damages consequently enhanced *by his consciousness* of the fact that members of the plaintiff's family would suffer by reason of the disgrace visited upon him..."  *Waite v. San Fernando Publ'g Co.*, 178 Cal. 303, 306 (1918) (emphasis added).  As a result, the status of Unsworth's relationship with family members such as his daughter is irrelevant.  Unsworth is not alleging in this case that Musk's accusations damaged his relationship with his daughter, and therefore the status of his relationship with his daughter is not relevant to any issue in dispute.  What is relevant is Unsworth's fear for how an accusation that he sexually abuses children would hurt his daughter.

Musk's other tack is to argue that he "has the right to probe the alternative causes of Mr. Unsworth's claimed emotional harm." (Doc. 106 at 15.)  Yet there is no evidence of any such "alternative cause."  Unsworth testified in his deposition that his daughter has chosen not to see or speak to him since 2013 when Unsworth and his wife when Unsworth moved out of their house—five years before Musk falsely accused Unsworth of pedophilia. (Wood Decl., Ex. 1 at 113:8-114:6.)  When asked whether the lack of contact with his daughter had "been the source of any stress or emotional disturbance in [his] life," Unsworth testified, "Initially, yes," but that "it stop[ped] being something that bothered [him] emotionally" after "[t]wo or three years."  *Id.* at 114:7-13.  Absent any evidence of suffering, Musk cannot use Unsworth's personal affairs to shift responsibility for the damage caused by his

---

[4] *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1138 (10 Cir. 2006).

defamation.

The alleged "stressor" of a break in the relationship with his daughter is so far removed from an accusation of pedophilia as to be obviously irrelevant. Unsworth has made consistent efforts to speak with his daughter. He still hopes that their relationship will be repaired – now with the added concern of how she might react to Defendant's false accusation that her father is a pedophile. Accordingly, the unfair prejudice that might come from this evidence—for example, a personal judgment of Unsworth as a bad parent for having a troubled relationship with his daughter, which is irrelevant to the issues in this case, which concern a discrete accusation of pedophilia—substantially outweighs any potential probative value. *See* FED. R. EVID. 403.

### 7. Unsworth's Purported Interest in Publicity

Unsworth does not deny that his reputation will be relevant at trial. That does not mean, however, that every aspect of Unsworth's life—public or private—is fair game for defense counsel. California courts have drawn a sharp distinction between evidence of a plaintiff's *reputation* and mere evidence about *events* in a plaintiff's life. In a defamation case, events are irrelevant unless tied to reputation. *See, e.g.*, *Sanders v. Walsh*, 219 Cal. App. 4th 855, 873 (2013) (excluding evidence of plaintiff's prior conviction because "the mere fact of the conviction does not directly bear on reputation"); *Hearne v. De Young*, 132 Cal. 357, 362 (1901) (permitting evidence of reputation in libel suit but "the defendant may not go into specific instances").

Thus, for example, *actual* publicity received by Unsworth might be a legitimate subject at trial. The cases cited by Musk stand for nothing more. *See Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1079 (3d Cir. 1985) (noting that "[e]vidence of a tarnished reputation" is relevant, including "a string of items of negative publicity" involving the plaintiff); *Wynberg v. Nat'l Enquirer, Inc.*, 564 F. Supp. 924, 927-28 (C.D. Cal. 1982) (granting summary judgment for defendant

10

because plaintiff was "libel proof" where evidence showed "conspicuously anti-social or even criminal behavior, which is widely reported to the public").   But *private* conversations related to potential publicity have no bearing on Unsworth's reputation. In this category are Unsworth's private discussions about potentially hiring an agent, potential deals with movie or television studios (which generally did not come to fruition), and any frustration Unsworth expressed privately about the divers and their approach to publicity.   (Doc. 95 at 12-13.)   Musk's true purpose in offering such evidence would not be to gauge Unsworth's reputation, but instead to cast aspersions on Unsworth's motivations.   As explained above in Section 2, this use of evidence is improper.

### 8. BuzzFeed News Standards and Ethics Guide

As an initial matter, Musk is incorrect in his contentions that "[m]uch of Mr. Unsworth's case arises from the content of an email Mr. Musk sent to BuzzFeed" and "whether Mr. Musk is liable for BuzzFeed's republication is a central issue in dispute." (Doc. 106 at 10).   These contentions are clearly part of the playbook that Musk would like to have the Court and jury follow, but Musk cannot dictate Unsworth's case.   As Unsworth stated in his Complaint for Defamation and the pre-trial order, Unsworth's claim arises out of Musk's Twitter statements that Unsworth is a pedophile. Unsworth is entitled to recover damages for all subsequent intended, authorized, and/or reasonably foreseeable republications of that accusation at the time it was published. Unsworth has no burden to establish that it was reasonably foreseeable specifically that BuzzFeed would republish Musk's emails at the time of the original publication.   It was reasonably foreseeable to Musk on July 15, when he first published his accusation that Unsworth is a pedophile, that his accusation would be republished around the world.   And it was. In fact, Musk wanted it republished. That is why he published it on Twitter. Musk is liable for every foreseeable or intended republication of his accusation that Unsworth is a pedophile.

Musk's claims about the admissibility of the BuzzFeed News Standards and

Ethics Guide are therefore completely off-base and misguided. Musk argues that the Standards are relevant because "[w]hat those publicly-available policies say goes directly to the issue of whether a reasonable person would foresee that BuzzFeed would republish an email." (Doc. 106 at 11.) But Musk publicly accused Unsworth of being a pedophile on Twitter, and it was reasonably foreseeable that this public accusation to Musk's 22+ million Twitter followers would be republished. BuzzFeed's publishing guidelines are irrelevant.

### 9. "Big Kren" Facebook posting (Translated)

Musk suggests that the Court can sidestep the authentication and hearsay problems with the Facebook posting by "Big Kren" because—despite being multi-level hearsay from a dubious, erroneously translated Thai-language source—the posting would only be offered to impeach Unsworth's partner Tik. (Doc. 106 at 16.)

At the outset, Musk reveals a flawed assumption in his argument when he asserts that Unsworth is seeking to exclude evidence "regarding his partner, Tik, who gave an interview to the Thai news outlet, Big Kren." (Doc. 106 at 16.) That is the very foundation that is missing. Tik explicitly denied having ever given any interview to a person or entity named "Big Kren." (Wood Decl., Ex. 2 at 24:8-21.) Musk's only "evidence" to the contrary is classic hearsay—a Thai post from an unknown individual who said that Tik said something. (Doc. 106-1, Ex. 14.) This circular logic does not support admissibility of this evidence on any basis. No competent evidence exists to prove the foundational fact that Tik actually made the alleged inconsistent statement. *See Carnell v. Constr. Corp. v. Danville Redevelopment & Hous. Aut.*, 745 F.3d 703, 718 (4th Cir. 2014) ("For a statement to qualify as a witness' prior inconsistent statement under Rule 613(b), the statement must be one that the witness has made or adopted, or to which the witness has subscribed."). "[A] witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own." *United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993).

Impeachment evidence is still subject to the rules of evidence, and Unsworth's authentication and hearsay objections stand unrebutted.  Although a prior inconsistent statement is not itself hearsay (because not offered for the truth of the matter asserted), the prior inconsistent statement cannot be proven with hearsay.  *See Paradis v. Arave*, 240 F.3d 1169, 1179 (9th Cir. 2001) ("If Haws' notes record Elliott's hearsay reports of Dr. Brady's hearsay statements, then the notes themselves would not be admissible, even to impeach Dr. Brady."); *United States v. Ghailani*, 761 F. Supp. 2d 114, 118 (S.D.N.Y. 2010) (collecting cases for the proposition that "the extrinsic evidence of the prior inconsistent statement must be competent and otherwise admissible.").

Presumably Musk's real goal is not impeachment, but to suggest that Tik *really did say* that Unsworth found Musk's accusation "humorous."  In other words, Musk wants to use the anonymous "Big Kren" posting for the truth of the matter asserted. Because this use is barred by the rules of evidence, the unfair prejudice of the posting substantially outweighs any conceivable probative value.  *See* FED. R. EVID. 403.  A party may not use impeachment "as a 'subterfuge' to get otherwise inadmissible testimony before the jury."  *United States v. Crouch*, 731 F.2d 621, 624 (9th Cir. 1984).

In short, Musk's response does not even attempt to show how the serious hearsay, authenticity, and foundational problems with the "Big Kren" posting can be overcome.  Nor does he address the unfair prejudice that would result from admission of the posting.  It would be completely antithetical to the purpose of the Federal Rules of Evidence if a party could find a random post in a different language on the internet (or even manufacture such an item) and use it to imply prejudicial facts about a witness simply because the witness denies having made the statement or post in question.  Federal law requires safeguards of reliability for the admissibility of any evidence and specifically requires that a witness have adopted a purported prior statement before that statement can be used against the witness.  This evidence—the document and any argument based on it—must be excluded from evidence.

**10.  <u>Purported Page from Jobpub.com Opinion Board (Translated)</u>**

As with the "Big Kren" posting, Musk's only argument for admission of the alleged webpage from Jobpub.com is that it will be used for impeachment of Tik, so "there is no need to resolve issues regarding authentication and hearsay." (Doc. 106 at 16-17.)  As noted in the previous section, impeachment evidence is still subject to the rules of evidence.  As a result, Unsworth's evidentiary objections still stand.  Musk cannot introduce into evidence a selectively-edited portion of a poorly-translated, Thai-language internet post by an unknown user on an irrelevant subject from a remote time period.

Musk is apparently claiming that he wants to use the alleged webpage to impeach by contradiction.  Tik testified that she did not make the posting on Jobpub.com.  (Wood Decl., Ex. 2 at 88:22-90:8.)  Musk apparently wants to introduce the posting to prove that she did.  (Doc. 106-1, Ex. 15.)  In addition to the authentication and hearsay objections that Unsworth raised in his Motion (and which stand unrebutted), there are three additional problems with admitting the alleged Jobpub.com webpage for impeachment:

- Musk has no evidence to prove the foundational fact that Tik actually made the posting.  *See* FED. R. EVID. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the facts does exist.").

- Before extrinsic evidence can be used to impeach by contradiction, "the fact to be contradicted must be material." *United States v. Kincaid-Chauncey*, 556 F.3d 923, 932 (9th Cir. 2009).  Here, whether Tik posted about nighttime work on an internet job discussion board years before she met Unsworth is the epitome of an *immaterial* fact.

- Finally, "when making the decision whether to permit impeachment by contradiction, trial courts should consider the Rule 403 factors." *Id.*  To the extent Musk wants the jury to believe the *truth* of any matter in the alleged

14

Jobpub.com webpage, he is using the evidence for an improper purpose that vastly outweighs any arguable probative value. As noted above, courts should be alert to attempts to use impeachment "as a 'subterfuge' to get otherwise inadmissible testimony before the jury." *Crouch*, 731 F.2d at 624.

The Jobpub.com posting is inadmissible for a number of reasons, and the document and any reference to it should be excluded by this Court.[5]

**11. <u>Pornography</u>**

In his response, Musk does not oppose the merits of Unsworth's motion in limine about pornography. As a result, Unsworth's motion in limine on this topic should be granted. Unsworth will not be allowed to ask Musk any questions on the topic of whether he has ever viewed what he considered pornography regardless of kind. Likewise, Musk will not be allowed to ask Unsworth any questions on the topic of whether he has ever viewed what he considered pornography regardless of kind. The exclusion of such inappropriate questioning should apply to any alleged impeachment materials by requiring that any such evidence must first be reviewed and its use for impeachment or otherwise specifically approved by the Court at the pre-trial hearing.[6] While a party is not generally required to produce at pre-trial impeachment documents or information, the Court should require that counsel do so in this case due to the inherent vagueness of what constitutes pornography and its reference in any manner could be extremely prejudicial to the parties if not approved

---

[5] Indeed, as noted in Unsworth's Motion in Limine and as further explained herein, there is no reasonable basis whatsoever for Musk's attempt to introduce this evidence or the evidence regarding the "Big Kren" post, and Musk has acted frivolously in forcing Unsworth to file and brief a motion and a reply on this non-evidence, which is clearly inadmissible and obviously has no probative value in this case.

[6] In addition to efforts by Musk's lawyers (through at least three different law firms), Musk has hired two separate private investigators to attempt to dig up "dirt" on Unsworth. They have not discovered any credible evidence of nefarious conduct by Plaintiff. If there is any material that Musk would propose to use for impeachment on this topic, he should already possess it by the time of the pre-trial hearing and can easily produce it for judicial review.

1    in advance by the Court. As the Ninth Circuit has recognized, evidence regarding a

2    person's "prior sexual experiences" (actual or alleged) can be "extremely prejudicial."

3    *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1340 (9th Cir. 1985)

4           Musk concedes the need for advance approval but suggests that the approval

5    should only be sought at trial and not at the pre-trial. (Doc. 106 at 17.) Documented

6    instances of previous use of undisclosed documents and evidence to surprise

7    witnesses with documents of highly questionable origin[7] in this case raise legitimate

8    concerns about the veiled suggestion that such materials on this topic may exist and

9    he reserves a right to use them at trial for reasons he strains to justify as relevant and

10   proper.   The fact that this litigation arises out of Musk's false accusations of

11   pedophilia does not open the door to the use of pornography of any kind for any

12   reason. "The purpose [of a motion in limine] is to avoid the futile attempt of

13   'unring[ing] the bell' when jurors have seen or heard inadmissible evidence, even

14   when stricken from the record."  *Colton Crane Co. v. Terex Cranes Wilmington, Inc.*,

15   CV 08-8525 PSG, 2010 U.S. Dist. LEXIS 141013, at *2 (C.D. Cal. May 19, 2010)

16   (quoting *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003))).

17          **12.  <u>Unidentified Third-Party Tweets</u>**

18          Musk offers no rebuttal to the obvious hearsay problems with the third-party

19   tweets on his exhibit list.   (Doc. 106 at 17-18.)   Instead, Musk offers a single

20   justification for admitting the tweets—they should be allowed for the purpose of

21   cross-examining Unsworth's expert Eric Rose about the basis of his opinion that

22   "pedo guy" means "pedophile."  *Id.*

---

23   [7] Musk has shown a readiness to surprise witnesses with dubious internet evidence.
24   For example, Musk's counsel presented Unsworth with the "Big Kren" posting at his
     deposition without ever disclosing the document beforehand, despite document
25   requests that would have covered it.  Similarly, at Tik's deposition, Musk's counsel
     presented her with an alleged Jobpub.com posting without any advance notice or
26   production.  Both of these documents raise serious authenticity issues (e.g., it is
     unknown who actually created or posted them and whether they were created by
27   anyone for illegitimate reasons). Musk also did not produce the September 29, 2019
     U.K. police report his counsel submitted alleging fraud by Plaintiff's U.K. counsel
28   until he was required to identify trial exhibits.

This argument is now moot.  Unsworth has withdrawn Rose as an expert.  (Doc. 110.)  As a result, the only arguable basis advanced by Musk for admitting the third-party tweets has been swept away.  Given the undeniable hearsay problems with the tweets, they should be excluded from evidence.

### 13.  Previously Undisclosed Trial Witnesses

Musk offers several reasons why he should be allowed to call two witnesses who were disclosed by him for the first time just one month before trial.  (Doc. 106 at 23-24.)  These arguments all miss the mark.

First, Musk argues that he only intends to call the witnesses for impeachment, if at all.  (Doc. 106 at 24.)  As a result, he claims he was not required to identify them in his initial disclosures.  *Id.* (citing FED. R. CIV. P. 26(a)(1)(A)(i) (excepting witnesses whose "use would be solely for impeachment")).  But the late-identified witnesses do not actually fit that exception.  Evidence that can serve both substantive and impeachment purposes is not "solely" for impeachment and must be disclosed. *See Olivarez v. Geo Grp., Inc.*, 844 F.3d 200, 204-05 (5th Cir. 2016).  In his initial disclosures, Musk identified at least one other person (Richard Stanton) who had knowledge of "Plaintiff's role in the Tham Luang cave rescue."  (Wood Decl., Exs. 3 & 4.)  To the extent the two late-identified witnesses would testify on that same subject, they should have been identified in Musk's initial disclosures.  Whether Unsworth already knew "who they are" is beside the point.  *Id.*  "A party's ability to order its discovery and select its witnesses for deposition is prejudiced by another party's failure to make sufficient 26(a)(1) disclosures."  *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1224 (D. Kan. 2007).

In addition, Musk had a separate obligation to identify the witnesses in response to Unsworth's interrogatories, which asked Musk to "identify each person who has, or who you believe may have, relevant knowledge or discoverable information relating to the allegations in the Complaint."  (Wood Decl., Exs. 5 & 6.)  Thus, disclosure was required even if the witnesses were only intended to be used for

1   impeachment.  *See Standley v. Edmonds-Leach*, 783 F.3d 1276, 1282 n.1 (D.C. Cir.

2   2015) (noting that impeachment evidence is fully discoverable).

3         Second, Musk argues that he identified the two new witnesses the same week

4   that his lawyers were "first able to reach and speak with these witnesses." (Doc. 106

5   at 23.)  He claims this makes his belated identification of the witnesses "substantially

6   justified" under Rule 37.  *Id.*  But this suit was filed in September 2018.  (Doc. 1.)

7   Musk never argues, much less shows, that he or his counsel made diligent efforts to

8   contact the witnesses at any earlier point in time; nor does he explain how his lawyer's

9   first contact with these witnesses could explain Musk's failure to identify them much

10  earlier as persons with relevant knowledge but for his own undue delay.  This lack of

11  diligence undercuts any argument that the belated identification was substantially

12  justified.  *See Theoharis v. Rongen*, No. C13-1345RAJ, 2014 U.S. Dist. LEXIS

13  98086, at *24 (W.D. Wash. July 18, 2014) ("Lack of diligence is

14  not substantial justification[.]").

15        For all these reasons, the two witnesses identified at the eleventh hour, after

16  ample opportunity for earlier disclosure and after discovery had closed, should be

17  excluded from testifying at trial.

18  **II.    CONCLUSION**

19        For the foregoing reasons, this Court should grant Plaintiff Vernon Unsworth's

20  Motion in Limine to preclude arguments or evidence at trial regarding the identified

21  topics.

22        Dated:  November 18, 2019        **L. Lin Wood, P.C.**

23                                         By:  /s/ L. Lin Wood
                                           L. Lin Wood
24                                         *Attorneys for Plaintiff Vernon Unsworth*

25

26

27

28