L. LIN WOOD, P.C.
L. Lin Wood (*pro hac vice*)
lwood@linwoodlaw.com
Nicole J. Wade (*pro hac vice*)
nwade@linwoodlaw.com
Jonathan D. Grunberg (*pro hac vice*)
jgrunberg@linwoodlaw.com
G. Taylor Wilson (*pro hac vice*)
twilson@linwoodlaw.com
1180 West Peachtree Street, Ste. 2040
Atlanta, Georgia 30309
404-891-1402
404-506-9111 (fax)

WEISBART SPRINGER HAYES, LLP
Matt C. Wood (*pro hac vice*)
mwood@wshllp.com
212 Lavaca Street, Ste. 200
Austin, TX 78701
512-652-5780
512-682-2074 (fax)

CHATHAM LAW GROUP
Robert Christopher Chatham
chris@chathamfirm.com
CA State Bar No. 240972
3109 W. Temple St.
Los Angeles, CA 90026
213-277-1800

Attorneys for Plaintiff
VERNON UNSWORTH

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH, | Case No. 2:18-cv-08048 |
| Plaintiff, | Judge: Hon. Stephen V. Wilson |
| v. | **DECLARATION OF MATT C. WOOD IN SUPPORT OF PLAINTIFF VERNON UNSWORTH'S REPLY IN SUPPORT OF MOTION IN LIMINE** |
| ELON MUSK, | |
| Defendant. | |

## DECLARATION OF MATT C. WOOD

I, Matt C. Wood, declare as follows:

1.    I am an attorney at the law firm of Weisbart Springer Hayes LLP, counsel of record in this action for Plaintiff Vernon Unsworth. I am a member in good standing of the State Bar of Texas and have been admitted *pro hac vice* to practice before this Court. I have personal knowledge of the facts set forth in this declaration and, if called to testify, I would testify thereto.

2.    I submit this declaration in support of Mr. Unsworth's Reply in Support of Motion in Limine.

3.    Attached hereto as **Exhibit 1** is a true and correct copy of excerpts from the August 14, 2019 deposition of Vernon Unsworth in this case.

4.    Attached hereto as **Exhibit 2** is a true and correct copy of excerpts from the August 29, 2019 deposition of Woranan Ratrawiphakkun in this case.

5.    Attached hereto as **Exhibit 3** is a true and correct copy of Defendant Elon Musk's Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1), served on June 20, 2019.

6.    Attached hereto as **Exhibit 4** is a true and correct copy of Defendant Elon Musk's Amended Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1), served on August 21, 2019.

7.    Attached hereto as **Exhibit 5** is a true and correct copy of Defendant Elon Musk's Responses and Objections to Plaintiff Vernon Unsworth's First Set of Interrogatories, served on July 18, 2019.

8.    Attached hereto as **Exhibit 6** is a true and correct copy of Defendant Elon Musk's Supplemental Responses and Objections to Plaintiff Vernon Unsworth's First Set of Interrogatories, served on August 21, 2019.

9.    Attached hereto as **Exhibit 7** is a true and correct copy of excerpts from the August 27, 2019 deposition of Vanessa Unsworth in this case.

10.    Attached hereto as **Exhibit 8** is a true and correct copy of excerpts from

1    the August 22, 2019 deposition of Elon Musk in this case.

2           I declare under penalty of perjury under the laws of the State of Texas and

3    the United States that the foregoing is true and correct and that this document was

4    executed in Austin, Texas.

5

6    Dated:  November 18, 2019

7                                              **WEISBART SPRINGER HAYES, LLP**

8                                              By: /s/ Matt C. Wood

9                                                   Matt C. Wood

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Exhibit 1

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3

4

5    VERNON UNSWORTH,

6              Plaintiff,

7              vs.                    Case No. 2:18-cv-8048

8    ELON MUSK,

9              Defendant.
     _____

10

11      VIDEOTAPED DEPOSITION OF VERNON UNSWORTH

12             BEVERLY HILLS, CALIFORNIA

13                AUGUST 14, 2019

14

15

16

17

18

19   Reported By:
     PATRICIA Y. SCHULER
20   CSR No. 11949

21   Job No. 41370

22

23

24

25

                                                            1

**Exhibit 1**

```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5   VERNON UNSWORTH,

 6            Plaintiff,

 7            vs.                    Case No. 2:18-cv-8048

 8   ELON MUSK,

 9            Defendant.
     _____
10

11        Videotaped deposition of VERNON UNSWORTH, taken

12   on behalf of the DEFENDANT at 1244 Beverwil Drive,

13   Beverly Hills, California, beginning at 8:49 a.m.

14   and ending at 6:05 p.m., on August 14, 2019, before

15   PATRICIA Y. SCHULER, Certified Shorthand Reporter

16   No. 11949.

17

18

19

20

21

22

23

24

25
```

2

**Exhibit 1**

```
1    APPEARANCES:

2    FOR PLAINTIFF:

3              L. LIN WOOD, P.C.

4              BY:  L. LIN WOOD, ESQ.

5              BY:  G. TAYLOR WILSON, ESQ.

6              BY:  MARK STEVENS, ESQ.

7              BY:  MATT WOOD, ESQ.

8              1180 West Peachtree Street

9              Suite 2040

10             Atlanta, California  30309

11             lwood@linwoodlaw.com

12   FOR DEFENDANTS:

13             QUINN EMANUEL URQUHART & SULLIVAN, LLP

14             BY:  ROBERT SCHWARTZ, ESQ.

15             BY:  JEANINE ZALDUENDO, ESQ.

16             BY:  ALEX SPIRO, ESQ.

17             BY:  MICHAEL LIFRAK, ESQ.

18             865 South Figueroa Street

19             10th Floor

20             Los Angeles, California  90017

21             jeaninezalduendo@quinnemanuel.com

22   Videographer:

23             Alex Klyusner

24

25
```

**Exhibit 1**

```
 1    A.   Yes.                                        09:43:52

 2         MR. SCHWARTZ:  Let's mark this as our       09:43:52

 3    next exhibit.  This will be 6.                   09:43:52

 4         (Exhibit 6 was marked for identification.)  09:43:52

 5    BY MR. SCHWARTZ:                                  09:43:55

 6    Q.   All right.  So the reporter has given you   09:44:23

 7    what we have marked as Exhibit 6, something from 09:44:24

 8    the website of The British Club Bangkok concerning 09:44:31

 9    a speaking engagement presentation you gave on   09:44:38

10    May 25, 2019, and it's titled "An Inside Story of 09:44:42

11    the Tham Luang Cave Rescue with Vernon Unsworth." 09:44:47

12         Do you see that?                            09:44:55

13    A.   Yes.                                        09:44:55

14    Q.   Did The British Club Bangkok ask you to     09:44:57

15    provide the photos or any other information for  09:45:00

16    this flyer?                                       09:45:02

17    A.   Yes.                                        09:45:09

18    Q.   Did you provide the photos of you on the    09:45:09

19    right and then the group photo on the lower part of 09:45:11

20    the left side?                                    09:45:14

21    A.   I provided these photos via a gentleman     09:45:16

22    called Josh Morris.  He provided the photographs to 09:45:20

23    me, which I passed on to The British Club.       09:45:26

24    Q.   And did you make this presentation on or    09:45:28

25    around May 25, 2019?                             09:45:31
```

Exhibit 1

```
 1        A.   Yes.                                     09:45:34

 2        Q.   And I believe you were -- back in        09:45:37

 3   November of 2018, you were invited to speak at a   09:45:46

 4   British Chamber of Commerce event at the Hard Rock 09:45:50

 5   Cafe in Thailand; is that right?                   09:45:55

 6             MR. WOOD:  Is this Exhibit 7?            09:46:09

 7             MR. SCHWARTZ:  Yes.                       09:46:10

 8             THE WITNESS:  What date did you refer to? 09:46:10

 9             (Exhibit 7 was marked for identification.) 09:46:10

10   BY MR. SCHWARTZ:                                    09:46:11

11        Q.   November 1, 2018.                         09:46:15

12        A.   Yes.                                      09:46:20

13        Q.   And did you, in fact, speak at the        09:46:20

14   British Chamber of Commerce Thailand event that is  09:46:24

15   described on Exhibit 7?                             09:46:28

16        A.   Yes.                                      09:46:31

17        Q.   Did you see this announcement or this --  09:46:35

18   before you spoke?                                   09:46:36

19        A.   Yes.                                      09:46:41

20        Q.   Am I correct that you have been asked to  09:46:46

21   contribute to three books about the cave rescue?   09:46:49

22        A.   Can you repeat the question, please.      09:46:58

23        Q.   Yes.  Is it correct that you have been    09:46:59

24   asked to contribute -- you have been interviewed to 09:47:01

25   provide information for the use in three books that 09:47:05
```

52

**Exhibit 1**

```
 1    rescue?                                              09:51:20
 2            MR. WOOD:  Objection to the form of the      09:51:21
 3    question, particularly the colloquy before the      09:51:22
 4    question.                                            09:51:26
 5    BY MR. SCHWARTZ:                                     09:51:26
 6       Q.   I will ask you -- I'll withdraw the          09:51:27
 7    question.  Just ask the one question that I wanted   09:51:28
 8    to ask you so that we can address Counsel's          09:51:31
 9    objection.                                           09:51:34
10            How did it come about that you were          09:51:34
11    giving interviews to the media during and after the  09:51:36
12    cave rescue?                                         09:51:39
13       A.   As anything -- that the media just           09:51:43
14    approached me.                                       09:51:46
15       Q.   Well, how is it that members of the media    09:51:49
16    knew that you were somebody that might have          09:51:51
17    information or should be interviewed about the cave  09:51:53
18    rescue during the rescue or after the rescue?        09:51:57
19       A.   I don't understand the question.             09:52:01
20       Q.   Well, you recall you were interviewed on     09:52:01
21    camera and by print media during the cave rescue     09:52:05
22    and after the cave rescue, correct?                  09:52:11
23       A.   Yes.                                         09:52:12
24       Q.   Did you ever ask anybody, you know, "how     09:52:14
25    did you find -- why are you talking to me as         09:52:16
```

                                                    56

**Exhibit 1**

```
 1      A.    No.                                        10:44:43

 2      Q.    Did you earn more money in the 12 months   10:44:45

 3   after the cave rescue than you did in the 12 months 10:44:48

 4   before the cave rescue?                             10:44:50

 5      A.    My financial year accounts are still to    10:44:55

 6   be done, which have been lodged with my             10:44:58

 7   accountants, but I would say it is probably the     10:45:01

 8   same.                                               10:45:04

 9      Q.    You've been consulting with someone named  10:45:05

10   Kevin MacDonald in connection with a film about the 10:45:20

11   cave rescue; is that right?                         10:45:22

12      A.    Yes.                                        10:45:24

13      Q.    At any time during -- and by the way, I    10:45:25

14   believe his company has paid you 1,000 pounds in    10:45:30

15   connection with the work; is that right?            10:45:33

16      A.    Yes.                                        10:45:35

17      Q.    And then there's a -- did you also         10:45:39

18   receive money in connection with a documentary      10:45:42

19   called Drain the Oceans?                            10:45:45

20      A.    Yes.                                        10:45:49

21      Q.    And it was about 1,400 pounds?             10:45:49

22      A.    Yes.                                        10:45:52

23      Q.    All right.  At any time did                10:45:53

24   Kevin MacDonald ask you about Mr. Musk's            10:45:55

25   statements?                                         10:45:59
```

**Exhibit 1**

| | | |
|---|---|---|
| 1 | or government was going to give you some award or | 11:13:36 |
| 2 | honor, but because of what Mr. Musk said about you, | 11:13:39 |
| 3 | you were not going to get that award or honor? | 11:13:41 |
| 4 | A.   Not that I am aware. | 11:13:48 |
| 5 | Q.   You have spoken at events for the NIST | 11:13:57 |
| 6 | International School Bangkok at its Empower event; | 11:13:59 |
| 7 | is that right? | 11:14:06 |
| 8 | A.   Yes. | 11:14:07 |
| 9 | Q.   You have also spoken at the Shrewsbury | 11:14:07 |
| 10 | International School Bangkok OFFSEAS convention; is | 11:14:09 |
| 11 | that right? | 11:14:14 |
| 12 | A.   Yes. | 11:14:15 |
| 13 | Q.   Those events -- were they in some way | 11:14:18 |
| 14 | related to your work on the cave rescue? | 11:14:20 |
| 15 | A.   Yes. | 11:14:23 |
| 16 | Q.   And you were invited to those events | 11:14:23 |
| 17 | after Mr. Musk made the statements about you that | 11:14:28 |
| 18 | you are suing him for; is that right? | 11:14:31 |
| 19 | A.   Yes. | 11:14:34 |
| 20 | Q.   You have given five or six presentations | 11:14:38 |
| 21 | on behalf of the National Park officials of the | 11:14:40 |
| 22 | Tham Luang National Forest after the cave rescue; | 11:14:46 |
| 23 | is that right? | 11:14:49 |
| 24 | A.   Yes. | 11:14:51 |
| 25 | Q.   And that was for visitors such as the -- | 11:14:52 |

104

**Exhibit 1**

```
 1      A.    No.                                          11:26:44

 2      Q.    Did you -- when you separated from your      11:26:51

 3  wife, did you experience any mental or emotional        11:27:11

 4  consequences -- negative consequences from that?        11:27:16

 5      A.    Emotional, yes.                              11:27:20

 6      Q.    And when you -- let me back up for a          11:27:22

 7  second.                                                 11:27:32

 8            How often do you see your daughter?  You      11:27:33

 9  said you're living half the time in Thailand.  Does     11:27:36

10  she come visit you in Thailand?                         11:27:39

11      A.    No.                                          11:27:42

12      Q.    Is she unhappy with you for having           11:27:42

13  separated from your wife?                               11:27:45

14      A.    I don't know exactly how she feels.          11:27:50

15      Q.    You've never asked her?                      11:27:54

16      A.    I haven't had the opportunity to ask her.    11:27:56

17      Q.    How is it that you've not had the            11:27:59

18  opportunity?                                            11:28:01

19      A.    Because since the separation we have not      11:28:01

20  seen each other.                                        11:28:04

21      Q.    Is that at her request?                      11:28:05

22      A.    I don't know what the reasons are, but        11:28:09

23  she -- she just won't see me.                           11:28:12

24      Q.    Has your daughter -- but your daughter        11:28:15

25  has not told you why since -- that's 2011?              11:28:17
```

**Exhibit 1**

| | | |
|---|---|---|
| 1 | A.    2013. | 11:28:21 |
| 2 | Q.    2013.  So for last six years your | 11:28:22 |
| 3 | daughter -- because have you separated from your | 11:28:25 |
| 4 | wife and her mother -- your daughter has refused to | 11:28:27 |
| 5 | see or speak with you; is that right? | 11:28:31 |
| 6 | A.    Yes. | 11:28:33 |
| 7 | Q.    Has that been the source of any stress or | 11:28:34 |
| 8 | emotional disturbance in your life? | 11:28:37 |
| 9 | A.    Initially, yes. | 11:28:40 |
| 10 | Q.    Initially being through what period of | 11:28:41 |
| 11 | time?  Or at what point did it stop being something | 11:28:43 |
| 12 | that bothered you emotionally? | 11:28:45 |
| 13 | A.    Two or three years. | 11:28:48 |
| 14 | Q.    How is it that -- but have you tried -- | 11:28:51 |
| 15 | strike that. | 11:28:54 |
| 16 | Have you desired to speak with your | 11:28:55 |
| 17 | daughter in this period of time starting in around | 11:28:57 |
| 18 | 2013 when she refused to see or communicate with | 11:29:02 |
| 19 | you because you separated from her mother? | 11:29:06 |
| 20 | MR. WOOD:  I've been very liberal.  What | 11:29:10 |
| 21 | in the world are you doing asking this man these | 11:29:12 |
| 22 | questions about his daughter? | 11:29:15 |
| 23 | Could you please explain to me what you | 11:29:18 |
| 24 | think you going to get that would lead reasonably | 11:29:21 |
| 25 | to admissible evidence. | 11:29:24 |

**Exhibit 1**

```
 1                  MR. SCHWARTZ:  Yes.                    11:39:52

 2                  MR. WOOD:  You see where it is on the  11:39:52

 3      screen?                                            11:39:54

 4                  MR. SCHWARTZ:  Yes.                    11:39:54

 5      BY MR. SCHWARTZ:                                   11:39:54

 6          Q.   So let me start with that.               11:39:54

 7               Has your daughter -- did your daughter to 11:39:57

 8      speak -- change the verb form --                  11:39:59

 9               Since 2013, this period of time when your 11:40:03

10      daughter stopped or refused to speak or see you,   11:40:07

11      have you tried -- have you tried to reach out and  11:40:10

12      speak with her or see her?                        11:40:13

13          A.   Okay.  Just for the facts, I constantly  11:40:17

14      send her Christmas presents, Christmas cards,     11:40:20

15      birthday cards, birthday presents, Easter cards,  11:40:29

16      Easter presents.  I have done what I needed as a  11:40:33

17      father.  I have done what I needed to do to as a  11:40:38

18      father.                                           11:40:42

19               And when two people separate and there   11:40:42

20      are children involved, things happen.  I don't know 11:40:46

21      why my daughter won't see me or speak to me.  I   11:40:52

22      have tried.  I have sent her text messages.  I have 11:40:56

23      sent her emails.  I have done what I could do to   11:41:00

24      try and keep the relationship going.              11:41:03

25               I can honestly say that before the       11:41:08
```

117

**Exhibit 1**

| | | |
|---|---|---|
| 1 | separation, the situation between my me and my | 11:41:09 |
| 2 | daughter was fine.  I have supported her all the | 11:41:14 |
| 3 | way through her schooling, even to the effect that | 11:41:17 |
| 4 | my wife and I -- we discussed separating as far | 11:41:26 |
| 5 | back as 2006, 2007, when Danielle was due to go to | 11:41:29 |
| 6 | senior school.  And my wife asked me to stay on so | 11:41:36 |
| 7 | that it wouldn't affect her schooling, which is | 11:41:44 |
| 8 | what I did. | 11:41:47 |
| 9 | So she got through her GCSEs and her | 11:41:49 |
| 10 | A-levels, got a university position, and that is | 11:41:52 |
| 11 | when the separation happened.  So through all that | 11:41:55 |
| 12 | time I have tried to communicate, stay in touch by | 11:42:06 |
| 13 | whatever means.  People keep telling me if I did, | 11:42:10 |
| 14 | that it would change, and at some point in time she | 11:42:13 |
| 15 | might decide to make contact with her father again. | 11:42:17 |
| 16 | Q.   Has your daughter's refusal to speak or | 11:42:21 |
| 17 | see you starting in 2013 been the source of any | 11:42:24 |
| 18 | emotional stress or mental harm? | 11:42:27 |
| 19 | A.   Initially, I would say it was not easy. | 11:42:33 |
| 20 | No stress.  Emotionally at times difficult, because | 11:42:36 |
| 21 | she made that decision to not have a relationship | 11:42:46 |
| 22 | with her father, so -- but nothing so far as stress | 11:42:50 |
| 23 | is concerned.  Emotions as far as family are | 11:42:57 |
| 24 | concerned are far different. | 11:43:01 |
| 25 | Q.   So was your daughter's -- strike that. | 11:43:06 |

118

**Exhibit 1**

| | | |
|---|---|---|
| 1 | MR. WOOD:  My objection is noted. | 12:22:38 |
| 2 | You may answer. | 12:22:40 |
| 3 | THE WITNESS:  Not that I know of. | 12:22:41 |
| 4 | BY MR. SCHWARTZ: | 12:22:42 |
| 5 | Q.   You filed your suit against Mr. Musk here | 12:22:49 |
| 6 | in the United States.  You told me earlier that the | 12:22:51 |
| 7 | last time you were in the United States was I think | 12:22:55 |
| 8 | in 1990s; 20-plus years ago.  Is that right? | 12:22:59 |
| 9 | A.   From what I recall, yes. | 12:23:05 |
| 10 | Q.   Why did you bring suit here? | 12:23:06 |
| 11 | MR. WOOD:  Objection.  If you're asking | 12:23:09 |
| 12 | him to tell you about the work product, thought | 12:23:11 |
| 13 | processes, and decisions of his lawyers, he is not | 12:23:15 |
| 14 | a lawyer. | 12:23:19 |
| 15 | To the extent you can answer that | 12:23:20 |
| 16 | question as a lay person, unrelated to anything | 12:23:22 |
| 17 | that you have been told or had communications with | 12:23:25 |
| 18 | counsel, feel free to do so, Mr. Unsworth. | 12:23:29 |
| 19 | THE WITNESS:  Can you repeat the | 12:23:33 |
| 20 | question, please. | 12:23:33 |
| 21 | BY MR. SCHWARTZ: | 12:23:34 |
| 22 | Q.   Yeah.  Why did you file suit against | 12:23:35 |
| 23 | Mr. Musk here in the United States? | 12:23:38 |
| 24 | MR. WOOD:  Subject to my objection and to | 12:23:43 |
| 25 | my instruction that you are not to reveal any | 12:23:43 |

**Exhibit 1**

```
 1    communications with counsel on that subject matter.    12:23:48
 2    If it's necessary for you to answer it by revealing    12:23:53
 3    those communications, I instruct you not to answer.    12:23:56
 4              Do you understand me?                         12:23:59
 5              THE WITNESS:  I do.                           12:24:00
 6              I took advice from my lawyers.                12:24:01
 7    BY MR. SCHWARTZ:                                        12:24:06
 8         Q.   Have you asked anybody to testify for you    12:24:07
 9    at trial here in the U.S.  Forget the here in the      12:24:12
10    U.S.  Have you asked anybody -- strike that.           12:24:15
11              Who have you asked to testify for you at     12:24:18
12    trial?                                                 12:24:21
13         A.   I have not personally asked for anybody      12:24:24
14    to testify.                                            12:24:26
15         Q.   When was your first visit to the cave        12:24:31
16    system?                                                12:24:35
17         A.   My actual first venture into the cave        12:24:38
18    system was in May of 2012.                             12:24:40
19         Q.   Why did you go to that cave system?          12:24:48
20         A.   Because it was there.                        12:24:53
21         Q.   What brought you there?  What was the        12:24:56
22    reason for going to that cave system?                  12:24:59
23         A.   Because it was there to be --                12:25:02
24    effectively, for me it was my first venture into       12:25:02
25    the cave.  I knew it was, at that stage, 6 to          12:25:11
```

153

**Exhibit 1**

```
 1   BY MR. SCHWARTZ:                                    15:19:44

 2        Q.   Is that right?                            15:19:45

 3        A.   Yes.                                      15:19:45

 4        Q.   And one of the lawyers you met with to    15:19:45

 5   prepare for your deposition is representing you in   15:19:47

 6   the UK; is that right?                              15:19:49

 7        A.   Co-counsel Mark Stephens.                 15:19:52

 8        Q.   And you're aware that Mr. Stephens has    15:19:55

 9   filed a lawsuit on your behalf against Mr. Musk     15:19:59

10   about his statements about you that you're suing    15:20:02

11   here as well?                                       15:20:05

12        A.   Can you repeat the question.              15:20:08

13        Q.   Yeah.  That's not a great question.  I'll 15:20:09

14   withdraw.                                           15:20:11

15             You've filed a lawsuit in England against 15:20:12

16   Mr. Musk over the statements he has made about you? 15:20:15

17        A.   Yes.                                      15:20:18

18        Q.   And I understand you're also thinking of  15:20:18

19   suing Mr. Musk in Thailand over what he's said; is  15:20:24

20   that right?                                         15:20:27

21        A.   There's a possibility.  There's been      15:20:29

22   nothing done in that respect.                       15:20:31

23        Q.   Between the various meetings and Skype    15:20:38

24   phone calls that you had with your counsel, how     15:20:40

25   much total time did you spend preparing for your    15:20:42
```

242

**Exhibit 1**

```
 1        Q.   Now, you are not suing here in this          15:22:34
 2   lawsuit for any damages to your reputation in          15:22:36
 3   England and Wales; is that right?                      15:22:39
 4        A.   Not that I know of.                          15:22:45
 5        Q.   I want you to think about all of the harm    15:22:50
 6   to your reputation that you believe Mr. Musk caused    15:22:52
 7   you by what he said about you.  Can you separate in    15:22:56
 8   your mind the harm to your reputation you claimed      15:22:58
 9   to have suffered in just England and Wales from the    15:23:01
10   rest of the world, or does it all blend together?      15:23:04
11        A.   It all blends together.  As I               15:23:10
12   mentioned --                                           15:23:15
13        Q.   Are you -- sorry.  Go ahead.                 15:23:15
14        A.   As I mentioned much earlier on, this is     15:23:15
15   worldwide.  So it's not necessarily just restricted    15:23:17
16   to Los Angeles and the USA and UK and London and       15:23:21
17   Wales.  It is worldwide.                               15:23:26
18             MR. WOOD:  And if it helps, it would not     15:23:30
19   surprise me that sometime in the near future the       15:23:32
20   exclusion of England and UK and Wales will be          15:23:36
21   removed.  So but you are free to examine if you        15:23:40
22   think he can differentiate it.                         15:23:44
23             MR. SCHWARTZ:  Okay.                         15:23:46
24   BY MR. SCHWARTZ:                                       15:23:46
25        Q.   In the course of this deposition, you        15:23:56
```

245

**Exhibit 1**

```
 1              MR. SCHWARTZ:  What's that?               17:28:40

 2              MR. WOOD:  You need to know --            17:28:40

 3              MR. SCHWARTZ:  Okay, well --              17:28:40

 4              MR. WOOD:  -- your fellow, your CEO used  17:28:40

 5    an alias when he was involved in this illegal      17:28:42

 6    spying --                                          17:28:45

 7              MR. SCHWARTZ:  Okay.                      17:28:45

 8              MR. WOOD:  -- on my client's lawyers.     17:28:45

 9              MR. SCHWARTZ:  Thank you for              17:28:46

10    editorializing in the middle of a deposition on    17:28:46

11    something else.                                     17:28:50

12    BY MR. SCHWARTZ:                                    17:28:51

13        Q.   You used to be in a business entity       17:28:51

14    called Burgess, Refered, and Unsworth?             17:28:53

15        A.   Yes.                                       17:28:56

16        Q.   And that entity dissolved in 1996?        17:28:57

17        A.   Yes.                                       17:29:00

18        Q.   It was a financial products firm; is that 17:29:01

19    right?                                              17:29:03

20        A.   Financial services firm.                  17:29:05

21        Q.   Financial services.  And those financial  17:29:06

22    services were predominantly insurance and          17:29:06

23    mortgages?                                          17:29:10

24        A.   Insurances, pensions, mortgages,          17:29:11

25    investments.                                        17:29:13
```

325

**Exhibit 1**

| 1 | Q. All right. You're aware there was an | 17:29:17 |
| 2 | investigation of your firm by an agency of the | 17:29:18 |
| 3 | British government, the Personal Investment | 17:29:22 |
| 4 | Authority? | 17:29:24 |
| 5 | A. Yes. | 17:29:24 |
| 6 | Q. And that resulted in your company paying | 17:29:24 |
| 7 | a fine; is that right? | 17:29:28 |
| 8 | A. I can't remember the exact nature of the | 17:29:34 |
| 9 | fine, because by the time the company was | 17:29:36 |
| 10 | dissolved, its -- anything is taken out of our | 17:29:38 |
| 11 | hands, and I believe it was finally reported in | 17:29:41 |
| 12 | around about 2004. | 17:29:45 |
| 13 | So anything -- once the company goes into | 17:29:46 |
| 14 | administration -- which is what I did, I put the | 17:29:49 |
| 15 | company into administration -- anything to do with | 17:29:52 |
| 16 | the FCFS is out of our control. | 17:29:55 |
| 17 | Q. And the result of the investigation was a | 17:29:59 |
| 18 | declaration by the Financial Services Compensation | 17:30:07 |
| 19 | Scheme to allow individuals who had done business | 17:30:09 |
| 20 | with your company to obtain compensation? | 17:30:14 |
| 21 | A. Yes. | 17:30:17 |
| 22 | Q. How much had your clients or customers | 17:30:19 |
| 23 | lost? | 17:30:21 |
| 24 | A. I have no idea. | 17:30:24 |
| 25 | Q. Was it thousands of pounds? | 17:30:26 |

326

**Exhibit 1**

```
 1      A.   I have no idea.  I wasn't privy to that        17:30:28
 2   information.                                           17:30:31
 3      Q.   You said earlier in the deposition that        17:30:32
 4   you work Monday to Friday, eight hours a day.          17:30:33
 5           Do you do that also when you are in            17:30:36
 6   Thailand, or is that -- were you talking about when    17:30:38
 7   you are in England?                                    17:30:40
 8      A.   It is both.                                    17:30:41
 9      Q.   Have you ever had any eligibility or           17:30:45
10   license to conduct any type of business suspended     17:30:48
11   or revoked or terminated?                              17:30:51
12      A.   No.                                            17:30:53
13      Q.   And you are currently with a company           17:30:53
14   called Affinity; is that right?                        17:30:56
15      A.   My registration, my certificate to trade       17:31:03
16   is actually given to me by Affinity Select             17:31:06
17   Insurance Services Limited.  I am a sole trader,       17:31:10
18   and I trade under a trading style of Affinity          17:31:15
19   Select Insurance Services, which is owned by           17:31:19
20   Affinity Select -- sorry.  Affinity Insurance and      17:31:21
21   Mortgage Services, which is owned by Affinity          17:31:24
22   Select Insurance Services Limited.                     17:31:28
23      Q.   You said what you do for a living is you       17:31:30
24   are a trader.  Are you a trader for yourself or do     17:31:31
25   you also have clients?                                 17:31:34
```

327

**Exhibit 1**

```
 1
 2
 3
 4
 5
 6
 7
 8
 9    I, VERNON UNSWORTH, do hereby declare under the
10    penalty of perjury that I have read the foregoing
11    transcript; that I have made any corrections as
12    appear noted, in ink, initialed by me, or attached
13    hereto; that my testimony as contained herein, as
14    corrected, is true and correct.
15         EXECUTED this 16ᵗʰ day of  SEPTEMBER
16    20 19 , at    London        ,              .
17                   (City)              (State)
18
19                       ⟋
20                   VERNON UNSWORTH
21
22
23
24
25
```

344

VERNON UNSWORTH

August 14, 2019

Page 342

1  two people plus Tik and her parents, is there
2  anybody else that you know?
3      **A.  Not that I can recall.**
4      Q.  So did any of the police authorities ask
5  Tik anything about any of your sexual preferences
6  or behaviors, whether pedophile, child rapist,
7  married a child bride, anything like that?
8      **A.  Again, you'll have to speak to Tik about**
9  **that.**
10     Q.  So you don't know?
11     **A.  No.**
12     Q.  Did any of the authorities ask any of
13 those kinds of questions of Tik's parents; either
14 of them?
15     **A.  Again, you'll have to speak to Tik about**
16 **that.**
17     Q.  That is because you don't know?
18     **A.  I don't know, correct.**
19     Q.  Thank you.
20         MR. WOOD:  Subject to counsel for
21 Mr. Musk, reservation to move to compel the Court
22 on the issue of the attorney-client invasion and
23 the instructions based on it, the deposition is
24 concluded.
25         Thank you very much, Mr. Unsworth.

Page 343

1          MR. SCHWARTZ:  Let's go off the video
2  record.  Actually, let's go off both records and
3  just figure out transcript mechanics and video.  We
4  can discuss this off the record and put it back on
5  the record.
6          THE VIDEOGRAPHER:  The time is 6:05 p.m.
7  We are off the video record.
8          (The videotaped deposition of
9          VERNON UNSWORTH concluded at 6:05 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 344

9  I, VERNON UNSWORTH, do hereby declare under the
10 penalty of perjury that I have read the foregoing
11 transcript; that I have made any corrections as
12 appear noted, in ink, initialed by me, or attached
13 hereto; that my testimony as contained herein, as
14 corrected, is true and correct.
15     EXECUTED this _____ day of _____,
16 20____, at _____, _____.
17              (City)              (State)
18
19         _____
20                VERNON UNSWORTH

Page 345

1          I, PATRICIA Y. SCHULER, a Certified
2  Shorthand Reporter of the State of California, do
3  hereby certify:
4          That the foregoing proceedings were taken
5  before me at the time and place herein set forth;
6  that any witnesses in the foregoing proceedings,
7  prior to testifying, were duly sworn; that a
8  verbatim record of the proceedings was made by me
9  using machine shorthand which was thereafter
10 transcribed under my direction; that the foregoing
11 transcript is a true record of the testimony given.
12         Further, that if the foregoing pertains
13 to the original transcript of a deposition in a
14 Federal Case, before completion of the proceedings,
15 review of the transcript [X] was [ ] was not
16 requested.
17         I further certify I am neither
18 financially interested in the action nor a relative
19 or employee of any attorney of party to this
20 action.
21         IN WITNESS WHEREOF, I have this date
22 subscribed my name.
23 Dated:  August 28th, 2019
24
24         *Patricia Y. Schuler*
25         PATRICIA Y. SCHULER, CSR NO. 11949

Plaintiff's Deposition Errata Sheet

- Page 4 Line 17-18
  a. From  "Illustration done by V. Unsworth at deposition"
  b. To       "Illustration done by Mr. Schwartz at deposition"
- Page 10 Line 23
  a. From   "It Is"
  b. To       "I Do"
- Page 16 Line 16
  a. From   "Now, are you aware that Mr. Musk and some"
  b. To       "Now you're aware that Mr. Musk and some"
- Page 17 Line 13-14
  a. From   "We'd like to see it"
  b. To       "So we can see what he said"
- Page 19 Line 21-22
  a. From   "are 99 percent sure you know what my next question is?"
  b. To       "are 99 percent sure you know what my question is?"
- Page 22 Line 2
  a. From   "Mr. Wood"
  b. To       "Mr. Schwartz"
- Page 27 Line 6
  a. From   "any injury you sustained in the cave rescue"
  b. To       "any injury you sustained during the cave rescue"
- Page 31 Line 8
  a. From   "Your – you were in Thailand as a"
  b. To       "Your – you were in Thailand as of"
- Page 34 Line 11
  a. From   "connection with the cave system"
  b. To       "connection with the cave rescue"
- Page 39 Line 16
  a. From   "The Witness: Yes"
  b. To       Nothing, witness does not affirm this testimony
- Page 42 Line 1
  a. From   "you asking the question"
  b. To       "the actual question"
- Page 47 Line 24-25
  a. From   "Mr. Wood: I pity the person who is going to have to figure out what we were doing in here"
  b. To       "Mr. Schwartz: I pity the person who is going to have to figure out what we were doing in here"
- Page 53 Line 18
  a. From   "Okay. Did she speak to about her"
  b. To       "Okay. Did she speak to you about her"
- Page 57 Line 7
  a. From   "Do you like getting asked to be"

**Exhibit 1**

     b.   To      "Did you like getting asked to be"
- Page 58 Line 13
  - a. From   "Mr. Wood: I'm going to object. It's so"
  - b. To      "Mr. Wood: It's so"
- Page 63 Line 24
  - a. From   "other forms that I have just given you the answers"
  - b. To      "other forms that I have just given the answers"
- Page 66 Line 20
  - a. From   "Because it's not a question – it's not a"
  - b. To      "It's not a question – it's not a"
- Page 69 Line 15-16
  - a. From   "Mr. Wood: Have you asked had him when he began living with Tik? I missed that."
  - b. To      "Mr. Wood: Have you asked him when he began living with Tik? Or did I miss that?"
- Page 74 Line 3
  - a. From   "She lives in a village. It's called"
  - b. To      "She lives in a village. Which goes by the name of"
- Page 74 Line 15
  - a. From   "simply because I'm having a lot of involvement with"
  - b. To      "simply because I've had a lot of involvement with"
- Page 76 Line 11
  - a. From   "asked you why you spent so much time in Thailand?"
  - b. To      "asked you why you spend so much time in Thailand?"
- Page 78 Line 20
  - a. From   "the BBC, correct?"
  - b. To      "at the BBC, correct?"
- Page 89 Line 1
  - a. From   "anything to it. I just replied to –"
  - b. To      "anything to what I've just replied to --"
- Page 89 Line 19
  - a. From   "and child rapist? That's what you think he said"
  - b. To      "and child rapist? That's what you claim he said"
- Page 90 Line 5
  - a. From   "friends. They will quietly say "We know you're not"
  - b. To      "friends. They will quietly say "Vern, we know you're not"
- Page 90 Line 18
  - a. From   "It is tagged to it. It's as if I am"
  - b. To      "It's tagged. It's as if I am"
- Page 105 Line 11
  - a. From   "or otherwise, and had the engagement canceled"
  - b. To      "or otherwise, but then had the engagement canceled"
- Page 106 Line 5
  - a. From   "just justifiable compensation to vindicate that. I"
  - b. To      "for justifiable compensation to vindicate that. And I"

**Exhibit 1**

- Page 107 Line 22
    a. From   "Mr. Wood: These are his own words."
    b. To       "Mr. Wood: These were his own words."
- Page 109 Line 22
    a. From   "manifestations of emotional or mental harm? I'll"
    b. To       "manifestations of the emotional or mental harm? I'll"
- Page 110 Line 1-2
    a. From   "I'm going to ask you a new question; withdraw the last question"
    b. To       "I'm going to ask you a new question. I am going to withdraw the last question."
- Page 110 Line 16
    a. From   "Sorry. Can repeat the question again."
    b. To       "Sorry, Can you repeat the question again."
- Page 111 Line 22
    a. From   "I've been very techy."
    b. To       "I've become very techy."
- Page 116 Line 16
    a. From   "So let's state the question."
    b. To       "So let's restate the question."
- Page 116 Line 24-25
    a. From   "tried to do speak with your daughter during this period?"
    b. To       "tried to speak with your daughter in this period?"
- Page 117 Line 19-20
    a. From   "And when two people separate, and there are children involved, things happen. I don't know"
    b. To       "And when two people separate, and there is children involved, things happen. I don't know"
- Page 118 Line 24
    a. From   "concerned are far different."
    b. To       "concerned are different."
- Page 119 Line 5
    a. From   "Mr. Wood: Asked and answered."
    b. To       Nothing, statement/objection not in the record
- Page 122 Line 9
    a. From   "Mr. Schwartz: Free me to correct me if I"
    b. To       "Mr. Schwartz: Feel free to correct me if I"
- Page 122 Line 11-14
    a. From   "Mr. Wood: Well, he's not here so he can't look at the transcript. I'd be happy to go back to the answer and let him see it. We've got it on the realtime"
    b. To       "Mr. Wood: Well, he's not here unless you want him to look back at the transcript. I'm happy to go back to what he answered and let him see it. If we've got it on realtime. "

**Exhibit 1**

- Page 126 Line 22
    a. From   "A. That night?"
    b. To       "Mr. Wood: That night?"
- Page 128 Line 1
    a. From   "'Irritable' doesn't come into the"
    b. To       "'Irritable' doesn't really come into the"
- Page 135 Line 15
    a. From   "myself in terms of feelings and emotion, yes."
    b. To       "myself in terms of feelings and emotion."
- Page 136 Line 21-22
    a. From   "Mr. Wood: No. THE WITNESS: Excuse me?"
    b. To       "THE WITNESS: No. Mr. Wood: Excuse me?"
- Page 137 Line 1
    a. From   "A. Yes."
    b. To       "Mr. Schwartz: Yes."
- Page 141 Line 4-5
    a. From   "Mr. Wood: He's telling you there are no other authorities"
    b. To       "Mr. Wood: I think he's telling you there are no other Thai authorities"
- Page 141 Line 13
    a. From   "I am not aware any other high"
    b. To       "I am not aware of any other Thai"
- Page 141 Line 22
    a. From   "as high police authorities contact Tik as a result"
    b. To       "these Thai police authorities contact Tik as a result"
- Page 144 Line 2-3
    a. From   "that contacted Tik, did they ask you if you were a pedophile or a child rapist?"
    b. To       "that contacted Tik, did they ask her if you were a pedophile or a child rapist?"
- Page 145 Line 4
    a. From   "from July 2011, and had no reason for any of those"
    b. To       "from July 2011, and had no reason for any of these"
- Page 149 Line 15-17
    a. From   "Mr. Schwartz: But not in reaction to the questioning, I don't believe. Mr. Wood: No."
    b. To       "Mr. Wood: But not in reaction to the questioning, I don't believe.  Mr. Schwartz: No."
- Page 161 Line 22
    a. From   "Mr. Wood: Yes."
    b. To       "Unknown voice: Yes."
- Page 164 Line 3
    a. From   "That was arraigned through Tik, my"
    b. To       "That was arranged through Tik, my"

**Exhibit 1**

- Page 167 Line 3
    a. From   "disconnect that? Then hand it to me. Hopefully he will just hit
       the play button there?"
    b. To      "disconnect that? Then hand it to me. Hopefully it'll work, and
       what do you want me to do just hit the play button there?"
- Page 167 Line 21
    a. From   "Mr. Wood: Yeah"
    b. To      "THE WITNESS: Yeah."
- Page 175 Line 10
    a. From   "What would become of it"
    b. To      "The running of it"
- Page 178 Line 17
    a. From   "I cannot honestly recall everything that"
    b. To      "I cannot honestly recall what everything that"
- Page 179 Line 23
    a. From   "asked about an idea Mr. Musk had to assist with the"
    b. To      "asked you about an idea Mr. Musk had to assist with the"
- Page 180 Line 17
    a. From   "to say "Mr. Musk can stick his submarine where it"
    b. To      "you to say "Mr. Musk can stick his submarine where it"
- Page 185 Line 7-8
    a. From   "Q. Oh, Okay.  A. It turned up late, after the rescue had ended."
    b. To      "Q. Oh Okay. It turned up late.  A. After the rescue had ended."
- Page 189 Line 24
    a. From   "timeline. Hold on."
    b. To      "term. Hold on."
- Page 199 Line 6
    a. From   "Mr. Wood: Objection to the form,"
    b. To      "Mr. Wood: Objection to the form of the question,"
- Page 202 Line 11
    a. From   "asked is, what had Mr. Musk done that caused you to"
    b. To      "asked is, what had Mr. Musk done to cause you to"
- Page 204 Line 1
    a. From   "know that he built the tube. He, Mr. Musk, wanted"
    b. To      "know that he built the tube and delivered it. He, Mr. Musk
       wanted"
- Page 213 Line 25
    a. From   "I can't recall the discussions were"
    b. To      "I can't recall what the discussions were"
- Page 218 Line 6
    a. From   "That is what it effectively put into operation for"
    b. To      "That is what it was effectively put into operation for"
- Page 220 Line 5
    a. From   "Mr. Schwartz: Okay. What would he use?"
    b. To      "Mr. Schwartz: Okay. What would we use?"

**Exhibit 1**

- Page 220 Line 15
    a. From  "Dive start point is the section out of"
    b. To      "The dive start point was the section out of"
- Page 221 Line 10
    a. From  "Mr. Wood: Go ahead"
    b. To      "Mr. Schwartz: Go ahead"
- Page 230 Line 24
    a. From  "about the cave rescues that mention you?"
    b. To      "about the cave rescue that mention you?"
- Page 235 Line 15
    a. From  "Only what I know from hearsay."
    b. To      "Only what I heard from hearsay."
- Page 236 Line 1
    a. From  "But you don't recall who told you that?"
    b. To      "But you don't remember who told you that?"
- Page 239 Line 5
    a. From  "And in regards what he and Mr. Musk were"
    b. To      "And as regards what he and Mr. Musk were"
- Page 240 Line 2
    a. From  "Stanton"
    b. To      "Mr. Stanton"
- Page 243 Line 19
    a. From  "Well, the hours basically make up days."
    b. To      "Well, the hours basically make up the days."
- Page 244 Line 23
    a. From  "Would it be more than 50?"
    b. To      "More than 50?"
- Page 251 Line 21
    a. From  "with prostitutes, many of whom are under the age of"
    b. To      "with prostitutes, some of whom are under the age of"
- Page 254 Line 14
    a. From  "Mr. Wood: Is there a reason that hasn't?"
    b. To      "Mr. Wood: Is there a reason why it hasn't been?"
- Page 254 Line 24-25
    a. From  "Mr. Wood: Looking for something to ask him about and distract him."
    b. To      "Mr. Wood: Looking for something to ask him about I guess."
- Page 256 Line 21
    a. From  "sure he should.  He already admitted, and the Court"
    b. To      "sure he should. You have admitted, and the Court"
- Page 257 Line 2
    a. From  "not proper. We've recognized that. The Court has"
    b. To      "not proper. You've recognized that. The Court has"
- Page 262 Line 19
    a. From  "true, then I challenged him to show the final"

**Exhibit 1**

    b.  To     "true, then I challenge this dude to show the final"
- Page 265 Line 23
  a. From  "again.  Now I want to ask about harm because of"
  b. To      "again.  Now I want to ask about harm because remember"
- Page 269 Line 23
  a. From  "reports Mr. Musk received from Mr. Birchall and"
  b. To      "reports Mr. Musk received from Mr. Birchall from"
- Page 270 Line 24
  a. From  "I'm getting worse now than Bobby"
  b. To      "Even worse I'm bobbing"
- Page 274 Line 22
  a. From  "Mr. Schwartz: Okay. That's fine"
  b. To      "Mr. Schwartz: Okay. Lets go on to the next one."
- Page 277 Line 17
  a. From  "Exhibit 23 is a copy of the article from"
  b. To      "Exhibit 23 is a copy of an article from"
- Page 278 Line 22
  a. From  "His conduct demonstrates that his reckless is"
  b. To      "His conduct demonstrates that his recklessness is"
- Page 290 Line 21
  a. From  "the phrase. But why don't you go ahead and answer"
  b. To      "the phrase. But you go ahead and answer"
- Page 293 Line 5
  a. From  "After the rescue, and we're talking about"
  b. To      "After the rescue, and you're talking about"
- Page 293 Line 10
  a. From  "talked with you for purposes of writing a printed"
  b. To      "talked with you for purposes of writing a print"
- Page 294 Line 14
  a. From  "As I said, I can't recall I don't recall"
  b. To      "As I said, I don't recall"
- Page 296 Line 15
  a. From  "I can't expand any more on what I have"
  b. To      "I can't expand on what I have"
- Page 297 Line 1
  a. From  "plot.  It's just it's a throwaway comment, and it"
  b. To      "plot there. It's just it's a throwaway comment, and it"
- Page 303 Line 10
  a. From  "reporter – the file anyways is Amy Lefevre"
  b. To      "reporter – on the by line anyways is Amy Lefevre"
- Page 305 Line 18
  a. From  "to Mr. Musk's decision to visit the controversy"
  b. To      "to Mr. Musk's decision to revisit the controversy"

**Exhibit 1**

- Page 309 Line 15-16
  a. From  "communications you had with reporters where the reporter stops and the reporter give you cards."
  b. To     "communications you had with reporters before we stopped and reporters giving you cards"
- Page 310 Line 11
  a. From  "have evidence that he was talking about?"
  b. To     "have any evidence that he was talking about?"
- Page 310 Line 17
  a. From  "He never said anything like that to back"
  b. To     "He never said anything like that about you to back"
- Page 311 Line 5
  a. From  "Mr. Wood: Object to the same question."
  b. To     "Mr. Wood: Object to the form of the question."
- Page 315 Line 22
  a. From  "asking the statements that are not in quotes."
  b. To     "asking about statements that are not in quotes."
- Page 315 Line 24-25
  a. From  "Mr. Wood: Wait a minute. "Vernon is – without seeing my practice." But for Vernon, I am"
  b. To     "Mr. Wood: Wait a minute. "Vernon is as close to Richard Jewel as I've seen in my practice" But for Vernon, I am"
- Page 316 Line 1
  a. From  "Not sure the rest of it could have happened. Wait"
  b. To     "Not sure the rescue could have happened. Wait"
- Page 320 Line 11
  a. From  "document.  This is a publicly available document"
  b. To     "document. This is not a publicly available document"
- Page 321 Line 10
  a. From  "with this latest translation."
  b. To     "with this lady's translation."
- Page 322 Line 1
  a. From  "Mr. Wood: This is not I publicly"
  b. To     "Mr. Wood: This is not a publicly"
- Page 324 Line 7
  a. From  "words or effect, that any aspect to you was"
  b. To     "words or effect, that any aspect of that to you was"
- Page 325 Line 8
  a. From  "Mr. Wood: -- on my client's lawyers."
  b. To     "Mr. Wood: -- on my client's attorneys"
- Page 327 Line 8
  a. From  "It is both."
  b. To     "Actually its in both"
- Page 329 Line 4
  a. From  "I will average over the last two or three"

**Exhibit 1**

b. To    "On average over the last two or three"
- Page 329 Line 7
    a. From   "or have you had and other sources of income?"
    b. To     "or have you had any other sources of income?"
- Page 329 Line 13
    a. From   "Just strictly in the UK, no."
    b. To     "I'm just thinking, in the UK, no."
- Page 339 Line 6
    a. From   "A. No, of course not."
    b. To     "A. No   Mr. Wood: Of course not."
- Page 339 Line 23
    a. From   "effectively the secretary – so he was interviewed."
    b. To     "effectively his secretary – so he was interviewed."
- Page 342 Line 6
    a. From   "or behaviors, whether pedophile, child rapist,"
    b. To     "or behaviors, whether you're a pedophile, child rapist,"

**Exhibit 1**

```
1    From _____   to _____

2    Page _____ Line _____ Reason Code _____

3    From _____   to _____

4    Page _____ Line _____ Reason Code _____

5    From _____   to _____

6    Page _____ Line _____ Reason Code _____

7    From _____   to _____

8    Page _____ Line _____ Reason Code _____

9    From _____   to _____

10   Page _____ Line _____ Reason Code _____

11   From _____   to _____

12   Page _____ Line _____ Reason Code _____

13   From _____   to _____

14   Page _____ Line _____ Reason Code _____

15   From _____   to _____

16
         _____ Subject to the above changes, I certify that
17   the transcript is true and correct.

18       _____ No changes have been made. I certify that the
     transcript is true and correct.
19

20

21

22                        VERNON UNSWORTH

23

24

25
```

347

**Exhibit 1**

# EXHIBIT 2

Exhibit 2

```
 1

 2                 UNITED STATES DISTRICT COURT
                 CENTRAL DISTRICT OF CALIFORNIA
 3

 4

 5

 6
      -----------------------)
 7                           )
                             )
 8    VERNON UNSWORTH,        )
                             )
 9           Plaintiff       )
                             )
10    vs.                    )  Case No. 2:18-cv-08048
                             )
11                           )
      ELON MUSK,             )
12                           )
             Defendant       )
13    -----------------------)

14

15

16
        Videotape Deposition of WORANAN RATRAWIPHAKKUN
17

18
              On Wednesday, 28th August 2019
19

20
      Taken at the offices of:
21
              Howard Kennedy LLP
22            1 London Bridge
              London SE1 9BG
23            United Kingdom

24

25
```

```
 1

 2     A P P E A R A N C E S

 3     On behalf of the Plaintiff:

 4             L. LIN WOOD, P.C.
               1180 West Peachtree Street
 5             Suite 2040
               Atlanta, Georgia 30309
 6
                       By:  MR. G. TAYLOR WILSON
 7                          MR. LIN WOOD

 8
               HOWARD KENNEDY LLP
 9             1 London Bridge
               London SE1 9BG
10             United Kingdom

11                     By:  MR. ADAM FELLOWS
                            MR. MARK STEPHENS
12

13     On behalf of the Defendant:

14             QUINN EMANUEL URQUHART & SULLIVAN LLP
               51 Madison Avenue
15             22nd Floor
               New York
16             New York 10010

17                     By:  MR. ALEX SPIRO
                            MS. JENNIFER KIM
18
       Court Reporter:
19
               PAULA FOLEY
20             Marten Walsh Cherer Ltd
               2nd Floor
21             Quality House
               6-9 Quality Court
22             Chancery Lane
               London WC2A 1HP
23

24     Also Present:

25             PHILIP HILL, Videographer
```

```
 1                    RATRAWIPHAKKUN - WILSON
 2          A.      (Through interpreter)  No.
 3          Q.      No, as in it is accurate, or no as
 4   in some parts are in fact inaccurate?
 5          A.      Some part is inaccurate.
 6          Q.      And you do not recall giving an
 7   interview to anyone named Big Kren?
 8          A.      No.
 9          Q.      You mentioned a member of the media
10   called Coconuts.  Does this interview appear to be
11   taken in some fashion from the interview you gave
12   to Coconuts?
13          A.      I am not sure Coconut must have
14   sold -- you know, she must have sold the thing
15   that I said to her to other people.  I am not
16   sure.
17          Q.      Have you ever heard of Big Kren?
18          A.      No.
19          Q.      The interview you gave to Coconuts,
20   is that the only interview you have ever given
21   regarding this matter?
22          A.      Yes.  I have never given any
23   pictures.
24          Q.      Has Vern ever told you that he
25   found Mr. Musk's accusations against him to be
```

                    RATRAWIPHAKKUN - WILSON

1

2    humorous or funny?

3          A.      No.  No.

4          Q.      You testified earlier that you did

5    say that you had used the word "laughable".

6          A.      What I meant is that it is

7    laughable that -- I mean, what side of his brain

8    he is using in causing and saying this accusation?

9    A lot of people say that he is a genius and also

10   he has a lot of money.  He is a billionaire.  So,

11   because he is a billionaire, he can say anything

12   he wants?

13          THE WITNESS:  That is not fair.

14          A.      (Through interpreter)  That is not

15   fair.

16          Q.      Does "laughable" mean it is so

17   obviously false that it is laughable.

18          THE WITNESS:  Laughable he thinking.

19          A.      (Through interpreter) I think it is

20   laughable, that what he think in his brain is

21   laughable.

22              MR. WILSON:  Could we just take a

23   two or three-minute break, please?  Is that okay?

24              THE VIDEOGRAPHER:  Going off the

25   record.  The time is 9.35.

```
 1                  RATRAWIPHAKKUN - SPIRO

 2              MR. SPIRO:  Yes.

 3        A.     (Through the interpreter) What kind

 4   of work do you want?  There are several kinds of

 5   work?  I also work at night and I got good money

 6   for it.  But it is hard work.  You can contact

 7   me."

 8        Q.    And you are denying that that is

 9   your sentence?  You are denying that those are

10   your words?

11            THE WITNESS:  Not me.

12        A.     (Through the interpreter) I deny

13   it.

14              MR. SPIRO:  Okay, I have no further

15   questions.

16              MR. WILSON:  I appreciate if you do

17   not sandbag the witness or any ----

18              MR. SPIRO:  I can ask her any

19   question I want of the witness.

20              MR. WILSON:  Can we have a break

21   now?

22              MR. SPIRO:  Just because you did

23   not anticipate a question does not make it

24   sandbagging.

25              THE VIDEOGRAPHER:  Going off the
```

105

1
2                    **CERTIFICATE OF WITNESS**
3
4            I, Woranan Ratrawiphakkun, am the deponent
5    in the foregoing deposition.  I have read the
6    foregoing deposition and, having made such changes
7    and corrections as I desired, I certify that the
8    transcript is a true and accurate record of my
9    responses to the questions put to me on 28th
10   August, 2019.
11
12
13
14
15
16   Signed ............................
17           WORANAN RATRAWIPHAKKUN
18
19
20
21   Dated this ..9.... day of ...NOVEMBER..2019
22
23
24
25

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 020 7067 2900**

www.martenwalshcherer.com

                                                    **Exhibit 2**

**CERTIFICATE OF COURT REPORTER**

I, Paula Foley, Accredited Court Reporter, do hereby certify that I took the Stenograph notes of the foregoing, and that the transcript thereof is a true and accurate record transcribed to the best of my skill and ability.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which the deposition was taken and that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially or otherwise interested in the outcome of the action.

Signed .........................
       PAULA FOLEY

```
1
2                    E R R A T A
3            (Please make any corrections here,
4                 not in the transcript)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

# EXHIBIT 3

Exhibit 3

1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice* pending)
2 |   alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
3 | New York, New York 10010
Telephone: (212) 849-7000
4 |

5 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
6 |   robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
7 |   michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
8 |   jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
9 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
10 |

11 | *Attorneys for Defendant Elon Musk*

12 |

13 | **UNITED STATES DISTRICT COURT**

14 | **CENTRAL DISTRICT OF CALIFORNIA**

15 |

| | |
|---|---|
| VERNON UNSWORTH, | Case No. 2:18-cv-08048 |
| Plaintiff, | Judge: Hon. Stephen V. Wilson |
| vs. | **DEFENDANT ELON MUSK'S INITIAL DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)** |
| ELON MUSK, | |
| Defendant. | |

**Exhibit 3**

DEFENDANT ELON MUSK'S INITIAL DISCLOSURES

1    Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendant Elon Musk,
2    hereby provides the following initial disclosures.

3    **GENERAL LIMITATIONS**

4    These disclosures are based on information presently available to Mr. Musk,
5    and Mr. Musk reserves the right to modify, amend, or otherwise supplement these
6    disclosures in accordance with Federal Rule of Civil Procedure 26(e), after further
7    investigation and discovery.

8    These disclosures represent a good faith effort to identify information that Mr.
9    Musk reasonably believes may be used to support his claims or defenses.  By making
10   the following disclosures, Mr. Musk does not represent that every individual or entity
11   identified herein necessarily possesses such information or will serve as a witness.
12   Nor does Mr. Musk represent that he has identified every witness, document, or
13   tangible thing that may support his claims or defenses in this action.  Mr. Musk
14   reserves the right to call any witness, including the right to identify expert witnesses,
15   or present any exhibit or item at trial not listed herein but determined through
16   discovery, investigation, or otherwise to support his claims or defenses.

17   By making these initial disclosures, Mr. Musk in no way concedes the
18   relevance or admissibility of any of the foregoing information, nor does Mr. Musk
19   waive his right to object to discovery of any information based on disclosures herein
20   on the grounds of the attorney-client privilege, work-product doctrine, or any other
21   applicable privilege, immunity, law, or rule.  Mr. Musk also does not waive his right
22   to assert any other objection authorized by the Federal Rules of Civil Procedure or
23   Evidence, or any other applicable rule of law, in response to interrogatories, requests
24   for admission, requests for production of documents, questions at depositions, or any
25   other discovery requests involving or relating to the subject matter of these
26   disclosures.

27   All of the disclosures set forth below are made subject to the above
28   qualifications.

**Exhibit 3**

- 1 -

# **INITIAL DISCLOSURES**

I.      RULE 26(a)(1)(A)(i):  the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

Subject to and without waiving the General Limitations, and based on the information currently available to Mr. Musk, Mr. Musk provides the following preliminary identification of individuals likely to have discoverable information that he may use to support his claims and/or defenses in this action, unless the use would be solely for impeachment.  The general subject matter of information listed for each individual does not in any way limit Mr. Musk's rights to question or call any individual listed to testify regarding any particular subject.

In addition to the persons listed below, Mr. Musk reserves his right to rely upon all individuals and/or entities listed in Plaintiff's initial disclosures, including in any subsequent disclosure supplementing, revising, correcting, clarifying or otherwise amending any information disclosed therein.  Mr. Musk will disclose the identities of expert witnesses, if any, in accordance with the Federal Rules of Civil Procedure and any schedule adopted by the Court.

Individuals with contact information listed as "Quinn Emanuel" may be contacted only through Mr. Musk's counsel at Quinn Emanuel.

**Exhibit 3**

| Individual and Contact Information | General Subject Matter |
|---|---|
| Elon Musk<br><br>(Quinn Emanuel) | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; statements by Plaintiff regarding Mr. Musk and the rescue vehicle; Mr. Musk's tweets at issue in this case; Mr. Musk's retraction of and apology regarding tweets at issue in this case; Mr. Musk's emails to BuzzFeed News at issue in this case; tweets from Plaintiff's counsel related to Mr. Musk |
| Vernon Unsworth<br><br>(Counsel for Plaintiff) | Plaintiff's role in the Tham Luang cave rescue; statements by Plaintiff regarding Mr. Musk and the rescue vehicle; Mr. Musk's tweets at issue in this case; Mr. Musk's retraction of and apology regarding tweets at issue in this case; Mr. Musk's emails to BuzzFeed News at issue in this case; tweets from Plaintiff's counsel related to Mr. Musk; Plaintiff's reputation; Plaintiff's alleged damages |
| Richard Stanton<br><br>(unknown) | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; Plaintiff's role in the Tham Luang cave rescue |
| Thai government officials | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; Plaintiff's role in the Tham Luang cave rescue |

**Exhibit 3**

DEFENDANT ELON MUSK'S INITIAL DISCLOSURES

| Ryan Mac<br><br>(BuzzFeed News) | Mr. Musk's emails to BuzzFeed News at issue in this case; BuzzFeed News' coverage of issues related to this case |
|---|---|
| Employees of SpaceX, the Boring Company, and Tesla, including  Steve Davis, Chris Bowman, and Armor Harris<br><br>(Quinn Emanuel) | In light of Plaintiff's public statements that the efforts and involvement of Mr. Musk and his fellow employees in the Thai Cave rescue were "just a PR stunt" and "had absolutely no chance of working," these witness will testify about efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle |

II.     RULE 26(a)(1)(A)(ii):  a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment

Subject to and without waiving the General Limitations, and based on the information currently available to Mr. Musk, Mr. Musk provides the following preliminary description, by category, and the location of documents in his custody, possession, or control, that he may use to support his claims or defenses in this action.  Mr. Musk will produce the identified documents on request at a mutually agreeable time and place, subject to the entry of a protective order where necessary.

Mr. Musk reserves the right to rely on and/or use additional documents at trial, including materials to be produced by Plaintiff and/or third parties.  Documents falling within the categories identified also may include documents and information not relevant to the subject matter involved in the pending action.  Accordingly, this disclosure is made without waiver of all questions of admissibility, relevancy, and

- 4 -

**Exhibit 3**

other grounds for objection, and Mr. Musk expressly reserve the right to object on any and all such grounds.

Mr. Musk reserves the right to supplement this list to include any other documents or categories of documents identified during the course of discovery that contain information Mr. Musk may use to support his claims or defenses in this action.

Categories and Source of Documents

• Documents regarding Mr. Musk's tweets at issue in this case.  (Mr. Musk).

• Documents regarding Mr. Musk's retraction of and apology regarding tweets at issue in this case.  (Mr. Musk).

• Documents regarding Mr. Musk's emails to BuzzFeed News at issue in this case.  (Mr. Musk).

• Documents regarding efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle.  (Mr. Musk, SpaceX, the Boring Company, Tesla).

• Documents regarding the design and use of the rescue vehicle.  (Mr. Musk, SpaceX, the Boring Company, Tesla).

III.  RULE 26(a)(1)(A)(iv):  for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment

Upon the entry of an appropriate protective order, Mr. Musk will produce any insurance agreement under which an insurance company may be liable to satisfy all

**Exhibit 3**

1    or part of any judgment that may be entered in the present proceeding or be used to

2    indemnify or reimburse payments used to satisfy any judgment.

3

4

5    Dated:  June 20, 2019

6                                              QUINN EMANUEL URQUHART
7                                              & SULLIVAN, LLP
                                               Alex Spiro
8                                              Robert M. Schwartz
                                               Michael T. Lifrak
9                                              Jeanine M. Zalduendo
10

11

12                                             By:  /s/Alex Spiro_____
13                                             Alex Spiro
                                               *Attorneys for Defendant Elon Musk*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                    **Exhibit 3**
                                      - 6 -

## CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

I hereby certify that a true and correct copy of the document titled "Defendant Elon Musk's Initial Disclosures" has been served via electronic mail transmission on June 20, 2019 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. The electronic mail transmission was made from jeaninezalduendo@quinnemanuel.com, by transmitting PDF format copies of the document to all counsel of record, at the e-mail address provided to the Court's CM/ECF system.  The transmission was reported as complete and without error.

Executed on June 20, 2019, at Los Angeles, California.

*s/ Jeanine M. Zalduendo*
Jeanine M. Zalduendo

**Exhibit 3**

DEFENDANT ELON MUSK'S INITIAL DISCLOSURES

# EXHIBIT 4

Exhibit 4

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice* pending)
 alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
 robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
 michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
 jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH, | Case No. 2:18-cv-08048 |
| Plaintiff, | Judge: Hon. Stephen V. Wilson |
| vs. | **DEFENDANT ELON MUSK'S AMENDED INITIAL DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)** |
| ELON MUSK, | |
| Defendant. | |

**Exhibit 4**

1    Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendant Elon Musk,

2    hereby provides the following initial disclosures.

3    <u>**GENERAL LIMITATIONS**</u>

4    These disclosures are based on information presently available to Mr. Musk,

5    and Mr. Musk reserves the right to modify, amend, or otherwise supplement these

6    disclosures in accordance with Federal Rule of Civil Procedure 26(e), after further

7    investigation and discovery.

8    These disclosures represent a good faith effort to identify information that Mr.

9    Musk reasonably believes may be used to support his claims or defenses.  By making

10   the following disclosures, Mr. Musk does not represent that every individual or entity

11   identified herein necessarily possesses such information or will serve as a witness.

12   Nor does Mr. Musk represent that he has identified every witness, document, or

13   tangible thing that may support his claims or defenses in this action.  Mr. Musk

14   reserves the right to call any witness, including the right to identify expert witnesses,

15   or present any exhibit or item at trial not listed herein but determined through

16   discovery, investigation, or otherwise to support his claims or defenses.

17   By making these initial disclosures, Mr. Musk in no way concedes the

18   relevance or admissibility of any of the foregoing information, nor does Mr. Musk

19   waive his right to object to discovery of any information based on disclosures herein

20   on the grounds of the attorney-client privilege, work-product doctrine, or any other

21   applicable privilege, immunity, law, or rule.  Mr. Musk also does not waive his right

22   to assert any other objection authorized by the Federal Rules of Civil Procedure or

23   Evidence, or any other applicable rule of law, in response to interrogatories, requests

24   for admission, requests for production of documents, questions at depositions, or any

25   other discovery requests involving or relating to the subject matter of these

26   disclosures.

27   All of the disclosures set forth below are made subject to the above

28   qualifications.

**Exhibit 4**

DEFENDANT ELON MUSK'S AMENDED INITIAL DISCLOSURES

04684-23666/11037001.1

# INITIAL AMENDED DISCLOSURES

I.    RULE 26(a)(1)(A)(i):  the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

Subject to and without waiving the General Limitations, and based on the information currently available to Mr. Musk, Mr. Musk provides the following preliminary identification of individuals likely to have discoverable information that he may use to support his claims and/or defenses in this action, unless the use would be solely for impeachment.  The general subject matter of information listed for each individual does not in any way limit Mr. Musk's rights to question or call any individual listed to testify regarding any particular subject.

In addition to the persons listed below, Mr. Musk reserves his right to rely upon all individuals and/or entities listed in Plaintiff's initial disclosures, including in any subsequent disclosure supplementing, revising, correcting, clarifying or otherwise amending any information disclosed therein.  Mr. Musk will disclose the identities of expert witnesses, if any, in accordance with the Federal Rules of Civil Procedure and any schedule adopted by the Court.

Individuals with contact information listed as "Quinn Emanuel" may be contacted only through Mr. Musk's counsel at Quinn Emanuel.

**Exhibit 4**

DEFENDANT ELON MUSK'S AMENDED INITIAL DISCLOSURES

| Individual and Contact Information | General Subject Matter |
|---|---|
| Elon Musk<br><br>(Quinn Emanuel) | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; statements by Plaintiff regarding Mr. Musk and the rescue vehicle; Mr. Musk's tweets at issue in this case; Mr. Musk's retraction of and apology regarding tweets at issue in this case; Mr. Musk's emails to BuzzFeed News at issue in this case; tweets from Plaintiff's counsel related to Mr. Musk |
| Vernon Unsworth<br><br>(Counsel for Plaintiff) | Plaintiff's role in the Tham Luang cave rescue; statements by Plaintiff regarding Mr. Musk and the rescue vehicle; Mr. Musk's tweets at issue in this case; Mr. Musk's retraction of and apology regarding tweets at issue in this case; Mr. Musk's emails to BuzzFeed News at issue in this case; tweets from Plaintiff's counsel related to Mr. Musk; Plaintiff's reputation; Plaintiff's alleged damages |
| Richard Stanton<br><br>(unknown) | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; Plaintiff's role in the Tham Luang cave rescue |
| Thai government officials | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; Plaintiff's role in the Tham Luang cave rescue |

**Exhibit 4**

- 3 -

| Ryan Mac<br><br>(BuzzFeed News) | Mr. Musk's emails to BuzzFeed News at issue in this case; BuzzFeed News' coverage of issues related to this case |
|---|---|
| Employees of SpaceX, the Boring Company, and Tesla, including  Steve Davis, Chris Bowman, and Armor Harris<br><br>(Quinn Emanuel) | In light of Plaintiff's public statements that the efforts and involvement of Mr. Musk and his fellow employees in the Thai Cave rescue were "just a PR stunt" and "had absolutely no chance of working," these witness will testify about efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle |
| Jared Birchall<br><br>(Quinn Emanuel) | The investigation of Plaintiff by James Howard; the results of James Howard's investigation of Plaintiff; communications with Mr. Musk concerning James Howard's investigation of Plaintiff and the results of said investigation. |

II.    RULE 26(a)(1)(A)(ii):  a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment

Subject to and without waiving the General Limitations, and based on the information currently available to Mr. Musk, Mr. Musk provides the following preliminary description, by category, and the location of documents in his custody, possession, or control, that he may use to support his claims or defenses in this action.  Mr. Musk will produce the identified documents on request at a mutually agreeable time and place, subject to the entry of a protective order where necessary.

Mr. Musk reserves the right to rely on and/or use additional documents at trial,

**Exhibit 4**

including materials to be produced by Plaintiff and/or third parties.  Documents falling within the categories identified also may include documents and information not relevant to the subject matter involved in the pending action.  Accordingly, this disclosure is made without waiver of all questions of admissibility, relevancy, and other grounds for objection, and Mr. Musk expressly reserve the right to object on any and all such grounds.

Mr. Musk reserves the right to supplement this list to include any other documents or categories of documents identified during the course of discovery that contain information Mr. Musk may use to support his claims or defenses in this action.

Categories and Source of Documents

- Documents regarding Mr. Musk's tweets at issue in this case.  (Mr. Musk).
- Documents regarding Mr. Musk's retraction of and apology regarding tweets at issue in this case.  (Mr. Musk).
- Documents regarding Mr. Musk's emails to BuzzFeed News at issue in this case.  (Mr. Musk).
- Documents regarding the basis for Mr. Musk's statements at issue in this case, including Mr. Howard's investigation of Plaintiff.
- Documents regarding efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle.  (Mr. Musk, SpaceX, the Boring Company, Tesla).
- Documents regarding the design and use of the rescue vehicle.  (Mr. Musk, SpaceX, the Boring Company, Tesla).

III.     RULE 26(a)(1)(A)(iv):  for inspection and copying as under Rule 34, any

insurance agreement under which an insurance business may be liable to

**Exhibit 4**

DEFENDANT ELON MUSK'S AMENDED INITIAL DISCLOSURES

satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment

Mr. Musk has produced any insurance agreement under which an insurance company may be liable to satisfy all or part of any judgment that may be entered in the present proceeding or be used to indemnify or reimburse payments used to satisfy any judgment.

Dated:  August 21, 2019

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Alex Spiro
Robert M. Schwartz
Michael T. Lifrak
Jeanine M. Zalduendo


By: _/s/Alex Spiro_____
Alex Spiro
*Attorneys for Defendant Elon Musk*

**Exhibit 4**

## CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

I hereby certify that a true and correct copy of the document titled "Defendant Elon Musk's Initial Disclosures" has been served via electronic mail transmission on August 21, 2019 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. The electronic mail transmission was made from michaellifrak@quinnemanuel.com, by transmitting PDF format copies of the document to all counsel of record, at the e-mail address provided to the Court's CM/ECF system.  The transmission was reported as complete and without error.

Executed on August 21, 2019, at Los Angeles, California.

*s/ Michael Lifrak*
Michael Lifrak

**Exhibit 4**

# EXHIBIT 5

Exhibit 5

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (admitted *pro hac vice*)
  alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
  jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH, | Case No. 2:18-cv-08048 |
| Plaintiff, | Judge: Hon. Stephen V. Wilson |
| vs. | **DEFENDANT ELON MUSK'S RESPONSES AND OBJECTIONS TO PLAINTIFF VERNON UNSWORTH'S FIRST SET OF INTERROGATORIES** |
| ELON MUSK, | |
| Defendant. | |
| | Complaint Filed: September 17, 2018 Trial Date: December 2, 2019 |

PROPOUNDING PARTY:     Plaintiff Vernon Unsworth

RESPONDING PARTY:     Defendant Elon Musk

SET NUMBER:     One (1)

**Exhibit 5**

Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Civil Rules of the United States District Court for the Central District of California, Defendant Elon Musk ("Defendant" or "Mr. Musk") states the following responses and objections ("Responses") to Plaintiff Vernon Unsworth's First Set Of Interrogatories to Defendant Elon Musk, dated June 18, 2019 (the "Interrogatories"), without waiving any defenses that Mr. Musk has or hereafter may assert in the above captioned action (the "Action").

**GENERAL OBJECTIONS**

The General Objections set forth below apply to the Interrogatories generally and to the Definitions, Instructions, and the individual Interrogatories set forth therein.  Unless otherwise stated, the General Objections shall have the same force and effect as if set forth in full in response to each Definition, Instruction, and Interrogatory.  Any undertaking to search for, or provide information in response to, any Interrogatory is made subject to the General Objections.

1.      Defendant objects generally to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent that they seek to impose burdens or obligations on him that are broader than, inconsistent with, or not authorized under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Central District of California, other applicable rules or laws, or any order entered by the Court in, or applicable to, this Action (the "Applicable Rules"). Subject to and without waiving any Objections, in responding to the Interrogatories, Defendant will construe the Interrogatories in accordance with the Applicable Rules.

2.      Defendant objects generally to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent that they request disclosure of information that comes within the scope of the attorney-client privilege, the work-product doctrine, the common interest or joint defense privilege or any other applicable privilege or immunity, or that otherwise are exempted from

**Exhibit 5**

ELON MUSK'S RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET OF INTERROGATORIES

disclosure. Defendant hereby claims such privileges and protections to the extent implicated by the Interrogatories and excludes privileged or protected information from its Responses to the Interrogatories.  Unless otherwise specified, Defendant will not provide information generated under the direction or on behalf of an attorney after Plaintiff's threat of legal action against Defendant.  Any disclosure of any privileged or protected information in response to the Interrogatories is inadvertent and not intended to waive those privileges and protections.

3.    Defendant objects generally to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent that they purport to require him to conduct anything beyond a reasonable and diligent search where responsive information reasonably would be expected to be found (including electronic sources), and to the extent that the Interrogatories purport to require him to exceed its obligations under the Applicable Rules.

4.    Defendant objects generally to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent that they are vague, ambiguous, overly broad, unduly burdensome, lacking in particularity, unreasonable, or seek the discovery of information that is neither relevant to the claims or defenses of any party to this Action nor reasonably calculated to lead to the discovery of admissible evidence, as well as to the extent that they are unduly burdensome because they impose a significant expense and inconvenience on him. Defendant's Responses are based upon (i) a reasonable search and investigation of facilities and files that could reasonably be expected to contain responsive information.

5.    Defendant objects generally to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent that they purport to impose an obligation on Defendant to provide information that is not known or reasonably available to him.

-2-

**Exhibit 5**

ELON MUSK'S RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET OF INTERROGATORIES

6.     Defendant objects generally to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent that they prematurely call for expert discovery at this stage of the litigation, or seek information before Defendant is required to disclose such information in accordance with any applicable law, rule, or procedure.

7.     Defendant objects generally to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent that they purport to require him to draw subjective or legal conclusions, or are predicated on subjective or legal conclusions or arguments. Subject to and without waiving any objections, Defendant states that any response, production of documents, or provision of information in response to the Interrogatories is not intended to provide, and shall not constitute or be construed as providing, an admission concerning any of the terms used in the Interrogatories.

8.     Defendant objects generally to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent that the Interrogatories, Definitions or Instructions contain inaccurate, incomplete or misleading descriptions of the facts, persons, relationships and/or events underlying the Action. Defendant further objects to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent that they assume the existence of facts that do not exist or the occurrence of events that did not take place. Any response, production of documents, or provision of information in response to the Interrogatories is not intended to provide, and shall not constitute or be construed as providing, an admission that any factual predicates stated in the Interrogatories are accurate.

9.     Defendant objects generally to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent that the Interrogatories call for the disclosure of Mr. Musk's, or other third parties' confidential, proprietary, and/or commercially sensitive information. Where necessary, Defendant will

**Exhibit 5**

1    endeavor to work with third parties to obtain their consent before identifying or

2    producing such information and/or documents.

3            10.    Defendant objects generally to the Interrogatories, including the

4    Definitions and Instructions set forth therein, to the extent that they seek information

5    that is cumulative, duplicative, or equally obtainable from public sources or from

6    some other source or through some other means of discovery that is more

7    convenient, less burdensome, or less expensive.

8            11.    Defendant objects generally to the Interrogatories, including the

9    Definitions and Instructions set forth therein, to the extent that they seek information

10   that is not in Mr. Musk's possession, custody, or control, or is equally available

11   and/or in the possession, custody, or control of Mr. Unsworth or any third person or

12   entity.

13           12.    Defendant objects generally to the Interrogatories to the extent they

14   seek to compel him to generate or create information and/or documents that do not

15   already exist.

16           13.    Defendant objects generally to the Interrogatories to the extent they are

17   compound and comprise discrete subparts resulting in separate interrogatories.

18           14.    Defendant's Responses are based on his current knowledge. Further

19   investigation may reveal additional facts or information that could lead to additions

20   to, changes in, and/or variations from the Responses herein. Without in any way

21   obligating itself to do so, Defendant expressly reserves the right to supplement,

22   amend, correct, clarify, or modify the Responses as further information becomes

23   available. Defendant also reserves the right to use or rely on, at any time,

24   subsequently discovered information or information omitted from these Responses

25   as a result of mistake, error, oversight or inadvertence. The responses to the

26   Interrogatories provided herein are based on a reasonable search for responsive

27   information. Defendant reserves the right at any time to revise, correct, add to,

28   clarify or supplement his Responses to the Interrogatories.

**Exhibit 5**

ELON MUSK'S RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET OF
INTERROGATORIES

15.     Defendant expressly reserves the right to respond to any or all of the Interrogatories by specifying documents wherein the responsive information may be ascertained pursuant to Rule 33(d) of the Federal Rules of Civil Procedure.

16.     Defendant is providing these Responses without waiver of or prejudice to (i) his right at any later time to raise objections as to the competence, relevance, materiality, privilege, work product character, and admissibility as evidence, for any purpose, of (a) the Interrogatories or any part thereof, or (b) statements made in this Response to the Interrogatories or any part thereof; or (ii) the right to object to the use of any of the information disclosed hereunder in any subsequent proceedings or the trial of this or any other actions; or (iii) the right to object on any ground at any time to a demand for further response to these or other discovery requests in this Action. Any response or objection to an individual Interrogatory is not an acknowledgement that the information requested therein exists or is in Defendant's possession, custody or control.

17.     The foregoing objections and limitations shall be included in Defendant's response to each and every Interrogatory.

### SPECIFIC OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 1:**

Please identify each person who has, or who you believe may have, relevant knowledge or discoverable information relating to the allegations in the Complaint and describe each person's knowledge or suspected knowledge or other discoverable information.

**Responses and Objections to Interrogatory No. 1:**

Defendant incorporates his General Objections herein. Defendant further objects to Interrogatory No. 1 on the grounds that it is vague and ambiguous. Defendant further objects to Interrogatory No. 1 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff. Defendant further objects to Interrogatory No. 1 to the extent

-5-

1  that it seeks to elicit information subject to and protected by the attorney-client

2  privilege, the attorney work product doctrine, the joint defense privilege, the

3  common interest doctrine, and/or any other applicable privilege or immunity.

4  Defendant further objects to Interrogatory No. 1 on the ground that it prematurely

5  calls for the identification of expert witnesses or testimony at this stage of litigation.

6  Defendant further objects to Interrogatory No. 1 on the grounds that it is compound

7  and comprises discrete subparts resulting in separate interrogatories.

8      Subject to and without waiving the foregoing General Objections and Specific

9  Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil

10  Procedure, Mr. Musk responds, based on the information currently available to him,

11  that the following individuals may have relevant knowledge or discoverable

12  information concerning the allegations raised in this Action.

| Individual | General Subject Matter |
|---|---|
| Elon Musk<br><br>(Quinn Emanuel) | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; statements by Plaintiff regarding Mr. Musk and the rescue vehicle; Mr. Musk's tweets at issue in this case; Mr. Musk's retraction of and apology regarding tweets at issue in this case; Mr. Musk's communications to BuzzFeed News at issue in this case; communications from Plaintiff's counsel related to Mr. Musk |
| Vernon Unsworth | Plaintiff's role in the Tham Luang cave rescue; statements by Plaintiff regarding Mr. Musk and the rescue vehicle; Mr. Musk's tweets at issue in this case; Mr. Musk's retraction of and apology regarding tweets at issue in this case; Mr. Musk's communications to BuzzFeed News at issue in this case; communications from Plaintiff's counsel related to Mr. Musk; Plaintiff's reputation; Plaintiff's alleged damages |
| Richard Stanton | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; Plaintiff's role in the Tham Luang cave rescue |

**Exhibit 5**

| Individual | General Subject Matter |
|---|---|
| Thai government officials | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; Plaintiff's role in the Tham Luang cave rescue |
| Ryan Mac | Mr. Musk's communications to BuzzFeed News at issue in this case; BuzzFeed News' coverage of issues related to this case |
| Employees of SpaceX, the Boring Company, and Tesla, including  Steve Davis, Chris Bowman, and Armor Harris | In light of Plaintiff's public statements that the efforts and involvement of Mr. Musk and his fellow employees in the Thai Cave rescue were "just a PR stunt" and "had absolutely no chance of working," these witness will testify about efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle |
| Individuals described in Plaintiff's Initial Disclosures served on June 20, 2019 | As described in Plaintiff's Initial Disclosures served on June 20, 2019 |
| Individuals needed to authenticate any document produced by Defendant | Authentication of documents |

**INTERROGATORY NO. 2:**

Please identify each person who has, or who you believe may have, relevant knowledge or discoverable information relating to any of your defenses in this litigation or denials of the allegations in the Complaint and describe each person's knowledge or suspected knowledge or other discoverable information.

**Responses and Objections to Interrogatory No. 2:**

Defendant incorporates his General Objections herein.  Defendant further objects to Interrogatory No. 2 on the grounds that it is vague and ambiguous. Defendant further objects to Interrogatory No. 2 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally

-7-

**Exhibit 5**

available to Plaintiff.  Defendant further objects to Interrogatory No. 2 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity. Defendant further objects to Interrogatory No. 2 on the ground that it prematurely calls for the identification of expert witnesses or testimony at this stage of litigation. Defendant further objects to Interrogatory No. 2 on the grounds that it is compound and comprises discrete subparts resulting in separate interrogatories.

Subject to and without waiving the foregoing General Objections and Specific Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Musk responds, based on the information currently available to him, that the following individuals may have relevant knowledge or discoverable information concerning Mr. Musk's defenses in this litigation or denials of the allegations raised in the Complaint.

| Individual | General Subject Matter |
|---|---|
| Elon Musk | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; statements by Plaintiff regarding Mr. Musk and the rescue vehicle; Mr. Musk's tweets at issue in this case; Mr. Musk's retraction of and apology regarding tweets at issue in this case; Mr. Musk's communications to BuzzFeed News at issue in this case; communications from Plaintiff's counsel related to Mr. Musk |
| Vernon Unsworth | Plaintiff's role in the Tham Luang cave rescue; statements by Plaintiff regarding Mr. Musk and the rescue vehicle; Mr. Musk's tweets at issue in this case; Mr. Musk's retraction of and apology regarding tweets at issue in this case; Mr. Musk's communications to BuzzFeed News at issue in this case; communications from Plaintiff's counsel related to Mr. Musk; Plaintiff's reputation; Plaintiff's alleged damages |
| Richard Stanton | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a |

-8-

| Individual | General Subject Matter |
|---|---|
| | rescue vehicle; the design and use of the rescue vehicle; Plaintiff's role in the Tham Luang cave rescue |
| Thai government officials | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; Plaintiff's role in the Tham Luang cave rescue |
| Ryan Mac | Mr. Musk's communications to BuzzFeed News at issue in this case; BuzzFeed News' coverage of issues related to this case |
| Employees of SpaceX, the Boring Company, and Tesla, including  Steve Davis, Chris Bowman, and Armor Harris | In light of Plaintiff's public statements that the efforts and involvement of Mr. Musk and his fellow employees in the Thai Cave rescue were "just a PR stunt" and "had absolutely no chance of working," these witness will testify about efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle |
| Individuals described in Plaintiff's Initial Disclosures served on June 20, 2019 | As described in Plaintiff's Initial Disclosures served on June 20, 2019 |
| Individuals needed to authenticate any document produced by Defendant | Authentication of documents |

**INTERROGATORY NO. 3:**

Please identify every investigation, including every inquiry, analysis, or background check, concerning Plaintiff undertaken by you or any person on your behalf or for your benefit, including the dates of the investigation, the individuals who conducted or assisted with the investigation, a description of the work undertaken in the investigation, and a description of the investigation's findings.

**Exhibit 5**

**Responses and Objections to Interrogatory No. 3:**

Defendant incorporates his General Objections herein.  Defendant further objects to Interrogatory No. 3 on the grounds that it is vague and ambiguous. Defendant further objects to Interrogatory No. 3 on the grounds that it is vague and ambiguous with regard to the terms "investigation," "inquiry," "analysis," "background check," and "benefit." Defendant further objects to Interrogatory No. 3 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff.   Defendant further objects to Interrogatory No. 3 on the grounds that it seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to Interrogatory No. 3 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity.  Defendant further objects to Interrogatory No. 3 on the ground that it prematurely calls for the identification of expert witnesses or testimony at this stage of litigation.  Defendant further objects to Interrogatory No. 3 on the grounds that it is compound and comprises discrete subparts resulting in separate interrogatories.

Subject to and without waiving the foregoing General Objections and Specific Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Musk responds:

James Howard of Jupiter Military & Tactical Systems conducted an investigation, beginning on or about August 15, 2018.  Defendant will produce documents relating to the work done and the findings of the investigation.

**INTERROGATORY NO. 4:**

Please identify the number of Twitter followers you had when you made each of the tweets referenced in the Complaint and when you deleted each of the tweets referenced in the Complaint.

-10-

**Exhibit 5**

**Responses and Objections to Interrogatory No. 4:**

Defendant incorporates his General Objections herein.  Defendant further objects to Interrogatory No. 4 on the grounds that it is vague and ambiguous. Defendant further objects to Interrogatory No. 4 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff.  Defendant further objects to Interrogatory No. 4 on the grounds that it seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to Interrogatory No. 4 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity.  Defendant further objects to Interrogatory No. 4 on the grounds that it is compound and comprises discrete subparts resulting in separate interrogatories.

Subject to and without waiving the foregoing General Objections and Specific Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Musk responds as follows:

Mr. Musk is unaware of any reliable method to obtain the number of his Twitter followers more than 90 days in the past.  Mr. Musk deleted his July 15, 2018 tweets on or about July 18, 2018.

**INTERROGATORY NO. 5:**

Please state your current net worth.

**Responses and Objections to Interrogatory No. 5:**

The following response is hereby designated "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY" under the Protective Order in the case.

Defendant incorporates his General Objections herein.  Defendant further objects to Interrogatory No. 5 on the grounds that it is vague and ambiguous. Defendant further objects to Interrogatory No. 5 on the grounds that it is vague and

-11-

ambiguous with regard to the term "net worth."  Defendant further objects to Interrogatory No. 5 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff.  Defendant further objects to Interrogatory No. 5 on the grounds that it seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to Interrogatory No. 5 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity.   Defendant further objects to Interrogatory No. 5 as it seeks information protected from disclosure pursuant to Defendant's statutory, constitutional, and/or substantive rights, including his right to privacy.

Subject to and without waiving the foregoing General Objections and Specific Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Musk responds as follows:

Mr. Musk's net worth is protected by his right to privacy under the United States Constitution and Article 1, Section 1 of the California Constitution.  Because detailed information regarding Mr. Musk's net worth is not relevant given the Constitutional limitations on punitive damages as set forth in *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003), there is no justification to invade his privacy rights in this Action.  Moreover, a calculation of Mr. Musk's net worth would be unduly burdensome and complicated given, among other things, his financial interests in non-public entities.  Nevertheless, under these circumstances, Mr. Musk would be willing to stipulate that his net worth is in excess of $1 billion.

**INTERROGATORY NO. 6:**

Please identify each person with whom you communicated regarding the Cave Rescue.

**Exhibit 5**

**Responses and Objections to Interrogatory No. 6:**

Defendant incorporates his General Objections herein.  Defendant further objects to Interrogatory No. 6 on the grounds that it is vague and ambiguous. Defendant further objects to Interrogatory No. 6 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff.  Defendant further objects to Interrogatory No. 6 on the grounds that it seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to Interrogatory No. 6 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing General Objections and Specific Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Musk responds that the information sought in Interrogatory No. 6 may be derived or ascertained from documents that Mr. Musk anticipates producing in response to Plaintiff's document requests, as well as the information provided in response to Interrogatory No. 1.

**INTERROGATORY NO. 7:**

Please identify every communication you have made or received concerning Plaintiff, including whether such communication concerned whether Plaintiff has engaged in sexual activity with minors or has an affinity for such activity, and the medium of the communication (e.g., Twitter, e-mail, telephone, text message, letter).

**Responses and Objections to Interrogatory No. 7:**

Defendant incorporates his General Objections herein.  Defendant further objects to Interrogatory No. 7 on the grounds that it is vague and ambiguous. Defendant further objects to Interrogatory No. 7 on the grounds that it is vague and

**Exhibit 5**

ambiguous with regard to the terms "sexual activity," "minors," and "affinity for such activity."  Defendant further objects to Interrogatory No. 7 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff.  Defendant further objects to Interrogatory No. 7 on the grounds that it seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to Interrogatory No. 7 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity.  Defendant further objects to Interrogatory No. 7 on the grounds that it is compound and comprises discrete subparts resulting in separate interrogatories.

Subject to and without waiving the foregoing General Objections and Specific Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Musk responds that the information sought in Interrogatory No. 7 may be derived or ascertained from documents that Mr. Musk anticipates producing in response to Plaintiff's document requests, as well as the information provided in response to Interrogatory No. 3.

**INTERROGATORY NO. 8:**

Please state whether you published the tweet attached hereto as Exhibit A and, if so, identify the date it was published, the date it was deleted, and the number of Twitter followers you had on the date it was published and the date it was deleted.

**Responses and Objections to Interrogatory No. 8:**

Defendant incorporates his General Objections herein.  Defendant further objects to Interrogatory No. 8 on the grounds that it is vague and ambiguous. Defendant further objects to Interrogatory No. 8 on the grounds that it is vague and ambiguous with regard to the term "published."  Defendant further objects to

**Exhibit 5**

1   Interrogatory No. 8 on the grounds that it seeks information that is outside of his

2   possession, custody, or control, or that is equally available to Plaintiff. Defendant

3   further objects to Interrogatory No. 8 on the grounds that it seeks information that is

4   not relevant and not reasonably calculated to lead to the discovery of admissible

5   evidence.  Defendant further objects to Interrogatory No. 8 to the extent that it seeks

6   to elicit information subject to and protected by the attorney-client privilege, the

7   attorney work product doctrine, the joint defense privilege, the common interest

8   doctrine, and/or any other applicable privilege or immunity.  Defendant further

9   objects to Interrogatory No. 8 on the grounds that it is compound and comprises

10   discrete subparts resulting in separate interrogatories.

11       Subject to and without waiving the foregoing General Objections and Specific

12   Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil

13   Procedure, Mr. Musk responds as follows:

14       Mr. Musk did not publish this tweet, which is not an authentic tweet from Mr.

15   Musk's account.

16   **INTERROGATORY NO. 9:**

17       Please identify any person responsible for reviewing and/or approving any

18   tweets before you may publish them.

19   **Responses and Objections to Interrogatory No. 9:**

20       Defendant incorporates his General Objections herein.  Defendant further

21   objects to Interrogatory No. 9 on the grounds that it is vague and ambiguous.

22   Defendant further objects to Interrogatory No. 9 on the grounds that it is vague and

23   ambiguous with regard to the terms "reviewing," "approving," and "publish."

24   Defendant further objects to Interrogatory No. 9 on the grounds that it seeks

25   information that is outside of his possession, custody, or control.  Defendant further

26   objects to Interrogatory No. 9 as overly broad and burdensome to the extent that it

27   requires him to pursue information from persons or entities purporting to act on his

28   behalf, and to the extent it is not limited to any context or time.  Defendant further

**Exhibit 5**

ELON MUSK'S RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET OF
INTERROGATORIES

objects to Interrogatory No. 9 on the grounds that it is harassing and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to Interrogatory No. 9 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing General Objections and Specific Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Musk responds as follows:

This topic has no possible relevance to this Action and will not lead to the discovery of relevant information.  In any event, the Consent Motion for Entry of Final Judgment and Consent Motion to Amend Final Judgment in *United States Securities and Exchange Commission v. Elon Musk*, Case No. 1:18-cv-8865-AJN-GWG (Doc. Nos. 6 and 46) are publicly-available documents.

**INTERROGATORY NO. 10:**

Please identify each person whom you expect to call as an expert witness in this case, state the subject matter on which the expert is expected to testify, state the substance of the facts and opinions to which the expert is expected to testify, and provide a summary of the grounds for each opinion.

**Responses and Objections to Interrogatory No. 10:**

Defendant incorporates his General Objections herein.  Defendant further objects to Interrogatory No. 10 on the grounds that it is vague and ambiguous with regard to the term "substance."  Defendant further objects to Interrogatory No. 10 on the ground that it prematurely calls for expert testimony or opinion at this stage of litigation.  Defendant further objects to Interrogatory No. 10 on the grounds that it seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to Interrogatory No. 10

Exhibit 5

ELON MUSK'S RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET OF INTERROGATORIES

1   to the extent that it seeks to elicit information subject to and protected by the

2   attorney-client privilege, the attorney work product doctrine, the joint defense

3   privilege, the common interest doctrine, and/or any other applicable privilege or

4   immunity, including as set forth in Federal Rule of Civil Procedure 26.  Defendant

5   further objects to Interrogatory No. 10 on the grounds that it is compound and

6   comprises discrete subparts resulting in separate interrogatories.

7          Subject to and without waiving the foregoing General Objections and Specific

8   Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil

9   Procedure, Mr. Musk responds that he will provide expert disclosures at the time

10  designated in the parties' Joint Rule 26(f) Report.

11  **INTERROGATORY NO. 11:**

12         Please identify each instance in the last three (3) years in which a third party

13  accused you of publishing defamatory information.

14  **Responses and Objections to Interrogatory No. 11:**

15         Defendant incorporates his General Objections herein.  Defendant further

16  objects to Interrogatory No. 11 on the grounds that it is vague and ambiguous.

17  Defendant further objects to Interrogatory No. 11 on the grounds that it is vague and

18  ambiguous with regard to the terms "accused," "publishing," and "defamatory

19  information."  Defendant further objects to Interrogatory No. 11 on the grounds that

20  it seeks information that is outside of his possession, custody, or control, or that is

21  equally available to Plaintiff.  Defendant further objects to Interrogatory No. 11 on

22  the grounds that it seeks information that is not relevant and not reasonably

23  calculated to lead to the discovery of admissible evidence.  Defendant further

24  objects to Interrogatory No. 11 to the extent that it seeks to elicit information subject

25  to and protected by the attorney-client privilege, the attorney work product doctrine,

26  the joint defense privilege, the common interest doctrine, and/or any other

27  applicable privilege or immunity.

28

**Exhibit 5**

1    Subject to and without waiving the foregoing General Objections and Specific

2  Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil

3  Procedure, Mr. Musk responds as follows:

4    He has never been sued for defamation prior to this case.  He is currently

5  unaware of any other instances of being accused of defamation.

6  **INTERROGATORY NO. 12:**

7    Please identify each lawsuit to which you were a party in the last five (5)

8  years.

9  **Responses and Objections to Interrogatory No. 12:**

10    Defendant incorporates his General Objections herein.  Defendant further

11  objects to Interrogatory No. 12 on the grounds that it is vague and ambiguous in that

12  it does not define the term "you."  Defendant further objects to Interrogatory No. 12

13  on the grounds that it seeks information that is outside of his possession, custody, or

14  control, or that is equally available to Plaintiff.  Defendant further objects to

15  Interrogatory No. 12 on the grounds that it seeks information that is not relevant and

16  not reasonably calculated to lead to the discovery of admissible evidence.

17  Defendant further objects to Interrogatory No. 12 to the extent that it seeks to elicit

18  information subject to and protected by the attorney-client privilege, the attorney

19  work product doctrine, the joint defense privilege, the common interest doctrine,

20  and/or any other applicable privilege or immunity.

21    Subject to and without waiving the foregoing General Objections and Specific

22  Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil

23  Procedure, Mr. Musk responds that the information sought in Interrogatory No. 7

24  may be derived or ascertained from documents that Mr. Musk is producing in this

25  action.

26  **INTERROGATORY NO. 13:**

27    Please identify any policies of insurance that may provide coverage in

28  connection with any of Plaintiff's allegations in the Complaint.

**Exhibit 5**

ELON MUSK'S RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET OF
INTERROGATORIES

**<u>Responses and Objections to Interrogatory No. 13</u>:**

Defendant incorporates his General Objections herein. Defendant further objects to Interrogatory No. 13 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff. Defendant further objects to Interrogatory No. 13 on the grounds that it seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to Interrogatory No. 13 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing General Objections and Specific Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Musk responds that the information sought in Interrogatory No. 13 may be derived or ascertained from documents that Mr. Musk anticipates producing in response to Plaintiff's document requests.

DATED:  July 18, 2019                Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

-19-

**Exhibit 5**

1

2

By   /s/ Michael T. Lifrak

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
robertschwartz@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

Alex Spiro (admitted *pro hac vice*)
alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

*Attorneys for Defendant Elon Musk*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 5**

ELON MUSK'S RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET OF
INTERROGATORIES

1                                 **VERIFICATION**

2         I, Elon Musk, am a party to this action.  I have reviewed the factual portions

3 of each Interrogatory response and believe these facts to be true and accurate to the

4 best of my knowledge.

5

6 DATED: July 18, 2019

7

8

9 _____

10 Elon Musk

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 5**

ELON MUSK'S RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET OF
INTERROGATORIES

# CERTIFICATE OF SERVICE

1

2       I am employed in the County of Los Angeles, State of California. I am over

3   the age of eighteen years and not a party to the within action; my business address is

4   865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

5       I hereby certify that a true and correct copy of the document titled "Elon

6   Musk's Responses and Objections to Vernon Unsworth's First Set of

7   Interrogatories" has been served via electronic mail transmission on July 18, 2019 to

8   all counsel of record who are deemed to have consented to electronic service via the

9   Court's CM/ECF system. The electronic mail transmission was made from

10  jeaninezalduendo@quinnemanuel.com, by transmitting PDF format copies of the

11  document to all counsel of record, at the e-mail address provided to the Court's

12  CM/ECF system.  The transmission was reported as complete and without error.

13

14      Executed on July 18, 2019, at Los Angeles, California.

15

16

17              *s/ Jeanine M. Zalduendo*
                Jeanine M. Zalduendo

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 5**

ELON MUSK'S RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET OF
INTERROGATORIES

# EXHIBIT 6

Exhibit 6

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (admitted *pro hac vice*)
  alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
  jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH, | Case No. 2:18-cv-08048 |
| Plaintiff, | Judge: Hon. Stephen V. Wilson |
| vs. | **DEFENDANT ELON MUSK'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF VERNON UNSWORTH'S FIRST SET OF INTERROGATORIES** |
| ELON MUSK, | |
| Defendant. | |
| | Complaint Filed: September 17, 2018 Trial Date: December 2, 2019 |

PROPOUNDING PARTY:     Plaintiff Vernon Unsworth

RESPONDING PARTY:     Defendant Elon Musk

SET NUMBER:     One (1)

**Exhibit 6**

1       Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Civil

2   Rules of the United States District Court for the Central District of California,

3   Defendant Elon Musk ("Defendant" or "Mr. Musk") states the following

4   supplemental responses and objections ("Responses") to Plaintiff Vernon

5   Unsworth's First Set Of Interrogatories to Defendant Elon Musk, dated June 18,

6   2019 (the "Interrogatories"), without waiving any defenses that Mr. Musk has or

7   hereafter may assert in the above captioned action (the "Action").

8   **GENERAL OBJECTIONS**

9       The General Objections set forth below apply to the Interrogatories generally

10  and to the Definitions, Instructions, and the individual Interrogatories set forth

11  therein.  Unless otherwise stated, the General Objections shall have the same force

12  and effect as if set forth in full in response to each Definition, Instruction, and

13  Interrogatory.  Any undertaking to search for, or provide information in response to,

14  any Interrogatory is made subject to the General Objections.

15      1.    Defendant objects generally to the Interrogatories, including the

16  Definitions and Instructions set forth therein, to the extent that they seek to impose

17  burdens or obligations on him that are broader than, inconsistent with, or not

18  authorized under the Federal Rules of Civil Procedure, the Local Rules of the United

19  States District Court for the Central District of California, other applicable rules or

20  laws, or any order entered by the Court in, or applicable to, this Action (the

21  "Applicable Rules"). Subject to and without waiving any Objections, in responding

22  to the Interrogatories, Defendant will construe the Interrogatories in accordance with

23  the Applicable Rules.

24      2.    Defendant objects generally to the Interrogatories, including the

25  Definitions and Instructions set forth therein, to the extent that they request

26  disclosure of information that comes within the scope of the attorney-client

27  privilege, the work-product doctrine, the common interest or joint defense privilege

28  or any other applicable privilege or immunity, or that otherwise are exempted from

-1-

**Exhibit 6**

ELON MUSK'S RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET OF
INTERROGATORIES

1  disclosure. Defendant hereby claims such privileges and protections to the extent

2  implicated by the Interrogatories and excludes privileged or protected information

3  from its Responses to the Interrogatories.  Unless otherwise specified, Defendant

4  will not provide information generated under the direction or on behalf of an

5  attorney after Plaintiff's threat of legal action against Defendant.  Any disclosure of

6  any privileged or protected information in response to the Interrogatories is

7  inadvertent and not intended to waive those privileges and protections.

8         3.      Defendant objects generally to the Interrogatories, including the

9  Definitions and Instructions set forth therein, to the extent that they purport to

10  require him to conduct anything beyond a reasonable and diligent search where

11  responsive information reasonably would be expected to be found (including

12  electronic sources), and to the extent that the Interrogatories purport to require him

13  to exceed its obligations under the Applicable Rules.

14         4.      Defendant objects generally to the Interrogatories, including the

15  Definitions and Instructions set forth therein, to the extent that they are vague,

16  ambiguous, overly broad, unduly burdensome, lacking in particularity,

17  unreasonable, or seek the discovery of information that is neither relevant to the

18  claims or defenses of any party to this Action nor reasonably calculated to lead to

19  the discovery of admissible evidence, as well as to the extent that they are unduly

20  burdensome because they impose a significant expense and inconvenience on him.

21  Defendant's Responses are based upon (i) a reasonable search and investigation of

22  facilities and files that could reasonably be expected to contain responsive

23  information.

24         5.      Defendant objects generally to the Interrogatories, including the

25  Definitions and Instructions set forth therein, to the extent that they purport to

26  impose an obligation on Defendant to provide information that is not known or

27  reasonably available to him.

28

-2-

**Exhibit 6**

6.      Defendant objects generally to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent that they prematurely call for expert discovery at this stage of the litigation, or seek information before Defendant is required to disclose such information in accordance with any applicable law, rule, or procedure.

7.      Defendant objects generally to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent that they purport to require him to draw subjective or legal conclusions, or are predicated on subjective or legal conclusions or arguments. Subject to and without waiving any objections, Defendant states that any response, production of documents, or provision of information in response to the Interrogatories is not intended to provide, and shall not constitute or be construed as providing, an admission concerning any of the terms used in the Interrogatories.

8.      Defendant objects generally to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent that the Interrogatories, Definitions or Instructions contain inaccurate, incomplete or misleading descriptions of the facts, persons, relationships and/or events underlying the Action. Defendant further objects to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent that they assume the existence of facts that do not exist or the occurrence of events that did not take place. Any response, production of documents, or provision of information in response to the Interrogatories is not intended to provide, and shall not constitute or be construed as providing, an admission that any factual predicates stated in the Interrogatories are accurate.

9.      Defendant objects generally to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent that the Interrogatories call for the disclosure of Mr. Musk's, or other third parties' confidential, proprietary, and/or commercially sensitive information. Where necessary, Defendant will

-3-

**Exhibit 6**

04684-23666/11036991.1

1  endeavor to work with third parties to obtain their consent before identifying or
2  producing such information and/or documents.

3     10.   Defendant objects generally to the Interrogatories, including the
4  Definitions and Instructions set forth therein, to the extent that they seek information
5  that is cumulative, duplicative, or equally obtainable from public sources or from
6  some other source or through some other means of discovery that is more
7  convenient, less burdensome, or less expensive.

8     11.   Defendant objects generally to the Interrogatories, including the
9  Definitions and Instructions set forth therein, to the extent that they seek information
10 that is not in Mr. Musk's possession, custody, or control, or is equally available
11 and/or in the possession, custody, or control of Mr. Unsworth or any third person or
12 entity.

13    12.   Defendant objects generally to the Interrogatories to the extent they
14 seek to compel him to generate or create information and/or documents that do not
15 already exist.

16    13.   Defendant objects generally to the Interrogatories to the extent they are
17 compound and comprise discrete subparts resulting in separate interrogatories.

18    14.   Defendant's Responses are based on his current knowledge. Further
19 investigation may reveal additional facts or information that could lead to additions
20 to, changes in, and/or variations from the Responses herein. Without in any way
21 obligating itself to do so, Defendant expressly reserves the right to supplement,
22 amend, correct, clarify, or modify the Responses as further information becomes
23 available. Defendant also reserves the right to use or rely on, at any time,
24 subsequently discovered information or information omitted from these Responses
25 as a result of mistake, error, oversight or inadvertence. The responses to the
26 Interrogatories provided herein are based on a reasonable search for responsive
27 information. Defendant reserves the right at any time to revise, correct, add to,
28 clarify or supplement his Responses to the Interrogatories.

-4-                          **Exhibit 6**

15.     Defendant expressly reserves the right to respond to any or all of the Interrogatories by specifying documents wherein the responsive information may be ascertained pursuant to Rule 33(d) of the Federal Rules of Civil Procedure.

16.     Defendant is providing these Responses without waiver of or prejudice to (i) his right at any later time to raise objections as to the competence, relevance, materiality, privilege, work product character, and admissibility as evidence, for any purpose, of (a) the Interrogatories or any part thereof, or (b) statements made in this Response to the Interrogatories or any part thereof; or (ii) the right to object to the use of any of the information disclosed hereunder in any subsequent proceedings or the trial of this or any other actions; or (iii) the right to object on any ground at any time to a demand for further response to these or other discovery requests in this Action. Any response or objection to an individual Interrogatory is not an acknowledgement that the information requested therein exists or is in Defendant's possession, custody or control.

17.     The foregoing objections and limitations shall be included in Defendant's response to each and every Interrogatory.

## SPECIFIC OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 1:**

Please identify each person who has, or who you believe may have, relevant knowledge or discoverable information relating to the allegations in the Complaint and describe each person's knowledge or suspected knowledge or other discoverable information.

**Responses and Objections to Interrogatory No. 1:**

Defendant incorporates his General Objections herein.  Defendant further objects to Interrogatory No. 1 on the grounds that it is vague and ambiguous. Defendant further objects to Interrogatory No. 1 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff.  Defendant further objects to Interrogatory No. 1 to the extent

-5-

**Exhibit 6**

1  that it seeks to elicit information subject to and protected by the attorney-client

2  privilege, the attorney work product doctrine, the joint defense privilege, the

3  common interest doctrine, and/or any other applicable privilege or immunity.

4  Defendant further objects to Interrogatory No. 1 on the ground that it prematurely

5  calls for the identification of expert witnesses or testimony at this stage of litigation.

6  Defendant further objects to Interrogatory No. 1 on the grounds that it is compound

7  and comprises discrete subparts resulting in separate interrogatories.

8       Subject to and without waiving the foregoing General Objections and Specific

9  Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil

10  Procedure, Mr. Musk responds, based on the information currently available to him,

11  that the following individuals may have relevant knowledge or discoverable

12  information concerning the allegations raised in this Action.

| Individual | General Subject Matter |
|---|---|
| Elon Musk<br><br>(Quinn Emanuel) | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; statements by Plaintiff regarding Mr. Musk and the rescue vehicle; Mr. Musk's tweets at issue in this case; Mr. Musk's retraction of and apology regarding tweets at issue in this case; Mr. Musk's communications to BuzzFeed News at issue in this case; communications from Plaintiff's counsel related to Mr. Musk |
| Vernon Unsworth | Plaintiff's role in the Tham Luang cave rescue; statements by Plaintiff regarding Mr. Musk and the rescue vehicle; Mr. Musk's tweets at issue in this case; Mr. Musk's retraction of and apology regarding tweets at issue in this case; Mr. Musk's communications to BuzzFeed News at issue in this case; communications from Plaintiff's counsel related to Mr. Musk; Plaintiff's reputation; Plaintiff's alleged damages |
| Richard Stanton | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; Plaintiff's role in the Tham Luang cave rescue |

-6-

| Individual | General Subject Matter |
|---|---|
| Thai government officials | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; Plaintiff's role in the Tham Luang cave rescue |
| Ryan Mac | Mr. Musk's communications to BuzzFeed News at issue in this case; BuzzFeed News' coverage of issues related to this case |
| Employees of SpaceX, the Boring Company, and Tesla, including  Steve Davis, Chris Bowman, and Armor Harris | In light of Plaintiff's public statements that the efforts and involvement of Mr. Musk and his fellow employees in the Thai Cave rescue were "just a PR stunt" and "had absolutely no chance of working," these witness will testify about efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle |
| Individuals described in Plaintiff's Initial Disclosures served on June 20, 2019 | As described in Plaintiff's Initial Disclosures served on June 20, 2019 |
| Individuals needed to authenticate any document produced by Defendant | Authentication of documents |
| Jared Birchall | The investigation of Plaintiff by James Howard; the results of James Howard's investigation of Plaintiff; communications with Mr. Musk concerning James Howard's investigation of Plaintiff and the results of said investigation. |
| James Howard | Mr. Howard's investigation of Plaintiff; the results of the investigation of Plaintiff; communications concerning the investigation of Plaintiff and the results of said investigation. |

**INTERROGATORY NO. 2:**

Please identify each person who has, or who you believe may have, relevant knowledge or discoverable information relating to any of your defenses in this litigation or denials of the allegations in the Complaint and describe each person's knowledge or suspected knowledge or other discoverable information

Exhibit 6

-7-

ELON MUSK'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET OF INTERROGATORIES

**Responses and Objections to Interrogatory No. 2:**

Defendant incorporates his General Objections herein.  Defendant further objects to Interrogatory No. 2 on the grounds that it is vague and ambiguous. Defendant further objects to Interrogatory No. 2 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff.  Defendant further objects to Interrogatory No. 2 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity. Defendant further objects to Interrogatory No. 2 on the ground that it prematurely calls for the identification of expert witnesses or testimony at this stage of litigation. Defendant further objects to Interrogatory No. 2 on the grounds that it is compound and comprises discrete subparts resulting in separate interrogatories.

Subject to and without waiving the foregoing General Objections and Specific Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Musk responds, based on the information currently available to him, that the following individuals may have relevant knowledge or discoverable information concerning Mr. Musk's defenses in this litigation or denials of the allegations raised in the Complaint.

| Individual | General Subject Matter |
| --- | --- |
| Elon Musk | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; statements by Plaintiff regarding Mr. Musk and the rescue vehicle; Mr. Musk's tweets at issue in this case; Mr. Musk's retraction of and apology regarding tweets at issue in this case; Mr. Musk's communications to BuzzFeed News at issue in this case; communications from Plaintiff's counsel related to Mr. Musk |
| Vernon Unsworth | Plaintiff's role in the Tham Luang cave rescue; statements by Plaintiff regarding Mr. Musk and the rescue vehicle; Mr. Musk's tweets at issue in |

-8-

Exhibit 6

| Individual | General Subject Matter |
|---|---|
|  | this case; Mr. Musk's retraction of and apology regarding tweets at issue in this case; Mr. Musk's communications to BuzzFeed News at issue in this case; communications from Plaintiff's counsel related to Mr. Musk; Plaintiff's reputation; Plaintiff's alleged damages |
| Richard Stanton | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; Plaintiff's role in the Tham Luang cave rescue |
| Thai government officials | Efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle; Plaintiff's role in the Tham Luang cave rescue |
| Ryan Mac | Mr. Musk's communications to BuzzFeed News at issue in this case; BuzzFeed News' coverage of issues related to this case |
| Employees of SpaceX, the Boring Company, and Tesla, including  Steve Davis, Chris Bowman, and Armor Harris | In light of Plaintiff's public statements that the efforts and involvement of Mr. Musk and his fellow employees in the Thai Cave rescue were "just a PR stunt" and "had absolutely no chance of working," these witness will testify about efforts by Mr. Musk, SpaceX, the Boring Company, and Tesla to assist in the Tham Luang cave rescue including the development of a rescue vehicle; the design and use of the rescue vehicle |
| Individuals described in Plaintiff's Initial Disclosures served on June 20, 2019 | As described in Plaintiff's Initial Disclosures served on June 20, 2019 |
| Individuals needed to authenticate any document produced by Defendant | Authentication of documents |
| Jared Birchall | The investigation of Plaintiff by James Howard; the results of James Howard's investigation of Plaintiff; communications with Mr. Musk concerning James Howard's investigation of Plaintiff and the results of said investigation. |
| James Howard | Mr. Howard's investigation of Plaintiff; the results of the investigation of Plaintiff; |

-9-

**Exhibit 6**

04684-23666/11036991.1

| Individual | General Subject Matter |
|---|---|
| | communications concerning the investigation of Plaintiff and the results of said investigation. |

**INTERROGATORY NO. 3:**

Please identify every investigation, including every inquiry, analysis, or background check, concerning Plaintiff undertaken by you or any person on your behalf or for your benefit, including the dates of the investigation, the individuals who conducted or assisted with the investigation, a description of the work undertaken in the investigation, and a description of the investigation's findings.

**Responses and Objections to Interrogatory No. 3:**

Defendant incorporates his General Objections herein.  Defendant further objects to Interrogatory No. 3 on the grounds that it is vague and ambiguous. Defendant further objects to Interrogatory No. 3 on the grounds that it is vague and ambiguous with regard to the terms "investigation," "inquiry," "analysis," "background check," and "benefit." Defendant further objects to Interrogatory No. 3 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff.   Defendant further objects to Interrogatory No. 3 on the grounds that it seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to Interrogatory No. 3 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity.  Defendant further objects to Interrogatory No. 3 on the ground that it prematurely calls for the identification of expert witnesses or testimony at this stage of litigation.  Defendant further objects to Interrogatory No. 3 on the grounds that it is compound and comprises discrete subparts resulting in separate interrogatories.

-10-

**Exhibit 6**

1    Subject to and without waiving the foregoing General Objections and Specific

2   Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil

3   Procedure, Mr. Musk responds:

4    James Howard of Jupiter Military & Tactical Systems conducted an

5   investigation, beginning on or about August 15, 2018.  Defendant will produce

6   documents relating to the work done and the findings of the investigation.

7   **INTERROGATORY NO. 4:**

8    Please identify the number of Twitter followers you had when you made each

9   of the tweets referenced in the Complaint and when you deleted each of the tweets

10  referenced in the Complaint.

11  **Responses and Objections to Interrogatory No. 4:**

12   Defendant incorporates his General Objections herein.  Defendant further

13  objects to Interrogatory No. 4 on the grounds that it is vague and ambiguous.

14  Defendant further objects to Interrogatory No. 4 on the grounds that it seeks

15  information that is outside of his possession, custody, or control, or that is equally

16  available to Plaintiff.  Defendant further objects to Interrogatory No. 4 on the

17  grounds that it seeks information that is not relevant and not reasonably calculated

18  to lead to the discovery of admissible evidence.  Defendant further objects to

19  Interrogatory No. 4 to the extent that it seeks to elicit information subject to and

20  protected by the attorney-client privilege, the attorney work product doctrine, the

21  joint defense privilege, the common interest doctrine, and/or any other applicable

22  privilege or immunity.  Defendant further objects to Interrogatory No. 4 on the

23  grounds that it is compound and comprises discrete subparts resulting in separate

24  interrogatories.

25   Subject to and without waiving the foregoing General Objections and Specific

26  Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil

27  Procedure, Mr. Musk responds as follows:

28

-11-                                                    **Exhibit 6**

ELON MUSK'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET
OF INTERROGATORIES

Mr. Musk is unaware of any reliable method to obtain the number of his
Twitter followers more than 90 days in the past.  Mr. Musk deleted his July 15, 2018
tweets on or about July 18, 2018.

**INTERROGATORY NO. 5:**

Please state your current net worth.

**Responses and Objections to Interrogatory No. 5:**

The following response is hereby designated "HIGHLY CONFIDENTIAL --
ATTORNEYS' EYES ONLY" under the Protective Order in the case.

Defendant incorporates his General Objections herein.  Defendant further
objects to Interrogatory No. 5 on the grounds that it is vague and ambiguous.
Defendant further objects to Interrogatory No. 5 on the grounds that it is vague and
ambiguous with regard to the term "net worth."  Defendant further objects to
Interrogatory No. 5 on the grounds that it seeks information that is outside of his
possession, custody, or control, or that is equally available to Plaintiff.  Defendant
further objects to Interrogatory No. 5 on the grounds that it seeks information that is
not relevant and not reasonably calculated to lead to the discovery of admissible
evidence.  Defendant further objects to Interrogatory No. 5 to the extent that it seeks
to elicit information subject to and protected by the attorney-client privilege, the
attorney work product doctrine, the joint defense privilege, the common interest
doctrine, and/or any other applicable privilege or immunity.   Defendant further
objects to Interrogatory No. 5 as it seeks information protected from disclosure
pursuant to Defendant's statutory, constitutional, and/or substantive rights, including
his right to privacy.

Subject to and without waiving the foregoing General Objections and Specific
Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil
Procedure, Mr. Musk responds as follows:

Mr. Musk's net worth is protected by his right to privacy under the United
States Constitution and Article 1, Section 1 of the California Constitution.  Because

-12-

**Exhibit 6**

detailed information regarding Mr. Musk's net worth is not relevant given the Constitutional limitations on punitive damages as set forth in *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003), there is no justification to invade his privacy rights in this Action.  Moreover, a calculation of Mr. Musk's net worth would be unduly burdensome and complicated given, among other things, his financial interests in non-public entities.  Nevertheless, under these circumstances, Mr. Musk would be willing to stipulate that his net worth is in excess of $1 billion.

**INTERROGATORY NO. 6:**

Please identify each person with whom you communicated regarding the Cave Rescue.

**Responses and Objections to Interrogatory No. 6:**

Defendant incorporates his General Objections herein.  Defendant further objects to Interrogatory No. 6 on the grounds that it is vague and ambiguous. Defendant further objects to Interrogatory No. 6 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff.  Defendant further objects to Interrogatory No. 6 on the grounds that it seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to Interrogatory No. 6 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing General Objections and Specific Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Musk responds that his non-privileged communications regarding the Cave Rescue included communications to or from the following persons or Twitter handles, which are reflected in the documents produced by Defendant:

Randy Rees

-13-

**Exhibit 6**

1    Sam Teller

2    Prayut Chan-o-cha (Thai PM)

3    Lyndon Rive

4    Ryan Mac

5    Christopher Eby

6    Steve Davis

7    Narongsak Osatanakorn

8    Christopher Bowman

9    Ben Reymenants

10   Richard Stanton

11   Dan Dees

12   Dana Brunetti

13   Jacobus Henning

14   Jared Birchall

15   Florence Li

16   Gwynne Shotwell

17   Zach Dunn

18   Mark Juncosa

19   Kyle Satula

20   Will Heltsley

21   Keith Cowing

22   Inge Solheim

23   Sriram Krishnan

24   Charles Kuehmann

25   Beth Stubbings

26   Sunai Praphuchanay

27   Drew Baglino

28   Carl Peterson

**Exhibit 6**

-14-

ELON MUSK'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET OF INTERROGATORIES

1    JB Straubel

2    Alex Schoch

3    Aaron Nutten

4    Armor Harris

5    James Yenbamroong

6    @BBCWorld

7    @MabzMagz

8    @JamesWorldSpace

9    @thanr

10   @MattyIce4412

11   @JL2579

12   @ArkadiuszKula

13   @siwgrindaker

14   @erickveen

15   @williamwinters

16   @maysacha

17   @palicharterhigh

18   @DowdEdward

19   @abroadwithalec

20   @JelteDesign

21   @ablack82

22   @aiyanaskye

23   @jevjack1

24   @JaneidyEye

25   @EnochKo

26   @Anna_online

27   @2morrowknight

28   @bweikle

-15-

**Exhibit 6**

1    @binarybits

2    @imscoops

3    @KyleBrubaker

4    @PPathole

5    @JimmyVosika

6    @dcliem

7    @LanceUlanoff

8    @Sarthk007

9    @dtemkin

10   @Katheri93719178

11   @JohnnaCrider1

12   @Vivek_17m

13

14   **INTERROGATORY NO. 7:**

15   Please identify every communication you have made or received concerning

16   Plaintiff, including whether such communication concerned whether Plaintiff has

17   engaged in sexual activity with minors or has an affinity for such activity, and the

18   medium of the communication (e.g., Twitter, e-mail, telephone, text message,

19   letter).

20   **Responses and Objections to Interrogatory No. 7:**

21   Defendant incorporates his General Objections herein.  Defendant further

22   objects to Interrogatory No. 7 on the grounds that it is vague and ambiguous.

23   Defendant further objects to Interrogatory No. 7 on the grounds that it is vague and

24   ambiguous with regard to the terms "sexual activity," "minors," and "affinity for

25   such activity."  Defendant further objects to Interrogatory No. 7 on the grounds that

26   it seeks information that is outside of his possession, custody, or control, or that is

27   equally available to Plaintiff.  Defendant further objects to Interrogatory No. 7 on

28   the grounds that it seeks information that is not relevant and not reasonably

-16-

**Exhibit 6**

calculated to lead to the discovery of admissible evidence.  Defendant further objects to Interrogatory No. 7 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity.  Defendant further objects to Interrogatory No. 7 on the grounds that it is compound and comprises discrete subparts resulting in separate interrogatories.

Subject to and without waiving the foregoing General Objections and Specific Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Musk responds that the following non-privileged communications may be responsive to the interrogatory, putting aside the tweets at issue in this case:

On July 16, 2018, Mr. Musk emailed himself a tweet by @walter_mackay concerning Plaintiff.  This email was produced at MUSK_001273.

On July 16, 2018, Sam Teller sent Mr. Musk an email concerning Plaintiff.  This email was produced at MUSK_001705.

On July 17, 2018, Mr. Musk had an email exchange with Sam Teller concerning Plaintiff.  This exchange was produced at MUSK_001706-07.

On August 18, 2018, Sam Teller forwarded to Mr. Musk an email from Jeremy Arnold concerning Plaintiff.  This exchange was produced at MUSK_001077-78.

On August 28, 2018, Sam Teller forwarded to Mr. Musk an email from Mike Ballaban concerning Plaintiff .  This exchange was produced at MUSK_0012027-28.

On August 29, 2018, Mr. Musk forwarded an email from Ryan Mac concerning Plaintiff to Jared Birchall.  This email was produced at MUSK_000528.

From August 29 – August 30, 2018, Mr. Musk had an email exchange concerning Plaintiff with Ryan Mac.  This exchange was produced at MUSK_000964-66.

-17-

**Exhibit 6**

On August 30, 2018, Mr. Musk sent an email concerning Plaintiff to Ryan Mac.  This email was produced at MUSK_000646.

On August 30, 2018, Mr. Musk sent an email concerning Plaintiff  to Ryan Mac.  This email was produced at MUSK_000964.

On September 4, 2018, Mr. Musk had an email exchange concerning Plaintiff with Ryan Mac.  This exchange was produced at MUSK_000967-68.

The following communication is designated CONFIDENTIAL pursuant to the Protective Order: On September 5, 2018, Mr. Musk had an email exchange with Richard Branson concerning Plaintiff.  This exchange was produced at MUSK_001708.

On September 17, 2018, Ryan Mac sent an email to Mr. Musk concerning Plaintiff.  This email was produced at MUSK_001275.

On September 17, 2018,  Mr. Musk forwarded an email from Ryan Mac concerning Plaintiff to Jared Birchall.  This email was produced at MUSK_000705.

On September 17, 2018, Sam Teller forwarded to Mr. Musk an email from Niraj Chokshi concerning Plaintiff.  This exchange was produced at MUSK_001012.

**INTERROGATORY NO. 8:**

Please state whether you published the tweet attached hereto as Exhibit A and, if so, identify the date it was published, the date it was deleted, and the number of Twitter followers you had on the date it was published and the date it was deleted.

**Responses and Objections to Interrogatory No. 8:**

Defendant incorporates his General Objections herein.  Defendant further objects to Interrogatory No. 8 on the grounds that it is vague and ambiguous. Defendant further objects to Interrogatory No. 8 on the grounds that it is vague and ambiguous with regard to the term "published."  Defendant further objects to

-18-

Interrogatory No. 8 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff. Defendant further objects to Interrogatory No. 8 on the grounds that it seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to Interrogatory No. 8 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity. Defendant further objects to Interrogatory No. 8 on the grounds that it is compound and comprises discrete subparts resulting in separate interrogatories.

Subject to and without waiving the foregoing General Objections and Specific Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Musk responds as follows:

Mr. Musk did not publish this tweet, which is not an authentic tweet from Mr. Musk's account.

**INTERROGATORY NO. 9:**

Please identify any person responsible for reviewing and/or approving any tweets before you may publish them.

**Responses and Objections to Interrogatory No. 9:**

Defendant incorporates his General Objections herein. Defendant further objects to Interrogatory No. 9 on the grounds that it is vague and ambiguous. Defendant further objects to Interrogatory No. 9 on the grounds that it is vague and ambiguous with regard to the terms "reviewing," "approving," and "publish." Defendant further objects to Interrogatory No. 9 on the grounds that it seeks information that is outside of his possession, custody, or control. Defendant further objects to Interrogatory No. 9 as overly broad and burdensome to the extent that it requires him to pursue information from persons or entities purporting to act on his behalf, and to the extent it is not limited to any context or time. Defendant further

-19-

Exhibit 6

04684-23666/11036991.1

objects to Interrogatory No. 9 on the grounds that it is harassing and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to Interrogatory No. 9 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing General Objections and Specific Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Musk responds as follows:

This topic has no possible relevance to this Action and will not lead to the discovery of relevant information.  In any event, the Consent Motion for Entry of Final Judgment and Consent Motion to Amend Final Judgment in *United States Securities and Exchange Commission v. Elon Musk*, Case No. 1:18-cv-8865-AJN-GWG (Doc. Nos. 6 and 46) are publicly-available documents.

**INTERROGATORY NO. 10:**

Please identify each person whom you expect to call as an expert witness in this case, state the subject matter on which the expert is expected to testify, state the substance of the facts and opinions to which the expert is expected to testify, and provide a summary of the grounds for each opinion.

**Responses and Objections to Interrogatory No. 10:**

Defendant incorporates his General Objections herein.  Defendant further objects to Interrogatory No. 10 on the grounds that it is vague and ambiguous with regard to the term "substance."  Defendant further objects to Interrogatory No. 10 on the ground that it prematurely calls for expert testimony or opinion at this stage of litigation.  Defendant further objects to Interrogatory No. 10 on the grounds that it seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to Interrogatory No. 10

-20-

Exhibit 6

ELON MUSK'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET OF INTERROGATORIES

1  to the extent that it seeks to elicit information subject to and protected by the

2  attorney-client privilege, the attorney work product doctrine, the joint defense

3  privilege, the common interest doctrine, and/or any other applicable privilege or

4  immunity, including as set forth in Federal Rule of Civil Procedure 26.  Defendant

5  further objects to Interrogatory No. 10 on the grounds that it is compound and

6  comprises discrete subparts resulting in separate interrogatories.

7        Subject to and without waiving the foregoing General Objections and Specific

8  Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil

9  Procedure, Mr. Musk responds that he will provide expert disclosures at the time

10  designated in the parties' Joint Rule 26(f) Report.

11  **INTERROGATORY NO. 11:**

12        Please identify each instance in the last three (3) years in which a third party

13  accused you of publishing defamatory information.

14  **Responses and Objections to Interrogatory No. 11:**

15        Defendant incorporates his General Objections herein.  Defendant further

16  objects to Interrogatory No. 11 on the grounds that it is vague and ambiguous.

17  Defendant further objects to Interrogatory No. 11 on the grounds that it is vague and

18  ambiguous with regard to the terms "accused," "publishing," and "defamatory

19  information."  Defendant further objects to Interrogatory No. 11 on the grounds that

20  it seeks information that is outside of his possession, custody, or control, or that is

21  equally available to Plaintiff.  Defendant further objects to Interrogatory No. 11 on

22  the grounds that it seeks information that is not relevant and not reasonably

23  calculated to lead to the discovery of admissible evidence.  Defendant further

24  objects to Interrogatory No. 11 to the extent that it seeks to elicit information subject

25  to and protected by the attorney-client privilege, the attorney work product doctrine,

26  the joint defense privilege, the common interest doctrine, and/or any other

27  applicable privilege or immunity.

28

**Exhibit 6**

04684-23666/11036991.1

1  Subject to and without waiving the foregoing General Objections and Specific

2  Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil

3  Procedure, Mr. Musk responds as follows:

4  He has never been sued for defamation prior to this case.  He is currently

5  unaware of any other instances of being accused of defamation.

6  **INTERROGATORY NO. 12:**

7  Please identify each lawsuit to which you were a party in the last five (5)

8  years.

9  **Responses and Objections to Interrogatory No. 12:**

10  Defendant incorporates his General Objections herein.  Defendant further

11  objects to Interrogatory No. 12 on the grounds that it is vague and ambiguous in that

12  it does not define the term "you."  Defendant further objects to Interrogatory No. 12

13  on the grounds that it seeks information that is outside of his possession, custody, or

14  control, or that is equally available to Plaintiff.  Defendant further objects to

15  Interrogatory No. 12 on the grounds that it seeks information that is not relevant and

16  not reasonably calculated to lead to the discovery of admissible evidence.

17  Defendant further objects to Interrogatory No. 12 to the extent that it seeks to elicit

18  information subject to and protected by the attorney-client privilege, the attorney

19  work product doctrine, the joint defense privilege, the common interest doctrine,

20  and/or any other applicable privilege or immunity.

21  Subject to and without waiving the foregoing General Objections and Specific

22  Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil

23  Procedure, Mr. Musk responds as follows: a list of lawsuits filed in the last five

24  years, excluding the instant action, in which Mr. Musk is or has been a party has

25  been produced to Plaintiff at MUSK_001709-11

26  **INTERROGATORY NO. 13:**

27  Please identify any policies of insurance that may provide coverage in

28  connection with any of Plaintiff's allegations in the Complaint.

**Exhibit 6**

-22-

04684-23666/11036991.1

**Responses and Objections to Interrogatory No. 13:**

Defendant incorporates his General Objections herein. Defendant further objects to Interrogatory No. 13 on the grounds that it seeks information that is outside of his possession, custody, or control, or that is equally available to Plaintiff. Defendant further objects to Interrogatory No. 13 on the grounds that it seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to Interrogatory No. 13 to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing General Objections and Specific Objections, and in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, Mr. Musk responds  as follows: Mr. Musk's responsive insurance policies have been produced at MUSK_001463-509 and MUSK_001510-50

-23-

**Exhibit 6**

DATED:  August 21, 2019

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By   */s/ Alex Spiro*

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
robertschwartz@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

Alex Spiro (admitted *pro hac vice*)
alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

*Attorneys for Defendant Elon Musk*

-24-

**Exhibit 6**

ELON MUSK'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET
OF INTERROGATORIES

**VERIFICATION**

I, Elon Musk, am a party to this action.  I have reviewed the factual portions of each Interrogatory response and believe these facts to be true and accurate to the best of my knowledge.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


DATED: August 21, 2019



_____

Elon Musk

**Exhibit 6**

ELON MUSK'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET OF INTERROGATORIES

04684-23666/11036991.1

## **CERTIFICATE OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

I hereby certify that a true and correct copy of the document titled "Elon Musk's Responses and Objections to Vernon Unsworth's First Set of Interrogatories" has been served via electronic mail transmission on August 21, 2019 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. The electronic mail transmission was made from michaellifrak@quinnemanuel.com, by transmitting PDF format copies of the document to all counsel of record, at the e-mail address provided to the Court's CM/ECF system.  The transmission was reported as complete and without error.

Executed on August 21, 2019, at Los Angeles, California.


*s/ Michael Lifrak*
Michael Lifrak

**Exhibit 6**

-26-

ELON MUSK'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO VERNON UNSWORTH'S FIRST SET OF INTERROGATORIES

# EXHIBIT 7

Exhibit 7

```
 1

 2                UNITED STATES DISTRICT COURT
                 CENTRAL DISTRICT OF CALIFORNIA
 3

 4

 5

 6
       -----------------------)
 7                            )
                              )
 8     VERNON UNSWORTH,        )
                              )
 9            Plaintiff       )
                              )
10     vs.                    ) Case No. 2:18-cv-08048
                              )
11                            )
       ELON MUSK,             )
12                            )
              Defendant       )
13     -----------------------)

14

15

16
        Videotape Deposition of VANESSA JULIET UNSWORTH
17

18
               On Tuesday, 27th August 2019
19

20

21
     Taken at the offices of:
22
              Howard Kennedy LLP
23            1 London Bridge
              London SE1 9BG
24            United Kingdom

25
```

```
 1

 2     A P P E A R A N C E S

 3     On behalf of the Plaintiff:

 4             L. LIN WOOD, P.C.
               1180 West Peachtree Street
 5             Suite 2040
               Atlanta, Georgia 30309
 6
                       By:  MR. G. TAYLOR WILSON
 7                          MR. LIN WOOD

 8
               HOWARD KENNEDY LLP
 9             1 London Bridge
               London SE1 9BG
10             United Kingdom

11                     By:  MR. ADAM FELLOWS
                            MR. MARK STEPHENS
12

13     On behalf of the Defendant:

14             QUINN EMANUEL URQUHART & SULLIVAN LLP
               51 Madison Avenue
15             22nd Floor
               New York
16             New York 10010

17                     By:  MR. ALEX SPIRO
                            MS. JENNIFER KIM
18
       Court Reporter:
19
               PAULA FOLEY
20             Marten Walsh Cherer Ltd
               2nd Floor
21             Quality House
               6-9 Quality Court
22             Chancery Lane
               London WC2A 1HP
23

24     Also Present:

25             PHILIP HILL, Videographer
```

```
1                    UNSWORTH - WILSON
2     together as a family.
3     BY MR. WILSON:
4            Q.    When you say "we", who are you
5     referring to?
6            A.    Vernon and myself.
7            Q.    Has the separation caused any
8     tension for Danielle and Vernon?
9            A.    Yes.  Yes, she found it very
10    difficult.  Generally separations are very
11    difficult when marriages break up, and she did
12    find it very difficult; yes.
13           Q.    Do you know how Vernon feels about
14    that tension?
15           A.    I think he is very, very sad about
16    it, you know.  I think in conversations that we
17    have had in the past he was very -- he was
18    devastated by it.  Very sad that she was no
19    longer -- or he was not able to sort of have a
20    relationship with her, but, obviously, as with
21    most relationship break-ups, people, you know,
22    take sides.  Children do take sides a little bit.
23    Although I did my very best to not, you know, say
24    anything as regards our relationship break-up, but
25    yes.  So, yes, he is very sad that he has not got
```

```
 1                    UNSWORTH - WILSON
 2   a close relationship with her now.
 3          Q.     Do you know whether Vernon or
 4   Danielle have attempted to stay in contact?
 5          A.     Vernon has.
 6          Q.     How does he do that?
 7          A.     Well, he has tried -- obviously he
 8   asks me how she is all the time.  She is not in
 9   contact with him by phone or anything any more.
10   She chose not to when we split up.
11          Q.     Do you know whether Vernon attempts
12   to contact her by phone or by letter or by any
13   other means?
14          A.     Well, he does.  He always sort of
15   sends Christmas cards and birthday presents, and
16   Easter presents.  So he still sends things every
17   year.
18          Q.     Before the separation, were you all
19   taking sort of regular family vacations?
20          A.     Yes, yes.
21          Q.     Were any of those vacations abroad?
22          A.     Yes.  We used to go to Portugal
23   quite a lot.  We went skiing, so we went to France
24   and Italy and places along those lines.
25          Q.     What were you doing in Portugal?
```

```
                    UNSWORTH - WILSON
 1
 2    interview with the governors regarding these
 3    accusations?
 4          A.    No, no, she handled all of that.
 5          Q.    Has Vern expressed any concern
 6    about you or Danielle in this process?
 7                MR. SPIRO:  Objection.
 8          A.    Yes, absolutely.  At the end of the
 9    day, although we went our separate ways, we were
10    married for quite a long time, still are, and,
11    yes, I think he still cares about us, and
12    certainly he cares deeply about his daughter.
13    BY MR. WILSON:
14          Q.    The court reporter is going to hand
15    you what will be marked Exhibit 50.
16                MR. SPIRO:  Objection to this
17    exhibit.
18                MR. WILSON:  Can you explain that
19    objection?
20                MR. SPIRO:  Outside the presence of
21    the witness I can.
22         (Exhibit 50 marked for identification)
23    BY MR. WILSON:
24          Q.    Could you just take a moment to
25    review this exhibit?  (Pause for reading) You been
```

Vanessa Unsworth Deposition Video/Transcript Corrections

1. Page 5 Line 10
   a. From  "behalf of Mr. Unsworth, appearing via Skype."
   b. To     "behalf of Mr. Unsworth, participating via Skype."
2. Page 7 Line 13
   a. From  "Okay. What do you do at the"
   b. To     "Okay. And you said what do you do at the"
3. Page 10 Line 2
   a. From  "My math may be a little slow."
   b. To     "My math may be a bit slow."
4. Page 11 Line 3-4
   a. From  "other people, will do what he can to help other people usually."
   b. To     "other people, will do whatever he can to help other people usually."
5. Page 14 Line 19
   a. From  "To your knowledge, was that his"
   b. To     "To your knowledge, is that his"
6. Page 16 Line 6
   a. From  "Mr. Wilson: You can answer."
   b. To     "Mr. Wilson: You may answer."
7. Page 18 Line 20
   a. From  "at work, because obviously they ran the big"
   b. To     "at work, because obviously they run the big"
8. Page 32 Line 6
   a. From  "event.  The more people talked about it, the more"
   b. To     "event.  The more people talk about it, the more"
9. Page 36 Line 22
   a. From  "spread out across the school.  So it is a very"
   b. To     "spread out across the country.  So it is a very"
10. Page 48 Line 5-6
    a. From  "he tell you and your daughter that you have been doing in Thailand?"
    b. To     "he tell you and your daughter  he was doing in Thailand?"
11. Page 54 Line 10
    a. From  "What is that understanding based"
    b. To     "Where is that understanding based"
12. Page 56 Line 11
    a. From  "Lost the lot.  That is a standard"
    b. To     "Lost the plot.  That is a standard"
13. Page 60 Line 16
    a. From  "financially if you were definitely divorced.  That"
    b. To     "financially if you were technically divorced.  That"

**Exhibit 7**

14. Page 64 Line 22
    a.  From  "No, I do not know.  I do not have"
    b.  To    "No, I do not.  I do not have"
15. Page 68 Line 25
    a.  From  "telling you is it pre-dated this."
    b.  To    "telling you is it pre-dated the accusations, Alex."
16. Page 70 Line 20 – 23 ******
    a.  From  "Q. Are you aware that since the time of the rescue and the
              Tweets that he has made money from the cave rescue?  A. Yes."
    b.  To    "Q. Are you aware that since the time of the rescue and the
              Tweets that he has made money from the cave rescue?  A. No."
17. Page 81 Line 19
    a.  From  "who actually went in and who started to push"
    b.  To    "who actually went in and had started to push"
18. Page 84 Line 25
    a.  From  "there would obviously be a stenographer and a"
    b.  To    "there would probably be a stenographer and a"

**Exhibit 7**

1
2                    **CERTIFICATE OF WITNESS**
3
4          I, Vanessa Juliet Unsworth, am the
5    deponent in the foregoing deposition.  I have read
6    the foregoing deposition and, having made such
7    changes and corrections as I desired, I certify
8    that the transcript is a true and accurate record
9    of my responses to the questions put to me on 27th
10   August, 2019.
11
12
13
14
15
16   Signed ..........................
17          VANESSA JULIET UNSWORTH
18
19
20
21   Dated this ....... day of ............. 2019
22
23
24
25

1

2                        **CERTIFICATE OF COURT REPORTER**

3

4            I, Paula Foley, Accredited Court Reporter,

5    do hereby certify that I took the Stenograph notes

6    of the foregoing, and that the transcript thereof

7    is a true and accurate record transcribed to the

8    best of my skill and ability.

9

10           I further certify that I am neither

11   counsel for, related to, nor employed by any of

12   the parties to the action in which the deposition

13   was taken and that I am not a relative or employee

14   of any attorney or counsel employed by the parties

15   hereto, nor financially or otherwise interested in

16   the outcome of the action.

17

18

22   Signed ..........................

23          PAULA FOLEY

24

25

**MARTEN WALSH CHERER LTD.**
**LONDON, ENGLAND**
**Tel. 020 7067 2900**
                                            **Exhibit 7**

www.martenwalshcherer.com

1

2                    **E R R A T A**

3              (Please make any corrections here,

4                  *not* in the transcript)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 8

Exhibit 8

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3

4

5    VERNON UNSWORTH,

6              Plaintiff,

7              vs.                    Case No. 2:18-cv-8048

8    ELON MUSK,

9              Defendant.
    _____

10

11          VIDEOTAPED DEPOSITION OF ELON MUSK

12               BEVERLY HILLS, CALIFORNIA

13                  AUGUST 22, 2019

14

15

16

17

18

19   Reported By:
     PATRICIA Y. SCHULER
20   CSR No. 11949

21   Job No. 45176

22

23

24

25

**Exhibit 8**

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3

4

5    VERNON UNSWORTH,

6              Plaintiff,

7              vs.                    Case No. 2:18-cv-8048

8    ELON MUSK,

9              Defendant.

10   _____

11        Videotaped deposition of ELON MUSK, taken on

12   behalf of the DEFENDANT at 1244 Beverwil Drive,

13   Beverly Hills, California, beginning at 9:17 a.m.

14   and ending at 5:28 p.m., on August 22, 2019, before

15   PATRICIA Y. SCHULER, Certified Shorthand Reporter

16   No. 11949.

17

18

19

20

21

22

23

24

25

2

**Exhibit 8**

```
 1   APPEARANCES:

 2   FOR PLAINTIFF:

 3            L. LIN WOOD, P.C.

 4            BY:  L. LIN WOOD, ESQ.

 5            BY:  G. TAYLOR WILSON, ESQ.

 6            BY:  MARK STEVENS, ESQ.

 7            BY:  MATT WOOD, ESQ.

 8            1180 West Peachtree Street

 9            Suite 2040

10            Atlanta, California  30309

11            lwood@linwoodlaw.com

12   FOR DEFENDANTS:

13            QUINN EMANUEL URQUHART & SULLIVAN, LLP

14            BY:  ALEX SPIRO, ESQ.

15            BY:  JEANINE ZALDUENDO, ESQ.

16            BY:  MICHAEL LIFRAK, ESQ.

17            865 South Figueroa Street

18            10th Floor

19            Los Angeles, California  90017

20            jeaninezalduendo@quinnemanuel.com

21   Also Present:  Vernon Unsworth

22   Videographer:

23            Timothy Hunter

24

25
```

3

**Exhibit 8**

| | | |
|---|---|---|
| 1 | I'm followed by a lot of journalists, that they | 14:22:32 |
| 2 | should just find out whether these things were | 14:22:36 |
| 3 | true; like they should look into it.  You've got | 14:22:39 |
| 4 | Drew Olanoff, the Yoda guy, @yoda.  It's like, Yo, | 14:22:41 |
| 5 | man, why don't you just like see if there is any | 14:22:41 |
| 6 | veracity to the situation? | 14:22:52 |
| 7 | Q.   Well, actually, you tweeted back @yoda? | 14:22:53 |
| 8 | A.   Yoda.  Yeah. | 14:22:56 |
| 9 | Q.   Well, @yoda.  That was his name.  You | 14:22:56 |
| 10 | made reference to him. | 14:23:01 |
| 11 | A.   Yes. | 14:23:02 |
| 12 | Q.   Your name is Yoda.  You go by Yoda, but | 14:23:02 |
| 13 | you don't seem very yodaish.  Something like that. | 14:23:03 |
| 14 | A.   That's right. | 14:23:05 |
| 15 | Q.   I mean, you tweeted @yoda "Don't you | 14:23:10 |
| 16 | think it's strange that he hasn't sued me," didn't | 14:23:12 |
| 17 | you? | 14:23:16 |
| 18 | A.   Yes. | 14:23:17 |
| 19 | Q.   Strange in what way? | 14:23:19 |
| 20 | A.   Strange implying perhaps there is some | 14:23:20 |
| 21 | guilt there. | 14:23:23 |
| 22 | Q.   Right.  The tweet that you published in | 14:23:24 |
| 23 | response to Yoda's tweet conveyed that, the idea | 14:23:28 |
| 24 | that here's a guy that's got three lawyers I think | 14:23:31 |
| 25 | you referenced. | 14:23:37 |

195

**Exhibit 8**

```
 1   BY MR. WOOD:                                    14:51:35

 2       Q.   Isn't that what you said in your answer?  14:51:36

 3   Yeah, you belittled him by saying it.  "The     14:51:36

 4   previously unknown Mr. Unsworth.  He's just out to  14:51:37

 5   get some of Elon Musk's money."                  14:51:42

 6            That's what your answer said.  I can read  14:51:45

 7   it to you if you want me to, but you saw it.     14:51:45

 8       A.   Yeah.  I mean, this is a shakedown       14:51:48

 9   letter, you know.                                14:51:50

10       Q.   Shakedown letter, shakedown lawsuit,     14:51:51

11   right?                                           14:51:54

12       A.   Shakedown lawyer.                        14:51:54

13       Q.   Shakedown lawsuit?                       14:51:56

14       A.   Shakedown lawyer.                        14:51:58

15       Q.   Shakedown lawsuit?                       14:52:01

16       A.   Shakedown lawyer.                        14:52:02

17       Q.   Does that mean that it's a shakedown     14:52:04

18   lawsuit?                                         14:52:04

19       A.   From a shakedown lawyer, yeah.           14:52:05

20       Q.   From a shakedown -- how much money have I  14:52:06

21   tried to shake you down for?                     14:52:09

22       A.   I don't know.  I didn't ask.            14:52:11

23       Q.   How much -- when have I ever asked you   14:52:12

24   for any money?                                   14:52:15

25       A.   I believe it was in that letter that you  14:52:16
```

223

**Exhibit 8**

```
 1        Q.    Because of Ryan Mac?                        15:13:23

 2        A.    Yes.                                        15:13:24

 3        Q.    Ryan Mac at BuzzFeed destroyed your faith   15:13:25

 4   in the media in general?                              15:13:27

 5        A.    And damaged my faith in humanity.           15:13:29

 6        Q.    Well, a lot of people did that according    15:13:31

 7   to you.                                               15:13:33

 8        A.    Including you.                              15:13:34

 9        Q.    Thank you.  I don't know what that means.   15:13:35

10        A.    It's not good.                             15:13:37

11        Q.    Because you said it before I ever -- you    15:13:38

12   ever knew my name.                                    15:13:39

13        A.    You diminished my faith in humanity.        15:13:41

14        Q.    I diminish your faith in humanity?          15:13:43

15        A.    Yes.                                        15:13:46

16        Q.    What have I done to do that, sir?           15:13:46

17        A.    Shakedown lawyer.                           15:13:49

18        Q.    Do you know anything about me?              15:13:50

19        A.    Shake me down.                             15:13:53

20        Q.    Do you know anything about my career?       15:13:54

21   42-year career?                                       15:13:55

22        A.    Seemed like a shakedown.                   15:13:59

23        Q.    I didn't ask you that.  You told me I'm a   15:14:01

24   shakedown -- do you know anything about my 42 years   15:14:02

25   of practicing law?                                    15:14:06
```

**Exhibit 8**

1

2

3

4

5

6

7

8

9    I, ELON MUSK, do hereby declare under the penalty of

10   perjury that I have read the foregoing transcript;

11   that I have made any corrections as appear noted, in

12   ink, initialed by me, or attached hereto; that my

13   testimony as contained herein, as corrected, is true

14   and correct.

15        EXECUTED this __5th__ day of ____September____,

16   20 _19_, at _____Los Angeles_____, __California__.

17                  (City)                    (State)

18

19                  _____

20                      ELON MUSK

21

22

23

24

25

327

**Exhibit 8**

1        I, PATRICIA Y. SCHULER, a Certified

2    Shorthand Reporter of the State of California, do

3    hereby certify:

4        That the foregoing proceedings were taken

5    before me at the time and place herein set forth;

6    that any witnesses in the foregoing proceedings,

7    prior to testifying, were duly sworn; that a

8    verbatim record of the proceedings was made by me

9    using machine shorthand which was thereafter

10   transcribed under my direction; that the foregoing

11   transcript is a true record of the testimony given.

12       Further, that if the foregoing pertains

13   to the original transcript of a deposition in a

14   Federal Case, before completion of the proceedings,

15   review of the transcript [X] was [ ] was not

16   requested.

17       I further certify I am neither

18   financially interested in the action nor a relative

19   or employee of any attorney of party to this

20   action.

21       IN WITNESS WHEREOF, I have this date

22   subscribed my name.

23   Dated:  August 23, 2019

24

                          _____
                          PATRICIA Y. SCHULER

25                        CSR NO. 11949

**Exhibit 8**

1          DEPOSITION ERRATA SHEET

2     CASE NAME:  UNSWORTH V. MUSK
      DEPOSITION DATE:  AUGUST 14, 2019
3     WITNESS NAME:    ELON MUSK

4     Reason Codes:  1. To clarify the record.

5                    2. To conform to the facts.

6                    3. To correct transcription errors.

7     Page __151__  Line _3____  Reason Code  __1__

8     From _Mr. Stephens_____  to  _The Witness_____

9     Page _259___  Line _18___  Reason Code  __1__

10    From _Mr. Stephens_____  to  _The Witness_____

11    Page _____  Line _____  Reason Code  _____

12    From _____  to  _____

13    Page _____  Line _____  Reason Code  _____

14    From _____  to  _____

15    Page _____  Line _____  Reason Code  _____

16    From _____  to  _____

17    Page _____  Line _____  Reason Code  _____

18    From _____  to  _____

19    Page _____  Line _____  Reason Code  _____

20    From _____  to  _____

21    Page _____  Line _____  Reason Code  _____

22    From _____  to  _____

23    Page _____  Line _____  Reason Code  _____

24    From _____  to  _____

25    Page _____  Line _____  Reason Code  _____

329
**Exhibit 8**

1   From _____ to _____

2   Page _____ Line _____ Reason Code _____

3   From _____ to _____

4   Page _____ Line _____ Reason Code _____

5   From _____ to _____

6   Page _____ Line _____ Reason Code _____

7   From _____ to _____

8   Page _____ Line _____ Reason Code _____

9   From _____ to _____

10  Page _____ Line _____ Reason Code _____

11  From _____ to _____

12  Page _____ Line _____ Reason Code _____

13  From _____ to _____

14  Page _____ Line _____ Reason Code _____

15  From _____ to _____

16  __X___ Subject to the above changes, I certify that

17  the transcript is true and correct.

18  _____ No changes have been made. I certify that the

    transcript is true and correct.

19

20

21  _____

22              ELON MUSK

23

24

25

                                              330

**Exhibit 8**