# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
|---|---|---|---|

| Title | *Vernon Unsworth v. Elon Musk* |
|---|---|

Present: The Honorable STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:** IN CHAMBERS ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [58]

Vernon Unsworth ("Plaintiff") brought this defamation action against Elon Musk ("Defendant") on September 17, 2018. Dkt. 1. Defendant has moved for summary judgment, or in the alternative partial summary judgment, on the theory Plaintiff is a limited purpose public figure and Defendant's statements do not constitute defamation under the applicable standard. For the reasons stated below, Defendant's motion is DENIED.

## I.  Introduction and Background

The facts of this case are explained in detail in our previous Order. *See* Dkt. 42 at 2–5 (Order denying Defendant's Motion to Dismiss). We briefly recount them here.

### a.  Rescue from the Tham Luang Cave System

Plaintiff was involved in the rescue of twelve Thai children ("Children") and their coach from the Tham Luange Nang Non cave system ("Caves") from June to July of 2018 ("Rescue"). Plaintiff used his extensive knowledge of the Caves to direct and assist the Thai government in the Rescue, and Plaintiff provided advice and guidance to the Thai Navy divers on where the Children may have been located.

Defendant is an internationally-known businessman and engineer who founded (or co-founded) and holds leadership positions in several companies, including Tesla, Inc., SpaceX, and The Boring

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

Company ("Companies"). Dkt. 58 at 4. After inquiring with the Thai government, Defendant mobilized resources across several of his Companies to assist in the Rescue. *Id.* Under Defendant's direction, the Companies designed and produced three miniature submarines ("Sub(s)") which were delivered to the Thai government to assist in the Rescue. *Id.* Ultimately, the Children were rescued by conventional divers, and the Subs were not used in the Rescue. *Id.* Defendant donated the Subs to the Thai government for use in future operations. The Rescue concluded between July 8–10, 2018, when all of the Children and their coach were safely extracted from the Caves. *Id.*

On July 13, 2018, Plaintiff participated in an interview with a cable news channel, CNN, to discuss the Rescue ("CNN Interview"). Dkt. 1 ¶ 70. Asked what he thought of the Sub, Plaintiff stated that it was a "PR stunt," that it "had absolutely no chance of working," and that Defendant "had no conception of what the cave passage was like," adding that Defendant could "stick his submarine where it hurts." *Id.* ¶ 71.

    b. **Defendant's Tweets**

On July 15, 2018, after Plaintiff's CNN Interview, Defendant posted the four following messages on Twitter ("Tweets").[1]

Tweet #1:

> Never saw this British expat guy who lives in Thailand (sus) at any point when we were in the caves. Only people in sight were the Thai navy/army guys, who were great. Thai navy seals escorted us in – total opposite of wanting us to leave.

On the same day, Defendant posted Tweet #2:

---

[1] The four Tweets posted on July 15, 2018 form the basis of the first part of Plaintiff's defamation action and are referred to as "Tweets" #1–4, or collectively as the "Tweets." Other Twitter posts by the Defendant may be relevant to the action but are not the basis for defamation liability and therefore not defined.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

> Water level was actually very low & still (not flowing) – you could literally have swum to Cave 5 with no gear, which is obv how the kids got in. If not true, then I challenge this dude to show final rescue video. Huge credit to pump & generator team. Unsung heroes here.

*Id.* ¶ 75. Defendant then posted Tweet #3:

> You know what, don't bother showing the video. We will make one of the mini-sub/pod goingss all the way to Cave 5 no problemo. Sorry pedo guy, you really did ask for it.

*Id.* ¶ 76. On July 15, 2018, referring to Tweet #3, Defendant posted Tweet #4:

> Bet ya a signed dollar it's true.

    *Id.* ¶ 79. On July 18, 2018, following public comments by shareholders of one of his Companies expressing displeasure with Defendant's Tweets, Defendant deleted the July 15 accusatory Tweets and published two tweets that purported to be an apology. *Id.* ¶ 80. Defendant stated: "[M]y words were spoken in anger after [Plaintiff] said several untruths," but "[n]onetheless, [Plaintiff's] actions against me do not justify my actions against him, and for that I apologize to [Plaintiff] and to the companies I represent as leader." *Id.* The "apology" did not disavow or retract his accusations of pedophilia against Plaintiff. *Id.* ¶ 81. These later tweets are not the subject of the present action.

    On August 6, 2018, Plaintiff, through counsel, transmitted a letter to Defendant at the email address identified by Defendant, advising Defendant that his accusation of pedophilia against Plaintiff was false and requesting that Defendant correct the public record. *Id.* ¶ 82.

    On August 28, 2018, Defendant responded to another Twitter user's comment by posting another tweet about Plaintiff. *Id.* ¶ 83. Defendant wrote: "You don't think it's strange [Plaintiff] hasn't sued me? He was offered free legal services." *Id.* Plaintiff alleges this post conveyed to the average reader that Plaintiff's failure to sue Defendant was evidence that Plaintiff is, in fact, a pedophile. *Id.* ¶ 84.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

### c. Defendant's Emails to BuzzFeed

On August 28, 2018, BuzzFeed News (among others) published an article regarding Defendant's continued accusations of pedophilia against Plaintiff. *Id.* ¶ 86. On August 29, 2018, one of Plaintiff's attorneys responded on Twitter to Defendant's August 28 tweet by stating that Defendant "should check his mail before tweeting" and attaching a copy of Plaintiff's August 6 demand letter. *Id.* ¶ 87.

On August 30, 2018, Defendant sent an email ("Email") directly to Buzzfeed reporter Ryan Mac—the reporter who authored the August 28 BuzzFeed article. The Email read:

> Off the record.
>
> I suggest that you call people you know in Thailand, find out what's actually going on and stop defending child rapists, you fucking asshole. He's an old, single white guy from England who's been traveling or living in Thailand for 30 to 40 years, mostly Pattaya Beach, until moving to Chiang Rai for a child bride who was about 12 years old at the time. There's only one reason people go to Pattaya Beach. It isn't where you'd go for caves, but it is where you'd go for something else. Chiang Rai is renowned for child sex-trafficking.
>
> He may claim to know how to cave dive, but he wasn't on the cave dive rescue team and most of the actual dive team refused to hang out with him. I wonder why . . .
>
> As for this alleged threat of a lawsuit, which magically appeared when I raised the issue (nothing was sent or raised beforehand), I fucking hope he sues me.

*Id.* ¶ 88. Mac eventually published these statements in a subsequent Buzzfeed article ("Buzzfeed Article") on September 4, 2019. Dkt. 62, Exh. 26. This Email now forms the part of the basis for one of Plaintiff's defamation claims by virtue of its publication to Mac, and (according to Plaintiff) foreseeable

 : 

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

republication by Mac in the Buzzfeed Article. *Id.* ¶ 88–96.

Defendant sent a follow-up email to Mac on August 30 ("Second Email"), refuting Plaintiff's claim that Defendant was asked to leave by the Thai government and stating that he never saw Plaintiff at any point (and that Defendant was told that Plaintiff was "banned from the site"). *Id.* ¶ 92.

Defendant's does not contest that his accusations that Plaintiff is a child rapist, married a 12-year old child, engaged in sex trafficking, and was excluded by the dive team because of his alleged misconduct with children are false. Dkt. 75 at 1; Dkt. 85 at 1–2. In addition, Defendant's accusations that Plaintiff had visited Pattaya Beach, lived in Thailand for 30 to 40 years, and lived in Chiang Rai with a 12-year old bride are false. *Id.*

**II.    Legal Standard**

A motion for summary judgment under Federal Rule of Civil Procedure 56(a) is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment–Defendant– "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the record that] demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the plaintiff meets this initial burden, the burden shifts to the defendant to demonstrate with admissible evidence that genuine issues of material fact remain and preclude summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Any inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Under Local Rules 56-2 and 56-3, material issues of fact must be identified in the non-moving party's "Statement of Genuine Issues" and supported by "declaration or other written evidence." *See also Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 779 (9th Cir. 2010) ("Federal Rule of Civil Procedure 56(e)(2) requires a party to 'set out specific facts showing a genuine issue for trial.'"). If the non-moving

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

party fails to identify the triable issues of fact, the court may treat the moving party's evidence as uncontroverted, if the facts are "adequately supported" by the moving party. Local Rule 56-3; *see also Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 398 n.14 (1986) ("[I]t is not [the Court's] task sua sponte to search the record for evidence to support the [parties'] claim[s]."); *Carmen v. San Francisco United Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) ("A lawyer drafting an opposition to a summary judgment motion may easily show a judge, in the opposition, the evidence that the lawyer wants the judge to read. It is absurdly difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for such evidence."). *See also Carrillo v. Cty. of Los Angeles*, No. 2:11-CV-10310, 2012 WL 12850128, at *5 (C.D. Cal. Nov. 14, 2012), *aff'd*, 798 F.3d 1210 (9th Cir. 2015).

### III.      Discussion

Plaintiff brings this action under California state law pursuant to the Court's diversity jurisdiction. 28 U.S.C. § 1332(a)(2). In California, "[l]ibel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. "There are generally two types of libel recognized in California—libel per se and libel per quod. 'A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face.'" *Bartholomew v. YouTube, LLC.*, 225 Cal. Rptr. 3d 917, 923 (Ct. App. 2017) (quoting *MacLeod v. Tribune Publishing Co.*, 343 P.2d 36, 43 (Cal. 1959)). Statements where "a defamatory meaning appears from the language itself without the necessity of explanation or the pleading of extrinsic facts" are considered "libel per se." *MacLeod v. Tribune Publishing Co.*, 343 P.2d 36, 43 (Cal. 1959). Plaintiff has brought his claim as defamation per se because being called a "pedophile" and "child rapist" could be to be considered potentially defamatory "without the necessity of explanatory matter or other extrinsic facts, and/or they impute to Mr. Unsworth criminal conduct." Dkt. 1 ¶¶ 128–32;

Defendant has moved for summary judgment to defeat Plaintiff's claims. Dkt. 58. Defendant advances three essential arguments to support his motion for summary judgment: 1) Plaintiff is a limited purpose public figure, and therefore Plaintiff must prove by clear and convincing evidence that Defendant's statements were made with actual malice, 2) Defendant's Tweets do not constitute

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
| Title | *Vernon Unsworth v. Elon Musk* | | |

defamation, and 3) Defendant's Email was not published with actual malice or reasonably foreseeable to be republished in the BuzzFeed Article so as to constitute defamation. Dkt. 58 at 2. We address each argument in turn.

    a. **Limited Purpose Public Figure**

    The parties agree that this Court must first answer the threshold question of whether Plaintiff is a "limited-purpose public figure." Dkt. 58 at 11; Dkt. 75 at 13. In a defamation case, whether the Plaintiff is a limited-purpose public figure is a legal determination to be made by the trial court. *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 585 (D.C. Cir. 2016) ("*Jankovic*") ("Whether [Plaintiff] is a limited-purpose public figure or is a private figure is a matter of law for the court to decide.") (internal quotation marks omitted). There is no dispute that Plaintiff "is not an all-purpose public figure," but this Court must "examine the nature and extent of [Plaintiff's] 'participation in the particular controversy giving rise to the defamation' to determine whether [Plaintiff] is a public figure for the limited purposes of a defamation claim . . . ." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 266 (9th Cir. 2013) ("*Makaeff*") (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974)). "Moreover, the limited public figure analysis is not a matter of state substantive law, but rather a pure constitutional question." *Id.* at 270. As the moving party, Defendant bears the burden of showing Plaintiff is a limited-purpose public figure. *D.A.R.E Am. v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1276 (C.D. Cal. 2000) ("the burden is on the moving party to demonstrate that it is entitled to summary judgment").

    In a defamation case, once a plaintiff is deemed a limited-purpose public figure, "to prevail on its defamation claim [Plaintiff] must establish that [Defendant] made her statements with 'actual malice,' i.e., knowledge of their falsity or reckless disregard of their truth." *Id.* at 270 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 331–32 (1974)). "To demonstrate reckless disregard of the truth," Plaintiff must show by "clear and convincing evidence" that Defendant "entertained serious doubts as to the truth" of his statements. *Id.* (internal quotation marks omitted).

    To determine if Plaintiff is a limited-purpose public figure, "we consider whether (i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution." *Id.* at 266. The

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
| Title | *Vernon Unsworth v. Elon Musk* | | |

Court finds that Plaintiff satisfies prongs (i) and (iii) of the limited-purpose public figure test but fails prong (ii) because Defendant's statements were not related to Plaintiff's participation in the controversy. In the interest of efficiency, we analyze prongs (i) and (iii) before proceeding to prong (ii).

    i. **Public Controversy**

In the Ninth Circuit, "a public controversy 'must be a real dispute, the outcome of which affects the general public or some segment of it.'" *Makaeff*, 715 F.3d at 270 (citing *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980)). Although it is not for this Court to "question the legitimacy of the public controversy," *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1297 (D.C. Cir. 1980)) ("*Waldbaum*"), not every subject that might draw public attention will have an impact on the public. *See Time, Inc. v. Firestone*, 424 U.S. 448, 454 (1976) ("[d]issolution of a marriage through judicial proceedings is not the sort of 'public controversy' referred to in *Gertz*, even though the marital difficulties of extremely wealthy individuals may be of interest to some portion of the reading public"); *see also Partington v. Bugliosi*, 56 F.3d 1147, 1159–60 (9th Cir. 1995) ("while the divorce of a socialite does not in itself constitute[] a matter of public controversy . . . controversial trials that raise questions concerning the fairness of the justice system clearly do.") (internal citation omitted). There was indisputably a public controversy over the Rescue—it received wall-to-wall media attention throughout 2018 (even after the rescue was completed) and involved the entire Thai government and aid from several other nations including the United States. Dkt. 58 at 12–13. This is precisely the sort of public controversy anticipated by the limited-purpose public figure doctrine—where "the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the public formulate some judgment." *Walbaum*, 627 F.2d at 1297.

Plaintiff claims the controversy surrounding the Rescue had ended by the time Defendant issued his Tweets, but, if Plaintiff was indeed a limited-purpose public figure, generally "the passage of time does not alter an individual's status as a limited purpose public figure" for that specific controversy. *Partington*, 56 F.3d at 1152 n.8. Even if the controversy surrounding the Rescue had subsided, "[w]hen defining the relevant controversy, a court may find that there are multiple potential controversies, and it is often true that 'a narrow controversy may be a phase of another, broader one.'" *Jankovic*, 822 F.3d at 586 (quoting *Walbaum*, 627 F.2d at 1297). In this case the reverse is true—from the broader initial public controversy over the Rescue of the Children, a narrower controversy arose over the viability of

                                                                                                                                                                                                                                               :

Initials of Preparer

                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

the Subs. If Plaintiff did not create this controversy, he played a significant role in bringing the question to forefront of public debate.

In the CNN Interview, Plaintiff explicitly questioned the viability of the Sub, saying they "had absolutely no chance of working . . . wouldn't have gone round any corners or round any obstacles . . . and wouldn't have made the first fifty meters into the cave." Dkt. 58 at 5. Defendant cites to seven international news articles discussing the Rescue, all of which discuss Plaintiff by name and one of which discusses the current suit. Dkt. 62 at Ex. 3–8, 20. Defendant also cites to six additional news articles discussing the Rescue and the viability of the Subs. Dkt. 62 at Ex. 14–19. Finally, the BuzzFeed Articles itself discuss the Rescue, the Subs, and Defendant's allegedly defamatory statements. Dkt. 62 at Ex. 26. The record clearly shows an active public controversy over both the Rescue and the viability of the Subs.

In the CNN Interview, Plaintiff also stated that Defendant's participation in the Rescue was "just a PR stunt." Dkt. 58 at 5. Defendant argues that this creates a public controversy over Defendant's motivation for participating in the Rescue. Dkt. 58 at 15.[2] The record does not support a finding that there was public controversy about Defendant's motivations—of the thirteen articles (excluding the BuzzFeed Article) Defendant cites to in his motion for summary judgment, only two even mention Defendant's motivation for participation in the Rescue. *See* Dkt. 62 at Ex. 16, 17. But whether a matter is a public controversy is not determined solely by the number of articles published.[3] The most important question is whether the controversy was "a real dispute, the outcome of which affects the general public or some segment of it." *Makaeff*, 715 F.3d at 267.

Defendants argues that his motivation was a public controversy because it had some bearing on whether Defendant was willing to "endanger the lives of children for illegitimate personal needs." Dkt.

---

[2] Discussion of Defendant's "motivation" here is separate from the discussion of Plaintiff's "motive" under the germaneness prong, *infra* Part III.a.iii.2. Under "public controversy" prong, the analysis is focused on whether Defendant's motivation in providing the Subs was a public controversy in its own right. *Makaeff*, 715 F.3d at 267.

[3] Although, from the multitudinous articles provided by Defendant on the Rescue, it is worth noting that Defendant has only produced two that even mention Defendant's motivation as an issue worth considering. *See* Dkt. 62, Exh. 17–18. In both instances, Defendant's motivation is explicitly tied to the question of whether or not the Subs would have worked in the Rescue.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
|---|---|---|---|

| Title | *Vernon Unsworth v. Elon Musk* | | |
|---|---|---|---|

92 at 8. But that is really just another way of questioning if the Subs were fit for use in the Rescue. Defendant has not shown that discussions about his *motivation*, apart from the question about the viability of the Subs, had any effect on the general public. Even assuming the public is generally interested in Defendant's motivations (as a famous entrepreneur), and further assuming Plaintiff sparked that interest by calling the Subs a "PR stunt," questions about Defendant's motivation would not rise to the level of a "public controversy" under *Makaeff* because resolution of the question would have no impact on any portion of the general public. 715 F.3d at 267. The "public controversy must be more than merely newsworthy." *Silvester v. Am. Broad. Companies, Inc.*, 839 F.2d 1491, 1494 (11th Cir. 1988). Questions about Defendant's motivation would not have "ramifications . . . felt by persons who are not direct participants," so Defendant has failed to demonstrate there was a genuine public controversy around his motivations for participating in the Rescue. *Waldbaum*, 627 F.2d at 1296.

Based on this record, it is clear that a public controversy did exist, both at the time of the Tweets and the Email, but that controversy is limited to the subject of the Rescue and the viability of the Subs. Having identified two public controversies, for Plaintiff to be a limited-purpose public figure, the Plaintiff must have voluntarily injected himself into those public discussions.

### ii. **Plaintiff Injected Himself into the Controversy**

When "an individual voluntarily injects himself or is drawn into a particular public controversy," he "thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). "Under *Gertz*, [Plaintiff] must have 'thrust [itself] to the forefront' of this particular controversy 'in order to influence the resolution of the issues involved.'" *Makaeff*, 715 F.3d at 267. Plaintiff easily satisfies the third prong of the limited-public figure test regarding the public controversies of the Rescue and the Subs. After rising to international prominence through numerous new reports, Plaintiff voluntarily appeared before millions of viewers in the CNN Interview and directly criticized the Subs. Dkt. 1 ¶ 70.

There is no question that Plaintiff did more than simply "respond[] to press inquiries or attempt[] to reply to comments on oneself through the media . . . ." *Waldbaum*, 627 F.2d at 1298 n.31. Even if we assume (despite the record) that Plaintiff was not actively seeking to capitalize on media appearances, "[u]nless he rejects any role in the debate, [Plaintiff] has 'invited comment' relating to the issue at

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
| Title | *Vernon Unsworth v. Elon Musk* | | |

hand." *Waldbaum*, 627 F.2d at 1298. When Plaintiff attacked the viability of the Subs in the CNN Interview, he presented himself as an expert on the Rescue, and his comments show he was attempting to influence the public debate surrounding that controversy.[4] Dkt. 1 ¶ 70. Plaintiff situated himself "as a fulcrum to create public discussion" around how the Rescue was conducted and if the Subs were fit for their intended purpose. *Jankovick*, 822 F.3d at 588 (internal quotation marks omitted). As such, Plaintiff satisfies the third prong of the limited-purpose public figure test.

### iii. Germaneness

For Plaintiff to be a limited-purpose public figure, Defendant's allegedly defamatory statements must also "be related to the plaintiff's participation in the controversy . . . ." *Makaeff*, 715 F.3d at 267. Otherwise stated, "the alleged defamation must have been germane to the plaintiff's participation in the controversy." *Waldbaum*, 627 F.2d at 1298. Comments "'wholly unrelated to the controversy' are not protected." *Jannkovic v. Int'l Crisis Grp.*, 822 F.3d 576, 589 (D.C. Cir. 2016) (quoting *Waldbaum*, 672 F.2d at 1298) ("*Jankovic*"). Significantly, "statements, including those highlighting a plaintiff's 'talents, education, experience, and motives,' can be germane." *Id.*

#### 1. Relationship to Plaintiff's Role in the Controversy

In *Makaeff*, the Ninth Circuit concluded the Defendant's comments were germane because "there [was] a direct relationship between Trump University's promotional messages and Makaeff's allegedly defamatory statements, which reflects Trump University's pre-existing involvement in this particular matter of public concern and controversy." *Makaeff*, 715 F.3d at 269 (internal quotation marks omitted). Lower courts in this circuit have also been able to summarily dispose of the germaneness inquiry—in most cases the relationship between the defamation and the public controversy is either obvious or unchallenged. *See, e.g.*, *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1017 (N.D. Cal. 2017) ("[t]his Court has little difficulty concluding that [Plaintiff's] record . . . is a public controversy generating large scale demonstrations and signed petitions, and that the alleged defamation

---

[4] Even if Defendant's motivation for participating in the Rescue could be considered a public controversy, it is not the controversy which Plaintiff "was seeking to play a major role in determining the outcome of." *Waldbaum*, 627 F.2d at 1298.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
| Title | *Vernon Unsworth v. Elon Musk* | | |

is related to this public controversy."); *Hu & Assocs., LLC v. New Life Senior Wellness Ctr., LLC*, No. LA-CV-16-03078, 2017 WL 10591754, at *16 (C.D. Cal. July 7, 2017) ("Plaintiffs do not challenge the argument that the speech at issue is related to an issue of public controversy."); *Heller v. NBCUniversal, Inc.*, No. CV-15-09631, 2016 WL 6573985, at *4 (C.D. Cal. Mar. 30, 2016) ("[s]eeing that the alleged defamation relates directly to Plaintiff's central role in this controversy, the Court has no difficulty concluding that he is a limited purpose public figure subject to the actual malice requirement."); *Silverstein v. E360Insight, LLC*, No. CV-07-2835, 2008 WL 1995217, at *6 (C.D. Cal. May 5, 2008) ("the alleged defamation must have been germane to the plaintiff's participation in the controversy.").

For Defendant's comments to relate to Plaintiff's participation in the public controversies, there must be some relationship between pedophilia and the Recue or the Subs—there is simply no credible connection here. The limited-purpose public figure doctrine exists because "[t]hose who attempt to affect the result of a particular controversy have assumed the risk that the press, in covering the controversy, will examine the major participants with a critical eye." *Waldbaum*, 627 F.2d at 1298. But this eye only reaches "the issues at hand." *Id.* To allow criticism into every aspect of a plaintiff's life simply because he chose to get involved in a limited issue would render him an all-purpose public figure—effectively merging the limited-purpose public figure doctrine.

        2. **Motive**

Defendant claims that his statements about Plaintiff were related to the public controversies because calling Plaintiff a pedophile was the "mirror image" of Plaintiff calling the Subs a "PR stunt." Dkt. 58 at 14. Looking past the obvious incongruity of the two statements, the "mirror image" theory is also unsupported by precedent. The "mirror image" theory is contrary to the underlying principles of the limited-purpose public figure doctrine. *See Waldbaum*, 627 F.2d at 1298 n.32 ("The limited public figure by definition is playing or attempting to play a major role in influencing *one aspect* of society.") (emphasis added). Even if Defendant's motivation was a public controversy, there is simply no relationship between Defendant's motivation to create the Subs and Plaintiff's (nonexistent) motive to abuse children.

Next, Defendant argues that he was allowed to attack Plaintiff's "credibility, character, and motivations." Dkt. 58 at 15. Defendant bases his argument primarily on language from the D.C.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

Circuit's opinion in *Waldbaum*, which states: Plaintiff's "talents, education, experience, and motives could have been relevant to the public's decision whether to listen to him." *Waldbaum*, 627 F.2d at 1298. The D.C. Circuit in *Jankovick* adopted this language, holding: "statements, including those highlighting a plaintiff's 'talents, education, experience, and motives,' can be germane." *Jankovic*, 822 F.3d at 589.[5] On closer reading, *Waldbaum* and *Jankovick* are supportive of Plaintiff's assertion that the alleged defamation is "wholly unrelated" to the public controversy. *Waldbaum*, 627 F.2d at 1289.

In *Waldbaum*, the court referred to "motive" specifically in the context of the media's ability to inquire into Plaintiff's motive for participating in the controversy. *Waldbaum*, 627 F.2d at 1294. Because limited-purpose public figures are voluntarily attempting to influence public debate, the *Waldbaum* court reasoned that those persons should not be immune from criticism as to *why* they entered the controversy. *Id.* In *Waldbaum*, the plaintiff's role as a president of a well-publicized food cooperative, as well as "the mover and shaper of many of the cooperative's controversial actions," led the court to believe the plaintiff had voluntarily injected himself into "the public controversies concerning unit pricing, open dating, the cooperative form of business, and other issues." *Id.* The media was therefore justified in criticizing Waldbaum's tenure at the cooperative. *Id.* Here, Defendant's statements would not be germane because allegations of pedophilia have no relationship to Plaintiff's participation in the Rescue or criticism of the Defendant. Defendant cannot credibly argue that Plaintiff's participation in the Rescue was at all motivated by a desire to engage in pedophilia.

*Jankovick* also supports Plaintiff's argument. The *Jankovick* court emphasized that the alleged defamation must relate to plaintiff's role in the public controversy, holding:

> The purpose of the germaneness inquiry is to ensure that the allegedly defamatory statement—whether true or not—is related to the *plaintiff's role* in the relevant public controversy. This ensures that publishers cannot use an individual's prominence in one area of public life to justify publishing negligent falsehoods about an *unrelated aspect* of the plaintiff's life.

---

[5] Although not binding on this Court, portions of *Waldbaum* were adopted in *Makaeoff*, 715 F.3d at 266–67. Because *Jankovick* directly followed *Waldbaum*, this Court considers it persuasive in interpreting *Waldbaum*.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

*Jankovick*, 822 F.3d at 589 (emphasis added). In *Jankovick*, the defamation was germane only because "[l]inking [Plaintiff] to Milosevic would be relevant to understanding [Plaintiff's] role and *why* he wanted to be involved in the reform effort . . . . The germaneness test [was] met because the defamatory statement relate[d] to the individual's role in the public controversy." *Jankovic*, 822 F.3d at 589 (emphasis added). *Jankovick* means a plaintiff's motive is relevant when it helps the public understand *why* the plaintiff has chosen to inject himself into the public controversy. As discussed above, there is absolutely no relationship between any aspect of the Rescue or Subs and alleged pedophilia. Pedophilia therefore bears no credible relationship to Plaintiff's role in the controversy. Even if Defendant's motivation was a public controversy, it does not give Defendant permission to attack the Plaintiff on a wholly unrelated subject.

### 3. Credibility

Defendant also argues that, if Plaintiff were a pedophile, Plaintiff would be less credible as an authority on how best to affect the Rescue of the Children—it would be "relevant to the public's decision whether to listen to him." *Waldbaum*, 627 F.2d at 1298. But this argument is also unavailing because pedophilia has no bearing on Plaintiff's credibility regarding Plaintiff's participation in the rescue.

In California, similar allegations of child abuse were deemed unrelated to a popular minister's public role "as an expert on the Bible and its teachings." *Grenier v. Taylor*, 183 Cal. Rptr. 3d 867, 878 (Ct. App. 2015). Even though allegations of sexual abuse would surely have undermined the plaintiff's moral authority as a religious leader, the California Court of Appeals concluded "private conduct . . . such as child abuse" was not germane because the plaintiff "did not thrust himself into a public controversy or dispute regarding child abuse . . . ." *Id.* at 878. The parallels to *Grenier* are persuasive. Here, Plaintiff never set himself out as an expert on child abuse or any aspect of sexuality. In every instance, including when Plaintiff called Defendant's Subs a "PR stunt," Plaintiff's role in the Rescue was limited to his expertise as a caver. Like in *Grenier*, the allegations against Plaintiff here are shocking, but they are similarly irrelevant to Plaintiff's participation in the public controversy. There could hardly be a topic less-related to Plaintiff's expertise as a caver than accusations of pedophilia.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

Pedophilia is also unrelated to Plaintiff's credibility generally. Federal Rule of Evidence ("FRE") 608 provides guidance on which types of conduct are relevant to a witness's "character for truthfulness or untruthfulness . . . ." Fed. R. Evid. 608(a). FRE 608(b) allows the introduction of "specific instances" of a witness's conduct on cross-examination "if they are probative of the character for truthfulness or untruthfulness." *Id.* at 609(b). In interpreting FRE 608, courts have narrowly interpreted which types of misconduct are probative of a witness's credibility, and they have generally excluded instances of sexual behavior as probative of credibility. *See, e.g.*, *United States v. Heard*, 709 F.3d 413, 433 (5th Cir. 2013) ("Rule 608(b) authorizes inquiry only into instances of misconduct that are clearly probative of truthfulness or untruthfulness, such as perjury, fraud, swindling, forgery, bribery, and embezzlement."); *United States v. Bentley*, 706 F.2d 1498, 1510 (8th Cir. 1983) ("We cannot say the activity in question here—a drug operation—is necessarily indicative of a lack of truthfulness under the standard imposed by rule 608."). *See also*, state court cases interpreting FRE 608: *State v. Stanley*, 110 Haw. 116, 126, 129 P.3d 1144, 1154 (Ct. App. 2005) **(**"Unlike evidence of a witness's past sexual conduct, improper giving of a gift, or prior violent incidents, evidence of a witness's forgery has been held to be 'probative of untruthfulness.'"); *State v. Moses*, 143 N.H. 461, 464, 726 A.2d 250, 252 (1999) ("Although illegal and immoral, 'adultery do[es] not relate directly to truthfulness.'" (quoting 4 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* § 608.12[4][b][i] (J. McLaughlin ed., 2d ed.1998)).

Only when the case turns on sexual misconduct does the witness's alleged previous sexual activity become relevant—and even then, courts usually limit the evidence to instances proved by criminal proceedings under FRE 609. *See U.S.A. v. Boyajian,* No. CR09-933(A)-CAS, 2016 WL 225724, at *12 (C.D. Cal. Jan. 19, 2016) (finding a criminal defendant's previous sexual misconduct conviction admissible in his current sex abuse case and collecting cases from various circuits where sexual misconduct convictions were deemed admissible under FRE 609).

There is no relationship between the established public controversies, Plaintiff's role in the controversies, and Defendant's allegedly defamatory statements. Because Defendant's comments were not germane to Plaintiff's role in the public controversy, Plaintiff fails the second prong of the limited-purpose public figure test established in *Makaeff*. Plaintiff is consequently a private person and may prove his defamation claims by the negligence standard established by California law. *Brown v. Kelly Broad. Co.,* 48 Cal. 3d 711, 747 (Cal. 1989) ("[a] private-figure plaintiff must prove at least negligence to recover any damages"); *see also Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 353–54 (Blackmun, J.,

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
| Title | Vernon Unsworth v. Elon Musk | | |

concurring) ("in that the Court now conditions a libel action by a private person upon a showing of negligence, as contrasted with a showing of willful or reckless disregard, I am willing to join, and do join, the Court's opinion").

    b.  **Tweets Constituting Defamation**

"To prevail on a claim for libel, plaintiff must show four elements: that defendants published the statements; the statements were about plaintiff; that they were false; and that defendants failed to use reasonable care to determine the truth or falsity." *Grewal v. Jammu*, 119 Cal. Rptr. 3d at 835, 846 (2011). The Tweets and Email were undeniably about Plaintiff, and on this record they are undisputedly false. Dkt. 92 at 9–10. This Court previously concluded that a reasonable jury could find Defendant's statements to be defamatory. Dkt. 42 at 13. We likewise acknowledged that "[i]f the [C]ourt concludes the statement could reasonably be construed as either fact or opinion, the issue should be resolved by a jury." *Campanelli v. Regents of Univ. of Cal.*, 51 Cal. Rptr. 2d 891 (Cal. Ct. App. 1996). Defendant's motion to dismiss was consequently denied. Dkt. 42. There has been no evidence on the summary judgment record to disrupt the previous conclusion that a reasonable jury could find Defendant's statements to constitute either fact or opinion.

Defendant argues his Tweets do not constitute defamation because he did not have the subjective intent to call Plaintiff a pedophile. Dkt. 58 at 22. Defendant cites *Good Gov't Grp. of Seal Beach, Inc. v. Superior Court*, 586 P.2d 572, 572 (Cal. 1978) ("*Good Government*") for the proposition that a defendant in a defamation case cannot be liable for making an "ambiguous" statement when he "neither intends the statement to bear a factual meaning nor believes that it will be understood by the reader in that fashion." Essentially, Defendant contends that because this Court already concluded Defendant's statements could be fact or opinion, those statements are ambiguous under *Good Government*. *Id.* Because Defendant intended those statements solely as opinion and "believes that [those statements] will be understood by the reader in that fashion," this Court cannot find defamation liability as a matter of law. *Id.* At oral argument, Defendant maintained that he has presented undisputed evidence, by virtue of his deposition, that he subjectively did not intend to call Plaintiff a pedophile as a statement of fact and that Defendant subjectively believed readers would understand the statement as opinion. Dkt. 19 at 13–17.

                                                                                                                      :

Initials of Preparer                     PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
|---|---|---|---|
| Title | *Vernon Unsworth v. Elon Musk* | | |

In *Good Government*, the California Supreme Court found that if "the defendant honestly and without recklessness believe[d] that [the statements] constitute[d] an opinion or idea," the court could not find defamation liability without creating an impermissible chilling effect on public discourse. *Id.* However, this rule was confined to cases involving actual malice—the court held: "[i]t is clear that honest belief of the defendant is the touchstone of the privilege enunciated in *New York Times* . . . ." *Id.*[6] Without an actual malice requirement, an ambiguous statement must be determined by a jury. *Polygram Records, Inc. v. Superior Court*, 216 Cal. Rptr. 252, 256–57 (Ct. App. 1985) (citing *Arno v. Steward*, 54 Cal. Rptr. 392 (Ct. App. 1966)). Unlike the plaintiff in *Good Government*, the Plaintiff here only needs to prove his case by negligence. *Grewal*, 119 Cal. Rptr. at 846. Although relevant to a determination of malice (for punitive damages) or actual malice (for defamation of a public figure), Defendant's subjective intent is not dispositive in a private defamation claim.

Further, although Defendant has asserted that he honestly believed his statements constituted a non-actionable opinion *and* would be understood by the reader as such, Plaintiff has pointed to Defendant's own subsequent statements, conduct, and testimony to dispute that assertion. Dkt. 75 at 16–23. In defamation claims generally, determinations about the Defendant's knowledge or intent "may be proved by inference, as it would be rare for a defendant to admit" to a culpable state of mind. *Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1085 (9th Cir. 2002). Plaintiff's circumstantial evidence is appropriate to prove actual malice, but also serves to dispute Defendant's deposition testimony about his own subjective state of mind. *See Reader's Digest Assn. v. Superior Court*, 690 P.2d 610, 618 (Cal. 1984) ("evidence of negligence, of motive and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity."); *People v. Barrett*, No. A154164, 2019 WL 2865116, at *2 (Cal. Ct. App. July 3, 2019) (unpublished) (citing *Hasson v. Ford Motor Co.*, 546 P2d 530 (Cal. 1977) *People v. Barrett*, No. A154164, 2019 WL 2865116, at *2 (Cal. Ct. App. July 3, 2019) ("the fact that evidence is 'circumstantial' does not mean that it cannot be 'substantial.'"). Plaintiff has therefore created a genuine dispute over the meaning of Defendant's Tweets, and the question must be resolved by the jury.

---

[6] In *Good Government*, the actual malice standard applied because the defendants' criticism was entirely directed at a public official over a public issue. *Good Government*, 586 P.2d at 572. Even with the much higher bar of "actual malice," the *Good Government* court still found summary judgment inappropriate where "a jury could conclude from this evidence that at least some of the defendants were aware that the words used in the article could be interpreted as defamatory statements of fact . . . ." *Id.*

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-08048-SVW-JC | Date | November 18, 2019 |
| Title | *Vernon Unsworth v. Elon Musk* | | |

    c.  **Email Publication and Republication**

    There can be no dispute that Defendant published his allegedly defamatory statements to Buzzfeed in the Email. Dkt. 58 at 9. Under California law, publication to even a single person is sufficient for defamation liability. *Smith v. Maldonado*, Cal. Rptr. 2d 397, 402 (1999). Plaintiff pleaded this in his complaint. Dkt. 1 ¶¶ 88–95. The question that remains regarding Defendant's initial publication of the Email is whether Defendant used reasonable care to determine the truth or falsity of the alleged defamatory statements before publishing them to Buzzfeed. *Brown v. Kelly Broad. Co.*, P.2d 406, 425 (Cal. 1989) ("We decline to diverge from the near unanimous authority that a private person need prove only negligence (rather than malice) to recover for defamation."). That question is for the jury.

    Defendant is only liable for the Buzzfeed Article, however, if republication of Defendant's statements from the Email was reasonably foreseeable. *See Shively v. Bozanich*, 80 P.3d 676, 683 (2003) ("repetition by a new party of another person's earlier defamatory remark also gives rise to a separate cause of action for defamation against the original defamer, when the repetition was reasonably foreseeable"). Defendant claims he could not reasonably foresee republication of his statements because of his previous experience with reporters and the fact that he wrote "off the record" at the beginning of the Email. Dkt. 58 at 20–21. This may be used as evidence of Defendant's expectation, but it is insufficient for the Court to conclude republication was not reasonably foreseeable as a matter of law. A genuine issue of material fact persists as to the reasonable foreseeability of the republication of the contents of the Email. Summary judgment is therefore inappropriate, and the question must be presented to the jury.

**V.**    **Conclusion**

    For the reasons discussed above, the Court DENIES Defendant's motion for summary judgment. Dkt. 58. The jury trial remains scheduled for December 3, 2019 at 9:00 a.m., with pretrial on November 25, 2019 at 3:00 p.m..

    IT IS SO ORDERED.

|  |  : |
|---|---|
| Initials of Preparer | |
| | PMC |