QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (admitted *pro hac vice*)
  alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
  jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH,<br><br>  Plaintiff,<br><br>  vs.<br><br>ELON MUSK,<br><br>  Defendant. | Case No. 2:18-cv-08048<br><br>Judge: Hon. Stephen V. Wilson<br><br>**DEFENDANT ELON MUSK'S MOTION TO QUASH TRIAL SUBPOENA DUCES TECUM TO ELON MUSK**<br><br>Complaint Filed: September 17, 2018<br>Trial Date: December 3, 2019<br><br>Hearing Date:  November 25, 2019<br>Time:              3:00 p.m.<br>Courtroom:     10A |

PLEASE TAKE NOTICE that on November 25, 2019 at 3:00 p.m. in Courtroom 10A of the above-titled Court, Defendant Elon Musk will move this Court for an order quashing the Subpoena to Appear and Testify at a Trial in a Civil Action, which was served on Mr. Musk on November 12, 2019.

This motion is made pursuant to this Notice of Motion, the concurrently-filed Memorandum of Points and Authorities, the Declaration of Michael Lifrak (and all exhibits thereto), the [Proposed] Orders Granting Mr. Musk's Motion to Compel, the files and records in this action, and any such additional argument or materials as may be submitted to the Court before the time of the decision in this matter.

This motion is made following the conference of counsel pursuant to C.D. Cal. L.R. 7-3, which took place by phone on November 21, 2019.

DATED:  November 21, 2019

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Alex Spiro

Alex Spiro (admitted *pro hac vice*)
*Attorneys for Defendant Elon Musk*

## INTRODUCTION

Plaintiff Vernon Unsworth's trial subpoena duces tecum to Defendant Elon Musk is designed solely to harass Mr. Musk. It seeks production of documents detailing Mr. Musk's finances, including his financial statements, calculations of net worth, income tax returns, income statements, and documents reflecting ownership in real property, credit availability, liquid assets, and shares held in various companies. For several reasons, the Court should not order production of these documents.

First, the subpoena is not a proper *trial* subpoena. If Mr. Unsworth needed this detailed financial information (which he does not, as explained below), he should have sought it during discovery, not at trial.

Second, during discovery, Mr. Unsworth sought information on Mr. Musk's net worth, and Mr. Musk has already provided it, under oath. He testified that his net worth was substantially in excess of $1 billion. Mr. Unsworth thus already has the information he needs.

Third, Mr. Unsworth's justification for the subpoena—that the detailed information sought in the subpoena is relevant to punitive damages—is sophistry. In this lawsuit, in which Mr. Unsworth is seeking "presumed damages," punitive damages are limited to the amount of compensatory damages. There is no amount of compensatory damages that a jury could properly award Mr. Unsworth on his claim, for which any net worth of Mr. Musk in excess of $1 billion would be relevant. Thus, any additional information regarding Mr. Musk's personal finances has no legitimate bearing on the jury's decision on punitive damages, if it awards any at all.

Fourth, the requested information is highly prejudicial and will inflame the jury and cause confusion, given that it is not relevant to any claim or measure of damages.

The Court should quash Mr. Unsworth's attempt to obtain untimely,

irrelevant, and inadmissible discovery from Mr. Musk.

## STATEMENT OF RELEVANT FACTS

### A. Mr. Unsworth's Discovery Requests.

On June 18, 2019, Mr. Unsworth served discovery on Mr. Musk seeking documents and testimony for calculating Mr. Musk's net worth. (Declaration of Michael Lifrak in Support of Motion to Quash ("Lifrak Decl.") Exs. 1, 2.) Mr. Musk objected to the requests on the basis that information regarding personal financial affairs is protected under the California Constitution's right to privacy, and that his precise net worth, or any net worth above $1 billion, is irrelevant in light of the Supreme Court's decision in *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). (Lifrak Decl. Ex. 3.) Nonetheless, Mr. Musk stipulated that his net worth exceeds $1 billion. (Lifrak Decl. Ex. 4.) Mr. Musk also answered questions at his deposition regarding his net worth and stated that it was several times higher. (Lifrak Decl. ¶7.) Mr. Unsworth propounded no further discovery on this topic, nor did he move to compel any further information from Mr. Musk.

### B. Mr. Unsworth's Trial Subpoena.

On November, 12, 2019, Mr. Unsworth served a trial subpoena duces tecum on Mr. Musk. It included ten requests for the production of documents, probing every area of Mr. Musk's finances, including:

1. Financial Statements reflecting Mr. Musk's net worth as of the Trial Date and as of the Subpoena Date.

2. Financial Statements reflecting the net worth of Excession, LLC as of the Trial Date and as of the Subpoena Date.

3. Documents sufficient to enable calculation of Mr. Musk's net worth as of the Trial Date and as of the Subpoena Date.

4. The most recent federal income tax returns of Mr. Musk and of Excession, LLC as of December 3, 2019.

5. Documents sufficient to calculate the amount of income Mr. Musk received, and the amount of his expenses, during the year prior to the Trial Date.

6. Documents sufficient to identify all available liquid assets (including cash) of Mr. Musk and any Affiliated Entity as of the Trial Date and as of the Subpoena Date.

7. Documents sufficient to identify all real property Mr. Musk or any Affiliated Entity owns, and all mortgages on that real property, as of the Trial Date and as of the Subpoena Date.

8. Documents sufficient to identify the total amount of shares of Tesla, Inc. and SpaceX owned by Mr. Musk or any Affiliated Entity, and all pledges of all or any portion of those shares, as of the Trial Date and as of the Subpoena Date.

9. Documents sufficient to identify all amounts and sources of credit available to Mr. Musk or any Affiliated Entity as of the Trial Date and as of the Subpoena Date.

10. Documents reflecting Mr. Musk's financial ability to pay any judgment rendered against him in this case.

(Lifrak Decl. Ex. 5.)

The subpoena comes two months after the close of the discovery on September 13, 2019, and seeks nine categories of new information that Mr. Unsworth never before requested. The parties have met and conferred, and Plaintiff refuses to withdraw the subpoena.

## I. THE COURT SHOULD QUASH THE TRIAL SUBPOENA.

### A. The Trial Subpoena is Beyond the Scope of FRCP 45.

Trial subpoenas simply cannot be used to conduct discovery. *Puritan Inv. Corp. v. ASLL Corp.*, 1997 WL 793569, at *1 (E.D. Pa. Dec. 9, 1997) ("Trial subpoenas may not be used, however, as means to engage in discovery after the discovery deadline has passed."); *nSight, Inc. v. PeopleSoft, Inc.*, 2006 WL 988807, at *2-3 (N.D. Cal. Apr. 13, 2006) (trial subpoenas can only be used in "narrow

circumstances" and cannot be used to "obtain discovery beyond the discovery period."); *Hatcher v. Precoat Metals*, 271 F.R.D. 674, 675 (N.D. Ala. 2010) (quashing trial subpoena seeking categories of documents that should have been sought in discovery); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 562 (S.D. Cal. 1999) (trial subpoena was "an improper attempt to obtain discovery after the cut-off date"); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 354-355 (6th Cir. 1984) (affirming district court's decision to quash subpoena issued on the eve of trial for new documents).

But "discovery" is exactly what Mr. Unsworth is seeking here. He did not request these documents in discovery, nor would he have likely been entitled to them, and it is too late now. As described above, Mr. Musk has already provided information regarding his net worth. If Mr. Unsworth wanted information about the further details of Mr. Musk's financial condition, he should have sought it during discovery.

### B. The Subpoena Seeks Irrelevant Information.

#### 1. The Punitive Damages Available to Mr. Unsworth Must Be Proportional to any Compensatory Damages He Receives.

Mr. Unsworth's punitive damages in this case—if awarded at all—will be capped at a one–to–one (or similar) ratio to any award of compensatory damages. In *State Farm Mut. Auto. Ins. Co. v. Campbell*, the Supreme Court noted that compensatory damages often contain a "punitive element" and stated that where "compensatory damages are substantial, then a lesser ratio, ***perhaps only equal to compensatory damages***, can reach the outermost limit of the due process guarantee." 538 U.S. at 425; *see also id.* at 429 ("[T]he substantial compensatory damages awarded (a portion of which contained a punitive element), likely would justify a punitive damages award at or near the amount of compensatory damages."). In applying the *State Farm* analysis to awards of punitive damages in defamation cases, California Courts and the Ninth Circuit have capped punitive

damages at a one–to–one ratio to compensatory damages.  *See*, *e.g.*, *Dawe v. Corr. USA*, 506 F. App'x 657, 660 (9th Cir. 2013); *Peterson v. Stewart*, 2012 WL 541521, at *13 (Cal. Ct. App. Feb. 17, 2012).

In *Peterson*, the California Court of Appeal held that, in a defamation action, compensatory damages in the form of "assumed" damages  "already contain[] a punitive element" and that "in such circumstances, a *lower ratio* of punitive to compensatory damages is warranted."  The court affirmed the award of punitive damages because the ratio of punitive to compensatory damages was "well below the 1-1 ratio that may constitute the 'outermost limit of the due process guarantee' in such circumstances."  *Peterson*, 2012 WL 541521, at *13.

### 2. Because Punitive Damages are Capped, Additional Evidence of Mr. Musk's Financial Situation is Irrelevant.

Mr. Musk has already stipulated to a value of his net worth for the purpose of calculating punitive damages, and has provided further testimony on the topic under oath.  (Lifrak Decl. ¶7, Ex. 4.)  To the extent the jury is permitted to consider evidence of Mr. Musk's net worth in its determination of punitive damages, it will be able to do so.

However, given the cap on potential punitive damages, additional and detailed evidence of Mr. Musk's financial status (including everything sought by Mr. Unsworth's trial subpoena) is irrelevant.  If the jury intends to punish Mr. Musk for any statements he has made, it can do so up to Constitutional limits of due process, and no more.  *See State Farm*, 538 U.S. at 425.  Accordingly, the numerous categories of new documents requested probing every aspect of Mr. Musk's and his companies' financial situation are irrelevant and inadmissible.  *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); *see also Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*, 2013 WL 2182864, at *7 (E.D. Cal. May 20, 2013) (excluding evidence of parent company's financial status as irrelevant ).

### C. The Subpoena Seeks Information that is More Prejudicial than Probative.

The extensive information Mr. Unsworth now seeks regarding Mr. Musk's financial situation has no probative value here. But the potential for prejudice is high. *See Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1178-80 (11th Cir. 2002) ("The general rule is that, during trial, no reference should be made to the wealth or poverty of a party, nor should the financial status of one party be contrasted with the other's." (quotation marks omitted) ); *Finjan, Inc. v. Sophos, Inc.*, 2016 WL 4560071, at *14-15 (N.D. Cal. Aug. 22, 2016) (excluding "evidence about the wealth of Sophos's founders or employees," including their compensation despite the fact that they were testifying witnesses, as "far more likely to be prejudicial than to be probative"); *see also Fresno Rock Taco*, 2013 WL 2182864, at *7 ("[U]nder the Rule 403 balancing test, any probative value attributable to the financial statement is significantly outweighed by the danger of unfair prejudice in that it could entice a jury to award punitive damages based on the wealth of Fireman's Fund's group of companies and not that of Defendant.").

Such extensive information regarding Mr. Musk's financial situation will also mislead the jury and confuse the issues. Among other things, if the jury hears such evidence, it may believe that it is entitled to award an amount up to Mr. Musk's net worth, in punitive damages, which it is not. Because the financial information Mr. Unsworth seeks is irrelevant and highly prejudicial, it is inadmissible at trial. As such, the Court should quash the trial subpoena duces tecum to Mr. Musk.

### CONCLUSION

For the foregoing reasons, the Court should grant the motion quash the trial subpoena to Elon Musk.

| | | |
|---|---|---|
| 1 | DATED: November 21, 2019 | Respectfully submitted, |
| 2 | | QUINN EMANUEL URQUHART |
| 3 | | & SULLIVAN, LLP |
| 4 | | By    /s/ Alex Spiro |
| 5 | | Alex Spiro |
| | | *Attorneys for Defendant Elon Musk* |