L. LIN WOOD, P.C.
L. Lin Wood (*pro hac vice*)
lwood@linwoodlaw.com
Nicole J. Wade (*pro hac vice*)
nwade@linwoodlaw.com
Jonathan D. Grunberg (*pro hac vice*)
jgrunberg@linwoodlaw.com
G. Taylor Wilson (*pro hac vice*)
twilson@linwoodlaw.com
1180 West Peachtree Street, Ste. 2040
Atlanta, Georgia 30309
404-891-1402; 404-506-9111 (fax)

| WEISBART SPRINGER HAYES, LLP | CHATHAM LAW GROUP |
|---|---|
| Matt C. Wood (*pro hac vice*) | Robert Christopher Chatham |
| mwood@wshllp.com | chris@chathamfirm.com |
| 212 Lavaca Street, Ste. 200 | CA State Bar No. 240972 |
| Austin, TX 78701 | 3109 W. Temple St. |
| 512-652-5780 | Los Angeles, CA 90026 |
| 512-682-2074 (fax) | 213-277-1800 |

*Attorneys for Plaintiff Vernon UNSWORTH*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH,<br><br>        Plaintiff,<br><br>v.<br><br>ELON MUSK,<br><br>        Defendant. | Case No. 2:18-cv-08048-SVW (JCx)<br>Judge: Hon. Stephen V. Wilson<br><br>**PLAINTIFF VERNON UNSWORTH'S TRIAL BRIEF**<br><br>Pretrial Conference: Nov. 26, 2019<br>Hearing Date:      Nov. 26, 2019<br>Time:              10:00 a.m.<br>Courtroom:         10A |

**INTRODUCTION**

Plaintiff Vernon Unsworth submits this trial brief to address issues raised during the pretrial conference on November 25, 2019.

As an initial matter, Unsworth notes that Musk contended repeatedly during the pretrial conference that Unsworth has "changed" his case – that is inaccurate. Unsworth's Complaint pled a single cause of action for defamation, and Unsworth has not "abandoned" or changed that cause of action. The case that Unsworth plans to present to the jury is the same case that this Court considered on Musk's motion to dismiss and on Musk's motion for summary judgment. There is no surprise, and there has been no abandonment of claims.

**I.   MUSK'S MANUFACTURED SOLE DEFENSE TO LIABILITY**

If Musk takes the stand and tries again to manufacture a defense to the indefensible,[1] then this Court must not allow him to go unpunished. Whether a witness has a net worth of $20 Billion or $20, perjury in federal court cannot be tolerated or go unpunished. If, for the reasons set forth herein, Musk comes into this courtroom and repeats for a third time his provably false testimony about his use of the phrase "pedo guy,"[2] it will be his third strike and his defense on liability should

---

[1] Musk's deposition and summary judgment declaration before this Court are littered with claims that he did not mean "pedophile" when he stated "pedo guy" and "bet ya a signed dollar it's true" in response to a tweet stating he called Unsworth a "pedophile" and a "pedo." *Cf.* Musk Dep. 52:10-12, 63:22-24, 100:13, 102:15-17, 198:8-10; Dkt. 60 (Musk Declaration at ¶ 28 ("'Pedo guy' was a common insult used in South Africa when I was growing up. It is synonymous with 'creepy old man' and is used to insult a person's appearance and demeanor, not accuse a person's demeanor and appearance."

[2] In Unsworth's Response to Defendant's Motion in Limine #3 to Exclude Evidence of Purported Press Leaks, Musk's counsel on his behalf filed a false, malicious, and baseless fraud report with a police agency in the UK on September 25, 2019, accusing Unsworth's UK counsel of fraud without a scintilla of evidence, accusing Unsworth and his counsel of entrapping Musk into hiring his private investigator, James Howard, and apparently of then goading Musk into

1   be thrown out of this Court and Musk should be referred to the U.S. Department of

2   Justice for criminal prosecution for perjury and obstruction of justice.

3   **II.    LIABILITY**

4        Based on the representations during the pretrial conference by Musk's counsel

5   as to what Musk will present at trial, the *in judicio* admissions made by Musk's

6   counsel, and Musk's own July 15, 2018 tweets, there is no issue on liability for the

7   jury to determine.  Although Musk has attempted to manufacture an issue of fact on

8   whether his tweet was one of fact or opinion, he answered that question

9   unequivocally on July 15, 2018 in his fourth tweet when he responded to a tweet

10  saying that Musk had accused Unsworth of being "a pedophile" by saying "Bet ya

11  it's a signed dollar it's true."  (A true and correct copy of the July 15, 2018 thread is

12  attached hereto as Exhibit A).  There can be no defense based on a claim by Musk

13  that he did not intend "pedo guy" to mean "pedophile" on July 15, 2018.   A

14  reasonable juror can only find from the context of Musk's tweets that "pedo guy"

15  was a factual assertion of pedophilia.

16       Indeed, following the July 15, 2018 tweet, on August 28, 2018 Musk

17  responded to a tweet asking him "one other thing, elon. your dedication to facts and

18  truth would have been wonderful when applied to that time that you called someone

19  a pedo." Musk's response was "You don't think it's strange he hasn't sued me?"  It

20  was to this tweet by Musk that Unsworth's counsel replied with a copy of his

21  retraction demand.  Further, Musk had already hired a private investigator to prove

22  his made-up accusation of pedophilia was, in fact, true, and urged others to

23  investigate via Twitter and e-mail to BuzzFeed.

24       After the November 25 hearing, it became crystal clear that all of the elements

25  to establish liability for defamation have been satisfied.  The July 15, 2018 tweets

26  

27     accusing Unsworth of being a child rapist.  A fraudulent contention by a party

28     must be sanctioned. [*See* Dkt. 105 at 1].

were published as a matter of law.  Republication of tweets was reasonably foreseeable as a matter of law, as was also acknowledged by counsel at the pretrial hearing.  Falsity of the accusation of pedophilia is not contested.  Musk has admitted that he disregarded truth or falsity when he published the accusation, and therefore negligence (at a minimum) is established as a matter of law, entitling Unsworth to actual damages.

Because negligence is established by Musk's admissions, the jury must determine only whether Musk acted recklessly in assessing presumed and punitive damages.  If Musk is willing to stipulate or make an *in judicio* admission that he acted with recklessness and with the requisite common law malice, then Unsworth may consider dispensing with certain of the evidence that he seeks to admit.  Absent such a stipulation or admission, however, Unsworth has the burden of proving actual malice and common law malice by clear and convincing evidence. Therefore, Unsworth must be entitled to introduce all evidence that he can muster to establish both actual malice and common law malice by that higher standard.

## III.   MUSK'S MOTION TO EXCLUDE BUZZFEED EMAILS

Unsworth's evidence establishing actual malice and common law malice includes actions taken by Musk following his July 15, 2018 tweets. Pursuant to the Court's request, Unsworth is forwarding separately to the Court the case law that establishes clearly that Unsworth has the right to introduce evidence of events that occurred *after* the defamatory statements were made to establish actual malice and/or common law malice.  Highlights of some of those cases are as follows, including this quote from the United States Supreme Court:

> The existence of actual malice may be shown in many ways. As a general rule, ***any competent evidence, either direct or circumstantial, can be resorted to***, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, ***subsequent statements of the***

1       ***defendant***, circumstances indicating the existence of rivalry, ill will, or

2       hostility between the parties, facts tending to show a reckless disregard

3       of the plaintiff's rights….

4  *Herbert v. Lando*, 441 U.S. 153, 164, 99 S. Ct. 1635, 1643, 60 L. Ed. 2d 115 (1979)

5  (citations omitted) (emphasis added) (also citing *Scott v. Times Mirror*, 181 Cal. 345

6  (1919));

7       Republication of a statement after the defendant has been notified that

8       the plaintiff contends that it is false and defamatory may be treated as

9       evidence of reckless disregard. There has been no judicial treatment of

10     the effect of the defendant's refusal to retract a statement after it has

11     been demonstrated to him to be both false and defamatory. Under

12     certain circumstances evidence to this effect might be relevant in

13     showing recklessness at the time the statement was published. It is also

14     possible that the Supreme Court would hold that a State can

15     constitutionally treat a deliberate refusal to retract a clearly false

16     defamatory statement as meeting the knowledge-or-reckless-disregard

17     standard, ***even though the conduct occurred subsequent to the***

18     ***publication***.

19  Restatement (Second) of Torts § 580A (1977) (emphasis added);

20     We are also satisfied that even when it was thought necessary to

21     alleviate the wrong resulting from the false statements it had placed

22     before the public, the retraction proffered was evasive, incomplete and

23     by any standard, legally insufficient. . . . In other words, we have no

24     doubt the conduct of appellant respecting the libel was reprehensible

25     and was undertaken with the kind of improper motive which supports

26     the imposition of punitive damages.

27  *Burnett v. Nat'l Enquirer, Inc.*, 144 Cal. App. 3d 991, 1012 (Ct. App. 1983)

28  (cleaned up);

1   In conformity with this section of the Restatement, we held in *Weaver*
2   that where a publisher is on notice that the statement may be false,
3   republication of an alleged defamatory comment may be used as
4   evidence of the defendant's state of mind and actual malice in regard to
5   the prior publication because ***the second publication "tends to indicate***
6   ***a disregard for the truth that may have been present at the time of the***
7   ***initial publication." Id.*** at 905. We concluded that the second
8   publication had to be relevant and competent, and, to the extent that it
9   was, this republication would provide insight into the publisher's state
10   of mind and was thus admissible. *Id.* at 906. The weight of the evidence
11   was for the jury. *Id.*

12   *Castellani v. Scranton Times, L.P.*, 633 Pa. 230, 239–40, 124 A.3d 1229, 1235
13   (2015) (emphasis added);

14    [S]ubsequent acts can be relevant to the determination of previous
15   states of mind, so certainly our holding in *O'Donnell* was correct; a
16   ***subsequent act of republication after a defendant is put on notice by***
17   ***a lawsuit that alleges defamation is relevant to a determination of***
18   ***actual malice in the initial publication***.

19        The Superior Court's concern that the republication only reflects
20   a subsequent mental state goes to the weight of the evidence, not its
21   admissibility.

22   *Weaver v. Lancaster Newspapers, Inc.*, 592 Pa. 458, 469–72, 926 A.2d 899, 905–
23   06 (2007) (emphasis added);

24   As a general rule, defamatory publications by the defendant against the
25   plaintiff other than those forming the basis of the suit may be admitted
26   to show malice on the defendant's part, such as that the publication at
27   issue was published with knowledge of its falsity or with reckless
28   indifference to its contents.

> *The rule applies whether those publications were made prior or subsequent to the defamatory words at issue*.

> Generally, repetitions of the alleged defamatory matter or the *publication of another defamation of similar import are admissible to show actual or express malice*. While there is authority that the publication must be of similar import to, or have some connection with, the statement in the complaint, other cases do not require that the other words or publications be connected with, or refer to, the defamation at issue, provided they tend to show malice in the defendant's mind at the time of publication.

53 C.J.S. Libel and Slander; Injurious Falsehood § 251 (emphasis added);

> Malice is the very gist of the action of libel or slander, and it follows that all the circumstances which go to prove it, or from which it may be inferred, necessarily enter into it. *There is perhaps no circumstance which more strongly evidences animus in the publication of defamatory words, than their frequent repetition*. It is on this principle that many cases have held that *words of similar import, spoken subsequently to those laid in the declaration, are admissible*.

12 A.L.R. 1026 ("Proof of other defamatory statements in civil action for libel or slander") (emphasis added) (citing 56 cases from 24 states for the unassailable proposition that subsequent defamatory statements are proof of malice and stating that "[t]he fact that a given libel has been preceded and followed by others from the same source is one from which, as men are constituted, a legitimate inference may be drawn as to the animus or spirit with which the given libel was published. It has a fair tendency to show that the given libel was not published by mistake, or even under a sudden impulse, or heedlessly, but by design, and with a deliberate purpose to injure and to persecute the person libeled.") (internal quotation marks omitted); and

1   On the issue of malice and punitive damages, however, the plaintiff
2   may present any evidence which would tend to prove the essential
3   factors of the conscious disregard concept of malice. This includes
4   evidence of subsequent activities and conduct of defendant Robins. . . .
5   Any evidence that directly or indirectly shows or permits an inference
6   that defendant acted with conscious disregard of the safety or rights of
7   others, that defendant was aware of the probable dangerous
8   consequence of defendant's conduct and/or that defendant wilfully and
9   deliberately failed to avoid these consequences is relevant evidence.
10  Such evidence includes subsequent conduct unless such subsequent
11  conduct is excluded on policy consideration.

12  *Hilliard v. A. H. Robins Co*., 148 Cal. App. 3d 374, 401 (1983) (product liability
13  case); *see also Watkins v. Lundell*, 169 F.3d 540, 546 (8th Cir. 1998) (reviewing
14  punitive damage award for fraud while acknowledging that evidence of fraud came
15  in part from "subsequent conduct"); *Las Palmas Assocs. V. Las Palmas Ctr.*
16  *Assocs*., 235 Cal. App. 3d 1220, 1239, 1255 (1991) (noting that fraud can be proven
17  by "subsequent conduct of a defendant, such as his failure to immediately carry out
18  his pledge" and such fraud can also support punitive damage award).

19  Thus, Unsworth is entitled to introduce at trial evidence of acts by Musk after
20  July 15, 2018, that reflect on his state of mind as of July 15, 2018, to establish
21  actual malice and common law malice, including:

22  • July 18 "apology" tweet that did not retract the accusation of pedophilia;
23  • August 28 tweet asking "You don't think it's strange he hasn't sued me?";
24  • August 30 emails to BuzzFeed again accusing Unsworth of being acts of
25    pedophilia, encouraging Ryan Mac to investigate, and stating that he hopes
26    Unsworth would sue him;
27  • Musk's engagement of two private investigators to attempt to get dirt on
28    Unsworth;

- Offering the first investigator a $10,000 bonus for verified proof of nefarious conduct;
- Organizing a leak campaign against Unsworth;
- Musk's refusal and failure to retract his false and defamatory accusation about Unsworth, notwithstanding the absence of any factual basis to support the accusation; and
- Tweet that the SEC settlement was "worth it."

All of this evidence is probative and should be admitted to enable Unsworth to present his best case to meet the "clear and convincing" standard of establishing actual malice and common law malice.

## IV.   EXPERT WITNESS TESTIMONY OF DR. JANSEN

In light of the Court's discussion today, Unsworth has reviewed the testimony to be offered by Dr. Jansen.  While Unsworth believes that Dr. Jansen's conclusions are sound and based on reliable methodology, Unsworth hereby withdraws proffered testimony from Dr. Jansen that 98 million people had the opportunity to view articles that contained Musk's July 15, 2018 tweets daily. Unsworth plans to present the other testimony of Dr. Jansen which the Court recognized on November 25 was relevant and admissible.

Dated:  November 26, 2019      L. LIN WOOD, P.C.


By: */s/L. Lin Wood*
L. Lin Wood
*Attorneys for Plaintiff Vernon Unsworth*