QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (admitted pro hac vice)
  alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
  jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH,<br><br>       Plaintiff,<br><br>   vs.<br><br>ELON MUSK,<br><br>       Defendant. | Case No. 2:18-cv-08048<br><br>Judge: Hon. Stephen V. Wilson<br><br>**DEFENDANT'S MOTION TO CLARIFY AND MODIFY THE PRETRIAL ORDER**<br><br>Complaint Filed: September 17, 2018<br>Trial Date: December 3, 2019 |

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

This motion to clarify and modify the November 27, 2019 Pretrial Order is made on the following grounds: (1) Mr. Musk requests this Court specify (or should require Mr. Unsworth to specify) what evidence will be used to show Mr. Musk's mental state at the time of the July 15, 2018 tweets; (2) Mr. Musk renews his request that the BuzzFeed emails be excluded; (3) Mr. Musk requests the Court exclude all evidence related to the second investigation, which was directed by counsel; (4) Mr. Musk requests that the Court exclude all evidence that cannot be tied solely to the July 15, 2018 tweets; and (5) Mr. Musk requests the Court issue an order quashing the trial subpoena issued by Mr. Unsworth.

This motion is based upon this notice of motion and motion; the attached memorandum of points and authorities; all pleadings and papers on file in this action; such other evidence or arguments as may be presented to the Court; and such other matters of which this Court may take judicial notice.

DATED: December 2, 2019            Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Alex Spiro
Alex Spiro
*Attorneys for Defendant Elon Musk*

## I. INTRODUCTION.

After litigating this case for more than a year, Mr. Unsworth decided one week before trial—after the Court's November 19, 2019 summary judgment order—to abandon any claim for defamation based on the statements that Mr. Unsworth alleged called him a "child rapist," "child sex-trafficker," and "husband of a 12-year old child bride," as pleaded in the Complaint. Yet Mr. Unsworth effectively seeks to hold Mr. Musk liable for these statements by equating the phrase "pedo guy" used in the July 15 tweet with Mr. Musk's statement that a reporter providing favorable coverage to Mr. Unsworth should stop defending "child rapists." The Court has held these statements are relevant for the "limited purpose of establishing Musk's state of mind at the time of the alleged defamation." (Dkt. 137 at 4). As explained below, the statements in the emails are not relevant and no curative instruction can address the unfair prejudice stemming from introduction of these inflammatory statements.

But, in any event, Mr. Unsworth's gamesmanship has injected new evidentiary issues on which Mr. Musk respectfully requests clarity before trial begins.

*First*, Mr. Musk understands that Mr. Unsworth has delineated in his pretrial brief the precise evidence he seeks to introduce for this limited purpose. Because Mr. Musk must be permitted to prepare for trial based on the potential scope of admissible evidence, Mr. Musk requests that the Court limit Mr. Unsworth to the evidence included in his pretrial brief.

*Second*, Mr. Musk renews his request that the BuzzFeed emails be excluded. The statements are based on different facts and therefore the probative value (if any) of the later statements, as reflecting what Mr. Musk said before he learned those facts, is limited. In the BuzzFeed emails, Mr. Musk was responding to an inquiry concerning a lawsuit from Mr. Unsworth. Indeed, it was clear immediately after Mr. Musk's July 15 tweets that Mr. Unsworth planned to sue Mr. Musk. Mr. Musk was basing his August statements on detailed information that had been provided to him from an investigation; he was not merely repeating what he has said in July. And, as

the Court recognized in limiting use of the Howard investigator report, the content is inflammatory. Numerous courts have recognized that a curative instruction will not alleviate the prejudice in such circumstances. Thus, the BuzzFeed emails should be excluded entirely.

*Third*, as to the investigations, the Court should exclude any evidence of the second investigation directed by counsel. The Court also should preclude Mr. Unsworth from eliciting testimony concerning Mr. Birchall's offer to pay the first investigator a $10,000 bonus because no evidence indicates Mr. Musk knew about the offer.

*Fourth*, if the BuzzFeed emails are introduced, Mr. Musk requests that the Court exclude evidence that cannot be tied solely to the tweets. Thus, for instance, evidence of any Thai police investigation should be excluded because nothing links it solely to Mr. Musk's July 15 tweets, as opposed to other statements Mr. Musk made but on which Mr. Unsworth is no longer basing his claim. And any prior testimony that fails to distinguish between the tweets and the BuzzFeed articles should not be permitted to be used as evidence or for impeachment purposes.

*Finally*, the Court did not address Mr. Musk's motion to quash the trial subpoena issued by Mr. Unsworth. The subpoena is invalid on its face but Mr. Unsworth's counsel nonetheless has refused to withdraw the subpoena. Thus, Mr. Musk respectfully request the Court issue an order quashing the subpoena.[1]

## II. MR. MUSK REQUESTS THE COURT CLARIFY WHAT EVIDENCE MR. UNSWORTH MAY PRESENT TO SHOW MR. MUSK'S MENTAL STATE AT THE TIME OF THE JULY 15, 2018 TWEETS.

In the Pretrial Order, the Court has decided that evidence that Mr. Musk sent two emails on August 30, 2018 is relevant to Mr. Musk's state of mind on July 15.

1  (Dkt. 137, at 3.)  Mr. Unsworth intends to introduce a variety of evidence other than
2  the BuzzFeed emails to prove Mr. Musk's mental state and, to that end, Mr.
3  Unsworth listed eight categories of evidence he will seek to use at trial to prove Mr.
4  Musk's mental state.  (Dkt. 134, at 8-9.)  Mr. Musk respectfully requests that the
5  Court limit Mr. Unsworth to the evidence included in his pretrial brief, one item of
6  which the Court already has excluded.

7  Such clarification is necessary for three reasons.  *First*, Mr. Unsworth should
8  not be permitted, through the use of vague language, to inject irrelevant matters into
9  this trial.  Thus, with regard to Mr. Unsworth's statement that he will use "[Mr.]
10  Musk's engagement of two private investigators to attempt to get dirt on Unsworth,"
11  Mr. Musk understands Mr. Unsworth to mean he will seek to introduce **only the fact**
12  that Mr. Musk *engaged* a private investigator, and nothing more.[2]  (Dkt. 134, at 8.)  If
13  Mr. Musk is incorrect, he requests the Court direct Mr. Unsworth to clarify what
14  other evidence about the investigation(s) he plans to introduce.  With regard to Mr.
15  Unsworth's assertion that he plans to introduce evidence of Mr. Musk "[o]rganizing a
16  leak campaign against Unsworth," (Dkt. 134, at 9), Mr. Musk interprets the Court's
17  pretrial order to mean that the only evidence admissible on this topic is evidence that
18  Mr. Musk attempted to leak some information about Mr. Unsworth in the European
19  press, and nothing more.  (Dkt. 137, at 8.)  If this understanding is incorrect, Mr.
20  Musk requests clarification on what evidence related to the purported press leaks is
21  admissible.

22  *Second*, Mr. Musk is entitled to know the universe of evidence that Mr.
23  Unsworth intends to introduce for this limited purpose to know the relevant topics for

---

[1]  Mr. Musk separately is renewing his motion to exclude the expert opinion of Dr. Jansen, filed concurrently.  Mr. Musk also is filing separately his objections to the Court's preliminary jury instructions.

[2]  As explained, *infra*, this Court must exclude evidence of the second investigation, as it was conducted at the direction of counsel in preparing for this litigation.

voir dire, how to prepare for opening statements, whether to object to exhibits, and how to designate deposition testimony. Such surprise at opening statements could lead to a mistrial if it results in the introduction of inadmissible and inflammatory evidence. *See Littlewind v. Rayl*, 839 F. Supp. 1369, 1376 (D.N.D. 1993) (it was an error not to declare a mistrial where inflammatory and inadmissible material was referenced in the opening statement); *Hodge v. Am. Home Assur. Co.*, 150 F.R.D. 25, 26-27 (D.P.R. 1993) ("The reference to inadmissible evidence on two occasions, the objections correctly made, and the belief that the jury, now presented with a scenario which stresses a verdict for plaintiff relying upon such inadmissible evidence, have led me to the unpleasant decision to declare a mistrial … I cannot punish the lack of prospective intuition where there was no inkling that settlement would have been a theme of opening statement."); *see also Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 346 (9th Cir. 1995) (affirming grant of mistrial due to attorney's violation of *in limine* rulings).

*Third*, Mr. Musk is entitled to a meaningful opportunity to seek enforcement of this Court's demarcation of evidence being admitted for the limited purpose of showing Mr. Musk's state of mind, which the Court has recognized is subject to balancing under Rule 403, before Mr. Unsworth offers such evidence to the jury. Mr. Musk should not be subjected to Mr. Unsworth's unilateral balancing of these factors, such that inadmissible evidence is repeatedly brought before the jury, only to have objections sustained and have the jury tainted.

### III. THE COURT SHOULD EXCLUDE EVIDENCE RELATED TO MR. UNSWORTH'S ABANDONED CLAIM BASED ON THE BUZZFEED EMAILS.

In the Pretrial Order, the Court states that "[e]vidence that Musk investigated Unsworth or attempted to have portions of that investigation leaked does not open the door to false information about Unsworth in the underlying report. The parties should be careful to avoid evidence that is confusing, inflammatory, or otherwise

irrelevant." (Dkt. 137 at 8.) This same evidence formed the basis for Mr. Musk's statements in the emails to the BuzzFeed reporter. Because a curative instruction cannot undo the jurors' emotional responses to inflammatory evidence, the Court should exclude the statements in the BuzzFeed emails.

Inflammatory evidence is unfairly prejudicial when it provides "an improper basis" for the jurors to base their decision on an "emotional" reaction to such evidence. Advisory Committee Notes, Fed. R. Evid. 403. Exclusion of inflammatory evidence involving sexual misconduct with children will be warranted where the evidence is of limited relevance. *See, e.g.*, *Wilson v. Longview School District*, 775 F. App'x 277 (9th Cir. 2019) (affirming exclusion of allegations that teacher physically and sexually abused children as of "limited probative value" and "substantially outweighed by the extremely inflammatory effect").

In *Wilson*, the Ninth Circuit affirmed the exclusion of allegations of sexual abuse of children where the incidents were alleged to have "occurred after the events in the case," or were remote in time or retracted. *Id.* The "limited probative value" in that case was "substantially outweighed by the extremely inflammatory effect" that necessarily stemmed from accusations of child sex abuse allegations. *Id.* The same is true here. The statements in the BuzzFeed emails are of limited probative value as to Mr. Musk's state of mind on July 15 because the investigation and BuzzFeed emails each responded to the threat of a lawsuit and reflected specific information Mr. Musk received after July 15. To hold Mr. Musk liable for the July 15 tweets would undermine the "public policy ... that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990) (quoting *Briscoe v. LaHue*, 460 U.S. 325, 333 (1983) (discussing litigation privilege).

Indeed, by the time the first investigation began, Mr. Unsworth already believed that litigation had commenced. The prospect of such litigation forced Mr. Musk to defend himself against the *accusation* that he called Mr. Unsworth a

1 pedophile.  Even if such evidence has some probative value, it does not outweigh the
2 prejudice that accompanies the BuzzFeed email statements, which Mr. Unsworth has
3 elected not to prove are defamatory.  Instructing the jurors on the limited applicability
4 of these statements will not cure the inflammatory effect and resulting prejudice.
5 *See*, *e.g.*, *Virgin Islands v. Pinney,* 967 F.2d 912, 918 (3d Cir. 1992) (holding that
6 limiting instruction on testimony of child molestation would not reduce risk of jury
7 considering such evidence for improper purpose; "given the emotionally charged
8 content of [the] testimony, its *de minimus* probative value to the jury in fulfilling its
9 responsibilities, and the very real danger of its misuse, we are unable to conceive of a
10 rationale that would persuasively support the admission of that testimony").  Thus,
11 Mr. Musk renews his request that the August 30 BuzzFeed emails be excluded.

**IV. THE COURT SHOULD EXCLUDE IRRELEVANT "STATE OF MIND" EVIDENCE.**

14 Even accepting that some events post-dating the publication of the July 15
15 tweets could be relevant to Mr. Musk's July 15 state of mind, the Court should
16 exclude evidence of the second investigation, which was initiated by counsel, and of
17 events related to the first investigation about which Mr. Musk lacks knowledge.

18 As to the second investigation, it falls within the scope of the attorney-client
19 privilege and is subject to work product protection because the investigator was hired
20 by Mr. Musk's counsel and worked at counsel's direction in preparation for
21 defending this lawsuit.  *See Lincoln Benefit Life Co. v. Fundament*, 2018 WL
22 7051064, at *2 (C.D. Cal. Dec. 6, 2018) (holding work of investigator hired by
23 counsel in connection with potential lawsuit covered by attorney-client privilege and
24 subject to work product protection).  Mr. Musk prepared a privilege log containing
25 information on the second investigation and Mr. Unsworth did not challenge that
26 assertion of privilege.

27 The Court also should preclude Mr. Unsworth from eliciting testimony
28 concerning Mr. Birchall's offer to pay the first investigator a $10,000 bonus and any

other evidence not communicated to Mr. Musk. Such events have no bearing on Mr. Musk's state of mind in publishing the July 15 tweets absent proof that Mr. Musk had knowledge of them.

## V. THE COURT SHOULD EXCLUDE EVIDENCE NOT TIED SOLELY TO THE JULY 15 TWEETS.

Because Mr. Unsworth "has elected to pursue liability and damages only for the tweets, and not further potentially defamatory statements made to Buzzfeed by Musk via emails," (Dkt. 137 at 3), the Court should exclude all evidence that cannot be tied solely to the tweets.

To take one example, Mr. Unsworth has asserted that he was investigated by the Thai police. But he has not tied that alleged police investigation to the July 15 tweets, as opposed to the BuzzFeed article. Nor could any evidence establish such a link. Mr. Unsworth testified he has never been contacted by a police investigator "as a result of anything Mr. Musk said about" him. (Unsworth Depo., 141:16-19.) Although one police department allegedly contacted his companion, Tik, Mr. Unsworth admitted that, shortly before this contact occurred, he had applied for a new Thai visa, which provides an alternate reason for any police contact. Because the Thai contact is not relevant to any claim or defense left in this action, it should be excluded under Federal Rules of Evidence 401, 402, and 403.

Indeed, as a general matter, the shift in Mr. Unsworth's case theory less than two weeks before trial renders certain deposition testimony and interrogatory responses that do not distinguish between the July 15 tweets and the BuzzFeed emails inadmissible and their use improper for any purpose. *See, e.g.*, *Paramount Farms Int'l LLC v. Ventilex B.V.*, 500 F. App'x 586, 588 (9th Cir. 2012) (affirming district court's exclusion of "ambiguous and confusing" deposition testimony); *Brown v. Nat'l R.R. Passenger Co.,* 221 F.3d 1338 (7th Cir. 2000) ("Because this 'impeachment' evidence was ambiguous, may not have been truly impeaching, and would have required extensive clarifying testimony involving collateral issues, we

cannot say the district court abused its discretion in not permitting cross examination on the deposition testimony."); *Long v. Abbott*, 2017 WL 2256604, at *3 (D. Me. May 23, 2017) (noting that "[t]o be effective as impeachment evidence, the evidence must truly impeach and here, the evidence that Officer Abbott wishes to use to impeach Mr. Long is ambiguous at best and misleading at worst"). The Court thus should require, as it has of the expert testimony of Dr. Jansen, that evidence be linked directly to the July 15 tweets.

## VI. THE COURT SHOULD QUASH THE TRIAL SUBPOENA.

Finally, the Court should quash the impermissible and overly broad trial subpoena Mr. Unsworth served on Mr. Musk, by which he seeks voluminous categories of documents that Mr. Unsworth never sought in discovery. As Mr. Musk explained in his motion to quash (Dkt. 126), the subpoena is not a proper trial subpoena, it inappropriately seeks additional information on Mr. Musk's net worth, any additional information regarding Mr. Musk's personal finances has no relevance, and the information sought is highly prejudicial will inflame the jury and cause confusion.

DATED:  December 2, 2019          Respectfully submitted,

QUINN EMANUEL URQUHART
    & SULLIVAN, LLP

By  */s/ Alex Spiro*
    Alex Spiro (admitted *pro hac vice*)
    *Attorneys for Defendant Elon Musk*