QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (admitted *pro hac vice*)
  alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
  jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH,<br><br>          Plaintiff,<br><br>     vs.<br><br>ELON MUSK,<br><br>          Defendant. | Case No. 2:18-cv-08048<br><br>Judge: Hon. Stephen V. Wilson<br><br>**DEFENDANT'S <u>RENEWED</u> MOTION IN LIMINE <u>NO. 5</u> TO EXCLUDE TESTIMONY OF DR. BERNARD J. JANSEN**<br><br>Complaint Filed: September 17, 2018<br>Trial Date: December 3, 2019<br><br>Hearing Date:  December 2, 2019<br>Time:          2:30 p.m.<br>Courtroom:     10A |

**TO THE CLERK OF THE COURT AND PLAINTIFF**:

**PLEASE TAKE NOTICE** that Defendant Elon Musk hereby renews his Motion in Limine No. 5, to exclude the trial testimony of Plaintiff's proposed expert Dr. Bernard "Jim" Jansen as follows:

A. **"Digital Subscribers"**

Dr. Jansen plans to present testimony reflected on Table 2, which appears on page 24 of his November 29, 2019 Amended Report, and which purports to state the number of "digital subscribers" to six web sites:

| Outlet | Digital Subscribers[21] |
|---|---|
| New York Times[22] | 3,000,000 |
| Telegraph[23] | 3,000,000 |
| The Wall Street Journal[24] | 1,818,000 |
| Washington Post[25] | 1,000,000 |
| Guardian[26] | 570,000 |
| USA Today[27] | 504,000 |
| | 9,892,000 |

This motion is made on the following grounds:

1. Neither the data nor the chart containing it were in Dr. Jansen's original report, dated September 13, 2019, nor disclosed at his November 4, 2019 deposition, even though the facts were available to him, had he investigated the subject.

2. The disclosure of this information comes too late to enable Defendant to test it and thereby causes unfair prejudice.

3. The information lacks sufficient foundation and reliability to satisfy the standards set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The opinion is not based on reliable information and is speculative.

4. The information will mislead and confuse the jury into believing that this number of people read the article those web sites hosted that mention

Mr. Musk's statements about Plaintiff when, in reality, there is no basis to assume that and because Dr. Jansen lacks that information.

### B. Jansen's testimony that the 9.8 million number is "conservative."

Dr. Jansen states that his 9.8 million digital subscribers number is "conservative" because it does not include dissemination he did not study.  *See* Amended Report, paragraph 21(a) – (h).  Dr. Jansen should not be allowed to testify about work he could have done, but chose not to perform.  Such testimony would be speculative, misleading, and prejudicial to the Defendant.  Furthermore, the witness testified at his deposition that he would *not* be undertaking this work before trial and would *not* be testifying to these matters.

### C. Jansen's importation of charts and testimony from Plaintiff's withdrawn expert Eric Rose

Plaintiff used the Court's instruction to file a *shorter* list of articles containing Defendant's statements to *add* to his report by importing opinions and charts from the report filed by another proposed expert, Eric Rose, as an "Appendix E."  That Appendix contains so-called Google analytics, supposedly about web searches for "Vernon Unsworth" in July 2018.  But in response to Defendant's Motion in Limine directed at Mr. Rose (Dkt. 100), which objected to the testimony and charts, Plaintiff withdrew the witness and his report. (Dkt. 110.)  Plaintiff cannot back-door the information, at the last minute, through Dr. Jansen's Amended Report because: (1) it violates the Court's instruction that Dr. Jansen serve only a revised (and *shortened*) list of articles, i.e., a revised Appendix D; (2) Plaintiff conceded the Defendant's objections to material from Mr. Rose's report when, in response to the Motion in Limine and in lieu of filing an opposition, Plaintiff withdrew Mr. Rose as a witness and said that Defendant's objections were thus moot; (3) Dr. Jansen testified that he had no communications with Mr. Rose and is therefore in no position to know what the work represents, how it was created, and whether it has a foundation sufficient to satisfy *Daubert*; and (4) for the reasons set forth in the Rose

Motion in Limine, the material fails to meet the *Daubert* standards in every respect and would be misleading and prejudicial.

### D. Jansen's use of the term "defaming statements."

Defendant objects to Dr. Jansen's use of the terms "defaming statements" and "defaming statements against Mr. Unsworth" and his explanation that he is using these statements to reflect "defamation per se." *See, e.g.,* Amended Report, ¶¶ 13-14. Dr. Jansen's expertise is limited to computer science and, in this case, using Google to search for certain terms and then counting up the search results. He may not opine as to whether anything the Defendant said is "defamatory" or "defamation per se." If those determinations are made in this case, they are solely for the jury to make.

This motion is based upon this notice of motion and supporting memorandum of points and authorities, the Declaration of Michael T. Lifrak and the exhibits attached thereto, the pleadings and papers on file in this case, and such other written or oral argument as may be presented to the Court.

DATED:  December 2, 2019

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Alex Spiro*
Alex Spiro
*Attorneys for Defendant Elon Musk*

# **TABLE OF CONTENTS**

**Page**

I. THE COURT SHOULD EXCLUDE DR. JANSEN'S "DIGITAL SUBSCRIBER" TESTIMONY ................................................................... 1

    A. Dr. Jansen Failed To Disclose This Information In His Original Report And At His Deposition. ............................................................... 1

    B. The Disclosure Of This Information Comes Too Late To Enable Defendant To Test It And Thereby Causes Unfair Prejudice. ................ 2

    C. The Information Lacks Sufficient Foundation And Reliability To Satisfy *Daubert*. ................................................................................... 3

        1. The *New York Times* data lacks foundation and is unreliable. ............................................................................ 4

        2. The *Telegraph* data lacks foundation and is unreliable. ............... 5

        3. The *Wall Street Journal* data lacks foundation and is unreliable. ............................................................................ 6

        4. The *Washington Post* data lacks foundation and is unreliable. ............................................................................ 6

        5. The *Guardian* data lacks foundation and is unreliable. ................ 7

        6. The *USA Today* data lacks foundation and is unreliable. ............. 8

    D. The Information Is Speculative And Will Mislead And Confuse The Jury. ........................................................................................... 8

II. THE COURT SHOULD BAR DR. JANSEN FROM TESTIFYING ABOUT WORK HE FAILED TO DO ........................................................ 10

III. THE COURT SHOULD BAR DR. JANSEN FROM TESTIFYING TO ANYTHING IN THE REPORT OF PLAINTIFF'S WITHDRAWN EXPERT ERIC ROSE ............................................................................. 10

IV. THE COURT SHOULD BAR DR. JANSEN FROM REFERRING TO THE STATEMENTS AS "DEFAMING" ..................................................... 11

V. CONCLUSION ................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acad. of Motion Pictures Arts and Scis. v. GoDaddy.com, Inc.*,
  2013 WL 12122803 (C.D. Cal. June 21, 2013) .................................................. 3, 8

*Alioto v. Cowles Commc'ns, Inc.*,
  430 F. Supp. 1363 (N.D. Cal. 1977) ........................................................................ 9

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ........................................................................................ 3, 4, 8

*Diviero v. Uniroyal Goodrich Tire Co.*,
  114 F.3d 851 (9th Cir. 1997) ................................................................................... 3

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ................................................................................................ 3

*Harris v. United States*,
  132 Fed. Appx. 183 (9th Cir. 2005) ........................................................................ 2

*Jarritos, Inc. v. Reyes*,
  345 Fed. Appx. 215 (9th Cir. Aug. 14, 2009) ......................................................... 2

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ................................................................................................ 3

*Licciardi v. TIG Ins. Group*,
  140 F.3d 357 (1st Cir 1989) .................................................................................... 2

*Luke v. Family Care and Urgent Medical Clinics*,
  323 Fed. Appx. 496 (9th Cir. Mar. 30, 2009) ......................................................... 2

*Lust By & Through Lust v. Merrell Dow Pharm., Inc.*,
  89 F.3d 594 (9th Cir. 1996) .................................................................................... 3

*O'Conner v. Boeing North American, Inc.*,
  2005 WL 6035243, 7-8 (C.D.Cal Sept. 12, 2005) .................................................. 2

*Scott v. Times-Mirror Co.*,
  181 Cal. 345 (1919) ................................................................................................ 9

*Superior Consulting Servs., Inc. v. Shaklee Corp.*,
  2018 WL 182303 (M.D. Fla. May 9, 2018) ........................................................... 6

*United States v. 87.98 Acres of Land in the City of Merced*,
  530 F.3d 899 (9th Cir. 2008) .................................................................................. 7

*Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ................................................................................ 1

**Rules and Regulations**

Fed. R. Civ. P. 26 ........................................................................................................ 1

Fed. R. Civ. P. 37(c)(1) ............................................................................................... 1

Fed. R. Evid. 702 ........................................................................................................ 3

I. **THE COURT SHOULD EXCLUDE DR. JANSEN'S "DIGITAL SUBSCRIBER" TESTIMONY**

The trial starts tomorrow, December 3. Three days ago, Plaintiff served Defendant with an Amended Report from his expert, Jim Jansen. On page 24 of the Amended Report, Dr. Jansen opines, for the first time, that six of the web sites that published stories containing Defendant's July 15, 2018 tweets have a total of 9.8 million "digital subscribers." (Declaration of Michael T. Lifrak ("Lifrak Decl.") Ex. 1 ("Amended Report").) The information is presented in chart form on Table 2. For the reasons discussed below, the Court should not allow Dr. Jansen to present any testimony about it, or allow Plaintiff to refer to it or base any argument on it.

A. **Dr. Jansen Failed To Disclose This Information In His Original Report And At His Deposition.**

Rule 26 of the Federal Rules of Civil Procedure establishes the rules a party must follow if it wants to offer expert testimony at trial. Among other things, the proffering party must disclose the identity of the proposed expert, serve its adversary with a report containing a "complete statement of all opinions the witness will express and the basis and reasons for them" (Rule 26(a)(2)), and do so 90 days before trial. Rule 26(a)(2)(D)(i). If requested by the opposing party, the proposed expert must submit to a deposition, after timely service of the report containing all of the expert's opinions and grounds for them. *See* Rule 26(b)(4)(A).

Plaintiff served Dr. Jansen's report on September 13. He appeared for deposition on November 4. Dr. Jansen did not disclose these opinions or their supporting information in his September 13 report or at his deposition. This is an entirely new opinion, based on entirely new "facts." Yet the "facts" on which this new opinion is based were available to Dr. Jansen when he prepared his report and appeared at his deposition, if he had wanted to present them on a timely basis.

Under these circumstances, the Court should exclude it. Rule 37(c)(1) "forbids use at trial of any information required to be disclosed by Rule 26(a) that is

not properly disclosed." *Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (barring opinion that was untimely under Rule 26, even though disclosed 30 days before trial); *see also Luke v. Family Care and Urgent Medical Clinics*, 323 Fed. Appx. 496, 500 (9th Cir. Mar. 30, 2009) (affirming district court's exclusion of plaintiff's supplemental expert declaration that asserted new opinion and evidence after Rule 26 deadline had passed); *Jarritos, Inc. v. Reyes*, 345 Fed. Appx. 215, 217 (9th Cir. Aug. 14, 2009) (affirming district court's decision to exclude expert reports where deadlines for disclosing experts and conducting expert discovery had passed, even though "the ultimate trial date was still some months away"); *Harris v. United States*, 132 Fed. Appx. 183, 185 (9th Cir. 2005) (excluding expert report submitted 8 days before trial because it left insufficient time to prepare); *O'Conner v. Boeing North American, Inc.*, 2005 WL 6035243, *3, 7-8 (C.D. Cal Sept. 12, 2005) (court barred testimony or comment at trial of "new opinions" in supplemental reports served after close of expert discovery and less than two months before trial; "To permit these reports into evidence would improperly widen the trial issues at the eleventh hour, and would unduly prejudice Defendants.  Moreover, the new opinions appear based on information that was available to these experts at the time of their initial Rule 26 disclosures."). *Licciardi v. TIG Ins. Group*, 140 F.3d 357, 363-65 (1st Cir 1989) (finding district court erred in not excluding expert trial testimony that went beyond scope of expert's report).

      **B.    The Disclosure Of This Information Comes Too Late To Enable Defendant To Test It And Thereby Causes Unfair Prejudice.**

Had Dr. Jansen included this information in the version of his report Plaintiff served on September 13, there would have been sufficient time to conduct discovery from Dr. Jansen and—more importantly, given the nature of the opinion—third-parties to test its reliability.  Defendant could have served a subpoena on the six web sites to provide their actual number of digital subscribers, and the extent to which any of their subscribers actually navigated to the web site location where the tweet-

related stories were stored. But by waiting until one Court Day before the start of trial to provide this information, Plaintiff has deprived Defendant of that due process right. For that reason alone, the Court should exclude it.

### C. The Information Lacks Sufficient Foundation And Reliability To Satisfy *Daubert*.

Under FRE Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), this Court serves as a "gatekeeper" for expert opinion testimony. The Court may permit testimony based on "scientific, technical, or other specialized knowledge" if: (a) it will help the trier of fact to understand the evidence or to determine a fact in issue; (b) it is based on sufficient facts or data; (c) it is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. *Daubert* applies to any "technical, or other specialized knowledge." *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147–151 (1999).

As the gatekeeper, this Court must screen expert testimony "to ensure that the expert testimony both rests on reliable foundation and is relevant." *Acad. of Motion Pictures Arts and Scis. v. GoDaddy.com, Inc.*, 2013 WL 12122803, at *2 (C.D. Cal. June 21, 2013); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Because speculative opinions are not helpful to the trier of fact, they are neither reliable nor admissible. *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (expert opinion "was unsubstantiated and subjective, and therefore unreliable and inadmissible").

1 	Plaintiff, as the party proffering the expert, has the burden of proving that this
2 	"digital subscriber" testimony is admissible.  *Lust By & Through Lust v. Merrell*
3 	*Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).
4 	Dr. Jansen's new testimony lacks sufficient foundation ***and*** sufficient
5 	reliability under Rule 702 and *Daubert* to be admitted.

### 1.     The *New York Times* data lacks foundation and is unreliable.

Dr. Jansen's number for the *New York Times* (3,000,000) shows how sloppy and unreliable his work is, and how lacking in foundation the number is.  It accounts for almost one-third of his total.

Although the article he cites states that *The Times* had 3,000,000 digital subscribers by the end of Q3 2018 (Ex. 2, https://www.nytimes.com/2018/11/01/business/media/new-york-times-earnings-subscribers.html), had Dr. Jansen read a few sentences further into the article he relies upon, he would have noticed that the paper's number included not only subscribers to its news site, but subscribers to its cooking site and its crossword puzzle site.  *See id.* ("Not all of the new subscribers signed on for news.  The Times reported that, of the 203,000 net increase in digital subscribers, 143,000 signed on for digital news products, with the remainder paying for the company's cooking and crossword features.")

It would require a leap of fact and logic to assume that people who sign up to access sites that offer the latest recipes or crossword puzzles are looking for articles about Elon Musk—or are granted access to them.  Yet what we know from Dr. Jansen's leg work is that 30% of *The Times*'s subscribers in Q3 2019 signed up for just that: the cooking site and the crossword puzzle site.  *Id.*  But there is no similar breakdown for the 3,000,000 total.  Thus, to exclude the chefs and puzzle fans from that 3,000,000 number, Dr. Jansen would have to guess.  That's not a sufficient foundation or compliant with *Daubert*.

##         2.        The *Telegraph* data lacks foundation and is unreliable.

Dr. Jansen also botched his number from *The Telegraph*, which at 3,000,000 also accounts for nearly one-third of his total. According to his cited article (Ex. 3, https://www.theguardian.com/media/2018/oct/03/telegraph-to-put-politics-business-and-rugby-news-behind-paywall), that number does ***not*** represent digital subscribers. Instead, that 3,000,00 is the number of people who have "registered" to get access to one free article per month from the collection of articles *The Telegraph* makes available to only its ***actual*** digital subscribers—the number Dr. Jansen supposedly looked for. *See id.* ("The Telegraph is to put most of its politics, business and rugby coverage behind its premium paywall, as it dramatically cuts back on freely accessible content to drive its subscription strategy…. Last September, [the publisher] … unveiled a "registrations-first" plan, with a goal of attracting 10 million registrants. The publisher has already passed its 2018 target of 3 million. Currently, registrants can only access one premium article per week.").

The paper ***hopes*** to reach 1,000,000 digital subscribers—one-third the number Dr. Jansen erroneously used—but not until ***four years*** from now. (*See* Ex. 4, https://corporate.telegraph.co.uk/vision/) (chart showing hoped-for "1 million [digital] subscribers" in 2023).

For *The New York Times*, Dr. Jansen attempted to present digital subscriber counts as of the time the stories about the Defendant's tweet were published, in July 2018. For *The Telegraph*, he failed to do that, perhaps because the number would have been much lower. The paper recently reported that, as a result of ***record*** growth in 2019, as of the end of September 2019, its ***combined*** print and digital subscriber base is around 400,000. (*See* Ex. 5, https://www.telegraph.co.uk/business/2019/10/14/telegraph-hits-400k-subscribers-brexit-boosts-digital-growth/.) The portion of that story not hidden behind its paywall does not breakout just the digital subscribers. Dr. Jansen's made-up number of 3,000,000 is 7.5 times greater than the 400,000 number that adds the

digital number of digital subscribers to the number of all of the newspaper's print subscribers. There is no indication that the article ran in the print version. Dr. Jansen cannot be allowed to engage in this guesswork. Nor can the jury. His vastly inflated number does not pass muster.

### 3. The *Wall Street Journal* data lacks foundation and is unreliable.

Dr. Jansen did manage to pull the correct number (1.8 million) of *Wall Street Journal* digital subscribers reported in the document he cites for that information, the Form 10-K the newspaper's parent (News Corp.) filed with the SEC. (*See* Ex. 6, https://www.sec.gov/Archives/edgar/data/1564708/000119312519219463/d741099d10k.htm.)

However, that is for the year ending on June 30, 2019—almost one year after Mr. Musk's tweets. The jury would be left to guess what the number was during the relevant time period. That matters. As compared to their print operations, digital subscription services are a much newer line of business and are experiencing rapid growth, year-over-year. So the number in an earlier year is by definition lower. Because Dr. Jansen failed to take that into account, the Court should exclude it. *See Superior Consulting Servs., Inc. v. Shaklee Corp.*, 2018 WL 182303, at *3 (M.D. Fla. May 9, 2018) (rejecting extrapolation of web traffic from different period).

### 4. The *Washington Post* data lacks foundation and is unreliable.

Dr. Jansen claims that the *Washington Post* has 1,000,000 digital subscribers. *See* Amended Report, Table 2, page 24. But his support for that number is an on line article from nbcnews.com (Ex. 7, https://www.nbcnews.com/news/us-news/washington-post-still-plays-catch-gaining-times-n833236), which reported that the *Post*'s publisher, Fred Ryan, had said it was 1,000,000. The company is privately held, so there is no ready way to verify it. And the gist of the article is that owner Jeff Bezos was having a hard time keeping pace with the digital subscriber business of his competitors. Thus, his employee had an incentive to toss out a large,

1  round number to deflect criticism.  This is not the kind of information that an expert
2  should be allowed to give to a jury as evidence on which, Plaintiff intends to argue,
3  the jury should consider in deciding the case.

### 5.  The *Guardian* data lacks foundation and is unreliable.

Dr. Jansen's number of 570,000 supposed digital subscribers to *The Guardian* is "found" in the article he cites.  *See* Ex. 8, https://www.theguardian.com/media/2018/jul/24/guardian-media-group-digital-revenues-outstrip-print-for-first-time.  But that's not actually what the article says.  First, the 570,000 figure is not just for *The Guardian*.  The number is for the "Guardian Media Group (GMG)," which, according to the article, "also owns *The Observer*." *Id*.  But even if the number were for just *The Guardian*, the number represents "members who give regular financial support to the organisation." *Id.*  That term is defined in an article that is hypertext-linked from within the one Dr. Jansen cited, available at https://www.theguardian.com/gnm-press-office/2017/oct/26/guardian-reaches-milestone-of-500000-regular-paying-supporters.  The article says that the number of "members who give financial support to the organisation" includes hundreds of thousands of people who made a one-time "contribution" to obtain some form of limited access.  Moreover, the article makes clear that the number Dr. Jansen cited includes all forms of "paying supporters, made up of members and subscribers across *print* and digital" *Id.*

In other words, Dr. Jansen's number is not a digital subscriber number.  And it means that he does not know what the actual number of digital subscribers to *The Telegraph* is, except that it has to be a lot less than 570,000, because that number includes the newspaper's print edition and the print and on-line editions of another newspaper.  In short, his number is useless information, and inadmissible.  *See United States v. 87.98 Acres of Land in the City of Merced*, 530 F.3d 899, 906 (9th Cir. 2008) (excluding expert opinion as irrelevant and potentially confusing to the

jury because it invited the jury to make inferences that were unsupported by the facts and the expert's testimony).

### 6. The *USA Today* data lacks foundation and is unreliable.

The Amended Jansen Report states that USA Today has 504,000 digital subscribers.  But that is not correct.  The cited article (Ex. 10, https://www.usatoday.com/story/money/2019/02/20/gannett-fourth-quarter-earnings-beat-expectations/2916215002/) states that the **parent** corporation of USA Today, Gannett, Co., Inc, has that number of digital subscribers in total.  According to that same article, Gannett owns not only *USA Today*, but 109 other papers.  As a result, Dr. Jansen's purported number is **not** a number of anything for *USA Today*.  The article does not report a subscriber number for the *USA Today* web site, standing alone.  As a result, Dr. Jansen has no foundation for this number.  It would be just an inadmissible guess.

### D. The Information Is Speculative And Will Mislead And Confuse The Jury.

To satisfy *Daubert*, the proposed testimony also has to be relevant, *see Acad. of Motion Pictures Arts and Scis.*, 2013 WL 12122803, at *2, and to be admissible generally, it cannot be speculative or mislead the jury.  *See* Rule 702.

Even if Dr. Jansen's numbers were reliable, the fundamental flaw in the admission of this testimony is that it will mislead the jury into thinking that millions of people actually read the articles that reported what Mr. Musk said.  That is impermissible and prejudicial, for several reasons.

*First*, Dr. Jansen has admitted that he does not know how many people actually read the articles in his "pedo guy" collection, much less whether anyone believed what they read, or thought less of Plaintiff as a result.  (*See* Ex. 11, Jansen Depo. at 30:24-33:13.)  This surrogate testimony is designed to convey an opinion he lacks the information to give and is thus prejudicial.

  ***Second***, although in cases involving print publications the courts have allowed testimony as to the number of subscribers to that print publication, the circumstances are not analogous. Plaintiff previously cited two cases on this issue. *See Scott v. Times-Mirror Co.*, 181 Cal. 345, 365 (1919) and *Alioto v. Cowles Commc'ns, Inc.*, 430 F. Supp. 1363, 1371-72 (N.D. Cal. 1977). In *Scott*, the defamatory statement appeared prominently on the front page of the *Los Angeles Times* City Sheet, and the newspaper was only 24 pages long. (*See* Ex. 12, *The Los Angeles Times,* Feb. 6, 1915, www.newspapers.com/image/380140241 (last visited Nov. 20, 2019).) In *Alioto*, the defamatory statement appeared on the first page of the magazine. (*See id.*, Ex. 13, *Look Magazine,* Sept. 23, 1969, www.oldlifemagazines.com/look-magazine-september-23-1969-diana-ross.html (last visited Nov. 20, 2019.).)

  But Dr. Jansen does not know whether anything comparable occurred here, that is, whether the articles from these web sites were available on the home page of the sites, or for how long, or how easy or hard it was for a typical visitor to any of those websites to find the Unsworth-related article. That is because he never looked. (Jansen Depo. 146:2-18; 147:14-150:3;161:10-162:3.)

  ***Third***, given the size of these sites, they cannot be analogized to a 1915-era daily print newspaper or a 1960s-era new magazine, each of which had at most a dozen or a few dozen stories. In contrast, these web sites contain of ***millions*** of pages of content. *See e.g.*, Ex. 14, *New York Times Article Archive*, THE NEW YORK TIMES, www.nytimes.com/ref/membercenter/nytarchive.html (last visited Nov. 21, 2019) (stating that nytimes.com has more than 13 million online articles). Visitors navigate their way to a specific story in many different ways. They never see the vast majority of the available content. These sites more closely resemble entire libraries than single issues of newspapers or magazines.

  As a practical matter, Plaintiff's attempted use of these numbers would be like saying that there is a book on the shelf in the downtown Los Angeles Public Library

that says something defamatory, and that X number of people have Los Angeles Public Library Cards.  But the number of holders of library cards would tell us nothing relevant to this case.  Yet if the Court gives its permission to allow Dr. Jansen to give his number, the jury may think that it bears a meaningful relationship to the number of people who read these articles.  Dr. Jansen has no evidence of that.  It would be improper to allow the jury to infer that he did.

## II. THE COURT SHOULD BAR DR. JANSEN FROM TESTIFYING ABOUT WORK HE FAILED TO DO

Dr. Jansen claims that his count of 490 stories or articles is "conservative" because he did not count dissemination of the Defendant's statements through other channels, such as email and social media.  (*See* Amended Report at 5, ¶ 21.)  In other words, he is attempting to bolster his credibility and the weight the jury should give his testimony based on work he did not perform.  Given that the witness did not undertake that investigation, it would be speculative, misleading, and prejudicial to the Defendant to allow the witness to testify that this additional work would have, or even might have, turned up evidence of additional dissemination of Defendant's statements.  Furthermore, the witness testified at his deposition that he would ***not*** be undertaking this work before trial (*see* Ex. 11, Jansen Depo. 25:13–19) and would ***not*** be testifying to these matters.  (*See id.* at 20:20–23:19 & 24:8–22.)

Their continued presence in the Amended Report, however, suggests that the witness may no longer feel bound by his deposition testimony or the Rules of Evidence.  The Court should not allow him to offer testimony about these matters, nor allow Plaintiff's counsel to mention or base arguments on them.

## III. THE COURT SHOULD BAR DR. JANSEN FROM TESTIFYING TO ANYTHING IN THE REPORT OF PLAINTIFF'S WITHDRAWN EXPERT ERIC ROSE.

Defendant objects to Plaintiff's abuse of the Court's November 27 instruction to file a ***shorter*** list of web articles that contained Defendant's statements.  Instead

of limiting himself to that, Plaintiff's had Dr. Jansen **add** to his report by importing opinions and charts from the report filed by another proposed expert, Eric Rose, as an "Appendix E." That Appendix contains so-called Google analytics, supposedly about web searches for "Vernon Unsworth" in 2018. But in response to Defendant's Motion in Limine directed at Mr. Rose (Dkt. 100), which objected to the testimony and charts, Plaintiff withdrew the witness and his report. (Dkt. 110.)

Plaintiff cannot back-door the information, at the last minute, through Dr. Jansen's Amended Report. First, it violates the Court's instruction that Dr. Jansen serve only a revised (and **shortened**) list of articles, i.e., a revised Appendix D. Second, Plaintiff conceded the Defendant's objections to material from Mr. Rose's report when, in response to the Motion in Limine and in lieu of filing an opposition, Plaintiff withdrew Mr. Rose as a witness and said that Defendant's objections were thus moot. Third, Dr. Jansen testified that he had no communications with Mr. Rose and is therefore in no position to know what the work represents, how it was created, and whether it has a foundation sufficient to satisfy *Daubert*. Fourth, for the reasons set forth in the Rose Motion in Limine, the material fails to meet the *Daubert* standards in every respect and would be misleading and prejudicial.

## IV. THE COURT SHOULD BAR DR. JANSEN FROM REFERRING TO THE STATEMENTS AS "DEFAMING"

Defendant objects to Dr. Jansen's use of the terms "defaming statements" and "defaming statements against Mr. Unsworth" and his explanation that he is using these statements to reflect "defamation per se." (*See, e.g.,* Amended Report, ¶¶ 13-14.) Dr. Jansen's expertise is limited to computer science and, in this case, using Google to search for certain terms and then counting up the search results. He is not qualified to opine as to whether anything the Defendant said is "defamatory" or "defamation per se" and should not be allowed to speak as if he were. If those determinations are to be made in this case, they are solely for the jury to make.

Defendant requests that the Court direct Dr. Jansen to refer to the content of Mr. Musk's statements about Mr. Unsworth as "tweets" or the "statements," or words of similar import and neutrality.

## V. CONCLUSION

For the foregoing reasons, the Court should exclude Dr. Jansen's testimony concerning "digital subscribers," testimony regarding work he did not perform, and use of the terms "defaming statements," "defaming statements against Mr. Unsworth," and "defamation per se."

DATED: December 2, 2019          Respectfully submitted,

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By    */s/ Alex Spiro*
         Alex Spiro
   Attorneys for Defendant Elon Musk