QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (admitted pro hac vice)
   alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
   robertschwartz@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
   michaellifrak@quinnemanuel.com
Jeanine M. Zalduendo (Bar No. 243374)
   jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendant Elon Musk*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON UNSWORTH,<br><br>    Plaintiff,<br><br>    vs.<br><br>ELON MUSK,<br><br>    Defendant. | Case No. 2:18-cv-08048<br><br>Judge: Hon. Stephen V. Wilson<br><br>**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Complaint Filed: September 17, 2018<br>Trial Date: December 3, 2019 |

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

This motion for judgment as a matter of law is made pursuant to Federal Rule of Civil Procedure 50(a), on the following grounds: (1) the evidence is insufficient as a matter of law to support a jury award of assumed or punitive damages; (2) the evidence is insufficient to show that Mr. Unsworth suffered any actual damages; and (3) the evidence is insufficient as a matter of law to show Mr. Musk is liable for defamation.

This motion is based upon this notice of motion and motion; the attached memorandum of points and authorities; all pleadings and papers on file in this action; such other evidence or arguments as may be presented to the Court; and such other matters of which this Court may take judicial notice.

DATED: December 6, 2019        Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Alex Spiro*
      Alex Spiro
      *Attorneys for Defendant Elon Musk*

## **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION. ....................................................................................... 1
II.  ARGUMENT. .............................................................................................. 1
    A.   Standard For Judgment As A Matter of Law............................................ 1
    B.   Mr. Unsworth Failed To Prove He Is Entitled To Assumed Or Punitive Damages................................................................................ 2
    C.   Mr. Unsworth Failed To Prove He Is Entitled To Actual Damages.......... 5
    D.   The Record Is Insufficient To Support A Finding That Mr. Musk Is Liable For Defaming Mr. Unsworth. ..................................................... 6
III. CONCLUSION. ........................................................................................ 14

CASES

*Avila v. Citrus Cmty. Coll. Dist.*,
    38 Cal. 4th 148 (2006) ................................................................................ 11

*Bauman v. Butowsky*,
    377 F. Supp. 3d 1 (D.D.C. 2019) ................................................................. 7

*Brahms v. Carver*,
    33 F. Supp. 3d 192 (E.D.N.Y. 2014) ......................................................... 11

*Brown v. Kelly Broad. Co.*,
    48 Cal. 3d 711 (1989) ............................................................................ 4, 10

*Celle v. Filipino Reporter Enterprises Inc.*,
    209 F.3d 163 (2d Cir. 2000) ....................................................................... 10

*Copp v. Paxton*,
    45 Cal. App. 4th 829 (1996) ..................................................................... 2, 7

*Gardner v. Martino*,
    563 F.3d 981 (9th Cir. 2009) ..................................................................... 6, 7

*Garrison v. State of Louisiana*,
    379 U.S. 64 (1964) ...................................................................................... 2

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ............................................................................. 6, 12

*Good Gov't Grp. of Seal Beach, Inc. v. Superior Court*,
    22 Cal. 3d 672 (1978) .................................................................................. 3

*Hoffmann v. Jourdan*,
    2015 WL 6438249 (E.D. Cal. Oct. 22, 2015) .............................................. 8

*Hunt v. Liberty Lobby*,
    720 F.2d 631 (11th Cir. 1983) .................................................................... 11

*Ibarra v. ChickiP, LLC*,
    2013 WL 753878 (Cal. Ct. App. Feb. 28, 2013) .......................................... 4

*Ismail v. Montchak*,
    2019 WL 2949863 (Cal. Ct. App. July 8, 2019) .......................................... 8

*Jackson v. Paramount Pictures Corp.*,
    68 Cal. App. 4th 10 (1998) .......................................................................... 4

*Kaelin v. Globe Commc'ns Corp.*,
    162 F.3d 1036 (9th Cir. 1998) ..................................................................... 9

*Kahn v. Bower*,
    232 Cal. App. 3d 1599 (1991) .................................................................................. 8

*Kendall-Jackson Winery, Ltd. v. Superior Court*,
    76 Cal. App. 4th 970 (1999) .................................................................................. 13

*Lakeside-Scott v. Multnomah Cty.*,
    556 F.3d 797 (9th Cir. 2009) .................................................................................. 2

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
    838 F.2d 1287 (D.C. Cir. 1988) ............................................................................ 10

*Melaleuca, Inc., v. Clark*,
    66 Cal. App. 4th at 1344 (1998) .............................................................................. 2

*Philadelphia Newspapers, Inc. v. Hepps*,
    475 U.S. 767 (1986) .............................................................................................. 10

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
    946 F. Supp. 2d 957 (N.D. Cal. 2013) .................................................................. 13

*Royer v. Steinberg*,
    90 Cal. App. 3d 490 (1979) .................................................................................. 12

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
    86 A.D.3d 32, 925 N.Y.S.2d 407 (2011) .............................................................. 11

*Selleck v. Globe Int'l, Inc.*,
    166 Cal. App. 3d 1123 (1985) ................................................................................ 9

*Smith v. Maldonado*,
    72 Cal. App. 4th 637 (1999) ................................................................................. 10

*Sommer v. Gabor*,
    40 Cal. App. 4th 1455 (1990) .................................................................................. 2

*Sparrow Fund Management LP v. Mimedx Group, Inc*,
    2019 WL 1434719 (S.D.N.Y. Mar. 31, 2019) ......................................................... 8

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ................................................................................................ 2

*Summit Bank v. Rogers*,
    206 Cal. App. 4th 669 (2012) .................................................................................. 6

*Swigart v. Bruno*,
    13 Cal. App. 5th 529 (2017) ................................................................................. 11

*Torain v. Liu*,
    2007 WL 2331073 (S.D.N.Y. Aug. 16, 2007), *aff'd*, 279 F. App'x 46
    (2d Cir. 2008) .................................................................................................. 7, 10

*Tucker v. Cunningham*,
    2015 WL 9589357 (Cal. Ct. App. Dec. 30, 2015) .................................................. 8

*Unilogic, Inc. v. Burroughs Corp.*,
  10 Cal App. 4th 612 (1992) ............................................................................ 13

## RULES AND REGULATIONS

Fed. R. Civ. P. 50(a) ........................................................................................ i

Fed. R. Civ. P. 50(a)(1) .................................................................................. 1, 2

## I. INTRODUCTION.

Defendant Elon Musk respectfully files this memorandum in support of his motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a)(1). The evidence in the record is insufficient to establish liability or damages.

*First*, judgment should be entered in favor of Mr. Musk on the question of assumed and punitive damages. No sufficient evidence exists based on which a reasonable juror could find by clear and convincing evidence that Mr. Musk's July 15 tweets were made with actual malice. Actual malice requires proof that Mr. Musk personally knew the tweets were false or personally knew that it was highly probable that the tweets were false at the time the tweets were posted. No evidence supports such a finding. Nor does any evidence show that Mr. Musk acted with common law malice.

*Second*, the record lacks sufficient evidence based on which a reasonable juror could find that Mr. Unsworth suffered emotional or reputational harm.

*Finally*, judgment should be entered in favor of Mr. Musk because the record lacks sufficient evidence by which a jury could conclude that the July 15 tweets convey a statement of fact instead of an opinion, that the tweets were of and concerning Mr. Unsworth, that the tweets had a defamatory per se meaning, that the tweets were false, or that Mr. Musk was negligent with regard to their truth or falsity. And, even if there were sufficient evidence on each of these factors, no reasonable jury could conclude Mr. Musk is liable for defamation because Mr. Unsworth provoked, invited, and consented to Mr. Musk's statements.

## II. ARGUMENT.

### A. Standard For Judgment As A Matter of Law.

Federal Rule of Civil Procedure 50(a)(1) provides that, where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for

1  judgment as a matter of law against the party on a claim or defense that, under the
2  controlling law, can be maintained or defeated only with a favorable finding on that
3  issue." Fed. R. Civ. P. 50(a)(1). Judgment as a matter of law is required where a
4  party fails to present a legally sufficient basis for a reasonable jury to rule in its favor.
5  *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 802 (9th Cir. 2009).

### B. Mr. Unsworth Failed To Prove He Is Entitled To Assumed Or Punitive Damages.

This Court should grant judgment as a matter of law on Mr. Unsworth's claims for assumed and punitive damages because Mr. Unsworth has failed to present legally sufficient evidence to prove by clear and convincing evidence that Mr. Musk had knowledge of the falsity of his tweets or personally harbored serious doubts as to their truth at the time he published them on July 15, 2018. *See Sommer v. Gabor*, 40 Cal. App. 4th 1455 (1990) (to award assumed damages, jury must find "by clear and convincing evidence that defendant knew the statement was false or published it in reckless disregard of whether it was false"). The Supreme Court has stated that in order for a jury to find reckless disregard, "[t]here must be sufficient evidence to permit the conclusion that the defendant ***in fact entertained serious doubts*** as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 730–31 (1968) (emphasis added). This standard requires proof of a "high degree of awareness of … probable falsity" of his tweets. *Id.* at 1325 (citing *Garrison v. State of Louisiana*, 379 U.S. 64 (1964)). "The law is clear [that] the recklessness or doubt which gives rise to actual or constitutional malice is ***subjective*** recklessness or doubt." *Melaleuca, Inc., v. Clark*, 66 Cal. App. 4th at 1344, 1365 (1998) (emphasis added). "The burden of proof by clear and convincing evidence requires a finding of high probability. The evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind.'" *Copp v. Paxton*, 45 Cal. App. 4th 829, 846 (1996).

1    As an initial matter, an insult cannot be proven true or false, and therefore is
2 entitled to constitutional protection where the actual malice standard applies. *Good*
3 *Gov't Grp. of Seal Beach, Inc. v. Superior Court*, 22 Cal. 3d 672, 684 (1978). The
4 evidence is undisputed on this point. Mr. Musk intended "pedo guy" as an insult.
5 (12/03/19 Tr. 72:8-11 (Musk).) It does not matter what any other person would have
6 thought, or what a reasonable person would have thought.

7    Even assuming sufficient evidence that the statements were of a factual nature,
8 no evidence demonstrates Mr. Musk posted the tweets with actual malice. Mr. Musk
9 did not know the statements were false at the time he made them because he did not
10 know Mr. Unsworth at all. (12/04/19 A.M., 22:19-22 (Musk).) All of the evidence
11 suggests that on July 15, 2018, Mr. Musk had no idea who Mr. Unsworth was, and
12 knew nothing about him outside of a cursory Google search performed shortly
13 before he posted the tweets. (*See* 12/03/19 Tr. 57:11-18 (Musk).) Mr. Musk had
14 "never heard his name before," (12/03/19 Tr. 60:1 (Musk)), and had never laid eyes
15 on him before watching the CNN videotaped interview of Mr. Unsworth, (12/03/19
16 Tr. 60:2-7 (Musk)). And Mr. Musk testified that on July 15, 2018, he "didn't know
17 whether the statement about Mr. Unsworth was true or false." (12/03/19 Tr. 64:19-
18 23 (Musk).). In fact, to the extent that the later evidence of which Mr. Musk was
19 aware is relevant to Mr. Musk's state of mind on July 15, which it is not, it shows
20 that Mr. Musk believed the later statements, not that he thought the July 15 tweets
21 conveyed a factual assertion that was false or that was probably. And, on the topic
22 of the investigation, Mr. Birchall testified that he did not discuss the July 15 tweets
23 with Mr. Musk at all. (12/04/19 p.m. #1, 8:4-6 (Birchall).)

24    Because Mr. Musk knew nothing, he cannot possibly have known the tweets
25 were false. A defendant with *no knowledge* cannot harbor "serious doubts" as to the
26 truth of a statement. Because Mr. Unsworth has not put forth any evidence, let alone
27 clear and convincing evidence, that Mr. Musk subjectively harbored serious doubts
28 as to the truth of his July 15, 2018 tweets, the Court should grant judgment as a

matter of law to Mr. Musk on Mr. Unsworth's request for assumed and punitive damages.

Further, in addition to actual malice, the jury must also find Mr. Musk acted with common law malice in order to award punitive damages. *Brown v. Kelly Broad. Co.*, 48 Cal. 3d 711, 747 (1989) ("A private-figure plaintiff must prove at least negligence to recover any damages and, when the speech involves a matter of public concern, he must also prove *New York Times* malice . . . to recover presumed or punitive damages. This malice must be established by 'clear and convincing proof.'"); *see also Jackson v. Paramount Pictures Corp.*, 68 Cal. App. 4th 10, 32 (1998) ("Actual malice under *New York Times Co. v. Sullivan* is quite different from the common-law standard of malice generally required under state tort law to support an award of punitive damages.... [C]ommon-law malice—frequently expressed in terms of either personal ill will toward the plaintiff or reckless or wanton disregard of the plaintiff's rights—would focus on the defendant's attitude toward the plaintiff[ ] ... not toward the truth or falsity of the material published.'"); *Ibarra v. ChickiP, LLC*, 2013 WL 753878, at *6 (Cal. Ct. App. Feb. 28, 2013) ("common-law standard of malice" "involves hatred or ill will towards the plaintiff").

Mr. Unsworth's evidence is insufficient as a matter of law to show Mr. Musk acted with common law malice. Mr. Musk testified that he had no idea who Mr. Unsworth was on July 15, 2018. Mr. Musk didn't even know Mr. Unsworth had been involved in the Thai Cave rescue. (*See* Musk, 12/03/19 Tr. 60:1, 7 (Musk).) Moreover, Mr. Musk deleted the allegedly defamatory tweets and apologized for them almost immediately. (*See* Musk, 12/03/19 Tr. 3-5 (Musk) ("I apologized on Twitter and deleted the original tweets and apologized during deposition. And I'll say it again, I apologize to Mr. Unsworth.").) Mr. Musk cannot have harbored ill will toward Mr. Unsworth because he did not know him and had no opinion about him.

The only evidence Mr. Unsworth has presented showing that Mr. Musk acted with ill will is circumstantial evidence of events that occurred more than a month

after the July 15, 2018 tweets: that Mr. Musk hired a private investigator to investigate Mr. Musk and that Mr. Musk emailed a BuzzFeed reporter alleging Mr. Unsworth is a child rapist. (*See* Musk 12/03/19 Tr. 85:21-86:2; 107:22-108:2 (Musk).) But this circumstantial evidence does not prove, *by clear and convincing evidence*, that Mr. Musk acted with common law malice on July 15, 2018.

After Mr. Musk's July 15 tweets, he learned almost immediately that Mr. Unsworth was threatening to sue him, and by mid-August, "it became really clear that there was gonna be a lawsuit" and so Mr. Musk decided "we should take this guy up on his offer to investigate and see what's going on." (12/03/19 Tr. 85:25-86:2 (Musk).) The evidence shows Mr. Musk hired the investigator not because he harbored some kind of animus toward Mr. Unsworth, but because of the possibility of Mr. Unsworth's imminent lawsuit. (12/03/19 Tr. 85:24-25 (Musk).). Mr. Unsworth admitted during his testimony that it is reasonable to investigate an opposing party in litigation. (12/04/19 P.M. #2, 48:9-11 (Unsworth).)

Further, Mr. Musk's August 30, 2018 emails to BuzzFeed were related to this lawsuit, and the accusations contained therein were based on information he received from the investigator, through his employee Jared Birchall. (*See* 12/03/19 Tr. 87:23 (Musk) ("[I]t didn't become apparent he was actually a professional con man until much later.").) Mr. Birchall testified that the email to BuzzFeed is exactly what he told Mr. Musk the investigator had relayed to him. (*See* Tr. 12/04/19 P.M. #1, 19:25-20:4 (Birchall).) On August 30, 2018, Mr. Musk had no reason to doubt the veracity of the statements relayed to him, and thus his email to BuzzFeed does not show by clear and convincing evidence that on July 15 he acted with common law malice.

Because the evidence is not sufficient to show Mr. Musk acted with actual or common law malice, Mr. Musk is entitled to judgment as a matter of law on Mr. Unsworth's assumed and punitive damages requests.

### C. Mr. Unsworth Failed To Prove He Is Entitled To Actual Damages.

Although the record need not show "evidence which assigns an actual dollar value to the injury" in order to recover actual damages, Mr. Unsworth must have put on "competent evidence concerning the injury." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974). Mr. Unsworth has failed to do so. To the contrary, the evidence demonstrates that he was *not* harmed by Mr. Musk's statements. Mr. Unsworth presented no evidence of actual harm. For example Mr. Unsworth has not put forth any evidence that anyone thought he was a pedophile, of any person who has asked him if he is a pedophile, or of anyone who thought less of him as a result of Mr. Musk's statements. (12/05/19 A.M., 52:12-25; 93:1-94:7 (Unsworth). ) He received awards from the Queen of England and the Thai government even after Mr. Musk's statements. (12/04/19 P.M. #2, 21:3-11 (Unsworth).) Mr. Unsworth's request actual damages fails as a matter of law.

### D. The Record Is Insufficient To Support A Finding That Mr. Musk Is Liable For Defaming Mr. Unsworth.

This Court should grant judgment as a matter of law on Mr. Unsworth's defamation per se claim because Mr. Unsworth has not presented legally sufficient evidence to prove (1) that Mr. Musk made a statement of fact; (2) that a reasonable reader would have understood the tweets were about or concerned Mr. Unsworth; (3) that Mr. Musk's statements were reasonably susceptible of a defamatory meaning; (4) that Mr. Musk acted negligently with regard to the truth of the statements; and (5) that Mr. Musk's statements were false. Further, even if there were sufficient evidence on each of these factors, no reasonable jury could conclude Mr. Musk is liable for defamation because Mr. Unsworth provoked, invited, and consented to Mr. Musk's statements.

*First*, no reasonable juror could determine that Mr. Musk's July 15 tweets are statements of fact. Statements of opinion are not actionable as defamation, and are protected by the First Amendment. *Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009) (defamation claim may not be based on "nonactionable opinion"); *Summit*

*Bank v. Rogers*, 206 Cal. App. 4th 669, 695 (2012) ("Because [a defamatory] statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected."). The "threshold question" in any "defamation claim is whether a reasonable factfinder could conclude that the contested statements implies an assertion of objective fact." *Gardner*, 563 F.3d at 987. "[A] statement of pure opinion is not an accusation, and pure opinions are immune from all defamation claims, even claims of per se defamation." *Torain v. Liu*, 2007 WL 2331073, at *3 (S.D.N.Y. Aug. 16, 2007), *aff'd*, 279 F. App'x 46 (2d Cir. 2008).

As to threshold question of fact versus opinion, no reasonable juror could find that the statements in July 15 tweets were assertion of facts when assessing the relevant language and context. Mr. Musk's uncontradicted testimony is that the tweets were posted in response to Mr. Unsworth's insult to Mr. Musk that the mini sub had no chance of working, that it was a PR stunt, and that Mr. Musk should shove it where it hurts. (12/03/19 Tr. 72:8-11 (Musk).) The statements in Mr. Musk's tweets were nothing more than responsive insults, made in the course of a debate between the parties. (12/03/19 Tr. 113:22-23 (Musk).) As Mr. Musk testified, Mr. Unsworth "did not literally mean to sodomize [Mr. Musk] with a submarine," Mr. Musk "also did not literally mean he was a pedophile," but rather "just meant he was a creep." (12/03/19 Tr. 72:8-11 (Musk).) And "sus" (suspicious) is not a statement of fact. *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 11 (D.D.C. 2019) (comment that a person's action was "suspicious" was a nonactionable opinion).

The tweets themselves also indicate they are non-actionable opinion. They are posted on Twitter, a social media site, and use informal language to push back against the inaccurate narrative Mr. Unsworth had framed concerning the helpfulness of Mr. Musk's mini sub and the genuineness of his efforts: "Obv." "Sus." "Dude." "No problemo." (Ex. 19.) These all corroborate Mr. Musk's testimony that "pedo guy"

is a flippant insult.  *See Copp v. Paxton*, 45 Cal. App. 4th 829, 837 (1996).  And no reasonable juror could find that Mr. Musk's July 15, 2018 tweets were a factual accusation of the crime of pedophilia, that is, engaging in sex acts with children.  All of the evidence suggests that Mr. Musk was insulting Mr. Unsworth.  (*See* 12/03/19 Tr. 112:1-4, 113:22-25 (Musk).)  Given the "the broader context of his statements"—a Twitter post made in the midst of a heated debate about the parties' rescue efforts—"no ordinary reader would have understood the [Twitter statement] as a factual assertion …" *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1608 (1991).

**Second**, no reasonable juror could find that the "audience reasonably understood the statements were about" Mr. Unsworth.  *Ismail v. Montchak*, 2019 WL 2949863, at *4 (Cal. Ct. App. July 8, 2019); *see also Hoffmann v. Jourdan*, 2015 WL 6438249, at *5 (E.D. Cal. Oct. 22, 2015) ("To prevail in a claim for defamation per se, the plaintiff must plead and prove that a defendant published a false statement to another person or persons, that those persons reasonably understood the statements to be about the plaintiff…"); *Tucker v. Cunningham*, 2015 WL 9589357, at *11 (Cal. Ct. App. Dec. 30, 2015) (plaintiff must show "third party reasonably understood the statement was about the plaintiff").  It is not sufficient as a matter of law that Mr. Unsworth understood the tweets to be about him, or that it was Mr. Musk's unexpressed intent to refer to him: "someone knowledgeable of [the plaintiff] who read or listened to [the statements] would [need to] understand that Defendants' reference … was a reference to [plaintiff]." *Sparrow Fund Management LP v. Mimedx Group, Inc*, 2019 WL 1434719, at *11 (S.D.N.Y. Mar. 31, 2019).

The evidence shows that Mr. Musk's tweets did not reference Mr. Unsworth by name.  (Exs. 16, 18, 19, 40.)  Mr. Musk's first tweet says only that he "[n]ever saw this British expat guy who lives in Thailand (sus) at any point when we were in the caves." (Ex. 16.)  A number of British participants were involved in the Thai Cave rescue.  And evidence Mr. Unsworth presented shows that individuals on Twitter did not understand who Mr. Musk was referring to in his July 15, 2018 tweets  (Ex. 200;

12/03/19 Tr. 62:6-7 (Musk) ("this doesn't make sense because Mr. Unsworth is not a New York Times journalist"); *id.* at 120:8-14.).  The fact that a Twitter user thought Mr. Musk's July 15, 2018 tweets referred to a New York Times journalist, and not to Mr. Unsworth, demonstrates that the average reader would not understand the tweets concerned Mr. Unsworth.  Mr. Unsworth's defamation claim therefore fails as a matter of law.

***Third***, no reasonable jury could find that Mr. Musk's statement was reasonably susceptible to a defamatory meaning.  "California courts in libel cases have emphasized that the publication is to be measured … by the natural and probable effect upon the mind of the average reader."  *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998).  For the purpose of this analysis, the publication "must be read as a whole in order to understand its import and the effect that it was calculated to have on the reader, and construed in the light of the whole scope and apparent object of the writer, considering not only the actual language used, but the sense and meaning that may be fairly presumed to have been conveyed to those who read it."  *Selleck v. Globe Int'l, Inc.*, 166 Cal. App. 3d 1123, 1131 (1985).

On this record, the evidence is insufficient to show that Mr. Musk's statement was reasonably susceptible to a defamatory meaning.  Mr. Unsworth has not shown that Mr. Musk's tweets—(1) "Never saw this British expat guy who lives in Thailand (sus) at any point when we were in the caves.", (2) "Sorry pedo guy, you really did ask for it.", and (3) "Bet ya a signed dollar it's true."— could, taken together in the eyes of the average reader, be understood as defamatory.  This is true particularly in light of the broader context of Mr. Musk's tweets, which were responding directly to a public accusation Mr. Unsworth made that Mr. Musk's rescue submarine was a PR stunt and that Mr. Musk should stick it where it hurts.  (*See* 12/03/19 Tr. 72:8-11 (Musk) ("Just as he was using an idiomatic phrase, and I assume he did not literally mean to sodomize me with a submarine, then I -- then I also did not literally mean he was a pedophile. I just meant he was a creep.").)

To be defamatory, the statements must be read to assert that Mr. Unsworth is a pedophile.  The basic question is whether "an informed listener would think that defendant was accusing plaintiff of being a pedophile based on some undisclosed information known only to him." *Torain* , 2007 WL 2331073, at *3.  In context, the average reader would not have understood the statements as an accusation of pedophilia, that is, that Mr. Unsworth engaged in a sexual act with a child, and therefore the statements do not have defamatory meaning.  In this case, the average reader would not have understood Mr. Musk's statement "[s]orry pedo guy, you really did ask for it" as an accusation of pedophilia.  Mr. Musk's statements are therefore not capable of defamatory meaning, and are not defamation per se.

**Fourth**, Mr. Unsworth has not met his burden of proving that any statement of fact Mr. Musk made was false.  "When the speech involves a matter of public concern, a private-figure plaintiff has the burden of proving the falsity of the defamation." *Brown v. Kelly Broad. Co.*, 48 Cal. 3d 711, 747 (1989); *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999) (defamation "involves the intentional publication of *a statement of fact that is false*, unprivileged, and has a natural tendency to injure or which causes special damage") (emphasis added).  "While a bland cryptic claim of falsity supported by the credibility of a witness might be sufficient to establish a proposition in other civil cases, the First Amendment demands more." *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 188 (2d Cir. 2000).

Mr. Unsworth is not a credible witness, and even if his vague denial, (12/04/19 P.M., 19:2-5 (Unsworth)), of the alleged pedophilia accusation is not sufficient as a matter of law to prove Mr. Musk's statement was false.  "To accept such a colorless denial as sufficient proof would effectively shift plaintiffs' burden of establishing falsity  …" *Id.*; see also *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) (where speech is a matter of public concern, private figure bears burden of proving falsity, and "where the scales are in such an uncertain balance, we believe

that the Constitution requires us to tip them in favor of protecting true speech"); *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1292 (D.C. Cir. 1988) ("Where the question of truth or falsity is a close one, a court should err on the side of non-actionability."). Judgment should be entered in favor of Mr. Musk because the evidence is not sufficient for any reasonable jury to find that Mr. Musk's statement was false.

*Fifth*, no reasonable juror could conclude that Mr. Musk failed to meet the standard of care. Although reasonable care is an objective standard, what reasonable care means in a particular circumstance is context-dependent. *See, e.g.*, *Avila v. Citrus Cmty. Coll. Dist.*, 38 Cal. 4th 148, 160 (2006) ("Generally, each person has a duty to exercise reasonable care *in the circumstances* …"); *see also Swigart v. Bruno*, 13 Cal. App. 5th 529, 537 (2017) (each person has a duty to act with "reasonable care in the circumstances"); *see also Hunt v. Liberty Lobby*, 720 F.2d 631, 643 (11th Cir. 1983). The context and circumstances of a Twitter post is significantly different than more formal types of communication. No reasonable person exercises the same degree of care with a Twitter or Facebook post as they would if, for example, they were writing a New York Times article or were publishing something in a scholarly press. *Sandals Resorts Int'l Ltd. v. Google, Inc.,* 86 A.D.3d 32, 44, 925 N.Y.S.2d 407, 415–16 (2011) ("It is ... imperative that courts learn to view libel allegations within the unique context of the Internet. The low barrier to speaking online allows anyone with an Internet connection to publish his thoughts, free from the editorial constraints that serve as gatekeepers for most traditional media of disseminating information."); *see also Brahms v. Carver*, 33 F. Supp. 3d 192, 199 (E.D.N.Y. 2014) ("The allegedly defamatory statement in this case was made on an internet forum where people typically solicit and express opinions, generally using pseudonyms. The statement was also clearly 'rhetorical hyperbole' or a 'vigorous epithet,' particularly when viewed in the context of the heated argument—replete with name-calling[.]").

Here, Twitter is simply not a forum in which individuals use the same level of care they would in other circumstances. As Mr. Musk testified, "Twitter is a free-for-all where there's all sorts of things, you know, that sort of aren't true, untrue, half true, uh, where people engage in sort of verbal combat effectively, uh . . . yeah. I mean, there's everything on Twitter." (12/03/19 Tr. 24:9-13 (Musk).) No reasonable jury could find that Mr. Musk's offhand comment on Twitter was not made with reasonable care. Therefore, Mr. Musk is entitled to judgment as a matter of law.

In addition, had this Court determined that Mr. Unsworth is a limited purpose public figure, then the jury would be required to find by clear and convincing evidence that Mr. Musk acted with actual malice in posting the tweets. *See Gertz*, 418 U.S. at 334. As discussed, *supra*, no reasonable juror could find that Mr. Musk knew the tweets were false or recklessly disregarded a high probability that the tweets were false.

*Finally*, even if there were sufficient evidence on each of these factors, no reasonable jury could conclude Mr. Musk is liable for defamation because Mr. Unsworth provoked, invited, and consented to Mr. Musk's statements. Mr. Unsworth may not prevail in this action if he consented to Mr. Musk's comments. Under California law, "[o]ne of the oldest and most widely recognized defenses to the publication of defamatory matter is the doctrine of consent, which has been classified as a form of absolute privilege." *Royer v. Steinberg*, 90 Cal. App. 3d 490, 499 (1979). "The primary purposes of the doctrine of consent in defamation law is to prevent a party from inviting or inducing indiscretion and thereby laying the foundation of a lawsuit for his own pecuniary gain." *Id.* The evidence shows that Mr. Unsworth invited or induced the July 15, 2018 statements. Mr. Unsworth has testified that he gave an interview to CNN, an international news organization, in which he accused Mr. Musk's rescue pod of being a "PR stunt" and told Mr. Musk to stick it where it hurts. (12/05/19 A.M., 7:23-25 (Unsworth); 12/04/19 P.M. # 2, 36:25-37:4 (Unsworth).) The jury has seen the videotape of this interview, and has heard from

Mr. Musk that the July 15, 2018 tweets were a direct response to this unprovoked attack. (Musk, 12/03/19 Tr. 113:22-23 (Musk).) No reasonable juror could find that Mr. Unsworth did not invite or induce the allegedly defamatory tweets, and therefore no reasonable juror could find for Mr. Unsworth.

Further, the affirmative defense of unclean hands bars Mr. Unsworth's defamation claim. Mr. Musk must show that Mr. Unsworth's conduct has been inequitable, unfair, unconscionable, or deceitful, that the conduct resulted in prejudice to Mr. Musk; and that Mr. Unsworth's misconduct was connected with the issues in this case. *Unilogic, Inc. v. Burroughs Corp.*, 10 Cal App. 4th 612 (1992); *Kendall–Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970 (1999), *as modified on denial of reh'g* (Jan. 3, 2000); *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497 (9th Cir. 2015).

Based on the evidence, no reasonable juror could conclude that Mr. Unsworth did not have unclean hands with regard to the Twitter posts that form the basis of this defamation action. Mr. Musk's tweets were a direct response to Mr. Unsworth's unprovoked attack on CNN. (12/03/19 Tr. 72:8-11 (Musk).) Mr. Unsworth's gratuitous statements that Mr. Musk's rescue submarine was a PR stunt, which insinuated that Mr. Musk did not care about the trapped Thai children, and that Mr. Musk should stick his submarine where it hurts, therefore "occurred in the same transaction that forms the subject of this litigation," which "is enough to trigger application of the unclean hands doctrine." *Unilogic, Inc. v. Burroughs Corp.*, 10 Cal App. 4th 612, 623 (1992). And Mr. Unsworth's comments were unfair and inequitable. *See, e.g.*, *Kendall-Jackson Winery*, 76 Cal. App. 4th 970, 979 (1999) ("Not every wrongful act constitutes unclean hands. But, the misconduct need not be a crime or an actionable tort. Any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine.").

Because unclean hands bars Mr. Unsworth's defamation claim, judgment should be granted in favor of Mr. Musk as a matter of law.

## III. CONCLUSION.

For the foregoing reasons, Mr. Musk is entitled to judgment as a matter of law. Mr. Musk respectfully requests the Court grant judgment as a matter of law to Mr. Musk on liability for Mr. Unsworth's defamation per se claim or, in the alternative, grant Mr. Musk judgment as a matter of law on Mr. Unsworth's requests for actual, assumed, and punitive damages.

DATED: December 6, 2019      Respectfully submitted,

QUINN EMANUEL URQUHART
   & SULLIVAN, LLP

By    */s/ Alex Spiro*
    Alex Spiro (admitted *pro hac vice*)
    *Attorneys for Defendant Elon Musk*